IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

    Plaintiff,

v.                                           Case No. 09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

    Defendants.

SPRINGER'S REPLY TO UNITED STATES OPPOSITION TO PROTECTIVE ORDER

Lindsey K. Springer ("Springer") files his reply to the United States Attorney's Response in opposition to Springer's Motion for Protective Order pending certain disclosures otherwise sealed along with an opportunity to file an adequate Franks Motion. This Motion is about Springer's rights and return of the material.

Springer filed a Motion for Return of Property with the District Court in 05-SM-1 on December 1, 2008, which was placed under seal. In that Motion Springer sought the return of the property taken illegally from him through the purported search warrant dated September 15, 2005.

The United States Attorney argued in response to Springer's Rule 41 Motion that the proper place to obtain the property back was in a subsequent Motion to Suppress in the event an indictment was issued. Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure allows for a Motion to Suppress but does not otherwise address the return of the illegally obtained material, otherwise not contraband, to

1

the person seeking suppression and return of the lawfully possessed material.

Rule 41, prior to its current form, addressed this issue in part. In Isaacs v. U.S., 283 F.2d 587, 590 (10th Cir. 1960) the 10th Circuit said Rule 41(e) Fed.Rules Crim.Proc., 18 U.S.C.A. provided:

> "A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized **for the return of the property and to suppress for use as evidence anything so obtained on the ground that** (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. **If the motion is granted the property shall be restored unless otherwise subject to lawful detention** and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

The United States Attorney agrees that the "change in the designation of this rule from Rule 41(e) to Rule 41(g) in 2003, did not change the wording or intent of the rule." See Peloro v. U.S. 488 F. 3d 163, 172-173n.9 (3rd Cir. 2007) See Sealed Opposition in 05-SM-1 dated January 29, 2009, pg. 6.

The "fruit of the poisonous tree" doctrine is most often associated with violations of the Fourth Amendment's prohibition of unreasonable searches and seizures. *See Wong* Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). It prohibits at trial the use of evidence obtained directly or indirectly through

an unlawful search or seizure. *Id*. at 484, 83 S.Ct. 407. In that context, the exclusionary rule is necessary to "make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person." *Id*. Stated another way, "**[t]he rule is calculated to prevent**, not to repair. **Its purpose is to deter** — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it." *Brown v. Illinois*, 422 U.S. 590, 599-600, 95 S.Ct. 2254, 45 L. Ed.2d 416 (1975). Accordingly, the exclusionary rule as it applies to the Fourth Amendment is broad and witnesses and evidence (including confessions), no matter how probative, discovered only as a result of a Fourth Amendment violation, must be excluded from evidence. *Wong Sun*, 371 U.S. at 485-86, 83 S.Ct. 407; *Oregon v. Elstad*, 470 U.S. 298, 306, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). See U.S. v. Pettigrew, 468 F.3d 626, 534 (10th Cir. 2006)

The United States Attorney argues, even though it may be prohibited from using the Fourth and Fifth Amendment violations it levied against Springer, prospectively against Springer, it may utilize the illegally seized material against Oscar Stilley. The United States Attorney cites to several cases in support of its theory. None of the cases are on point. Each case involved the finding of contraband. The material taken from the home where Springer lives is not alleged to be contraband.

In Franks v. Deleware, 438 U.S. 154, 155 (1978) the Supreme Court held that where the defendant makes a substantial preliminary showing that a false

3

statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, **the search warrant must be voided and the fruits of the search excluded** to the same extent as if probable cause was lacking on the face of the affidavit.

In Rakas v. Illinois, 439 U.S. 128, 130 (1978)[1] the Supreme Court did not consider "the issue of probable cause" and therefore gave "a brief description of the events leading to the search of the automobile...." What was found in the car at issue in Rakas was contraband and would not have been returned to him suppressed or not. "At their trial, the prosecution offered into evidence a sawed-off rifle and rifle shells that had been seized by police during a search of an automobile in which petitioners had been passengers. Neither petitioner is the owner of the automobile and neither has ever asserted that he owned the rifle or shells seized." Id. at 129 So, probable cause not at issue in Rakas and no person claimed ownership of property.

---

[1] First case cited by the Government in opposition to a protective order.

In U.S. v. Ladeaux, 454 F.3d 1107, 1172 (10th Cir. 2006)[2] the issue decided involved whether detention may lead to a fourth amendment violation regarding a request by police to role up windows and turn on and open air vents of a car. Both cocain and marihuana were eventually found in the searched car. These items were in fact contraband and would not be returned no matter what the disposition of the property for trial purposes.

In Trupiano v. United States, 334 U.S. 699 (1948) the Supreme Court stated that "It follows that it was error to refuse petitioners' motion to exclude and suppress the property which was improperly seized. **But since this property was contraband, they have no right to have it returned to them**." 334 U.S. at 710. "We are of the opinion that Congress, in abrogating property rights in such goods, merely intended to aid in their forfeiture and thereby prevent the spread of the traffic in drugs rather than to abolish the exclusionary rule formulated by the courts in furtherance of the high purpose of the Fourth Amendment. See In re Fried, 161 F.2d 453 (1947). United States v. Jeffers, 342 U.S. 48, 53-54 (1951)("'no property rights shall exist' in contraband goods")

Since the evidence illegally seized was contraband the respondent was not entitled to have it returned to him. It being his property, for purposes of the exclusionary rule, he was entitled on motion to have it suppressed as evidence on

---

[2] Third cases cited by the Government in opposition to protection order request.

5

his trial. Id.

Black's Law, Sixth Edition defines "contraband" as property which is "unlawful to produce or possess. Things and objects outlawed."

In *United States v. Beckstead*, 500 F.3d 1154, 1162-63 (10th Cir. 2007)[3] Beckstead claimed that the Government deprived him of due process because officers immediately seized and destroyed the methamphetamine lab components and related chemicals found at Morris' apartment and in Beckstead's car. Nothing in Beckstead, if seized illegally, could have ever been ordered returned to anyone. Beckstead also challenged the violations of his fourth amendment rights. Had he prevailed, and not waived these issues, he would never have been entitled to the contraband being returned to him. Officers in plain view noticed glass for cooking drugs by looking in the window of his car. Probable cause existed here regardless of any other issue and no warrant was needed.

*United States v. Hernandez*, 57 F.3d 895, 898 (10th Cir. 1995)[4] is clearly not on point. Hernandez lacked standing because he would not identify who loaned him the car that he claimed standing for protection under the fourth amendment.

In *United States v. De Luca*, 269 F.3d 1128, 1131 (10th Cir 2001)[5] the 10th Circuit dealt with whether a passenger in a car had fourth amendment right after being

---

[3] Second case cited by the Government in opposition to protection order.

[4] Fifth case cited.

[5] Fourth case cited.

detained while an otherwise illegal search was taking place. In overruling the District Court, the split panel decided De Luca had no fourth amendment rights in his detention. The dissent in DeLuca on this issue shows the deep division amongst those learned in the law. However, this case again involves a automobile stop where contraband was found.

*United States v. Jones*, 44 F.3d 860, 871 (10th Cir. 1995) likewise involves a car and 200 kilos of cocain. No matter what, this property would never be returned no matter what the outcome of suppression might be.

The Supreme Court has recognized a liberty interest in personal security in cases involving the fourth amendment right to be free from unreasonable searches and seizures, Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886); see also Gouled v. United States, 255 U.S. 298, 303-04, 41 S.Ct. 261, 262-63, 65 L.Ed. 647 (1921); see also Hilliard v. City and County of Denver, 930 F.2d 1516 (10th Cir. 1991)

The Fourth Amendment protects the citizen against unlawful searches and seizures. The Fifth Amendment secures him from compulsory testimony against himself. And these constitutional provisions are to be liberally construed to prevent impairment of the safeguards which they provide. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Gilbert v. United States, 10 Cir., 144 F.2d 568; See Gilbert v. U.S., 163 F.2d 325, 326 (10th Cir. 1947)

In Gouled v. United States, 255 U.S. 298, 309, the Court said that search

warrants:

> "may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding. . . ." The Court derived from Boyd v. United States, supra, the proposition that warrants "may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken," 255 U.S., at 309; that is, when the property is an instrumentality or fruit of crime, or contraband. Since it was "impossible to say, on the record . . . that the Government had any interest" in the papers involved "other than as evidence against the accused . . .," "to permit them to be used in evidence would be, in effect, as ruled in the Boyd Case,[6] to compel the defendant to become a witness against himself." Id., at 311. See Warden v. Hayden, 387 U.S. 294, 302 (1967)

The moment the Government tenders to Mr. Stilley papers and records unlawfully taken from the home Springer lives in, Springer's Fourth and Fifth Amendments are violated even before any future trial.

A search under the Fourth Amendment "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Whether an individual has a constitutionally protected reasonable expectation of privacy in an object or place is a two-fold inquiry: (1) whether the individual has manifested a subjective expectation of privacy in the object or place to be searched and (2) whether that expectation is one society is prepared to recognize as reasonable.

---

[6]Boyd v. United States, 116 U.S. 616, 630 (1886)

*United States v. Hatfield* 333 F.3d 1189, 1195 (10th Cir.2003). "[T]he burden of establishing a legitimate expectation of privacy is on the party claiming a Fourth Amendment violation, and we have applied that same rule to a claimed invasion of the curtilage." *United States v. Cavely*, 318 F.3d 987, 994 (10th Cir.2003) (citation omitted). It is well-settled an individual has a reasonable expectation of privacy in the interior of one's home and its curtilage. *Kyllo v. United States*, 533 U.S. 27, 34, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *see also Hatfield*, 333 F.3d at 1196 ("[P]rivacy in the interior of a home and its curtilage are at the core of what the Fourth Amendment protects. . . ."). See Reeves v. Churchich, 484 F.3d 1244, 1254 (10th Cir. 2007)

Giving Mr. Stilley copies of what was taken from the home Springer lives in would be as much an invasion of Springer's privacy as the United States Attorney's usage of that same material against Springer himself. The United States never had the legal right to search or seize non contraband from the home Springer lives in. Springer had an expectation of privacy and It logically follows that rewarding the United States Attorneys with sharing that illegal seizure for their benefit of prosecuting Stilley is not what the law provides. Neither Mr. Stilley or the United States Attorney have any right to the material unlawfully taken from Springer on September 16, 2005. Until that issue is finally determined this Court should extend its protective order.

The Supreme Court has held that "capacity to claim the protection of the

Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Rakas, supra, at 143. See also Rawlings v. Kentucky, 448 U.S. 98, 106 (1980).  The text of the Amendment suggests that its protections extend only to people in "their" houses. Minnesota v. Carter, 525 U.S. 83, 88-89 (1998)

There can be no doubt that expectation exists in the home Springer lived in for purposes of the protective order currently in place by this Court. Maintaining the status quo injures neither the United States Attorney or Mr. Stilley in regard to distribution of such evidence.  On the other hand, allowing the United States Attorney to distribute material unlawfully seized from Springer, thereby using such private papers, books and other recorded information, renders the Fourth and Fifth Amendment meaningless.

Once the Court determines the seized material was seized without probable cause and in violation of the Fourth and Fifth Amendment, and since the material is not contraband, the only thing left is for the Court to direct said material returned, the original and all copies, to Springer.  There would be nothing available to tender to Mr. Stilley.  Springer would most certainly not agree to the material's usage.

        Respectfully Submitted

        /s/ Lindsey K. Springer
        Lindsey K. Springer
        5147 S. Harvard, # 116
        Tulsa, Oklahoma 74135
        918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Springer's Reply to United States Opposition to Protective Order was served by way of ECF System on April 27, 2009, to:

Kenneth P. Snoke,

Charles O'Reilly,

Oscar Stilley

/s/ Lindsey K. Springer
Signature