N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                              Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

MEMORANDUM OF LAW IN SUPPORT OF SPRINGER'S FOURTH
MOTION TO DISMISS REGARDING SUBSTANTIAL TAX DEFICIENCY ELEMENT

Lindsey Kent Springer ("Springer"), files this Memorandum of Law in support of his Fourth Motion to Dismiss the document labeled "INDICTMENT" dated March 10, 2009, because no amount of "gross income" is alleged nor any "substantial tax deficiency" was specifically alleged as a result of the gross income theory. Also, no specific provision which any theory of a substantial tax liability could be defended by Springer is alleged. Boulware v. U.S., 06-1509 (U.S. 3-3-2008) 128 S.Ct. 1168 And finally, there is no allegation in any Count as to the "source" of the income alleged that would justify the theory of triggering the requirement to provide such information to the Internal Revenue Service on any U.S. Individual Income Tax Form.

**A.**    **SUMMARY OF COUNT ONE, TWO, THREE, FOUR, FIVE, AND SIX.**

The Grand Jury alleges in Count One Springer misrepresented the "source

1

and nature" of Springer's income. The Grand Jury alleges in Count Two, Three and Four, a "substantial tax deficiency" was owed by Springer for years 2000, 2003 and 2005 but commits to no amount of "gross income" or any "amount" which would be considered the alleged "substantial deficiency." Count Five and Six merely allege Springer's Gross Income was "in excess" of either $7700 or $15,900 triggering some requirement to provide information theory. At no time does the Grand Jury ever allege the "source and nature" of the "gross income."

**B.     LEGAL ARGUMENT IN FAVOR OF DISMISSAL.**

The elements of a § 7201 violation are an affirmative act constituting an evasion or attempted evasion **of the tax**, willfullness, and the **existence of a substantial tax deficiency**. Sansone v. United States, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); United States v. Swallow, 511 F.2d 514, 519 (10th Cir.), cert. denied, 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66 (1975). The failure to file a tax return is insufficient to establish the affirmative act necessary for a § 7201 conviction. Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943). A tax evasion prosecution must be commenced within six years after the commission of the offense. U.S. v. Payne, 978 F.2d 1177 (10th Cir. 1992)

Because a tax deficiency is an essential element of the crime of tax evasion, Sansone, 380 U.S. at 343, 85 S.Ct. at 1004; Swallow, 511 F.2d at 514, the statute of limitations did not begin to run on Defendant's § 7201 violations until Defendant incurred a tax deficiency. See United States v. Kafes, 214 F.2d 887, 890 (3d Cir.) (tax

evasion offense not complete until defendant's tax payment became due), cert. denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954).  There is no criminal tax evasion without a tax deficiency.  Boulware v. U.S., 06-1509 (U.S. 3-3-2008) 128 S.Ct. 1168

The Sixteenth Amendment, of course, allows for the imposition of taxes on income (though not other items) without regard to apportionment among the States or to any census or enumeration Hill v. Kemp, 478 F.3d 1236, n.13 (10th Cir. 2007)   In O'Gilvie v. United States, 66 F.3d 1550, 1555 (10th Cir. 1995), the 10th Circuit stated that "the language of § 61(a) of the Internal Revenue Code - '[e]xcept as otherwise provided in this subtitle, gross income means all income from whatever source derived' - precluded the application of exceptions from gross income not specifically appearing in the subtitle."  St. Charles Inv.Co. V. CIR, 232 F.3d 773, 776-777 (10th Cir. 2000)

**C.    COUNTS TWO, THREE, FOUR, FIVE AND SIX FAIL TO ALLEGE AMOUNT OF GROSS OR TAXABLE INCOME NOR DO COUNTS TWO, THREE AND FOUR,  ALLEGE THE AMOUNT OF THE TAX DEFICIENCY OR LIABILITY**.

In this case Counts Two, Three, Four, Five and Six suffer from alleging any amount of gross income nor do either Counts Two, Three or Four, allege the "substantial deficiency." Springer asked the Government whether all money given Springer not specifically alleged in Counts Two, Three and Four, were conceded as "gifts" to which the Government did not have any definite answer.

There is no doubt gifts are not included within the calculation of gross

3

income. There is likewise no doubt Springer received numerous gifts. The controversy here is where the Government wishes to prove money given Springer was not intended as gifts but from some other reason.

In this case the Government shows how abusive the Grand Jury system can be. It convinced a Grand Jury a tax deficiency exists without every having the Grand Jury allege what that tax deficiency is or how it was derived for Counts Two, Three and Four. And for all Counts "gross income" was somehow determined without reference to any amount whatsoever.

The problem this creates shows the Government could shift its theory at trial and attempt to demonstrate a certain transaction was not a gift wholly unrelated to any transaction they apparently convinced a Grand Jury was, in fact, not a gift.

The United States has had 4 plus years to get their theory together and Counts Two, Three, Four, Five and Six, fail to allege the amount of "gross income" and Counts Two, Three and Four, fail to allege the "tax deficiency" amount element under the circumstances of this case.

**D.  COUNT ONE, TWO, THREE, FOUR, FIVE AND SIX, FAIL TO ALLEGE THE "SOURCE" OF THE ALLEGED INCOME.**

The Sixteenth Amendment allows for imposition of a tax on income from certain "sources" without regard to apportionment among the States or to any census or enumeration Hill v. Kemp, 478 F.3d 1236, n.13 (10th Cir. 2007)  In O'Gilvie v. United States, 66 F.3d 1550, 1555 (10th Cir. 1995), the 10th Circuit stated that in the language of § 61(a) of the Internal Revenue Code - gross income means "all

4

income from whatever source derived." St. Charles Inv.Co. V. CIR, 232 F.3d 773, 776-777 (10th Cir. 2000)   These words mean in order to allege "gross income" present sufficient to trigger the "in excess" theory alleged by the Grand Jury throughout the indictment, the "source" of that gross income must be alleged.

In Singer v. United States, 3 Cir., 58 F.2d 74, 75, the court concluded "that the indictment did not inform the defendant with sufficient particularity to enable him to prepare his defense without surprise and embarrassment; and that the greatly exaggerated allegations in respect to amounts, the confusion, and the interruptions in an effort to unravel the facts, all considered together, prejudiced him." Rose v. U.S., 128 F.2d 622, 624 (10th Cir. 1942)

In each Count in the indictment of this case, we have no allegation of any amounts, no allegation of any "source," of any gross income, leaving Springer to simply guess as to which money given by which persons over the last umpteen years the Government intends to argue was not a gift and what was a gift.

Although donative intent "is not an essential element in the application of the gift tax," the presence of donative intent suggests that a gift has been made. Estate of Davenport v. CIR, 184 F.3d 1176, 1181 (10th Cir. 1999) "[T]he general and longstanding rule in federal tax cases [is] that although state law creates legal interests and rights in property, federal law determines whether and to what extent those interests will be taxed." United States v. Irvine, 511 U.S. 224, 238 (1994); see also Autin v. Commissioner, 109 F.3d 231, 233 (5th Cir. 1997) ("No court considering

federal taxation problems has challenged the premise that state law determines the nature of the property right; federal law's task is to determine the appropriate tax treatment when such property rights are transferred."). However, in federal taxation cases, state law controls only to the extent that certain statutory provisions of the federal revenue laws make their application dependent on state law. Davenport at 1181

To constitute a valid gift under Oklahoma law, the donor must be competent to make a gift. See In re Estate of Hoyle, 866 P.2d 451, 453 (Okla. Ct. App. 1993) (citing Davis v. National Bank of Tulsa, 353 P.2d 482, 486 (Okla. 1960)); Frazier v. Oklahoma Gas & Elec. Co., 63 P.2d 11, 13 (Okla. 1936). In addition, there must be donative intent, delivery of the gift, and the "donor must strip himself of all ownership and dominion over the subject matter." In re Estate of Rolater, 542 P.2d 219, 222 (Okla. Ct. App. 1975); see Stinchcomb v. Stinchcomb (In re Estate of Stinchcomb), 674 P.2d 26, 30 (Okla. 1983).  Davenport, at 1182

"Whether a particular exchange generated secular or religious benefits to the taxpayer was irrelevant, for under § 170 "[i]t is the structure of the transaction, and not the type of benefit received, that controls." Hernandez v. CIR, 490 U.S. 680, 688 (1989)

"The House and Senate Reports on the 1954 tax bill, for example, both define 'gifts' as payments 'made with no expectation of a financial return commensurate with the amount of the gift.' S. Rep. No. 1622, 83d Cong., 2d Sess., 196 (1954); H. R.

Rep. No. 1337, 83d Cong., 2d Sess., A44 (1954)." Hernandez, at 690

If the Scientologist,`price' were deemed to make participation in their religious services a material, financial, or economic benefit such that the Staples' payments were not contributions, then `the passing of the collection plate in church would make the church service a commercial project.' See Murdock v. Pennsylvania, 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943).   Staples v. Commissioner, 821 F.2d 1324 (8th Cir. 1987)

In ascertaining whether a given payment was made with "the expectation of any quid pro quo," S. Rep. No. 1622, supra, at 196; H. Rep. No. 1337, supra, at A44, the IRS has customarily examined the external features of the transaction in question.    Quid pro quo is defined in Black's Law, Sixth Edition, as "what for what or something for something."

There is nothing in discovery provided that answers the question as to what the "source" of the income is that the Grand Jury alleges triggered certain duties in the Internal Revenue Code of Springer, as alleged in Counts One through Six, nor does the discovery identify the amount of "gross income" from these sources the Government intends to prove was something for something instead of a gift and what that something was or is.

CONCLUSION

Lindsey Kent Springer requests dismissal of Counts One, Two, Three, Four, Five and Six , because the Grand Jury did not allege and specify the "source" of any

gross income or the amount of "gross income" that it derived the purported "substantial" tax deficiency claims for Counts Two, Three and Four, and to which the "requirement to provide information" is alleged to have been triggered by the receipt of such alleged gross income for Counts One (impeding functions), and Two, Three, Four, Five and Six.

                                            Respectfully Submitted
                                            /s/ Lindsey K. Springer
                                            Lindsey K. Springer
                                            5147 S. Harvard, # 116
                                            Tulsa, Oklahoma 74135
                                            918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Memorandum of Law in Support of his Fourth Motion To Dismiss was ecf'd on May 15, 2009, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

<u>/s/ Lindsey K. Springer</u>
Signature