IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' SUR-REPLY TO DEFENDANT SPRINGER'S REPLY BRIEF[1]**

The United States of America, by and through its attorneys, David E. O'Meilia, United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke, Assistant United States Attorney, and Charles A. O'Reilly, Special Assistant United States Attorney, hereby files this Sur-Reply in opposition to Defendant Lindsey Kent Springer's Reply Brief (Doc. 81), pursuant to the Court's order dated June 18, 2009, suggesting that the Government address Defendant Springer's propositions numbered 1, 2, 6 and 7.

Through Defendant's pleadings, Defendant is attempting to inject doubt where none exists.  Further, he is attempting to do so without letting a jury pass on reasonable doubt. As the Grand Jury charged in the Indictment, Defendant provided legal services to numerous clients during the years 2000 through 2005.  Defendant's clients paid money to Defendant

---

[1]The Government hereby responds to Defendants' Reply Brief because, by Defendant Oscar Amos Stilley's filing titled Adoption of Pleading (Doc. 92), Defendant Stilley adopted "pleadings docket numbered 81 and 82, as if set forth word for word."

in payment for his services; at Defendant's instruction the clients called these payments gifts.

Defendant paid no federal income tax and filed no federal income tax returns, Forms 1040

or otherwise, for the years 2000 through 2005.  Defendant took affirmative acts in an attempt

to evade the income tax due and owing on his income.   Finally, Defendant and his

codefendant agreed to defraud the United States by impeding, impairing, obstructing and

defeating the lawful government functions of the Internal Revenue Service in the

ascertainment, computation, assessment and collection of federal individual income taxes.

    1.    <u>Venue</u>

As stated in the United States' Consolidated Response to Defendants' Motions to

Dismiss (Doc . 71), venue is appropriate in each district in which a federal criminal offense

is committed. *See* 18 U.S.C. § 3237(a).  With respect to the conspiracy and tax evasion

charges, Defendant's assertions regarding the non-existence of internal revenue districts are

irrelevant.  Venue in a conspiracy charge is appropriate in any judicial district where the

agreement was made or where an overt act in furtherance of the conspiracy was committed.

*Hyde v. United States*, 225 U.S. 347, 362-63 (1912); *United States v. Record*, 873 F.2d 1363,

1366 (10th Cir. 1989).  Venue is appropriate for charges of tax evasion in any district in

which an affirmative act of evasion occurred.  *United States v. Marchant*, 774 F.2d 888, 891

(8th Cir. 1985).

Failure to file a tax return is a crime of omission.  Venue for a crime of omission lies

in any judicial district in which the duty could have been performed, that is, the district in

which the defendant was required to file. *United States v. Clines*, 958 F.2d 578, 583 (4th Cir. 1992); *United States v. Rice*, 659 F.2d 524, 526 (5th Cir. 1981); *United States v. Commerford*, 64 F.2d 28, 32-33 (2d Cir. 1933).

In finding Maryland to be an appropriate venue, and rejecting the defendant's contention that he could only be prosecuted in the Eastern District of Michigan,[2] the *Cline* court stated:

> the principal concern the courts have advanced as underlying the constitutional venue provisions: conducting trials in the vicinage of the crime in order to avoid unfairness and hardship to defendants as a result of prosecutions in remote places. *See, e.g., United States v. Cores*, 356 U.S. 405, 407 (1958). This 'basic policy of the Sixth Amendment' is best served by holding trial where '[t]he witnesses and relevant circumstances surrounding the contested issues' are located. *Travis v. United States*, 364 U.S. 631, 640 (1961) (Harlan, J., dissenting); *see also Note, Criminal Venue in the Federal Courts: The Obstruction of Justice Puzzle*, 82 Mich.L.Rev. 90, 105 (1983) (concluding that purpose of constitutional venue limitations is 'to promote thorough factfinding'). Clines was a Virginia resident whose accountant had offices in Maryland where he prepared Clines' 1985 and 1986 federal income tax returns. In addition, Clines and his bookkeeper met with and corresponded with his accountant in Maryland.

958 F.2d at 583-84.

Under Defendant's theory, as best the Government can deduce, there was no place to file tax returns for the years 2000 through 2004. This is preposterous. In some manner, during these years the vast majority of United States' taxpayers managed to file their tax

---

[2]    Detroit, Michigan was the location of the post office box to which the IRS reports could be mailed and was also the ultimate location designated for receipt of the Form by the Secretary of the Treasury.

returns and pay their taxes. Furthermore, Defendant does not, and cannot, explain why Defendant has not filed tax returns since the 1980's. The change in the structure of the Internal Revenue Service did not alter the requirement of individuals to file tax returns and pay taxes. Neither did it change the ability of taxpayers to file at the local office of the Internal Revenue Service located within the taxpayer's judicial district.

On a different issue, the Government is baffled by and takes exception to Defendant's various assertions of the what positions the Government has taken. The supposed Government positions fabricated by Defendant include the following:

> The United States decides however to ask this Court to reject United States v. Brewer [sic] . . . and the holding in U.S. v. Taylor [sic] . . .. Defendant's Reply at 2.

Nowhere does the Government ask this Court to reject *United States v. Brewer* or *United States v. Taylor* as alleged in Defendant's Reply at 2. In *United States v. Brewer*, the Court stated that "[o]rdinarily criminal prosecutions must be brought in the district in which the offense was committed, and federal income tax returns must, by statute, be filed in the place of legal residence of the taxpayer or at a service center serving that district, 26 U.S.C. § 6091(b)(1)(A)(i) and (ii), or the principal place of business of the taxpayer." 486 F.2d 507, 509 (10th Cir. 1973) (*overruled on other grounds by United States v. Taylor*, 838 F.2d 630, 633 (10th Cir. 1987). The indictment alleges, and the Government will prove, that Defendant Springer's place of legal residence was within the Northern District of Oklahoma.

> The United States takes the position now that it was not the law that required Springer to 'file' a 'return' but rather because there was no internal revenue districts or district directors, section 6091(b)(1)(B)(i) controls the 'returns' Springer was 'required' to 'make' or 'file.'  Defendant's Reply at 3.

Nowhere does the Government assert "that it was not the law that required Springer to 'file' a 'return' . . .."  Quite the contrary, the Government asserts that the law required Defendant, along with all individuals earning more than the threshold amount, to file a tax return.

> The United States . . . now tells this Court the 'returns' or 'reports' were not required in Austin, Texas, or with the Commissioner, as the Grand jury alleges, but now only at 1645 S. 101st East Avenue, Tulsa, Oklahoma 74128. Defendant's Reply at 8.

The Government does not take this position.  The Government asserts that Defendant was required to file income tax returns and pay income taxes with the Internal Revenue Service for each of the years alleged, and that requirement could have been met in a variety of ways, including by filing the return and paying taxes with the local office of the Internal Revenue Service in Tulsa, Oklahoma.

> The United States is now arguing that Springer and Stilley conspired to deprive the IRS at 1645 S. 101st East Avenue, Tulsa, Oklahoma 74128 of information they were entitled to pursuant to 26 CFR 1.6091-2(2005). Defendant's Reply at 8.

The United States does not make this argument.  The conspiracy alleged in the Indictment is far broader than that.

Defendant filed no individual income tax returns during the years alleged in the Indictment, either with the Commissioner of the Internal Revenue Service in Washington,

D.C., at the Service Center in Austin, Texas, or by hand-delivering them to the Internal

Revenue Service office in Tulsa, Oklahoma.  The fact that Defendant could have filed his

tax returns in Austin, Texas, does not change the fact that venue is appropriate in the

Northern District of Oklahoma for the crime of willful failure to file.  Therefore, Defendant's

Motion to Dismiss for Lack of Venue (Doc. 51) should be denied.

       2.      <u>Paperwork Reduction Act of 1995</u>

The Government hereby adopts its response from the United States' Consolidated

Response to Defendants' Motions to Dismiss (Doc. 71).  Defendant's position with respect

to the Paperwork Reduction Act was previously rejected by Chief District Judge Claire

Eagan in *Springer v. United States*, 447 F.Supp.2d 1235 (NDOK 2006).  Defendant's

reassertion of the defense here is frivolous.

The Paperwork Reduction Act is not a defense to the crime of willfully failing to file

a tax return.

> [T]he obligation to file a tax return stems from 26 U.S.C. § 7203, not from
> any agency's demand. The Paperwork Reduction Act does not repeal § 7203.
> Repeal by implication depends on inconsistency that makes it impossible to
> comply with the newer law while still honoring the old one (citations omitted),
> and there is no such inconsistency between §7203 and the Paperwork
> Reduction Act. One reason for this is that § 7203 requires a "return" but does
> not define that word or require anyone to use Form 1040, or any "official"
> form at all.  All that is required is a complete and candid report of income.

*United States v. Patridge*, 507 F.3d 1092, 1094-95 (7th Cir. 2007).  The distinction

Defendant seeks to draw from language in *Patridge* that appears to indicate a taxpayer could

comply with the filing requirement by filing something other than a Form 1040 is irrelevant.

Defendant filed nothing reporting income or deductible expenses with the Internal Revenue Service during the years at issue.

Defendant alleges that the Government is committing "scandalous behavior" by taking case quotations "out of context . . .." Defendant's Reply at 12. Defendant is wrong, and cannot demonstrate any out of context quotations by the Government. Defendant cites *United States v. Dawes* in support of his position, but *Dawes* holds to the contrary.

> The issue in this case is whether the lack of Office of Management and Budget control numbers required by the Paperwork Reduction Act on the relevant federal tax regulations and instructions prevented the district court from convicting the appellants for their failure to file income tax returns for the years 1981 through 1983. Because we agree with the district court that such numbers are not required for these documents, we affirm.

*United States v. Dawes*, 951 F.2d 1189, 1190 (10th Cir. 1991).

In Defendant's citation to *United States v. Chisum*, 502 F.3d 1237 (10th Cir. 2007), is inapposite, as in *Chisum* the charges were predicated on the filing of false information, not the failure to file." *Id*. at 1244. Furthermore, and as indicated above, Defendant has been directly told that his theory that the Paperwork Reduction Act provides sanctuary for his willful non-filing is improper:

> Plaintiff's allegations rely on the language of the public protection provision of the PRA, which states that "no person shall be subject to any penalty for failing to comply with a collection of information ... if the collection of information does not display a valid control number." 44 U.S.C. § 3512(a)(1). However, it is settled law that "the requirement to file a tax return is mandated by statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA." *United States v. Dawes*, 951 F.2d 1189, 1191-92 (10th Cir.1991).

*Springer v. United States*, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006).[3]

Defendant's "complete defense" is no defense.  Defendant has previously has been informed by at least one federal district court that it is a baseless position.

>    6.       Count One Defraud

In proposition number 6 of Defendant Springer's Reply, Defendant contends that Count One of the indictment should be dismissed, apparently because he claims the indictment doesn't allege a violation of Title 18, United States Code, §371. The Government first adopts it response to this same claim, which response is set forth at pages 10 -13 of the United States' Consolidated Response to Defendants' Motions to Dismiss (Doc. 71).  In his Reply, Defendant totally fails to address  the basic principles and the cases cited by the Government setting forth the standards for granting a motion to dismiss an indictment before trial, and upholding the use of 18 U.S.C. §371's "defraud clause," including  *United States v. Redcorn:*

> An indictment is sufficient if it sets forth the elements of the offense charged,
> puts the defendant on fair notice of the charges against which he must defend,
> and enables the defendant to assert a double jeopardy defense.[I]t is generally
> sufficient that an indictment set forth an offense in the words of the statute
> itself, as long as those words themselves fully, directly, and expressly, without
> any uncertainty or ambiguity, set forth all the elements necessary to constitute
> the offence intended to be punished.  Therefore, where the indictment quotes
> the language of a statute and includes the date, place, and nature of illegal

---

[3]In a footnote to *Springer v. United States*, the Court added: "[s]ee *also James v. United States*, 970 F.2d 750 (10th Cir. 1992) (holding that the lack of an OMB number on IRS notices and forms does not violate the PRA); *United States v. Collins*, 920 F.2d 619 (10th Cir. 1990) (defendant's argument that Forms 1040 lacked expiration dates and, therefore, failed to comply with PRA is legally frivolous)."  447 F.Supp.2d at 1238, n 2.

> activity, it need not go further and allege in detail the factual proof that will be
> relied upon to support the charges. [internal quotations and citations omitted]

528 F.3d 727, 733 (10th Cir. 2008). In this case the defendants have been provided with much more detail than the statutory language in Count One, in the form of numerous overt acts.

An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true. *Id.*

Defendant ignores the fact that Count One is brought under the "defraud clause" of §371, makes up what he says must be the elements of the conspiracy charged against him, and then claims that his elements make no sense. In support of his argument, Defendant cites several Tenth Circuit cases (*Dazey; Moorehead; Esparsen;* and *Kendall)* which are not helpful because they do not involve the "defraud clause". Most are drug cases charging a violation of 21 U.S.C. § 846. Defendant's argument seems to be directed at how the Court should word jury instructions at trial, which is not the issue before the Court in this motion to dismiss. (*i.e. United States v. Bedford,* 536 F.3d 1148 (10th Cir. 2008) deals with jury instructions). The only time "to violate the law" is mentioned in the elements that the Government set forth on page 11 of its Consolidated Response , to be obfuscated by Defendant, is in the first[4]. As adequately charged in Count One, the "law" that Defendant:

---

[4]In *United States v. Thompson,* 518 F.3d 832, 853 (10th Cir. 2008) (cited by Defendant), the court set out elements for a conspiracy under the "defraud clause" that were remarkably similar to those set out in the Government's Response.

> agreed with at least one other person to violate [is] to defraud the United States, by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is, federal individual income taxes.

This "straw man" approach to the issue does not provide support for any claim by Defendant that Count One of the indictment does not adequately charge him with conspiracy to defraud the United States.

Count One is charged as a *"Klein conspiracy"* under the "defraud clause." *See United States v. Klein*, 247 F.2d. 908 (2d. Cir. 1957), *cert. denied 355 U.S. 924 (1958).* In *Klein,* the court noted that the Supreme Court in *Hammerschmidt v. United States,* 265 U.S. 182, 187-88 (1924) recognized not only § 371's "defraud clause" but that the clause reaches both a conspiracy to cheat the government out of property or money <u>and</u> any conspiracy designed to impair, obstruct, or defeat the lawful function of any department of the government. *Id.; and see: United States v. Clark,* 139 F.3d 485,488-89 (5th Cir. 1998). In *United States v. Ervasti,* 201 F.3d 1029, 1039-40 (8th Cir. 2000), the court also recognized this dichotomy, and found that charging two defendants  under both "clauses" of § 371 in the same indictment did not violate the Double Jeopardy Clause.

In any event, whatever elements are ultimately included in jury instructions at trial, does not affect the issue of whether Count One of this indictment, <u>on its face</u>, has set forth the elements of the crime charged in the "defraud clause" of 18 U.S.C. § 371 (conspiracy),

which it has.  Defendants' Motion to Dismiss Grand Jury Indictment for Failure to Plead Fraud Particularly (Doc. 61) should be denied.

7.       Meadors and the Fourth and Fifth Amendment

The Government adopts and realleges its response to this allegation in the Government's Response (Doc. 71).

Defendant Springer's fabrications and false allegations notwithstanding, there is no evidence that Revenue Agent Donna Meadors "was actively involved with [David] Reed and the Criminal Investigation of Springer as early as 2003." (Defendant's Reply at 26).  In support of his allegation, Defendant cites to "Exhibits 5, 6 and 7 therein," (referring, apparently, to exhibits attached to his Motion for *Franks* hearing, and to Suppress (Doc. #75) (*Id.* at 26), none of these exhibits support this allegation.  A review of these exhibits quickly establishes the fallacy of Defendant's assertions.  For example, Defendant's Exhibit 5 is a one page facsimile transmission from IRS employee Sherry Gottschalk to Kris Roberson dated July 3, 2001.  Nothing in this document relates to Revenue Agent Meadors. Exhibit 6 is another internal IRS memorandum dated March 6, 2003, from Thomas M. Concannon to Bobbie J. Fowler in which Mr. Concannon inquires if there is an ongoing [6700] civil investigation going on Lindsey K. Springer.  Again, Revenue Agent Donna Meadors is not mentioned in this Exhibit. Exhibit 7 is a memorandum from Mark A. Jaramillo to Kevin McCarthy, dated October 14, 2003, discussing the ongoing [6700] civil investigation, which

mentions that IRS Criminal Investigation may wish to begin a parallel criminal investigation. Again, Revenue Agent Donna Meadors is not mentioned in this Exhibit.

Revenue Agent Meadors did not conduct any 6700 investigation (or interview) with Defendant Springer while he was participating in the defense of Eddy Patterson (and his wife) in federal court in Tulsa in the Fall of 2003. From January 26, 2004 - December 2, 2004, then Revenue Agent Meadors was conducting a [6700] civil investigation into whether Defendant Springer was promoting an abusive tax shelter program. Defendant Springer has produced no evidence supporting his claim that Revenue Agent Donna Meadors was working with David Reed, with AUSAs Horn or Nelson, or with anyone else in a criminal tax investigation of Springer during 2003 or 2004. Nor has Defendant Springer shown how anything from that 6700 investigation, or from anything done by Revenue Agent Donna Meadors, including Defendant's 6700 interview, affected the criminal indictment in this case, or should cause a dismissal thereof.

With respect to Defendant Springer's continued claim of selective prosecution, the Government refers the Court to pages 16 - 17 of its original Response. Contrary to the assertions contained in Defendant Springer's Reply, there is no evidence of any kind of discriminatory effect and purpose in the prosecution of Springer for the tax years involved in this Indictment. That prosecution was brought as a result of evidence that Defendant Springer earned income during the years in question for legal services or paralegal services,

and failed to file tax returns or pay taxes on that income, and not because of any alleged anti-tax statements he may have made individually, or through Bondage Breakers Ministries.

To satisfy his burden claiming selective prosecution, Defendant Springer must show "(1) he was singled out for prosecution while others similarly situated were not generally prosecuted; and (2) the prosecution was invidiously based on racial, religious, or other impermissible considerations." *United States v. Bohrer*, 807 F.2d 159, 161 (10th Cir. 1986); *citing United States v. Amon*, 669 F.2d 1351, 1356-57 (10th Cir. 1981). Defendant Springer has the burden of producing evidence supporting this two-pronged test, and have failed to do so. *Amon*, *id*.

In *United States v. Rickman*, 638 F.2d 182 (10th Cir. 1980) the Court affirmed the denial of a defendant's claim of selective prosecution based, as here, on his argument that he was charged because of his outspoken criticism of the federal income tax laws. The Court said:

> Neither aggressive display of opposition to a law, nor blatant
> challenge that the government prosecute, creates immunity from,
> or defense to, prosecution. (internal citations omitted).

*Rickman,* 638 F.2d at 183; *see also United States v. Samara,* 643 F.2d 701, 705 (10th Cir. 1981).

Defendant Springer has shown none of the elements needed to establish unconstitutional selectivity. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

Defendant Springer, presumably on behalf of Defendant Stilley (who has adopted Defendant Springer's Reply) argues "to argue Shern innocently in March 2006 lied to Stilley about whether he was a target of Shern's investigation while Shern served a subpoena on Stilley to appear before a grand jury is simply fraudulent and beyond prosecutorial misconduct." That was not the Government's argument. Defendant Stilley claimed, and the Government argued that Special Agent Shern, on May 17, 2006 (over two months after Defendant Stilley's sole appearance before the federal grand jury (pursuant to a previously issued subpoena) while speaking to Defendant Stilley over the phone to determine whether Defendant Stilley would accept, via facsimile transmission, a follow-up grand jury subpoena for an appearance scheduled in June 2006, told Defendant Stilley that he was not then under criminal investigation by the IRS. It was that representation to which the Government referred earlier. (See Response (Doc. 71), p. 17 - 20).

Likewise, AUSA Snoke's statement to Defendant Stilley, upon Stilley's appearance as counsel for a defendant named Blackstock, occurred on June 15, 2006, more than three months after Defendant Stilley's only appearance before the federal grand jury. This representation was made to the magistrate judge conducting the arraignment of Defendant Blackstock, to avoid any possible conflict of interest on the part of attorney Stilley, and was based on information received from AUSA Loretta Radford, the AUSA then conducting the investigation of defendant Springer. AUSA Radford had caused the subpoenas to be issued to attorney Oscar Stilley for his appearance before the grand jury on March 9, 2006, in that

investigation of Springer.  Since Defendant Stilley never re-appeared before the grand jury,

nor provided any interviews or testimony to law enforcement, after any representations made

by Special Agent Shern in May 2006, those representations cannot have influenced attorney

Stilley's decision with respect to his appearance before the grand jury on March 9, 2009.  In

any case, this argument does not support either Defendants' motion to dismiss the indictment

in this case.

Defendant Springer's Motion to Dismiss Grand Jury Indictment for Violations of

Fourth and Fifth Amendment and Selective Prosecution (Doc. 65) should be denied.

CONCLUSION

For the foregoing reasons, each of Defendant's motions to dismiss, all of which were

adopted by Defendant Stilley, should be denied.

Respectfully submitted,


DAVID E. O'MEILIA
UNITED STATES ATTORNEY




 */s/ Kenneth P. Snoke*
KENNETH P. SNOKE, OBA No. 8437
Assistant United States Attorney
CHARLES A. O'REILLY, CBA No. 160980
Special Assistant U.S. Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma  74119
(918) 382-2700

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of June 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lindsey Kent Springer
*Pro se* Defendant

Oscar Amos Stilley
*Pro se* Defendant

Robert Williams
Standby Counsel assigned to Lindsey Kent Springer

Charles Robert Burton, IV
Standby Counsel assigned to Oscar Amos Stilley.

/s/ Kenneth P. Snoke
Assistant United States Attorney