IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                              Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

**SPRINGER'S OPPOSITION TO PLAINTIFF'S MOTION TO QUASH**

Lindsey K. Springer ("Springer") files his response in opposition to Plaintiff's Motion to Quash Subpoenas filed by its attorneys, Thomas Scott Woodward, Acting United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke, Assistant United States Attorney, and Charles A. O'Reilly, Special Assistant U.S. Attorney ("Plaintiff").   This Motion is but another example of how Attorneys can waist $ 374 Billion Dollars with only one agenda.   Preventing justice based upon truth.

Plaintiff acknowledge Eddy and Judith Patterson were also subpoenaed but stop short of including those subpoenas in their Motion to Quash ("except the Pattersons") or explaining how they learned of that fact.  The Motion seeks to quash the properly issued and served subpoenas of Kathy Beckner, Donna Meadors, Brian Shern, Donald Shoemake, Douglas A. Horn, William Taylor and  Melody Nelson.

Plaintiff acknowledges the subpoenas are set for the same date as the

1

"currently scheduled ... July 2, 2009 ... hearing on the Defendant Springer's Motion on a *Franks* issue, Motion to Suppress, and Motion for Bill of Particulars."Motion at 1

Plaintiff argues that the subpoenas are each issued in violation of Title 5, Section 301 and the regulations thereunder.[1]  The Attorneys give only four reasons the subpoenas, other than the Pattersons, should be quashed.   The Attorney's Motion should be denied.

## 1.   First Reason

First up is the Attorneys' request to quash because Springer has not complied with Title 5, United States Code Section 301.  The Attorneys write:

> First, the subpoenas served on the employees of the United States (each individual except the Pattersons) must be quashed because Defendant Springer did not comply with the procedures set forth pursuant to Title 5, United States Code Section 301.

Plaintiff is referring to United States, ex rel. v. Touhy, 340 U.S. 462, 467 (1951). The *Touhy* regulations were enacted by various government agencies under the authority of the so-called "Federal Housekeeping Statute." 5 U.S.C. § 301. This statute allowed government agencies to create procedures for responding to subpoenas and requests for testimony. See, e.g., Comm. for Nuclear Responsibility, Inc. v. Seaborg, 463 F.2d 788, 793 (D.C. Cir. 1971). They do not, however, confer a separate privilege upon the government, nor create a legal basis to withhold information pursuant to a federal subpoena. See Houston Bus. Journal v. Office of the

---

[1]Those regulations are 31 CFR 1.11, 26 CFR 301.9000-1 and 28 CFR 16.27.  Motion at 3.

Comptroller of the Currency, 86 F.3d 1208, 1212 (D.C. Cir. 1996); see also Watts v. SEC, 482 F.3d 501, 508-09 (D.C. Cir. 2007) ("[T]he legal basis for any opposition to a subpoena must derive from an independent source of law such as government privilege or the rules of evidence or procedure." (citing James WM. Moore et. al., MOORE'S FEDERAL PRACTICE § 45.05(1)(b) (3d ed. 2006)).

However, Touhy's rationale was undermined by a decision rendered by the Supreme Court two years later, in which it considered a claim of governmental privilege and noted, "Judicial control over the evidence in a case cannot be abdicated **to the caprice of executive officers**." United States v. Reynolds, 345 U.S. 1, 9-10 (1953).[2] Touhy's holding was further weakened by a 1958 amendment to the Housekeeping Statute, which added the language, "This section does not authorize withholding information from the public or limiting the availability of records to the public."

Of course, at the root of Plaintiff's problem with the Subpoenas is the Fourth, Fifth and Sixth Amendment.  These subpoenas were issued regarding a Frank's Hearing set for July 2, 2009.   In Franks v. Delaware, 438 U.S. 154, 155 (1978) The Supreme Court reversed a decision from Delaware and held that:

"where the defendant makes a substantial preliminary showing that

---

[2]Yet, Plaintiff argues "The regulations enacted pursuant to 5 U.S.C. §301, generally termed *Touhy* regulations, constitute **an absolute condition precedent to compliance with subpoenas served on employees of the United States.**"  See Motion, Footnote 1

a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, **the Fourth Amendment requires that a hearing be held at the defendant's request**. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Most of what is at issue revolves around an unsworn document labeled "Affidavit in Support of Application for Search Warrant" wherein Brian Shern states what others in his office told him about what others said to those in his office about Springer prior to Shern being out of high school or through College. The only first hand knowledge Shern stated he had was he observed where Springer parked his cars at night.

Since "at least since the decision in United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039, such an official may be subpoenaed and required to produce relevant evidence. See also United States v. Andolschek, 142 F.2d 503, 506 (2d Cir.)." See  United States v. Allen, 554 F.2d 398, 406 (10th Cir. 1977) The 10th Circuit in Allen stated they "do not have the problem, however, of whether the court should have rejected a refusal by the Department due to the constitutional guarantees of the Fifth and Sixth Amendments."

This Case is about a purported "affidavit" containing "false statements made

knowingly and intentionally, or with reckless disregard for the truth." An affidavit submitted in support of a search warrant application is presumed valid, see Franks, 438 U.S. at 171, 98 S.Ct. 2674; United States v. Spinosa, 982 F.2d 620, 626 (1st Cir. 1992) (quoting Franks), but that presumption may be surmounted by a showing that it contains either (1) a "false statement [made] knowingly and intentionally, or with reckless disregard for the truth," Franks, 438 U.S. at 155, 98 S.Ct. 2674, or (2) "technically accurate statements" that "have been rendered misleading by material omissions." United States v. Scalia, 993 F.2d 984, 987 (1st Cir. 1993).

Plaintiff is asking this Court to allow it to be the final say over whether statements made were false or not in the presentation of statements apparently used to obtain a purported "warrant" to search Springer's home.

The regulations do not support the Attorney's Motion.

31 CFR 1.11 reads in relevant part:[3]

(a)(4) This section is intended **only to provide guidance** for the internal operations of the Department and to inform the public about Department procedures concerning the service of process and responses to demands or requests, and the procedures specified in this section, <u>or the failure of any Treasury employee to follow the procedures specified in this section, are not intended to, do not, and may not be relied upon to create a right or benefit, substantive or procedural</u>, enforceable at law by a party against the United States.

---

[3]See New Mexico Dept. of Human Servs. v. Department of Health & Human Servs. Health Care Fin. Admin., 4 F.3d 882, 884-85 (10th Cir. 1993) (holding appellate court must give agency's interpretation of statutory provision it administers "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute")

(b)(1) *Agency counsel* means: (i) With respect to the Departmental Offices, the General Counsel or his or her designee;

(6) *General Counsel* means the General Counsel of the Department or other Department employee to whom the General Counsel has delegated authority to act under this subpart.

(d)(2) **A subpoena or other demand for testimony directed to an employee or former employee shall be served in accordance with the Federal Rules of Civil or Criminal Procedure or applicable State procedure and a copy of the subpoena shall be sent to agency counsel**.


26 CFR 301.9000-1 clearly says:

The term does not include records or information obtained by IRS officers and employees, solely for the purpose of a federal grand jury investigation, while under the direction and control of the United States Attorney's Office.

The term IRS records or information nevertheless does include records or information obtained by the IRS before, during, or after a Federal grand jury investigation if the records or information are obtained— (1) At the **administrative stage of a criminal investigation** (prior to the initiation of the grand jury); (2) From IRS files (such as transcripts or tax returns); or (3) For use in a subsequent civil investigation.


28 CFR § 16.23 "General disclosure authority in Federal and State

proceedings in which the United States is a party" and directs:

(a) Every attorney in the Department of Justice in charge of any case or matter in which the United States is a party is authorized, after consultation with the ''originating component'' as defined in § 16.24(a) of this part, **to reveal and furnish to any person, including an actual or prospective witness, a grand jury, counsel, or a court, either during or preparatory to a proceeding, such testimony, and relevant unclassified material, documents, or information secured by any attorney, or investigator of the Department of Justice, as such attorney shall deem necessary or desirable to the discharge of the attorney's**

**official duties**: *Provided,* Such n attorney shall consider, with respect to any disclosure, the factors set forth in § 16.26(a) of this part: *And further provided,* An attorney shall not reveal or furnish any material, documents, testimony or information when, in the attorney's judgment, any of the factors specified in § 16.26(b) exists, without the express prior approval by the Assistant Attorney General in charge of the division responsible for the case or proceeding, the Director of the Executive Office for United States Trustees (hereinafter referred to as ''the EOUST''), or such persons' designees.

Plaintiff does not argue Springer failed to comply with any of these rules nor could they. The lawyering going on here concludes "Compliance with 31 C.F.R. §§ 1.8 *et seq.*, 26 C.F.R. §§ 301.9000-1 *et seq.* and 28 C,F,R. §§ 16.21 *et seq.* constitutes an absolute condition precedent to compliance with the subpoenas served on the employees of the Internal Revenue Service." Motion at 5.

Yet, the Motion does not even attempt to identify any specific regulation or sub regulation the Subpoenas fails to comply with. The Motion does not point to any specific defect in any of the Subpoenas.

A.     **Meadors and Shern.**

Plaintiff argues Meadors and Shern should not have to appear and give testimony at the July 2, 2009, Frank's Hearing. In its Motion to Reschedule the Frank's Hearing, these Attorneys informed the Court "Special Agent Shern will be a witness for the United States if such a hearing is held, and Special Agent Meadors may be called as a witness by the United States and/or the defendants." See Docket # 49. There is no doubt Shern has been approved to testify. He swore in 06-156 that he was assigned to investigate Springer on April 26, 2005. To suggest he

7

needs regulatory approval beyond that he has already received is ridiculous.  Why would Plaintiff seek to delay the Frank's Hearing if Shern and Meadors were not cleared to testify?  Hmmm!

Meadors equally has received approval.  Why else would her vacation plans need to prolong the Frank's Hearing?   Meadors no doubt is someone Shern identifies in section 7 of his unsworn statement dated September 15, 2005.[4]  Plaintiff does not take any exception with that fact nor could they.  In each attachment to each Subpoena, Springer outlined specifically what he intended to ask both Meadors and Shern about, in addition to their presence as witnesses for the Government at the Frank's Hearing.

31 CFR 1.11 and 26 CFR 301.9000-1 have been complied with by Springer and these regulations allow these witnesses to testify according to the specific words of these regulations cited to by the Attorneys.

### B.  Beckner, Taylor and Shoemake,

Plaintiff takes no exception that Shoemake is specifically mentioned by Shern in his unsworn statement and that he relies heavily upon Shoemake.  Nor do they take exception to the fact both Beckner and Taylor were authorized to testify regarding Springer beginning in at least 1995.  Furthermore, these Attorneys take no

---

[4]Not by name here but later in other pleadings Plaintiff admits Meadors is the 6700 investigator.  Meadors is identified as the civil agent in the Patterson trial working side by side with Nelson, Horn, Arsenault and Shoemake.  Meadors exhibits begin on page 11 of 26 and end on page 12 of 26 of the Attorneys attached Exhibits to their Motion to Quash.

exception to the fact Shern's unsworn statement dated September 15, 2005, relied heavily upon the IRS-CI investigation conducted on "Springer during 1998." In each attachment to each Subpoena, Springer outlined specifically what he intended to ask Beckner, Taylor and Shoemake about, in addition to the possible presence as witnesses for the Government at the Frank's Hearing.   Relevance only depends on how Meadors and Shern answer questions relative to their conduct leading up to the purported search warrant at issue.    Meadors told Springer he was not under criminal investigation in 2004 when Horn and Nelson, along with Arsenault and others clearly had told Chief Judge Claire V. Egan otherwise in certain documents. Shern told Stilley he was not under criminal investigation in 2006 when Shern clearly knew otherwise.   Evidence clearly shows Shern was aware of the criminal investigation of Stilley and Springer in 2004 when he stated on "May 6, 2004, an interview was conducted by Special Agent Tim Arsenault with Patterson."   See unsworn statement dated September 15, 2005, pg. 4, paragraph 2.

To the extent they are relevant, 31 CFR 1.11 and 26 CFR 301.9000-1 have been complied with by Springer and these regulations allow these witnesses to testify according to the specific words of these regulations cited to by Plaintiff for purpose of the Fourth Amendment and Franks Hearing.

**C.    Douglas A. Horn and  Melody Nelson.**

Plaintiff has failed to identify any procedure error presented by Springer in the service of Subpoenas on Horn and Nelson.  Springer identified specific points in the

9

attachment to their Subpoenas quoting them and asking them to produce certain documents at their appearance if they have them.  Besides the obvious evasion of service of Springer's Subpoena by Horn himself, Douglas Horn and Melody Nelson each have signed documents claiming they were conducting a criminal investigation of Springer and Stilley before May of 2004.

Shern and Meadors intentionally  lied to Springer and Stilley about their criminal "investigation" of Springer and Stilley respectively. This conduct could only be directed by Horn and Nelson.

28 CFR § 16.23 allows "General disclosure authority in Federal and State proceedings in which the United States is a party" as to these two witnesses.  Plaintiff has not argued otherwise.

Plaintiff then argues:

> Defendant Springer failed to give the required notice under 31 C.F.R. § 1.11(e) and 26 C.F.R. §§ 301.9000-4 precision and clarity to his request for the testimony of the Special Agents and release of the documents. In addition, Defendant Springer requests the documents that would reveal the investigative methodologies and law enforcement techniques of the Internal Revenue Service. The disclosure of these documents will compromise the integrity of the Department's processes. *See* 31 C.F.R. § 1.11(e)(2)(ii). Defendant Springer neither defines the scope of the testimony nor does he circumscribe his request for documents.
> Based on the breadth of the subpoenas and the sensitivity of the requested materials, the Internal Revenue Service cannot authorize the testimony of Special Agents and production of the documents. *See* 31 CFR §1.11(e) (defining factors considered by Department of Treasury counsel in determining whether to give authorization for testimony and document production).

Although Plaintiff cite to 31 CFR § 1.11(e), that section only applies to

"Agency Counsel" and the Attorneys moving to quash the subpoenas are not

"Agency Counsel."  See section 1.11(e)(1) and 1.11(d)(1).  There is absolutely

nothing in 26 CFR 301.9000-4 that requires "precision or clarity" as the Attorneys

argue.   In fact, Plaintiff has absolutely no authority to move to quash any

subpoenas issued to Special Agents of the IRS under this or any other regulation.[5]

Springer takes no exception that the integrity of the Tax Division of the U.S.

Department of Justice is at stake but not the Department of Treasury.

DOJ Attorneys argue "Defendant Springer requests the documents that

would reveal the investigative methodologies and law enforcement techniques of

the Internal Revenue Service. The disclosure of these documents will compromise

the integrity of the Department's processes. See 31 C.F.R. § 1.11(e)(2)(ii)."

Are the DOJ Attorneys arguing that making "false statements" is an

"investigative methodolog[y[" or "law enforcement technique" of the Internal

Revenue Service?  What law was being enforced by these false statements?

In any event, these Attorneys lack any standing to speak on behalf of the

witnesses under the regulations they cite to.

These DOJ Attorneys conclude "the Internal Revenue Service cannot

authorize the testimony of Special Agents and production of the documents." The

---

[5]301.9000-4(a) *Purpose and scope.* This section prescribes procedures to
be followed by IRS officers, employees and contractors upon receipt of a
request or demand in matters in which a testimony authorization is or may be
required.

Court is supplied with no affidavits and no signature of anyone authorized to make this conclusion.  We have only the self serving signature of the prosecuting Attorneys who continue to argue the criminal investigation of Springer began when the Patterson investigation was expanded in 2005 even though Patterson's case concluded on September 1, 2004 and documents with Meadors name all over them shows a criminal investigation in 1995, 1997, 1999, 2001, 2002, 2003 and 2004. These same Attorneys argue Stilley's criminal investigation did not begin until 2007 when the evidence presented to this Court and in the direct control of the Attorneys shows that investigation began prior to May of 2004.

This Court should deny the Motion to Quash filed by these Attorneys, rejecting the reasons given.

**2.  Second Reason**.

The Attorneys argue Second, the subpoenas must be quashed because compliance is both unreasonable and oppressive under Rule 17(c) of the Federal Rules of Criminal Procedure since the subpoenas (1) do not request specific or relevant documents, and (2) the Government has a strong interest in preserving the confidentiality of its investigative methodologies. Moreover, the request is not made in good faith.

Plaintiff appear to only seek quashing the document production side of the subpoenas.  The personal appearance of each witness is not sought to be quashed as to this second reason.

Plaintiff claims the Subpoenas are to broad yet the wording of the Subpoenas are expressed in the wording of the witnesses subpoenaed.  In any event, the wording is not too broad and the Attorneys do not show which words were too broad.  Furthermore, the Attorneys have no authority to represent the witnesses sought by Springer under the rules they cite.  Why would Springer tell a witness in a Subpoena what Springer seeks is "relevant?"  The Form is approved by the courts and has been used for years.  There is no section on the "subpoena" where the person seeking the witness participation clues the witness in on relevance.

Plaintiff argues all the production of documents Springer seeks is in the discovery Plaintiff tendered to Springer and Stilley.  That is for the Court to decide and not the executive branch.

The delusional aspects of the Attorneys claiming Springer was not under criminal investigation until the Patterson investigation was expanded in 2005 and Stilley was not under criminal investigation until 2007, shows why the self serving words of the Attorneys cannot be the final say over evidence.  These witnesses can easily go under oath and answer questions like any other witness.

Shern clearly made false statements in his unsworn statement dated September 15, 2005, and that burden rests on Springer to prove in the Frank's Hearing.  Allowing Plaintiff's Counsel to control that evidence would be scandalous.

13

The Attorneys claim "the interests of Defendant Springer in the subpoenaed documents and communications are nonexistent, in part because Defendant Springer is already in possession of the materials relevant to his case."  Motion at Springer has not sought any "material" he already possesses.  The Attorneys cannot show otherwise.  This is why they did not specifically cite to any words in any Subpoena that would support their end of the world as we know it scenario.

Springer is not certain how to read this part of the Motion as it suggests there are thousands more documents not turned over to Springer and Stilley that would reveal "investigative methodologies."  Motion at 9.

Plaintiff, lacking any power to quash any subpoenas issued by this Court to these witnesses, under the circumstances alleged, refer to Springer's seeking certain specific information from witnesses as a "wild goose chase."  The Attorneys argue Springer is attempting to make work for them.  This is incorrect.  Springer had no control over how the Attorneys brought their claims but once they did Springer's Constitutional Rights, as interpreted by the Supreme Court and other courts, were triggered.  Springer has no intention of allowing those Rights to be defeated by silence or waiver.

**3.    Third Reason**

Plaintiff argues the documents sought pursuant to the subpoenas appear to have already been turned over to the defense pursuant to the Government's discovery obligations.  Such an allegation appears contradictory to the claim that

14

releasing the documents would impair the government's interests, disclose methodologies, etc.  If the government has an explanation for the inconsistency they are invited to so state at the hearing.

This is incorrect.  Nothing sought by Springer has been turned over to Springer. The Attorneys do not cite to any specific documents which Springer seeks which has been turned over.  Every page of discovery turned over has a Bates stamp.  If their allegations were true they could simply cite to pages which have already been disclosed.

Springer has sought the May 3, 2004 Memo of the interview of Ms. Patterson by Melody Nelson since April and that document has not been produced by anyone.  Yet, on August 30, 2004, Ms. Nelson told Chief Judge Eagan such a meeting took place and was deserving of a 80% reduction in sentence for Ms. Patterson.

Every document sought relates to what Shern stated in his unsworn statement dated September 15, 2005, which has not been produced by anyone to Springer that Springer is aware of.   The Attorneys do not specifically show otherwise.   Even if it had been, their remedy is to recite to or rely upon pages of discovery, provided of course that such is done in a manner that will not unduly impede the hearing. Defendants are not unwilling to cooperate in the process of seeking the truth as to the proper issues for this hearing or any other hearing.

### 4.      Fourth Reason

Finally, these Attorneys argue Springer's Witness Subpoenas "constitutes an attempt to circumvent the limitations on disclosure established by Rule 16(a)(2) of the Federal Rules of Criminal Procedure and Title 18, United States Code Section 3500 et seq."  Hardly.  Rule 16 does not address Frank's Hearings.  Nor does it address when the statement relied upon for "probable cause" relies upon false statements fabricated by prosecuting attorneys or their co-conspirators.

Springer is preparing for a Frank's Hearing and Hearing on other motions pending as the Attorneys' acknowledge.  Everything Springer seeks is only relevant to the Frank's Hearing at this point.   Other than claiming protection of the "methodology" theory, these Attorneys do not identify any specific request by Springer that would "circumvent" any disclosure limitation.

What the Attorneys are actually doing is trying to defeat the relevance of a Frank's Hearing without saying it.   These subpoenas were issued to witnesses relevant to the written Statement of Brian Shern and for no other reason.  If all the United States had to do to defeat a Frank's Hearing, and the Fourth Amendment, is forbid anyone from answering any questions or produce any relevant documents, there would be no need for any due process whatsoever.

A Frank's Hearing is not a fishing expedition.  The Fourth Amendment is not a fishing expedition tool.  Springer met his burden clearly and the words from the lips of these witnesses will clearly assist this Court in determining what should be

extracted from the unsworn statement of Brian Shern, and what words on such paper would remain showing probable cause existed after the false statements are extracted.

## CONCLUSION

Lindsey K. Springer respectfully requests this Court to deny the motions to quash for the reasons the Plaintiff lacks standing to move to quash the witness subpoenas, the subpoenas comply with the rules of this Court and Federal Law, that the rules cited by Plaintiff cannot abrogate what the Fourth Amendment protects, and that all the information sought is relevant to the Franks Hearing in allowing the Court to determine what part of the unsworn statement of Brian Shern dated September 15, 2005 should be excised.


Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Springer's Response in Opposition to Plaintiff's Motion to Quash Witness Subpoenas was ECF'd on June 1, 2009, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

<u>/s/ Lindsey K. Springer</u>
Signature