IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

    Plaintiff,

Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

    Defendants.

SPRINGER'S EMERGENCY MOTION REGARDING CERTAIN WITNESS

Lindsey Kent Springer ("Springer") moves the Court for an order prohibiting the Prosecution in this case from attempting in any way to harass or otherwise intimidate the witnesses Springer has listed on his Rule 17(b) motion on September 21, 2009, specifically including Denny Patridge or his wife.[1] Springer seeks an order that **First**, the witness Mr. Patridge is not to be found at any time without his heart and other medicine nor is he to be without Doctor care for any single 24 hour period, let alone the seven days, that he barely survived in August/September 2008 in Olkmulgee County Jail; and **Second,** this Court order that the witness Mr. Patridge be transported in the most direct, quickest route known to the U.S.

---

[1] If Springer hears of any other attempt and the DOJ refused to speak with Springer about such contact Springer will make the Court immediately aware of such circumstances. This is the only one Springer knows of at this time. Mr. Patridge told Springer he was not told why he was being moved out of the Indiana Prison but that he must prepare to leave at once.

1

Marshals, because of his medical needs for purpose of this case; and **Third,** this Court order the Prosecution or their Agents, or anyone else working in concert with them, be restrained from placing the witness Mr. Patridge in any position not invited by the witness Mr. Patridge directly. This includes holding him in any place or moving to any place which is solely so the Prosecution can visit with the witness Mr. Patridge outside of his free will; and **Fourth** that if such meeting is to take place outside the presence of Mr. Springer that such meeting be recorded and such transcript be made available to Mr. Springer; and **Fifth** the Prosecution make known immediately the current location of Mr. Patridge to Mr. Springer and the reasons for any moves Mr. Patridge endures between September 21, 2009 and the time of trial scheduled in this case of October 26, 2009.

BACKGROUND

The case being prosecuted by the United States of America involves whether people gave Springer money in support of his mission to get rid of the IRS in 2000 through 2005 or whether they were paying Springer for "services rendered" through the alleged fake name "Bondage Breaker's Ministries."[2]

---

[2] Counts two, three and four, allege Springer received "income" in a "fictitious name" and Count One alleges Springer used Bondage Breaker's Ministries to solicit and receive money as a "general" allegation of the alleged conspiracy in Count One. In their Motion in Limine the Prosecution suggests Bondage Breaker's Ministries was a "nominee." Using a fake name to hide from the IRS money tendered Springer for "legal services rendered" and using a nominee to receive money as most Ministries do are two entirely different theories offered by the Prosecution. As we get closer to trial once again the theories are clearly changing. The reason is simple because the Prosecution

2

The Prosecution argues in their Motion in Limine that persons who supported Springer's mission should not be allowed to testify at trial because the Prosecution is using the specific item method for prosecution instead of the bank records method. Their argument is that whether someone gave Springer money that was not part of the specific items method is not relevant. See Doc. 137 at 12 The Prosecution is wrong on this point.

The Prosecution argues at the same time that under 404(b) they should be allowed to offer other "acts" which includes Springer's relationship and "involvement with various criminal tax trials and investigations" and "Evidence relating to each defendant's involvement in numerous criminal tax trials and investigations, including what each defendant was told by judges and Internal Revenue Service officials is relevant to this knowledge." See Doc. 134, at 2-3

The Prosecution explains "proof of intent; knowledge, and absence of mistake or accident. Evidence regarding each defendant's involvement with other criminal tax litigation, their financial and tax filing histories, and the defendants'

---

knows the evidence will never show Bondage Breaker's Ministries was established in 2000 to hide purported payment for "legal services rendered" from the IRS as they have maintained up til they filed their Motion in Limine and Trial Brief. Both Shern and the Prosecution mislead the Grand Jury on this subject even when specifically asked by Grand Jurors about it. Shern's March 9, 2009 Grand Jury testimony about the meaning of gift, as amended by Mr. O'Reilly, most certainly violated the dictate in Duberstein. Springer includes this argument to stress why Mr. Patridge and others testimony is vital to rebut the fabricated testimony of persons under the pressure of the Department of Justice while in Prison or on Supervised Release. And of course the IRS can always change their mind too. Every witness in this case is aware of these facts.

contempt for rules, is proper to prove: (1) that each defendant intended to commit the crimes charged; (2) that the acts charged were part of a plan by each defendant to be involved with the conspiracy and tax evasion, and not mere happenstance; (3) the role of each defendant in the charged activity; and (4) each defendant's knowledge of guilt." Doc. 134, at 6

Many of the Prosecution's specific item theory involve a person who is either under direct supervision by the Department of Justice or is currently on supervised release after serving a portion of their sentence and then obtaining 35(b) relief for providing "substantial assistance" in the persecution of Springer. In short, the Prosecution has purchased and unduly changed testimony of these witnesses. Those witnesses are Eddy Patterson, Judy Patterson, Andy Ouwenga, Arthur Hawkins, Ronald Young, Phillip Roberts[3] and James Lake.

These persons each testified at some time before a Grand Jury and also gave statements to Brian Shern recorded in the evidence as "memorandum of interviews."[4] In some instances the pressure of being on supervised release shows the testimony and its construction are inconsistent with what Springer knew to be

---

[3]In the Memorandum of Interview Mr. Shern says Mr. Miller is who set up the interview between Dr. Roberts and Mr. Shern and that Mr. Miller conducted the "audit" of Dr. Roberts. The Prosecution knows full well any money involving Dr. Roberts came from Ortho/Neuro Medical Association and not from Dr. Roberts individually or personally.

[4]Springer has not received the Memorandum of Interview of Judy Patterson dated in May of 2004 nor the Memorandum of Interview of Denny Patridge that he can find in the 33,000 documents located on disc.

4

true at the time the money was tendered.

Springer requested subpoena for Denny Patridge who currently is in Federal Prison in Indiana and who has testified before a Grand Jury in this case and who has been interviewed by Brian Shern and others in August and September, 2008.

Mr. Patridge has survived heart bypass[5] surgery occurring 15 years ago and is on certain medication that allows him to achieve such survival. During the August/September 2008 Grand Jury Mr. Patridge testified before at Tulsa, Oklahoma, Mr. Patridge was housed in the Okmulgee County Jail for the better part of a month. His testimony lasted less than 45 minutes.

During the time of his residency to Oklahoma, he was without his medication or Doctor care for 7 days and when the medical care finally began his blood pressure was so high that most would not have thought one could live through what he was having to endure for the purpose of a single 45 minute visit before the Grand Jury that obviously the Prosecution sought.

REQUESTED RELIEF[6]

---

[5] 6 different bypasses were made at one time.

[6] One of the key issues is as to the credibility of the witnesses who received payment by the DOJ in the form of knocking off time measured in years off of sentences imposed and or waivers of fines and monetary penalties in order to colorably argue Springer received tens of thousands of dollars from certain individuals for some as of yet unidentified "services rendered." Others not incarcerated received other concessions by the IRS for their altered and overly inflated, if not exaggerated words then used by Shern for his summary of the witnesses testimony before the last Grand Jury rendering the indictment on March 10, 2009. Mr. Patridge is willing to testify about how that process was attempted on him and what his response was to such erroneously exerted

The Prosecution has learned Springer intends to call Mr. Patridge as a witness when they arrived Tuesday morning to receive the Monday night filings of Springer under 17(b) and on Wednesday afternoon, Mr. Patridge, who is Springer's witness, was informed by prison officials that he is being transported out and to gather all his things immediately. Mr. Patridge will not survive the type of treatment the Department of Justice gave him in August/September 2008 a second time.

The Department of Justice has what is commonly known as the diesel treatment where they place a correction facility occupant on a bus and he travels for sometimes weeks at a time without anyone knowing where he is going or why he is being treated that way. There can be no doubt Mr. Patridge would not be testifying until early to mid November as a defense witness. Moving him to Oklahoma for that testimony 60 days in advance or without this Court ordering his testimony relevant under Rule 17(b) demonstrates the possible bad faith the Prosecution is exercising.

**First,** Springer either requests this Court to order the Department of Justice and Marshal's service to make abundantly clear that the witness Mr. Patridge is not to be found at any time without his heart and other medicine nor is he to be without Doctor care[7] for any single 24 hour period, let alone the seven days, that

pressure.

---

[7]This case is about the tax treatment of certain money tendered Springer and should not put any witness, incarcerated or on supervised release, or otherwise, in any compromised position where they are pressured into saying

6

he barely survived in August/September 2008 in Olkmulgee County Jail.

**Second,** this Court should order that the witness Mr. Patridge be transported in the most direct, quickest route known to the U.S. Marshals, because of his medical needs.[8]

**Third,** this Court should also order the Prosecution or their Agents, or anyone else working in concert with them, be restrained from placing the witness Mr. Patridge in any position not invited by the witness Mr. Patridge directly. This includes holding him in any place or moving to any place which is solely so the Prosecution can visit with the witness Mr. Patridge outside of his free will. [9] [10]

**Fourth**, because Mr. Patridge is now known to the Prosecution as a witness for

---

something because of the circumstances they are found in and not because what they are asked to say is the truth.

[8]The Court ordered a hearing on October 9, 2009, ex parte, regarding the propriety of Springer's deposition subpoenas. Springer attempted to contact Mr. Snoke who directed the telephone receptionist that he was unavailable for Mr. Springer. Mr. Snoke directed the receptionist to have Springer speak with a legal assistant name Ms. Hall. Springer was transferred to her voice mail but rejected this option. Legal assistants do not order transfer of witnesses but Department of Justice Lawyers do. Out of an abundance of caution Springer makes this Motion.

[9]While a person is in prison he has very little to look forward to and achieves certain positions in the Prison. By moving Mr. Patterson out of Prison without Court Order shows the Prosecution in this case is merely disrupting and harassing Mr. Patridge because he was not willing to assist Mr. Shern in misleading any Grand Jury as Mr. Shern had apparently convinced others to change their testimony to accomplish

[10]None of which Springer has yet to have been afforded the right to confront.

7

Springer that in the event the Prosecution or Brian Shern or any other person working with the Prosecution, directly or indirectly, desires to speak with the witness Mr. Patridge, that such meeting, including the first word till the last conveyed be recorded and a transcript be given to Springer and not some self serving "memorandum of interview."

## CONCLUSION

Springer is sorry for this emergency and it may have been avoided had Springer not tendered to the Prosecution his 17(b) witness list, however, since there are no secrets in this case and the purported theory was presented as strait forward, Springer thought it to his advantage to make the Prosecution aware in the event Springer was required to show relevance of each witness under the Sixth Amendment.

Therefore, Springer requests this Court issue an order immediately directing **First**, the witness Mr. Patridge is not to be found at any time without his heart and other medicine nor is he to be without Doctor care for any single 24 hour period, let alone the seven days, that he barely survived in August/September 2008 in Olkmulgee County Jail; and **Second,** this Court order that the witness Mr. Patridge be transported in the most direct, quickest route known to the U.S. Marshals, because of his medical needs for purpose of this case; and **Third,** this Court order the Prosecution or their Agents, or anyone else working in concert with them, be restrained from placing the witness Mr. Patridge in any position not invited by the

8

witness Mr. Patridge directly. This includes holding him in any place or moving to any place which is solely so the Prosecution can visit with the witness Mr. Patridge outside of his free will; and **Fourth** that if such meeting is to take place outside the presence of Mr. Springer that such meeting be recorded and such transcript be made available to Mr. Springer; and **Fifth** the Prosecution make known immediately the current location of Mr. Patridge to Mr. Springer and this Court with the reasons for any moves Mr. Patridge endures between September 21, 2009 and the time of trial scheduled in this case of October 26, 2009.

        Respectfully Submitted
        /s/ Lindsey K. Springer
        <u>Lindsey K. Springer</u>
        5147 S. Harvard, # 116
        Tulsa, Oklahoma 74135
        918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Emergency Motion regarding witnesses was ecf'd on September 24, 2009, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

/s/ Lindsey K. Springer
Signature