IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

          Plaintiff,

                          Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

          Defendants.

SPRINGER'S REPLY REGARDING EMERGENCY MOTION ON TRIAL WITNESSES

Lindsey Kent Springer ("Springer") files his reply to Prosecution's Opposition to Springer's Emergency Motion regarding trial witness Denny Patridge.

PROSECUTION ARGUMENT IN OPPOSITION

In Springer's purported wasting of the "Government's time" Emergency Motion, the Prosecution directs this Court that Denny Patridge is a witness being called by the Prosecution in its case in chief.  Doc. 161 at 2.  Yet, the Prosecution argues they do not know why witness Patridge is being moved or even if he is being so moved.  Doc. 161 at 2.

On Monday, September 21, 2009, Springer notified the Prosecution of his intention to call Denny Patridge as a witness in Springer's defense.  The Prosecution does not take exception to this fact.

The Prosecution states that:

It is likely that the Bureau of Prisons has put in motion the mechanics to

1

transport Mr. Patridge to Tulsa, Oklahoma;

The Prosecution takes no exception to the alleged treatment Mr. Patridge was tendered by the same "Bureau of Prisons" as Springer alleged in August and September, 2008, that Mr. Patridge was left without heart medication and Doctor Supervision for more than 7 days resulting in dangerous high blood pressure.

The Prosecution also takes no exception that Mr. Patridge sat in the Okmulgee County Jail for 4-5 weeks waiting for someone to tell him why he was transported to Oklahoma.

Springer's Motion was filed in effort to have the Court oversee the treatment of Springer's witness as the previous treatment by the "Bureau of Prisons" was less than acceptable regarding witness Patridge. The Prosecution admits Mr. Patridge is the source of money given Springer in years past. See Doc. 161 at 2

The day after the Prosecution received Springer's Rule 17 list of witnesses, listing Ms. Wiggins and Garlin and Associated Ministries, they allege to have learned Ms. Wiggins is "unavailable" for trial.[1]

Mr. Patridge is not the Prosecution's prisoner. Moving Patridge is inevitable. The hearing on whether he is to be a witness for Springer is scheduled for October 9, 2009, and thus the only obvious reason Patridge is being moved is because of

---

[1]Interestingly, the Prosecution seeks a Rule 15 Deposition of Ms. Wiggins prior to trial for unknown and undisclosed health reasons, and that is not frivolous, but Springer's Motion regarding the moving and past treatment of Mr. Patridge is purportedly "frivolous."

2

some interest the Prosecution has in Mr. Patridge.[2]

Springer's intentions are to bring to the Court's attention the previous history of the Prosecution's treatment of Mr. Patridge and that treatment bordered on causing instant death to Mr. Patridge. Springer can subpoena the medical records of Mr. Patridge while in the Bureau of Prisons if this Court wishes to see the records of his blood pressure during his travel in August and September, 2008 to Oklahoma and back to Indiana.

It is hard for Springer to imagine how the undisclosed medical condition of Ms. Wiggins warrants this Court's supervisory and discretionary power to order ad hoc pre trial deposition of Ms. Wiggins while the possible repetition of Mr. Patridge being trafficked to Oklahoma without his heart medication leaving him with blood pressure that would kill most heart bypass recipients is purportedly "frivolous."

For certain if Mr. Patridge has any complications in his travel from Indiana to Oklahoma resulting in any damage to Mr. Patridge, including possible death from being denied heart medication for the time period denied previously in 2008, at least Mrs. Patridge will be able to use Springer's Emergency Motion and the Prosecution's ridiculous[3] response to recover damages caused by the obvious inexcusable negligence on the part of the United States Attorney's Office, U.S. Department of Justice, Bureau of Prisons, and the State of Oklahoma.

---

[2]There is obviously no objection by the Prosecution to Mr. Patridge and Ms. Wiggins being called as witnesses by Springer at this point.

[3]Holding every person liable individually under Bivens among others!

SPRINGER'S POST OPPOSITION POSITION

**First Issue**:

There being no objection by the Prosecution that Mr. Patridge should ever be found without his heart medication this Court should order Mr. Patridge not ever be found without his heart medication or without a Doctor available upon arriving in Oklahoma with instruction on how to treat Mr. Patridge at whatever prison the Prosecution houses him in with notification to Springer as to that specific whereabouts and authorization for Springer to meet with witness Patridge.

**Second Issue**:

As to the second issue for relief, the Prosecution argues the Bureau of Prisons should be allowed to do their job.[4]   At this point no one knows exactly why Mr. Patridge is being moved and Springer has a right to know due to the fact Springer is calling Mr. Patridge as his witness and has no control or trust over the "Bureau of Prisons" as of  yet.   At minimum the Prosecution should be ordered to disclose to Springer why Mr. Patridge is being moved and to insure he is being moved to Oklahoma and will be available for Springer to call him as a witness at trial and for pretrial interviews.

**Third Issue**:

As to the third issue for relief, the Prosecution argues Springer cites  no cases

_____

[4]Shipping Mr. Patridge without heart medication would never be protected by any immunity, qualified or otherwise.

4

which would afford Springer the right to have any communication between Patridge and the Prosecution recorded seeing Patridge is on Springer's witness list. The Prosecution is correct in saying Springer cited to no cases. However, Springer believes the motion put the Prosecution on notice that anything communicated between September 21, 2009 and trial between the Prosecution, its witnesses like Shern and others, will be the subject of examination or cross examination between Springer, Patridge, and anyone he identifies he spoke with, or who attempted to speak with him, after that date.  This is so because of the Sixth Amendment.

**Fourth Issue**:

As to the Fourth issue, Springer is certain that a "memorandum of interview" will be made by anyone interviewing Mr. Patridge after September 21, 2009 and that memorandum will be subject to discovery between the Prosecution and Springer as a result of Springer's emergency motion.

**Fifth Issue**:

As to the Fifth issue, once the "Bureau of Prisons" sends Mr. Patridge to Oklahoma, Springer loses the ability to speak with Mr. Patridge prior to trial unless Springer is made aware of the location Mr. Patridge is being held and Mr. Patridge is allowed to contact Springer and set up a time to be interviewed.

The Prosecution says that "Once moved to a detention facility closer to Tulsa, Oklahoma, Mr. Patridge will be available for Defendants to interview, should Mr. Patridge agree to speak with them prior to trial." Doc. 161 at 3

It should be obvious to the Court Mr. Patridge speaks to Springer currently and the Prosecution takes no exception to that fact. Moving Mr. Patridge without Court Order over a month in advance of trial can only be seen to intend disrupting that communication access.

CONCLUSION

Since the Prosecution does not know why Mr. Patridge is being moved and that they are aware Mr. Patridge is being called by Springer as a witness, this Court should order (1) the Prosecution to conclusively disclose to Springer Mr. Patridge's reasons for being moved, the conditions of that move, where he will be housed, both before and during trial, (2) turn over any memorandum of interview made as a result of any communication between Mr. Patridge the Prosecution or its other witnesses, occurring after September 21, 2009, (3) that Mr. Patridge should be moved from Indiana to Oklahoma with diligent care taking into consideration Mr. Patridge is on heart medication for having six bypasses performed on his heart, (4) that Mr. Patridge previously was trafficked to Oklahoma to testify before a Grand Jury without having any heart medication for over 7 days subjecting Patridge to potential instant death because of blood pressure, and (5) any other relief this Court finds in the best interest of Mr. Patridge and as Springer's witness.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

6

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Reply to the Prosecution's Opposition to Springer's Emergency Motion regarding

witnesses was ecf'd on September 28, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley



/s/ Lindsey K. Springer
Signature

7