IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                                  Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

SPRINGER'S OPPOSITION TO PROSECUTION'S MOTION IN LIMINE

Lindsey Kent Springer ("Springer") files his response in opposition to the Prosecution's Motion in Limine.

**1.      FIRST SIX ISSUES ON PAGE 2**

As to the First Six issues listed on page 2 of the Prosecution's Motion in Limine, Springer can inform this Court that at no time has he ever intended or hinted any of the issues arising from these Six issues.

In the event the Prosecution is allowed to introduces, over Springer's objections, any such documents which purport to raise issues similar to those listed in the First Six issues listed on page 2 of the Prosecution's Motion in Limine, Springer will then need to explain those statements to the jury that then could require evidence explaining how those documents were arrived at to make such litigation.

The genius here is in the phrase "other litigation" and it is apparent to Springer the Prosecution plans on presenting exhibits to the jury of prior litigation. It would

1

be highly prejudicial for the Prosecution to present evidence of prior litigation containing statements in some way connected to those Six issues outlined on page 2 of their Motion in Limine and not allow Springer to cross examine the Prosecution witnesses on those documents or prohibit Springer from presenting a defense to the manner in which those documents are used at trial.

2.      **EVIDENCE OF MONEY GIVEN SPRINGER AS GIFT**

The Prosecution maintains that it is irrelevant whether money people gave Springer and Bondage Breaker's Ministries is a gift because the Prosecution is relying on the specific item theory.  The Prosecution is incorrect as to relevance.  In fact, the Prosecution admits in its Motion Springer and Bondage Breaker's Ministries normally and usually received money in the form of gifts.  The Prosecution also knows that giving has been going on years prior to Springer being introduced to Stilley by Dr. Roberts.  Mr. Shern testified many people have given Springer money. The Prosecution is fully aware that the issues in this case are whether Springer was running a for profit business, as Shern testified, or whether Springer was exercising his rights under the First Amendment to "get rid of the IRS" through his ministry and receiving support in pursuit of that mission.  See Indictment at 1.

Shern was asked before the Grand Jury questions in this regard to which he misled the Grand Jury.  Springer has a right to dispute the false testimony of Shern and others and also has the right to impeach each of them.

Relevant evidence is "evidence having any tendency to make the existence

2

of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Fed.R.Evid. Rule 401. The "standard for relevance under Federal Rule of Evidence 401 is quite generous, *see United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007), proffered evidence must, at minimum, advance the inquiry of some consequential fact to be considered relevant and admissible." U.S. v. Oldbear, 568 F.3d 814, 820 (10th Cir. 2009)

The Prosecution has through its one sided show til now painted a picture that Bondage Breaker's Ministry was a "ficticious name" and Springer used this name to receive payment for "services rendered." See Counts One through Four. There is ample evidence to show the theory the Prosecution relied upon to obtain the Grand Jury Indictment was that Springer used Bondage Breaker's Ministry to disguise payments and to mislead the IRS (using conceal). See Counts Two, Three and Four of the Indictment. At one point Shern suggested Bondage Breaker's Ministry was created solely for the purpose of the conspiracy allegedly starting in 2000.

Mr. Shern testified under oath when asked the question "with respect to those folks that said they made donations to Mr. Springer, did they also state that Mr. Springer did work for them?" Shern answers "Yes." See GJ01474. This transcript is tendered in discovery but not a part of this Court's record yet.

Shern goes further in testifying "Springer's entity, Bondage Breaker's

3

Ministry....and that is why we determined all the money he receives in the name of the ministry is really money for legal services that he's performing for people." See GJ01487 The Prosecution argues "the evidence of money's received that are not charged as income to Defendant Springer is irrelevant and therefore inadmissible." Doc. 137, at 4 "Defendant Springer utilized the nominee name Bondage Breakers Ministry, through which he received money from individuals he assisted" is another allegation the Prosecution intends to attempt to prove. Doc. 137, at 5 "Defendants took these and other steps to frustrate the efforts of the Internal Revenue Service to ascertain, compute, assess and collect federal income taxes owed by Defendant Springer" which included within the phrase "these and other steps" includes receiving money in the name of Bondage Breaker's Ministry. Id.

Springer has a right to oppose the theory the Prosecution intends to advance which was Bondage Breaker's Ministry was a fiction disguised to hide "legal services rendered" for "clients." The Prosecution knew this theory was only sustainable if not cross examined by Springer in its one sided show. The Prosecution knows that Springer has garnered over the last 19 years much support for his mission and that the theory Springer entered into some contracts with certain people to provide legal services and then persuade those persons into tendering money to Springer or Bondage Breaker's Ministry under the disguise of "donation" will be shown to be ridiculous, false, and fraudulent to the jury. This fabricated under the penalty of perjury theory directed by the watchful eye of the United States Department of

4

Justice was done in exchange for payments in the form of threatening not to charge people, waiving penalties, reducing sentences and in some instances actually paying the witness. Imagine being in prison and under the direct control of the U.S. Department of Justice and they come to the prisoner and say we need you to say this? The Prosecution certainly knew some day those witnesses would be subject to confrontation with Springer if they persisted with such fabricated after the fact intentionally altered statements.

The issue is what did Springer and whomever agree the money given to Springer was for. Springer had a right not to accept any money, and indeed the evidence will show Springer would have rejected any offering that even suggested any strings were attached to provide some "legal services" by expectation.

"The government anticipates that the central issue to be addressed by the defendants' "evidence" and argument will pertain to willfulness." Doc. 137 at 6 "*Cheek*, as elucidated in *Willie*, defines the good faith defense to willfulness in tax cases: a mistaken belief by the defendants that the law did not require them to file a tax return or pay a tax." Doc. 137 at 8 Although the Prosecution has a big surprise coming if they believe their "central issue" suggestions, willfulness is an element of each of the claims against Springer and will thoroughly and vigorously be defended by Springer at trial to the limits this Court establishes.

The Prosecution explains "in a specific items case, the Government needn't negate nontaxable sources of income. *See Conford v. United States*, 336 F.2d 285,

287 (10th Cir. 1965). As indicated previously, irrelevant evidence is inadmissible and therefore should be excluded from trial. Fed. R. Evid. 103(c) and 402." Doc. 137, at 12-13

Springer would not be entering evidence of other gifts not alleged by the Grand Jury in the Indictment. Springer is having to defend against knowledge, intent, willfulness, motive, and to show that the witnesses testifying under the distorted eye of the Department of Justice, to which Shern falsley summarized to the Gand Jury, that the truth is the money given Springer was not tendered to Springer under a "services rendered" understanding and the Prosecution knows it.

Just one example of the false summary is where Shern tells the Grand Jury Springer testified falsely that he had no "income."  See GJ01470, lin 16.  That is not what Springer said and Springer even took great pains to make clear Shern and the Prosecution were fully aware of this fact.  The evidence will overwhelmingly show this to the Court and Jury.  The Statement the Prosecution has hung its hat on by Stilley is "Springer does not charge for his services."  GJ01471, ln. 22

This Court should not limit the relevant evidence to only money the Prosecution claims was for "services rendered" because there are many who, not under the pressure of losing their prison cell, prison privileges, or forgoing other financially devastating investigations,  would testify consistently that the only way Springer would accept any money from anyone is if it was unconditionally a gift.

3. **PAPERWORK REDUCTION ACT COMPLETE DEFENSE**

It is simply amazing to Springer that the Prosecution remains defiant by suggesting:

> As stated by the Tenth Circuit, "arguments [that the IRS Forms 1040 and related materials violate the Paperwork Reduction Act][1] have no merit and cannot be supported by case law. We hold that Form 1040 satisfies the PRA requirements, OMB # 1545-0074 is currently valid, as it has been since 1981, the PRA does not require an expiration date to be printed on any tax information collection forms, and the PRA does not require disclosure information to be printed on Form 1040." *Lewis v. C.I.R.*, 423 F.3d 1272, 1277 (10th Cir. 2008).

Doc. 137, pg. 4, fn. 9

The actual Lewis quote is:

> "We hold that Form 1040 satisfies the PRA requirements, OMB # 1545-0074 is currently valid, as it has been since 1981,[2] the PRA does not require an expiration date to be printed on any tax information collection forms, and the PRA does not require disclosure information to be printed on Form 1040."

*Lewis v. C.I.R.*, 423 F.3d 1272, 1277 (10th Cir. 2008).

First of all, the issue in Lewis only related to the Form 1040 for 2003 and is limited to the issues raised in Lewis. Lewis did not raise the fact the IRS did not comply with its certification requirements OMB relied upon to issue the OMB # in the first place. Lewis does not address whether the "instruction booklets" contain the information required by 44 U.S.C. § 3506. The Lewis Panel stated the "IRS, an agency, satisfies this obligation by making these disclosures in the instruction booklet associated with Form 1040." Id.
The panel in Lewis stated:

---

[1] Prosecution forgot to inform the Court they had "modified" the holding in Lewis by the addition of these brackets.

[2] Interestingly the Panel in Lewis was only dealing with the Form 1040 for 2003 yet they decided in dictum to reach all the way back to 1981.

7

As the statute plainly states, the PRA **does not expressly** require each form requesting information to include the disclaimer language of § 3506(c)(1)(B)(iii) **on the form itself**. Rather, **the agency must satisfy the disclosure requirement**:

Id. at 1277

The Lewis Panel stated Lewis "concedes Form 1040 displays an OMB control number, and **he does not challenge the IRS instruction booklet which accompanies Form 1040.**" Lewis, 1275

Springer not only challenges whether the [3]instruction booklets contain the disclosures required by 3506(c)(1()B)(iii), for the years 1981 through 2008, which the Panel stated "must" be disclosed according to Federal Law either on the form or in the instruction booklet, but Springer also challenges whether the "device" contains the disclosures required by 5 CFR 1320 certified by the "Agency" to OMB on Form 83I.[4]

In both instances the required disclosures are clearly not disclosed. The disclosures do not appear on the Form 1040 for any year, as the Lewis Panel clearly found such did not appear on Form 1040 for the year 2003 only, but the disclosures

---

[3] The United States Commissioner of the IRS explained "Mr. Springer contends that he is protected from income tax penalties because the "disclosures required by [the PRA] are not on any Form 1040 nor on any non-accompanying, disclaiming, non-binding opinion, instruction or treatise." See Exhibit 1 attached to Springer's Trial Brief.

[4] Without the 83I there would be no OMB # 1545-0074 to display.

8

and certified material do not appear anywhere in the instruction booklets for any years at issue in this case.

The Prosecution pointing to the Lewis decision demonstrates their awareness that as late as 2008, there was "uncertainty in our case law" regarding "these specific challenges against Form 1040." Id. at 1277.

On August 31, 2009, another Panel of the 10th Circuit published a decision involving Springer which stated:

> Although Mr. Springer's appellate briefs are far from a model of clarity, he has managed **to advance several arguments in this appeal that raise difficult issues under both the tax code and the PRA**.

Just what does the Panel in Springer say the issues raised by Springer that related to the PRA it found difficult between the PRA and the tax code? The answer is contained herein:

> Instead, **the only PRA violations he asserts concern the IRS Form 1040**. The failure-to-pay penalties have an independent and separate statutory basis under the Internal Revenue Code, however, **that is not based on Mr. Springer's failure to file Form 1040s for the tax years in question**. As their name plainly indicates, they are based on Mr. Springer's subsequent failure to pay assessed amounts. See 26 U.S.C. § 6651(a)(3). Consequently, because Mr. Springer has failed to articulate any cognizable violation of the PRA in connection with the imposition of the failure-to-pay penalties, § 3512(a) of the PRA provides him with no protection from those penalties.

See Exhibit 1, attached to Springer's Trial Brief at 6

On May 1, 2007, a Panel of the 10th Circuit stated:

> Although, as Springer points out, that language permits the defense to be raised "at any time," it may only be raised at any time

> "during the agency administrative process" or in a "judicial action applicable" to that process. 44 U.S.C. § 3512(b). Thus, § 3512 may only be invoked as a defense "at any time during ongoing proceedings." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 150 (D.C. Cir. 2001) (discussing *Saco River Cellular, Inc. v. F.C.C.*, 133 F.3d 25, 31 (D.C. Cir. 1998)).
>
> Springer did not raise the PRA as a defense or in a judicial action applicable to any agency administrative process. Rather, he raised it as a claim in an independent action, a fact that is underscored by the relief sought under the **PRA—an injunction against conduct alleged to have occurred in connection with other pending civil actions and criminal investigations**. Because § 3512(b) does not provide a right of action, the district court properly dismissed the case.

See Exhibit 2 attached to Springer's Trial Brief

To be sure the Court understands this clearly. The Commissioner attempted to convince the 10th Circuit that essentially Springer II[5] was frivolous because the attorneys argued the Panel held in May of 2007:

> Taxpayer made virtually the identical argument in challenging his liability for the penalties that are due from him under I.R.C. § 6651(a)(1) for failure to file returns for 1990-1995, **and this Court rejected it as frivolous**. *Springer*, 231 F. App'x at 801, 801 n. 6. **It is no less frivolous when asserted in connection with failure-to-pay penalties.**

See Exhibit 1 attached to Springer's Trial Brief, pg. 8

The Panel therein found it was the Commissioner who was acting frivolous by saying:

> "we also note that the Commissioner himself **has made a frivolous argument in his response brief and motion** for sanctions that mischaracterizes what happened in Mr. Springer's prior appeal to this court."

---

[5]Springer II was sent to the Tax Court resulting from this Court's ruling in 05-1075.

10

See Exhibit 1 attached to Springer's Trial Brief, pg. 8

The published Panel decision explains:

**The Commissioner is wrong about what happened in the prior appeal**. In that appeal, we referred to the three underlying cases that had been consolidated for appeal as *Springer I*, *Springer II*, and *Springer III*, **and we did not address the merits of Mr. Springer's claims under the PRA in any of the three cases**. Instead, we affirmed the district court's dismissal of *Springer I* for lack of subject matter jurisdiction, *Springer*, 231 F. App'x at 797; we affirmed the district court's dismissal of *Springer II* on the ground that the Tax Court had exclusive jurisdiction over the case, *id.*; and we affirmed the district court's dismissal of *Springer III* on the ground that the PRA does not create a private right of action, *id.* at 799. Further, in footnote five in the order and judgment, we specifically stated that, "[**i]n view of our jurisdictional disposition, we do not reach the merits of *Springer I* and *Springer II*.**" *Id.* at 799 n. 5. And, in footnote 6, the footnote cited by the Commissioner in the above-quoted language, **we did not state that the PRA claims in *Springer II* were frivolous**. Rather, we stated that the appeal in *Springer II* was frivolous due to the obvious jurisdictional defect arising from the fact that Mr. Springer had filed *Springer II* in federal district court when exclusive jurisdiction resided in the Tax Court. *Id.* at 801 n. 6. **The Commissioner is therefore mistaken when he argues that this court addressed the merits of Mr. Springer's PRA claims in the prior appeal, and his argument is frivolous given the obvious nature of the three dispositions in that appeal.**

Springer will admit it would appear by the Motion in Limine the Prosecution, besides mentioning # 3 referencing "notices and forms" and the footnote 9 therein, has all but abandoned their claims the Paperwork Reduction Act claims of Springer were frivolous. In a pleading filed on June 25, 2009, the Prosecution stated:

Furthermore, and as indicated above, Defendant has been directly told that his theory that the Paperwork Reduction Act provides sanctuary for his willful non-filing is improper:

11

> Plaintiff's allegations rely on the language of the public protection provision of the PRA, which states that "no person shall be subject to any penalty for failing to comply with a collection of information ... if the collection of information does not display a valid control number." 44 U.S.C. § 3512(a)(1). However, it is settled law that "the requirement to file a tax return is mandated by statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA." *United States v. Dawes*, 951 F.2d 1189, 1191-92 (10th Cir.1991).
>
> *Springer v. United States*, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006)
>
> In a footnote to *Springer v. ₃ United States*, the Court added: "[s]ee also *James v. United States*, 970 F.2d 750 (10th Cir. 1992) (holding that the lack of an OMB number on IRS notices and forms does not violate the PRA); *United States v. Collins*, 920 F.2d 619 (10th Cir. 1990) (defendant's argument that Forms 1040 lacked expiration dates and, therefore, failed to comply with PRA is legally frivolous)." 447 F.Supp.2d at 1238, n 2.

The Panel opinion dated May 1, 2007, as published by the Panel on August 31, 2009, did not affirm any of the statements made by the Prosecution stemming from the order of Chief Judge Eagan on June 22, 2006. See *Springer v. United States*, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006)

The Panel again explained how wrong the Commissioner's attorneys were regarding the decision dated May 1, 2007:

> "and we affirmed the district court's dismissal of *Springer III* on the ground that the PRA does not create a private right of action, *id*. at 799."

See Exhibit 1 attached to Springer's Trial Brief, pg. 9

Based upon the argument in Springer's Trial Brief and those expressly made herein, along with those arguments surrounding the Panel's published order of

12

August 31, 2009, and those "complete defenses" raised on appeal as expressed on May 1, 2007, see Exhibit 2 attached to Springer's Trial Brief, Springer has every right under the Sun and on the Earth to raise the Paperwork Reduction Act public protection as a complete defense to the charges stemming from claims he willfully failed to file Form 1040s from 2000 through 2005.

## CONCLUSION

At this point, Springer only opposes the Prosecution's Motion in Limine as stated above regarding Gifts and Paperwork Reduction Act of both 1980 and 1995, but would caution the Prosecution that if documents they intend on relying upon derived from other litigation are allowed in over Springer's objection to relevance and foundation, Springer should be allowed to present testimony and other evidence surrounding those words contained in those pleadings.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Opposition to the Prosecution's Motion in Limine was ecf'd on October 5, 2009, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

        /s/ Lindsey K. Springer
        Signature