IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                        Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

MOTION FOR RECONSIDERATION, DISMISSAL AND OR
FOR MISTRIAL DECLARATION

Lindsey Kent Springer ("Springer") moves the Court to reconsider its order dated July 2, 2009 (Doc. 100) wherein it denied Springer's Motion to Dismiss Grand Jury Indictment for violation of the Fifth Amendment (Doc. 59)(dated May 15, 2009), Springer's Motion to Dismiss for violation of Fourth and Fifth Amendment (Doc. 65)(dated May 15, 2009), Springer's Motion for Frank's Hearing and to suppress (Doc. 74)(June 1, 2009)[1] evidence obtained by Donna Meadors between January 26, 2004 and December 2, 2004, and to suppress evidence obtained by Brian Shern from Oscar Stiley between January 20, 2006 and May 6, 2006[2] based upon recently

---

[1] Oscar Stilley moved to Dismiss for fraud and violation of his Fifth Amendment Rights (Doc. 67)(dated May 15, 2009) and well as to suppress his Grand Jury testimony and other out of court statements related to compliance with his subpoenaed obligations (Doc 72)(dated June 1, 2009).

[2] Alleged Co-conspirator statements.

1

tendered[3] discovery related to the Grand Jury testimony of Eddy Patterson and Judy Patterson on October 28, 2009.

Springer also moves this Court to reconsider its order denying Springer's request for a Frank's Hearing if that is appropriate procedure.[4] Alternatively, Springer moves for dismissal based upon the revelation of Judy Patterson's Grand Jury Testimony which clearly shows Springer and Stilley were the subject and target of Nelson and Horn's Grand Jury to which Judy Patterson testified. If not, Springer seeks an order for a mistrial based upon Stilley's statements and Springer's statements should have been suppressed as they violate the Fifth Amendment due process and self incrimination clauses when presented to the jury trial.

The Prosecution directly told this Court that although Oscar Stilley was under "investigation" by the IRS or Department of Justice at the time he was subpoenaed, in March, 2006, he was not a target or subject of an Grand Jury investigation until July, 2007. This was knowingly false at the time it was presented to this Court.[5] This Court erroneously accepted the Prosecution's argument on July 2, 2009.

---

[3] Sand bagging for certain.

[4] Both the Grand Jury and Trial Jury have been infected with the fraud presented to this Court by the U.S. Department of Justice.

[5] Springer has sought for months any Memorandum of Interview of Judy Patterson referenced in Nelson's 35(b) to which Mr. O'Reilly and Snoke maintain does not exist. This Court even ordered it turned over. See Doc. 39 Mr. O'Reilly stated he had recently discovered Ms. Patterson's testimony in preparation for her testimony at trial. Shern had to know about it as Nelson knew about it and Horn knew about it. Snoke knew about it also thus the reason why O'Reilly tendered it and said "he did not" know about it.

BACKGROUND

Doug Horn and Melody Nelson began a Grand Jury investigation of Eddy and Judith Patterson for not filing tax returns, filing false returns, attempted tax evasion, bank fraud and securities violations in late 1999. See Exhibit 1, pg. marked GJ1617. On December 3, 2002, Eddy Patterson testified before a Grand Jury investigating him. See Exhibit 1, pg. Marked GJ1503. Dough Horn and Melody Nelson are identified as "Assistant United States Attorneys" and "appearing" before the December 3, 2002 "Grand Jury" to which Eddy Patterson appeared and gave testimony. See Exhibit 1, pg. Marked GJ1503. At least as of July 26, 2003, Springer was under "criminal investigation" ("CI") by the "Special Agent in Charge ("SAC") of the "Tulsa, Oklahoma CI Field Office." See Exhibit 6.

Eddy Patterson was indicted on April 16, 2003(03-cr-55(EA), found guilty on December 16, 2003 and entered into a plea agreement with Assistant U.S. Attorney Douglas Horn and Melody Nelson on August 30, 2004. See Exhibit 2, pg. 1 On September 1, 2004, Assistant U.S. Attorney Douglas Horn, Melody Nelson and U.S. Attorney David E. O'Meilia filed a Rule 35(b) with Chief Judge Eagan in cause of Judy Patterson. See Exhibit 3. In this 35(b) all three United States Attorneys inform Chief Judge Eagan that Ms. Judy Patterson "provided substantial assistance" in the grand juries "ongoing investigation of Oscar Stilley and Lindsey Springer." See Exhibit 3, pg. 2 These three United States Attorneys report to Chief Judge Eagan that Ms. Patterson has agreed to testify before "**the** Grand Jury and **at any further**

3

**proceedings** including jury trial regarding the information provided in the interview."

See Exhibit 3, pg. 2[6]

Special Agent Donna Meadors worked side by side with Special Agent Tim Arsenault[7] and both Doug Horn and Melody Nelson in the prosecution of Eddy Patterson. Ms. Meadors served as the revenue agent who testified at the Patterson Trial regarding the tax computations of Eddy and Judy Patterson. See Doc. 93, pg. 12[8] After the Patterson Trial resulted in a Guilty verdict for Mr. Horn, Ms. Nelson, Mr. Arsenault and Ms. Meadors, Ms. Meadors notified Springer she was investigating Springer for alleged violations of Title 26, Section 6700.[9] See Exhibit 4

---

[6] Apparently the Prosecution team decided they could turn over Ms. Patteson's testimony to Springer and Stilley as they needed her to say what she said in 2004 and could not give that to her for refreshing her memory without turning it over to Springer and Stilley.

[7] Case Agent!

[8] "Revenue Agent Meadors did not conduct any 6700 investigation (or interview) with Defendant Springer while he was participating in the defense of Eddy Patterson (and his wife) in federal court in Tulsa in the Fall of 2003. From January 26, 2004 - December 2, 2004, then Revenue Agent Meadors was conducting a [6700] civil investigation into whether Defendant Springer was promoting an abusive tax shelter program. Defendant Springer has produced no evidence supporting his claim that Revenue Agent Donna Meadors was working with David Reed, with AUSAs Horn or Nelson, or with anyone else in a criminal tax investigation of Springer during 2003 or 2004. Nor has Defendant Springer shown how anything from that 6700 investigation, or from anything done by Revenue Agent Donna Meadors, including Defendant's 6700 interview, affected the criminal indictment in this case, or should cause a dismissal thereof."

[9] Prosecution does not dispute that at the time Ms. Meadors was directed to investigate Springer under 6700 (January 24, 2004) she had applied for the

4

Springer asked Ms. Meadors what was the evidence she relied upon to trigger the 6700 investigation to which she replied she had found a "tape" for sale on the internet. See Doc 76, pg. 2

In May, 2004, both Eddy and Judy Patterson met with Douglas Horn, Melody Nelson and Tim Arsenault, to discuss the ongoing Grand Jury investigation of Lindsey Springer and Oscar Stilley. See Exhibit 5 (MOI)(listing both Horn and Nelson present) Both Horn and Nelson also stated in their 35(b) to Chief Judge Eagan that they met with Judy Patterson "the day before she was to report to the Bureau of Prisons." See Exhibit 3, pg. 1-2  Exhibit 3 also conclusively and undeniably states Judy Patterson met with "the undersigned and agents of the FBI and IRS" on May 3, 2004. See Exhibit 3, pg. 1-2

Again, on August 30, 2004 Eddy Patterson contracted with the United States, through its representatives Douglas Horn and Melody Nelson in a "plea agreement." See Exhibit 2. On September 1, 2004, Judy Patterson received a substantial reduction in her sentence of 18 months for giving substantial assistance. See Trial testimony dated October 30, 2009.

While Ms. Meadors was conducting her 6700 investigation for the years 2000 through 2003, she sent out letters to persons she learned of solely from Springer who

---

position of criminal investigator and that application was pending. Prosecution does not take issue with the fact that after Ms. Meadors issued her December 2, 2004 termination of her 6700 investigation of Springer, she was approved for the position of criminal investigator.

was told he was not under criminal investigation. See Exhibit 7.[10] Ms. Meadors would receive responses answering her questions dated late October or Early November, 2004. See Exhibit 8.

On December 2, 2004, Ms. Meadors concluded her 6700 investigation. See Exhibit 9.[11] She however warned Springer the case against Springer was far from over.

On March 4, 2005, Agent Fred Rice decided to resort to a not known and wrong address to send Springer a Notice of Levy involving tax years 1990 through 1995. See Exhibit 10. Springer requested a CDP hearing timely on June 15, 2004. See Docket 05-466, Exhibit 12 (W.D.ok) This became the subject of Springer v. IRS, 05-466 (Judge Friot) in the Western District of Oklahoma. This particular case was commenced on April 25, 2005. See Exhibit 11. Special Agent Shern was assigned to the grand jury investigation of Lindsey Springer and Oscar Stilley on April 26, 2005, the next day. See Exhibit 12, pg. 2. On June 3, 2005, Department of Justice fabricates a document which purports to authorize a "Grand Jury" investigation of Lindsey K. Springer. See Exhibit 15.

On June 10, 2005, the U.S. Department of Justice fabricates a document which purports to assert the United States seeks to add Springer to the "Grand Jury"

---

[10] There are many answers to Ms. Meadors requests.

[11] Meadors used 5147 S. Harvard, # 116, Tulsa, Oklahoma, 74135 to begin and end her 6700 investigation of Springer.

"Patterson Investigation."[12] See Exhibit 14  On August 16, 2005, while 05-466 pended in the Western District Court, the IRS issued two Notice of Determinations directing Springer he had 30 days to do something or the IRS determinations would become final.  See Exhibit 13.

On September 15, 2005, Springer commenced Springer v. IRS, 05-1075 (W.D.ok)(Judge Friot) Petitioning for redetermination.[13] On September 15, 2005, just hours[14] after Springer filed 05-1075, Brian Shern testified before this Court on July 2, 2009 that he and Melody Nelson presented his "affidavit" and request for search of Springer's home to Magistrate McCarthy on September 15, 2005.[15]  See Doc. 100 (reference Shern testified)   On September 16, 2005, Shern, Nelson, Horn, and others decided to help themselves to the theft of $ 2000 from Springer.  See Bivens Action, 06-156 (Judge Frizell) (N.D.ok) This was while in Springer's home under color of legal authority.  See Exhibit 13.

For over 3 months Springer sought the return of the currency.   Less than a week after Shern, Nelson, and Horn, stole or covered up the theft of $ 2000, Shern

---

[12] Descriptive utterances regarding the Grand Jury investigation have been the Grand Jury investigation of Lindsey K. Springer, Lindsey K. Springer and Stilley, Lindsey K. Springer, Jerold Barringer and Oscar Stilley, and the Patterson investigation.

[13] Within 30 days.

[14] 05-1075 filed at 1:00 P.M. and Search Warrant purportedly obtained at 4:01 P.M.

[15] The original signed version with original page 18 remains lost in the outer darkness.

seeks permission from Nelson to subpoena bank records of Oscar Stilley. On December 15, 2005, while Horn, Shern and Nelson are hiding their theft of Springer's money, Horn requests authorization to subpoena a "target" of a Grand Jury investigation. See Exhibit 16, pg. 5. Horn even explains the target designation is the reason why Stilley has not been contacted. Id.

On January 10, 2006, Shern, at the direction of Horn and Nelson, present a purported request by Springer to waive his right to sue either of them for the seizure of $ 17,000.[16] On January 20, 2006, Shern, at the direction of Nelson and Horn, deliver a supboena to Oscar Stilley to testify before the Lindsey Springer Grand Jury investigation.[17]

On March 6, 2006, after U.S. Attorney O'Meilia extends Stilley 45 days to gather the information sought, Stilley appears and testifies before the "Lindsey Springer" Grand Jury. Prior to testifying Stilley enquired whether he was being investigated by any Grand Jury that Shern was aware of. Shern replied No "he was not under criminal investigation." See Doc. 93[18] (Page 14).

---

[16]This is where the theft of $ 2000 was originally made known to Springer when Shern stated he was coming out to Springer's home to deliver the $ 19000. Shern offered the check only if Springer would sign the waiver. This conduct led to 06-156 and the over 4 year litigation currently on interlocutory appeal to the 10th Circuit.

[17]Not the Patterson Grand Jury Investigation. Patterson's plea deal concluded his case and he was sentenced on September 1, 2004.

[18]"Defendant Springer, presumably on behalf of Defendant Stilley (who has adopted Defendant Springer's Reply) argues 'to argue Shern innocently in March 2006 lied to Stilley about whether he was a target of Shern's investigation

Co-Prosecuting Attorney Kenneth Snoke informed Magistrate McCarthy during the arraignment of Richard Blackstock that "Stilley" was under ongoing grand jury investigation by his office.[19]

**ARGUMENT FOR RECONSIDERATION**

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V, cl. 3. In

---

while Shern served a subpoena on Stilley to appear before a grand jury is simply fraudulent and beyond prosecutorial misconduct.' **That was not the Government's argument**. Defendant Stilley claimed, and the Government argued that Special Agent Shern, **on May 17, 2006** (over two months after Defendant Stilley's sole appearance before **the federal grand jury** (pursuant to a previously issued **subpoena**) while speaking to Defendant Stilley over the phone to determine whether Defendant Stilley would accept, via facsimile transmission, **a follow-up grand jury subpoena** for an appearance scheduled in June 2006, **told Defendant Stilley that he was not then under criminal investigation by the IRS**. It was that representation to which the Government referred earlier. (See Response (Doc. 71), p. 17 - 20)." See Doc. 93, pg. 14

[19]"Likewise, AUSA Snoke's statement to Defendant Stilley, upon Stilley's appearance as counsel for a defendant named Blackstock, occurred on June 15, 2006, more than three months after Defendant Stilley's only appearance before the federal grand jury. This representation was made to the magistrate judge conducting the arraignment of Defendant Blackstock, to avoid any possible conflict of interest on the part of attorney Stilley, and was based on information received from AUSA Loretta Radford, the AUSA then conducting the **investigation of defendant Springer**. AUSA Radford had caused the subpoenas to be issued to attorney Oscar Stilley for his appearance before the grand jury on March 9, 2006, **in that investigation of Springer**. Since Defendant Stilley never re-appeared before the grand jury, nor provided any interviews or testimony to law enforcement, after any representations made by Special Agent Shern in May 2006, those representations cannot have influenced attorney Stilley's decision with respect to his appearance before the grand jury on March 9, 2009. In any case, this argument does not support either Defendants' motion to dismiss the indictment in this case." See Doc. 93, pg. 14-15. Springer asserts here that March 9, 2009 should have been March 6, 2006. An interesting error.

9

order to balance this fundamental right against the government's need to obtain information through subpoenaed testimony, Congress has authorized the grant of use immunity to those persons ordered to testify before a grand jury. See 18 U.S.C. § 6002. *U.S. v. Lacey*, 86 F.3d 956, 958 (10th Cir. 1996) The test is whether, considering the totality of the circumstances, the free will of the witness was overborne. Rogers v. Richmond, 365 U.S. 534, 544 (1961). See also United States v. Washington, 431 U.S. 181, 188 (1977)

Dismissal appropriate when prosecutorial misconduct is "flagrant or vindictive." United States v. Yost, 24 F.3d 99, 102 (10th Cir. 1994). U.S. v. AKERS, 215 F.3d 1089, 1103 (10th Cir. 2000)

Here the Prosecution advances a theory that they can subpoena a target and subject of a Grand Jury investigation, tell the target he is definitely not under criminal investigation by the grand jury when asked and is only a witness, obtain the subject and target's words in furtherance of the star chamber like atmosphere, and then by surprise, indict the subject, target and witness, using his own words he uttered before the Grand Jury as the basis for each Count against him. Him being Stilley.

The Grand Jury did not indict Stilley for committing perjury before the Grand Jury. The Prosecution is using the words they obtained from Stilley, and discovery obtained from Stilley, against both Springer and Stilley.

The primary purpose of the exclusionary rule is to deter police misconduct.

See Nix v. Williams, 467 U.S. 431, 442-43 (1984); United States v. Calandra, 414 U.S. 338, 347 (1974). The application of the exclusionary rule "has been restricted to those instances where its remedial objectives are thought most efficaciously served" and is only warranted when it will result in "appreciable deterrence" of police misconduct. Arizona v. Evans, 514 U.S. 1, 11 (1995) (quotation marks and citations omitted). Federal courts may use their supervisory power in some circumstances to exclude evidence taken from the defendant by "willful disobedience of law." McNabb v. United States, 318 U.S. 332, 345 (1943); see Elkins v. United States, 364 U.S. 206, 223 (1960); Rea v. United States, 350 U.S. 214, 216-217 (1956); cf. Hampton v. United States, 425 U.S. 484, 495 (1976) (POWELL, J., concurring in judgment). See United States v. Payner, 447 U.S. 727, 735 (1980)

The Supreme Court has never approved exclusion of evidence as a sanction for government misconduct "in the absence of **a constitutional violation** or statutory authority for such exclusion." United States v. Gonzales, 164 F.3d 1285, 1292 (10th Cir. 1999)

"The violation at issue is the illegal seizure of evidence, and the Supreme Court has held that a grand jury may consider evidence seized unconstitutionally as long **as the grand jury itself does not violate a constitutional privilege**. See United States v. Calandra, 414 U.S. 338, 344-46, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956)." U.S. v. Lin Lyn Trading, Ltd., 149 F.3d 1112, 1118 (10th Cir. 1998)

The evidence is clear that a Grand Jury under the direct control of Doug Horn and Melody Nelson took the Grand Jury testimony of Judy Patterson on October 6, 2004 and in the Grand Jury investigation of Lindsey Springer and Oscar Stilley.

At the time this Court determined suppression of the Grand Jury testimony of Oscar Stilley, and the information Donna Meadors gathered from Lindsey Springer during her 6700 investigation, was not to be suppressed, this Court was under the Prosecutor's spell regarding when Springer began being investigated by a Grand Jury prior to January 24, 2004, or whether Stilley was being criminally investigated by a Grand Jury prior to January 20, 2006. This spell includes both by the IRS internally and by a Federal Grand Jury.

There is no doubt Donna Meadors, who worked with Doug Horn and Melody Nelson in the Patterson trial, along with case agent Tim Arsenault, and knew Springer was being criminally investigated by a Grand Jury through the United States Attorney's Office out of the Northern District of Oklahoma in either 2003 or early 2004. Just a minimal review of documents tendered to Springer and Stilley in the scattered discovery of this case shows as early as July, 2003, Springer was being criminally investigated by Meadors, Arsenault, Horn and Nelson. See Exhibit 6.

What gives rise to Springer's Motion herein is the facts disclosed on October 28, 2009, that both Springer and Stilley were being investigated by the Federal Grand Jury prior to October 6, 2004 together. See Exhibit 1, pg. GJ001672.

There can be no doubt that when Douglas Horn requested to subpoena Oscar Stilley on December 15, 2005, he lied about whether stilley was the subject of a Grand Jury. See Exhibit 16. Shern was working with both Nelson and Horn at the time he raided Springer's home. See Exhibit 17, pg 2 (Nelson presented affidavit of Shern to Magistrate to obtain search warrant.) Nelson also refers to the investigation as the investigation of Lindsey K. Springer. Id. pg. 2[20] Surely this Court takes judicial notice that Doug Horn and Melody Nelson were the Assistant U.S. Attorneys on October 6, 2004, interrogating Judy Patterson involving the Grand Jury investigation of "Lindsey K. Springer and Oscar Stilley." See Exhibit 2, pg. GJ001672

In the case regarding Donna Meadors, she used administrative summons to conduct a criminal investigation of Springer for Horn and Nelson. As Springer pointed out in his initial Motion to Suppress "All the information Meadors obtained from Springer directly and indirectly, as a result of her 6700 investigation, should be suppressed and held in violation of the Fourth and Fifth Amendment. The information Springer provided was illegally seized from Springer by violating the Supreme Court's decision in United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) which held that use of the civil summons under section 7602 to do a civil investigation unlawful when referral has been made. See also United v. Jones, 703 F.2d 473 (10th Cir. 1983). See Exhibit 18 ("referral")

---

[20]Not the investigation of Patterson. That Grand Jury investigation closed at least by September 1, 2004 when Patterson entered a plea deal.

While Meadors is in the process of requesting information from certain people using civil summons procedure on October 13, 2004, Nelson and Horn are continuing with their Grand Jury investigation of Lindsey K. Springer and Oscar Stilley. See Exhibit 1, pg. GJ001672 dated October 6, 2004. That information led to Shern obtaining a search warrant to raid Springer's home.

The evidence is beyond dispute that Assistant U.S. Attorneys Douglas Horn and Melody Nelson were apparently authorized to conduct a Grand Jury criminal investigation of Lindsey K. Springer and Oscar Stilly, and were so conducting such investigation at the time Donna Meadors was assigned to investigate Springer under section 6700. The evidence is beyond dispute that Assistant U.S. Attorney Douglas Horn and Melody Nelson were apparently authorized to conduct a Grand Jury criminal investigation of Lindsey K. Springer and Oscar Stilly, and were so conducting such investigation, at the time Brian Shern served, on January 20, 2006, a Grand Jury subpoena on Oscar Stilley and specifically asserting to Stilley he was not under Criminal investigation by any Grand Jury.

**Count One**

Count one alleges in paragraphs 7 through 13,15 through 25 and 27 through 38 claims directly derived from Horn, Nelson, Shern and Meadors, violations of Springer and Stilley's rights and privileges secured under the fourth and fifth amendment.

Had Meadors informed Springer she was conducting a criminal investigation

14

with Horn and Nelson, of Springer, the information Springer provided would have been protected under the Fifth Amendment and Springer would not have provided that information.

Had Shern informed Stilley that a Grand Jury had been investigating Stilley and Springer since prior to October 6, 2004, Stilley claimed in Docket 72 and 73 he would never have testified on March 6, 2006 before the Grand Jury.

It is the information gathered from the lips of Springer and Stilley to which the Prosecution relies in the charges outlined in Counts One resulting in direct statements being used by Brian Shern in the March 9, 2009 summary Shern used to convince the Grand Jury in this case to issue its indictment dated March 10, 2009.

All Springer' statements and information provided to Meadors by Springer in 2004 and all statements and information Stilley provided the Grand Jury and Shern between January 20, 2006 and July, 2006, should be suppressed as to Count One.

**Counts Three and Four**.

The Prosecution relies upon the Grand Jury claims in Counts Three and Four making Stilley an aider and abetter to Springer's alleged attempt to evade a substantial tax due and owing allegedly owed by Springer. If not for the intentional violations of Stilley's Fifth Amendment Rights regarding the Grand Jury Subpoena issued to him on January 20, 2006, just 10 days after Shern made it known to Springer he and 12 others stole and covered up the theft of $ 2,000 belonging to Springer, the Grand Jury could never have alleged what it alleged in Counts Three

15

and Four, regarding the use of Stilley's credit card, the use of Stilley's Iolta account, or any alleged "false statements" derived from Stilley's testimony before the Grand Jury on March 6, 2006.

**Counts Two and Three**

Donna Meadors was working with Nelson and Horn in 2004 and Nelson and Horn were conducting a criminal investigation of Springer and Stilley through a Grand Jury while they continued to contract with Eddy Patterson for a plea agreement. That agreement was realized on August 30, 2004.

Meadors unlawful 6700 investigation obtained information from Springer she could not have obtained from any other source. Brian Shern relied heavily upon what Meadors reported at the conclusion of her 6700 investigation to obtain the search warrant where Springer lived.

Count Two is for the year 2000 and without an affirmative act within 6 years from March 9, 2009, that charge is defeated. Because Meadors' unlawful 6700 investigation included the year 2000, all information Meadors' obtained through Springer during the year 2004, should be suppressed regardless of any affirmative act because she was directly involved in the use of civil procedures to further a Grand Jury investigation for Horn and Nelson.

Count Three is for the year 2003. This year was also included within Meador's unlawful 6700 investigation. All information Meadors' obtained through Springer during the year 2004, should be suppressed regardless of any affirmative act

because she was directly involved in the use of civil procedures to further a Grand Jury investigation for Horn and Nelson.

**Counts One through Six should be dismissed**.

Counts One through Six should be dismissed based upon the unlawful confiscation by Meadors and Shern of information from Springer and Stilley that both Meadors and Shern knew was protected by the Fifth Amendment. Nelson, Horn, Meadors and Shern's disregard for the Constitution of the United States clearly taints the testimony of Shern, as the sole summary witness to testify before the March 9, 2009 Grand Jury.[21]

Although Nelson and Horn were long since removed from the Grand Jury investigation of Springer and Stilley, Brian Shern remained vigilant to his Fifth Amendment violations at this present day.

Although Ms. Radford and Mr. Snoke took over the Grand Jury investigation of Springer and Stilley from sometime in 2006 till August, 2008, by no means does the violation of Springer and Stilley's rights secured under the Fifth Amendment become mooted by that changing of the guard. Snoke made it known in June, 2006 Stilley was under criminal investigation by a Grand Jury.

## SUMMARY

The Grand Jury investigation of Springer and Stilley began prior to October

---

[21]Not to mention Horn, Nelson, and Shern, stole and covered up the theft of $ 2000 belonging to Springer. Se 06-156 (Judge Frizzell)(pending)

6, 2004. See Exhibit 1, pg. GJ00. Clearly Springer was being investigated in 2003 (referral) and in 2004 by Horn and Nelson. See Exhibit 5. There is no doubt that on October 6, 2004, a Grand Jury under the control of both Nelson and Horn was actively investigating both Springer and Stilley. See Exhibit 1, pg. GJ001672 The information both Meadors and Shern gathered unlawfully knowing full well a Grand Jury investigation was ongoing on both Springer and Stilley, since at least before October 6, 2004, was obtained in violation of both Springer and Stilley's Fourth[22] and Fifth Amendment Rights.

CONCLUSION

Springer requests this Court to reconsider its order denying Springer's Motion to Suppress, and in consideration of the Grand Jury testimony of Judy Patterson dated October 6, 2004, recently turned over to Springer, find suppression is warranted regarding all the statements obtained form Oscar Stilley and all information obtained by way of the January 20, 2006 Grand Jury Subpoena issued to Stilley, finding both Shern, Horn and Nelson, plotted to obtain information from Oscar Stilley they intended use against both Springer and Stilley in their active Grand Jury investigation of both Springer and Stilley, in violation of the Fifth

---

[22]The Fourth Amendment protects against unreasonable search and seizure and Springer asserts that when both Meadors told Springer in 2004 he was not under criminal investigation, and when Shern told Stilley in 2006 he was not under criminal investigation by a Grand Jury subpoenaing him, both statements made were unreasonable and to some degree affect Springer's rights.

Amendment due process clause and self incrimination clause, while maintaining neither Springer or Stilley were under any Grand Jury investigation.

Alternatively, and in addition, Springer requests this Court suppress all evidence obtained by Donna Meadors during her unlawful "6700" investigation as she was clearly aware Springer and Stilley were under Criminal investigation by Horn and Nelson's Grand Jury and deliberately lied about such investigation to secure the answers she knew she intended to use against Springer and Stilley.

Springer also requests this Court dismiss each Count under its supervisory power and based upon the clearly marked prosecutorial misconduct by Horn, Nelson and Shern, as utilized by O'Reilly, Snoke and Shern, in their obtaining the March 10, 2009 indictment, and trial jury, in obtaining Springer's words and information and Stilley's words and information, including documents in violation of the Fifth Amendment due process and self incrimination clause.

Alternatively, Springer requests this Court order a mistrial based upon the presentation of evidence obtained from both Springer and Stilley in violation of the Fifth Amendment as there is no way to extract the unlawfully and illegally obtained information from the jury's mind at this stage of the case.

        Respectfully Submitted
        /s/ Lindsey K. Springer
        <u>Lindsey K. Springer</u>
        5147 S. Harvard, # 116
        Tulsa, Oklahoma 74135
        918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Motion to Reconsider attached exhibits, was ecf'd on November 1, 2009, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

<u>/s/ Lindsey K. Springer</u>
Signature