# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## JURY INSTRUCTIONS

### STEPHEN P. FRIOT

### UNITED STATES DISTRICT JUDGE

# JURY INSTRUCTIONS INDEX
## USA v. LINDSEY KENT SPRINGER, OSCAR AMOS STILLEY
### CR-09-043-SPF

Jury Inst. No.

| | |
|---|---|
| 1. | Opening |
| 2. | Introduction to the Charges |
| 3. | The Indictment |
| 4. | Plea and Presumption of Innocence |
| 5. | Burden of Proof |
| 6. | Reasonable Doubt |
| 7. | Evidence |
| 8. | Evidence - Direct and Circumstantial - Inferences |
| 9. | Credibility of Witnesses |
| 10. | Impeachment |
| 11. | Summary Witness |
| 12. | Charts and Summaries |
| 13. | Dates of Alleged Offense |
| 14. | Caution - Consider Only Crime Charged |
| 15. | Multiple Defendants |
| 16. | Proof of Intent |
| 17. | Knowingly - Willfully - Good Faith |
| 18. | Income |
| 19. | Gifts - Minister |
| 20. | Count One: The Statute Defining the Offense |
| 21. | Count One:  Nature of the Offense |
| 22. | Count One:  Elements of the Offense |
| 23. | Counts Two through Four:  The Statute Defining the Offense |
| 24. | Count Two: Nature of the Offense |
| 25. | Count Two:  Elements of the Offense |
| 26. | Counts Three and Four:  Nature of the Offense |
| 27. | Count Three:  Elements of the Offense |
| 28. | Count Four:  Elements of the Offense |
| 29. | Aid and Abet: The Statute Defining the Offense, The Nature of the Offense, and the Elements of the Offense |
| 30. | Counts Five and Six:  The Statute Defining the Offense |
| 31. | Counts Five and Six:  Nature of the Offense |
| 32. | Counts Five and Six:  Elements of the Offense |
| 33. | Venue |
| 34. | Transcript of Witness's Trial Testimony |
| 35. | Verdict |
| 36. | Closing |
| | Verdict Form |

## INSTRUCTION NO. 1
## <u>OPENING</u>

Members of the jury, you have heard the evidence in this case and will hear the closing arguments of the government and the defendants. It is now the duty of the court to instruct you as to the law applicable to this case, both from the viewpoint or position of the government, as the plaintiff, and from the viewpoint or position of the defendants.

Nothing said in these instructions or nothing in any form of verdict prepared for your convenience is to suggest or convey in any manner any information as to what verdict I think you should find. You, as jurors in this case, are the sole judges of the facts, and it is your duty to determine the true facts herein. Your only interest is to determine whether the government has proven the defendant guilty beyond a reasonable doubt of the crimes charged against that defendant in the indictment.

## INSTRUCTION NO. 2
## INTRODUCTION TO THE CHARGES

By indictment the government has accused the defendants, Lindsey Kent Springer and Oscar Amos Stilley, of committing crimes against the United States. This is only a charge. The defendants are presumed to be innocent. Therefore, you may find a defendant guilty only if you are convinced, beyond a reasonable doubt, that he committed the crime charged in the indictment. If you are not convinced beyond a reasonable doubt that the defendant committed the crime charged, you must find him not guilty.

At times during the trial, you saw the lawyers or the defendants make objections to questions, and to answers by witnesses. This simply meant that I was requested to make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. These are only related to the legal questions that I had to determine and should not influence your thinking.

It is my job to decide what rules of law apply to the case. I have explained some of these rules to you in the course of the trial, and I will explain others to you now before you go to the jury room. You must not follow some rules and ignore others. Even if you disagree or do not understand the reasons for some of the rules, you are bound to follow them.

If you decide that the government has proven beyond a reasonable doubt that a defendant is guilty of one or more of the crimes charged in the indictment, it will also be my job to decide what the punishment will be. You should not try to guess what the punishment might be or express opinions as to what it ought to be. Punishment should not enter into your consideration or discussions at any time.

# INSTRUCTION NO. 3
## THE INDICTMENT

**The indictment reads as follows:**

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.      **LINDSEY KENT SPRINGER** ("Defendant **SPRINGER**") was a resident of the City of Kellyville, in the Northern District of Oklahoma.

2.      Defendant **SPRINGER** used the name Bondage Breakers Ministry to solicit and receive money.  Defendant **SPRINGER**'s stated purpose for Bondage Breakers Ministry was "to get rid of the Internal Revenue Service."

3.      **OSCAR AMOS STILLEY** ("Defendant **STILLEY**") was an attorney residing in Fort Smith, Arkansas.

4.      Defendant **STILLEY** maintained an Arkansas IOLTA Foundation Trust Account ("IOLTA account") at Arvest Bank; an IOLTA account is an interest-bearing account used to hold client funds.

5.      Defendants **SPRINGER** and **STILLEY** each earned income in various ways, including assisting individuals being investigated and prosecuted for federal tax violations. Defendant **SPRINGER** referred individuals to Defendant **STILLEY**, and provided assistance on many of these cases.

6.      Defendant **SPRINGER** last filed an individual income tax return with the Internal Revenue Service in the late 1980's.

7.      Defendant **STILLEY** last filed an individual income tax return with the Internal Revenue Service in the late 1980's.

## COUNT ONE
### [18 U.S.C. § 371]

8.     General Allegations paragraphs 1 through 7  are incorporated as if fully set forth herein.

### OBJECT OF THE CONSPIRACY

9.     Beginning in or about 2000, and continuing until on or about January 15, 2009, within the Northern District of Oklahoma, and elsewhere, Defendants **SPRINGER** and **STILLEY**, and others, both known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is, federal individual income taxes.

### MANNER AND MEANS OF THE CONSPIRACY

The object of the conspiracy was to be accomplished, and was accomplished, through the following manner and means:

10.     Defendants **SPRINGER** and **STILLEY** would and did use Defendant **STILLEY**'s IOLTA account to conceal Defendant **SPRINGER**'s income, assets, and personal expenses;

11.     Defendant **SPRINGER** would and did use Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses;

12.     Defendants **SPRINGER** and **STILLEY** would and did use cashier's checks, money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal Defendant **SPRINGER**'s income;

13.     Defendants **SPRINGER** and **STILLEY** would and did knowingly misrepresent the source and nature of Defendant **SPRINGER**'s income to Internal Revenue Service employees, the Grand Jury, and the Department of Justice; and

14.     Defendants **SPRINGER** and **STILLEY** would and did refrain from filing forms with the Internal Revenue Service, including Forms 1040 and 1099.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to effect the object thereof, Defendants **SPRINGER** and **STILLEY**, and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Northern District of Oklahoma and elsewhere:

15.     On or about September 16, 2005, Defendant **SPRINGER** told Internal Revenue Service employees that all funds he receives are gifts and donations, that he does not have any income, and that he does not provide any services for payment.

16.     On or about January 20, 2006, Defendant **STILLEY** stated to Internal Revenue Service employees that people give money to Defendant **SPRINGER** for his ministry, and expect no services in return.

17.     On or about March 9, 2006, Defendant **STILLEY** provided the Grand Jury with a document titled "RESPONSE TO SUBPOENA" stating that "LINDSEY SPRINGER does not charge for his services," and purporting to list "any money paid, given, transferred, or provided to LINDSEY SPRINGER for any purpose."

18.     On or about June 24, 2003, Defendant **STILLEY** caused to be deposited a check for $112,500 into his IOLTA account.

19.     On or about June 30, 2003, Defendant **STILLEY** caused to be written a check for $14,359 from his IOLTA account to Defendant **SPRINGER**.

20.     On or about July 21, 2003, Defendant **STILLEY** caused to be written a check for $35,000 from his IOLTA account to Defendant **SPRINGER**.

21.     On or about July 31, 2003, Defendant **STILLEY**, using funds from his IOLTA account, purchased a $37,000 cashier's check for Defendant **SPRINGER**.

22.     On or about July 31, 2003, Defendant SPRINGER used the $37,000 cashier's check to purchase a Chevrolet Corvette.

23.     On or about November 6, 2003, Defendant **STILLEY** caused $375,059.90 to be transmitted to his IOLTA account.

24.     On or about November 7, 2003, Defendant **STILLEY** caused three cashier's checks payable to Defendant **SPRINGER** in the amount of $20,000 each to be issued from his IOLTA account.

25.     On or about November 7, 2003, Defendant **STILLEY** purchased $18,000 in money orders for Defendant **SPRINGER** using funds from his IOLTA account.

26.     On or about August 8, 2005, Defendant **SPRINGER** sent an email to a third person containing the account number, routing number, and name of Defendant **STILLEY**'s IOLTA account.

27.     On or about August 11, 2005, Defendants **SPRINGER** and **STILLEY** caused $192,000 to be transmitted to Defendant **STILLEY**'s IOLTA account for Defendant **SPRINGER**.

28.     On or about August 15, 2005, Defendant **STILLEY** caused $166,000 to be transmitted from his IOLTA account for the purchase of a motor home titled in the name of Defendant **SPRINGER** and his wife.

29.     On or about August 18, 2005, Defendants **SPRINGER** and **STILLEY** caused $58,000 to be transmitted to Defendant **STILLEY**'s IOLTA account for Defendant **SPRINGER**.

30.     On or about August 26, 2005, Defendant **STILLEY** caused $5,560 to be transmitted from his IOLTA account to Oklahoma Truck and Trailer Sales for the purchase of a trailer titled in the name of Defendant **SPRINGER**.

31.     On or about September 1, 2005, Defendant **STILLEY** caused $25,813 to be transmitted from his IOLTA account to Lexus of Tulsa for the purchase of a Lexus titled in the name of Defendant **SPRINGER** and his wife.

32.     On or about September 19, 2005, Defendant **STILLEY** purchased two $10,000 cashier's checks payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

33.     On or about November 9, 2005, Defendant **STILLEY** purchased a $10,000 cashier's check payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

34.     On or about November 29, 2005, Defendant **STILLEY** purchased a $9,000 cashier's check payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

35.     On or about December 9, 2005, Defendant **SPRINGER** caused $50,000 he earned from the sale of a motor home to be transmitted to Defendant **STILLEY**'s IOLTA account.

36.     On or about May 2, 2006, Defendant **STILLEY** caused to be written a $1,993.56 check from his IOLTA account to Defendant **SPRINGER**.

37.     On or about July 25, 2006, Defendant **STILLEY** caused to be deposited a $175,000 check in his IOLTA account.

38.     On or about August 3, 2006, Defendant **STILLEY** caused to be written a $25,000 check from his IOLTA account to Bondage Breakers Ministry.

39.     On or about January 15, 2009, Defendant **SPRINGER** represented that he earned no income and that the money he received was given "without any expectation for anything from anybody."

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### [26 U.S.C. § 7201]

40.     General Allegations paragraphs 1, 2, 5, and 6 are incorporated as if fully set forth herein.

41.     From on or about January 1, 2000, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing. Well knowing and believing the foregoing facts, Defendant **SPRINGER** did willfully attempt to evade and defeat the individual income taxes due and owing by him to the United States of America for the calendar year 2000, by failing to file a United States Individual Income Tax Return as required by law, and by committing various affirmative acts of evasion, including: receiving income in a fictitious name; directing individuals to write "donation" or "gift" on checks that were payment for services; directing individuals to pay for services by cashier's check; using a check-cashing business to cash checks; using money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal his income; making false statements to

8

agents and employees of the Internal Revenue Service; and, otherwise concealing and attempting to conceal from all proper officers of the United States of America his true and correct income.

All in violation of Title 26, United States Code, Section 7201.

## COUNT THREE
### [26 U.S.C. § 7201 and 18 U.S.C. § 2]

42.     General Allegations paragraphs 1 through 7 are incorporated as if fully set forth herein.

43.     From on or about January 1, 2003, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing. Well knowing and believing the foregoing facts, Defendants **SPRINGER** and **STILLEY** did willfully attempt to evade and defeat the individual income taxes due and owing by Defendant **SPRINGER** to the United States of America for the calendar year 2003, by failing to file a United States Individual Income Tax Return as required by law, and by committing various affirmative acts of evasion. Defendant **SPRINGER** committed the following affirmative acts of evasion:  directing individuals to make checks payable to Bondage Breakers Ministry; using a check-cashing business to cash checks; and accepting collectible coins as payment for services.   Defendants **SPRINGER** and **STILLEY** committed, and aided and abetted the commission of, the following affirmative acts of evasion:  using Defendant **STILLEY**'s IOLTA account; using Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses; using cashier's checks, money orders, cash, and other means to avoid usual records and to conceal income; making false statements to agents and employees of the Internal Revenue Service; and, otherwise concealing and attempting to conceal from all proper officers of the United States of America Defendant **SPRINGER**'s true and correct income.

All in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code Section 2.

## COUNT FOUR
### [26 U.S.C. § 7201 and 18 U.S.C. § 2]

44.     General Allegations paragraphs 1 through 7 are incorporated as if fully set forth herein.

45.     From on or about January 1, 2005, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing.  Well knowing and believing the foregoing facts, Defendants **SPRINGER** and **STILLEY** did willfully attempt to evade and defeat the individual income taxes due and owing by Defendant **SPRINGER** to the United States of America for the calendar year 2005, by failing to file a United States Individual Income Tax Return despite earning income of sufficient amount to require the filing of an individual income tax return, and by committing various affirmative acts of evasion.  Defendant **SPRINGER** committed the following affirmative acts of evasion:  directing individuals to make checks payable to Bondage Breakers Ministry; and using a check-cashing business to cash checks. Defendants **SPRINGER** and **STILLEY** committed, and aided and abetted the commission of, the following affirmative acts of evasion:  using Defendant **STILLEY**'s IOLTA account; using Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses; using cashier's checks, money orders, cash, and other means of payment to avoid usual records and to conceal income; making false statements to agents and employees of the Internal Revenue Service; and, otherwise concealing and attempting to conceal from all proper officers of the United States of America Defendant **SPRINGER**'s true and correct income.

All in violation of Title 26, United States Code, Section 7201, and Title 18, United States Code Section 2.

**[26 U.S.C. § 7203]**

46.     General Allegations paragraphs 1, 2, 5, and 6 are incorporated as if fully set forth herein.

47.     During the calendar year 2002, Defendant **SPRINGER** had and received gross income in excess of $7,700.  By reason of such gross income, he was required by law, following the close of the calendar year 2002 and on or before April 15, 2003 to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Tulsa, Oklahoma, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, he did willfully fail, on or about April 15, 2003, in the Northern District of Oklahoma and elsewhere, to make and file an income tax return.

All in violation of Title 26, United States Code, Section 7203.

**COUNT SIX**

**[26 U.S.C. § 7203]**

48.     General Allegations paragraphs 1, 2, 5 and 6 are incorporated as if fully set forth herein.

49.     During the calendar year 2004, Defendant **SPRINGER** had and received gross income totaling in excess of $15,900.  By reason of that gross income, he was required by law, following the close of the calendar year 2004 and on or before April 15, 2005 to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Tulsa, Oklahoma, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Well knowing and believing all of the foregoing, he did willfully fail, on or about April 15, 2005, in the Northern District of Oklahoma and elsewhere, to make and file an income tax return.

11

All in violation of Title 26, United States Code, Section 7203.

# INSTRUCTION NO. 4
## PLEA AND PRESUMPTION OF INNOCENCE

As to the indictment, each defendant has entered a plea of not guilty, which casts upon the government the burden of proving the essential allegations beyond a reasonable doubt before you would be justified in returning a verdict of guilty.

A defendant is presumed to be innocent of the crime charged against him and of each and every essential element of that crime.

The presumption of innocence with which the defendant enters a trial continues until such time, if ever, as guilt is shown beyond a reasonable doubt, and if, upon a consideration of all the evidence, facts and circumstances in the case, you entertain a reasonable doubt of the guilt of the defendant as to the crime charged against him, you must give him the benefit of that doubt and return a verdict of not guilty.

## INSTRUCTION NO. 5

## BURDEN OF PROOF

The burden of proving a defendant guilty beyond a reasonable doubt that rests upon the government never shifts throughout the trial. The law does not require a defendant to prove innocence or produce any evidence. A defendant may rely on evidence brought out on cross-examination of witnesses for the government, or the presumption of innocence, or the weakness of the government's case, or favorable inferences casting doubt on guilt, or any of these.

# INSTRUCTION NO. 6
## REASONABLE DOUBT

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense -- the kind of doubt with a basis that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in important and weighty affairs, or hesitate to accept the weighty consequences.

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.

**INSTRUCTION NO. 7**

**EVIDENCE**

The evidence in the case consists of the sworn testimony of the witnesses and all exhibits that have been received in evidence, and all facts which have been admitted or stipulated to, and any facts that I may have judicially noticed. Statements and arguments of counsel, and in-court statements of the defendants, other than their sworn testimony, are not evidence in the case.

You are to consider only the evidence in the case; but, in your evaluation of the evidence, you are not limited to the bald statements of the witnesses. In considering the evidence and in determining the issues in this case, you should bring to your aid the general knowledge which you possess, your understanding of the ways of the world, and your common sense.

# INSTRUCTION NO. 8

## EVIDENCE - DIRECT AND CIRCUMSTANTIAL - INFERENCES

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts. The law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

# INSTRUCTION NO. 9
## CREDIBILITY OF WITNESSES

You are the sole judges of the credibility or believability of each witness and the weight to be given to the witness's testimony. In weighing the testimony of a witness you should consider the witness's relationship to the government or the defendant and interest, if any, in the outcome of the case; manner of testifying; opportunity to observe or acquire knowledge concerning the facts about which the witness testified; candor, fairness and intelligence; and the extent to which the witness has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or non-existence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

The testimony of a defendant should be weighed and his credibility evaluated in the same way as that of any other witness.

## INSTRUCTION NO. 10

## <u>IMPEACHMENT</u>

You are instructed that a witness may be discredited or impeached by contradictory evidence, or by evidence that at other times the witness has made statements that are inconsistent with the witness's present testimony.

If you believe that any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think that it deserves.

If any witness is shown to have knowingly testified falsely concerning any material matter, you have the right to distrust such witness's testimony in other particulars, and you may reject all of the testimony of that witness or give it only such credibility as you may think that it deserves.

You may also consider any demonstrated bias, prejudice or hostility of a witness toward one party or the other in determining the weight to be accorded to the witness's testimony.

# INSTRUCTION NO. 11
## SUMMARY WITNESS

I have permitted the government to present the testimony of a summary witness. This witness does not profess to have personal, first-hand knowledge of the transactions which he summarized, and this witness should not be understood by you as claiming or having such knowledge.

Consistent with what I have just said, this witness should not be understood by you as giving you any independent evidence as to the matters which are in controversy in this trial. For that reason, if you are not satisfied that the summary testimony from this witness is supported by the evidence the court has received in this case, you should, to that extent, disregard the testimony of the summary witness. On the other hand, to the extent that the summary testimony is supported by the evidence the court has received in this case, you may give the summary testimony such consideration as you may find it deserves by way of explanation or clarification of the factual contentions made by the government in this case.

# INSTRUCTION NO. 12
## CHARTS AND SUMMARIES

Some charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts. Other summaries have actually been admitted into evidence. You should consider the evidence presented concerning the preparation and accuracy of these summaries and give them such weight as you believe they deserve. Bear in mind, however, that none of these charts and summaries are independent evidence of any fact in issue in this case. To the extent that you find that these charts and summaries are supported by the evidence that has been received as to the transactions they represent, you may give the charts and summaries such consideration as you may find they deserve.

I will now instruct you regarding the substantive law as it applies to the counts charged against the defendants.

## INSTRUCTION NO. 13
## DATES OF ALLEGED OFFENSE

You will note that the indictment charges certain crimes were committed "on or about" certain dates. The government need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

## INSTRUCTION NO. 14

## <u>CAUTION - CONSIDER ONLY CRIME CHARGED</u>

You are here to decide whether the government has proven beyond a reasonable doubt that a defendant is guilty of each crime charged against him. The defendants are not on trial for any act, conduct, or crime not charged in the indictment.

## INSTRUCTION NO. 15
## <u>MULTIPLE DEFENDANTS</u>

A separate crime is charged against one or more of the defendants in each count of the indictment. You must separately consider the evidence against each defendant on each count and return a separate verdict as to each defendant on each count. For that purpose, as you will see, you have been given separate verdict forms which you will use to express your verdicts separately as to each of the two defendants.

Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to the other defendant or any other counts.

# INSTRUCTION NO. 16
## PROOF OF INTENT

Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. You may infer a defendant's intent from the surrounding circumstances. Intent may be and usually is proved by circumstantial evidence if it is proved at all. You may consider any statements made and any acts done or omitted by a defendant and all other facts and circumstances in evidence that indicate his state of mind.

You may consider it reasonable to draw an inference and thus find that a person intends the natural consequences of acts knowingly done. As I have said, it is entirely up to you to decide what facts to find from the evidence.

# INSTRUCTION NO. 17

## KNOWINGLY – WILLFULLY – GOOD FAITH

**Knowingly.**  When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident.

**Willfully.**  For purposes of these instructions, an act is done "willfully" if it is done voluntarily and intentionally, and if it is done with the purpose of violating a known legal duty.  Willfulness requires the government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that the defendant voluntarily and intentionally violated this duty.

**Good faith defense.**  In this case. the defendants maintain they are not guilty of any of the crimes charged because they contend they did not act willfully and acted in good faith.  You are instructed that if a defendant had a good-faith misunderstanding of the law's requirements to report the income at issue here, he is not guilty of willfully violating a known legal duty.  You are further instructed, however, that a defendant's disagreement with the law – no matter how earnestly held – does not constitute a defense of good-faith misunderstanding or mistake.  It is the duty of all citizens to obey the law regardless of whether they agree with it.

In determining whether or not a defendant acted willfully, and in determining whether a defendant acted in good faith, you may consider all of the circumstances surrounding the transactions and activities which you find occurred.  To the extent that you are called upon to evaluate the state of mind of the parties to various transactions in determining whether certain payments were in fact gifts, or, on the other hand, constituted payment for services rendered or to be rendered, you will be guided by the rules set forth in the next two instructions.

# INSTRUCTION NO. 18
## INCOME

Under the Internal Revenue Code, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, fringe benefits, and similar items;

(2) Gross income derived from business;

(3) Gains derived from dealings in property;

(4) Interest;

(5) Rents;

(6) Royalties;

(7) Dividends;

(8) Alimony and separate maintenance payments;

(9) Annuities;

(10) Income from life insurance and endowment contracts;

(11) Pensions;

(12) Income from discharge of indebtedness;

(13) Distributive share of partnership gross income;

(14) Income in respect of a decedent; and

(15) Income from an interest in an estate or trust.

Under the Internal Revenue Code, gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

<u>GIFTS – MINISTER</u>

As is set forth in more detail elsewhere in these instructions, defendants Springer and Stilley are charged in Count One with conspiracy to defraud the United States by interfering with the lawful functions of the Internal Revenue Service. In Count Two, the defendant Springer is charged with attempted income tax evasion with respect to his income taxes for the year 2000. In Counts Three and Four, both of the defendants are charged with attempted income tax evasion with respect to defendant Springer's income taxes for the years 2003 and 2005, respectively. In Counts Five and Six, defendant Springer is charged with willful failure to file federal income tax returns for 2002 and 2004, respectively.

The government asserts that, in committing these alleged offenses, defendant Springer sought to conceal income, and to evade paying income taxes, by characterizing payments of money received by him as gifts or donations to him or his ministry, and by causing the persons making the payments to do the same. Defendants Springer and Stilley, for their part, assert that certain payments made to defendant Springer were gifts or donations to Mr. Springer and that gifts are excluded from income.

<u>Minister and ministry</u>. You are instructed that affiliation with an actual or purported religious ministry does not exempt an individual from the application of the federal income tax laws. The federal income tax is levied on income received by ministers and persons who hold themselves out as ministers or as being associated with a ministry. When an individual provides ministerial services as his occupation, profession or business, and controls the money he receives in connection with those activities, and receives no separate salary, the income generated by those activities is taxable to the minister. Voluntary contributions, when received and retained by the minister, may be income to him. Payments made to a minister as compensation for his services also constitute income to him. If money is given to

a minister as a gift to the ministry for religious purposes, any money which is used, instead, for the personal benefit of the minister becomes taxable income to him.

Gifts. You are further instructed that, for federal income tax purposes, taxable income does not include money or property acquired by gift. It is for you, the jury, to decide whether any transfers of funds to defendant Lindsey Springer were gifts, and thus not taxable income, or were, in reality, payments for services rendered or to be rendered. In determining whether a payment of money or property to the defendant is a nontaxable gift, you should consider the intent of the parties at the time the payment was made. In determining whether a transfer of money is a gift for tax purposes, the question is whether in actuality the transfer is a bona fide gift or simply a method for paying compensation for services. Consideration should be given to the intent of the parties, the reasons for the transfer, and the parties' performance in accordance with their intention.

The practical test of whether income is a gift is whether it was received gratuitously and in exchange for nothing. Where the person transferring the money did not act from any sense of generosity, but rather to secure goods, services, or some other such benefit for himself or for another, there is no gift.

The intent of the person transferring the money is important in determining whether the amount received from the donor by the donee is a gift for tax purposes. However, the characterization given to a certain payment by either the defendant or the person making the payment is not conclusive. Rather, you the members of the jury must make an objective inquiry as to whether a certain payment is a gift. Among other things, you should consider the terms and substance of any request made by the defendant for the funds. In determining whether the transfer of funds was a gift, you may also consider whether the recipient used any subterfuges, cooperative intermediaries, or devious means with respect to the transfer. In addition, you may take into account the following factors:

1.      How the defendant made his living.

29

2.  Whether the person making the payment expects to receive anything in return for it.

3.  Whether the person making the payment felt he had a duty or obligation to make the payment.

4.  Whether the person making the payment did so out of fear or intimidation.

This is not a complete listing of all the factors you should consider. You should take into account all the facts and circumstances of this case in determining whether any payment was a gift.

----------------------------------------

These rules with respect to payments which are asserted to have been gifts are applicable to all payments which are asserted to have been gifts, regardless of whether or not it is asserted that the payment was a gift to a minister or to a ministry.

## INSTRUCTION NO. 20

## COUNT ONE: THE STATUTE DEFINING THE OFFENSE

A violation of section 371 of Title 18 of the United States Code is charged against both defendants in count one. Section 371 provides, in pertinent part, that: "if two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy..." then each such person shall be guilty of an offense against the United States.

# INSTRUCTION NO. 21

## COUNT ONE:  NATURE OF THE OFFENSE

As I stated, defendants Springer and Stilley are charged in count one with a violation of Title 18, United States Code Section 371.  This law makes it a crime to willfully conspire to violate the law by defrauding the United States.

The indictment charges that beginning in or about 2000, and continuing until on or about January 15, 2009, within the Northern District of Oklahoma, and elsewhere, defendants Springer and Stilley, and others, unlawfully and knowingly combined, conspired, confederated, and agreed together to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is, federal individual income taxes.

## INSTRUCTION NO. 22
## COUNT ONE:  ELEMENTS OF THE OFFENSE

Section 371 of 18 U.S.C. makes it a crime to willfully conspire to violate the law by defrauding the United States.  To find a defendant guilty of this crime as charged in count one, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

FIRST:    That the defendant agreed with at least one other person to violate the law by defrauding the United States;

SECOND:   That one of the conspirators engaged in at least one overt act furthering the conspiracy's objective;

THIRD:    That the defendant knew the essential objective of the conspiracy;

FOURTH:   That the defendant participated in the conspiracy knowingly, willfully and voluntarily; and

FIFTH:    That there was interdependence among the members of the conspiracy;  that is, that the members of the conspiracy, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

You are further instructed that to "defraud" the United States means not only to intentionally cheat the government out of property or money, but also to interfere with or obstruct by deceit, craft or trickery, or at least by means that are dishonest, one of the following lawful government functions.  The lawful government functions which the indictment charges were interfered with by the defendants in this case are the Internal Revenue Service's ascertainment, computation, assessment and collection of revenue.

To find a defendant guilty of a conspiracy to defraud the United States, the government must prove beyond a reasonable doubt that the defendant knowingly and willfully acted in the manner set forth in the preceding paragraph.

In order to find a defendant guilty of a conspiracy to defraud the United States, the government must prove beyond a reasonable doubt that the defendant knew the purpose or goal of the agreement or understanding, and that the defendant deliberately entered into the agreement intending in some way to accomplish the goal or purpose of the conspiracy by this common plan or action.

A conspiracy or agreement to defraud the United States, like any other kind of agreement or understanding, need not be formal, written, or even expressed directly in every detail.

In order to find a defendant guilty of a conspiracy to defraud the United States, the government must prove beyond a reasonable doubt that one of the conspirators engaged in at least one of the overt acts charged in the indictment, and that this particular overt act was taken in furtherance of the conspiracy's objective. In order to find a defendant guilty of a conspiracy to defraud the United States, you, the jury, must unanimously agree among yourselves that the same overt act was taken in furtherance of the conspiracy. If you do not unanimously agree that at least one of the overt acts charged in the indictment was taken in furtherance of the conspiracy's objective, then you must find the defendants not guilty of the conspiracy charge.

The term "overt act" means some type of outward, objective action performed by one of the parties to or one of the members of the agreement or conspiracy, which evidences that agreement. To find a defendant guilty of a conspiracy, you must unanimously agree that the same overt act was committed by the same conspirator. The government is not required to prove that more than one of the overt acts charged in the indictment was committed, but you must unanimously agree among yourselves with respect to at least one of the overt acts charged in the indictment. In that regard, you are instructed that count one of the indictment

charges the following overt acts in furtherance of the conspiracy. The paragraph numbers below refer to the paragraph numbers as they appear in the indictment.

(15.) On or about September 16, 2005, defendant Springer told Internal Revenue Service employees that all funds he receives are gifts and donations, that he does not have any income, and that he does not provide any services for payment.

(16.) On or about January 20, 2006, defendant Stilley stated to Internal Revenue Service employees that people give money to defendant Springer for his ministry, and expect no services in return.

(17.) On or about March 9, 2006, defendant Stilley provided the grand jury with a document titled "RESPONSE TO SUBPOENA" stating that "Lindsey Springer does not charge for his services," and purporting to list "any money paid, given, transferred, or provided to Lindsey Springer for any purpose."

(18.) On or about June 24, 2003, defendant Stilley caused to be deposited a check for $112,500 into his IOLTA account.

(19.) On or about June 30, 2003, defendant Stilley caused to written a check for $14,359 from his IOLTA account to defendant Springer.

(20.) On or about July 21, 2003, defendant Stilley caused to be written a check for $35,000 from his IOLTA account to defendant Springer.

(21.) On or about July 31, 2003, defendant Stilley, using funds from his IOLTA account, purchased a $37,000 cashier's check for defendant Springer.

(22.) On or about July 31, 2003, defendant Springer used the $37,000 cashier's check to purchase a Chevrolet Corvette.

(23.) On or about November 6, 2003, defendant Stilley caused $375,059.90 to be transmitted to his IOLTA account.

(24.) On or about November 7, 2003, defendant Stilley caused three cashier's checks payable to defendant Springer in the amount of $20,000 each to be issued from his IOLTA account.

(25.) On or about November 7, 2003, defendant Stilley purchased $18,000 in money orders for defendant Springer using funds from his IOLTA account.

(26.) On or about August 8, 2005, defendant Springer sent an email to a third person containing the account number, routing number, and name of defendant Stilley's IOLTA account.

(27.) On or about August 11, 2005, defendants Springer and Stilley caused $192,000 to be transmitted to defendant Stilley's IOLTA account for defendant Springer.

(28.) On or about August 15, 2005, defendant Stilley caused $166,000 to be transmitted from his IOLTA account for the purchase of a motor home titled in the name of defendant Springer and his wife.

(29.) On or about August 18, 2005, defendants Springer and Stilley caused $58,000 to be transmitted to defendant Stilley's IOLTA account for defendant Springer.

(30.) On or about August 26, 2005, defendant Stilley caused $5,560 to be transmitted from his IOLTA account to Oklahoma Truck and Trailer Sales for the purchase of a trailer titled in the name of defendant Springer.

(31.) On or about September 1, 2005, defendant Stilley caused $25,813 to be transmitted from his IOLTA account to Lexus of Tulsa for the purchase of a Lexus titled in the name of defendant Springer and his wife.

(32.) On or about September 19, 2005, defendant Stilley purchased two $10,000 cashier's checks payable to defendant Springer with funds from defendant Stilley's IOLTA account.

(33.) On or about November 9, 2005, defendant Stilley purchased a $10,000 cashier's check payable to defendant Springer with funds from defendant Stilley's IOLTA account.

(34.) On or about November 29, 2005, defendant Stilley purchased a $9,000 cashier's check payable to defendant Springer with funds from defendant Stilley's IOLTA account.

(35.) On or about December 9, 2005, defendant Springer caused $50,000 he earned from the sale of a motor home to be transmitted to defendant Stilley's IOLTA account.

(36.) On or about May 2, 2006, defendant Stilley caused to be written a $1,993.56 check from his IOLTA account to defendant Springer.

(37.) On or about July 25, 2006, defendant Stilley caused to be deposited a $175,000 check in his IOLTA account.

(38.) On or about August 3, 2006, defendant Stilley caused to be written a $25,000 check from his IOLTA account to Bondage Breakers Ministry.

(39.) On or about January 15, 2009, defendant Springer represented that he earned no income and that the money he received was given "without any expectation for anything from anybody."

Finally, you are instructed that in addition to the elements described in this instruction, proof of proper venue is also required before you may find a defendant guilty of the crime charged in count one. I will instruct you later regarding proof of venue.

Next I will instruct you regarding counts two through four of the indictment.

## INSTRUCTION NO. 23

## COUNTS TWO THROUGH FOUR: THE STATUTE DEFINING THE OFFENSE

Counts two, three and four charge a violation of section 7201 of Title 26 of the United States Code. Section 7201 provides, in pertinent part, that: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof..." shall be guilty of an offense against the United States.

## INSTRUCTION NO. 24
## COUNT TWO:  NATURE OF THE OFFENSE

Defendant Springer is charged in count two with a violation of this law, title 26 of the United States Code, section 7201.  This law makes it a crime for anyone to willfully attempt to evade or defeat the payment of federal income tax.

The indictment charges that from on or about January 1, 2000, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, defendant Springer had and received taxable income, and upon that taxable income there was a substantial income tax due and owing.  The indictment further charges that well knowing and believing the foregoing facts, defendant Springer did willfully attempt to evade and defeat the individual income taxes due and owing by him to the United States of America for calendar year 2000, by failing to file a United States individual income tax return as required by law, and by committing various affirmative acts of evasion.

## INSTRUCTION NO. 25
## COUNT TWO: ELEMENTS OF THE OFFENSE

Defendant Springer is the only defendant charged in count two of the indictment. To find Defendant Springer guilty of the crime of tax evasion as charged in count two, you must be convinced that the government has proved each of the following essential elements beyond a reasonable doubt:

FIRST: That defendant Springer owed substantial income tax for the year 2000;

SECOND: That defendant Springer intended to evade and defeat payment of that tax;

THIRD: That defendant Springer committed an affirmative act in furtherance of this intent; and

FOURTH: That defendant Springer acted willfully, that is, with the voluntary intent to violate a known legal duty.

To "evade and defeat" the payment of tax means to escape paying a tax due other than by lawful avoidance. The proof need not show the exact amount of the tax due. However, the government is required to prove beyond a reasonable doubt that the tax due from defendant Springer was substantial.

You are instructed that an "affirmative act" to evade and defeat payment of taxes is a positive act of commission designed to mislead or conceal.

For purposes of count two, the affirmative acts alleged in the indictment to have been committed by defendant Springer are: receiving income in a fictitious name; directing individuals to write "donation" or "gift" on checks that were payment for services; directing individuals to pay for services by cashier's check; using a check-cashing business to cash checks; using money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal defendant Springer's income; making false statements to agents and employees of the Internal Revenue Service; or otherwise concealing and attempting

40

to conceal from all proper officers of the United States of America defendant Springer's true and correct income.

Finally, you are instructed that in addition to the elements described in this instruction, proof of proper venue is also required before you may find the defendant guilty of the crime charged in count two. I will instruct you later regarding proof of venue.

# JURY INSTRUCTION NO. 26

## COUNTS THREE AND FOUR: NATURE OF THE OFFENSE

Counts three and four of the indictment charge both defendant Springer and defendant Stilley with tax evasion in violation of Title 26 of section 7201 of the United States Code. As previously stated, this law makes it a crime to willfully attempt to evade or defeat the payment of federal income tax.

In count three, the indictment charges that from on or about January 1, 2003 and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant Springer had and received taxable income, and upon that taxable income there was a substantial income tax due and owing. The indictment further charges that well knowing and believing the foregoing facts, defendants Springer and Stilley did willfully attempt to evade and defeat the individual income taxes due and owing by defendant Springer to the United States of America for calendar year 2003, by failing to file a United States Individual Income Tax Return as required by law and by committing various affirmative acts of evasion.

In count four, the indictment charges that from on or about January 1, 2005 and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, defendant Springer had and received taxable income, and upon that taxable income there was a substantial income tax due and owing. The indictment further alleges that well knowing and believing the foregoing facts, defendants Springer and Stilley did willfully attempt to evade and defeat the individual income taxes due and owing by defendant Springer to the United States of America for calendar year 2005 by failing to file a United States Individual Income Tax Return as required by law and by committing various affirmative acts of evasion.

42

## INSTRUCTION NO. 27
## COUNT THREE:  ELEMENTS OF THE OFFENSE

To find a defendant guilty of the crime of tax evasion as charged in count three, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

FIRST:     That defendant Springer owed substantial income tax for the year 2003;

SECOND:  That the defendant intended to evade and defeat payment of that tax owed by defendant Springer;

THIRD:     That in furtherance of this intent, the defendant committed one of the affirmative acts charged in the indictment;  and

FOURTH:   That the defendant acted willfully, that is, with the voluntary intent to violate a known legal duty.

As previously stated, to "evade and defeat" the payment of tax means to escape paying a tax due other than by lawful avoidance.   Count three of the indictment does not allege a specific amount of tax due from defendant Springer for calendar year 2003.  The proof need not show the exact amount of the tax due for that year. The government is required to prove beyond a reasonable doubt, that the tax due was substantial.

An "affirmative act" to evade or defeat the payment of taxes is a positive act of commission designed to mislead or conceal.  For purposes of count three, the affirmative acts charged in the indictment to have been committed by defendant Springer are:  directing individuals to make checks payable to Bondage Breakers ministry; using a check-cashing business to cash checks; and accepting collectible coins as payment for services.  The affirmative acts charged  in the indictment by defendants Springer and Stilley are:  using defendant Stilley's IOLTA account; using defendant Stilley's credit card to pay defendant Springer's personal expenses; using cashier's checks, money orders, cash, and other means to avoid creating the usual

43

records of financial transactions and to conceal income; making false statements to agents and employees of the Internal Revenue Service; and otherwise concealing and attempting to conceal from all proper officers of the United States of America defendant Springer's true and correct income.

In addition to being charged as a principal, Defendant Stilley is charged as an aider and abettor in count three. I will instruct you shortly regarding the elements of aiding and abetting.

Finally, you are instructed that in addition to the other elements described in this instruction, proof of proper venue is also required before you may find a defendant guilty of the crime charged in count three. I will instruct you later regarding proof of venue.

# INSTRUCTION NO. 28
## COUNT FOUR: ELEMENTS OF THE OFFENSE

To find a defendant guilty of the crime of tax evasion as charged in count four, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

FIRST:      That defendant Springer owed substantial income tax for the year 2005;

SECOND:     That the defendant intended to evade and defeat payment of that tax owed by defendant Springer;

THIRD:      That in furtherance of this intent, the defendant committed one of the affirmative acts charged in the indictment; and

FOURTH:     That the defendant acted willfully, that is, with the voluntary intent to violate a known legal duty.

Again, as previously stated, to "evade and defeat" the payment of taxes means to escape paying a tax due other than by lawful avoidance. Count four of the indictment does not allege a specific amount of tax due from defendant Springer for calendar year 2005. The proof need not show the exact amount of the tax due for that year. The government is required to prove, beyond a reasonable doubt, that the tax due was substantial.

Again, an "affirmative act" to evade or defeat payment of taxes is a positive act of commission designed to mislead or conceal. For purposes of count four, the affirmative acts alleged to have been committed by defendant Springer as charged in the indictment are: directing individuals to make checks payable to Bondage Breakers Ministry; and using a check-cashing business to cash checks. The affirmative acts by defendants Springer and Stilley as charged in the indictment are: using defendant Stilley's IOLTA account; using defendant Stilley's credit card to pay defendant Springer's personal expenses; using cashier's checks, money orders, cash, and other means of payment to avoid usual records and to conceal income;

45

making false statements to agents and employees of the Internal Revenue Service; and otherwise concealing and attempting to conceal from all proper officers of the United States of America defendant Springer's true and correct income.

In addition to being charged as a principal, Defendant Stilley is charged as an aider and abettor in count four.

Again, you are instructed that in addition to the other elements described in this instruction, proof of proper venue is also required before you may find a defendant guilty of the crime charged in count four. I will instruct you later regarding proof of venue.

I will now instruct you on the elements of aiding and abetting.

INSTRUCTION NO. 29

AID AND ABET: THE STATUTE DEFINING THE OFFENSE,

THE NATURE OF THE OFFENSE, AND THE ELEMENTS OF THE OFFENSE


With respect to aiding and abetting, you are instructed that section 2(a) of Title 18 of the United States Code provides that: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

As previously stated, counts three and four of the indictment charge defendant Stilley with violations of this statute, 18 U.S.C. § 2. This law makes it a crime to intentionally help someone else commit a crime.

To find defendant Stilley guilty of the tax evasion charged in count three or count four as an aider and abetter, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

FIRST: That defendant Springer committed the tax evasion crime charged in the indictment in count three or in count four, respectively; and

SECOND: That defendant Stilley intentionally associated himself in some way with that crime and intentionally participated in it as he would in something he wished to bring about, which requires proof that defendant Stilley consciously shared defendant Springer's knowledge of the underlying criminal act of the tax evasion charged and that defendant Stilley intended to help defendant Springer commit that crime.

An aider or abetter need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a

47

crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Again, in addition to the elements of aiding and abetting described in this instruction, proof of venue is required in order to find a defendant guilty of a crime by aiding and abetting. I will instruct you later regarding proof of venue.

**INSTRUCTION NO. 30**

**COUNTS FIVE AND SIX:  THE STATUTE DEFINING THE OFFENSE**

Counts five and six of the indictment charge defendant Springer only with a violation of section 7203 of Title 26 of the United States Code.  Section 7203 provides, in pertinent part, that "Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall..." be guilty of an offense against the United States.

# INSTRUCTION NO. 31

## COUNTS FIVE AND SIX:  NATURE OF THE OFFENSE

As just stated, defendant Springer is charged in counts five and six with violations of Title 26, United States Code Section 7203.  This law makes it a crime for anyone to willfully fail to make and file an income tax return.

In count five, the indictment charges that during the calendar year 2002, defendant Springer had and received gross income in excess of $7,700.  The indictment further charges that by reason of such gross income, defendant Springer was required by law, following the close of the calendar year 2002 and on or before April 15, 2003 to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income and any deductions and credits to which he was entitled.  The indictment further charges that well knowing and believing all of the foregoing, defendant Springer did willfully fail, on or about April 15, 2003, in the Northern District of Oklahoma and elsewhere, to make and file an income tax return.

In count six, the indictment charges that during the calendar year 2004, defendant Springer had and received gross income in excess of $15,900.  The indictment further charges that by reason of such gross income, defendant Springer was required by law, following the close of the calendar year 2004 and on or before April 15, 2005 to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income and any deductions and credits to which he was entitled.  The indictment further charges that well knowing and believing all of the foregoing, defendant Springer did willfully fail, on or about April 15, 2005, in the Northern District of Oklahoma and elsewhere, to make and file an income tax return.

# INSTRUCTION NO. 32

## COUNTS FIVE AND SIX: ELEMENTS OF THE OFFENSE

To find defendant Springer guilty of the crime charged in count five or count six, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

FIRST: That defendant Springer was required by law to file a tax return concerning his income for the taxable years ending December 31, 2002 (for purposes of count five) or December 31, 2004 (for purposes of count six);

SECOND: That defendant Springer failed to file such a return at the time required by law; and

THIRD: That in failing to file the tax return, defendant Springer acted willfully, that is, with a voluntary intent to violate a known legal duty.

For the crime of willful failure to file a tax return, the government is not required to show that a tax is due and owing from defendant Springer. Nor is the government required to prove an intent to evade or defeat any taxes.

Again, in addition to the elements described in this instruction, proof of proper venue is also required before you may find a defendant guilty of the crimes charged in counts five or six. I will instruct you next regarding proof of venue.

INSTRUCTION NO. 33

## VENUE

I will now give you instructions regarding proof of venue.

In addition to the other elements of each crime charged, the government must prove that venue is properly in this court. This means that the government must prove the crime occurred in this judicial district.

The government has the burden of proving this fact, referred to as venue, by a preponderance of the evidence. This is a different standard of proof than the standard of proof that applies to the other elements of the crimes charged. Unlike proof beyond a reasonable doubt, which is the standard of proof required for each of the other elements of the crimes charged, the government need only prove venue by a preponderance of the evidence. Proof by a preponderance of the evidence is proof by the greater weight of the evidence. It is proof which convinces you it is more likely than not that the crime charged occurred in this judicial district.

When a defendant is charged with multiple crimes, venue must be proven with respect to each crime charged.

### Venue – Count One (Conspiracy)

With respect to venue for purposes of the conspiracy charge alleged in count one, you are further instructed that the government must prove by a preponderance of the evidence either that the alleged conspiratorial agreement was formed in this judicial district or that at least one overt act, if any, which you have unanimously agreed took place in furtherance of the objective of the conspiracy, was committed by any one of the conspirators in this judicial district. For purposes of venue, the acts of any conspirator are considered to be the acts of the other conspirators.


### Venue – Counts Two, Three and Four (Attempted Tax Evasion)

With respect to counts two, three and four, you are instructed that, under the law that applies to this case, attempted tax evasion is a "continuing offense."

Therefore, as to these counts, venue is proper in any judicial district where the acts constituting the attempt to evade taxes were begun, continued, or completed.

<u>Venue as to Aider and Abetter – Counts Three and Four</u>.

With respect to counts three and four, you are instructed that to prove venue for purposes of proving commission of a crime as an aider and abetter, venue is proper where the defendant's acts as an aider and abetter were committed or where the underlying crime occurred.

<u>Venue – Counts Five and Six (Failure to File)</u>

With respect to counts five and six, which charge the crime of willful failure to file, you are instructed that venue is proper in the judicial district in which defendant Springer resided.

———————————————————

Any act which occurred in any of the following counties of the State of Oklahoma is an act which occurred in this judicial district:  Craig, Creek, Delaware, Mayes, Nowata, Osage, Ottawa, Pawnee, Rogers, Tulsa, and Washington.  This judicial district includes all of the counties just listed.

# INSTRUCTION NO. 34
## <u>TRANSCRIPT OF WITNESS'S TRIAL TESTIMONY</u>

During the trial you undoubtedly noted some instances in which I quickly reviewed the preliminary transcript as it appeared on the computer screen. That was only a preliminary transcript. Any transcript which could be made available to other persons for any other purpose would have to be a certified transcript. The preparation of a certified transcript involves a number of steps. It is highly unlikely that a certified transcript of the testimony of any witness could be completed without substantial delay. Moreover, if a transcript of the testimony of any particular witness were provided, it might be necessary, in fairness, to provide additional transcripts of the testimony of other witnesses. That would take additional time, resulting in further delay. For that reason, it is simply not practicable to prepare a transcript of testimony for use in your deliberations. It will be necessary for you to make your decision based on what you remember about the evidence. You must do your very best to recall the testimony as it was presented at trial. You should also listen very carefully to your fellow jurors' recollections as to the testimony which was given during the trial.

## INSTRUCTION NO. 35
## <u>VERDICT</u>

If you find beyond a reasonable doubt from the evidence in this case and under these instructions that a defendant is guilty of a crime charged against him in this case, then you should find him guilty of that crime.

On the other hand, if you do not so find or if you entertain a reasonable doubt as to the guilt of a defendant as to the crime charged, then you should return a verdict of not guilty with respect to that crime.

# INSTRUCTION NO. 36
## CLOSING

From all the facts and circumstances appearing in evidence and coming to your observation during the trial, and aided by the knowledge that you each possess in common with other persons, you will reach your conclusions. You should not let sympathy, sentiment or prejudice enter into your deliberations, but you should discharge your duties as jurors in an impartial, conscientious and faithful manner under your oaths and return such verdict as the evidence warrants when measured by these instructions. These instructions contain all the law, whether statutory or otherwise, that may be applied by you in this case and the rules by which you should weigh the evidence and determine the facts in issue. You must consider the instructions as a whole and not a part to the exclusion of the rest. You will not use any method of chance in arriving at a verdict but base it on the judgment of each juror concurring in it.

After the closing arguments have been completed, the bailiff will lead you to the jury deliberation room to begin your deliberations. If any of you have cellphones or similar devices with you, you are instructed to turn them off and give them to the bailiff as you enter the jury deliberation room. They will be held by the bailiff for you and returned to you after your deliberations are completed and during any lunch break or similar period when you are not deliberating. The purpose of this requirement is to avoid any interruption or distraction during your deliberations and to eliminate even the possibility of a question of outside contact with the jury during your deliberations.

After you have retired to consider your verdict, select one of your number as the foreperson and enter upon your deliberations. The exhibits will be available for your examination.

If it becomes necessary during your deliberations to communicate with the court, you may send a note by a bailiff, signed by your foreperson, or by one or more members of the jury. No member of the jury should ever attempt to

communicate with the court by any means other than a signed writing, and the court will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

The bailiff, too, as well as other persons, is forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person -- not even to the court -- how the jury stands, numerically or otherwise, on the question of the guilt or innocence of the accused, until after you have reached a unanimous verdict.

If you fail to reach a verdict, the parties may be put to the expense of another trial and may once again have to endure the mental and emotional strain of a trial. If the case is retried, a future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to a jury more competent to decide this case than those of you who compose the present jury. There is no reason to believe that there will be more or clearer evidence produced at a future trial.

When you have agreed on a verdict, notify the court of that fact by sending a note through the bailiff. The foreperson alone will sign the verdict form and you will as a body return it into open court, where the court will read the verdict. A form of verdict will be furnished for your use.

In this connection you are advised that the form of verdict includes a blank space before the word "not guilty" and "guilty" for each crime charged against each defendant in each count, so that if you find the defendant not guilty or guilty, simply place a mark in the appropriate space.

The verdict of the jury in this case must be unanimous which means that each juror must agree and concur in the verdict. In this connection, the court advises each of you that as jurors you have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without

violence to individual judgment; each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of deliberations, a juror should not hesitate to re-examine his or her own views and change that opinion, if convinced it is erroneous, but no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

DATED this 13 day of November 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p023  JI final.wpd