IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                                  Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants

MOTION FOR NEW TRIAL

Lindsey Kent Springer ("Springer") moves the United States District Court for the United States' Northern Judicial District of Oklahoma, Title 28 Section 116(a), for an order of a new trial as to each of the Six Counts of the Grand Jury Indictment dated March 10, 2009 pursuant to Fed.R.Crim.Pr. 33(b)(1) and (2) regarding any Count which this Court determines services Springer's Motion for Judgement of Acquittal filed simultaneously herewith.

**I.**	**DISTRICT COURT INCORRECTLY INSTRUCTED THE JURY ON SEVERAL ISSUES**.

    **A.**	**<u>Jury improperly instructed on the meaning of Gift as to all Counts</u>**

This Court incorrectly instructed the jury on the meaning of gift and should have only given the Jury the statutory definition of gift defined by Congress at Title 26, Section 102. Instruction number 19 erroneously opposed the Supreme Court in Commissioner v. Duberstien., 363 U.S. 278, 288 (1960) which "specifically" stated "the trier of fact must be careful not to allow trial of the issue whether the receipt

1

of a specific payment is a gift to turn into a trial of the tax liability." This Court the very thing the Supreme Court instructed it not to allow to happen with the trier of fact.

The Jury should have also been allowed to determine on each item whether a quid pro quo occurred or something less than giving full consideration for the amount of the item. Instructing the Jury the way the Court did regarding gift violated Springer's right to a Jury trial on the fact of what was considered a complete gift or what portion thereof could be found a gift. In each transaction the Prosecution entered general information about what the person expected and nothing more. There was no quid pro quo evidence presented.

The Court should order a new trial based upon this erroneous instruction timely objected to by Springer and allow the Jury to decide how much if any of each item of income is gross income and which amount is excluded instead of the all or none approach the Court levied.

**B       Jury instruction on venue in opposition to Tenth Circuit as to all Counts**

The Tenth Circuit said *United States v. Brewer*, 486 F.2d 507, 509 (10th Cir. 1973). in "federal income tax returns must, **by statute**, be filed in the place of legal residence of the taxpayer or at a service center serving **that district**," and that such place **"is essential to establish jurisdiction and venue**." In *United States v. Taylor*, 828 F.2d 630, 634 (10th Cir. 1987) the Tenth Circuit stated that "federal statutes and regulations lay down the rule as a matter

2

of federal law" regarding the place required by law to file a Form 1040 each year. And in *Rush v. United States*, 256 F.2d 862, 864 (10th Cir. 1958) the Tenth Circuit held Judicial Districts under Title 28, Section 81-131 [including 116(a)] do not "coincide" with "Internal Revenue Districts" established by the President under Title 26, Section 7621.

Title 26, Section 7621 directs

> (a) Establishment and alteration -The President shall establish convenient internal revenue districts for the purpose of administering the internal revenue laws. The President may from time to time alter such districts.
> (b) Boundaries- For the purpose mentioned in subsection (a), the President may subdivide any State, or the District of Columbia, or may unite into one district two or more States.

Title 4, Section 72 specifically provides "All offices attached to the seat of government shall be exercised in the District of Columbia, and not elsewhere, except as otherwise expressly provided by law." See Hughes v. U.S., 953 F.2d 531, 542 (9th Cir. 1992)(they rely on 4 U.S.C. § 72..., This section does not foreclose the exercise of authority by the IRS outside the District of Columbia. The President is authorized to **establish internal revenue districts for the purpose of administering the internal revenue laws**, and these districts can be created outside of Washington, D.C. See 26 U.S.C. § 7621.")

The President of the United State "abolished internal revenue districts as of October 1, 2000." See Doc. 71, pg. 4 citing "Testimony of David C. Williams,

Inspector General, Treasury Inspector General for Tax Administration, dated May 8, 2001, Implementation of the IRS Restructuring and Reform Act of 1998, Joint Hearing Before Committees of the United States Senate and United States House of Representatives." Without an Internal Revenue District there would be no boundary to identify and assign Internal Revenue District Directors. Without any Internal Revenue District, the Jury should have been allowed to find this court lacked venue.

The instruction the Court gave on venue, # 33, erroneously instructed the Jury both as to the case law of the Tenth Circuit and as per Article III, Section 2, Clause 3 and the Sixth Amendment.

This Court should order a new trial with the correct venue instruction per the Tenth Circuit as offered by Springer originally and as Springer briefed during trial for this Court.

### C.    The Court erroneously instructed the Jury as to Form 1040 and that it complied with Paperwork Reduction Act of 1995

This Court on multiple occasions instructed the Jury the Form 1040 did not violate the Paperwork Reduction Act knowing full well what Springer's complete defense was. The Court was aware of the Government Accountability Report in May of 2005 and directed the Jury to a verdict on a question of fact regarding Form 1040 that violated Springer's Right held under the Sixth Amendment to a Jury Trial on all Facts in dispute.

While the Court would not allow the jury to decide what a gift was under

Commissioner v. Duberstien., 363 U.S. 278, 288 (1960), it directed the Jury Form 1040 complied with the Paperwork Reduction Act and OMB regulations when the United States Government Accountability Office said otherwise.

Not only did the Court violate the Sixth Amendment Right in this regard, it took to minimize Springer's right to present a defense and to fully explain Springer's arrival at the Form 1040 not complying with Federal Law. The District Court never made any specific findings pre-trial on Form 1040. The District Court directed originally Springer was to prepare his defense as to the Form 1040 in 45 minutes over Springer's numerous objection. It took Springer more than 45 minutes to "chin the bar" in his pro-offer occurring during trial. Then the District Court allowed the Prosecution to confuse the Jury by arguing the Form 1040 did not have to comply with the Paperwork Reduction Act because of the "mandate by statute" theory that both this Court and the Prosecution were fully aware the Tenth Circuit rejected every time the Department of Justice argues it in the Tenth Circuit.

So, while Springer is given 45 minutes to defend in good faith against a 2 week of trial, Springer has to deal with this Court instructing the Jury the Form 1040 does comply, even though it clearly does not, and all the while Springer continues to lay a foundation for this defense, this Court allows the Prosecution to confuse the Jury by arguing the requirement to file is not subject to the PRA. The best example is the Prosecution directing Springer read footnote 50 on page 31 while Springer is giving his narrative and then while the Prosecution is cross examining Springer on

certain Judicial opinions in effort to mislead the jury, Springer seeks the same relief by having the Prosecution read the other parts of the Judicial decisions and this Court declines to direct the Prosecution in the same way of with the same treatment.

This Court should order a new trial on all Counts and allow Springer to present a complete defense to the accusation Springer was required by law and regulation to File Form 1040 for each year alleged in the Indictment.

## II.    JURY DRAWN IN VIOLATION OF SIXTH AMENDEMNT

### a.    Jury not drawn according to Sixth Amendment in the "State and district"

The Jury in this case was not drawn according to the Sixth Amendment State and district mandate.  This Court allowed the Jury be drawn from several districts in the State of Oklahoma in violation of the Sixth Amendment.  The Jury should have been drawn from the district in the State that Springer lives within.

Congress does not define "cross section of the community" in Title 28, Section 1869 or as the phrase appears at 1861. "**Thus, the 6th Amendment provides that all criminal trials shall be by a jury of the "State and district" in which the crime shall have been committed; and by "district" is here meant either an entire State or a subdivision of a State.**"  Harvard Law Review, The status of our new territories, Vol. **XII, 365, 385 (January 25, 1899)**

Congress does not define the term "district" or "division" as used in section 1861.  Although section 1861 is entitled "Declaration of Policy" such policy cannot

abrogate, or be allowed to abrogate, the Sixth Amendment Right of Springer to have the trial jury drawn from the State and district wherein the alleged offenses are "said" to have been committed.  See Smth v. Daily Mail Publishing Co., 443 U.S. 97, 104 (1979)("However, we concluded that the State's policy must be subordinated to the defendant's Sixth Amendment right of confrontation. ... The important rights created by the First Amendment must be considered along with the rights of defendants guaranteed by the Sixth Amendment. See *Nebraska Press Assn*. v. *Stuart*, 427 U.S., at 561. Therefore, the reasoning of *Davis* that the **constitutional right must prevail**[1] **over the state's interest** in protecting juveniles applies with equal force here.")

"[g]rand and petit juries [are to be] selected at random from a fair cross section of the community." 28 U.S.C. § 1861. Test v. United States, 420 U.S. 28, 30 (1975)(emphasis added)  The 10th Circuit, after being reversed in Test, stated a trial jury is to be "selected at random from a fair cross section of the community" as required by the Act and the **fifth and sixth amendments** to the United States Constitution. United States v. Test,  550 F.2d 577, 581 (10th Cir. 1976)

"Section 1861 of the Act provides: It is the policy of the United States that all litigants in Federal courts entitled to trial by jury **shall have the right** to grand and petit juries *selected at random from a* **fair cross section of the community** **in the**

---

[1]Issues here were about confrontation clause but that is distinction without a difference related to the Sixth Amendment.  The Sixth Amendment Right must prevail!

**district** or division wherein the court convenes...." Id. at 584

The Policy implemented by the District Court under its "plan" under Title 28, Section 1863 states as follows:

> Pursuant to 28 U.S.C. § 1861, all litigants "have the right to grand and petit juries selected at random from a fair cross section of the community." The court uses a two-step process to select jurors. First, a master jury wheel is created by selecting names at random from the actual voter lists of the **counties in the district and from the driver license list of Tulsa County**. Then, names are randomly drawn periodically from the master jury wheel to receive juror qualification questionnaires. Individuals' answers to these questionnaires determine whether they are legally qualified to serve. If so, the names of those persons are put on a second wheel, a qualified jury wheel. As prospective jurors are needed for a specific trial or grand jury, juror summonses are sent to persons randomly selected from the qualified wheel. All of these selections are carried out through a properly programmed electronic data processing system for pure randomized selection. The pure randomized process ensures that the mathematical odds of any single name being picked are substantially equal.

Posted on the world wide web on November 18, 2008 at:

http://www.oknd.uscourts.gov/okndpublic/JuryInfo.nsf/e1df95432b8fe773862567ca00573ae3/dd8a518dd650dfcc8625750500648e1d?OpenDocument

The State of Oklahoma is divided up into 24 districts and 77 Counties. Springer lives in the 24th district which is made up of Creek and Okfuskee County. Springer claims that the "plan" itself violates the clear meaning of the phrase "cross section of the community" and in fact violates the Sixth Amendment right to have

any jury drawn from the State and district wherein the alleged acts legislatively occurred. As the Tenth Circuit stated after it was reversed in Test, the jury must be drawn from a "fair cross section of the community in the district or division wherein the court convenes."

Because the Jury was not drawn from District 24 within the State of Oklahoma, the jury rendering their verdict on November 16, 2009, was not drawn from a cross section of the community and in violation of the Sixth Amendment that requires the Jury be drawn from the State and district wherein the alleged offense is said to have occurred. The jury is supposed to be drawn near where Springer lives and not some remote County Springer has never even been through or ever visited. None of the jurors drawn were Springer's neighbors or piers.

This Court should order a new trial and direct the Clerk to draw the Jury solely from the 24th District encompassing Creek and Okfuskee Counties in the State of Oklahoma.

### III.   COUNT ONE WAS SPRINGER'S ALLEGED INCOME AND NOT STILLEYS

This Court erroneously allowed the Prosecution to argue a variance of the Indictment in Count One, which had a spill over affect to Counts Two through Four, which clearly affected Five and Six, by directing the Prosecution they could argue the items of income in Count One were not limited to Springer but was "broader" than Springer's income.

Paragraph 10 through 14 clearly and unmistakably allege the income at issue

was Springer's and not Stilleys.

Because of the impermissible variance this Court should order a new trial on each of the Six Counts properly instructing the Jury on Count One.

**IV      GOVERNMENT IMPROPERLY TOLD JURY SPRINGER CHEATED TAXES FOR 19 YEARS.**

During the Government's case in chief they stated to the jury on more than one occasion Springer cheated on his taxes for 19 years. The repeated this statement at the second part of their closing  There was no evidence Springer cheated on any taxes for 19 years. There was no evidence Springer cheated on any taxes.

This statement prejudicially affected Springer's right to a trial by jury regarding only the charges in the indictment, properly instructed, and this statement made by the Prosecution was prejudicial to Springer's right to a jury trial.

This Court should order a new trial directing the Prosecution be prohibited from prejudicing the Jury with its theatrics and false accusations.


**V.      Honorable Judge Stephen P. Friot has no commission to hold office of the United States' Northern Judicial District of Oklahoma, based upon his commission to hold office in the United States' Western District of Oklahoma, dated November 4, 2001, nor any other statutory authority to hold office in the United States' Northern Judicial District for Oklahoma**

The Honorable Chief Judge Claire V. Eagan, United States' Northern Judicial District of Oklahoma, on March 30, 2009, appointed the  Honorable United States' District Judge Stephen P. Friot ("Judge Friot), United States' Western Judicial District

10

of Oklahoma Judge to exercise Article III Judicial Power of the United States, including Jurisdiction and Venue, over Springer's person and vicinage, in case number 09-cr-043, in the Grand Jury Indictment dated March 10, 2009, United States of America v. Lindsey Kent Springer, without citing or having any authority from Congress or otherwise to make such assignment.

Judge Friot is not commissioned under Article III, Section 1, Article II, Section 2, Clause 2, and Article I, Section 8, Clause 9, to hold office of a United States District Court Judge in the United States' Northern Judicial District of Oklahoma, including that he has no statutory authority under Title 28, Section 116(a), 132, 133, 134, 451, and under Title 18, Section 3231-3237.

Judge Friot was not temporarily assigned pursuant to Title 28, Section 292(b) by Chief Judge Henry to hold office in the United States' Northern Judicial District of Oklahoma for case 09-cr-043 based upon any specific public interest.

Misc. # 23 is not a temporary assignment of any specific district judge but rather purports to make all United States District Court Judges holding office in the Northern, Eastern or Western United States Judicial Districts of Oklahoma, to be a United States District Judge in all three (3) United States Judicial Districts at the same time and for a period of one year with apparently automatic renewing. This purported standing designation has apparently been renewed yearly for at least the last few years without any attorney filing any objection. Congress did not intend or authorize this result by enacting Title 28, Section 292(b). Such intent is contrary to

Article III, Section 1 and Article II, Section 2, Clause 2 and Article I, Section 8, Clause 9.  There must be a specific public interest identified[2] and the assignment must be temporary and specific for a Judge with consent of the parties.

In Title 28, Section 292(d) Congress describes the trigger as a "certificate of necessity."   Title 28, Section 292(b) was not enacted for the purpose of creating additional United States District Court offices, yet that is precisely what the U.S. DOJ argues Misc. # 23 apparently accomplishes.  Judge Friot has made no findings relating to his appointment other than to inform Springer of this clarification.

Misc. # 23 violates Article III, Section 1, Article II, Section 2, Clause 2 and Article I, Section 8, Clause 9, of the United States Constitution, and Title 28, Sections 116, 132, 133, and 134, as defined by Title 28, Section 451, wherein the President alone shall appoint all officers of the United States or "district judges" which shall be established by law with advice and consent of the Senate.

To the extend this Court determines that Misc. # 23 does not violate Article III, Section 1, Article II, Section 2, Clause 2, and Article I, Section 8, Clause 9 of the Constitution of the United States, or Title 28, Sections 116, 132, 133, and 134, as defined by Title 28, Section 451, then Springer claims Title 28, Section 292(b) is unconstitutional as it then violates Article III, Section 1, Article II, Section 2, Clause

---

[2]The only possible public interest that may qualify is when a vacancy of some previously established office holder occurs and then such assignment would be subject to consent by the parties or otherwise be in violation of Article III, Section 1, Article II, Section 2, Clause 2, Article I, Section 8, Clause 9, and Title 28, Sections 116, 132, 133 and 134 as defined by Title 28, Section 451.

2 and Article I, Section 8, Clause 9, because then section 292(b) would be relied upon to establish someone other than the President, and with consent of the Senate, to assign inferior Court officers to hold Judicial offices in offices that are not established by law.

Congress has limited the number of "offices" in the United States' Northern Judicial District of Oklahoma to three (3) with one (1) office that roams between the Northern, Eastern and Western Judicial Districts of Oklahoma. Judge Friot is not any of these four commissioned office holders or judges.

Judge Friot has no jurisdiction under Article III, Section 1, Article III, Section 2, Clause 3, Article II, Section 2, clause 2, the Sixth Amendment, or under Title 28, Section 116(c) or 132, 133(a), and 134, to hold office of his commission in the United States' Northern Judicial District of Oklahoma. See Title 28, Section 116(a).

Chief Judge Eagan, in her assignment of Judge Friot, cites no statute or rule of the United States authorizing her to assign a United States Judicial District Judge commissioned by Congress in the United States' Western Judicial District of Oklahoma, to take office in the United States' Northern Judicial District of Oklahoma.

Springer claims Misc. # 23 does not in any way exercise the limited power Congress appears to have granted to the Chief Judge of "a circuit" regarding any specific "district judge of the circuit" to temporarily "hold a district court in any district within the circuit." How does a "district judge" "hold a district court"

13

anyway, and what does "hold a district court" actually mean?  It would appear that it means that a district judge is assigned a specific judicial seat in a specific locale in a specific judicial division of a specific judicial district.  It does not mean, "be a federal judge anywhere in the state of Oklahoma".

The assignment of Judge Friot to 09-cr-043 violates Title 4, Section 72 because the office to which he sits has not been previously established by law.

This Court should order a new trial with a properly commissioned officer holder.

**VI.     SIXTH AMENDMENT VIOLATED BY TOUGHY REGULATIONS**

The Sixth Amendment allows Springer the right to call witnesses to aid in his defense.  Springer attempted to have this Court agree to provide several witnesses that work for the United States as witnesses in Springer's defense.  These included Donna Meadors, Tim Arsenault, Douglas Horn and Melody Nelson.  This Court informed Springer without complying with the Toughy regulations Springer was not allowed to call these witnesses who were all involved heavily in the investigation of Springer and Stilley.

Springer claims that Toughy regulations, to the extent they trump Springer's right to call valuable witnesses to his defense, violates Springer's Sixth Amendment Rights.

A new trial should be ordered allowing Springer to present these witnesses to his defense in chief.

### VII.     PROSECUTOR NOT AUTHORIZED IN STATE OF OKLAHOMA

This Court should order a new trial because the Prosecution Team was not authorized by Federal Law to hold office in the State of Oklahoma. Their exercise of any authority outside of the District of Columbia was unlawful. See Title 4, Section 72 Furthermore, Brian Shern had no delegation of authority to act on behalf of the Commissioner outside of the District of Columbia. See Title 4, Section 72

This Court should order a new trial because the Prosecution team lacked any delegation of authority or office appointment outside the District of Columbia involving Counts One through Six.

### CONCLUSION

Lindsey Kent Springer respectfully requests this Court issue an Order for a New Trial for each of the reasons stated herein.

Respectfully Submitted

/s/ Lindsey K. Springer
<u>Lindsey K. Springer</u>
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Motion to for New Trial was ecf'd on December 8, 2009, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

/s/ Lindsey K. Springer
Signature