N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

                    Plaintiff,

                                        Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

                    Defendants

SPRINGER'S ALTERNATIVE[1] REPLY TO OPPOSITION TO MOTION TO
DISQUALIFY, RECUSE AND REMOVAL AND
RANDOM REASSIGNMENT

From the outset, just having to file this reply and having to address the  Attorney General

Appointed ("AGA") defense of Stephen P. Friot should be grounds alone to recuse.  It has placed

Springer in the unthinkable position of either accepting the unconscionable errors of Chief Judge

Henry and Chief Judge Eagan, or align the AGA and Stephen P. Friot in one accord.  Both are

unacceptable to Springer.

ADDITIONAL QUESTION

DID CHIEF JUDGE EAGAN DISQUALIFY HERSELF FROM ASSIGNMENT, AND IF
NOT, WAS SHE DISQUALIFIED UNDER TITLE 28, SECTION 455 ANYWAY?

The answer to this question is that Chief Judge Eagan was disqualified by Title 28, Section

455 regardless of whether she recused her self on the record of this case.  An affidavit under Title

28, Section 144 would have been warranted with the discovery of Judith Patterson testifying before

a grand jury on October 6, 2004.

_____

        [1]Springer filed a Motion to Strike Doc. 276 and 277.  This reply is in the event the
Motion to Strike is denied.

1

Springer's Motion raised four issues (1) to Disqualify the Honorable Stephen P. Friot United States' Western Oklahoma District Court Judge from 09-cr-043 pursuant to Title 28, Sections 455(a) due to partiality in favor of the United States, 455(b)(1) due to prejudice, (2) for recusal based upon Stephen P. Friot's lack of jurisdiction outside the geographical boundaries set to his commission at Title 28, Sections 116(c), 132, 133, 134 and 451, (3) removal from holding court in the Northern Oklahoma Judicial District under Article III, and (4) for random reassignment under LCvR40.1.

In each of these instances the AGA attempts to blur the distinction by filing a "consolidated" reply to both Springer's Motion and his Title 28, Section 144 Affidavit. That affidavit sets forth facts that require recusal. Springer's Motion sets forth reasons why the lawful thing to do is for Stephen P. Friot recuse.

**1.      Chief Judge Eagan's disqualification renders assignment of Stephen P. Friot unlawful**.

There is no question that impartiality is clearly questioned. Random assignment or assignment by someone other than a judge that is disqualified is the law.

Title 28, United States Code, Section 136(e) clearly and unmistakably says "[I]f the chief judge is temporarily unable to perform his [her] duties as such, they shall be performed by the district judge in active service, present in the district and able and qualified to act, who is next in precedence." In *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir. 1983) the Fifth Circuit held:

> "The business of a court having more than one judge is divided among the judges as provided by the rules and orders of the court. 28 U.S.C. § 137 (1976). The local rules of court for the Eastern District of Texas contain no provision for the reassignment of cases in which a judge is disqualified. Section 137 provides that, in the absence of such rules and orders, it is the duty of the chief judge of the district to assign cases, but patently that judge has no authority to sign such an order, or any other judicial order, pertaining to a proceeding **in which he is disqualified**. **To permit a**

**disqualified chief judge to select the judge who will handle a case in which the chief judge is disabled would violate the congressional command that the disqualified judge be removed from all participation in the case.** It might, in addition, create suspicion that the disqualified judge will select a successor whose views are consonant with his. Congress intended the statutory antisepsis to be absolute in order to avoid any bacterium of impugnment."

Page 1261 cited in United States v. Pearson, 203 F.3d 1243, 1266 (10th Cir. 2000); see also In Re McBryde, 117 F.3d 208, 225 (5th Cir. 1997)

**(2)** **Recusal is warranted based upon Stephen P. Friot's lack of jurisdiction outside the geographical boundaries set to his commission at Title 28, Sections 116(c), 132, 133, 134 and 451.**

The AGA merely argues that a de facto officer is authorized when challenged during a pending case where that is clearly an erroneous position to hold. All the cases compare de facto to a collateral attack and not objection while the case is pending. The AGA cites no authority for their position and Springer knows of none.

The most strained argument the AGA makes on behalf of Chief Judge Henry, Chief Judge Eagan, and Stephen P. Friot, is the "de facto officer doctrine." The de facto officer doctrine implies there is an office to fill. "The de facto officer doctrine confers validity upon acts performed by a person acting under the color of official title even though **it is later discovered** that the legality of that person's appointment or election to office is deficient. *Norton v. Shelby County*, 118 U.S. 425, 440 (1886)." *Ryder v. United States*, 515 U.S. 177, 180 (1995) There is no later discovery as the discovery is now.

In *Ball v. United States*, 140 U.S. 118 (1891), an assignment to sit "as **a replacement** for the resident judge who had fallen ill and who later died" "was judge de facto if not de jure, and his acts as such are not open **to collateral attack**." Id., at 128-129. Similarly, in *McDowell v. United States*,

3

159 U.S. 596 (1895), he "**made no objection at the time of his indictment or trial**." Ryder v. United States, 515 U.S. at 180 The Supreme Court "decided that the assigned judge was a "judge de facto," and that "his actions as such, so far as **they affect third persons**, are not open to question." Id., at 601. In Ex parte Ward, 173 U.S. 452 (1899), held a challenge to the authority of a District Judge "**who had sentenced him**" on grounds the appointment of the judge was improper "**cannot be collaterally attacked**." Id., at 456. The de facto doctrine does not apply. There is no mention of any judicial duty whatsoever in Misc. # 23. The AGA does not point to any either.

**(3)** **Removal from holding court in the Northern Oklahoma Judicial District under Article III is warranted**.

The AGA leaves this issue for another day and or incorporates its argument opposing de facto as being unauthorized into removal being not warranted. Misc. # 23 does not support designation or assignment. Chief Judge Eagan was not authorized to assign anyone to this case as she herself was disqualified from presiding due to her obvious conflict in the Patterson case and providing Mr. Patterson with 4 year reduction and Mrs. Patterson with 14 month reduction in their sentences for giving substantial assistance. The fact Mrs. Patterson testified before a grand jury on October 6, 2004, demonstrates both the institutional referral in place at that time, as well as the bias and prejudice logically flowing from the deal both Pattersons worked out with both Chief Judge Eagan and the United States Attorney. At ever level Stephen P. Friot faced with issues surrounding these facts has acted to prevent Springer from discovering the relationship and role Chief Judge Eagan had in the prosecution of Springer.

Donna Meadors used summons in bad faith during the entire year of 2004. Brian Shern swore he relied upon those facts both at trial and in his unsworn affidavit he used to gain access to

Springer's home unlawfully. Douglas Horn and Melody Nelson were doing a Grand Jury Investigation of Springer and Stilley and had revealed to Chief Judge Eagan their need for Judith Patterson and Eddy Patterson's testimony as of August 30, 2004 in writing. Douglas Horn lied to the Department of Justice on December 15, 2005 about whether Stilley is a target of his grand jury investigation to obtain a subpoena on Oscar Stilley. Brian Shern left whether Stilley is a "target" with a question mark when on September 22, 2004 he sought a subpoena on Oscar Stilley from Meldoy Nelson. Target letters were fabricated by the Department of Justice in June, 2005 and were unauthorized by the Secretary. Kenneth Snoke worked directly with Melody Nelson in 2004 and 2005. Kenneth Snoke traveled to the Tenth Circuit on November 16, 2009 to save one of Stephen P. Friot's orders in another case he sat in from 2005.

Springer can offer but a few of the actions taken in this case by Stephen P. Friot that demonstrate the bias and prejudice of Chief Judge Eagan in this case.

Springer issued subpoenas for a franks hearing and suppression hearing which would have uncovered the bias and prejudice of Chief Judge Eagan. Brian Shern's Affidavit filed in the Clerk's Office was not sworn under oath and not filed in the Clerk's Office as sworn. Stephen P. Friot ignored each of Springer's 8 motions to dismiss with single minute order denials and no finding of facts or conclusions of law. Stephen P. Friot determined subpoenas for Meadors, Horn, Nelson, Arsenault and Knorr sought at trial by Springer required "Touhy" compliance when the Sixth Amendment clearly said otherwise under the confrontation clause. Definition of Gift went from 1 sentence in Title 26, Section 102 to 3 pages of law at trial while at the same time Stephen P. Friot ignored Duberstein v. Commissioner, and that a factual determination of a payment as a gift should not be presented to the same fact finder for a determination of any tax liability. Stephen P. Friot

continually told the jury "Form 1040" complied with the Paperwork Reduction Act of 1995 and "did not violate" same at every important point of the trial. All the while limiting Springer to 45 minutes of authorized time to present Springer's good faith Paperwork Reduction Act Defense in an otherwise 3 week trial. Stephen Friot continually ignored that internal revenue district did not mean or did not coincide with judicial district. Stephen P. Friot refused to allow Springer to publish a United States Government Accountability Report to the Jury where the Jury could have weighed the credibility that Springer was not the only one who claimed the Form 1040 violated federal law regarding the Paperwork Reduction Act for all relevant time periods. Stephen P. Friot allowed the AGA to continually confuse the jury about the application of the Paperwork Reduction Act to the requirement to file Form 1040 by allowing the AGA to argue the Paperwork Reduction Act did not apply to the requirement to file Form 1040. This was a position rejected by the 10th Circuit over and over again and one that was advanced by Chief Judge Eagan in 2006, in a case Springer filed against the Internal Revenue personnel, that clearly Chief Judge Eagan should have been recused. The AGA continues to cite to *United States v. Dawes*, 951 F.2d 1189, 1191-92 (10th Cir.1991), quoted in *Springer v. United States*, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006) for the "holding" "the requirement to file a tax return is mandated by statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA" when no such holding has ever been made.

During trial it was learned of both Patterson's involvement in the Springer grand jury investigation by the testimony of Judith Patterson and Eddy Patterson, rending Springer's need to revisit, while he is at trial, the Motion to Suppress and Motion for Franks hearing's one word denial by Stephen P. Friot. At trial, it was learned that grand jury information was given by Douglas Horn to Richard Marrs as the source of the Patterson lawsuit filed in 2005 against Springer. In September,

2009, Springer and Stilley learned of Chief Judge Eagan's involvement with Steven Knorr at Knorr's deposition but were not able to obtain the transcript until just recently.

Springer filed replies to opposition to his Motion as well as a Motion for Judgment of Acquittal to which Stephen P. Friot struck a day after they were filed because the two briefs did not comply with a local civil rule of which Springer was never told by Stephen P. Friot or Local Criminal Rule that Local Civil Rules applied as mandatory. In fact, Springer had filed many docket entries and Stephen P. Friot never said a word about Local Civil Rules in any related order.

There is simply no way a logical person could conclude that the bias and prejudice of Chief Judge Eagan did not find its way into Stephen P. Friot in this case. Impossible.

**(4)    Random reassignment under LCvR40.1.**

Federal Law must be followed in this case. It has obviously been disregarded. Chief Judge Eagan did not "recuse" herself but the logic behind her need for assignment exposes her disqualification present whether she recused herself as Judge Payne did or not. It is the appearance of bias and prejudice that triggers Title 28, Section 455. This case should go back to March 19, 2009, and random reassignment should be made and the law followed as to each instance that occurs as a result of random assignment because that is what Congress said the law is. See Title 28, Sections 116(a), 132, 133, 134, 136(e), 137, 138, 144 and 292(b).

**(5)    Misc. # 23 not lawful assignment or designation under section 292(b) by Chief Judge.**

The Supreme Court in *Nguyen v. United States*, 539 U.S. 69, 75 (2003) said Chief Judges of Circuits not to pursue a "contention" that "requires an excessively strained interpretation of the statute [§ 292(a)]." It is hard for Springer to imagine the Supreme Court would then endorse Misc.

#23 making 14 people "temporarily" Judicial Office holders in 3 separate judicial districts where the Western District has 6 offices, the Northern District has 3 offices, the Eastern District has 1 office and where one office holder sits in all three judicial districts simultaneously by his commission. There is nothing temporary about Misc. #23 and it is apparently renewed yearly.

The public interest is also not present in Misc. #23. There is no public interest in Stephen P. Friot's appointment whatsoever. Certainly nothing in the record of this case. Also, 292(b) requires specific assignment to a specific office for a specific reason for a specific time and for a specific purpose. Springer can gather no answer to any of these specific requirements by reading of Misc. #23. Springer certainly cannot subpoena Chief Judge Henry or Chief Judge Eagan, nor can Springer subpoena Stephen P. Friot to find out these omissions in Mics. #23 construed as an "order" under 292(b) by Chief Judge Henry. That is most certainly strained beyond credulity.

The facts alleged in Springer's Motion are as true as those facts alleged in his affidavit warranting recusal for bias and prejudice. Recusal is warranted.

CONCLUSION

Springer respectfully requests that his Motion to Disqualify, Recuse, Remove and Reassignment, be granted for the reasons stated in Springer's Motion and for those additional reasons in reply to the AGA's opposition.

Respectfully Submitted

/s/ Lindsey K. Springer
Lindsey K. Springer

5147 S. Harvard, #116

Tulsa, Oklahoma 74135

918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Alternative Reply regarding Motion to Disqualify, Recuse, Removal and Reassignment for Bias and Prejudice, was ecf'd on January 21, 2010 to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature