N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

       Plaintiff,

                                  Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

       Defendants

SPRINGER'S REPLY TO OPPOSITION REGARDING AFFIDAVIT FOR BIAS AND
PREJUDICE UNDER TITLE 28, SECTION 144

From the outset, just having to file this reply and having to address the Attorney General Appointed ("AGA") defense of Stephen P. Friot should be grounds alone to recuse. It has placed Springer in the unthinkable position of either accepting the unconscionable errors of Chief Judge Henry and Chief Judge Eagan, or align the AGA and Stephen P. Friot in one accord against Springer even more than is already apparent. Both are unacceptable to Springer.

**1.**     **Stephen P. Friot was not "assigned" to "handle 09-cr-043 and Chief Judge Eagan was not authorized by Title 28, United States Code, Section 136(e), 137 or 292(b) to make the assignment**.

The Attorney General Appointed ("AGA") argues that Misc. # 23 covered the "assignment" for the "2009 calender year" Stephen P. Friot to the Eastern and Northern Judicial Districts of Oklahoma. The AGA even goes so far as to characterize Misc. # 23 as an "Order, made pursuant to the provisions of Title 28, United States Code, Section 292(b), and signed by Chief Judge Robert H. Henry on December 30, 2008..." Doc. 277, pg. 3 Chief Judge Eagan was disqualified from being assigned as the judge in this case per her involvement and deals she and Douglas Horn and Meldoy

1

Nelson entered into with Judith and Eddy Patterson. See U.S. v. Garza, 08-50186, pg. 5 (5th Cir. 1-5-2010). Otherwise, why was she not assigned by random assignment?

Chief Judge Eagan's disqualification, apparent by her actions after Judge Payne recused himself, prevent her from any further involvement in this case. Title 28, United States Code, Section 136(e) clearly and unmistakably says "[I]f the chief judge is temporarily unable to perform his [her] duties as such, they shall be performed by the district judge in active service, present in the district and able and qualified to act, who is next in precedence." In *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir. 1983) the Fifth Circuit held:

> "The business of a court having more than one judge is divided among the judges as provided by the rules and orders of the court. 28 U.S.C. § 137 (1976). The local rules of court for the Eastern District of Texas contain no provision for the reassignment of cases in which a judge is disqualified. Section 137 provides that, in the absence of such rules and orders, it is the duty of the chief judge of the district to assign cases, but patently that judge has no authority to sign such an order, or any other judicial order, pertaining to a proceeding **in which he is disqualified**. **To permit a disqualified chief judge to select the judge who will handle a case in which the chief judge is disabled would violate the congressional command that the disqualified judge be removed from all participation in the case.** It might, in addition, create suspicion that the disqualified judge will select a successor whose views are consonant with his. Congress intended the statutory antisepsis to be absolute in order to avoid any bacterium of impugnment."

Page 1261 cited in United States v. Pearson, 203 F.3d 1243, 1266 (10th Cir. 2000); see also In Re McBryde, 117 F.3d 208, 225 (5th Cir. 1997)

The same is true with Chief Judge Eagan. Her disqualification included any assignment whatsoever of any person, including Stephen P. Friot. The AGA "questions" whether Springer has "standing to object to the....assignment to handle this case." Doc. 277, pg. 3. The AGA uses the term "assignment" both in describing how Stephen P. Friot was assigned to the Northern Judicial District of Oklahoma and how he was assigned to "handle this case." Misc. # 23 does not mention

this case whatsoever. It identifies no vacancy or other circumstance to warrant temporary assignment in any Court in the Northern Judicial District. This is not to say even if Misc. # 23 identified this case that Springer would not have "standing" to challenge such assignment. No doubt Springer would have standing to challenge any assignment by anyone purported to act de jure in this case while the case is pending. In *McDowell,* the Supreme Court addressed only orders affecting 3rd parties dealing with continuing a term until Judge Brawley arrived to take his office for that term:

> "Whatever doubt there may be as to the power of designation attaching in this particular emergency, the fact is that Judge Seymour was acting by virtue of an appointment, regular on its face, and the rule is well settled that where there is **an office to be filled** and one acting under color of authority fills the office and discharges its duties, his actions are those of an officer *de facto* and binding upon the public." *McDowell v. United States*, 159 U.S. 596, 601,602 (1895)

*Ex Parte Ward*, 173 U.S. 452 (1899) was a collateral attack and *Reynolds v. Lentz*, 243 F.2d 589, 590 (9th Cir.1957) is clearly unrelated based upon the issues raised regarding the territory named "Alaska" and how section 292(b) only applied to chapter 5 Judges. What the AGA refuses to acknowledge is that section 292(b), like 292(a), requires designation and assignment by either a non disqualified person or random assignment by rule and law. Section 292(a) includes "Such designation and assignments shall be in conformity with the rules or orders of the court of appeals of the circuit." Section 292(b) directs designation and assignment temporarily to "hold a district court" in any district within the circuit. *Nguyen v. United States*, 539 U.S. 69 (2003) clearly demonstrates the construction the Supreme Court gave words in section 292(a).

There is nothing in the record of this case that would support a finding Judge Payne transferred this case to another judge. Interestingly, the AGA originates that because Judge Payne sat on a panel disqualifying Oscar Stilley from the practice of law in the Northern Judicial District

3

Court, that somehow that made him subject to conflict. This same rationale would apply to Chief Judge Eagan. The problem with the hypothecated suggestion that each of the 3 judges had a conflict because of their panel affiliation with Stilley's practice of law, if applied to Stephen P. Friot's assignment to 05-466 and 05-1075, both these cases would alone justified his recusal for conflict related to Springer. Springer does not accept that rationale and neither should anyone else.

No rule whatsoever was followed in Chief Judge Eagan's selection of Stephen P. Friot for this case. There was no office to fill. No seat that sat vacant. No public interest reason. No temporary assignment. Springer can agree Chief Judge Eagan assigned Stephen P. Friot to this case but not temporarily. Stephen P. Friot's assignment in this case was intended to be as permanent as any properly assigned judge could ever be. Chief Judge Eagan was disqualified and should have followed the law [Title 28, United States Code, Sections 144, 136(e), 137 and 455].

The AGA argues Chief Judge Eagan properly assigned Stephen P. Friot based upon a combination of two laws of the United States. The first is Title 28, United States Code, Section 292(b) "and 137." Doc. 277, pg. 6    Chief Judge Eagan has not a scintilla of power to assign any person commissioned in another Judicial District to set up "office" in her judicial district. Chief Judge Eagan is not the Chief of the Tenth Circuit as Congress only authorized. Chief Judge Eagan being disqualified was prohibited from assigning anyone to do anything according to Title 28, United State Code, Sections 136(e), 137, 144 and 455. Title 28, United States Code, Section 137, is entitled "Division of business among district judges" and limits the Chief Judge of a district to be responsible for the observance of such rules and orders, and shall divide the business and assign the cases so far as such rules and orders do not otherwise prescribe."

Misc. # 23 has never been "filed" in the Clerk's Office for the Northern Judicial District. It

4

is not an order. The rules of the Court provide for assignment through random selection. See LCvR 40.1. The AGA argues the "Constitution" does not require "randomness" that rule 40.1 provides. Springer cannot find the term "randomness" in the Constitution. Springer can find due process only. Rule 40.1 is law pursuant to Title 28, Section 2072 and Federal Rules of Criminal Procedure 57.

The AGA argues "to hold a district court in any district" does not require "or even implies" that "a separate designation or assignment must be made for each specific case during the temporary time period set forth." Doc. 277, pg. 7 This argument is based upon faulty reasoning and more than excessive strained construction of section 292(b).

To "assign temporarily" does not mean "temporary time period set forth." Doc. 277, pg. 7 Section 292(b) says "designate and assign" and taken with public interest clearly means for a specific reason not for no reason and in 1 year terms. In fact the 1 year term appears to violate Title 28, United States Code, Section 138 where terms were abolished by congress at the district court.

The AGA argues Springer was tried in the "district (and state)" which is exactly the opposite of the Sixth Amendment which says "State and district." Unfortunately for the AGA the alleged crimes were said to have occurred in the "Northern District of Oklahoma and elsewhere."See Doc. 2 The AGA offers Stephen P. Friot was "on assignment by the Chief Judge of the Tenth Circuit." Doc. 277, pg. 7 To accept this meaning of "assignment" the Chief Judge of the Tenth Circuit could assign all persons from their commissioned Article III judicial district to all Article III judicial districts from Colorado, Kansas, New Mexico, Wyoming, Utah and Oklahoma, for any time period and everything short of life time assignment would be considered "temporary."

In *Nguyen v. United States*, 539 U.S. 69, 75 (2003) the Supreme Court held that when a case "involves circumstances in which federal judges or tribunals lacked statutory authority to adjudicate

5

the controversy...[We have held] the resulting judgment in such cases invalid as a matter of federal law." *Rivera v. Illinois*, 07-9995, pg. 11 (U.S. 3-31-2009) 129 S.Ct. 1446 This includes recusal.

The AGA argues Springer may be challenging "jurisdiction" which "is lodged in a court, not in a person." Doc. 277, pg. 8. "Article I, § 8, cl. 9, for example, authorizes Congress '[t]o constitute Tribunals inferior to the supreme Court' and Article III, § 1, states that '[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.'" *Ankenbrandt v. Richards*, 504 U.S. 689, 697 (1992)

Article III, Section 1 provides that "...Article III judges [who] hold office during good behavior...." *Ackerman v. Novak*, 483 F.3d 647, 652 (10th Cir. 2007) Under the AGA's argument there are no "offices" to hold only "jurisdiction" "lodged in a court, not in a person." Doc. 277, pg. 8. Interestingly, the AGA argues any Article III Judge can "hold a court" in the Northern Judicial District without identifying what the Court is. Under Title 28, Sections 116(a), 132, 133 and 134, the Court has four (4) District Judges and no more. Stephen P. Friot is not one of those Judges so at best he is a person in this instance. With four (4) judges filling the Court under Title 28, Section 116(a), taken with Title 28, Section 132, 133 and 134, it is beyond a strain to say that jurisdiction of the Court is not limited to 4 office holders duly commissioned.

Even in the cases cited by the AGA the Judge at issue was a senior judge designated by the Chief of the Circuit to temporarily sit in the district court under certain conditions. Reassigned judge Perry was on vacation. See *U.S. v. Teresi*, 484 F. 2d 894, 898 (7th Cir. 1973) . Doc. 277, pg. 8

The most strained argument the AGA makes on behalf of Chief Judge Henry, Chief Judge Eagan, and Stephen P. Friot, is the "de facto officer doctrine." The de facto officer doctrine implies there is an office to fill. "The de facto officer doctrine confers validity upon acts performed by a

person acting under the color of official title even though **it is later discovered** that the legality of that person's appointment or election to office is deficient. *Norton v. Shelby County*, 118 U.S. 425, 440 (1886)." Rryder v. United States, 515 U.S. 177, 180 (1995)

In *Ball v. United States*, 140 U.S. 118 (1891), an assignment to sit "as **a replacement** for the resident judge who had fallen ill and who later died" "was judge de facto if not de jure, and his acts as such are not open **to collateral attack**." Id., at 128-129. Similarly, in *McDowell v. United States*, 159 U.S. 596 (1895), he "**made no objection at the time of his indictment or trial**." Ryder v. United States, 515 U.S. at 180  The Supreme Court "decided that the assigned judge was a "judge de facto," and that "his actions as such, so far as **they affect third persons**, are not open to question." Id., at 601.  In Ex parte Ward, 173 U.S. 452 (1899), held a challenge to the authority of a District Judge "**who had sentenced him**" on grounds the appointment of the judge was improper **"cannot be collaterally attacked**." Id., at 456.  The de facto doctrine does not apply.  There is no mention of any judicial duty whatsoever in Misc. # 23.  The AGA does not point to any either.

We have laws written by Congress, published for the world to see and in plain language the entire world can understand, including Springer.  "In determining the scope of a statute, we look first to its language," *United States v. Turkette*, 452 U.S. 576, 580 (1981), giving the "words used" their "ordinary meaning," *Richards v. United States*, 369 U.S. 1, 9 (1962). *Moskal v. United States*, 498 U.S. 103, 108 (1990)

II. **The AGA argues erroneously that Springer's factual allegations do not warrant recusal for bias or prejudice**.

Unfortunately, the AGA is apparently asking Stephen P. Friot to make a determination that he should not recuse for bias and prejudice because the factual allegations Springer affirms in his

affidavit are not true. Doc. 277, pg. 10  "In assessing the affidavit's sufficiency, the judge may not consider the truth of the facts alleged." *United States v. Gigax*, 605 F.2d at 511; *Bell v. Chandler,* 569 F.2d 556, 559 (10th Cir. 1978). "The affidavit must state with required particularity the identifying facts of time, place, persons, occasion, and circumstances." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)  What "matters is not the reality of bias or prejudice, but its appearance. Quite simply and quite universally, recusal was required whenever 'impartiality might reasonably be questioned.'" *Liteky v. United States*, 510 U.S. 540, 548 (1994)

A favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment. Liteky, 551 This it was said "explains what some courts have called the 'pervasive bias' exception to the 'extrajudicial source' doctrine.  See, e.g., Davis v. Board of School Comm'rs of Mobile County, 517 F.2d 1044, 1051 (CA5 1975), cert. denied, 425 U.S. 944 (1976).)  "Partiality" "does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate." Liteky, 552

"Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) 'extrajudicial source' factor, than of an 'extrajudicial source' doctrine, in recusal jurisprudence." Liteky, 554-555

"[o]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion **unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible**." Liteky, 555 Springer alleged that Stephen P. Friot obviously favors,

8

and has favored, the United States in this complicated case from the very beginning. The problem though was either not readily apparent, or carefully hidden, to prevent the extrajudicial source from being identified in any affidavit. There are many signs of bias and prejudice that surfaced during the proceedings and each allegation of fact are to be taken as true for the purpose of Title 28, United States Code, Section 144 recusal.

The AGA points out the revelation of Judith Patterson testifying before the Grand Jury on October 6, 2004, "more than two weeks prior to trial and four weeks prior to that witness' testimony" fails to establish good cause for Springer not filing the "affidavit" within "ten days before the beginning of the term at which the proceeding is to be heard." See Section 144. First, from the 21st to the 26th is not "more than two weeks." There are no "terms." See Title 28, Section 138.

Springer could never have filed a Motion to Recuse or "Affidavit" "ten days before the beginning of the term at which the proceeding is to be heard" because there is no "term" that began to which ten days could be measured. Springer submits Chief Judge Eagan appointing Steven Knorr to represent Eddy Patterson regarding Springer's subpoena to the Frank's hearing on June 30, 2009, was more than suspicious, and Springer religiously has sought the testimony of Mrs. Patterson and all sealed documents involving Mrs. Patterson from the very beginning of this case. "Issuing any order after a recusal 'would violate the congressional command that the disqualified judge be removed from all participation in the case . . . [and would] create suspicion that the disqualified judge will select a successor whose views are consonant with his [or hers]." *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir. 1983).

All the facts show bias and prejudice by Stephen P. Friot in favor of the United States of America in this case. No one can hardly say otherwise with any degree of consideration.

9

III.    CONCLUSION

Springer respectfully submits that good cause is shown for the section 144 Affidavit as there is no "term" to measure ten days by and in any event the bias and prejudice of Chief Judge Eagan, which forms the basis of the bias and prejudice of Stephen P. Friot, were not clear until the revelation of the grand jury transcript of Judith Patterson on October 6, 2004,[1] and that fact placing into proper order with the entire manner in which Stephen P. Friot handled Springer's attempt at discovering facts surrounding the use of IRS summons during a criminal referral, the role both Pattersons played, along with Chief Judge Eagan, Douglas Horn, Melody Nelson, Donna Meadors, Timothy Arsenault, who were both promoted during this time period, Steven Knorr in this case, and the subsequent rulings made by Stephen P. Friot on things like defining "gift," telling the jury the form 1040 complied with the Paperwork Reduction Act of 1995 and did not violate same, internal revenue district meant judicial district, and that two briefs filed by Springer post trial, which each address the fraud caused by and surrounding the grand jury testimony of Judith Patterson in October 6, 2004, along with the bad faith of Donna Meadors using Summons to further the grand jury investigation by Douglas Horn and Melody Nelson during the time a grand jury institutional referral was in place, provides overwhelming reason why recusal must occur in this case.

                                        Respectfully Submitted

                                        /s/ Lindsey K. Springer
                                        Lindsey K. Springer
                                        5147 S. Harvard, # 116
                                        Tulsa, Oklahoma 74135
                                        918-748-5539/955-8225(cell)

---

[1] Ms. Patterson did not testify until November 12, 2009 at trial.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Reply regarding recusal Affidavit for Bias and Prejudice, was ecf'd on January 21, 2010 to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

                              /s/ Lindsey K. Springer
                              Signature