# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-CR-0043-F |
| | ) | |
| LINDSEY KENT SPRINGER and | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This order addresses the motions at doc. nos. 224, 232, 262, 265, 267, 270 (affidavit), 271, 273 and 285. In other words, this order addresses all motions that are pending except Mr. Springer's relatively recently filed motions at doc. no. 280, 282 and 284, as to which briefing is not yet complete. Unless otherwise indicated, briefing of all motions addressed in this order is complete. These post-trial motions are all brought by one or the other of the defendants, Lindsey Kent Springer or Oscar Amos Stilley. By a jury verdict returned on November 16, 2009, each of the defendants was found guilty of tax-related crimes.

*Part I.*

### Mr. Springer's and Mr. Stilley's Respective Motions
### for Reconsideration of Prior Rulings
### and for Dismissal and/or a Mistrial Declaration

(Doc. Nos. 224, 232)

Mr. Springer's "Motion for Reconsideration, Dismissal and/or for Mistrial Declaration," is before the court. (Doc. no. 224.) Mr. Stilley joins in Mr. Springer's motion. (Doc. no. 232.)

These motions ask the court to reconsider certain rulings memorialized in the court's minute order of July 2, 2009 (doc. no. 100), denying certain pre-trial motions brought by Mr. Springer.[1] Alternatively, the motions ask the court to dismiss the defendants or to declare a mistrial.

In the main, the motions seek to relitigate the consequences of the government's argued failure to advise Mr. Stilley of his status as a target of the grand jury investigation at the time he was subpoenaed for testimony before the grand jury in January of 2006.[2] The motions complain that the government used testimony and discovery that it wrongfully obtained from Mr. Stilley, against both Mr. Springer and Mr. Stilley.

Perhaps anticipating the court might view the motions as a rehash of old issues previously ruled on, Mr. Springer's motion states that it is "based upon recently tendered discovery related to the Grand Jury testimony of Eddy Patterson and Judy Patterson on October 28, 2009." (Doc. no. 224, pp. 1-2.) This statement refers to defendants' contention that on October 28, 2009, the government tendered to defendants, for the first time, discovery related to grand jury testimony of Eddy Patterson and Judy Patterson.[3] As Mr. Springer's motion reiterates, "What gives rise

_____

[1]The pre-trial motions sought dismissal of the grand jury indictment (doc. no. 59), dismissal based on an argued violation of Fourth and Fifth Amendment rights (doc. no. 65), suppression of certain evidence, and a <u>Franks</u> hearing (doc. no. 74). The pre-trial motions were denied from the bench after briefing and a hearing.

[2]The motions also raise some other issues that have been ruled on previously. For example, Mr. Springer's motion argues that Donna Meadors used an administrative summons to conduct a criminal investigation of Mr. Springer. The court has previously rejected this argument as well as the other arguments which have been repeatedly advanced.

[3]With respect to the date of tender, the government contends, and produces evidence to support its contention, that the grand jury testimony was made available to the defendants on or before October 19, 2009, six days before Judy Patterson testified for what the
(continued...)

to Springer's Motion herein is the facts disclosed on October 28, 2009, that both Springer and Stilley were being investigated by the Federal Grand Jury prior to October 6, 2004 together." (Doc. no. 224, p. 12.) (This event is sometimes referred to in this order as the October discovery.) In short, as a result of this October discovery, defendants contend the court should change its rulings on the pre-trial motions identified in n.1, *supra.*

Nothing about the October discovery of the Patterson grand jury evidence changes the fact that no rights were infringed when Mr. Stilley was not advised of his status as a target. As the court has previously ruled, constitutional rights are not abridged by a failure to advise a witness that he is the object of a criminal investigation. *See*, United States v. Myers, 123 F.3d 350, 354-55 (6th Cir. 1997), rejecting defendant's argument that because he was a target of the grand jury investigation he had a constitutional right to a letter informing him of his target status prior to his testimony, citing United States v. Washington, 431 U.S. 181, 189 (1977) ("target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination").

In this same vein -- that is, as grounds to reconsider its pre-trial rulings -- the motions contend the government has acted improperly. For example, the motions assert that the Department of Justice "fabricat[ed] a document" which purports to authorize a 'Grand Jury' investigation of Lindsey K. Springer (doc. no. 224, pp. 6-7); that Assistant U.S. Attorney Douglas Horn "lied about whether Stilley was the subject of a Grand Jury [investigation]" (doc. no. 224, p. 13); that the prosecution "sandbagged" the defendants with the October discovery of the Patterson grand jury

---

[3](...continued)
government contends was twenty minutes in the defendants' trial. Per the government's evidence, Mr. Springer signed a receipt for this discovery on October 21, 2009, and Mr. Stilley signed a receipt on October 23, 2009. (Doc. no. 252, exs. 1, 2.)

testimony (doc. no. 224, p. 2, n.3); and that the prosecution has generally made false representations to the court (*see*, *e.g.*, doc. no. 224, p. 2, n.5). The court rejects these arguments. There has been no showing of improper conduct on the part of the government or the prosecution team so as to require reconsideration of the court's pre-trial rulings.

No facts, either known or unknown at the time the court entered its prior rulings denying defendants' pre-trial motions, support changing those rulings now. Defendants' motions to reconsider those rulings and to dismiss this case or declare a mistrial, are **DENIED**.

*Part II.*

Defendant Springer's Motion for a New Trial.

(Doc. no. 262)

Defendant Springer presents nine different arguments in support of his request for a new trial. (Doc. no. 262). Rule 33(a), Fed. R. Crim. P., provides that a district court may grant a new trial "if the interests of justice so require."

1. Jury Instructions Regarding Gifts.

Mr. Springer argues that a new trial is required because the court improperly instructed the jury, in instruction 19, regarding the legal definition of a gift.[4] Mr. Springer argues the instructions are contrary to Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278 (1960). Mr. Springer argues that the court should have given the jury only the statutory meaning of gift as defined by Congress in 26 U.S.C. § 102. Mr. Springer also argues that the jury should have been instructed about *quid pro quo* giving. Mr. Springer argues that the court's specially tailored instructions

_____

[4]The motion focuses on instruction 19, but in his reply brief Mr. Springer challenges instruction 18 as well. Instruction 18 is entitled "Income" and instruction 19 is entitled "Gifts – Minister."

violated the *ex post facto* clause because Mr. Springer had no way of knowing what definition of "gift" would be applied in his trial.

Duberstein recognizes the nontechnical nature of the statutory standard. The Supreme Court stated in Duberstein that human experience and the multiplicity of relevant factual elements caused the Court to conclude that primary weight in this area (regarding the meaning of a gift for tax purposes) must be given to the conclusions of the trier of fact. *Id*. at 289. The gift instruction used in this case reflects the many relevant facts and circumstances which Duberstein indicates are appropriately weighed by the fact-finder. The gift instructions corresponds to instructions approved in United States v. Terrell, 754 F.2d 1139, 1149 (5th Cir. 1985). Keeping the guidelines of Duberstein and other authorities such as Terrell in mind, the undersigned followed the law while tailoring the jury instructions to the evidence in this case. In fact, the gift instruction in the case at bar, while significantly influenced by the decision in Terrell, *see*, Terrell at 1149, n. 3, was much less peremptory, and conversely much more permissive, than the instruction approved in Terrell. *Id.*

The court rejects Mr. Springer's argument that instructions 18 or 19 constitute grounds for a new trial.

## 2. Jury Instruction Regarding Venue.

Mr. Springer next argues that the jury instruction regarding venue, instruction 33, was improper and entitles him to a new trial. This motion is founded on Mr. Springer's often-repeated premise that Internal Revenue Districts have been abolished and that without Internal Revenue Districts within which to place the charged crimes, the jury should have been allowed to find there was no proper venue. The court has rejected this argument before and it rejects it again now. The venue instruction correctly advised the jury regarding the law of venue with respect to each of the

crimes charged against the defendants. The venue instruction does not require a new trial.

### 3. Instructions or Statements to the Jury that Form 1040 Complied With the Paperwork Reduction Act

Mr. Springer argues that on numerous occasions the court incorrectly advised the jury that IRS Form 1040 did not violate the Paperwork Reduction Act. In this motion, Mr. Springer argues that the PRA was his "complete defense" and that the court improperly advised the jury that Form 1040 complied with the PRA. Assuming that the PRA has any application at all to the offenses charged in this case, the court rejects, as it has done before, Mr. Springer's contention that the Paperwork Reduction Act provides him with a defense in this action. As held in <u>United States v. Dawes</u>, 951 F.2d 1189, 1191-92 (10th Cir. 1991), quoted in <u>Springer v. United States</u>, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006), "the requirement to file a tax return is mandated by statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA." The court's statements to the jury regarding the PRA do not require a new trial.

### 4. Jury Improperly Drawn

Mr. Springer argues:

> The jury in this case was not drawn according to the Sixth Amendment State and district mandate. This Court allowed the Jury [to] be drawn from several districts in the State of Oklahoma in violation of the Sixth Amendment. The Jury should have been drawn from the district in the State that Springer lives within.

(Doc. no. 262, p. 6.) Mr. Springer cites no authorities that support his contention that he is entitled to a new trial because the jury was not drawn from the specific district in which he lives rather than from counties Mr. Springer has "never even been through

or ever visited." (Doc. no. 262, p. 9.) The court rejects this argument as a basis for a new trial.

### 5. Count One

Mr. Springer argues:

> This Court erroneously allowed the Prosecution to argue a variance of the Indictment in Count One, which had a spill over affect [sic] to Counts Two through Four, which clearly affected Five and Six, by directing the Prosecution they could argue the items of income in Count One were not limited to Springer but was "broader" than Springer's income. ... Paragraph 10 through 14 clearly and unmistakably allege the income at issue was Springer's and not Stilley's.

(Doc. no. 262, p. 9.)

> Count One, in fact, charges as follows:

> Beginning in or about 2000, and continuing until on or about January 15, 2009, within the Northern District of Oklahoma, and elsewhere, Defendants SPRINGER and STILLEY, and others, both known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is federal individual income taxes.

(Doc. no. 2, ¶ 9.) Paragraphs ten through fourteen of count one then allege the manner and means defendants used in their conspiracy to defraud the United States, and paragraphs fifteen through thirty-nine allege the defendants' specific overt acts taken in furtherance of this conspiracy.

Contrary to Mr. Springer's assertion, count one does not clearly and unmistakably charge that the income at issue was Mr. Springer's and not Mr. Stilley's. For example, paragraph fourteen charges that: "Defendants Springer and Stilley

would and did refrain from filing forms with the Internal Revenue Service, including Forms 1040 and 1099." Thus, count one references Mr. Stilley's failure to file Form 1040 and alleges conduct by Mr. Stilley that is independent of Mr. Springer's income. The court rejects Mr. Springer's argument that there was an impermissible variance that entitles him to a new trial.

6. Contention the Government Improperly Told the Jury
that Mr. Springer Cheated on his Taxes for 19 Years.

Mr. Springer asserts that during its case-in-chief, the government stated on more than one occasion that Mr. Springer cheated on his taxes for nineteen years, and that the government repeated this assertion in the second part of its closing argument although there was no evidence that Mr. Springer had cheated on his taxes for nineteen years. The government responds with quotations from the record regarding the evidence and argument on this general subject. The court finds that the comments made by the government were consistent with the evidence and were not prejudicial so as to require a new trial for Mr. Springer.

7. The Undersigned's Authority to Preside.

Mr. Springer argues, as he has before, that the undersigned did not have the authority to preside over the trial.

Mr. Springer raised like arguments when he filed a motion for clarification of authority (doc. no. 30) on April 7, 2009. By order of April 22, 2009, the undersigned granted Mr. Springer's motion for clarification and directed Mr. Springer to the Tenth Circuit's Designation Order, sometimes referred to as Miscellaneous Order No. 23 (Misc. 23). Misc. 23 designates the undersigned as authorized to hold court in the Northern District of Oklahoma. (*See*, misc. 23 at doc. no. 42, Ex. "A.") The April motion for clarification made clear that Mr. Springer's reason for filing that motion was simply that he could not discern any legal basis for the undersigned's assignment

to this case; as he questioned the assignment, Mr. Springer sought clarification of that legal basis. After the requested clarification was provided, defendants did not move to challenge the undersigned's assignment until the instant motion for a new trial was filed on December 8, 2009.

A defendant cannot wait for the outcome at trial before raising a known objection to the court's authority to preside over the trial. Accordingly, the court finds that the objection to the undersigned's authority to preside as grounds for a new trial is untimely, and the motion is denied for this reason.[5] (Mr. Springer's arguments in this portion of his motion for a new trial overlap with his arguments for disqualification discussed later in this order. See *Part V*, *infra*, for additional authorities regarding timeliness as a requirement for a motion to disqualify.)

Alternatively, if the argument is a timely one, the court considers its merits. Mr. Springer argues the undersigned cannot preside pursuant to misc. 23 because 28

---

[5]*See and cf.* timeliness issues as discussed in Nguyen v. United States, 539 U.S. 69, 77 (2003). In Nguyen, the petitioner argued the Court of Appeals panel had been improperly constituted because it included an Article IV judge, whereas the constituting statute, 28 U.S.C. § 292(a), only authorized Article III judges to sit by designation. Relying on the *de facto* officer doctrine, the government argued that petitioner's failure to assert the panel's defective composition at the earliest possible time foreclosed relief in the Supreme Court. *Id*. The Court distinguished the application of the *de facto* officer doctrine, stating that the doctrine typically applied when there were only technical defects in statutory authority. In Nguyen, on the other hand, the Court corrected the violation of the statutory provision in question because the provision embodied a strong policy concerning the proper administration of judicial business; the court did so despite the fact that apparently the defect had not been raised at the first opportunity. Mr. Springer's objections to the Tenth Circuit's designation (misc. 23) and to Chief Judge Claire Eagan's subsequent assignment of this case to the undersigned, are not based on any fundamental statutory defects which undercut important policies regarding the proper administration of judicial business and which have, therefore, been addressed by courts despite timeliness issues. Moreover, here, there is no explanation (other than the obvious strategic one) as to why Mr. Springer did not raise concerns about the sufficiency of misc. 23 as support for the undersigned's assignment to this case as soon as he received the court's clarification of its authority back in April of 2009.

U.S.C. § 292(b), which misc. 23 cites as its enabling statute, does not apply here. Section 292(b) states: "The chief judge of a circuit may, in the public interest, designate and assign temporarily any district judge of the circuit to hold a district court in any district within the circuit." Mr. Springer argues that the designations contained in misc. 23 are not in the public interest and that they are not temporary designations.

The court rejects these arguments. Nothing requires misc. 23 to set out the specific public interest served by that order. Nevertheless, the court finds that the obvious purpose of the rule is to provide for the just and efficient administration of justice in situations such as this one, where assigning a case to a judge who regularly sits outside the district helps to avoid any appearance of impropriety given the other in-district judges' prior contacts with the parties in prior proceedings.[6] Additionally, the designation included in misc. 23 is, by its terms, temporary. It states that the named judges are designated and assigned to hold court in the district listed from January 1, 2009, through December 31, 2009.

---

[6]Chief Judge Eagan determined that it would be appropriate to assign this case to a judge from one of the other Oklahoma districts because defendant Oscar Stilley had been involved in hotly contested disciplinary proceedings in the Northern District. *See*, In re Oscar Stilley, Case No. 4:08-ap-0001, USDC ND Okla. These proceedings had, at various times, required the attention of all of the district judges in the Northern District, and are now pending in the Court of Appeals as In re: Oscar Stilley, Tenth Circuit Case No. 09-5090. The disciplinary proceedings in the Northern District were pending when the indictment in this case was returned, and, in fact, resulted in a hearing before Judges Kern, Frizzell and Payne on February 26, 2009, about two weeks before Mr. Stilley was indicted in this case. Thus, Mr. Springer's motion to disqualify, not filed until after his conviction, attempts to turn admirably cautious conduct on Chief Judge Eagan's part (re-assigning the case to a judge outside of the Northern District) into conduct that was purposefully biased and prejudicial.

Mr. Springer also argues that § 292 is unconstitutional for various reasons, including because only the President may appoint district judges. The court rejects these arguments.

Mr. Springer further complains that Chief Judge Claire Eagan, when she assigned this case to the undersigned, cited no statute or rule which authorized that assignment, and that she lacked the authority to assign the case to the undersigned. (Mr. Springer's related arguments that Chief Judge Eagan was disqualified and therefore could not assign the case are addressed in *Part V, infra.*) The court rejects these arguments. The Tenth Circuit's Designation Order (misc. 23), and Chief Judge Eagan's administrative authority, provide authority for the assignment.

Mr. Springer also relies on 28 U.S.C. § 292(d), arguing that a certificate of necessity was required to support the Tenth Circuit's designation of the undersigned as stated in misc. 23. Section 292(d) allows the Chief Justice of the United States to designate and assign temporarily a district judge of one circuit for service in another circuit, either in a district court or court of appeals, upon presentation of a certificate of necessity. That section does not apply here.

The court finds that it had the judicial authority to preside over these proceedings. It rejects Mr. Springer's arguments to the contrary as a basis for a new trial.

### 8. Touhy Regulations

Lastly, Mr. Springer argues that <u>Touhy</u> regulations governing the conditions and procedures by which employees of federal agencies may testify at trial about work-related issues, improperly prohibited Mr. Springer from presenting certain witnesses (his brief names four) in his case-in-chief. *See*, <u>United States ex rel. Touhy v. Ragen</u>, 340 U.S. 462, 468 (1951). Mr. Springer has not shown any effort to comply with <u>Touhy</u>, nor has he shown what the four witnesses would have testified to or why

their testimony would have been helpful to him.  Mr. Springer does not claim surprise about the need to comply with <u>Touhy</u> regulations.[7]  Rather, he argues that such regulations abridged his right to call witnesses in violation of the Sixth Amendment. <u>Touhy</u> regulations require the party requesting the testimony to comply with authorization procedures;  the requesting party must define the scope of the request to testify so that the agency counsel can assess whether the disclosure is proper or lawful.  <u>United States v. Allen</u>, 554 F.2d 398, 406 (10th Cir. 1977).  The <u>Touhy</u> regulations are well established law.  The court rejects Mr. Springer's argument that, as applied here, they entitle him to a new trial.

### 9. <u>Contention that the Prosecution Team Was Not Authorized to Work in the State of Oklahoma</u>

Lastly, Mr. Springer argues that the prosecution team was not authorized to hold office in the State of Oklahoma and that their exercise of any authority outside Washington, D.C. is unlawful.  Mr. Springer argues that Brian Shern had no authority to act on behalf of the Commissioner of the Internal Revenue Service outside of the District of Columbia.  Mr. Springer also argues that Thomas Scott Woodward has no authority to prosecute this case because Mr. Woodward is an "acting" United States Attorney.  Mr. Springer argues:  "There was and is no United States Attorney for this judicial district nor any office for an appointment to be filled. A new trial should be granted." (Doc. no. 288, p. 12.)

These arguments could have been made earlier instead of only now, after Mr. Springer was tried and convicted.  For obvious reasons, a defendant should not be able to challenge the authority of a prosecution team, for the first time, only after the defendant's conviction.  Regardless, Mr. Springer's authorities do not support his

---

[7]He was informed of the need to comply in hearings on July 2, 2009.

arguments and the court rejects his arguments not only as untimely but also on their merits.

Summary of the Court's Rulings

on Mr. Springer's New Trial Arguments

The interests of justice do not entitle Mr. Springer to a new trial. Mr. Springer's motion for a new trial is **DENIED**.

*Part III.*

Springer's Motion to Vacate Order of December 9, 2009,

to Reinstate Doc. Nos. 257 and 260, or

Alternatively, for Additional Time to Comply

(Doc. no. 265.)

Mr. Springer asks the court to vacate its order of December 9, 2009. ("The December order," doc. no. 264). The December order granted the government's motion to strike certain filings because the filings did not comply with page limitations set out in the local court rules of the United States District Court for the Northern District of Oklahoma.[8] The specific filings Mr. Springer asks to have reinstated are document nos. 257 (his reply to the prosecution's response to Mr. Springer's motion to reconsider or to dismiss or to declare a mistrial), and document no. 260 (his motion for judgment of acquittal).

Mr. Springer's primary argument is that it is improper to hold him to the page requirements of LCvR7.2, which provides that no brief shall be submitted that is

---

[8]LCvR7.2(c) requires that no brief shall be submitted that is longer than twenty-five pages without leave of court. LCvR7.2(h) provides that reply briefs are limited to ten pages unless otherwise authorized by the court. These rules are incorporated by reference in the local criminal rules by N.D. LCR 1.2, which states as follows. "Where appropriate in a criminal context, Civil Local Rules ... 7.2(Briefs)...are also deemed applicable to criminal cases."

longer than twenty-five typewritten pages without leave of court. Mr. Springer argues that N.D. LCR 1.2, which incorporates LCvR7.2 by specific reference, states that LCvR 7.2 applies "Where appropriate in a criminal context...." Mr. Springer argues, essentially, that the rules did not give him fair notice that his situation was one such "criminal context" in which it would be "appropriate" to apply the page limitations. He argues that his rights were violated by the court's enforcement of the page limitations. Mr. Springer's protestations ring hollow for many reasons.

First, he focuses on the introductory phrase of N.D. LCR 1.2 -- ("Where appropriate in a criminal context") -- to argue that this criminal rule fails to give adequate notice that the page limitations set forth in LCvR7.2 apply. LCvR7.2 is specifically identified in N.D. LCR 1.2, by rule number and by subject matter as a rule that pertains to "Briefs." If Mr. Springer truly thought that the "where appropriate" language created a question about the applicability of the page limits, then, instead of unilaterally filing lengthy papers, he should have asked the court about those page limitations. He did not.

Second, the violations in question are not slight ones. The non-conforming papers greatly exceed the page limits.

Third, although Mr. Springer appears *pro se*, he has been a litigant in a number of federal court proceedings. He has a much greater knowledge of court rules than the typical *pro se* litigant.

Fourth, in a prior brief the government expressly pointed out to the defendants that the page limitations of LCvR7.2 applied through N.D. LCR 1.2. (Doc. no. 80, p. 4 n.1.) Mr. Springer argues that the government's brief provided no notice to him because it was stricken by the court. Stricken or not, the brief called the page limits in question to the attention of the reader. Given that the brief was stricken, the court does not place much weight on this point but it is worth noting.

Fifth, another provision of the criminal rules, N.D. LCR 12.1(B), supports striking the filings. Importantly, this provision does not depend upon incorporation by reference of any other rules. Nor is it qualified by the "where appropriate language." This provision, N.D. LCR 12.1(B), is perfectly clear. It provides that: "All motions and responses thereto must be accompanied by a concise brief citing all authorities upon which the movant or respondent relies." Mr. Springer's 51-page *reply* brief (doc. no. 257), and his 79-page motion for judgment of acquittal (doc. no. 260), can hardly be characterized as concise. The stricken filings violate this court rule.[9]

Sixth, at trial, both Mr. Springer and Mr. Stilley moved, twice, for judgment of acquittal. Each defendant moved for judgment of acquittal at the close of the government's case, and each defendant renewed his motion at the close of the case. These motions were denied. Accordingly, defendants have had other opportunities to state their arguments in support of acquittal.

Seventh, in addition to the motion for judgment of acquittal, the other filing which Mr. Springer asks the court to reinstate is a reply brief. His motion does not identify any specific issues raised in the stricken reply brief that were not addressed or could not have been addressed in his moving brief.

Eighth, the ability to enforce reasonable page limits is critical to the court's ability to move a complex case like this one to final resolution in a just and efficient manner. This is especially true here, as defendants have filed numerous motions, including a number of motions based on legal propositions the court has already rejected. The court's ability to strike non-complying papers is a necessary tool if the

---

[9]Mr. Springer also provided no index or table of contents, in violation of the rules. *See*, LCvR7.2(c), incorporated in the local criminal rules by reference via N.D. LCR 1.2. Given the technical nature of this violation, the court puts no weight on it at this stage.

court is to maintain control over its docket and ensure the progress of a case. Page limitation rules are an important tool for carrying out the just and efficient administration of justice.

Despite all of the above, the court stops short of finding that the rule violation was intentional. It presumes, in fact, that it was not. Nevertheless, there are no grounds for reinstating the stricken papers which clearly did not comply with the rules. Mr. Springer's request that the court vacate its December order and reinstate the stricken papers is denied.

Mr. Springer asks for additional time within which to file conforming versions of the stricken papers in the event that the court declines to vacate the December order, as it has now done.

A court is not required to allow a futile filing. *See*, *e.g.*, E.Spire Communications, Inc. v. New Mexico Public Regulation Commission, 392 F.3d 1204, 1211 (10th Cir. 2004) (district court did not abuse its discretion in denying request for leave to amend complaint, where proposed claim would be futile). Thus, the initial question is whether allowing new, conforming papers would be a futile act. To answer this question the court has reviewed the content of each of the stricken documents to determine whether re-stating any of the arguments made in any of these papers would serve a purpose, or whether new filings would be futile and wasteful of the party's and the court's resources.[10]

After review of the stricken motion for acquittal, the court concludes that Mr. Springer's motion would be denied for basically the same reasons that caused the court to deny his dispositive motions during the trial. The court also concludes that

_____

[10]Although Mr. Stilley's motion to reconsider is addressed separately in *Part IV* of this order, the court states here, as well as in *Part IV*, that in making this review it has considered *all* of the stricken papers. Having done so, its findings as to futility apply equally to all stricken papers filed by either defendant.

Mr. Springer's stricken reply brief would change none of the results stated in this order. Many of the arguments contained in the stricken papers rely on legal propositions that have already been rejected. Continually reshaping rejected arguments into new motions and briefs is not Mr. Springer's remedy; his remedy is to take his arguments up with the Court of Appeals. Striking the non-conforming papers, and declining to give Mr. Springer a second chance to file the same arguments in shorter papers when those arguments would ultimately be denied by this court in any event, does not impair Mr. Springer's ability to seek review.

Considering all of the circumstances, the court finds that providing additional time for Mr. Springer to file conforming papers would be futile. Accordingly, Mr. Springer's request for additional time to file conforming papers is denied.

For all of these reasons, Mr. Springer's motion to vacate the court's order of December 9, 2009 and to reinstate the stricken documents or alternatively allow additional time to comply with the rules, is **DENIED**.

*Part IV.*

<u>Mr. Stilley's Motion to Reconsider</u>
<u>The Court's Order Striking Pleadings, and</u>
<u>To Reinstate All Pleadings Stricken</u>
(Doc. no. 267)

In this motion and its accompanying brief, Mr. Stilley joins in Mr. Springer's motion to vacate, discussed immediately above. He asks that all of the stricken filings referenced in the court's December order be reinstated.

Some of what Mr. Stilley includes in his supporting brief can only be described as a rant. Leaving that material aside, the additional arguments which Mr. Stilley makes on the subject of whether the court's December order striking non-complying filings should be reconsidered and vacated, include the following.

Mr. Stilley argues that the deficient nature of N.D. LCR 1.2[11] is apparent because that rule purports to incorporate several civil court rules that no longer exist. Those other rules, however, are not material to the issues before the court.

Mr. Stilley argues that he had no notice that for purposes of the page limitations, the court would construe his motion for judgment for acquittal (doc. no. 261, which was 19 pages long, plus exhibits), along with his brief in support of that motion (doc. no. 263, which was 14 pages long), as one filing. Court rules cannot reject, explicitly, every possible ruse a litigant might think up to get around those rules. Here, Mr. Stilley's motion and brief are both clearly argumentative and it was appropriate to construe them together. If the court did not have the discretion to do so, rules regarding page limitations would be easily circumvented.

The same findings that the court has made with respect to its reasons for denying Mr. Springer's motion to vacate apply equally to Mr. Stilley's motion to reconsider. Moreover, although Mr. Stilley appears *pro se*, he is, or was, an attorney and he clearly understands the importance of complying with local court rules. With respect, specifically, to Mr. Stilley's stricken documents, the court finds that the December order was appropriate and that no grounds have been shown for vacating that order, for reinstating the stricken filings, or for allowing additional time to submit conforming filings now. After consideration of the content of each of the stricken filings, the court finds that allowing additional time for Mr. Stilley to submit his stricken motion for acquittal, his stricken supporting brief, and his stricken reply brief, would be futile. Nothing argued in these documents would change any results with

---

[11]For example, on the general subject of the local court rules' ambiguity and their failure to give fair notice, Mr Stilley questions how the word "brief" should be defined. (Doc. no. 267, p. 5, n.6.)

respect to Mr. Stilley. Mr. Stilley's remedy lies with a higher court, not with re-stating his stricken arguments to the undersigned.

Mr. Stilley's motion to reconsider the court's December order and to reinstate all stricken pleadings is **DENIED**.

*Part V.*

<u>Mr. Springer's Motion to Disqualify, for Recusal,</u>

<u>for Removal of the Undersigned and for Random Re-assignment</u>

(Doc. nos. 270, affidavit; 271)

Mr. Springer moves to disqualify the undersigned due to partiality and prejudice. He also asks the undersigned to recuse and to stop holding court in the Northern District of Oklahoma. He seeks random reassignment of this case to a judge who regularly sits in the Northern District of Oklahoma.

Many of the arguments raised in Mr. Springer's affidavit and in his motion for disqualification overlap with arguments already addressed in this order, for example, his arguments concerning the undersigned's authority to preside, raised in support of his motion for a new trial. The court will not repeat its analysis of that issue here except to say that just as Mr. Springer's arguments regarding the undersigned's lack of authority are untimely when posited as grounds for a new trial, so, too, are those arguments untimely when posited here in support of disqualification and re-assignment. The instant arguments for disqualification were not raised until the instant motions were filed, almost nine months after the undersigned was assigned to this matter on March 31, 2009. (Doc. no. 24.) Furthermore, Mr. Springer's contention that the bias of Chief Judge Eagan and the undersigned were not clear until the October discovery of the grand jury transcript of Judith Patterson is rejected.[12] No

_____

[12]Mr. Springer argues that he has good cause for his post-trial timing of this affidavit
(continued...)

recent events justify defendant's belated attempts to disqualify the undersigned and obtain dismissal or a new trial by a new judge.

Given the possibilities for strategic abuse, the timeliness requirements that apply to efforts to disqualify a judge are important. Title 28 U.S.C. §144 provides that it is only when a party "makes and files a *timely* and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice," that the judge shall proceed no further and another judge shall be assigned. (Emphasis added.) The statute further provides that it must be filed within ten days before the beginning of the term at which the proceeding is to be heard, or else "good cause must be shown for failure to file it within such time." *Id. And see*, Polizzi v. United States, 926 F.2d 1311, 1321 (2d Cir. 1991), *quoting* Apple v. Jewish Hospital and Medical Center, 829 F.2d 326, 333 (2d Cir. 1987) (claim that judge should have recused was waived when criminal defendant failed to timely move for such recusal pursuant to 28 U.S.C. § 144 or 28 U.S.C. § 455; noting that a timeliness requirement akin to the requirement in § 144 has been read into § 455).

In short, Mr. Springer's affidavit and his motion to disqualify are untimely, and no good cause has been shown for these very untimely filings.

---

[12](...continued)
(and of his motion to disqualify) because "the Judith Patterson Grand Jury Transcript was just recently turned over, and the impact could not have been understood while trial and post trial events were taking place, the striking of certain documents along with such revelations sufficiently demonstrated to affiant that both bias and prejudice against affiant and in favor of the United States was occurring both as to Chief Judge Eagan and Stephen P. Friot." (Doc. no. 270, p. 24.) Even if the Patterson grand jury testimony was a factor in Mr. Springer's decision to file an affidavit (and a motion ) seeking to disqualify the undersigned, the affidavit states that he learned of the Patterson grand jury testimony during trial. Yet no disqualification arguments were made until December 28, 2009, long after the outcome at trial was known. This is exactly the type of strategic abuse that the timeliness requirement of 28 U.S.C. § 144 is intended to foreclose.

Finally, it is in these moving papers (especially in his reply briefs at doc. nos. 286 and 287), that Mr. Springer develops his argument that it was improper for Chief Judge Eagan to assign the undersigned to this case because she was disqualified and could therefore have nothing to do with this case.

First, this disqualification argument, like Mr. Springer's other disqualification arguments, depends on a finding that it is a timely, which it is not.

Second, this argument also depends on the conclusion that Judge Eagan was, herself, disqualified from any involvement in this case. No facts that would disqualify her, however, have been shown. Mr. Springer argues that she was disqualified under 28 U.S.C. §455(a). That statute requires a judge to disqualify herself in situations in which her impartiality might reasonably be questioned, but no such showing has been made here. Mr. Springer also speculates about Chief Judge Eagan's personal bias, another statutory ground for a judge to disqualify herself. 28 U.S.C. § 455(b)(1). However, in this regard, Mr. Springer primarily complains of judicial actions and rulings by Chief Judge Eagan. The court finds that no personal bias has been shown on her part. *See*, Liteky v. United States, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion").

Mr. Springer speculates that Chief Judge Eagan was biased against him and therefore assigned this case to the undersigned, either with the belief that the undersigned was equally biased or with the assumption that, based on her professional relationship with the undersigned, Chief Judge Eagan could prejudice the undersigned against the defendants.[13] As stated in his reply brief, "There is simply no way a logical person could conclude that the bias and prejudice of Chief Judge Eagan did not

_____

[13]Alluding to this improper relationship, Mr. Springer's reply brief states: "At every level Stephen P. Friot faced with issues surrounding these facts has acted to prevent Springer from discovering the relationship and role Chief Judge Eagan had in the prosecution of Springer." (Doc. no. 286, p. 4.)

find its way into Stephen P. Friot in this case. Impossible." (Doc. no. 286, p. 7.) No facts support the truth of this speculation.

Third, Mr. Springer's argument that Chief Judge Eagan should not have assigned a judge to this case depends on language from a Fifth Circuit case, <u>McCuin v. Texas Power & Light Co.</u>, 714 F.2d 1255, 1261 (1983). <u>McCuin</u> reasons that to permit a disqualified chief judge to select the judge who will handle a case in which the chief judge is disabled would violate the congressional command that the disqualified judge be removed from all participation in the case, and that it might create suspicion that the disqualified judge will select a successor whose views are consonant with his. <i>Id</i>. at 1261. No similar language from a Tenth Circuit case has been cited by the defendants. Regardless, <u>McCuin</u> is distinguishable. In <u>McCuin</u>, the chief judge was disqualified because that judge's brother-in-law had been employed as local counsel for the defendant and the court noted that the brother-in-law, as a result of this fact, had a substantial interest in the outcome of the case. <i>Id.</i> at 1260. By contrast, here there are no personal disqualification facts similar to the type of disqualification facts described in <u>McCuin</u>. This is an important distinction. In transferring this case to an out-of-district judge, Chief Judge Eagan cannot conceivably be said to have been acting for the purpose of protecting some personal interest, or for that matter, any interest other than her judicial interest in carrying out her duties as the Chief Judge of the Northern District.

The court now moves on to consider Mr. Springer's contention that the undersigned was biased or prejudiced.

Again, Mr. Springer's arguments regarding the personal bias of the undersigned are untimely. <i>See</i>, 28 U.S.C. §144 ("The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause

shall be shown for failure to file it within such time"); Polizzi, 926 F.2d at 1321. If Mr. Springer's affidavit and his motion to disqualify are nevertheless considered on their merits, the court finds no showing of a personal bias or prejudice either against the defendants or in favor of the United States. Rather, the facts set out in Mr. Springer's affidavit (in the portion of that affidavit entitled "Facts Relevant to Bias and Prejudice," doc. no. 270, pp. 1-10), describe judicial acts and statements, and primarily judicial rulings, by the undersigned. *See*, Liteky, 510 U.S. 540 at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion").

As stated in United States v. Bray, 546 F.2d 851, 857 (10th Cir. 1976), "A trial judge has as much obligation not to recuse himself when there is no reason to do so as he does to recuse himself when the converse is true." Mr. Springer's motion to disqualify -- which also seeks recusal of the undersigned, and asks that the undersigned be removed from this case and that this case be reassigned -- is **DENIED**.

*Part VI.*

Mr. Springer's Motion to Strike Doc. Nos. 259 and 266.

(Doc. no. 273)

Mr. Springer asks the court to strike two documents filed by the United States.[14]

Mr. Springer asks the court to strike doc. no. 266, a filing which constitutes the United States' response to Mr. Springer's motion to vacate the court's prior order of December 9, 2009 (the December order). Mr. Springer points out, correctly, that the filing at doc. no. 266 is styled as a motion rather than as a response. As Mr. Springer also points out, however, the first sentence of the filing correctly states that: "The United States of America...hereby responds in opposition to Defendant Springer's

_____

[14]The government has not filed a response brief, perhaps given the hyper-technical nature of the grounds for the motion.

-23-

Motion to Vacate Order Dated December 9, 2009...." (Doc. no. 266, p. 1.) As doc. no. 266 states in its final sentence: "The United States therefore requests that the Court deny Defendant Springer's Motion to Vacate Order (Doc. no. 265.)."

Judged by its content rather than by its title, the challenged filing is clearly a response brief. This conclusion is confirmed by the fact that the filing was docketed as a response brief. Furthermore, Mr. Springer filed a cogent reply brief in response to the filing. No prejudice to Mr. Springer, and no impediment to the just or efficient administration of justice, has been shown as a result of the court allowing the challenged document to stand in spite of the error in its title. Accordingly, doc. no. 266 will not be stricken.[15]

The other filing Mr. Springer asks the court to strike is doc. no. 259. Doc. no. 259 is entitled the "United States' Motion to Strike Defendants' Replies to Prosecution's Opposition to Springer's Motion to Reconsider, to Dismiss, and for Mistrial (Docket Numbers 257 and 258)." Doc. no. 259 is the government's motion to strike which the court granted in its December order that struck several of the defendants' filings for failure to comply with local court rules regarding page limitations. The appropriateness of that December order has already been established. The only issue before the court here is whether the government's motion that resulted in the December order should, itself, be stricken, based on Mr. Springer's argument that the government's motion was not signed in violation of N.D. LCR 49.1(C). That rule requires that: "All pleadings and motions shall all have the signing attorney's firm name, address, telephone number, and state bar membership number (if applicable) typed under the signature line."

---

[15]Some of Mr. Springer's arguments are unclear. If he intended to move to strike doc. no. 266 on any other grounds, he has not shown any prejudice as a result of any other rule violation or flaw in the filing, and the motion to strike is therefore denied.

Exhibit "A," attached to the government's response brief at doc. no. 266, is a copy of an email trail which indicates that soon after the unsigned document was filed, the court clerk called the lack of a signature to the government's attention. A reply email from the government's attorney referred to the missing signature as an oversight and asked if an errata sheet should be filed to correct the missing signature. The clerk responded that no errata or correction was necessary, and asked the government to remember to add the signature in the future.

Although in some situations a missing signature could constitute a significant and substantive failure to comply with the rules (for example, if the missing signature allowed an attorney to distance himself from the contents of the filing), there is no suggestion of any such issue here. To the contrary, given the email in which the government's attorney referred to the missing signature as merely an oversight and immediately offered to correct the error, it is clear the government is not trying to distance itself from the filing.

No prejudice has been shown to Mr. Springer as a result of the missing signature on doc. no. 259. Nor does this rule violation interfere with the just and efficient administration of justice. Moreover, the clerk gave the government permission to ignore the defect. In these circumstances, it would be inappropriate to strike doc. no. 259.

Mr. Springer's motion to strike document numbers 259 and 266 is **DENIED**.

*Part VII.*

Mr. Springer's Motion to Strike Doc. Nos. 276 and 277.

(Doc. no. 285)

Mr. Springer also moves to strike doc. nos. 276 and 277.[16]  The subject filings are response briefs filed by the government, pertaining to other motions addressed in this order.  Mr. Springer moves to strike these briefs on the ground that they are filed by someone other than the prosecutor.  Mr. Springer argues that there is no United States Attorney to prosecute this action because there is no office which Mr. Snoke or Mr. O'Reilly are authorized to work out of in this district.  Mr. Springer also argues that Mr. Woodward is not a United States Attorney because the word "acting" appears with his name.  In the portions of this order that address arguments for a new trial, the court has found that the prosecution team has the authority to prosecute this action. This motion presents no grounds for striking the documents in question, and it is **DENIED**.

*Part VIII.*

Conclusion

After careful consideration, Mr. Springer's and Mr. Stilley's motions are **DENIED**.

Dated this 28th day of January, 2010.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p053.wpd

---

[16]No reply has been filed to this motion or is yet due, but given the nature of the motion, no reply is necessary in order for the court to rule.