**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                                          Case No. 09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY                                          DEFENDANT

BRIEF IN SUPPORT OF MOTION TO STRIKE DOCUMENTS [DOCKET
297] AND MOTION TO MODIFY CONDITIONS OF RELEASE [DOCKET
296]


**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -i-

TABLE OF CITATIONS TO AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1 of  24

1.      DITCHDIGGING FOR THE GOVERNMENT . . . . . . . . . . . . . Page 2 of  24

2.      SIMILAR CONDUCT IN THE INSTANT CASE . . . . . . . . . . . Page 7 of  24

        A.      Acts suggesting bias and prejudice on the part of Stephen P.
                Friot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 12 of  24

        B.      Facts bearing upon the reasonableness of the time of showing
                bias and prejudice on the part of Stephen P. Friot.
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 18 of  24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 22 of  24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 24 of  24

## TABLE OF CITATIONS TO AUTHORITIES

### CASELAW

*Doyle v. Oklahoma Bar Assn.*, 998 F.2d 1559 (10th Cir. 1993) . . . . . . . Page 14 of  24

*Liteky v. United States*, 510 U.S. 540 (1994) . . . . . . . . . . . . . . . . . . . . . Page 10 of  24

*McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261 (1983) . . . Page 11 of  24-
13 of  24, Page 18 of  24

*Polizzi v. United States*, 926 F.2d 1311, 1321 (2d Cir. 1991) . . . . . . . . Page 10 of  24

*Smith v. Wade*, 461 U.S. 30, 65,  103 S.Ct. 1625 (1983) . . . . . . . . . . . . . Page 3 of  24

*U.S. v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000) . . . . . . . . . . . . . Page 9 of  24

*U.S. v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000) . Page 9 of  24, Page 13 of  24

*United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976) . . . . . . . . . . . Page 7 of  24

*United States v. Cooley*, 1 F.3d 985, 992-93 (10th Cir. 1993) . . . . . . . . Page 9 of  24

*United States v. Farr*, 2010 U.S. App. LEXIS 545, 7-8 (10th Cir. Okla. Jan. 11,
2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5 of  24

*United States v. Farr*, 536 F.3d 1174, 1179 (10th Cir. Okla. 2008) . . . . Page 3 of  24

*United States v. Haddock*, 961 F.2d 933, 934 (10th Cir.), cert. denied, 506 U.S. 828
(1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5 of  24

*United States v. Mize*, 820 F.2d 118, 119-20 (5th Cir. 1987)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4 of  24

*United States v. Terrell*, 754 F.2d 1139 (5th Cir. 1985) . . . . . . . . . . . . . Page 13 of  24

*United States v. Wiles*, 106 F.3d 1516 (10th Cir. 1997) . . . . . . . . . . . . . Page 5 of  24

### STATUTORY AUTHORITY, RULES, CONSTITUTIONAL PROVISIONS

28 U.S.C. § 137 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 11 of  24

28 U.S.C. § 144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3 of  24, Page 21 of  24

NDOK LCvR40.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 9 of  24

## MISCELLANEOUS AUTHORITY

**Acts 26:20** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **Page 6 of  24**

**http://economics.gmu.edu/bcaplan/museum/zarframe.htm** . . . **Page 23 of  24**

**Mark 7:11** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **Page 5 of  24**

**Matthew 3:8** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **Page 6 of  24**

**Oliver W. Holmes, The Common Law 3 (1881** . . . . . . . . . . . . . . . **Page 3 of  24**

### BRIEF

Comes now **OSCAR AMOS STILLEY**[1] by limited special appearance, and not a general appearance, and for his brief states:

### Introduction

Oscar Stilley never had any desire to file this pleading, in support of the striking or modification of orders by Stephen P. Friot or Claire V. Eagan.   Oscar Stilley has already suffered enough as a result of speaking the truth to power. Furthermore, comity and courtesy suggest that when recusal is sought from a judge, by a party, that the other parties should consider giving the court sufficient "breathing space" to make a gracious exit.

Stephen P. Friot has declined the opportunity.   Stephen P. Friot has studiously avoided addressing the questions expertly presented by Lindsey Springer, in order to maintain his position on the bench.   For example, Stephen P. Friot says in the order at docket 293 that Lindsey Springer's desire, request, and demand for an Article 3 judge occupying a judicial position created by Congress is too late.  Yet Stephen P. Friot  proposes to preside at sentencing April 21, 2010, at 10:00 AM, which is yet almost 3 months hence!

Stephen P. Friot entered an "order" [docket 290] which purports to require

---

[1]        It is presumed that the plaintiff is master of his own complaint.  This complaint is styled in the name of "**UNITED STATES OF AMERICA**" as opposed to the people thereof, or any grand jury.  Plaintiff, whoever that may actually be, named **OSCAR AMOS STILLEY** as a Defendant.  Therefore, **OSCAR AMOS STILLEY** has appeared specially and limited, challenging jurisdiction, to defend against the charges to the extent required so to do by the law.

the filing of any pleading which would amongst other things "obviate the necessity of sentencing as to any count of conviction" be done no later than February 1, 2009. Oscar Stilley respectfully contends that he should not and legally does not have such a duty.

Stephen P. Friot claims that this is a "waiver" of the local rules. This demonstrates a lack of understanding of the meaning of "waiver." See *Freytag v. Commissioner*, 501 U.S. 868, 111 S.Ct. 2631 (1991) defining waiver as the "intentional relinquishment or abandonment of a known right or privilege." Thus I can waive my rights under the rules, if I so choose after being adequately informed. Stephen P. Friot can't waive any of my rights, although he may de facto abrogate same. Stephen P. Friot is actually creating a new rule that contravenes the local rules and other authority.

## 1.    DITCHDIGGING FOR THE GOVERNMENT

Stephen P. Friot has engaged in conduct that appears to be a violation of his oath of office in the Western District of Oklahoma. Nevertheless, in order to eliminate any possibilities that the conduct was through negligence as opposed to conscious wrongdoing, certain facts will be set forth herein. Stephen P. Friot will be given opportunity to correct the wrongs if it was an oversight. Furthermore, if Stephen P. Friot claims that the wrongs alleged aren't really wrongs, it must be remembered that Stephen P. Friot has the option of issuing explanatory orders, or directing the government to defend his actions with a legal brief.

Intent is always an important factor, both to the public and to appellate

courts.  As Oliver Wendell Holmes observed[2] "even a dog distinguishes between being stumbled over and being kicked."   This being said, undersigned will set forth certain apparently wrongful acts, and give Stephen P. Friot 30 days from this date to show that the conduct was either not wrongful or not intentional.  If 30 days is not enough time please say so.   From that point, undersigned will make an election as to the filing of his own affidavit for recusal pursuant to 28 U.S.C. § 144, within a reasonable time.

In the matter of *United States v. Farr*, 536 F.3d 1174, 1179 (10th Cir. Okla. 2008) the court said:

> The court acknowledged, with some regret, that its jury instruction "forecloses [closing] argument that the defendant did not evade the quarterly employment tax because all she was ever assessed for was the trust fund recovery penalty," and "cuts . . . clean off" Ms. Farr's primary trial defense based on the language of the indictment. Aplt. App. # 11 at 115, 114. The court went on to state that "it rankles me to be **having** to scab over this problem [that] could so easily have been avoided. . . . **[B]y giving this instruction, I'm pulling the case out of the ditch for the government, and as I said, it rankles me to have to be doing that.**" Id. Aplt. App. # 11 at 113, 115. Ultimately, the jury convicted Ms. Farr, and the district court sentenced her to thirty months in prison, three years of supervised release, [**11] and $ 72,076.21 in restitution, but suspended the sentence pending this appeal.
> (Emphasis added)

The key term here is "have to."  Stephen P. Friot apparently thought it was

---

2          *Smith v. Wade*, 461 U.S. 30, 65,  103 S.Ct. 1625 (1983)

"Vengeance imports a feeling of blame, and an opinion, however distorted by passion, that a wrong has been done. [E]ven a dog distinguishes between being stumbled over and being kicked." O. Holmes, The Common Law 3 (1881).[fn5]

his obligation to pull "the case out of the ditch for the government." A judge is charged with functioning in the role of an umpire or referee. Umpires are not supposed to help either side. The umpire is supposed to call balls and strikes as he or she sees them.

It doesn't matter that someone might think that the government just committed a "brain cramp" mistake in the *Farr* case. In the recent basketball game between Kentucky and Auburn, one of Auburn's players decided to study the situation before crossing mid court. He was called for a 10 second violation, even though he was not under pressure from the opposing team. It was a "brain cramp" error that he realized as soon as he heard the whistle. The referee did not inquire as to the reasons for the delay, nor did he attempt to help one team or another, he simply called it as he saw it.

*Farr* was remanded to the District Court for the Western District of Oklahoma, an office lawfully held by Stephen P. Friot. District Judge Friot declined to dismiss on double jeopardy grounds. An appeal was taken, and a decision rendered January 11, 2010. The decision is summarized in this paragraph:

> Furthermore, this court's decision that there had been a constructive amendment of the indictment was not per se a conclusion regarding the sufficiency of the evidence. The Fifth Circuit has expressly held that a constructive amendment does not bar retrial for the same offense. See, e.g., *United States v. Mize*, 820 F.2d 118, 119-20 (5th Cir. 1987) (concluding that its reversal based on a constructive amendment of the indictment did not bar defendant's second conviction based on an indictment containing proper allegations, because the court specifically held in its earlier opinion that it had not reversed [*8] defendant's conviction for insufficiency of the evidence and that retrial was not barred by double jeopardy); see also *United States v. Pacheco*, 434 F.3d 106, 116 (1st Cir. 2006) (indicating that even if the

defendant could win on his claims of constructive amendment, that would "at most earn the defendant a retrial"). We recognized this when we explained that the "erroneous constructive amendment" did "nothing to imply an insufficiency in the evidence." *Farr*, 536 F.3d at 1187. Because reversal for constructive amendment does not ***itself*** engender double jeopardy concerns and **neither the district court nor this court made factual findings tantamount to acquittal**, the double jeopardy clause is not implicated by Farr's retrial for the same statutory violation.
(Emphases added)  *United States v. Farr*, 2010 U.S. App. LEXIS 545, 7-8 (10th Cir. Okla. Jan. 11, 2010)

Technically the 10th Circuit is may be right, at least on some level, but this does not absolve Stephen P. Friot of moral, legal, and ethical wrong.[3]   The oath of office taken by Stephen P. Friot requires that he uphold the constitution and laws of the United States, and faithfully follow same, all the time.  The constitution entitled Skoshi Thedford Farr to a directed verdict, and all the findings pertaining thereto.  As the Court said in *United States v. Wiles*, 106 F.3d 1516 (10th Cir. 1997):

 [10] Defendant correctly points out, however, that this circuit has held that when we reverse on appeal **because of a procedural error at trial and remand for a new trial**, the **prohibition against double jeopardy requires us** to address a defendant's claim that the evidence presented at trial on the reversed count was insufficient. *United States v. Haddock*, 961 F.2d 933, 934 (10th Cir.), cert. denied, 506 U.S. 828 (1992). **Constrained by our precedent on this matter**, we vacate footnote four of our prior opinion and proceed to discuss the sufficiency of the evidence of materiality against Defendant on the false statements count.
(Emphases added)

Stephen P. Friot denied that to her, and furthermore failed to make the

---

[3]       The scribes and Pharisees who killed Jesus likewise had their technical methods of rendering God's word mere surplusage.   For example, by a declaration which gave one's estate to the religious establishment, the religious establishment excused the individual from God's order that children care for their own parents in their old age.   Mark 7:11.   Jesus condemned such mental and linguistic contortions, saying that they made the word of God of no effect.

factual findings,[4] that the government had presented altogether insufficient
evidence to prove the crime actually charged by the grand jury against Ms. Farr , in
her first trial.   There was no dereliction of duty by defense counsel.  His motion for
judgment of acquittal is duly noted at the top of page 1179 of the first opinion.   The
Tenth Circuit said you didn't make the findings, which *Wiles* declares to be
mandatory.   That leaves Stephen P. Friot in the here and now with a constitutional
duty to ***make the findings*** required in the first instance, now, before proceeding
any further against Ms. Farr.

        Stephen P. Friot surely knew what call the constitution and interpreting case
law required, and made the exact opposite call, in just the right manner to allow the
government to obtain the full benefit of his action in "pulling the government's case
out of the ditch."   Undersigned counsel is aware that Stephen P. Friot prefers not to
be reminded of *Farr*, once telling Lindsey Springer that he sure knew how to make
a fellow feel bad about that case.   But Jesus Christ exhorted those seeking
forgiveness to "Produce fruit in keeping with repentance." [Matthew 3:8]   His
followers gave essentially the same exhortation to others. [Acts 26:20]

        The very day that Stephen P. Friot obeys the sacred oath he took upon
ascending to his high office, Ms. Farr will be a free woman.   The fig leaf of
ignorance of the law (not generally a defense for ordinary citizens) or oversight, or
mistake, will be stripped away within 30 days, laid bare and exposed to the world,

---

        [4]        By word and deed Stephen P. Friot implied that any findings of fact
and conclusions of law would result in a directed verdict for Skoshi Farr.

by the acts of Stephen P. Friot in response to the words herein.

## 2.    SIMILAR CONDUCT IN THE INSTANT CASE

Absent a fundamental change in character, people tend to act in conformity to the way they have acted in the past.   If the bias and prejudice of Stephen P. Friot against any person who has questioned or even run afoul of the IRS is so pervasive and ingrained that you will not remedy a violation of your oath in the *Farr* case, then Oscar Stilley hardly has any hope of justice as long as Stephen P. Friot remains upon the bench in this case.

First we should note that there is nothing in the record of this case demonstrating a need to depart from the regularly fixed methods of selecting a judge by random assignment.  Stephen P. Friot says at page 23 that:

> As stated in *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976), "A trial judge has **as much obligation not to recuse himself when there is no reason** to do so as he does to recuse himself when the converse is true." (Emphasis added)

In responding to the allegation that Claire V. Eagan was disqualified, on page 11 and at page 21 of the order, Stephen P. Friot rejects the contention that Claire V. Eagan was disqualified.  However, on page 10 Stephen P. Friot says at footnote six:

> 6**Chief Judge Eagan determined that it would be appropriate to assign this case to a judge from one of the other Oklahoma districts** because defendant Oscar Stilley had been involved in hotly contested disciplinary proceedings in the Northern District. See, In re Oscar Stilley, Case No. 4:08-ap-0001, USDC ND Okla. These proceedings had, at various times, required the attention of all of the district judges in the Northern District, and are now pending in the Court of Appeals as In re: Oscar Stilley, Tenth Circuit Case No. 09-5090.  The disciplinary proceedings in the Northern District were pending when the indictment in this case was returned, and, in fact, resulted in a hearing before Judges Kern, Frizzell and

Payne on February 26, 2009, about two weeks before Mr. Stilley was indicted in this case.  Thus, Mr. Springer's motion to disqualify, not filed until after his conviction, attempts to turn admirably cautious conduct on Chief Judge Eagan's part (re-assigning the case to a judge outside of the Northern District) into conduct that was purposefully biased and prejudicial. (Emphasis added)

This contorted logic violates legitimate principles relied upon in other parts of the same order to save Stephen P. Friot's acts from possible scrutiny by a disinterested judge.   Stephen P. Friot found and ruled that any assaults upon the license of Oscar Stilley were immaterial to the criminal case, and denied subpoenas for persons having knowledge of the same. With this specific ruling Oscar Stilley does not disagree.

Yet this leaves only two possibilities.

1) Claire V. Eagan or some other district judge holding a position created by Congress, appointed by the President, and confirmed by the Senate, for the Northern District of Oklahoma, was not disqualified.   In that case random assignment was required.

2) All the regular judges were disqualified for one reason or another. In this case the law would require an appointment in strict conformity with the laws promulgated by Congress, as well as the local rules.

Stephen P. Friot is trying to have it both ways.  To support Eagan's appointment, you say she is not disqualified.  To support your own position as judge on the case, you necessarily infer that she and all the other judges in regular service were disqualified.  In fact that is the implied premise of footnote 6 on page 10 of #293.

Save for Judge Payne, whose recusal is evident on the record at docket entry

#9,[5] no judge in regular service in the Northern District of Oklahoma, recused from the case.  Furthermore, unless Stephen P. Friot wishes to be a witness as well as a judge, the record does not show any other recusals.  In *U.S. v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000) the Court said: "This court will not consider material outside the record before the district court." [citations omitted] Therefore, the *Bray* case prohibits any action other than a random assignment as required by LCvR40.1, which provides in pertinent part:

> Assignment and Distribution of Cases.
> (a) Random Assignment of District Judges. Criminal and civil cases shall be assigned to district judges according to a system based on random selection both for initial assignment **and for assignment in the event of recusal.** (Emphasis added)

Despite the plain language of the local rule, Stephen P. Friot at footnote 6 of #293 turns Claire V. Eagan's clear and apparently willful violation of the aforesaid local rule by hand picking Stephen P. Friot, into "admirably cautious" conduct!!! Undersigned will let a candid world decide for themselves whether clear and persistent violation of applicable  rules is truly "admirable" conduct.

It was the individual judge's duty to decide the recusal question in the first instance.  In *U.S. v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000) the Court explained:

> A judge has a **<u>continuing</u> duty** to recuse under § 455(a) if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality. See *United States v. Cooley*, 1 F.3d 985, 992-93 (10th Cir. 1993). "**[W]hat matters is not the**

---

[5]

**reality of bias or prejudice but its appearance.**" *Liteky*,[6] 510 U.S. at 548. After reviewing the judge's comments in context and the relevant case law, we hold that recusal is not required here.
(Emphases added)

Since Stephen P. Friot had and has a continuing duty to recuse, why was any analysis of timeliness even made?  That job could well be done by a qualified judge randomly selected or otherwise assigned to this case in strict compliance with the law.  Stephen P. Friot  cannot, and doesn't even make the attempt, to show that he was appointed lawfully and conformably to the rules.  Stephen P. Friot just says that it was quite admirable that Claire V. Eagan elbowed all the regular judges out of the way and hand picked Stephen P. Friot.

The principal argument of Stephen P. Friot, to hold on to power in this case is that Springer was to late. Never mind the sentencing which is yet 3 months away, which certainly leaves open the possibility of a constitutionally proper judge for all future rulings and proceedings.  Never mind the fact that your ***sole***[7] case on the subject, *Polizzi v. United States*, 926 F.2d 1311, 1321 (2d Cir. 1991), says at paragraph 41 that "Having **<u>never</u> moved for Judge Leval's recusal**, let alone having done so timely, Polizzi is poorly positioned at this late date to take issue with the court's role in the evidentiary hearing on the petition." (Emphases added)

There are impliedly two questions to decide.  One is whether prior acts

---

[6]        *Liteky v. United States*, 510 U.S. 540 (1994).

[7]        Although the cited case was itself citing to another case, a civil as opposed to a criminal case.

should be remedied.  The other is whether the parties are entitled to a

constitutionally proper officer for future proceedings.  The pleadings this brief

supports request some of each sort of relief.  What if any is the objection to a

constitutionally proper judge for all future proceedings?

In *McCuin v. Texas Power & Light co.*, 714 F.2d 1255 (5th Cir. 1983) the

court said:

> [20] In Dow, the City of Tyler argues that, because Rowan's enrollment as counsel automatically disqualified Chief Judge Justice, he had no alternative but to recuse himself and allow the case to be reallotted in accordance with local practice. Accordingly, the City argues, his order referring the case to Judge Parker should be set aside. Texas Power does not make that argument in its McCuin brief. It did, however, argue in the district court that "the only orders [sic] which [Chief Judge] Justice may properly enter in this case is an order of recusal reassigning this case to another trial judge." We consider the issue in both cases because **disqualification cannot be waived, <u>the issue is solely one of law</u>**,[fn9] and it would be unfair to reach different results in these two cases so intimately related.

> [21] The business of a court having more than one judge is divided among the judges as provided by the rules and orders of the court. 28 U.S.C. § 137 (1976). The local rules of court for the Eastern District of Texas contain no provision for the reassignment of cases in which a judge is disqualified. Section 137 provides that, in the absence of such rules and orders, it is the duty of the chief judge of the district to assign cases, but patently that judge has no authority to sign such an order, or any other judicial order, pertaining to a proceeding in which he is disqualified. **To permit a disqualified chief judge to select the judge who will handle a case in which the chief judge is disabled would violate the congressional command that the disqualified judge be removed from all participation in the case.** It might, in addition, **<u>create suspicion</u>** that the disqualified judge will select a successor whose views are consonant with his. Congress intended the statutory antisepsis to be absolute in **order to avoid any bacterium of impugnment.**
> (Emphases added)

Here the local rules make it plain that in case of recusal there must be a

random reassignment.  There was no random reassignment, but rather Judge Eagan handpicked Stephen P. Friot.

*McCuin* voices a concern that a selection by a disqualified judge creates suspicion, which is altogether abhorrent to the duty of the bench and bar to conduct their affairs so as to allay suspicion, demonstrate the punctilio of honor the most sensitive, and otherwise act in a manner that builds the public trust in the judicial system.

Since the time line is the issue, let us consider the following non-exhaustive list of facts that indicate the validity of the concerns voiced in *McCuin*, giving special attention to the timeline.

**A.      Acts suggesting bias and prejudice on the part of Stephen P. Friot.**

1.      **Late in trial.**  Stephen P. Friot summarily declares that the Form 1040 complies with the PRA.  The General Accounting Office says the opposite, but Stephen P. Friot refused to even allow the defendants to be heard before declaring the matter a settled question.  Since the fundamental essence of due process is the right to be heard in a reasonable time and a reasonable manner, and Stephen P. Friot allowed nothing, this is a violation of due process.

2.      **Late in trial.**  The government presented a jury instruction on

Page 12 of  24

gift, in paper copy, during trial.  This was never officially presented in court, but Stephen P. Friot somehow got that instruction perhaps modified a bit to make it harsher to defendants, and announced the legal basis from the bench.  This instruction relied upon *United States v. Terrell*, 754 F.2d 1139 (5th Cir. 1985).  However, you left out the part that said that funds used for the ministry were not income, thus including all the adverse but not the parts that were favorable to defendants. You got your authority from the 5th Circuit while scolding Springer for the same thing.[8]   The chain of events whereby you got an instruction suspiciously similar to that of the government, without any visible means of receipt, suggests ex parte contact between the government and Stephen P. Friot. When these facts were put forth by Oscar Stilley in docket 261, you struck the pleading.   The fact that you have something to gain by suppressing this information makes your conduct suspicious to say the least.

---

[8]      Springer cited to *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261 (1983).  You acknowledged that citation at page 22 of docket #293.  What you did not acknowledge was the fact that the Tenth Circuit cited favorably to the very page of *McCuin* that Springer relied upon in his brief, in a case entitled *United States v. Pearson*, 203 F.3d 1243, 1266 (10th Cir. 2000).

3.    **Late in trial.**   Stephen P. Friot protected Brian Shern from

exposure to the jury for the falsehoods he uttered to Oscar

Stilley.  Stephen P. Friot had different reasons,, but always had

a reason to prevent cross examination concerning Shern's lying

to Oscar Stilley, saying that Stilley was not under criminal

investigation when Shern knew that statement to be false.

This was unquestionably valid and admissible impeachment

evidence, at the very least.


4.    **Late in trial.**   Stephen P. Friot refused to allow testimony to

develop the arguments concerning the lack of district director,

and venue, which is of course a jury question.


5.    **November 16, 2009.**  Using information Stephen P. Friot

gained during a sealed hearing, you wrecked the meager

finances of Oscar Stilley, by making the cessation of his legal

business a condition of release pending appeal.   No judge has

the right to jurisdiction to regulate the practice of law in any

other jurisdiction than his own.  For example, jurisdiction to

regulate the practice of law in Oklahoma Courts resides

exclusively in the Oklahoma Supreme Court.  *Doyle v.*

*Oklahoma Bar Assn.*, 998 F.2d 1559 (10th Cir. 1993).  The same

principal applies to other courts in which Oscar Stilley is
admitted.  You did this sua sponte, on your own motion, by
surprise, from the bench, denying Oscar Stilley the right to be
heard, and thus preventing him from pointing out the glaring
error in your order.

6.      **December 9, 2009.**  Stephen P. Friot struck the pleadings of
Lindsey Springer and Oscar Stilley for new trial or judgment on
the pleadings.  This was done sua sponte, without allowing
Springer or Stilley to be heard on the matter.  The pleadings of
Oscar Stilley implied that Stephen P. Friot  engaged in ex parte
contact with the government concerning your jury instruction
concerning the meaning of the term gift.   Stephen P. Friot
didn't even wait for a government response, and even now have
protected the government from having to respond to my motion,
consisting of 18 pages[9]  of numbered paragraphs, which clearly
show entitlement to judgment as a matter of law, assuming the
truth of the allegations.

7.      **December 9, 2009.**   Summarily and without allowing me to be

---

[9]      The last page has only my contact info and a certificate of service.

heard, you declared my motion for judgment as a matter of law, or for new trial, to be the equivalent of a brief, added those 18 pages to the 13 page brief, and summarily, without allowing Oscar Stilley to be heard, declared it to be overlength.  Stephen P. Friot has not to this day addressed the fundamental arguments that the length requirements don't apply to criminal pleadings, nor have you considered the fact that there were essentially two pleadings, which should have allowed 50 pages even if there was a page length limitation.  Plus, you lulled us into thinking that you didn't care about this issue, when you on 6-18-09 [docket #87] denied the government's motion to strike another "overlength" pleading, ordering a surreply by the government.  Most tellingly, you didn't even say in your order what your preference was concerning length, tables of contents, or tables of authorities.  You waited to the perfect time to hurt us the worst, then pounced, on your own, sua sponte, and now refuse to do anything to require the government to respond to allegations which clearly establish that we are each entitled to judgment as a matter of law.

8.     **January 28, 2010.**  Stephen P. Friot  cites generally to "quotations from the record" in docket # 293 @ p. 8, after

denying Oscar Stilley a copy of the transcript at public expense on 1-12-2010.  You spent tens of thousands of dollars of public funds for standby counsel, which is in effect your lawyers, yet you refuse to order a transcript now, claiming that it's too early, I didn't cite specific enough authority, and speculating that Oscar Stilley may have received sufficient gifts to pay for his own transcript.   Furthermore, you claim that the record need not be obtained before sentencing, despite the fact that the record is necessary for a precise and direct showing of your own bias and prejudice.  Thus you impede efforts to show your bias and prejudice, then claim that the showings are untimely, and yet refuse to step down despite uncontrovertible evidence that you were not selected legally in accordance with the rules.  You have already received financial information twice, once when Oscar Stilley asked for subpoenas at public expense, again by documentation under oath to the officer preparing the presentence report.  Oscar Stilley would be inclined to supply another affidavit if the complaint about lack of same was bona fide rather than a ruse to injure the legal rights of the defendants.  However, when the government failed to oppose the motion, Stephen P. Friot stepped up to the plate and essentially argued it himself, thus denying Stilley a reply and furthermore

Page 17 of  24

denying Stilley the right to a judge deciding betwixt and

between two competing arguments.

The matters set forth herein demonstrate that the concerns of the *McCuin*

court were not without foundation.

### B.   Facts bearing upon the reasonableness of the time of showing bias and prejudice on the part of Stephen P. Friot.

Clearly, there is some overlap between this category and the category above.

However, there are some matters that bear more heavily on the time element with

respect to pleadings concerning recusal, as opposed to other matters that bear more

heavily on the question of prejudice itself.  Some do both, in varying degrees.

1.   **Just before trial,** about October 21, 2009.  The government
     turns over a transcript of grand jury testimony of Judy
     Patterson, clearly sandbagged material dropped off in the
     turmoil of preparation just before trial the following Monday.
     Despite having sued both of us, neither of the Pattersons showed
     up for depositions.

2.   **During trial,** testimony from the Pattersons showed that the
     Rule 35 motion that Judge Eagan granted for the Pattersons
     was based upon fraudulent representations and conduct.   The
     Pattersons were given heavy sentences, then the government,

with the heavy involvement of Eagan, traded prison time in exchange for help attacking Springer and Stilley.

3.   **During trial.**      During trial, Stephen P. Friot rushed the proceedings so much that when Oscar Stilley objected to continuing on late into the night, Stephen P. Friot abruptly declared that everyone would have to come back at 8:00 AM the following day, and immediately got up and walked out so you would be unavailable and no one could be heard on that issue. It did no good for the trial schedule as there was a juror issue the next morning that would have given you all the time you wasted by forcing everyone to come early.   This suggests an intent to push the defendants harder than they were able to take, to interfere with them having time adequate time to defend their legal rights.

4.   **November 16, 2009.**  Stephen P. Friot summarily and without giving defendants an opportunity to be heard ordered that each of us maintain employment or do 30 hours community service. You did this on the theory of "protection of the community" which generally draws a laugh or incredulity when anyone hears it.  This appears to have been done for the principal if not

Page 19 of  24

sole purpose of creating "busy work," once again to interfere with any efforts to contest the eligibility of Stephen P. Friot to preside in this case.

5.   **November 19, 2009.**  Springer asks for an extension of time to file motions, granted the following day, and upon motion later extended to Oscar Stilley.  The new deadline was December 8, 2009.  The failure to act during the interim is clearly explained by the huge workload on both Springer and Stilley at that time, including but by no means limited to the work involved in preparing the motions for judgment as a matter of law and for new trial.

6.   **December 9, 2009.** [docket 264] Stephen P. Friot summarily on his own motion, without giving opportunity to be heard, strikes the motion for judgment as a matter of law, alternatively for new trial, filed by Stilley, and the motion for judgment as a matter of law by Springer.

7.   **December 10, 2009.** [docket #265]  Springer asks reconsideration of #264.  Stilley followed suit on December 14, 2009.

8.   **December 28, 2009.**  Springer files 5 separate pleadings, amongst which were the affidavit under 28 U.S.C. § 144, [docket 270] the Motion to Disqualify, Recuse, Removal, and for Random Reassignment [docket 271], and the brief in support thereof [docket 272].   Only ten business days separate this filing from the motion for reconsideration in Docket 265.

9.   **January 21, 2010.**  Stephen P. Friot threatened to summarily issue an arrest warrant, and jail Oscar Stilley, unless Oscar Stilley started community service the following Monday.  The conditions of release [docket 247] required that we "maintain employment which meets the approval of the probation officer..."   Oscar Stilley had employment satisfactory to the probation officer, in the nature of a domestic engineer, preparing the home for the absence of Oscar Stilley, maintaining house work, odd jobs, tree work, etc, until Stephen P. Friot told the probation officer the employment was unsatisfactory.  In other words, Stephen P. Friot, not the probation officer, is the party upset and aggrieved, and Stephen P. Friot is the one making the decision not to issue a show cause order.  Stephen P. Friot threatened arrest and jail.  It was made clear that the hearing at which time I could explain my legal position might not be

held for a substantial period of time, despite my contention that I was in compliance with the actual words of your order. Furthermore, Stephen P. Friot  wrecked my finances by issuing what essentially amounts to a de facto suspension of my remaining licenses to practice law, and topped that off with a curfew and travel restriction to Sebastian county only, further restricting my economic opportunities.   This eliminated my ability to pay for personnel, which further degraded my ability to speedily get work done. After thus wrecking both my finances and my schedule, Stephen P. Friot then sublimely complains that things aren't done as fast as would otherwise be the case. Stephen P. Friot has done visited similar injury upon Lindsey Springer.  Stephen P. Friot then tells the world that Springer and Stilley are just too slow!

The timeline above makes it clear that the complaint about timeliness is not well supported legally or factually.


## CONCLUSION

This brief is filed in support of two motions, both of which seek the striking or modification of one or more orders.  The better part of this brief argues that Oscar Stilley has a right to have those particular motions heard and determined by a lawful and duly constituted court, occupied by a de jure judge.  While this might

seem like an example of lawyers who "dwell on small details" to quote a popular song, it actually goes to the heart of limited constitutional government.

Not every country has such a tradition.  In Russia[10], the following quote is attributed to Ivan III:

> By God's grace we have been lords in our land since the beginning of time, since the days of our earliest ancestors. God has elevated us to the same position which they held, and we beg him to grant it to us and our children. **We have never desired and do not now desire confirmation of this from any other source**.
> (Emphasis added) http://economics.gmu.edu/bcaplan/museum/zarframe.htm

We have a different tradition in this country.  Our states usually hold general and plenary power, subject to restrictions.  Our federal constitution, on the other hand, is a grant of powers, few and defined.  Powers not granted pursuant to the rules laid down by the constitution simply don't exist, at least not legitimately.

Oscar Stilley seeks the striking of orders by Stephen P. Friot, and as a subset of that request the modification of additional conditions of release.  The relief sought in the motions and advocated in this brief is reasonable, legally and factually, and should be granted.


Respectfully submitted,


By:_____/s/ Oscar Stilley_____
Oscar Stilley, Attorney at Law
7103 Race Track Loop

---

[10]      Altogether without prejudice or rancor to Russia or Russians, both beloved by Oscar Stilley.

Fort Smith, AR 72916
(479) 996-4109
(866) 673-0176 Fax
oscar@oscarstilley.com

## CERTIFICATE OF SERVICE

I, Oscar Stilley, by my signature above certify that I have this February 2, 2010, caused the Plaintiff to be served with a copy of this pleading by CM/ECF to: Kenneth P. Snoke, United States Attorney's Office, 110 W 7th Street, Suite 300, Tulsa , OK 74119-1013, ken.snoke@usdoj.gov; Charles A O'Reilly, US Dept of Justice, PO Box 972, Washington , DC 20044, email  charles.a.o'reilly@usdoj.gov , and Lindsey K. Springer at Gnutella@mindspring.com .