IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                              Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants

SPRINGER'S REPLY TO RESPONSE IN OPPOSITION TO SPRINGER'S
MOTIONS TO DISMISS (DOC. 280,282,284)

Lindsey Kent Springer ("Springer") files his reply to response opposing his Motions to Dismiss Doc. 280, 282 and 284.  This Court lacks any Article III subject matter jurisdiction, jurisdiction of the facts, and venue under Article III of the Constitution of the United States and O'Reilly and Snoke have confessed as much in their response.  Without District Director over the State of Oklahoma there is no delegation for the Secretary of the Treasury to act outside D.C. and more importantly within the State of Oklahoma and this judicial district.  O'Reilly and Snoke confess Mr. Shern lacks any delegation of authority to act on behalf of the Secretary of the Treasury. Equally, this confession applies to Ms. Meadors and Mr. Miller.  Springer outlined in great detail their deficiencies and they point to not a single error specifically in Springer's claims.

Apparently, Mr. Woodward now signs as the United States Attorney based upon his purported appointment as such on January 21, 2010 by the attorney general.  No document says it is so. Just more of Mr. Snoke's invites.  It is obvious then Mr. Woodward was not authorized to

1

act or be a United States Attorney during the trial in 09-cr-043.  See Doc. 292, footnote 1.   Doc. 292 cites to no law or other authority that provides the Attorney General any authority to select Mr. Woodward as United States Attorney as of January 21, 2010.

1. **There is no statute or law which establishes the office of United States Attorney that would allow such purported United States office to be exercised outside the District of Columbia and within the State of Oklahoma**.

    In Judge Friot's order of January 28, 2010, Judge Friot writes:

    > Lastly, Mr. Springer argues that the prosecution team was not authorized to hold office in the State of Oklahoma and that their exercise of any authority outside Washington, D.C. is unlawful. Mr. Springer argues that Brian Shern had no authority to act on behalf of the Commissioner of the Internal Revenue Service outside of the District of Columbia. Mr. Springer also argues that Thomas Scott Woodward has no authority to prosecute this case because Mr. Woodward is an "acting" United States Attorney. Mr. Springer argues: "There was and is no United States Attorney for this judicial district nor any office for an appointment to be filled. A new trial should be granted." (Doc. no. 288, p. 12.)
    > These arguments could have been made earlier instead of only now, after Mr. Springer was tried and convicted. For obvious reasons, a defendant should not be able to challenge the authority of a prosecution team, for the first time, only after the defendant's conviction. Regardless, **Mr. Springer's authorities do not support his arguments and the court rejects his arguments not only as untimely but also on their merits.**

Doc. 292, pg. 12

On January 27, 2010, Snoke informed Judge Friot and Springer for the first time that "[O]n January 21, 2010, Thomas Scott Woodward was sworn in as the Attorney General's appointed United States Attorney for the Northern District of Oklahoma." Apparently, and without saying, this was according to Title 28, United States Code, Section 546(c)(2).[1]

---

[1] This purported appointment is clearly in violation of Title 28, United States Code, Section 546(c)(2).  This section requires the appointment when "the office of United States Attorney is vacant."   Snoke had every opportunity to identify the statute that created the "office" to which Scott Thomas Woodward purportedly is to occupy on January 21, 2010, and did not!

2

There is no dispute between the parties that Congress has conferred "express authority" on the United States Attorney "by law" to "prosecute for all offenses against the United States" at Title 28, Section 547. After June 28, 2009, David O'Meilia was no longer the "United States Attorney" appointed by the President at Title 28, Section 541. http://www.mainjustice.com/tag/david-omeilia/.

Section 541 allows the President to appoint a single United States Attorney for each office established by law in each "judicial district" for a four year specific term. This section also provides the President with the sole authority to hire and fire the United States Attorney. This power is an Article II, Section 2, Clause 2 power that can only be exercised by the President of the United States of America. *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)

On the other hand, Assistant United States Attorneys are appointed by the Attorney General to assist the United States Attorney "when the public interest so requires." See Title 28, Section 542. These appointed Assistants to the United States Attorney are removable solely by the Attorney General and have no term. They would not qualify as principal officers under Article II.

Title 28, Section 543 also provides the Attorney General may appoint a "Special Attorney" to "assist United States Attorneys when the public interest so requires." None of these provisions allow Assistant United States Attorneys or Special Attorneys to "prosecute for all offenses against the United States." That power Congress solely placed in the hands of the appointed by the President United States Attorney for the judicial district. See Title 28, Section 541  This Court should issue an order finding there is no specific statute that established the office of United States Attorney outside the District of Columbia.

**2.     The prosecution of Petitioner for the allegations in 09-cr-043 is prohibited by Title 28, United States Code, Section 547 and Title 4, United States Code, Section 72, in the undisputed absence of any "United States Attorney" appointed by the President, with**

**the advice and consent of the United States Senate, as required by Title 28, United States Code, Section 541, within the United States' Northern Oklahoma Judicial District.**

**(i)     No office of United States Attorney provision establishing office by law**.

There is no separate, specific office established by law that would provide a place for the exercise of a United States Attorney to prosecute any offense outside the District of Columbia, which Title 4, Section 72 withholds and forbids. No office exists that is established by law. Although apparently this claim by Springer was rejected by Judge Friot on January 28, 2010, that order fails to identify what law provides such office to be in existence.[2]

Title 28, Section 541 established the appointment process to fill each office in each judicial district but section 541 does not, itself, establish the "office", nor does any other statute actually establish such "office".  In any event, even if section 541 is read to establish the appointment process and also the office in "each judicial district" for a specific United States Attorney, and Springer argues it does not, there could, under that rationale, only be an "office" if there is a United States Attorney appointed with the advice and consent of the Senate. There is no office established by law in any event.

**(ii) No United States Attorney after June 28, 2009 for authority to prosecute.**

The United States Attorney at the time of the indictment in this case was named David E. O'Meilia. Since June 30, 2009, each filing by O'Reilly and Snoke listed Thomas Scott Woodward as "acting" United States Attorney.  Neither Snoke or O'Reilly identify any authority for their

---

[2]The order of January 28, 2010 does not address the January 27, 2010 revelation that Mr. Woodward was purportedly selected for the 120 stint by the Attorney General on January 21, 2010 and the impact that fact has on the prosecution of Springer.

prosecution of Springer beginning October 26, 2009. Judge Friot did say on January 28, 2010 Springer waited too long to make this objection.

Since there was no United States Attorney for the judicial district named "Northern District of Oklahoma" after June 28, 2009, Congress had given no authority to anyone, named or unnamed, to prosecute Petitioner (or Stilley) for the allegations contained within the indictment. This reaches all pleadings.

Even if there was a United States Attorney named, Petitioner opposes the prosecution unless that prosecution was specifically performed by the specific person appointed by the President of the United States of America. Congress has given no authority to the Attorney General, or to Assistant United States Attorneys or Special Assistant United States Attorneys, to actually prosecute any offense outside the District of Columbia in any office established by law.

**(iii)     Attorney General has not appointed Thomas Scott Woodward**

Thomas Scott Woodward was purportedly an "acting" United States Attorney apparently till January 21, 2010. There is no provision that allows for an "acting" United States Attorney. Without a "United States Attorney" "appointed" by the President of the United States of America to this judicial district there would be no existence of any "office"in this "judicial district."

Since there is no law expressly establishing an office called "United States Attorney Office" inside or outside the District of Columbia, or any other "office" which would allow the Attorney General to "exercise" his office within the State of Oklahoma, O'Reilly and Snoke had no statutory authority to prosecute Petitioner in this case under Title 28, United States Code, Section 547.

**(iv) Nonetheless, Woodwards 120 days expired on October 26, 2009**.

Title 28, United States Code, Section 541 provides "[T]he President shall appoint, by and

5

with the advice and consent of the Senate, a United States attorney for each judicial district." The United States Attorney appointed to each Judicial District is a "principal" officer.  Beginning on June 28, 2009, Scott Thomas Woodward began placing his name on all pleadings in 09-cr-043.  The term "acting" appeared before his name.

There is no objection Woodward, as of June 28, 2009, had no pending appointment by the President.  As Assistant United States Attorney under Title 28, United States Code, Section 542, he was only capable of selection to such post by the "Attorney General." Petitioner doubts a position of Assistant United States Attorney could even be created without a United States Attorney being appointed first by the President.  Who would the assistant be assisting?  Could the public need be that there is a need for assistants because there is no United States Attorney?

In any event, even if Woodward was granted 120 days under Title 28, United States Code, Section 546, his 120 days expired on October 26, 2009.  This is the day the jury trial began.  The suggestion Springer waited too long to raise this issue suggests Springer is in charge of the Prosecution of Petitioner and the appointment of United States Attorneys.  That is simply error.

The Attorney General has no office established by law outside the District of Columbia to "exercise" his office within as of June 28, 2009.  See Title 4, United States Code, Section 72 (forbidding exercise of office outside D.C. unless expressly provided by law.).  The United States Attorney is not an extension of the Attorney General when appointed under Title 28, United States Code, Section 541.   It is for these reasons that the Appointment of a United States Attorney for a judicial district by the President is a principal office and not an inferior or subordinate office.

Mr. Woodward was not authorized to prosecute Springer.  Nor was O'Reilly or Snoke.  The suggestion by Snoke that Woodward's 120 days began on January 21, 2010, begs the question by

what Presidential Appointment, or other authority, gave him United States Attorney and prosecutor status, under Title 28, United States Code, Section 547, in the Northern Oklahoma Judicial District as of June 28, 2009, or during the trial that began on October 26, 2009, to hold the principal office of United States Attorney?[3] Springer maintains the United States Attorney "offices" did not legally exist. The language of Section 541 leaves no room for debate. If the President is to appoint then the office is a principal office.

No matter how the findings and conclusions are drafted the fact no United States Attorney existed remains the same from October 26, 2009, till January 21, 2010. This would depend on whether Mr. Woodward was not the acting United States Attorney from June 28, 2009 till January 21, 2010, which he had represented as an officer of the Court repeatedly in certain pleadings he was. A finding of untimelyness in this regard would be a completely erroneous abuse of discretion.

**3.     Springer's Motions are not frivolous and have not been raised before.**

It is argued Springer "asserts many of the same frivolous arguments made in previous filings, including in Defendant's First Motion to Dismiss Grand Jury Indictment for Lack of Venue and supporting memorandum of law (Docs. 51 and 52), and in Defendant's Reply Regarding Opposition to Springer's Motion to Dismiss (Doc. 81)." Doc. 292, pg. 2

Now it is argued the internal revenue district challenges Springer made was "frivolous." Springer supposes his challengers believe Article III of the Constitution is frivolous also. Springer will agree this Court "denied" the Motion but this Court did not ever say why. In any event, Springer has not raised any issues that this Court denied previously including the impact no "district director"

---

[3] Technically, a deposition was taken on October 16, 2009, but that has no bearing on this factual dispute.

has on the "enforcement" of the internal revenue laws. That would have been more correctly styled Motion to Reconsider of which Springer did not file in that regard.[4]

O'Rielly and Snoke argue that these "arguments, previously rejected by the Court, include that the abolishment of the Internal Revenue districts prevented the United States from prosecuting him pursuant to Title 26, United States Code Sections 7201 and 7203. The Government has responded to Defendant's previous assertions, including in Docs. 42, 71, 80, 93, 276 and 277. The Court denied Defendant's motion to dismiss (Doc. 51) on July 1, 2009. Doc. 100." Doc. 292,pg. 2

Again, Springer does not dispute the Court denied Springer's Motions to Dismiss but the issues denied on July 1, 2009, were not raised in Springer's present motions. The reason why O'Reilly and Snoke respond the way they have is because they know everything Springer said in his Motions to Dismiss (Doc. 280, 282 and 284)(along with accompanying briefs) is 100% correct.

Whether Springer raised anything again and whether this Court "appropriately rejected them" will need more than a passing stab. As Springer pointed out in his Stay request the Tenth Circuit recently held the following:

> The apparently novel issue presented certainly requires the district court to exercise some discretion in ruling upon OELA's application and therein lies the fundamental problem in this case. **By simply denying the application in a minute order without any substantive explanation**, we cannot say the district court exercised any meaningful discretion. **And we have long held that a court's failure to exercise meaningful discretion constitutes an abuse of discretion**. For example, in *Ohlander v. Larson*, 114 F.3d 1531 (10th Cir. 1997), we recognized a "clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." Id. at 1537.

---

[4] 26 CFR 601.101 and 601.107 are clearly in Springer's favor regarding absence of internal revenue district and district director for enforcement of internal revenue laws.

See *Clyma v. Sunoco*, Doc. 306, Exhibit 2, pg. 9-10 (Feb.3.2010)(10th Cir.)  This Court should order a detailed response on each issue raised by Springer or grant the motion to dismiss as confessed.

O'Reilly and Snoke continue by arguing "Defendant does raise what the United States believes may be new assertions, but these new assertions are frivolous to the point of absurdity." Doc. 292, pg. 2 "These arguments include that Thomas Scott Woodward "is not authorized to act as a United States Attorney" (Doc. 285 at 1-2), that the United States lacks standing to bring criminal charges pursuant to Title 26 (Doc. 284 at 2), that "[t]here are no United States Attorney Offices established by law that could qualify to be exercised outside of the District of Columbia." (Doc. 284 at 8-9), etc.  Doc. 292, pg. 2

Like everything else O'Reilly and Snoke have argued they simply cannot address specifically what authority or law allows them to prosecute Springer in this case.  They cite to no case or cases, statute or statutes, or regulation and regulations, that support their prosecution.  Their admission Mr. Woodward was selected on January 21, 2010 proves too much in Springer's favor in regard to the "authorization" to act.  They never deny they must have authority to act.

Whether the United States of America has standing to bring criminal charges under Article III of the Constitution as a party is not a difficult concept to grab hold of.  All they were required to do is identify what words in Article III allow O'Reilly and Snoke to represent a party named United States of America in this case. Obviously they cannot do that or they would have simply identified such authority.  Springer knows of no such authority they could have cited.

Lastly, they suggest an office named "United States Attorney Office" is established by law outside the District of Columbia without a single citation to any statute or statutes whatsoever. Springer equally knows of none they could have cited.  O'Reilly and Snoke construe Springer's

9

arguments "go to jurisdiction as opposed to venue for this prosecution" and assert they have already responded. Doc. 292, pg. 2. No such response has ever been given by either of them. This Court obviously lacks subject matter jurisdiction, jurisdiction of the facts and venue, under Article III of the Constitution as to each of the six counts in the purported grand jury indictment. That is simply confessed by someone who cannot even identify what authority provides the United States of America with standing to be named Plaintiff on a purported grand jury indictment.

## CONCLUSION

This Court should either grant Springer's Motions to Dismiss doc. 280, 282 and 284, or before it does, give O'Reilly and Snoke one last time to address Springer's Motions head on and explain what law established the office of United States Attorney in this judicial district after 10.26.09 independent of any appointment; what words in Article III provide the United States of America with standing as a party in this case, with authorities; what words in Article III provide subject matter jurisdiction over this purported case or controversy in this Court; and because of the lack of any authority to act outside of the District of Columbia, explain how the Secretary of the Treasury has enforcement power to yield outside the District of Columbia, with Title 4, United States Code, Section 72 standing in his way, and the fact no office is established by law allowing the Secretary to act outside his "seat of Government" office under Title 31, Section 301.

                Respectfully Submitted
                /s/ Lindsey K. Springer
                Lindsey K. Springer
                5147 S. Harvard, # 116
                Tulsa, Oklahoma 74135
                918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Reply to Response to Springer's Three Motions to Dismis was ecf'd on February 10, 2010 to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

/s/ Lindsey K. Springer
Signature