IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                              Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

SPRINGER'S SENTENCING MEMORANDUM

Lindsey Kent Springer ("Springer") files this memorandum regarding issues related to sentencing.

There are four main issues that are relevant to sentencing. There is the base offense, tax loss, enhancements, and other factors.

**1.    Base offense level:**

For the purpose of getting to appeal on certain issues in this case, Springer submits the following in regard to the base offense level.

Section 2T1.9 says the base offense level should be 10 or the amount from 2T1.4. 2T4.1 is the same base whether at 2T1.9 or 2T1.1. 2T1.1 is the proper guideline and directs the base offense is to be 6 points or the tax loss under the table at 2T4.1. This then requires an answer to the second issue before the base offense can be determined as 6 or 10 points or from the tax table at 2T4.1.

Under the Guidelines, the district court was required to determine Leslie Mower's base offense level by calculating her tax loss and comparing it to the tax

1

loss table in U.S.S.G. § 2T4.1. *See* U.S.S.G. § 2T1.1(a)(1). For an offense involving tax evasion, "the tax loss is the total amount of loss that was the object of the offense (*i.e.*, the loss that would have resulted had the offense been successfully completed)." *Id.* § 2T1.1(c)(1). In addition, where "a defendant [was] convicted of more than one count," and the "counts involv[ed] substantially the same harm," the district court is required to group the counts together and determine "the offense level corresponding to the aggregated quantity." *Id.* §§ 3D1.1(a)(1), 3D1.2(d) (citing § 2T1.1), 3D1.3(b). The district court, therefore, appropriately grouped the counts against Leslie Mower and calculated her offense level based upon "the aggregated quantity" of the tax loss. *Id.* § 3D1.3(b). *U.S. v. THOMPSON*, 518 F.3d 832, 867 (10th Cir. 2008)

The tax loss for Springer then could only be the amounts derived from the failure to file tax returns and section 3D1.1 requires grouping. Even if the Court was to only consider taxes allegedly owed by the charts presented by Mr. Miller's testimony that or those amounts would not exceed $ 200,000.

Springer submits that the Court should consider a "quid pro quo" "not quid pro quo" standard or basis to derive the total amount of taxable income for the year 2000, 2003 and 2005 under the grouping theory. If the tax court could not find a quid pro quo on the amounts never alleged by a grand jury then neither should this Court.

Springer submits that without any tax loss the Court should find the base offense level is 6 and if the Court decides there is a tax loss then the Court should

2

use the table at 2T4.1.

In order to find the base offense level that includes relevant conduct under 1B.1.3 "In the commentary to the relevant conduct provisions of the guidelines, the Commission's discussion of "same course of conduct" includes the following example: "a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals." U.S.S.G. § 1B1.3, comment. (n. 9(B)). *U.S. v. Sullivan*, 255 F.3d 1256, 1265 (10th Cir. 2001)[1]

There is no such animal as "cumulative tax loss" mentioned by the commission ever. The United States is simply declaring war on not only Springer but also on the Tenth Circuit Court of Appeals.

### A. Relevant Conduct:

The United States does not identify how they arrive at their relevant conduct tax loss except to say they agree with the PSI.

There is no "tax loss caused by each defendant" and it is only the "attempt" that the charges encompassed. There is no "criminal source income" exceeding $10,000. Springer does not agree the money Hedberg in 1999 or any other year given Springer was payment for any services whatsoever. There is no "tax harm" that applies under 2T1.9 or 2T1.4.

---

[1] This remains the same for the 2009's proposed guidelines. Springer submits that the only way to use the 2009 guidelines is if they were in place at the time the acts are alleged and they clearly were not. The 2008 guidelines are then appropriate if no ex post facto concerns are raised. If the Court intends to group the tax loss from year specific counts then the Court should use the oldest tax loss table applicable in grouping and not the newest.

3

The PSI incorrectly applies taxes and interest from 1990 through 1995 which was certified released in 2007 by the Secretary of the Treasury. These amounts were not derived from "services" allegedly performed by Springer but rather the bureau of labor statistics.

Springer never encouraged anyone not to pay their taxes or file returns and in fact the evidence showed at trial that Springer encouraged people to file returns and pay taxes. There is no evidence that Springer encouraged Stilley to do anything with his tax liabilities nor is there any evidence of Stilley encouraging Springer on what to do with his tax liability.

There is and will be presented ample evidence that taxes were paid by persons associated with Springer. Mr. Mitchell of Colorado, 1.2 million, Mr. Simmons, $ 250,000, Ms. Hosden $ 500,000, Dr. Pizzino, $ 600,000, Mr. Phillips, $ 450,000, Mr. Morris, $ 300,000, and then there are others who will also testify on this subject. What the United States is trying to do is shatter the meaning of tax loss to an entire new undefined level. There position is why not, they have accomplished thus far the same outcome with the term gift, return, the PRA, authority of the Secretary, District Director, venue, jurisdiction, what can be labeled false, theft of money, the list just goes on and on and on. Soon though they will have to deal with the fact the Tenth Circuit does not agree with them on the application of the Paperwork Reduction Act and whether judicial districts and internal revenue districts coincide.

The United States seems to argue that "jointly undertaken criminal activity" means anything at any time but then they cite to the Commission's report which

4

says the only "criminal activity" is that part of the "scheme."

This is why defraud needs to be found unconstitutional. It has no outer meaning. Now the United States is arguing conduct which was never found criminal by anyone, or even alleged, is somehow included within "tax loss" because they say so. Springer does not object to the notion that tax loss is the "total amount that was the object of the offense."

Section 371 and the indictment allege and states the offense object was to "defraud the United States" by impairing the IRS functions.

The United States does not shoe or allege any impairment of any lawful functions with any of the amounts they include as "relevant conduct" in their tax loss calculations.

What the United States is doing is they are grouping the counts and then borrowing from each to pile it on. They must calculate the base offense from one of the Counts and then go from there. The tax loss may be grouped from each Count but that does not mean what the United States is attempting to accomplish.

Both the PSI and the United States argue that Count One involves the evasion of payment of taxes ("the object was to corruptly...impede....the....payment of the income taxes...") Brief at 6. The term payment never appears one time in Count One. Count Two, Three and Four never alleged Springer attempted to evade payment of any taxes. The entire theory of the United States was that Springer by not filing returns prevented the United States for calculating a tax liability. Mr. Miller testified to this directly. The reason why the United States asserts this is they are

5

trying to reach back to 1990 through 1995 to claim an additional 400k in tax loss as relevant conduct.

The Commission specifically directs that unless the crime charged was willful evasion of payment at 7201 or willful failure to pay at 7203 interest and penalties do not attach. The United States admits as much when they seek no interest and penalties on the calculations for tax loss derived from 2000, 2003 and 2005. 2T1.9 is derived from Count One which is Title 18, Section 371. The Commission does not list 371 under 2T1.1 at any point and evasion of payment of failure to pay is not part of the claims in Count One.

Springer does not understand why the United States continues to go back and forth on its tax loss argument. The United States cites to U.S. v. Yip, F.3d 1035, 1038-39 (9th Cir. 2010)$^2$ for the suggestion that "conduct violating the tax laws" should be considered under "relevant conduct" to "calculate tax loss."$^3$ In Yip, he "failed to report the income to the Internal Revenue Service ("IRS") or to disclose his foreign bank accounts. He then conspired to keep the IRS from recovering the unpaid taxes." At 1038. Springer was neither alleged to have or found to have conspired to keep the IRS from recovering any unpaid taxes. The evidence must rise to the level of preponderance. No evidence ever will rise to that level.

---

$^2$Again, trying to force the theories of the 9th Circuit into the Tenth Circuit by default. Mr. O'Reilly obviously is a progeny of the State of California which is within the 9th Circuit.

$^3$ Yip also affirms what the Supreme Court long ago said and that is that Loans do not constitute taxable income. *Comm'r v. Tufts*, 461 U.S. 300, 307 (1983). Thus, had the funds been loan proceeds, Defendant would not have been required to report them as income on his tax returns. See fn. 5.

6

State income tax loss should not enter into the court's consideration of tax loss whether it be Oscar Stilley or Lindsey Springer.  There is no evidence related to Stilley or Springer's liabilities being relevant conduct.

There is no tax loss associated with Patrick Turner from 1993 through 2003.  In fact, the United States proved at trial Springer did not meet Patrick Turner until late 2003 or early 2004 and the only thing Mr. Turner did as a result of that meeting is file tax returns.   Eddy Patterson's 2000 tax liability or his income was never made known to Springer.  Mr. Patterson has returns prepared as he had done for 1995 through 1999 and Mr. Patterson show he would not file those returns because he did not wish to pay for abortions.  Springer only directed Mr. Patterson to file his returns.

Phillip Roberts from 1992 through 1995 had nothing to do with Springer as testimony at trial clearly proved.  There is no way to find a preponderance of any evidence regarding taxes owed to the State by Springer as a result of a jury verdict on Counts Two, Three and Four.

The United States apparently now is accusing Springer of placing Springer's home in a "nominee name."  This home was never owned by Springer.  The only finding in 08-278, which is on appeal, is that because Springer used his money to pay property taxes and modify the home, Judge Kerns decided the United States could reach the home for a tax liability that had already been certified released by the Secretary of the Treasury on August 23, 2007.

The United States argues the jury found Springer guilty of preventing the "collection of taxes."  Brief at 9.  The Jury was asked to find no such fact.  The

United States presented not a single shred of evidence Springer attempted to prevent collection of any taxes. This is just an attempt to reach "evasion of payment" which was neither the theory at trial nor can it be now. This is also why the Court's denial of Springer's motion to dismiss on this issue will be addressed on appeal. There is nothing likely appropriate about "inclusion of penalties and interest with respect to the years 1990 through 1995." Those were released at all times during the years 2000 through 2007. There is no "harm" resulting from anything related to 1990 through 2007.

The United States has not proven Springer accounted for $ 300,000 at trial. Brief at 9 The United States does not commit to whether their relevant conduct is about amounts not "reported" to the District Directors or the amount not paid at the same time. See 26 U.S.C. § 6151. See also **§ 301.6151–1**(2000-2008) For the year 2000 through 2005 all returns were to be only submitted with the district director of the internal revenue district Springer lived in. The United States has already admitted Springer did not live in any internal revenue district from the year 2000 until 2005. See Doc. 71, pg. 4.

There would have been no way to either provide the information or pay what the information provided because there was no internal revenue district or district director to satisfy that alleged "mandate." See 26 CFR 601.101(2000-2009). See also *Hughes v. U.S.*, 953 F.2d 531, 536-542 (1992)

Because Springer caused to be paid to the Secretary over 4 million dollars during the time period there is no tax loss and the base offense should be 10 points

8

if the Court relies on Count One to calculate the group or 6 points if the Court relies on any of the other Counts to calculate the group.

**2. Enhancements**

Sophisticated Means not present.

The United States argues for sophisticated means. Springer did not "hide" any transactions using Stilley's IOLTA account. Any money given to Springer that came out of Stilley's IOLTA account was not Springer's money before it was given to Springer. Using the name Bondage Breaker's Ministries from 2000 forward was not a fictitious entity. This entity has been sued by the United States in 1998 and over 1 million dollars was seized from Springer and that entity. How can an entity known to be sued by the United States be fictitious or sophisticated. No transactions were hidden by use of the name Bondage Breaker's Ministries. Springer never used Stilley''s IOLTA account to hide any asset. The United States compares "filtering funds through his attorney's trust account" to Stilley tendering to Springer money Stilley was told to tender to Springer that was not Springer's before it was given to Springer. Springer did not use "fictitious names."

The United States torture of the money loaned to Springer by Mr. Turner has gone beyond any controls. Mr. Turner never hid $250,000 from the IRS. There is no evidence Springer advised Turner to borrow money to do anything. Mr. Turner said that was Paul Stumpo's idea and not Springers. Mr. Turner testified he borrowed the money after he determined he needed to be prepared in the event he was indicted. Springer did not steal any money from Mr. Turner. Mr. Turner currently

9

has a lien interest in a $ 250,000 motor coach that at one time in the economy was worth much more than $ 250,000.  No 2 point "enhancement" under 2T1.1(b)(2) applies in this case.

B.      No encouragement of others to violate tax laws.

No 2T1.9(b)(2) enhancement is warranted under the Commissions words. This is a specific offense characteristic application and not a relevant conduct issue.

If the United States is speaking of Count one then no such offense conduct was alleged.  There is no evidence as to Count One, Two, Three, Four, Five and Six, that Springer did anything other than to convince people to comply with tax laws. There is no evidence related to any Count as specific offense characteristics that hints Springer directed anyone to "violate the tax laws."

Springer did not tell Patterson or Lake and others that they did not have to file tax returns or pay taxes. Springer never encouraged Mr. Turner to do anything other than loan Springer money.   Springer did not intend to do anything involving Mr. Turner's loan but to make certain a lien interest in his favor was entered the moment the motor coach was driveable to the tag office.      The "fleecing" theory is not supported by the evidence or Mr. Turner or common sense.

No enhancement under 2T1.9(b)(2) applies in this case.  The United States is so confusing in its approach it does not know which section, 2T1.4(b)(1) or 2T9(b)(2) they wish to defend against.   This is because they have commingled their sentencing theory after they argue grouping. Grouping does not mean double pile

on. An enhancement under 2T1.9(b)(2) or 2T1.4(b)(1) is unwarranted and unsupported by the preponderance of any evidence.

C. Obstruction of Justice

Springer never obstructed any justice being lawfully pursued by Brian Shern. The United States hinges this 2 point claim on "if believed." False and misleading testimony is testimony that is material. The United States opts out of n.4(g) for n.4(b). Springer never committed perjury to Mr. Shern nor to this Court during Springer's testimony. Springer did not obstruct any justice.

Furthermore, Mr. Shern was not acting on behalf of the District Director over Oklahoma under 26 CFR 601.107(2000-2007) at any time relevant. Under this circumstance nothing Springer ever said to Shern would have ever qualified as material to anything. Springer told the jury had he know of Judge Friot's definition of gift he would have acted differently as Springer has now done. Judge Friot's definition of gift clearly violates the ex post facto law prohibition in the Constitution. Writing a meaning for gift in 2009 that reaches back to 2000 or beyond clearly is prohibited. No enhancement under 3C1.1 is applicable as to any of the Counts. The United States merges all Counts when grouping requires one count to lead.

D. No criminal source income.

Desperation sometimes gives way to frivolous and meritless claims. Springer received no "criminal source income" nor any income that would trigger any enhancement under 2T1.1(b)(1). Here is some more double dipping. Springer

11

never falsely promised to "win her husband's release from incarceration" or "demanded more payments." Nor does the jury verdict find that Springer stole anything from Mr. Turner. There is no way the leap offered by the United States of what the jury found was "gross income" for 2005 converts into Springer stole money from Mr. Turner. The United States knows Springer intends to appeal and is only going down this road because they know they have no district director, no authority from the Secretary, no form 1040 that complies with the PRA as the GAO report so concluded, no venue, they have 11 agents, which includes Shern, who was found liable to Springer for stealing money by Judge Frizzell of which Shern recently admitted to the Tenth Circuit was stolen, no United States Attorney, and a host of other substantive defects in the purported prosecution of Springer. Saying Springer stole money from Turner requires proof of that by a preponderance of evidence. The evidence shows Turner maintains a lien interest in the RV the money was used to buy. There was no theft by wire and that is ridiculous. No 2 point enhancement pursuant to 2T1.1(b)(1) is warranted.

  E. Adjustment upward not warranted.

The United States suggests Count One contained "five or more participants." Brief at 14. They opine Springer was the leader of "criminal activity" and provided "fraudulent tax advice regarding the paperwork reduction act". Brief at 15. Funny, the Tenth Circuit in a published decision on August 31, 2009, said Springer raised "difficult issues under both the tax code and the PRA." Springer v. C.I.R., 580 F.3d 1142, 1146 (10th Cir. 2009)

12

The only Count to which 3B1.1(a) could even apply is Count One and Count One does not have five or more participants alleged in the conspiracy to defraud the United States (whatever that means).

The United States does not identify what the "criminal activity" was and admits the five "participants" do not exist to warrant any enhancement under 3B1.1(a). Brief at 16. The allegations in Count One do not qualify as "otherwise extensive." To reach this issue as to Count One the United States will need show when the conspiracy began and who joined who. Springer could not be in a conspiracy by himself beginning in 2000. Neither could Stilley.

"To qualify for the enhancement under U.S.S.G. § 3B1.1(a), **trial evidence** must show that Mr. Hamilton "was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a); *see also United States v. Wilfong*, 475 F.3d 1214, 1218 (10th Cir. 2007). See U.S. v. Hamilton, 587 F.3d 1199, 1222 (10th Cir. 2009). Springer was not a leader of an alleged two participant conspiracy to defraud the IRS out of anything. No 2 or 4 point enhancement is warranted. Under 3B1.1(a).

F.  Enhancement for Abuse of Position of Trust erroneous

Springer never held himself out as a "minister" and only held himself over Bondage Breaker's Ministries. Certainly no a hidden mystery. It would be interesting for the United States to established by a preponderance of the evidence Springer had any special skill. There is no evidence of any special skill that significantly

13

facilitated the alleged conspiracy to impede the functions of the IRS or involving Springer's failure to provide information on a very defective request for information Form 1040 for many years including the years alleged in the indictment.

No enhancement under 3B1.3 is warranted.

3. Other Factors

Springer helped collect millions of dollars for the United States and this was money they have no way of claiming otherwise without great difficulty. Springer acknowledges that Section 7201 states "cost of prosecution" and for the purpose of appeal would require a direct accounting of each expense made by the United States including when made and by who.

Springer objects that the Court is authorized to impose any sentence under Title 26, Section 7201, 7203 or under Title 18, Section 371, regarding internal revenue laws without the United States establishing its authority to bring the claims of the Secretary through a Grand Jury and into this Court which is obviously outside the District of Columbia. See Title 4, Section 72 and *Hughes*, at 536, 542.

4. Victims in the thousands is crazy talk.


Springer demands the United States establish that under Count One there were thousands of victims. The United States nor the IRS could possibly be a victim in this case as they are not an agency under Title 18, Section 371. See also 26 CFR 601.101 requiring District Director and Internal Revenue District for administration

14

and enforcement of internal revenue laws which do not exist.

None of the facts under Title 18, Section 3553(a) are present and nothing in the United States recommendations is warranted.

5.   Conclusion

Springer disagrees with the PSI and disagrees with the United States as to each of its proposed enhancements and looks forward to that preponderance of evidence they suggest they intend to prove that is relevant.  For the purpose of sentencing so the Tenth Circuit can finally address the difficult issues related to Springer's issues raised as his defense, with no tax loss, the proper sentence is 0-6 months probation as to each Count with a total points of 10 or 6 depending on which theory the Court leads with the grouping.

>	Respectfully Submitted
>	/s/ Lindsey K. Springer
>	<u>Lindsey K. Springer</u>
>	5147 S. Harvard, # 116
>	Tulsa, Oklahoma 74135
>	918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Sentencing Memorandum was ecf'd on March 30, 2010 to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

                                  <u>/s/ Lindsey K. Springer</u>
                                  Signature