IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 09-CR-43-SPF |
| | ) | |
| LINDSEY KENT SPRINGER and | ) | |
| OSCAR STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

AMENDED MOTION FOR RELEASE AND STAY OF EXECUTION OF

JUDGEMENT AND FOR BOND PENDING APPEAL

Lindsey Kent Springer ("Springer") files his motion for stay of execution of

sentence and release pending appeal pursuant to Title 18, Section 3143(b),

3145(c)(exceptional circumstances) Federal Rules of Appellate Procedure Rule 8(1))(A),

and Federal Rules of Criminal Procedure 38(b).

REQUEST FOR RELEASE AND STAY PENDING APPEAL

The Bail Reform Act Title 18 sect 3413 requires remand unless Springer can show he

1

is not a flight risk, is not a danger to the community or any person, and raises issues that likely decided in his favor will result in dismissal of the charges.

A) SPRINGER NOT A FLIGHT RISK

Springer reported to court by summons to the charges.  He remained free on $5000.00 signature bond with travel restricted to the state of Oklahoma.  Springer was allowed to travel to Ohio, Texas, and California to take depositions while on bond.

Springer also was never late one time to any hearing or violated the restrictions placed upon him per the bond.  Springer represented himself during the entire District court proceedings as the 6th Amendment mandates.

After verdict, Springer was allowed to remain free on bond with certain restriction involving work, his website advocating a change in the tax laws.  On April 23rd 2010, the district court claimed Springer had became a flight risk without receiving any evidence by the government.  The district court made this decision sua sponte and without identifying any evidence it relied upon.  Springer's pre-trial travel across the country is compliant with all orders with the District Court and his 44 years of ties to Tulsa, Oklahoma clearly convincingly show Springer is not a flight risk.  The probation office reported Springer is in full compliance with his conditions of release.

The probation office reported to this court that Springer is married, is responsible for 5 children ages 9,14,17, 20 & 22 and has lived in the community since birth.  Springer requests an order finding he is not a flight risk and for the District Court to reverse it's claim.

2

Springer has litigation pending before this court and the 10th Circuit court of appeals and needs his liberty to defend those cases as well.  If Springer were to flee, Springer would lose his right to appeal, lose his right to prosecute his cases, and lose what has taken 19 years for him to accomplish.

This court is fully aware Springer has made 5 attempts to have the 10th circuit rule on the merits of Springer's non-frivolous Paperwork Reduction Act claims.  This court should be beyond convinced Springer is not a flight risk.

B)SPRINGER NOT A DANGER TO ANY PERSON OR COMMUNITY

The government did not claim springer is a danger to any person or the community. The district Court made no finding Springer was a danger to anyone.  Springer is not a danger to anyone nor has anyone presented any evidence showing Springer has all of a sudden become a danger to the community.  Springer is not a danger.

C)REASONS SPRINGER LIKELY TO PREVAIL ON APPEAL

i)      JUDGE FRIOT NOT COMMISSIONED IN NORTHERN DISTRICT.

1      Judge Friot was not temporarily assigned pursuant to Title 28, Section 292(b) by Chief Judge Henry to hold office in the United States' Northern Judicial District of Oklahoma for case 09-cr-043 based upon any specific public interest.

2      Misc. # 23 is not a temporary assignment of any specific district judge but rather purports to make all United States District Court Judges holding office in the Northern, Eastern or Western United States Judicial Districts of Oklahoma, to be a United States

3

District Judge in all three (3) United States Judicial Districts at the same time and for a period of one year with apparently automatic renewing.  Congress did not intend or authorize this result by enacting Title 28, Section 292(b).  Such intent is contrary to Article III, Section 1 and Article II, Section 2, Clause 2 and Article I, Section 8, Clause 9.  There must be a specific public interest identified[1] and the assignment must be temporary and specific for a Judge with consent of the parties.

3      In Title 28, Section 292(d) Congress describes the trigger as a "certificate of necessity."   Title 28, Section 292(b) was not enacted for the purpose of creating additional United States District Court offices, yet that is precisely what the U.S. DOJ argues Misc. # 23 apparently accomplishes.

4      Misc. # 23 violates Article III, Section 1, Article II, Section 2, Clause 2 and Article I, Section 8, Clause 9, of the United States Constitution, and Title 28, Sections 116, 132, 133, and 134, as defined by Title 28, Section 451, wherein the President alone shall appoint all officers of the United States or "district judges" which shall be established by law with advice and consent of the Senate.

5      To the extend this Court determines that Misc. # 23 does not violate Article III, Section 1, Article II, Section 2, Clause 2, and Article I, Section 8, Clause 9 of the

---

[1]The only possible public interest that may qualify is when a vacancy of some previously established office holder occurs and then such assignment would be subject to consent by the parties or otherwise be in violation of Article III, Section 1, Article II, Section 2, Clause 2, Article I, Section 8, Clause 9, and Title 28, Sections 116, 132, 133 and 134 as defined by Title 28, Section 451.

Constitution of the United States, or Title 28, Sections 116, 132, 133, and 134, as defined by Title 28, Section 451, then Springer claims Title 28, Section 292(b) is unconstitutional as it then violates Article III, Section 1, Article II, Section 2, Clause 2 and Article I, Section 8, Clause 9, because then section 292(b) would be relied upon to establish someone other than the President,  and with consent of the Senate, to assign inferior Court officers to hold Judicial offices in offices that are not established  by law.

6      Congress has limited the number of "offices" in the United States' Northern Judicial District of Oklahoma to three (3) with one (1) office that roams between the Northern, Eastern and Western Judicial Districts of Oklahoma.  Judge Friot is not any of these four commissioned office holders or judges.

7      Without Misc. # 23 everyone agrees Judge Friot is merely Stephen P. Friot outside the United States' Western Oklahoma Judicial District.

8      The question here is whether Misc. # 23 was a reliable and proper exercise by Chief Judge Robert H. Henry of the United States Court of Appeals for the Tenth Circuit ("Judge Henry") pursuant to Congress' grant at Title 28, Section 292(b).

9      In examining what Misc. # 23 is being relied upon to accomplish should startle this Court.   Title 28, United States Code, Section 292(b) reads in relevant part: "The chief Judge of a circuit may, in the public interest, designate and assign temporarily any district judge of the circuit to hold a district court in any district within the circuit." There is no doubt the order of the Tenth Circuit on this issue dated December 4, 2009 only found "The trial was conducted by District Judge Stephen Friot, sitting

by designation." See Doc. 65, pg. 1

10     There is no question Judge Henry purportedly "designated" Judge Friot within Misc. # 23 but the Panel did not find Judge Henry assigned temporarily Judge Friot to hold a district court in the United States' Northern Oklahoma Judicial District. The question is did Judge Henry designate Judge Friot to 09-cr-043? The answer is no!

11     Misc. # 23 makes each United States Judge sitting within their respective commission offices to be Article III Judges in two other United States Judicial Districts outside each Judges office of commission for one year terms. This construction of Misc. # 23 violates Article III, Section 1 which says "The judicial power of the United States, shall be vested .... in such inferior courts as the Congress may from time to time ordain and establish. The judges,....of the .....inferior courts, shall hold their offices during good behaviour."

12     Judge Friot only holds office in the United States' Western Oklahoma Judicial District.   He does not hold office in the Northern Judicial District.

13     Judge Friot has no jurisdiction under Article III, Section 1, Article III, Section 2, Clause 3, Article II, Section 2, clause 2, the Sixth Amendment, or under Title 28, Section 116(c) or 132, 133(a), and 134, to hold office of his commission in the United States' Northern Judicial District of Oklahoma.  See Title 28, Section 116(a).

14     Chief Judge Eagan, in her assignment of Judge Friot, cites no statute or rule of the United States authorizing her to assign a United States Judicial District Judge commissioned by Congress in the United States' Western Judicial District of Oklahoma, to take office in

the United States' Northern Judicial District of Oklahoma.

15      There is no vacancy regarding Misc. # 23.  There is no vacancy regarding any office in the Northern Judicial District of Oklahoma.  Misc. # 23 does not identify any temporary reason for Judge Henry issuing Misc. # 23.  Misc. # 23 does not assign Judge Friot to 09-cr-043.  Judge Friot said on January 28, 2010 Judge Eagan assigned him:

> Mr. Springer's objections to the Tenth Circuit's designation (misc. 23) and to **Chief Judge Claire Eagan's subsequent assignment of this case to the undersigned**, are not based on any fundamental statutory defects which undercut important policies regarding the proper administration of judicial business and which have, therefore, been addressed by courts despite timeliness issues. Moreover, here, there is no explanation (other than the obvious strategic one) as to why Mr. Springer did not raise concerns about the sufficiency of misc. 23 as support for the undersigned's assignment to this case as soon as he received the court's clarification of its authority back in April of 2009. see Doc. 293, pg. 9, fn. 5

16      On January 28, 2010, Judge Friot explained he was assigned by Judge Eagan and not Judge Henry from the Tenth Circuit as Title 28, Section 292(b) requires. Furthermore, Judge Friot, in denying Springer's Motion to Recuse explained that Petitioner should have raised his recusal issues before April 22, 2009 instead of in December 28, 2009. Judge Friot places too much emphasis on strategy and completely

ignores the revelation of Judge Eagan's bias which led to Petitioner asserting that if Judge Eagan was prohibited by Title 28, Section 144 and 455 from being randomly assigned then she was to "proceed no further" and another commissioned Judge was to be randomly assigned.  This proceed no further includes selection of Judge Friot.[2]

17    Petitioner presented to Judge Friot the case of McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1261 (1983) which Judge Friot explained "McCuin reasons that to permit a disqualified chief judge to select the judge who will handle a case in which the chief judge is disabled would violate the congressional command that the disqualified judge be removed from all participation in the case, and that it might create suspicion that the disqualified judge will select a successor whose views are consonant with his. Id. at 1261."   See Doc. 293, pg. 22.

---

[2]Judge Friot repeated over and over again to the Jury during Petitioner's testimony about why Petitioner arrived at the conclusion the Form 1040 did not comply with the Paperwork Reduction Act by saying that he was reminding the jury the Form 1040 did not violate and does not violate the Paperwork Reduction Act.  Recently, in denying Petitioner's Motion for New Trial Judge Friot stated the reason why his statements did not warrant a new trial was because the obligation to file a tax return is a sole mandate of an unidentified statute and did not have any thing to do with regulations prescribed by the Secretary.  Exhibit 26, pg 6.  This was obviously contrary to this Court's previous findings on the subject.  See Dole v. United Steelworkers of Am., 494 U.S. 26, 33, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990)

Judge Friot stated "As held in United States v. Dawes, 951 F.2d 1189, 1191-92 (10th Cir. 1991), quoted in Springer v. United States, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006), "the requirement to file a tax return is mandated by statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA." The court's statements to the jury regarding the PRA do not require a new trial."

The Dawes Court held no such thing.  Instead, Dawes stated "We would be inclined to follow the general analysis of Wunder and Hicks and hold that the operation of the PRA in these circumstances did not repeal the criminal sanctions for failing to file an income tax return because the obligation to file is a statutory one. However, we are not compelled to rest our opinion on the statutory origin theory because we find the analysis of other courts which have considered the issue to be persuasive."

18     There is no question that when Petitioner found out that Ms. Patterson had testified before a Grand Jury on October 6, 2004 and the explanation as to how this testimony was lost or hidden by the United States of America on November 20, 2009, Petitioner began to realize why Judge Eagan did not allow random reassignment which if assignment was then to her she would have been required to recuse on her own.

19     Whether Judge Eagan had a bias and prejudice against Petitioner because of the reasons she gave sentencing reductions to Mr. and Ms. Patterson would appear on the surface to be now very clear. Judge Friot thought otherwise in his order of January 28, 2010 and only then was it explained who assigned him in the first place.

20     None the less, Judge Friot was not assigned by Judge Henry to 09cr-043 because of some vacancy occurring in the United States' Northern Oklahoma District.  Judge Friot was assigned by Judge Eagan who was not the Chief Judge of the Tenth Circuit.

21     Misc. # 23 is not nor would ever be a lawful exercise of a Circuit Chief Judge's power under Title 28, Section 292(b).  If this Court were to find Misc. # 23 was lawful then Petitioner challenges the constitutionality of Title 28, Section 292(b) which would directly oppose Article III, Section 1's "hold his office" for "good behavior" mandate.

22     Springer claims Misc. # 23 does not in any way exercise the limited power Congress appears to have granted to the Chief Judge of "a circuit" regarding any specific  "district judge of the circuit" to temporarily "hold a district court in any district within the circuit." How does a "district judge" "hold a district court" anyway, and what does "hold a district

court" actually mean?  It would appear that it means that a district judge is assigned a specific judicial seat in a specific locale in a specific judicial division of a specific judicial district. It does not mean, "be a federal judge anywhere in the state of Oklahoma".

ii)   INTERNAL REVENUE DISTRICTS NOT IN EXISTENCE
      (a).   Internal Revenue Districts Abolished by end of 1999 for the Arkansas-
             Oklahoma District

1    On May 29, 2009, the United States of America admitted in Doc. 71 all "internal revenue districts" were abolished in 2000 by the Secretary of the Treasury.  See Exhibit 1, pg. 4 Each of the 6 counts in the alleged Grand Jury indictment are involving year 2000 through 2005 and for willfully conspiring to impede the lawful functions of the IRS (Count One), willful attempting to evade assessment of taxes for year 2000, 2003 and 2005 involving failure to file Form 1040 (Counts Two, Three and Four) and willful failure to file Form 1040 for year 2002 and 2004 (Count Five and Six).  See Doc. 244 generally.

2    26 CFR 601.101   clearly and unmistakably states in relevant part:

> General. "The Internal Revenue Service is a bureau of the Department of the Treasury under the immediate with direction of the Commissioner of Internal Revenue. The Commissioner has general superintendence of the assessment and collection of all taxes imposed by any law providing internal revenue. The Internal Revenue Service is the agency by which these functions are performed. Within an internal revenue district the internal revenue laws are administered by a district director of internal revenue."

"Pursuant to that legislative grant of authority, the Secretary created the IRS, 26 C.F.R. § 601.101, so that the IRS is an agency of the Department of the Treasury, created pursuant to Congressional statute."  Snyder v. IRS, 596, F. Supp. 240, 247

(1984)

3      The U.S. DOJ and Judge Friot do not have any dispute with the fact all "Internal Revenue Districts" were abolished by the end of 1999 by the President of the United States (or his designate) and not Congress, including the "Arkansas-Oklahoma" District.  Without "Internal Revenue Districts", the meaning of the phrase "required by law" in the Grand Jury Indictment is meaningless.  Without "Internal Revenue Districts" established under Title 26, Section 7621, there could be no determination as to where the criminal violation of any "internal revenue law" occurred under Article III, Section 2, Clause 3, and the Sixth Amendment's "state" and "district" reservations for Springer.

4      The Statute referred to in Snyder was Title 26, Sections 7801 and 7803. "Responsibility for administration and enforcement of the revenue laws is vested in the Secretary of the Treasury. 26 U.S.C. § 7801 (a). The Internal Revenue Service, however, is organized to carry out those responsibilities for the Secretary." United States v. Euge, 444 U.S. 707, 719 (fn. 3) (1980)

5      Title 4, Section 72 provides that "All offices attached to the seat of government shall be exercised in the District of Columbia, and not elsewhere, except as otherwise expressly provided by law."

6       The term "district" in the Sixth Amendment does not mean "Judicial District," as Judge Friot concluded without any finding of facts or conclusions of law,  and can only mean "legislative district" such as "Internal Revenue District," previously established by law,

11

where "internal revenue laws" are then made applicable.

7    Each of the  "internal revenue laws" at issue in each of the Six Counts of the Grand Jury Indictment dated March 10, 2009 rely exclusively upon the existence of  the "Internal Revenue Districts" which were established by law, and  administered by the then-existing "District Directors," in order to apply and enforce the "internal revenue laws," pursuant to both Title 26, Section 7805, 7851, and under 26 CFR Sections 601.101 and 601.107 (2000 through 2008).

8    The Internal Revenue District encompassing where Springer lives in the State of Oklahoma is essential to Jurisdiction and Venue over the Grand Jury claims of violations of internal revenue laws alleged against Springer in 09-cr-043.   Springer contends the establishment of Internal Revenue Districts encompassing the State of Oklahoma is essential to his Sixth Amendment Rights regarding any trial related to either the lawful functions of the Internal Revenue Service or the internal revenue law offenses generally at issue in the Grand Jury Indictment.

9    In Hughes v. U.S., 953 F.2d 531, 536 (9th Cir. 1992) the 9th Circuit held that "[t]he taxes imposed by the internal revenue laws shall be collected by district directors of internal revenue." See 26 C.F.R. § 301.6301-1(2008).[3] District directors in turn are authorized to re-delegate the levy power to lower level officials such as collection

---

[3]In Hughes the years were for prior to 1992 but the regulations today remains exactly as it did back then and even after admission that both internal revenue districts and district director offices were completely abolished by early 2000.

officers."  Also, the Hughes Panel held that Title 4, Section 72 "does not foreclose the exercise of authority by the IRS outside the District of Columbia" only when the President establishes "internal revenue districts for the purpose of administering the internal revenue laws" outside D.C. and pursuant to Title 26 U.S.C. § 7621.  Hughes v. U.S., 953 F.2d at 542

10      There has never been any evidence since at least 1954 of the President himself creating internal revenue districts.  26 CFR 301.7621-1(2008)[4] directs the Secretary of the Treasury to create the internal revenue districts through executive order. See Executive Order No. 10289, dated September 17, 1951 (16 FR 9499), as made applicable to the Code by Executive Order No. 10574, dated November 5, 1954 (19 FR 7249).

11      The number of regulations remaining in affect by the Secretary of the Treasury that rely upon "internal revenue district" or "district director" for administration and enforcement to this day after both were abolished in 1999 are endless.   See 26 CFR 301.6212 (notice of deficiency), 301.6201-1 (Assessment Authority), 301.6203-1 (Method of Assessment by district director), 301.6301 (Collection Authority by district director), 301.6325(f)(1) and (2) (Lien Release and Revocation by district director as appropriate official), 301.5325(h)(2008)(defining "appropriate official" where "district director" omitted and means "Secretary of his Delegate"), 301.7701-9 (defining Secretary or his Delegate as district director), 301-7701-10 (defining "district director" over "internal

_____

[4]The year in place at the time of Judge Friot's assignment by Judge Eagan.

revenue district"), 301.6331-1 (Levy by district director), 301.7601 (Summons Authority and "Each district director shall....cause officers and employees under his supervision....through his district..."), 1.6091 (Where to file return)(at "local office")(and where "local office" means district director office.)   The Secretary of the Treasury explained in Internal Revenue Bulletin 2007-9 on February 26, 2007, that "The existing permanent regulations under sections 6325 and 6503(f) employ the title 'district director,' in numerous instances, in indicating the highest official of a local office of the IRS. That title was used under an organizational structure of the IRS that no longer exists."

12      Title 26, Section 6091 clearly relies upon "internal revenue district" to direct the place for returns to be filed.  This section has never been amended nor could it be. Title 26, Section 6151 clearly says taxpayer required to pay where he is required to file return.

<u>(b)      Judicial District not Internal Revenue District</u>

13      Judge Friot erroneously substituted the term "District" under Title 28, Section 116(a) in place of the phrase "Internal Revenue District" under Title 26, Section 7621, as appearing in numerous code sections under Title 26, including Title 26, Section 6091 (and the impact section 6091 has on section 6151 in the payment of taxes)(the impact section 6091 has on impeding the lawful function of the IRS in computation, ascertainment, assessment and collection of income taxes alleged in Count 1)(the impact section 6091 has on the theory of attempted tax evasion alleged in Counts 2,3 and 4)(the impact section 6091 has on the theory

alleged in Counts 5 and 6 of wilful failure to file Form 1040), at issue in 09-cr-043.

14      These actions were clearly contrary to this Court's holding in *Rush v. United States*, 256 F.2d 862, 864 (10th Cir. 1958) holding Judicial Districts under Title 28, Section 81-131 [including 116(a)] do not "coincide" with "Internal Revenue Districts" established by the President under Title 26, Section 7621.

> (c)    Judge Friot rejected holding in  *U.S. v. TAYLOR* (10TH. 1987) which required identity of Internal Revenue Districts

15      Judge Friot was specifically informed of the 10th Circuit's holding in *United States v. Taylor*, 828 F.2d 630, 634 (10th Cir. 1987) which stated that "federal statutes and regulations lay down the rule as a matter of federal law" regarding the requirement to provide information on Form 1040 U.S. Individual Income Tax Returns.  Internal Revenue Districts simply do not exist beginning from 2000 forward encompassing the State of Oklahoma. Judge Friot was presented with this Jurisdictional defect over and over again and he simply ignored it each time it was presented to him without any finding of facts or conclusions of law supporting his position to the contrary.

16      Without Internal Revenue Districts encompassing the State of Oklahoma none of the claimed offenses of violating the "internal revenue laws" can be alleged or proven.  The claims in Counts One through Six of the Grand Jury Indictment dated March 10, 2009, should not only have been dismissed, they never should have been initially brought since the place of the alleged offense was not previously ascertained by law under the Sixth Amendment, and that place could not be ascertained.

> (d)    Judge Friot rejected holding in *U.S. v BREWER* (10th Cir. 1973)

17      Judge Friot was also specifically informed by Springer of the Tenth Circuit's holding

that "federal income tax returns <u>must</u>, **by statute**, <u>be filed in the place of legal residence</u> of the taxpayer or at a service center serving **that district**,"[5] and that such place **"is essential to establish jurisdiction and venue**." *United States v. Brewer*, 486 F.2d 507, 509 (10th Cir. 1973).   Judge Friot simply decided, without any finding of fact or conclusion of law, that if Springer lived in Creek County, or one of the Eleven Counties identifying the boundaries established by Congress in Title 28, Section 116(a), that jurisdiction and "venue" was proper in his Office for the Grand Jury Claims in the United States' Northern Judicial District of Oklahoma, without care as to the "place" the filing was to have occurred under the internal revenue laws and holdings in *Taylor* and *Brewer*.

18      The only other option for Judge Friot was to find as a matter of law no Jurisdiction or Venue existed for the claims in the Grand Jury indictment dated March 10, 2009.[6] Knowing what the result would be, Judge Friot refused to make findings of facts or conclusions of law on this particular issue.

19      Again, the list is endless.  A district court simply lacks jurisdiction over internal revenue law claims in the absence of any "internal revenue districts."   26 CFR 601.107(2008) provides each internal revenue district shall have a criminal division to which the district director controls.  "The District Director's Office, <u>now defunct</u>, was

---

[5]Internal Revenue District.

[6]No such place of residence exists in statute or regulation prior to 2005, and the 2005 regulations do not, and cannot, override the specific language of the statute which states that returns are to be filed with the district director in your internal revenue district.  The U.S. DOJ cited originally to 26 CFR 1.6091(2005) in opposition to Springer's Motion and when later ordered to provide a list of regulations at issue within the "required by law" meaning they omitted any regulation under 1.6091 for any year.  In 2005, in effort to hid the problem created by abolishing IRS Districts, IRS deleted any reference to "Internal Revenue Districts" in 1.6091-2 while section 6091 remains unchanged by Congress.

responsible for the administration of all IRS operations within a given tax district."
Allnutt v. C.I.R., 523 F.3d 406, 414 (fn. 1)(4th Cir. 2008)

20      The decision in *Brewer* has been undisturbed by the 10th Circuit and on the books for
36 years.  Clearly, Judge Friot, to the extent he had any discretion, substantially departed
from that discretion, warranting a finding that he went well beyond abuse of such discretion
and abused any power that may have had.[7]

21      The only issue then is what is the implication the absence of internal revenue
districts and district directors has regarding administration and <u>enforcement</u> of the
internal revenue laws as offenses against the laws of the United States or otherwise
from 1999 to the present?   Currently, the pubic has not a clue as to how to determine
the organizational structure of Treasuries Bureau of Internal Revenue because
Treasury itself has no way of explaining it to the public.  Simple to say it is an absolute
mess.   Without internal revenue districts or district directors the statutes and
regulations are confusing or meaningless.  Petitioner having no district directors or
internal revenue districts while statutes require them both to make any sense renders
those code sections and regulations unconstitutional.

        (e).    No lawful IRS function performed in Northern Judicial District

22      There is simply no Jurisdiction and Venue  over the internal revenue law claims in the
Grand Jury Indictment of Springer in case 09-cr-043, as there are no "lawful functions" to

---

[7]"[W]here the crime charged is a failure to do a legally required act, the place fixed for its
performance fixes the situs of the crime." *Johnston v. United States*, 351 U.S. 215, 220, 76 S. Ct.
739, 742 (1956).

be performed by the "IRS" within the boundaries set by Congress' United States's Northern Judicial District of Oklahoma, including, but not limited to,  the IRS's receipt of either completed Form 1040s for calender years 2000 through 2005, or any other years, or any payment of any tax purportedly due and owing by Springer for calender years 2000, 2003 and 2005.[8]  There is no identified function of the IRS that can be performed without the existence of Internal Revenue Districts previously established by law.

23      In United States v. Taylor, 828 F.2d 630, 634 (10th Cir. 1987) the Tenth Circuit held that the "requirement concerning the place of filing of the individual income tax returns is provided in 26 U.S.C.A. § 6091(b)(1)(A) for persons other than corporations. It prescribes the place of filing as 'in the <u>internal revenue district</u> in which is located the legal residence or principal place of business of the person making the return.' The <u>federal statute and regulations </u>lay down the rule <u>as a matter of federal law</u>.."

24      In United States v. Brewer, 486 F.2d 507, 509 (10th Cir. 1973) the Tenth Circuit held "criminal prosecutions must be brought in the <u>district</u> in which the offense was committed, and federal income tax returns must, by statute, be filed in the place of legal residence of the taxpayer or at a service center serving that <u>district</u> 26 U.S.C. § 6091 (b) (1) (A) (i) and (ii), or the principal place of business of the taxpayer. The prosecution must then establish beyond a reasonable doubt that the defendant's

---

[8]Judge Friot allowed U.S. DOJ to state to the Jury that Springer was cheating the Government for 19 years by not filing Form 1040 but then refused to allow Springer to fully present any reasons Forms were not filed.

residence in this, a tax case, was Oklahoma City.[9] This is essential to establish jurisdiction and venue."

25      Under Title 26, United States Code, Section 6091(b)(4) the form of return is to be "hand-carried" "to the Secretary" "in the internal revenue district." "The Internal Revenue Code ties the duty to pay federal income taxes to the duty to make an income tax return. See 26 U.S.C. § 6151(a)" Holywell Corp. v. Smith, 503 U.S. 47, 52 (1992)("when a return of a tax is required . . . the person required to make such return shall . . . pay such tax").

26      The place a Form 1040 is "required by law" to be filed, see Title 26, United States Code, Sections 6091(b)(1)(B)(i) and 6091(b)(4), and any "taxes" owed appearing on such Form, are then only to be paid according to law at the same place the return is required by law to be filed pursuant to Title 26, United States Code, Section 6151.

        f).     NO PROBABLE CAUSE IN GRAND JURY INDICTMENT-FAILS TO STATE OFFENSE

27      A Grand Jury indictment is considered to have found probable cause to believe an offense has been committed by the accused.   It is undisputed no Internal Revenue Districts exist after the close of 1999 for the Internal Revenue District previously established by the President named "Arkansas-Oklahoma." Without the previously ascertained by law "Internal Revenue Districts"encompassing the State of Oklahoma and overlapping with the United States' Northern Judicial District of Oklahoma and Springer's residence, no "internal revenue

---

        [9]Petitioner's residence is in Kellyville in the State of Oklahoma and with the County of Creek and not within the Western Judicial Distrct.

                                            19

law" alleged in the Grand Jury indictment dated March 10, 2009, could have been violated

any place within the United States's Northern Judicial District of Oklahoma.[10]

> g).   THERE IS NO WILLFULNESS EVIDENCE AVAILABLE WITHOUT
> DISTRICT DIRECTOR OR INTERNAL REVENUE DISTRICT

28    Each of the six counts in the Grand Jury indictment failed to consider the undisputed

fact Internal Revenue District and District Director thereof ceased existing as a matter of law

and fact beginning in the year 2000.

29    Willfulness requires proof that Springer was required by law to file a Form 1040

with a District Director over Springer's residence for each calendar year 2000-2005;

that springer was aware of this requirement and; and Springer intended not to file such

returns with the District director.  See Cheek v U.S. 498 US 191, pg200-201(1991).

30    There can be no probable cause found by the Grand Jury indictment because no such

places legally existed.  The 10th Circuit has ruled returns are to be filed in the Internal

Revenue District. See Taylor,supra

31    There is no doubt Springer would be confused about what he was required by law to

do, regarding Form 1040 because of the absence of such Internal Revenue Districts or

District Directors.  Springer is likely to prevail on this issue because willfulness is the key

element in each of the six counts and there was no evidence presented.

---

[10]At trial Brian Shern testified he was the only witness who testified on March 9, 2009
resulting in the Grand Jury indictment being allegedly returned.

iii)     PUBLIC PROTECTION PROVISION APPLIES TO SPRINGER

1      Judge Friot repeatedly told the Jury at trial the Form 1040 did not violate the PRA.[11]

The U.S. Department of Justice maintained in front of the jury and with consent of Judge

Friot that Form 1040 was not required to comply with the PRA and that the obligation to file

Form 1040 was obligatory in contradiction to the Supreme Court's analysis in *Dole v. United*

*Steelworkers of Am.*, 494 U.S. 26, 33, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990),  *United States*

*v. Hubbell*, 530 U.S. 27, 35 (2000) ("regulatory requirement"), and this Courts holding in

*United States v. Collins*, 920 F.2d 619, 630 (fn. 12 and 13) (10th Cir. 1990)(overturning

*United States v. Tedder*, 787 F.2d 540, 542 (10th Cir. 1986) which held PRA did not apply

to Form 1040) ; *United States   v. Dawes*, 951 F.2d 1189, 1193 (10th Cir. 1991)(no

subscription to statutory origin theory; *United States v. Chisum*, 502 F.3d 1237, 1243-44

(10th Cir. 2007)(PRA applies to failure to file but not to filing false returns); *Springer v. IRS*,

08-9004 decided 8.31.09 and citing to *Springer v. Internal Revenue Serv.*, 231 F. App'x 793

(10th Cir. 2007).

2      Judge Friot and U.S. DOJ on more than one occasion demanded Springer produce any

Article III Court decision where the PRA was held to apply to the Form 1040 after being made

fully aware of the above cases, reports, and public statements made by IRS.[12]

---

[11]The obvious import of Judge Friot's pronouncement is that the Form 1040 must comply with the PRA, and that it then, in fact, does then comply with the PRA.  Springer agrees with the first position, and has demonstrated that the second is factually false.

[12]In *U.S. v. Hatch,*  919 F.2d 1394, 1398 (9th Cir. 1990) the 9th Circuit stated that  *"since the Forest Service did not comply with the PRA and since therefore Hatch cannot be subject to any penalty, the **information failed to charge an offense."  This holding** clearly demonstrated that the PRA is a complete defense to a criminal prosecution inexorably linked to the Form 1040 (See 5 CFR 1320.6 "no person shall be subject to any penalty for failing to comply with a

3      The Form 1040 for years 2000 through 2005, and all other years, clearly did  not

comply with the PRA regarding Title 44, §§ 3504, 3506(c)(1)(B), 3507, 3512(a)(1) and (2),

nor did they comply with OMB regulations 5 CFR 1320.5, 1320.6, 1320.8(b)(3) and 1320.9.

See *Exhibit 2,3,4,5,6, and 7*.  See also 83-I Applications by IRS *Exhibit 8,9,10 and 11.*

4      Congress announced at Title 44, Section 3512 that "Notwithstanding any  other

provision of law, no person shall be subject to any penalty for  failing to comply with a

collection of information that is subject to this subchapter...."  Each of the claims in the Grand

Jury Indictment are inexorably linked to the requirement to file Form 1040 for years 2000

through 2005, and any other years.  The Form 1040 is subject to the Public Protection

Provision.  Judge Friot and the U.S. DOJ erroneously maintain that section 3512 does not

withstand any other provision of law.

5      The GAO Report dated May, 2005, on page 34 reported to Congress that "If

information collections do not comply with the PRA requirements described, the public may

be asked to provide information without appropriate disclosure of the information *that would*

*allow the public to exercise scrutiny of agencies' collections*."  See *Doc 260 & 262*

6      Judge Friot was specifically informed by Springer the term "Penalty" is defined at Title

44, Section 3502(14) to include "the imposition by an agency **or court of a fine or other**

---

collection of information that is subject to the requirements of this part if: (1) The collection of
information *does not display*, in accordance with § 1320.3(f) and § 1320.5(b)(1), *a* currently
valid *OMB control number assigned by the Director in accordance with the Act*." See Also,
Title 44, Section 3506, 3507, and 3512.
         The only question is how that same complete defense of failure to state an offense applies
to and affects allegations inexorably linked to Form 1040 and a prosecution for willful failure to
file and attempted evasion inexorably linked to not filing Form 1040.   Each of the claims in
Counts One through Six of the Grand Jury indictment dated March 10, 2009, or inexorably
linked and inseparable from the Form 1040.

**punishment**; a judgment for monetary damages or equitable relief; **or the revocation, suspension, reduction, or denial of a license, privilege, right, grant, or benefit**.

7      Springer has unequivocally demonstrated Forms 1040 for 2000 through 2007 (and any other year from at least 1990 through the present), as a matter of fact and law, did not, do not, nor ever did comply with the specific requirements Congress set forth upon the Secretary of the Treasury regarding its requests for information Forms and the OMB regulations the Secretary submitted to when they made application to OMB on Form 83-I.  The Law specifically states that it is not enough that a specific device display a OMB control number but that OMB must issue that control number and the Form displaying same must be "in accordance with this subchapter [3512(a)]" or "in accordance with the act[5 CFR 1320.6(a)(1)]." Form 1040s are not "in accordance" with either the PRA or OMB regulations.

(a)      Paperwork Reduction Act Public Protection is a clear right of Springer

8      The Public Protection provision, Title 44, Section 3512, provides "Notwithstanding any other provision of law, no person shall be subject to any penalty for  failing to comply with a collection of information that is subject to this subchapter unless (1) the  collection of information does not display a valid control number assigned by the Director **in accordance with this subchapter**; or (2) the agency **fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number**.

9      In order for the Form 1040 to be "in accordance with this subchaper" or "in accordance

with the act" the Form must comply with Title 44, Section 3506(c)(1)(B), 3507 and 3512,

along with OMB regulations promulgated at 5 CFR 1320.5, 1320.6, 1320.8(b)(3) and 1320.9.

The Form 1040 for years 1990 through 2007 do not and did not comply with either of these

mandates (for 1980 through 1994, the mandates were slightly different but the idea is the

same).

10      To the extent an argument is made that the obligations under the Paperwork Reduction

Act of 1995 can be made in some accompanying booklet, Springer further claims (1) form

1040 accompanies no such booklet and in fact is disclaimed therein, (2) that none of the

obligations required by the Paperwork Reduction Act or OMB regulations are satisfied in any

such booklet,[13] (3) that OMB regulations refer to the place the information is to be displayed

---

[13]Regulations by OMB at  5 CFR 1320.5(b)(2)(ii)(A) state that the agency shall include it's certified obligations under 5 CFR 1320 and Title 44, Sections 3506, 3507 and 3512 ("the act") either on the form, questionnaire or other collection of information, or **in the instructions for such collection**.

Springer submits OMB Regulations at 5 CFR 1320.8(b)(3) reference the term "it" on Form 83-I which can only refer to the collection device and no other place where the certified information is to be displayed to the public.  To the extent anyone suggests that non accompanying or accompanying booklets are subject to the Paperwork Reduction Act Springer would argue that this part of any OMB regulation is an arbitrary and  unlawfully exercise by the Director of OMB in drafting regulations contrary to the Paperwork Reduction Act of 1995 which specifically state under section 3506(c)(1)(B)(iii) "ensure each information collection" contains the information listed in subsections (I) through (VI).

Title 44, Section 3502(3)(1995) define "collection of information" as  the obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for "answers" and accompanying or non accompanying instruction booklets do not call for any answers.  See *U.S. v. Dawes*, 951 F.2d 1189, 1193 (10th Cir. 1991)("the instructions and the regulations do not request any additional information.")As the court said in Dawes, the instruction booklet asks for no additional information.

as "it", and it cannot be anything other than the collection device, and (4) that the Government

Accountability Report dated May, 2005, clearly and unmistakably reports to Congress that

both IRS and OMB are out of compliance with both the Paperwork Reduction Act and OMB

regulations stating "the IRS collects information from individuals and their employers to

calculate the correct amount of taxes owed" and the "four agencies did not consistently ensure

that collection forms on agency Web sites included the public scrutiny information required

by PRA."[14]

11      The GAO Report dated May, 2005, on page 34 reported to Congress that the "***public***

***as a right "exercise scrutiny of agencies' collections***." The IRS publicly states on their web

page at http://www.irs.gov/businesses/small/article/0,,id=109046,00.html:

> "Respondents should be aware that **notwithstanding** any other provision of
> law, no person shall be subject to any penalty for failing to comply with a
> collection of information if it does not display a valid OMB control number"

12      Though this is not a thorough statement of the law, it does indicate that Springer has

a right not to be penalized if the Form 1040 does not display a valid OMB control number,

and clearly leaving off the phrase "issued in accordance with this subchapter", which is the

law and requirement under OMB regulations.  Springer has a right not to be subject to any

penalty regarding any Form 1040, and that is unmistakably clear.

---

[14]The GAO Report also stated to Congress of the United States that **"OMB and the
Treasury** also <u>disagreed</u> with our finding that IRS's citation on its forms of "the Internal
Revenue laws of the United States" does not comply with OMB's requirement **that agencies cite
the applicable law on certain forms**."

13     Springer has raised issue with the IRS' PRA violations in the United States' Western

Judicial District of Oklahoma, in April, 2005, case no. 05-466 (Judge Friot), appealed to this

Court, case no. 05-6387, and again in September, 2005, case no. 05-1075 (Judge Friot),

appealed to this Court, case no. 06-6268, and Petitioned in the United States' Northern

Judicial District of Oklahoma in February, 2006, case no. 06-110 (Judge Eagan), appealed to

this Court, case no. 06-5123, and each time a panel of this court has not reached the merits

of Springer's PRA public protection claims.  In appeal 06-5123 listed above, this Court told

Springer he could not raise the public protection as a plaintiff but could only raise the

protection as a defense citing to the phrase "*ejusdem generis.*"

14     Congress mandated that not only does the public protection under Title 44, Section

3512 apply to "Courts" under the definition of "Penalty" at section 3502(14), but that the

"protection provided by **this section** may be raised in the form of a complete defense, **bar,**

**or otherwise at any time** during the agency administrative process or judicial action

applicable thereto."

15     Springer took  appeal to the Tax Court case 05-1075 (Judge Friot) which eventually

made its way to this Court in 08-9004, and on August 31, 2009, this Court stated for the first

time that Springer raises "difficult issues" between the tax code and the PRA.  Four cases

have been brought by Springer.  Springer now requires an answer to his  difficult issues.

16     The words are "Notwithstanding any other provision of law, no person shall be subject

to any penalty.." and how could those words mean anything if a member of the public must

wait till he has been fully, completely, and exhaustively penalized, including loss of liberty, property, family, and even life, irreparably so, before the merits of his "complete defense" are considered and ruled upon?

17     No respondent (Springer) is to be subject to any penalty.  Those words are not only mandated by Congress, confirmed by the IRS and OMB, but were restated back to Congress in the GAO Report of May, 2005.

18     GAO states on page "ii" that it's "work" in the May, 2005 report is "of the U.S. Government". See Doc 260 &262, Page ii

19     GAO also directs on page 1 of it's report that on May 22nd 1995 Congress "re-authorized a second time with more significant amendments" the Paperwork Reduction Act of 1980. See doc. 260 &262 , pg. 1.  GAO also reported the Internal r s uses forms to collect information from citizens to determine taxes owed. See Doc. 260 &262, pg.1 .

20     GAO listed 10 standards Congress imposed on the Secretary of Treasury: they are

   1)  the collection is necessary for the proper performance of agency function:

   2) Collection avoids duplication;

   3) Collection reduces burdens;

   4) Collection uses plain unambiguous language;

   5) Collection is consistent to current practices;

   6) Collection indicates retention periods;

   7) The collection informs the public or respondents of the information they need to exercise scrutiny of agency collection of information;

a)the reasons information is collected;

b) the way it is used;

c) an estimate of the burden;

d) whether the response is voluntary, required to obtain a benefit or mandatory;

e) and a statement that no person is required to respond unless a valid OMB # issued in accordance with the PRA is properly displayed

See Doc. 260 &262 , pg2

21      It is the agency certifying information officer who must insure each form "complies with the act".

22      The agency is also to provide a 60 day notice period to the public in the Federal Registry See Doc. 260 &262 , pg 13 .

23      According to the PRA, the CIO is required to "certify that each proposed collection submitted" meets the Acts 10 standards and "provides support for these certifications." See Doc. 260 &262 pg 14.

24      The report simply speaks for itself the Secretary of the Treasury refused to comply with the public comment requirement. see exhibit 18, pg15 .The PRA requires two notices, the Treasury gave the public none. See Doc. 260 &262 , pg 23 .

25      In regard to burden estimates the Secretary was found to have "ignored important components of the burden". See Doc. 260 &262 , pg 27.

26      The Secretary of the Treasury has equally refused to submit forms for OMB approval. See Doc. 260 &262, pg 30.

27      The Secretary of the Treasury forms "did not cite tax law that requires that the information

28

be collected". See Doc 260 &262, pg 34  .  The Secretary of the Treasury informed GAO that citing the law on it's forms would be impracticable. see Doc. 260 &262  pg34 .

28     "If information collections do not comply with the PRA requirements described, the public may be asked to provide information without public disclosure of the info that would allow the public to exercise scrutiny of agencies collection" See Doc. 260 &262 , pg 34.

29     GAO also directed that "if the collection required to obtain or retain a benefit or mandatory the agency should cite the legal authority therefore as part of the notice to respondent". See Doc. 260 &262, pg 34 "footnote 51"

30     GAO disagreed with OMB and Treasury on compliance and application of the PRA and OMB regulations See Doc. 260 &262 , pg 38.

31     The PRA however requires support for certification that the forms issued by the Secretary of the Treasury comply with the PRA.

32     There are 10 standards and form 1040 us individual income tax return does not comply with any of these standards.

33     Form 1040 for 1990-2007 does not use plain unambiguous language.  Form 1040 does not indicate any "retention period". Form 1040 does not inform the public of the info the public needs to exercise scrutiny.

34     Form 1040 does not give the reasons it is being collected Form 1040 does not give the reason as to how the info is going to be used.  Form 1040 displays no estimate of burden.  Form 1040 displays no statement as to whether the response is voluntary, required to obtain a benefit or mandatory.  Form 1040 does not make any statement that the respondent is not required to respond unless the form 21040 displays a valid OMB # issued in accordance with PRA and OMB regulations.

29

35      GAO, as Springer did, included forms like 1040 must comply with the PRA or as Springer

contended at trial, he cannot be subject to any penalty associated with failing to answer the secretaries

questions that includes filing a form 1040.  Form 1040's for any year including 90-07, that were

proposed to the public by the Secretary of the Treasury did not comply with the PRA and OMB

regulations.

36      26 CFR 601.105 requires the public to use only the forms prescribed by the Secretary of the

Treasury when filing a return.

iv)     **BRIAN SHERN HAD NO AUTHORITY TO PERFORM LAWFUL FUNCTIONS OF DISTRICT DIRECTOR UNDER "LAWS AND REGULATIONS" ADMINISTERED BY THE SECRETARY OF TREASURY**

Agent Shern declared he was a delegate of the Secretary of treasury when he obtain

obtained a search warrant from the court.  Shern knew he had no such delegation of authority

from any authorized delegate of the Secretary of the Treasury. See 26 CFR 301.7701-9 (2005)

and 26 CFR 601.107 (2005) The District Court abused it's discretion when refusing to address

this issue and how it relates to the evidence obtained and used at trial as well as the

jurisdiction of the District Court.

Mr. Shern did not possess an original signed affidavit that was filed purportedly to

obtain the search warrant.  The Clerk's office maintains an unsworn search warrant, which

also was missing page 18.  The District Court ignored this issue without any explanation.

Springer should have received a Franks hearing and the District Court should have suppressed

all evidence in the case by way of the **unlawful** search warrant**.**  Springer is likely to prevail

on this issue and obtain a complete reversal.

## CONCLUSION

Lindsey Kent Springer respectfully requests this Court stay execution of its sentence on April 23, 2010, and order the release of Springer on bond pending appeal based upon having met each of the factors set forth in Title 18, Section 3143(b).


Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

31

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Amended Motion for Stay and Release Pending Appeal was ecf'd on May 3, 2010, to:

And mailed to Oscar Stilley at: David L Moss, 300 N Denver, Tulsa,OK 74103
Inmate#1189798

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

/s/ Lindsey K. Springer
Signature

32