United States District Court
Northern District of Oklahoma

**FILED**

JUL 13 2010

**Phil Lombardi, Clerk**
**U.S. DISTRICT COURT**

United States Of
America

v.

Lindsey Kent Springer,
and Oscar Amos Stilley

09-CR-043

Memorandum in support of
Motion For Writ of Error
Coram Nobis.

Lindsey Kent Springer ("Springer")
File this memorandum in support of
his motion for writ of Error Coram
Nobis filed Simultaneously herewith.

## I. Factual Background

(1) On March 10, 2009, Springer and
Stilley were indicted by a Grand Jury
Containing Six Counts. Count One
alleged violation of defrauding the
Secretary of the Treasury in the State of
Oklahoma in violation of Title 18, § 371.
This count pertained to both Stilley an
Springer. Count Two, Three, an Four
allege violation of title 26 Section 7201 in
the assessment of income taxes owed
by Springer. Count Two is only against
Springer. Count Three an Four are against
Springer with Stilley violating Title 18 § 2
aiding and abetting Springer, Count

(-1.)

(OVER)

✓ Mail      ___No Cert Svc      ___No Orig Sign
___C/J      ___C/MJ      ___C/Ret'd      ___No Env
___No Cpys   ✓ No Env/Cpys   ___O/J   ___O/MJ

Five an Six allege Springer viotated Title 26 §§ 7203.

(2.) On March 18, 2009, Springer and Stilley were purportedly arraigned before U.S. Magistrate Cleary.

(3) Prior to arraignment US District Judge James Payne recued for conflict,

(4) No other Trial Judge was assigned.

(5.) On March 18, 2009 Magistrate Cleary directed Springer Meet with Randall Drew, the probation Officer assigned to Springer and Stilley.

(6) Springer met with MR. Drew in U.s. District Judge Ellisons former office.

(7.) Springer proceeded to the Courtroom where numerous attorneys were arguing about who was to represent Springer And Stilley.

(8) Springer was told none of the attorneys Wished to speak with him, (Mr. Weber for Example) Within 20 minutes Robert Williams shows up and Springer meets him for about 3 minutes.

(9.) Springer is then purportedly arrained after filing a Bill of Particulars and Motion.     (-2-)     (Next)

and asked if he wishes to waive his right to be arrained with being represented by Counsel, Springer waived

(10) Springer is purportedly arraigned along with Stilley.

(11) On March 31, 2009, chief Judge Claire V. Eagan designated and assigns Judge Stephen P. Friot from the United States Western Judicial District by docket entry minute order.

(12) Judge Friot ordered a scheduling conference on April 22, 2009.

(13) On April 22, 2009, Springer and Stilley appeared before Judge Friot and were told Judge Friot had some issues under "Faretta" he wished to discuss. A very short exchange took place resulting in Judge Friot finding a voluntary waiver of Springer's Sixth Amendment Right to be advised by Counsel in his defense.

(14) Stilley has a law degree and Springers formal education is graduating from High School

(15) Throughout Pretrial and Trial Springer made numerous mistakes regaurding procedure, applying local civil rules not complying

(-3-)

with Toughy Regulations regarding
witnesses like Donna Meadors, and
at trial, Such as asking questions,
Cross Examining the witnesses, calling
witnesses relevant, testifying as a
witness, and Knowing what was and
was not fair game. Knowing Jury
instructions prior to trail, filing
instructions out of time, the courts
definition of gift, that the court
had Found the Form 1040 did not violate
the PRA, the Requirement to file in the law
was in a Judicial District and not in an
Internal Revenue District, are just a few
of the Examples. Where Springer was
unaware of the dangers and to disadvantages
of being pro-se in a Criminal Traal.

(16) Sentencing was even more difficult as
Springer was having to object to the
Courts Probation Officer Report, the
Governments Seeking 20 years as oppose
to the Probations 8 yrs. it's objections, and
Speingers limited Understanding of the Post
Booker Application to the Sentencing procedure

(17) Springer told the Court on April 23, 2010
Preparing to dispute facts by a
preponderance of the evidence
was not the most difficult area
Springer

(-4-)

had encountered in the trial process. By far that was not the only difficulty Springer experienced.

(18) Being a witness and pro-se in a criminal trial is absolutely a hazard to any litigant if not a nightmare.

(19) On April 22, 2009 and on July 1, 2009, Stand by Robert Williams informed Springer he was selected by Chief Judge Eagan to be Springer's Stand by Counsel. This revelation did not set well with Springer because of previous encounters Springer had with Chief Judge Eagan. Springer had filed a Judicial Complaint in 2006 with the Tenth Circuit against Claire V. Eagan as well as receiving a judicial opinion adverse to Springer's claims of injunction under the PRA which was rejected.

(20) Robert Burton informed Springer he to was selected by Chief Judge Claire V. Eagan to be Stilley's Stand by Counsel on April 22, 2009.

(21) Williams informed Springer his appointment was to serve the Court and not Springer.

(22) The District Court's denial of all of Springer's pretrial motions to dismiss with one word denials, Springer's post trial denied motions, and his continuation of the sentencing hearing, which was denied, shows Springer was not aware of the dangers and disadvantages of self representation.

(23) Springer had never represented himself at any Trial, civil or criminal.

(24) There is no doubt the outcome would have been different had Springer's Sixth Amendment Right been penetrated and comprehensively examined.

II                    Jurisdiction

(25)
     This Court has jurisdiction to "correct errors of the most fundamental character," U.S. v. Dawes, 895 F.2d 1581, 1582 (10th Cir. 1990); citing U.S. v. Morgan, 346 U.S. 502, 512, 98 L.Ed. 248, 74 S.Ct. 247 (1954); Quoting U.S. v. Mayer, 235 U.S. 55, 69, 59 L.Ed. 129, 35 S.Ct 16 (1912). Morgan held the District Court had power under the All Writs Act, 28 U.S.C. § 1651(a) "to issue a writ of error coram nobis to vacate a conviction on the grounds that the

The defendant had been deprived
of Counsel without his Knowing waiver of
his Constitutional right to Counsel." <u>Dawes</u>, 895
F. 2d 1582

<u>III</u> Springer never Knowingly and Intellegently
WAived his Sixth Amendment Right to
Counsel before the Trial Judge Voluntarely.

(26) The "right to Counsel is fundamental to
insuring the very integrity of the fact
finding process." <u>Dawes</u> 895 F. 2d 1582.
Prior to Dawes, the Tenth Circuit held that
the failure of the District Court to
advise defendants of the danger of
proceeding to trial Pro-se was harmless
error beyond a reasonable doubt." <u>US V Dawes</u>
874 F. 2d 746, 749 (10th Cir. 1989) In <u>U.S.</u>
<u>V. Allen</u>, 895 F. 2d 1577 (10th Cir. 199)
Dawes was reconsidered in Light of
a factually Similar case in <u>Penson V.</u>
<u>OHIO</u>, 488 U.S 75, 109 S.CT 346, 102 L.
Ed. 2d 300 (1988)

(27) In Penson the Supreme Court refused
to apply harmless error analysis to a
Petitioner left without Appellate
representation 109 S.CT at 354 In <u>V.SV. Allen</u>,
895 F. 2d at 1580, the tenth Circuit held
the "Penson" holding precludes Application
of harmless error analysis to waiver of

Counsel cases." The Supreme Court
has held that the writ of error
Coram nobis is available to correct
errors of the most fundamental
character." Dawes, Supra The
waiver of the fundamental Constitutional
guarantee must be Voluntary, known and
Intellegent." Id

(28) In U.S.V. Padilla, 819 F.2d 952
(10th Cir. 1987) the tenth Circuit held
that Faretta requires two separate
examinations. First, did the defendant
Voluntarily choose Self-Representation.
The central Question is whether the
defendant knew of his right to competent
Counsel, A "choice between incompetent or
unprepared counsel and appearing pro-se
is a dilemma of constitutional magnitude,"
Padilla, 819 F2d at 955. The choice
cannot be Voluntary in the Constitutional Sense
when such a dilemma Exists, See
Sanchez V Mondragon dilemma Ex
858 F.2d 1462, 1465 (10th Cir. 1988).

29. Second the trial Court must
determine whether the defendant
knowingly and intelligently waived his
right to counsel. Id." The Trial Judge
Should conduct an inquiry sufficient to
Establish a defendants knowledge and
understanding of the factors" relevant
(-8-)

to his decision to waive counsel.
Sanchez at 1465; Quoting Padilla,
819 F. 2d at 959.

(A) To determine Voluntary

(30) In order to determine that a
defendant voluntarily chose to represent
himself, the Trial Court Must find that
he does not have "good cause" warranting
a substitution of counsel. Sanchez, 858
F. 2d 1466 Indeed, before allowing a
defendant to proceed pro-se, the
District Court must ensure and establish
on the record that defendant "knows
what he is doing and [that] his choice
is made with eyes open." Faretta v.
California, 422 U.S. 806, 835, 45 L.Ed.
2d 562, 95 S. CT 2525 (Quoting Adams
v. U.S. ex rel. McCann, 317 U.S. 269, 279,
87 L. Ed 268, 63 S. CT 236 (1942).

(31) "Faretta requires a showing on
the record that the defendant who
elects to conduct his own defense had
some sense of the magnitude of the
undertaking and the hazards inherent
in self-representation when he made
the election. The task of ensuring that
defendant possesses the requisite
understanding initially falls on the
Trial Judge who must bear in mind
the strong presumption against waiver.

(-9-)

Von Moltke v. Gillies, 332 U.S. 708, 723,
68, S. CT 316, 323, 92 L Ed. 309 (1948)

(32)  "To be valid such waiver __must__
be made with an apprehension of
the nature of the charge, the statutory
offenses, including with them the
range of punishments there under,
possible defenses to the __charges and__
circumstances in mitigation there of.
A Judge can __make certain__ that an
accuseds professed waiver of Counsel
is "understandingly and wisely made
__only__ from penetrating and comprehensive
examination of all the circumstances
under which such plea is tendered,"
Von Moltke, 332 U.S. at 723-24, 68 S.
CT at 323, See also Allen at 1578.
The factors articulated __must__ be conveyed
to the defendant by the Trial Judge
and must appear on the record so
that our review may be conducted
without speculation," Padilla, at
956-57; Allen, supra "The inquiry
__mandated__ by Padilla must occur
at a pre-trial hearing so that if
the defendant decides not to waive
his right to Counsel, he will have a
meaningful opportunity to exercise
it," Allen supra.

          (B) To knowingly ad Intelligently

                    (-10-)

(33) · When "an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." Faretta, 422 U.S. at 835. For this reason in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits." Id. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish, that "he knows what he is doing and his choice is made with eyes open." Id. Although "no precise litany is prescribed", the court should question the defendant ... without such an inquiry on the record, a determination that the defendant made his choice with eyes open cannot be made by a reviewing court without speculation. Padilla, 819 F.2d 959. Although the Trial Judge in Sanchez did more than Padilla, the inquiry was none the less insufficient. Sanchez at 1469. The District court "must" bear in mind the strong presumption against waiver." Padilla, at 956. Although Padilla "was experienced" with the criminal justice system and was aware of most, if not

all of the information that the Court
was required to provide" the "Trial
Court did not fulfill its obligation
to ensure the defendant was fully
aware of all the requisite information."
Padilla, 819 F.2d at 958-59. The
evidence of Defendants knowledge
of relevant considerations must be
in the record. Sanchez, 1467; Quoting
U.S. Gipson 693 F.2d 109, 112 (10th 1982)

(2) Trial Judge did not ensure
Springer was fully aware
of requisite information

(34)   The hearing Before the Magistrate
on March 18, 2009 was not before the
Trial Judge. The only Trial Judge
recused before that hearing. Although
Stilley had conducted several criminal
trials from start to finish, Springer
was not an attorney and not schooled
in how to represent himself in a Federal
Criminal Trial to which he would testify.

(35)   The Trial Judge did warn
Springer he would be treated no
different than an attorney and that
Springer voluntarily chose to represent
himself but that was the extent of
the warning. No in depth analysis
was conducted by the Trial Judge.

(36) The Trial Judge never informed Springer of (1) the dangers of self representation; (2) Springer was never informed of the specific dangers of proceeding without counsel. The entire manner in which counsel was to standby demonstrates even standby counsel was unaware of Springer's Sixth Amendment Right to counsel. Springer asked standby how many complicated or uncomplicated tax cases had he tried to which Williams said none.

(37) On March 18, 2009 the scene was more of confusion with attorneys standing by outside Magistrate Cleary's Court Room each telling Probation officer Drew they would not represent Springer.

(38) The entire test <u>must</u> be satisfied by the April 22, 2009 hearing record. At this hearing the Trial Judge did not ask if Springer "knew what he is doing." The trial Judge did not "ensure knowledge of certain factors." No "expression" of any specific hazards of self representation was made that Springer remembers.

(39) the Trial Judge did not make

(-13-)

the "apprehension of the nature of the charges." No "discussion" regarding any of the counts was "penetrated or comprehensive" examination. There was no "range" of Punishment other than the Maximum, if added together was 22 years and the Tax Division told Springer and Stilley were looking at up to 10 years under the guidlines. There was no discussion about the "possible defenses" to each of the six counts or "circumstances in mitigation.

(40)  The Trial Judge was required to convey each of these "factors" on the record at a pre-trial hearing. The trial Judge should have questioned the defendant Springer to which no such penetrating took place on the record (with or without the Tax Division).

IV  Springer (and Stilley) were arraigned before Magistrate Cleary on March 18, 2009 and not before any Trial Judge.

(41)  The preliminary examination from the arraignment of the defendant "is a critical stage of the Criminal proceeding against the defendant." Pearce v. Cox, 354 F.2d 884, 890 (10th cir. 1965) "It is not necessary for

(—14—)

an indigent defendant to request the appointment of Counsel in order to preserve his right to counsel." Id.) seealso Rice v. Olson, 324 U.S 786, 788 789, 65 S.Ct 989, 89 L.Ed 1367. Unless "the right to be represented by counsel at a preliminary hearing competently, intelligently and voluntarily waived, the fact the defendant was not represented at the preliminary examination "uitiates the hearing." 354 F.2d 891. Oklahoma law recognizes that the right to counsel under the sixth Amendment attaches at arraignment. See Miller v. State 2001 OK CR 17, 29 P.3d 1077, 1080 (okla Crim. App. 2001) The Sixth Amendment means the same thing whether in state court or U.S. court. See Duncan v. Louisiana, 391 U.S. 145, 150, 88 S.Ct 1444, 20 L.Ed 2d 491 (1968). The writ of error coram nobis is used to correct misgarrage of Justice. Title 28, § 2255 "is not a bar to issuance of a writ of error coram nobis." Dawes, 895 F.2d 1582. Section 2255 is an "inadequate remedy in these circumstances."

## II    Discovery of Error.

(42) springer discovered the Constitutional error while assisting his pro bono Appellate

(-15-)

Counsel in determining which issues to pursue on Appeal. Springer raised 34 issues on Appeal. Springer raised 34 issues in his docketing statement. The Tax Division had moved to have Springer's Appellate Attorney removed for conflict of interest. While Springer was reviewing Tenth Circuit cases regarding Sixth Amendment Right to Appellate Counsel, as a right, see Penso and Dawes and Allen, supra, Springer discovered the Sixth Amendment violations. Springer is unable to raise any issue related to the denial of his Sixth Amendment Right to counsel in his direct appeal because such error was not noticed until after Judgement,

## A. Due Diligence

(43) Springer raises the Sixth Amendment Constitutional error only 2 months after the conviction and Judgement was entered. Springer's challenge is timely under Dawes and Allen.

(44) The issue here is short. The trial Judge was required to conduct the penetrating examination of Springer, See Padilla. Examination could not have been done on 3.18.09, because no trial Judge was of record until 3.31.09, Springer and Stilley were not arraigned on April 22, 2009 with any comprehensive waiver or at

(-16-)

any other time before or after April 22, 2009
with Sixth Amendment Right being properly
waived, No arraignment was done after the
trail Court conducted its enquiry however
limited it was on April 22, 2009.

## Conclusion

Lindsey Kent Springer request a writ
of error Coram Nobis Finding Springer was
convicted And judgement entered in 09-CR-043
based upon Springer being deprived of Counsel
in violation of the Sixth Amendment and
without a voluntary, known, and intelligent
waiver on the record being made, at anytime
before the trial record or Court.

7-9-10
_____
Date

Respectfully Submitted
_____
5147 S Holvard # 116
Tulsa, Okla 74135

No Phone
No Email
use same as previously

-17-