1

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF OKLAHOMA

3

4    UNITED STATES OF AMERICA,

5            Plaintiff,

6    vs.                          Case No. CR-09-43-SPF

7    LINDSEY KENT SPRINGER and
     OSCAR AMOS STILLEY,

8            Defendants.

9    _____

10

11

12

13

14

15        TRANSCRIPT OF DIGITALLY RECORDED HEARING

16        BEFORE THE HONORABLE PAUL CLEARY

17        UNITED STATES MAGISTRATE JUDGE

18        MARCH 30, 2009

19

20

21

22

23

24

25

```
 1   APPEARANCES:

 2   FOR THE GOVERNMENT:

 3                        Kenneth P. Snoke
                          US Attorneys Office (Tulsa)
 4                        110 W. 7th Street, Ste. 300
                          Tulsa, OK 74119
 5

 6   FOR DEFENDANT SPRINGER:
 7                        Lindsey Kent Springer
                          5147 S. Harvard Ave.
 8                        Ste. 116
                          Tulsa, OK 74135
 9

10   FOR DEFENDANT STILLEY:
                          Oscar Amos Stilley
11                        7103 Race Track Loop
                          Ft. Smith, AR 72901
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE CLERK:  On Case Number 09-CR-43-CLK, USA v.

 2    Lindsey Kent Springer and Oscar Amos Stilley.  Please state

 3    your appearances.

 4              MR. SNOKE:  Kenneth Snoke on behalf of the United

 5    States, Your Honor.

 6              THE COURT:  Mr. Snoke.

 7              MR. SPRINGER:  Lindsey Springer, limited appearance,

 8    Your Honor.

 9              THE COURT:  All right.

10              MR. STILLEY:  Oscar Stilley, limited and special

11    appearance.

12              THE COURT:  Okay.  All right.  Mr. Springer,

13    Mr. Stilley, can I get you folks to step up to the podium

14    because I'm going to need to talk to you both a bit here.  When

15    we had you in before on your initial appearance and

16    arraignment, I had counsel appointed for you just for that

17    hearing, just to make sure that your rights were protected and

18    we moved along here.  And, originally, I had scheduled this,

19    that you were going to file something to let me know how you

20    were going to proceed, if you were going retain counsel, ask

21    the Court to appoint counsel, or go pro se.  So it seemed to me

22    that it would be easier just to bring everybody in and we'll

23    get this done, I hope, rather quickly.

24         And then I also want to know when everybody is going to be

25    ready for trial, what kind of a trial date you're looking for,
```

1    whether it's something that you think you can be ready for

2    within three or four months or whether it's something that you

3    might want to wait until the fall, be ready then, so -- all

4    right.

5        Let me start off here advising both the defendants, as you

6    know, you have a constitutional right to representation of

7    counsel in this matter.  You can hire your own attorney to

8    represent you and you would have to pay that attorney with your

9    own money.  If you're financially unable to afford counsel,

10   counsel will be appointed for you.  To qualify for appointed

11   counsel, you'll have to satisfy the Court that you're

12   financially unable to obtain counsel.  That is, that you do not

13   have sufficient income, property, or other resources to go out

14   and hire your own private attorney.

15       Any statement that you are financially unable to hire

16   counsel would have to be made under oath.  Normally, we do that

17   with a financial affidavit that you fill out that indicates to

18   me your income and what expenses you have, et cetera.  It also

19   can be done in open court if we administer an oath to you and

20   you swear to tell the truth and then advise me that you don't

21   have resources to hire private counsel.  In either case,

22   whether it's on the affidavit or in open court, your statements

23   must be truthful or you could be subject to a subsequent

24   prosecution for perjury.

25       You also have a constitutional right to represent

1  yourself.  You can refuse counsel and represent yourself.  For

2  a host of reasons, I strongly urge you not to go down that

3  path.  The charges against you are serious.  If you're

4  convicted, you could face significant prison time and fines.

5  Criminal sentences could be imposed consecutively, for

6  example.  A five-year sentence for failure to file a tax return

7  and a five-year sentence for one of the other counts, if

8  they're served consecutively, would be a total of ten years.

9      I think -- and correct me, Mr. Snoke, on this other -- I

10 think each of these charges is up to five years; isn't that

11 right?  The conspiracy, the three tax evasion, and the two

12 failures to file?

13          MR. SNOKE:  The failure-to-file charges are

14 misdemeanors, Your Honor, one-year --

15          THE COURT:  Well, they alleged in the indictment they

16 were willful, so I thought maybe that was --

17          MR. SNOKE:  No, it's -- they're still misdemeanors.

18          THE COURT:  Okay.  All right.  Well, in that case,

19 those are one-year sentences.

20          MR. SNOKE:  Conspiracy is five years.  The 7201 is a

21 five-year --

22          THE COURT:  Okay.  All right.  So in that case,

23 Mr. Springer, I think you would be looking at about 22 years,

24 potentially.  Five on the conspiracy; the three tax evasions,

25 five each; there's 20; and a year each on the failures to fail.

1     And, Mr. Stilley, you would be looking at 15.  Five on the

2 conspiracy and potentially up to five each on the evasion

3 charges.  Just so you'll know.

4     And I think the biggest fine is on the tax evasion is up

5 to $100,000 on those.  So you're also looking at some

6 significant -- potentially some very significant fines.  So I

7 want you to understand all of that.  And given the situation

8 and the problems that one unskilled in the law faces -- and I

9 recognize, Mr. Stilley, that you have a law degree, but you've

10 lost your license, at least in Arkansas, so I'm going to treat

11 you the same as Mr. Springer here for purposes of this specific

12 issue.  Given this situation, I urge both of you either to hire

13 private counsel or provide me with sufficient evidence that

14 you're financially unable to do so and let the Court appoint

15 counsel for you.

16     Now, having said all of that, let me ask you first, have

17 either of you retained private counsel in this case?

18 Mr. Springer?

19          MR. SPRINGER:  No, Your Honor, I have not.

20          THE COURT:  Okay.  And, Mr. Stilley?

21          MR. STILLEY:  No, Your Honor.

22          THE COURT:  All right.  Do either of you have plans

23 to do so?  Mr. Springer?

24          MR. SPRINGER:  Your Honor, at this point, if I answer

25 any of these questions right now, can these wind up being used

1  in the trial against me?  Because part of the charges that are

2  in the indictment are that somehow I was offering services --

3  legal services and so I'm concerned at this point, one, is that

4  anything that I say here could be used against me in a court

5  and, second of all, that the government is here and we're on

6  the record.

7          THE COURT:  Right.

8          MR. SPRINGER:  I did file two -- a motion and a

9  memorandum asking to go in camera on the 18th dealing with the

10 Fifth Amendment.

11         THE COURT:  Uh-huh.

12         MR. SPRINGER:  That has obviously not been assigned

13 yet because we don't have a judge assigned to it.

14         THE COURT:  Right.  Right.

15         MR. SPRINGER:  So I'm concerned at this point about

16 anything I say.  And this is one of the problems we ran into

17 with the affidavit.

18         THE COURT:  Okay.

19         MR. SPRINGER:  Because it's asking for financial

20 information that even trying to consider giving up the Fifth

21 Amendment to keep the Sixth Amendment --

22         THE COURT:  Uh-huh.

23         MR. SPRINGER:  -- or 28 USC 1654, which is the

24 statutory right at issue --

25         THE COURT:  Well, Mr. Springer, all I -- at some

1  point here, and this is the point, you have to tell the Court,

2  do you want the Court to try and appoint counsel for you or are

3  you going to hire counsel or do you want to go pro se?

4          MR. SPRINGER:  I am going to represent myself, Your

5  Honor, pro se.

6          THE COURT:  All right.  And, Mr. Stilley, what is

7  your view on that?  Are you going to hire private counsel, ask

8  the Court for counsel, or represent yourself?

9          MR. STILLEY:  Your Honor, I've made inquiry of

10  counsel experienced in this field and, honestly, I think that I

11  would be just crippled in getting a proper quote from any firm

12  without first knowing what the proposed tax deficiency by the

13  government is.  Because, as we all know, that's what drives the

14  sentence in a case such as this.  And also the -- I would need

15  the particulars to know specifically what the charges are.

16      Counsel experienced in this type of case want to know

17  those details.  And, surely, I would think that we would be

18  able to get that within a reasonable time.  And I think it

19  would be fair before I make a decision about this topic to

20  announce to the Court that I at least have a determination from

21  the Court and the ability to represent to attorneys about what

22  information we have concerning the charge.

23          THE COURT:  Well, what you have is an indictment.

24  And that's the information that you have, Mr. Stilley.  And

25  you're going to have to make your decision based on that.

1          MR. STILLEY:  Well, if I knew that the government

2    would not be allowed to rely upon any allegations except those

3    specifically stated in the indictment for the purposes of

4    seeking a conviction or driving a sentence, then I would be

5    prepared to make my decision on counsel.  Is that what the

6    Court is representing to me?

7          THE COURT:  What I'm telling you is that the

8    indictment says what the indictment says.  Now, this is no

9    different than any other criminal case.  I mean, you know what

10   the charges are.  There's a conspiracy charge to defraud the

11   government and you're charged in addition with Mr. Springer on

12   two charges of tax evasion, aiding him and working with him in

13   tax evasion.  Those are the charges.

14        You can either -- as I say, you can either hire private

15   counsel -- if you have the resources to do it, then that

16   certainly is a path that's open to you.  If you don't have the

17   resources and you want counsel, you just need to sign the

18   affidavit or represent to me under oath that you don't have the

19   resources to hire private counsel and then we can look into

20   appointing someone for you.  But you've got to make that

21   decision now based on the information.  There's -- you know,

22   you have the indictment in front of you.  You have had it for

23   some time and you've had an opportunity to make this decision.

24   So it's -- it is decision time.

25        MR. STILLEY:  Okay.  Do I understand correctly, then,

```
 1   that the government will not be allowed to go outside the
 2   indictment?
 3              THE COURT:  I'm not making any representations about
 4   that, Mr. Stilley.  There could be amendments to the
 5   indictment.  There could be changes here.  I'm telling you that
 6   you have an indictment and you need to rely on that in making
 7   your decision on whether (unintelligible).  The decision really
 8   is, do you want counsel appointed for you and are you without
 9   the means to hire private counsel?  And if that's the case,
10   then we'll go down that road.
11              MR. STILLEY:  Well, certainly, I've got the same
12   problems, the Fifth Amendment issues that Mr. Springer has
13   addressed.  I don't think it's necessary for me to trouble the
14   record with restating those.
15              THE COURT:  Uh-huh.
16              MR. STILLEY:  But at this point in time, I just don't
17   feel that I have enough information or commitment from the
18   government in order to make such an important decision.  And I
19   think that I will have sufficient information within a
20   reasonably short period of time, after we get rulings on the
21   motions for bill of particulars.  I've got a motion for bill of
22   particulars that should be filed sometime today.
23              THE COURT:  Well, let me ask you this, Mr. Stilley:
24   You have not retained private counsel, correct?
25              MR. STILLEY:  Correct.
```

1          THE COURT:  And you haven't submitted an affidavit or

2  asked the Court to appoint counsel for you?

3          MR. STILLEY:  No.

4          THE COURT:  That leaves option three.  So at this

5  point, I guess at least, you're going to -- your plan is to

6  represent yourself, at least until something changes, then

7  you'll make your decision at that time.

8          MR. STILLEY:  I don't think I have any other option.

9          THE COURT:  All right.  All right.  Let me ask you,

10  then, let me start with Mr. Springer, because I want to make

11  sure that we understand what's going on here if you get on the

12  path towards representing yourself.

13          MR. SPRINGER:  Certainly.

14          THE COURT:  Mr. Springer, first off, you're not under

15  the influence of any medication or anything that would make it

16  impossible for you to answer my questions correctly here today,

17  are you?

18          MR. SPRINGER:  No, I am not, Your Honor.

19          THE COURT:  Okay.  Have you ever studied law?  That

20  is -- and by that I mean have you attended a law school?

21          MR. SPRINGER:  Your Honor, this is where the Fifth

22  Amendment and the Sixth Amendment really run into a clash right

23  now because of what I said earlier, because part of this case

24  and part of the charges in this case are that I was providing

25  legal services instead of receiving gifts.

1          THE COURT:  Uh-huh.

2          MR. SPRINGER:  And so I would rather not answer that

3    question on the grounds that it may incriminate me.

4          THE COURT:  Okay.  All right.  Have you ever

5    represented yourself in a criminal matter?

6          MR. SPRINGER:  No.

7          THE COURT:  Okay.  You understand that you're charged

8    with the following crimes:  conspiracy to defraud the

9    government, one count; tax evasion, three counts; and failure

10   to file a tax return, two counts.  Do you understand that?

11         MR. SPRINGER:  Word for word, Your Honor.

12         THE COURT:  And you understand that if you're found

13   guilty, the Court can impose a $100 special assessment for each

14   charge, each felony charge, sentence you to prison on the first

15   two -- on the conspiracy count and the tax evasion counts, up

16   to five years on each of those, up to one year on the two

17   failures to file, since they'll be misdemeanors, as I

18   understand it.  They could also assess substantial fines

19   against you and direct you to pay restitution.  Do you

20   understand all that?

21         MR. SPRINGER:  Yes, sir, I do.  I believe I

22   understand.

23         THE COURT:  Okay.  And you understand that if you

24   were convicted, the Court could, as I mentioned before, either

25   order your sentences served concurrently, meaning all at once,

1  or consecutively, that is one after another.  So that would

2  make a big difference.  But you understand that?

3          MR. SPRINGER:  Yes, sir, I do.

4          THE COURT:  And do you understand that there are

5  advisory sentencing guidelines that might have an effect on

6  your sentences if you're found guilty?

7          MR. SPRINGER:  I'll have to claim the Fifth Amendment

8  on that one, Your Honor.

9          THE COURT:  Okay.  You understand that if you

10 represent yourself, you're on your own.  The Court can't tell

11 you or advise you how to try the case.  You understand that?

12         MR. SPRINGER:  Yes, I understand that.

13         THE COURT:  Okay.  Are you familiar with the Federal

14 Rules of Evidence?

15         MR. SPRINGER:  I'll have to claim the Fifth Amendment

16 on that.

17         THE COURT:  Okay.  The rules of evidence govern what

18 evidence may or may not be introduced at trial and you'll have

19 to abide by those technical rules if you represent yourself.

20 They will not be relaxed for your benefit.  Do you understand

21 that?

22         MR. SPRINGER:  (no response)

23         THE COURT:  In other words, you'll be playing by the

24 same rules of evidence that the government has to play with.

25 There won't be any --

1          MR. SPRINGER:  My understanding is all the rules will

2     be fair on both sides and that all the rules will -- is what

3     the Court will govern the case by.

4          THE COURT:  Right.  But there's not --

5          MR. SPRINGER:  And, yes, generally, I understand

6     that.  But, specifically, I can't -- my Fifth Amendment is

7     going to keep popping up if I --

8          THE COURT:  All right.  But I just want to make sure

9     you understand that just because you go ahead and represent

10    yourself and -- that the Court is not going to change the rules

11    for you because of that.

12         MR. SPRINGER:  It has been my experience in other

13    times in watching other cases, yes, Your Honor, that that's the

14    truth.

15         THE COURT:  Okay.  Are you familiar with the Federal

16    Rules of Criminal Procedure?

17         MR. SPRINGER:  I have to claim the Fifth Amendment on

18    that, but I would say that I have a copy of it.

19         THE COURT:  Okay.  And, again, you understand that

20    those rules govern the way a criminal action is tried in this

21    Court and you'll be bound by those rules and they will not be

22    relaxed for your benefit?

23         MR. SPRINGER:  Only in a general sense, yes, I

24    understand that.

25         THE COURT:  Okay.  I want to advise you that, in my

 1   opinion, a trained lawyer would defend you far better than you

 2   can defend yourself.  And I think it's very unwise of you to

 3   try to represent yourself.  You don't -- you seem to have some

 4   familiarity with the law, but not a great deal.  I'm not sure

 5   that you're very familiar with court procedure or with the

 6   rules of evidence and I would strongly urge you not to try to

 7   represent yourself.

 8        Now, in light of the penalty that you might suffer, or

 9   penalties, if you're found guilty, and in light of all the

10   difficulties of representing yourself, do you still want to

11   represent yourself and give up your right to be represented by

12   an attorney?

13             MR. SPRINGER:  I -- I don't want to give up any

14   rights.  Okay?

15             THE COURT:  Uh-huh.

16             MR. SPRINGER:  But at this time, the only option that

17   I believe that I have that is to my best interest is to

18   represent myself.  That could change.  I did spend five minutes

19   with the standby lawyer that you asked me to speak with and

20   there were some questions about how he would operate as standby

21   counsel, which I would need to know the function of that, what

22   length the Criminal Justice Act funds are available with the

23   standby counsel.  Those are things which are -- he had no

24   answer to that.

25             THE COURT:  Okay.  And was that Mr. Webber?

```
 1                MR. SPRINGER:  No.

 2                THE COURT:  Mr. Williams?

 3                MR. SPRINGER:  Yes.

 4                THE COURT:  Okay.  Mr. Williams, all right.

 5                MR. SPRINGER:  My understanding is I came out of that

 6    meeting was that he was going to be my standby counsel until

 7    further notice of the Court.  And then when we were standing

 8    here, you informed him that he was not, except for that moment,

 9    so --

10                THE COURT:  Well, we may get to that -- revisit that

11    issue.

12                MR. SPRINGER:  Okay.

13                THE COURT:  But is your decision here today entirely

14    voluntary, your decision?

15                MR. SPRINGER:  Yes, sir.

16                THE COURT:  Okay.  All right.  Based on what you've

17    said, Mr. Springer, I'm going to find that you have knowingly

18    and voluntarily waived the right to counsel and I will allow

19    you to represent yourself.  However, I do think that it's in

20    the Court's interest to appoint standby counsel.  And if

21    Mr. Williams can fulfill that role, then I would intend that he

22    stay on as standby counsel.

23         Now, standby counsel is not your attorney.  He's really

24    there to serve exclusively on behalf of the Court to protect

25    the integrity and continuity of the proceedings.  And what I
```

1  mean by that is he's sort of a safety net to ensure that you

2  receive a fair trial, and you can consult with him as you wish,

3  but he's also there to allow the trial to proceed without the

4  undue delays that are likely to arise if a defendant represents

5  himself.  So it would be my intention to appoint Mr. Williams

6  as a standby counsel for you if you're going to go ahead and

7  represent yourself pro se.

8          MR. SPRINGER:  And I would only add one thing to your

9  statement that you find I waive my right.

10         THE COURT:  Uh-huh.

11         MR. SPRINGER:  That that is a contingent waiver based

12  upon circumstances that come in the near future, such as

13  answers to a bill of particulars and things of that nature.  At

14  this time, I agree with you, from this moment forward, I'm

15  representing myself and have, you know, chosen to do that.

16         THE COURT:  Right.  And if the -- Mr. Snoke, do you

17  wish to add anything?

18         MR. SNOKE:  Your Honor, I didn't want to interrupt

19  him.  Go ahead.

20         MR. SPRINGER:  Oh, no, go ahead.

21         MR. SNOKE:  I was just going to say, Your Honor, from

22  the government's perspective, we would urge the Court to follow

23  the rules that you've been talking about here as far as

24  appointing standby counsel.  We think that (unintelligible)

25  appointing standby counsel under the CJA, we still need some

1    sort of financial --

2          THE COURT:  No, I disagree.  I disagree with you,

3    Mr. Snoke, in that regard, because they won't be paid out of

4    CJA.  It won't be an appointment under CJA.  The standby

5    counsel -- and believe me, I've spent some time trying to sort

6    this out, but the standby counsel here is -- will be paid under

7    a separate fund.  They're paid out of separate funds.  And they

8    will serve as sort of a consultant and expert for the benefit

9    of the defendant, but really for the benefit of the Court to

10   make sure that we don't get into a situation where there's a

11   breakdown.

12       Say that Mr. Springer realizes at some point I can't do

13   this and I need counsel or the Court decides on its own that

14   because of the way the delays that may be coming along that

15   it's in the Court's best interest to have someone take on a

16   more active role, at least as standby counsel, then that's

17   their function.  Under that, the Court has inherent authority

18   without getting into the whole financial affidavit and

19   financial wherewithal issue to appoint standby counsel for its

20   benefit.

21          MR. SPRINGER:  And I would just also say --

22          MR. SNOKE:  (unintelligible)

23          MR. SPRINGER:  I would also say that on my reference

24   to CJA has to do with reading the implementation plan that the

25   clerk's office maintains.

```
 1              THE COURT:  Right.
 2              MR. SPRINGER:  On how even though I don't have an
 3   attorney, I may be allowed to activate certain reserve funds
 4   for that purpose.  But one of the issues that we're going to
 5   take up with the district court when a judge is assigned is
 6   that that affidavit does put us into -- at least from my
 7   perspective, puts me into a position where I'm having to
 8   surrender one right over another and I would like the Court to
 9   address that, so --
10              THE COURT:  Okay.  All right.  Let me ask Mr. Stilley
11   to step up here.  And, Mr. Stilley, I'm going to ask you
12   essentially the same questions.  You know, now, you have
13   studied law, correct?
14              MR. STILLEY:  Yes.
15              THE COURT:  And where was that?  Arkansas?
16              MR. STILLEY:  University of Arkansas at Fayetteville
17   School of Law.
18              THE COURT:  Okay.  Have you ever represented yourself
19   in a criminal matter?
20              MR. STILLEY:  Speeding ticket.
21              THE COURT:  Okay.  And you understand that you're
22   charged with the following crimes:  conspiracy to defraud the
23   government and two counts of tax evasion.  You understand that?
24              MR. STILLEY:  Just the -- the bare thing that you
25   stated and it was with respect to the previous answer, lest
```

1    anybody think that I misstated something, I was also charged

2    with contempt and -- criminal contempt in Arkansas.  Actually,

3    I was charged with contempt on two occasions and represented

4    myself on both of those occasions.

5            THE COURT:  Okay.  Now, your license in Arkansas has

6    been suspended; is that correct?

7            MR. STILLEY:  It has been suspended pending

8    disbarment.  The disbarment trial was held in December.  We

9    finished briefing on the -- I think the 27th of this month.

10   And we expect a decision -- or it's -- it will be in the nature

11   of a report and recommendation probably within a month.

12           THE COURT:  Okay.  You're not licensed in any other

13   state -- licensed to practice law in any other state?

14           MR. STILLEY:  As far as state Supreme Court, that is

15   correct.

16           THE COURT:  Okay.  All right.  All right.  So you

17   understand the crimes you're charged with.  You understand that

18   the charges that you -- that are against you all carry up to a

19   five-year prison sentence and on the tax evasion it's a fairly

20   substantial fine.  You understand that?

21           MR. STILLEY:  Well, actually, I can't agree that it's

22   up to five years.  I understand what the statute says.

23           THE COURT:  Uh-huh.

24           MR. STILLEY:  And I understand the theory of advisory

25   guidelines, but I just cannot believe that the right of a

 1   defendant to a jury determination of the facts can be so easily

 2   dispensed with whereby that a person could be charged -- I

 3   mean, apparently, a person could be charged with having a tax

 4   deficiency of a dollar and then you get down to the sentencing,

 5   it would be a million dollars and you would be punished based

 6   on a million dollars, whereas you were charged and tried on the

 7   basis of one dollar.

 8           THE COURT:  Uh-huh.  But you understand that the

 9   statutes, these criminal statutes have a range of punishment.

10   And it may be that the crime, if you're describing a -- first

11   of all, a tax issue involving a dollar, obviously, if that were

12   even brought, it would be on the lower end of the sentence.

13   But the sentencing range here on these charges, I just want to

14   make sure you understand what the maximum penalty could be,

15   that it could be up to five years on these counts.

16           MR. STILLEY:  I understand that the statute says five

17   years.  I cannot agree or concede that five years is a legal

18   sentence unless the guidelines call for it.

19           THE COURT:  Okay.  And you understand that a sentence

20   could be imposed either concurrently or consecutively if you

21   were found guilty on more than one count.  Do you understand

22   that?

23           MR. STILLEY:  Only if authorized by the guidelines.

24           THE COURT:  Okay.  But you understand what the

25   difference is between concurrent and consecutive sentences?

```
1                MR. STILLEY:  Yes.

2                THE COURT:  Okay.  And you understand, obviously,

3    that there are advisory sentencing guidelines that would --

4    could have an effect on your -- any sentence imposed on you if

5    you were found guilty?

6                MR. STILLEY:  I don't concede the advisory

7    distinction of the guidelines and I don't want to make -- I

8    don't want to belabor the point here or make this more

9    complicated than it needs to be, but I don't want anybody to

10   come back later and say that Oscar Stilley conceded the

11   legitimacy of an advisory guideline that basically amounts to

12   you can go up, but you can't go down.

13               THE COURT:  Uh-huh.  Okay.  But you understand that

14   there are guidelines -- sentencing guidelines out there?

15               MR. STILLEY:  Yes.

16               THE COURT:  The Supreme Court has said they're

17   advisory, not mandatory, and so courts take them into account

18   in determining what the sentence should be within the

19   sentencing range.

20               MR. STILLEY:  In response to that question, I would

21   say that I have a copy of the sentencing guidelines.

22               THE COURT:  Okay.  You understand that if you

23   represent yourself you'll be on your own and the Court won't

24   advise you how to try your case or try to help you in any way.

25   You understand that?
```

```
 1              MR. STILLEY:  Yes.

 2              THE COURT:  Are you familiar with the Federal Rules

 3  of Evidence?

 4              MR. STILLEY:  Yes, I passed the Bar.

 5              THE COURT:  Okay.  All right.  So you understand that

 6  the rules of evidence will govern the case.  And, again, just

 7  because you're representing yourself, you won't -- the Court

 8  won't cut any slack.  You'll be bound by the Federal Rules of

 9  Evidence the same way that the government is bound by them.

10              MR. STILLEY:  That's the only way I'd have it.

11              THE COURT:  Okay.  Are you familiar with the Federal

12  Rules of Criminal Procedure?

13              MR. STILLEY:  I passed the test on it.

14              THE COURT:  Okay.  And, again, you understand that

15  those rules govern a criminal action, how the criminal action

16  is tried, and you'll be bound by those rules as well.  You

17  understand that?

18              MR. STILLEY:  Yes.

19              THE COURT:  Okay.  Again, as I said to Mr. Springer,

20  I think the same is true here, even though you do have legal

21  training, I still think that it's a mistake for you to

22  represent yourself.  I think a trained lawyer would better

23  defend you than you will yourself and I think it's unwise for

24  you to represent yourself.  You have familiarity with the law,

25  you obviously practiced for a while, but your license has been
```

```
 1   suspended for whatever reason, I don't know the details of
 2   that, but I still think that a lawyer representing himself is a
 3   mistake and you would be better served if you hired or had the
 4   Court appoint counsel for you if that were possible.
 5        Now, in light of the penalties we've talked about that you
 6   might suffer if you're found guilty and as well as the
 7   difficulties of representing yourself, do you still wish to
 8   represent yourself and give up your right to be represented by
 9   an attorney?
10        MR. STILLEY:  Your Honor, honestly, I think I'm on
11   the horns of a dilemma of being forced to choose which right to
12   give up.  And on the basis of that, I think that I don't have a
13   reasonable choice other than to give up the right to
14   representation at this point in time.
15        THE COURT:  Okay.  Well, now, of course, you can go
16   out -- if you have the resources, you can go out and hire
17   private counsel.  That's up to you.  If you don't have the
18   resources to hire private counsel, if you're willing to provide
19   adequate information to the Court to that effect, then we will
20   appoint counsel for you.  You understand that.  So it's really
21   a matter of are you willing -- you know, you making the
22   decision, can you go hire private counsel, are you willing to
23   -- if not, are you willing to advise the Court of that so that
24   we can appoint counsel for you.  But what you're telling me is,
25   I guess, that you haven't hired private counsel and you don't
```

1    want to submit a financial affidavit or go down that route, so

2    that leaves the third option, which is to represent yourself.

3    Is that right?

4         MR. STILLEY:  That is correct.  I was -- I mean, this

5    is going to be an issue later, that I was told by the

6    government that I was not under criminal investigation in order

7    to get me to come and testify before the grand jury and --

8         THE COURT:  Okay.  And I'm going to stop you there

9    because I don't want you to compromise your rights, your Fifth

10   Amendment rights either.  I understand the situation.

11       I'm going to find at this time that you have knowingly and

12   voluntarily waived the right to counsel and I'll allow you to

13   represent yourself.  Now, if this changes as we proceed here,

14   if you decide that this -- that you come around to my way of

15   thinking, either or both of you, it's a bad idea and you want

16   to hire private counsel, you can do that at a later date.  If

17   you're also willing to come forward and show that you're not

18   financially able to hire counsel, then the Court can still

19   appoint counsel for you.

20       As I did with Mr. Springer, I will appoint standby

21   counsel, Mr. Webber, if he's still willing to take that on.

22   And, again, as I told Mr. Springer, standby counsel is not

23   really your attorney.  He's exclusively there on behalf of the

24   Court to protect the integrity and continuity of the

25   proceedings.  And he's sort of a safety net to try and make

1  sure that we keep things on track, give you advice as you seek

2  it from him to make sure you receive a fair trial, but also

3  there to make sure that we keep the thing moving along and we

4  get the case tried on time.

5       So have you had a chance to talk to Mr. Webber?  Have you

6  been able to feel like Mr. Webber would be all right as standby

7  counsel for you?

8            MR. STILLEY:  Actually, Your Honor, without any

9  rancor toward Mr. Webber, I don't think that that would be

10  satisfactory.  And the reasons for that is I did talk to him on

11  the 18th in this Court or across the hall.  Later, I discovered

12  or realized that I was not getting the documents spun out to me

13  on ECF so I would get them by e-mail.  So I called the clerk

14  and said, hey, can I get that?  And they said, well, Mr. Webber

15  is the attorney, he's listed as the attorney, you need to get

16  ahold of him.

17            THE COURT:  Yeah.

18            MR. STILLEY:  So I sent Mr. Webber an e-mail and

19  said, Mr. Webber, would you be so kind, if there's anything

20  that comes in on ECF, just shoot it on over to me so I'll have

21  it.  Because, you know, basically, it's just diverting the

22  information from me.  Sent that on the 24th.  He didn't

23  respond.  He didn't send me the information.  I would presume

24  that even if I didn't send him an e-mail he would have some

25  concern to make sure that notices from the Court were actually

1    sent to Oscar Stilley.  And I just don't think it's a real good

2    idea to start out with someone with that track record, without

3    rancor to Mr. Webber whatsoever.

4           THE COURT:  Uh-huh.  Well, we can appoint someone

5    else for you if you -- if that's what you wish.  What will

6    happen now, though, is with both of you on our records as pro

7    se, that should then -- now enable you to get the notices

8    directly.  And if you then can work out the electronic part of

9    it with the court clerks, I think you'll be getting notices

10   electronically as well, if you can sign up for that.

11       But I think the hang-up was that when Mr. Webber and

12   Mr. Williams were on the docket sheet as counsel, and they were

13   still there because they hadn't withdrawn, that -- and that's

14   -- and I'll take responsibility for that.  I was trying to

15   protect both of you at your initial appearance and

16   arraignment.  And having done that, I think it may have

17   prevented you from getting notices directly.  Now, that we

18   enter the finding that you're voluntarily deciding to proceed

19   pro se, you should get those -- all filings directly.

20          MR. SPRINGER:  There was also a motion that I had

21   filed asking for that, to be able to file.  Is that something

22   within the Court's power to grant at this time so that I would

23   not have to either mail or come down every time I need to file

24   something?  Because you had mentioned four months, which I have

25   a hard time believing that that will actually take place in

1  four months with what's going on.  But it would be a great

2  benefit to anybody, including myself.

3          THE COURT:  Right.

4          MR. SPRINGER:  I'm already on four cases I can

5  electronically file.  Never been accused of abusing the

6  privilege of any kind whatsoever.

7          THE COURT:  I think that's fine.  I think with your

8  entering an appearance pro se and getting registered and you've

9  already been registered in other cases, there shouldn't be any

10 problem, Mr. Springer.

11         MR. SPRINGER:  Thank you.

12         THE COURT:  If there is, bring it to the Court's

13 attention, we'll take care of it.

14         MR. SPRINGER:  Okay.

15         THE COURT:  I'm told I have to grant it, so I will

16 grant it.

17         MR. SPRINGER:  Thank you.  That's why I asked.  Thank

18 you very much.

19         THE COURT:  We'll take care of that.  And,

20 Mr. Stilley, you want the same situation?

21         MR. STILLEY:  Your Honor, I just checked this

22 morning, my ECF works.  I have no reason to believe that I

23 would not be allowed to log on and file in the case.

24         THE COURT:  Okay.  All right.  Okay.  Then you should

25 be all right.

```
 1            MR. STILLEY:  As long as it spins out to me, I'm
 2  happy.
 3            THE COURT:  Okay.  All right.  Now, all right, so
 4  we're over that main hurdle that I wanted to get through.  But
 5  the other thing I want to address with you is when the parties
 6  envision this case going to trial.
 7       Mr. Snoke, what is -- what do you think in terms of the
 8  government -- when do you think the government would be ready
 9  to --
10            MR. SNOKE:  The government, as the Court knows, is
11  (unintelligible) able to go to trial within the next 70 days.
12            THE COURT:  Right.
13            MR. SNOKE:  It has held things up a little bit
14  because of the fact we don't have a judge.
15            THE COURT:  And I think that will be resolved by the
16  end of the week.  I really think that that will be taken care
17  of quickly.
18            MR. SNOKE:  And that is a problem because the speedy
19  trial clock is still running even though we don't have a judge.
20            THE COURT:  Right.  Right.
21            MR. SNOKE:  So that's kind of (unintelligible).
22  We'll be ready to go to trial within --
23            THE COURT:  The 70 days?
24            MR. SNOKE:  -- the 70 days.
25            THE COURT:  Mr. Springer, Mr. Stilley, what are your
```

1  thoughts on that?

2          MR. SPRINGER:  Well, I think that -- that it's going

3  to take a lot longer than that.  I believe that there's a lot

4  of discovery in this case that's -- I think I was told 33,000

5  pages.  I have over 150,000 that were left at my house when

6  they raided my home.

7          THE COURT:  Uh-huh.

8          MR. SPRINGER:  I anticipate between 100 and 200

9  witnesses.  If we can calm that down by the government

10  admitting that some of the money that was given they'll concede

11  was a gift and we're only going to argue over the rest.  But

12  the other day when we were in here, they couldn't even come to

13  an agreement on that.  So I would anticipate that it's not

14  going to be a 70-day time period based upon things that I'm --

15  know I'm writing right now.

16          THE COURT:  Okay.  Well, what are you thinking?  Are

17  you thinking about the fall?

18          MR. SPRINGER:  Yeah, I'm thinking the fall, if it has

19  to go there.

20          THE COURT:  And you understand that you would have to

21  exercise and execute waivers of speedy trial?

22          MR. SPRINGER:  I believe, Your Honor, that my

23  understanding, without waiving my Fifth Amendment right, is my

24  reading of the local rules and those rules is that as soon as a

25  dispositive motion is filed, that that tolls the Speedy Trial

```
 1    Act until 30 days after the last responsive pleading in that --
 2    dealing with that motion.  So I would understand that part of
 3    it.  It would be a waiver by my motion, but I would not consent
 4    to a waiver in any other way.  I will want to go to trial as
 5    fast as I can once we get all these things.  They've had, you
 6    know, since 1997 --
 7              THE COURT:  Right.
 8              MR. SPRINGER:  -- to get ready for this, you know,
 9    so --
10              THE COURT:  Well, that's why I'm asking you.  And if
11    you're saying you need more time --
12              MR. SPRINGER:  Yeah, I'm thinking fall.  I would --
13    I'm anticipating a good 90-day exchange here just going over
14    discovery, suppression of evidence.
15              THE COURT:  Well, we'll have to get a district judge
16    on board and dealing with that quickly.
17              MR. SNOKE:  I think we're going to have to have a
18    district judge to deal with that.
19              THE COURT:  Yeah, I think that's right.
20              MR. SNOKE:  Because if he's unwilling to waive speedy
21    trial, not that that's the be all and end all, (unintelligible)
22    some recent Tenth Circuit cases.
23              MR. SPRINGER:  Right.
24              MR. SNOKE:  Nevertheless, that goes a long ways
25    towards --
```

1            THE COURT:  Right.

2            MR. SNOKE:  -- that and it will probably be found by

3  the district judge to be a complex case.  I don't doubt that at

4  all, the number of documents involved.  But I don't think this

5  Court can --

6            THE COURT:  No.

7            MR. SNOKE:  Based on what he's telling you, can put

8  this thing off.

9            THE COURT:  No, I'm not scheduling the trial.  I'm

10  just trying to get an idea so that I can advise the Court.  And

11  they're going to have to find a different judge to try the

12  case.

13            MR. SPRINGER:  What our -- what my concern right now

14  is, is there's a local rule that says that within 11 days of

15  some point, which I assume is today, at this moment, all

16  dispositive motions without a court order must be filed.  And

17  I've been preparing for that, but it is a tremendous load.  And

18  so asking the Court if that 11 days can be extended, I don't

19  know who to ask.

20            THE COURT:  Well, I think that we'll know that

21  shortly, I hope.

22            MR. SPRINGER:  Okay.

23            THE COURT:  Mr. Stilley.

24            MR. SPRINGER:  You're not setting a trial schedule

25  then so when that begins --

```
 1              THE COURT:  I'm not -- no, I'm not setting -- I'm
 2   just trying to get a sense here.
 3              MR. SPRINGER:  All right.  So our 11 days -- my
 4   understanding is our 11 days still doesn't start yet because
 5   you haven't set a trial schedule.
 6              THE COURT:  Well, I'm not going to give you an
 7   advisory ruling on that.  But, at this point, I think you're
 8   going to have to wait for the district judge to be appointed to
 9   handle it.
10       Mr. Stilley, do you have a view on when you would be ready
11   to try the case?
12              MR. STILLEY:  Well, I had presumed that the 70-day
13   speedy trial clock would control.  And my experience on that is
14   that that's not an unreasonable clock, given the fact that
15   certain periods are excluded.  And I'm not saying that I would
16   not at some point down the road reconsider and I might decide
17   that I'd waive speedy trial --
18              THE COURT:  To put it off?
19              MR. STILLEY:  -- if I felt like it's in the interest
20   of justice or -- there's a good reason.
21              MR. SPRINGER:  Is the fall good?
22              MR. STILLEY:  I don't have a problem -- I mean, it's
23   fine by me.
24              THE COURT:  Okay.  All right.  You know, like I said,
25   I'm not setting the trial schedule.  I'm just trying to get a
```

1  sense of where both sides are going in terms of when they would

2  be prepared to put this before a jury.

3         MR. STILLEY:  There is just one thing I want to make

4  sure that on this -- on this deadline that Oscar Stilley is not

5  going to be prejudiced by not filing a motion today.  The

6  government has already said it's their position that the --

7  that filing of motions is premature because we don't have a

8  district judge.  And, you know, I tend to agree with that.  But

9  I don't want to let midnight roll by and not file and then

10 later on be told, well, you messed up, you should have filed

11 all your motions then.  Particularly -- I think that it should

12 be an easy call since we don't have discovery, we don't have

13 particulars, we are really in no position to file any motions,

14 except, you know, the very preliminary motions like bill of

15 particulars.

16        THE COURT:  Uh-huh.  Mr. Snoke.

17        MR. SNOKE:  You've always said, Your Honor, and I

18 think in a pleading here -- in response to Mr. Springer's

19 motions he filed on the morning of the last arraignment.

20        THE COURT:  Right.

21        MR. SNOKE:  And we said that we thought those were

22 premature, although you made a general denial (unintelligible)

23 --

24        THE COURT:  Uh-huh.  Uh-huh.

25        MR. SNOKE:  -- and asked for more time

```
 1   (unintelligible).

 2           THE COURT:  And I suspect you'll have leeway.  As I

 3   say, I don't know who the judge is going --

 4           MR. SNOKE:  We haven't said that to Mr. --

 5           THE COURT:  Stilley.

 6           MR. SNOKE:  -- Stilley at all.  And he hasn't filed

 7   any motions.

 8           THE COURT:  Right.  I think the next step here,

 9   gentlemen, is going to be to get -- to find out who your trial

10   judge is as quickly as we can and then -- and then as soon as

11   that happens, then you can start --

12           MR. SPRINGER:  Thank you.

13           THE COURT:  -- the ball rolling with all this stuff.

14   You know, that's going to happen, I think, pretty quick.  All

15   right.

16           MR. STILLEY:  Okay.

17           THE COURT:  All right.  If there's nothing else, then

18   we will be in recess.

19           MR. SPRINGER:  I did have one other thing and I am --

20   is it within the Court's power to seal any information I

21   provide to Pretrial Services involving certain requirements

22   that Pretrial Services is asking me to provide?

23           THE COURT:  Well, that information is not shared with

24   the prosecution.  Mr. Ogle, do you want to address this?

25   Pretrial Services is an arm of the Court, not of the --
```

1          MR. SPRINGER:  So that -- and I read the local rule

2    on that -- okay.  That's fine.  That's --

3          THE COURT:  Okay?  Is that all right?

4          MR. SPRINGER:  I'm thumbs up on that, yeah.  Thank

5    you.

6          THE COURT:  Okay.  All right.  Then we will be in

7    recess.  Thank you, Gentlemen.

8       (COURT ADJOURNED.)

9

10                    REPORTER'S CERTIFICATE

11

12    I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND

CORRECT TRANSCRIPT OF THE DIGITALLY RECORDED PROCEEDINGS TO THE

13

BEST OF MY ABILITY TO HEAR AND UNDERSTAND THE RECORDING:

14

15

16                    S/Tracy Washbourne
                      Tracy Washbourne, RDR, CRR
                      United States Court Reporter
17                    Western District of Oklahoma

18

19

20

21

22

23

24

25