FILED
United States Court of Appeals
Tenth Circuit

October 26, 2011

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

v.

LINDSEY KENT SPRINGER,

   Defendant-Appellant.

No. 10-5055
(D.C. No. 4:09-CR-00043-SPF-1)
(N.D. Okla.)

---

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

v.

OSCAR AMOS STILLEY,

   Defendant-Appellant.

No. 10-5057
(D.C. No. 4:09-CR-00043-SPF-2)
(N.D. Okla.)

---

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

v.

LINDSEY KENT SPRINGER,

   Defendant-Appellant.

Nos. 10-5156 & 11-5053
(D.C. No. 4:09-CR-00043-SPF-1)
(N.D. Okla.)

---

## ORDER AND JUDGMENT[*]

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

A jury convicted Lindsey Kent Springer of one count of conspiring with Oscar Amos Stilley to defraud the United States, three counts of tax evasion, and two counts of willful failure to file a tax return. Mr. Stilley was convicted of one count of conspiracy and two counts of aiding and abetting Mr. Springer's tax evasion.

The district court sentenced both men to fifteen years in prison, three years of supervised release, and restitution for tax losses exceeding $2 million. In appeal Nos. 10-5055 and 10-5057, Mr. Springer and Mr. Stilley ("defendants") respectively challenge their convictions and sentences. In appeal Nos. 10-5156

---

[*]   After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and 11-5053, Mr. Springer challenges two post-conviction proceedings.[1]  For the reasons discussed below, we affirm.[2]

I

The facts adduced at trial established that Mr. Springer's trouble with the Internal Revenue Service ("IRS") began in the 1980s, with a dispute over payroll taxes.  R., Vol. 3 (Tr. Vol. 11) at 3093.  Since then, he has maintained a course of conduct to avoid paying taxes.

In the early 1990s, Mr. Springer founded "Bondage Breakers Ministries," which aimed "to get rid of the IRS," *id.* at 3114.  He also began touring the country, offering legal and tax advice to individuals embroiled in tax disputes, and accepting in return tens—sometimes hundreds—of thousands of dollars.  In this capacity, Mr. Springer initiated "[m]aybe a thousand" lawsuits, *id.* (Tr. Vol. 12) at 3284, many against the government and employees of the government.  He eventually met Mr. Stilley, who is now a disbarred lawyer, and together they devised a scheme to channel Mr. Springer's unreported income through

---

[1]     Appeal Nos. 10-5055 and 10-5057 share one record; Appeal Nos. 10-5056 and 11-5053 were submitted with their own records.  All record-citations correspond to the particular appeal(s) under discussion.

[2]     During the pendency of these appeals, Mr. Springer's attorney, Jerold W. Barringer, was indefinitely suspended from practicing before this court.  *See In re Barringer*, No. 11-816 (10th Cir. Sept. 2, 2011), *reh'g en banc denied,* (10th Cir. Sept. 28, 2011).  Mr. Springer is presently subject to pro se filing restrictions, but those restrictions are inapplicable to criminal appeals.  *See Springer v. IRS ex rel. United States*, 231 F. App'x 793, 802-04 (10th Cir. 2007) (unpublished).

Mr. Stilley's client trust account.  Mr. Springer also used his ministry as a front for accepting money, despite being the subject of IRS collection-actions for unpaid income taxes dating back to 1990, and an IRS civil investigation for promoting abusive tax shelters.

By 2005, Mr. Springer had gained the full attention of the IRS.  On June 3, 2005, the IRS referred Mr. Springer to the Justice Department to investigate potential criminal tax violations.  On September 16 of that year, the government executed a search warrant of Mr. Springer's residence.  And, on February 2, 2006, Mr. Stilley was served with a grand jury subpoena.  During the course of the investigation, defendants denied receiving any income for their advice, representing instead that people simply made donations to Mr. Springer's ministry, with no expectation of services in return.  But at trial, the government refuted those statements, offering testimony from numerous witnesses who had paid large sums of money to defendants in exchange for their supposed tax and legal expertise.  Based on this and other evidence, the jury convicted defendants on all counts.

Defendants have now lodged these appeals.

II

Nos. 10-5055 and 10-5057

Defendants' opening brief[3] can be distilled to advance the following eight arguments:  1) defendants committed no crimes because there is no government entity outside of Washington, D.C. with the lawfully delegated power to collect taxes or enforce the internal revenue laws; 2) the Paperwork Reduction Act precludes imposition of all penalties arising from their convictions; 3) the district court erred in denying their motion to suppress; 4) the district court erroneously instructed the jury as to the definitions of "gift" and "income"; 5) the district court should have allowed defendants to subpoena employees of the Justice Department and the IRS; 6) defendants did not waive their right to counsel voluntarily, knowingly, and intelligently; 7) the district court did not properly calculate their attributable tax losses under the sentencing guidelines or properly apply their respective sentencing enhancements; and 8) Mr. Stilley's conspiracy conviction cannot be classified as a felony.[4]

We address each argument in turn.

---

[3]     Mr. Stilley has joined Mr. Springer's brief, but at times advances his own arguments.  We refer to the briefs jointly as "defendants' brief" or "Aplt. Revised Opening Br." and specify when we address Mr. Stilley's independent contentions.

[4]     Defendants make passing references to other potential issues throughout their opening brief, but such scattered, perfunctory statements are insufficient to invoke appellate review and, accordingly, those issues are deemed waived.  *See, e.g., Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1133 n.4 (10th Cir. 2004).

### A.  Delegation of IRS Collection and Enforcement Authority

Defendants first contend they committed no crimes because no government entity exists outside of Washington, D.C. with the lawfully delegated authority to collect taxes or enforce federal tax laws.  As we understand their argument, defendants believe the Secretary of the Treasury is authorized to collect taxes only within the territorial limits of Washington, D.C.  *See* Aplt. Revised Opening Br. at 10 (citing 4 U.S.C. § 72 ("All offices attached to the seat of government shall be exercised in the District of Columbia, and not elsewhere, except as otherwise expressly provided by law."))  To accommodate this geographic restriction, defendants contend, Congress granted the President, pursuant to 26 U.S.C. § 7621, the power to establish internal revenue districts, headed by district directors, to exercise the Treasury Secretary's authority beyond Washington.  *See* Aplt. Revised Opening Br. at 8-9.  However, Congress passed the Internal Revenue Service Restructuring and Reform Act of 1998 ("RRA"), Pub. L. 105-206, 112 Stat. 685, which, among other things, abolished internal revenue districts and district directors.  *See* Aplt. Revised Opening Br. at 11 (citing the RRA and asserting that "[w]ithout [internal revenue districts and district directors] there could never have been any proper delegation of authority outside the District of Columbia from the [Treasury] Secretary to any U.S. Attorney.")  Consequently, defendants claim, there is no legally authorized entity to collect taxes or enforce the tax laws, and no criminal offense stemming from

their failure to pay taxes.  *See id.* ("Without [internal revenue districts and district directors] the indictment failed to allege an offense in all Six Counts because no law required Springer to deliver any Form 1040 . . . to any place required by law." (internal quotation marks omitted)).

These types of spurious delegation arguments were rejected as frivolous before the RRA was enacted, *see, e.g., Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990), and they have been rejected as frivolous since, *see, e.g., United States v. Ford*, 514 F.3d 1047, 1053 (10th Cir. 2008).  The Secretary of the Treasury is authorized under 26 U.S.C. § 6091(a) to promulgate regulations prescribing "the place for the filing of any return, declaration, statement or other document."  Internal revenue districts are "now defunct," *Allnutt v. Comm'r*, 523 F.3d 406, 408 n.1 (4th Cir. 2008), but 26 C.F.R. § 1.6091-2(a) requires individuals to file returns with "any person assigned the responsibility to receive returns at the local Internal Revenue Service office that serves the legal residence . . . of the person required to make the return."  Otherwise, if so instructed, individuals or corporations must file returns with a specifically designated internal revenue service center.  *Id.* § 1.6091-2(c).

In short, defendants' delegation argument is patently frivolous.

### B.  Paperwork Reduction Act

Defendants next contend they were not subject to any penalties because IRS

Form 1040 fails to comply with the Paperwork Reduction Act, 44 U.S.C. §§ 3501,

*et seq*. ("PRA").  In particular, they cite § 3512(a), which states:

> [N]o person shall be subject to any penalty for failing to comply with
> a collection of information . . . if . . . (1) the collection of
> information does not display a valid control number . . .; or (2) the
> agency fails to inform the person who is to respond to the collection
> of information that such person is not required to respond to the
> collection of information unless it displays a valid control number.

According to defendants, they cannot be penalized for their crimes because IRS

Form 1040 does not comply with § 3512(a).

Initially, defendants make no showing that IRS Form 1040 fails to comply

with § 3512(a).  And, we rejected a similar argument in one of Mr. Springer's

prior appeals.  *See Springer v. Comm'r*, 580 F.3d 1142, 1144-46 (10th Cir. 2009).

In that case, he contested certain failure-to-pay penalties on the ground that Form

1040 violated the PRA, but we recognized that Form 1040 did not give rise to the

penalties because they had an "independent and separate statutory basis under the

Internal Revenue Code . . . that [was] not based on Mr. Springer's failure to file

Form 1040s." *Id.* at 1145.  Likewise, here, defendants' obligation to file a return,

and the crimes associated with their efforts to circumvent that obligation, are

prescribed by statute, *e.g.*, 26 U.S.C. §§ 6012 (requiring the filing of return),

7203 (proscribing the failure to file return); there is no substantive obligation or

crime arising out of Form 1040 itself.  *See United States v. Gross*, 626 F.3d 289, 295-96 (6th Cir. 2010) (explaining that the obligation to file a tax return and the criminalization of willful failure to do so represent statutory mandates divorced from Form 1040); *see also United States v. Dawes*, 951 F.2d 1189, 1192 (10th Cir. 1991) (affirming convictions for willful failure to file returns on other grounds but noting that "[w]e would be inclined to . . . hold that the operation of the PRA in these circumstances did not repeal the criminal sanctions for failing to file an income tax return because the obligation to file is a statutory one").  In fact, an actual Form 1040 may not even be necessary to comply with the statutory obligations.  *See United States v. Stillhammer*, 706 F.2d 1072, 1075 (10th Cir. 1983).

Defendants might have invoked the PRA to avoid any penalties assessed for submitting faulty information on a non-compliant IRS form, but they cannot use the PRA to side-step criminal offenses arising under the Internal Revenue Code.

### C.  *Motion to Suppress*

Defendants also assert the district court should have suppressed evidence obtained after their case was referred to the Department of Justice for criminal investigation.  In analyzing the legal aspects of this issue de novo, we view the evidence in the light most favorable to the government.  *United States v. White*, 584 F.3d 935, 944 (10th Cir. 2009).  Defendants' contention is rooted in *United States v. LaSalle National Bank*, 437 U.S. 298, 311-13, 318 (1978), where the

Supreme Court restricted the IRS from using civil summonses either solely to further criminal investigations or to investigate any case once it has been referred to the Justice Department for criminal prosecution.  Defendants contend *LaSalle* required the court to suppress evidence obtained with a civil summons issued in 2004 because at that time the government was pursuing possible criminal charges.

The problem with this argument is that during most of 2004, the IRS was conducting a civil investigation into Mr. Springer's promotion of abusive tax shelters, and it did not refer him to the Justice Department for possible criminal violations until June 3, 2005; Mr. Stilley was not referred until January 6, 2007. There was, therefore, no need to suppress evidence obtained before these dates, even if the civil investigation led to possible criminal consequences.  *See id.* at 309 ("It is now undisputed that a special agent is authorized . . . to issue an Internal Revenue summons in aid of a tax investigation with civil and possible criminal consequences." (quotation omitted)).  That defendants were implicated in an expanding criminal investigation in a related case is irrelevant to the validity of the summons, since there had not yet been a referral to the Department of Justice.  *See* 26 U.S.C. § 7602(d)(2)(A)(i) ("A Justice Department referral is in effect with respect to any person if--the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws[.]").

-10-

### D.  Jury Instructions

Next, defendants contend the district court improperly instructed the jury on the meaning of "gift" and "income."  We review de novo whether the court properly instructed the jury.  *United States v. Urbano*, 563 F.3d 1150, 1154 (10th Cir. 2009).  The Internal Revenue Code defines "gross income" as "all income from whatever source derived."  26 U.S.C. § 61.  "Gifts" are excluded from gross income, *see id.* § 102, although the question of whether a particular transfer is a "gift" depends on the facts of the case, turning primarily on the transferor's intent, *see Comm'r v. Duberstein*, 363 U.S. 278, 285-86, 289-90 (1960); *United States v. Kasynski*, 284 F.2d 143, 145 (10th Cir. 1960).

Here, the court explained to the jury that the determinative inquiry is intent:  "The intent of the person transferring the money is important in determining whether the amount received . . . is a gift for income tax purposes." R., Vol. 3 (Tr. Vol. 12) at 3400.  The court emphasized that "[w]here the person transferring the money did not act from any sense of generosity but rather to secure goods, services, or some other such benefit for himself or another, there is no gift."  *Id.*  The court then reminded the jury that it "should take into account all the facts and circumstances of [the] case," *id.* at 3401, and, ultimately, gave the jury the task of determining whether any transfers were gifts or income, *id.* at 3399.  We perceive no error in these instructions.

-11-

Still, defendants assert the district court erred because the term "gift" is not defined by the Internal Revenue Code. But the absence of a statutory definition does not, in and of itself, indicate error. Defendants also contend that the court erroneously instructed the jury on the term "taxable income," rather than "gross income." If defendants mean to suggest that while gross income excludes gifts, taxable income does not, they are wrong. Taxable income is defined as gross income less any permissible deductions, including gifts. *See* 26 U.S.C. § 63. Therefore, because gifts are excluded from the definitions of both terms, the court was correct to instruct the jury that "taxable income does not include money or property acquired by gift." R., Vol. 3 (Tr. Vol. 12) at 3399.

### E.  Subpoena of Federal Employees

Defendants argue that their Sixth Amendment rights were violated because they were unable to subpoena employees of the Justice Department and the IRS. In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 463 n.1, 468 (1951), the Supreme Court upheld the validity of a Justice Department regulation prohibiting an employee of the Department from responding to a subpoena duces tecum without prior approval from the Attorney General. We applied *Touhy* in *United States v. Allen*, 554 F.2d 398, 406 (10th Cir. 1977), where we upheld the validity of a regulation requiring the person seeking evidence to submit an "affidavit or statement summarizing the testimony desired so that the Department could

-12-

consider the [subpoena] request and determine whether to grant permission for the testimony."

Here, defendants advance no argument why *Touhy* should not bar their subpoena requests.  Nor do defendants indicate whether they submitted to the Department of Justice a summary of the evidence they sought to obtain, as required by 28 C.F.R. § 16.23(c).  And, as the government points out, the IRS maintains similar regulations for its employees, *see* 26 C.F.R. § 301.9000-4, but defendants made no attempt to comply with those provisions either.  Under these circumstances, we have little difficulty concluding that defendants fail to show their rights were violated.

### F.  Waiver of Right to Counsel

Defendants also raise a Sixth Amendment issue concerning their waiver of counsel, which they say was not done knowingly, intelligently, or voluntarily.[5] *See Faretta v. California*, 422 U.S. 806, 835 (1975).  "[A] defendant may waive the right to counsel and proceed at trial pro se only if the waiver is knowing, intelligent, and voluntary."  *United States v. DeShazer*, 554 F.3d 1281, 1288

---

[5]     It is unclear to what extent Mr. Stilley joins Mr. Springer in this argument. He says he adopts Mr. Springer's argument that he was not properly warned of the dangers of proceeding pro se, but he does not rely on Mr. Springer's reasoning.  *See* "Adoption of Arguments in Springer's Brief" at 14.  To the extent that Mr. Stilley joins Mr. Springer's brief, we consider their consolidated arguments herein.  To the extent Mr. Stilley reserves further argument, his failure to advance those arguments constitutes waiver.

(10th Cir. 2009) (internal quotation marks omitted).  We review this issue

de novo.  *United States v. Silkwood*, 893 F.2d 245, 248 (10th Cir. 1989).  A

waiver is voluntary if the defendant was given a clear, alternative choice to the

waiver.  *See United States v. Burson*, 952 F.2d 1196, 1199 (10th Cir. 1991).  To

ensure a waiver is made knowingly and intelligently, a trial judge ideally should

conduct a "thorough and comprehensive formal inquiry including topics such as

the nature of the charges, the range of punishment, possible defenses, and a

disclosure of risks involved in representing oneself pro se."  *United States v.

Turner*, 287 F.3d 980, 983 (10th Cir. 2002) (internal quotation marks and italics

omitted).

Here, defendants' waiver was voluntary because the district court alerted

them to their clear alternatives to self-representation.  *See* R., Vol. 3 (April 22,

2009 Mot. Hrg.) at 71 (informing defendants that "both of you must understand

that you do have a right to a lawyer" and "[b]oth of you have standby counsel").

The waiver also was knowing and intelligent because defendants were twice

explained the advantages of being represented by an attorney and the dangers and

disadvantages of proceeding pro se, *see Faretta*, 422 U.S. at 835, yet they insisted

on relinquishing their right to counsel and forgoing the benefits attendant to that

right.  Indeed, the court asked defendants a multitude of questions to evaluate

their understanding of the nature of the charges against them, the dangers and

disadvantages of proceeding pro se, and the consequences of a conviction.  *See*

R., Vol. 3 (April 22, 2009 Mot. Hrg.) at 82-92. Defendants signaled their

understanding and were steadfast in their intent to represent themselves.

Defendants now contend they were confused at the time, but the record

makes clear they knew what they were doing and made their choice "with eyes

open," *Faretta*, 422 U.S. at 835 (internal quotation marks omitted). We are

satisfied that defendants waived their right to counsel knowingly, voluntarily, and

intelligently.

### G. Sentencing

Next, defendants contend the district court erred in applying the sentencing

guidelines and the relevant sentencing enhancements.[6] We review criminal

sentences for reasonableness, evaluating both procedural and substantive

components. *United States v. Martinez*, 610 F.3d 1216, 1223 (10th Cir.), *cert.*

*denied*, 131 S. Ct. 543 (2010). "Procedural review asks whether the sentencing

court committed any error in calculating or explaining the sentence. Substantive

review involves whether the length of the sentence is reasonable given all the

circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)."

*United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214-15 (10th Cir. 2008)

(internal citations and quotations omitted). We review legal questions de novo

---

[6]     Once again, it is unclear to what extent, if any, Mr. Stilley adopts
Mr. Springer's arguments. Rather than assume a wholesale waiver, we afford
Mr. Stilley's pro se appellate materials a liberal construction, as we must, and
assume he joins Mr. Springer's contentions to the extent applicable to him.

and the substantive reasonableness of the sentence for an abuse of discretion.  *See id.* at 1215.

### 1. Tax Loss Calculation

As best we can tell, defendants initially challenge the district court's tax loss calculation.  "We may overturn the district court's tax-loss calculation only if it was clearly erroneous."  *United States v. Hoskins*, 654 F.3d 1086, 1092 (10th Cir. 2011).  The guidelines state that "[i]f the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income . . . less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made."  USSG § 2T1.1(c)(2) n.(A).  Given the absence of a more accurate assessment of defendants' tax losses, the court multiplied each defendant's income for the relevant tax years by 20%.  The court then added to each defendant's tax loss the loss attributable to the other defendant during the conspiracy, because the scheme constituted "jointly undertaken criminal activity," USSG § 1B1.3(a)(1)(B).  The court also added to Mr. Springer's tax loss his assessments stemming from tax years 1990 through 1995, as well as the tax loss attributable to one of his clients whom he helped try to avoid paying taxes.  The court followed the same approach with Mr. Stilley for his involvement with this client, as well as two other individuals he advised.  Lastly, the court added each defendant's state tax losses to ascertain their respective aggregate tax losses.

Mr. Springer contests the inclusion of his assessments from 1990 through 1995, although he does not explain why.[7]   Additionally, citing *United States v. Meek*, 998 F.2d 776 (10th Cir. 1993), defendants argue the court should not have considered conduct "outside the years in the indictment."  Aplt. Revised Opening Br. at 47.  *Meek* undermines their contention, however, because in that case, we approved the district court's consideration of non-charged relevant conduct to calculate the total tax loss attributable to the defendant.  998 F.2d at 782; *see also* USSG § 2T1.1 cmt. n.2 ("In determining the total tax loss attributable to the offense (*see* § 1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated.").  And defendants point to no evidence demonstrating that the conduct considered by the district court was unrelated for purposes of assessing the tax loss.  Instead, they make bald allegations that were clearly rejected by the jury.

We perceive no error in the district court's tax loss calculation.

---

[7]     Mr. Springer makes a cryptic, almost incomprehensible reference to records showing that "the Secretary had released 1990 through 1995 as extinguished . . . ."  Aplt. Revised Opening Br. at 47.  If Mr. Springer is alluding to lien releases that were accidentally issued by the IRS but subsequently revoked, this argument was raised and rejected in a prior appeal.  *See United States v. Springer*, 427 F. App'x 650, 652 (10th Cir. 2011).

2. *Sentence Enhancements*

Defendants also challenge their sentence enhancements, beginning with a two-level increase under USSG § 2T1.1(b)(1) for failing to report or identify criminal-source income exceeding $10,000. The record clearly supports the district court's finding, however, that defendants committed wire fraud by convincing a client to transfer $250,000 into Mr. Stilley's client trust account, not only to hide the money from the government, but also to defraud their client. The record also supports the court's application of the enhancement based on "defendants' joint representation of [another client, which] was, from its inception, an exercise in fraud and obtaining money under false pretenses," R., Vol. 3 (Sent. Tr. Vol. 3) at 3999.

Defendants next object to a two-level enhancement pursuant to USSG § 2T1.1(b)(2) for employing sophisticated means to commit their offenses. But again, the record supports the district court's finding that Mr. Stilley used his highly-regulated client trust account as "an instrument of fraud," R., Vol. 3 (Sent. Tr. Vol. 3) at 4001. Additionally, Mr. Springer used his purported ministry to solicit funds that he reported as donations, and he used a check-cashing service to avoid maintaining a checking account with reachable assets. And, of course, underlying all this was defendants' scheme of fraudulently advising individuals how to violate the tax code. Based on this evidence, we are satisfied that defendants' conduct warranted the enhancement. *See* USSG § 2T1.1 cmt. n.4

("Conduct such as hiding assets or transactions, or both, through the use of fictitious entities . . . ordinarily indicates sophisticated means."); *cf. United States v. Ambort*, 405 F.3d 1109, 1120 (10th Cir. 2005) (affirming enhancement where defendant conducted tax seminars to teach ways of delaying discovery of tax offenses).

Relying on other arguments we rejected above, defendants also contest the application of USSG § 2T1.9(b)(2) for encouraging others to violate the tax code. Yet the record is replete with evidence sustaining the court's application of the enhancement, and defendants' unsupported contention otherwise is meritless.

To the extent defendants challenge the court's application of USSG § 3C1.1 for obstructing justice (or any other remaining enhancement, for that matter), their arguments advance no reasoned argument and are insufficient to invoke appellate review.

### H.  Conspiracy as a Felony Offense

Finally, Mr. Stilley contends his conspiracy conviction under 18 U.S.C. § 371 should be a misdemeanor because his underlying substantive offense is a misdemeanor.  The conspiracy statute says that one who conspires to defraud the United States may be punished up to five years in prison, unless the object of the conspiracy is a misdemeanor, in which case the punishment for the conspiracy shall not exceed the punishment for the misdemeanor.  *Id.*  Mr. Stilley's felony conviction for conspiring to defraud the United States was an independent crime

punishable by up to five years in prison. *See United States v. Gallup*, 812 F.2d 1271, 1277 (10th Cir. 1987). There is thus no merit to his claim that the conviction should be classified as a misdemeanor.

### No. 10-5156

In appeal number 10-5156, Mr. Springer challenges the district court's denial of his petition for a writ of error *coram nobis*, in which he claimed his waiver of counsel was not knowing, voluntary, and intelligent. We previously denied Mr. Springer's petition for a writ of mandamus or *coram nobis* seeking relief on the same grounds. *See United States v. Springer*, No. 10-5101 (10th Cir. Oct. 22, 2010). That decision constitutes the law of the case and bars Mr. Springer's contentions raised in appeal No. 10-5156. *See United States ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1294 (10th Cir. 2010). The issue is meritless in any event because Mr. Springer is confined on the conviction he attempted to challenge by way of his petition, but he has not shown that relief under 28 U.S.C. § 2255 is unavailable or inadequate. *See United States v. Payne*, 644 F.3d 1111, 1112-13 & n.2 (10th Cir. 2011) (holding that an inmate is not entitled to *coram nobis* relief unless relief under 28 U.S.C. § 2255 is unavailable or would be inadequate). And, lest there by any lingering doubt whether Mr. Springer could avail himself of *coram nobis* relief, the foregoing merits discussion demonstrates that he is not entitled to this "extraordinary remedy," *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (quotation omitted).

No. 11-5053

After he was convicted, Mr. Springer moved for a new trial and evidentiary hearing based on what he claimed was newly discovered evidence supporting his motion to suppress.  The district court denied the motions because Mr. Springer failed to satisfy the five-part test necessary for a new trial.  *See United States v. Quintanilla*, 193 F.3d 1139, 1147 (10th Cir. 1999) (setting forth five-part test to ascertain whether newly discovered evidence warrants a new trial).  The court explained that, among other things, the motions were predicated on evidence available before trial; they were premised on a previously rejected, non-evidentiary contention that the RRA prevented the IRS from enforcing the revenue laws outside of Washington, D.C.; and they suggested no possibility of acquittal.  Mr. Springer now challenges those rulings, advancing a host of irrelevant or unintelligible arguments in support of the suppression issue.  We affirm the denial of these motions for substantially the same reasons articulated by the district court in its order dated March 17, 2011.

III

In appeal Nos. 10-5055 and 10-5057, Mr. Springer and Mr. Stilley's respective convictions and sentences are AFFIRMED.  Mr. Springer's motion to unseal documents sealed in the district court is DENIED.  In appeal No. 10-5056, the denial of Mr. Springer's petition for a writ of error *coram nobis* is AFFIRMED.

-21-

In appeal No. 11-5053, the judgment of the district court is AFFIRMED for substantially the same reasons as stated in the district court's order dated March 17, 2011.  To the extent defendants raise other issues that we have not explicitly discussed, we have considered them and find them to be meritless. Accordingly, any other outstanding requests for relief are DENIED.

Entered for the Court
PER CURIAM

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Elisabeth A. Shumaker<br>Clerk of Court | October 26, 2011 | Douglas E. Cressler<br>Chief Deputy Clerk |

Mr. Jerold W. Barringer
P.O. Box 213
200 West Front
Nokomis, IL 62075-0000

Mr. Lindsey K. Springer
FCI - Big Spring
1900 Simler Avenue
Big Spring, TX 79720
# 02580-063

Mr. Oscar Amos Stilley
FCI - Forrest City Low
P.O. Box 9000
Forrest City, AR 72336
10579-062

**RE:      10-5055, 10-5057, 10-5156, 11-5053, United States v. Springer**
Dist/Ag docket: 4:09-CR-00043-SPF-1

Dear Counsel and Appellants:

Enclosed is a copy of the order and judgment issued today in these matters. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 18 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court


cc:      Frank Phillip Cihlar
         Gregory Victor Davis
         Jeffrey A. Gallant
         Jeffrey P. Gallant
         Charles Anthony O'Reilly
         Alexander Patrick Robbins


EAS/kf