IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

         Plaintiff,

v.                                  Case No. 09-CR-043-F

Lindsey Kent Springer, et al.,

         Defendants.


MEMORANDUM AND BREIF IN SUPPORT OF DEFENDANT'S

MOTION TO VACATE, SET ASIDE, AND CORRECT

CONVICTION, SENTENCE AND JUDGMENT


# FILED

## MAR 11 2013

**Phil Lombardi, Clerk**
**U.S. DISTRICT COURT**

Lindsey Kent Springer

Prisoner # 02580-063

Federal Correctional Institution

1900 Simler Ave

Big Spring, Texas 79720


____/Mail    ____No Cert Svc    ____No Orig Sign

____C/J    ____C/MJ    ____C/Ret'd    ____No Env

____No Cpys    ____No Env/Cpys    ____O/J    ____O/MJ

-i-

## TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . .-i-

Ground One through Fourteen. . . . . . . . . . . . . 1

    (a) Ground One. . . . . . . . . . . . . 1

    (b) Ground Two. . . . . . . . . . . . . 2

    (c) Ground Three. . . . . . . . . . . . . 4

    (d) Ground Four. . . . . . . . . . . . . 5

    (e) Ground Five. . . . . . . . . . . . . 5

    (f) Ground Six. . . . . . . . . . . . . 7

    (g) Ground Ten. . . . . . . . . . . . . 8

    (h) Ground Eleven. . . . . . . . . . . . .9

    (i) Ground Twelve. . . . . . . . . . . . .9

    (j) Ground Thirteen. . . . . . . . . . . . 10

Ground Fifteen through Twenty Seven. . . . . . . . . 11

Ground Twenth-Eight through Thirty. . . . . . . . . 15

Ground Thirty-One. . . . . . . . . . . . . . .17

Ground Thirty-Three through Thirty-Six. . . . . . . 20

Ground Thirty-Seven and Thirty-Eight. . . . . . . . 21

Ground Fifty-Seven through Sixty. . . . . . . . . 23

Conclusion. . . . . . . . . . . . . . . 25

-ii-

TABLE OF AUTHORITIES

Accord Cox v. Louisiana, 379 U.S. 559, 571(1965). . . . . . . . . 18

Alden v. Maine, 527 U.S. 706, 758(1998). . . . . . . . . . . 8

Allnutt v. CIR, 523 F.3d 406, 413(4th Cir. 2008). . . . . . . . 13

Bedarco v. CIR, 646 U.S. 386, 399(1983). . . . . . . . . . 2,6

Barnes v. Rehbern, Lexis.67624 (D.C. New Mexico 2006). . . . . . .14

Bolling v. Sharp, 347 U.s. 497, 500 (1954). . . . . . . . . 21

Bender v. Williams Area School Dist., 475 U.S. 534, 541(1986). . . . . 1

Bond v. U.S., 131 S.Ct. 2355, 2359(2011). . . . . . . . . . 9

Bob Jones University v. U.S., 461 U.S. 574, 596(1985). . . . . . .12

Bouie v. City of Columbia, 378 U.S. 347, 352(1964). . . . . . . 12

Bouleware v. U.S., 552 U.S. 421, 424(2008). . . . . . . . . 20

Buckley v. Valeo, 424 U.S.1, 126(1976). . . . . . . . . . .3

Byers v. Intuit, Inc. 600 F.3d 286, 293(3rd Cir. 2009). . . . . . 13

Brushaber v. Union Pacific RR Co. 240 U.S. 1, 17(1916). . . . . . .9

Castro-O'Ryan v. U.S. Dept. of Im., 847 F.2d 1307, 1312(9th Cir. 1987). . 12

Chicago I & L.R. Co. v. Hackett, 278 U.S. 559, 566(1913). . . . . . 14

CIR v. Lanewells, 321 U.S. 219, 223(1944). . . . . . . . . .13

Confiscation Cases, 7 Wall 454, 457(1864). . . . . . . . . . 4

Connoally v. General Const. Co., 269 U.S. 385, 391(1926). . . . . 12,13

Cole v. Arkansas, 333 U.S. 196, 201(1948). . . . . . . . 14

Douglas v. California, 372 U.S. 353, 357(1963). . . . . . . . 24

Dunn v. U.S., 442 U.S. 100, 106(1979). . . . . . . . . . .13

Duckett v. Mulin, 306 F.3d 982, 992(10th Cir. 2002) . . . . . . 24

Edmonds v. U.S., 520 U.S. 651, 659(1979). . . . . . . . . . 3

Ex Parte Siebold, 100 U.S. 371, 376-77(1880). . . . . . . . . 14

Fay v. Miller, 183 F.2d 986, 988(D.C. Cir. 1950). . . . . . . . 4

Flora v. U.S., 362 U.S. 145, 176 (1960). . . . . . . . . . 13

-iii-

TABLE OF AUTHORITIES (con'td)

Freeman v. Heman, 426 F.2d 1050, 1052 (10th Cir. 1970).   .   .   .   .   .   22

Freytag v. CIR, 501 U.S. 868, 880(1991).   .   .   .   .   .   .   .   .   .   3

Gould v. Gould, 245 U.S. 151, 153(1917).   .   .   .   .   .   .   .   .   15

Graham v. Condor, 490 U.S. 386, 395(1989).   .   .   .   .   .   .   .   .   8

Grosso v. U.S., 390 U.S. 62, 65 and 68(1968).   .   .   .   .   .   .   .   13

Hamling v. U.S., 418 U.S. 87, 117(1974).   .   .   .   .   .   .   .   .   11

Harris v. Champion, 928 F.2d 1062, 1073(10th Cir. 1991).   .   .   .   .   24

Hollywell v. Smith, 503 U.S. 47, 53(1992).   .   .   .   .   .   .   .   .13

In Re Nofziger, 925 F.2d 428, 437(D.C. Cir. 1991).   .   .   .   .   .   .   3

In Re Winship, 397 U.S. 358, 364(1974).   .   .   .   .   .   .   .   .   14

Johnson v. Zerbst, 304 U.S. 458, 467-68(1938).   .   .   .   .   .   .   .24

Kawashima v. Holder, 182 L.Ed. 1, 11 (2012).   .   .   .   .   .   .   .   21

Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377(1994).   .   .   .   .   1

Lawn v. U.S., 355 U.S. 339, 361(1958).   .   .   .   .   .   .   .   .   .20

Linda Thompson, et al., v Resolution Trust Corp., F.3d 1508(D.C. Cir. 1993).   6

Manka v. U.S., Lexis 5343(D.C. Colo. 1993).   .   .   .   .   .   .   .   14

McBoyle v. U.S., 283 U.S. 25(1931).   .   .   .   .   .   .   .   .   .   11

Nigro v. U.S., 276 U.S. 332, 341(1828).   .   .   .   .   .   .   .   .   14

New York v. U.S., 505 U.S. 144, 156(1992).   .   .   .   .   .   .   .   8,9

Oyler v. Boles, 368 U.S. 448, 456(1962).   .   .   .   .   .   .   .   .   22

Patterson v. Illinois, 487 U.S. 285, 298(1988).   .   .   .   .   .   .   .24

Raley v. Ohio, 360 U.S. 423, 426(1959).   .   .   .   .   .   .   .   .   18

Springer v. CIR, 580 F.3d 1142, 1145(10th Cir. 2009).   .   .   .   .   16,18

Springer v. U.S., 447 F. Supp. 2d 1235, 1238(N.D.Ok. 2006).   .   .   .   19

Taxacher v. Torbic, Lexis 15193(W.D. Penn. 2000).   .   .   .   .   .   .   7

Turner v. Bank of North America, 4 Dall 8, 11(1799).   .   .   .   .   .   1

-iv-

TABLE OF AUTHORITIES (con'td)

Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 95(1998). . . . . 2

U.S. v. Anderson, 441 F.3d 1162, 1204(10th Cir. 2006). . . . . . .18

U.S. v. Anderson, 545 F.3d 1072, 1078(D.C. Cir. 2008). . . . . . 8,10

U.S. v. Armstrong, 517 U.S. 456, 469(1996). . . . . . . . . 21

U.S. v. Bader, 678 F.3d 858, 886(10th Cir. 2012). . . . . . . . 18

U.S. v. Barry, 327 Fed. Appx. 3, 6(11th Cir. 2010). . . . . . . 13

U.S. v. Bass, 404 U.S. 336, 347(1971). . . . . . . . . . .11

U.S. v. Boyle, 469 U.S. 241, 249(1985). . . . . . . . . .13,16

U.S. v. Bradshaw, 580 F.3d 1129, 1136(10th Cir. 2009). . . . . . . 3

U.S. v. Butler, 297 U.S. 1,63(1936). . . . . . . . . . . 8

U.S. v. Collins, 920 F.2d 619, 631 and n. 12 & 13(10th Cir. 1990). . . .18

U.S. v. Cotton, 535 U.S. 625, 630(2002). . . . . . . . . . 1

U.S. v. Dunkel, 900 F.2d 105, 107(7th Cir. 1990). . . . . . . . 20

U.S. v. Farr, 536 F.3d 1174, 1180(10th Cir. 2008). . . . . . . .11

U.S. v. Gradwell, 243 U.S. 476, 485(1917). . . . . . . . . .11

U.S. v. Galletti, 541 U.S. 114, 122(2004). . . . . . . . . .13

U.S. v. Hassebrock, 663 F.3d 906, 925(7th Cir. 2011). . . . . . 8,10

U.S. v. Hung Thein Ly, 646 F.3d 1307, 1318(11th Cir. 2011). . . . . 14

U.S. v. Jones, 620 F. Supp. 2d 163, 185(D.C. Mass. 2009). . . . . . 3

U.S. v. LaSalle, 437 U.S. 298, 308 to 312(1978). . . . . . 1,6,19

U.S. v. Livingword Christian Church, Lexis 6902(D.C. Minn. 2009). . . . 2

U.S. v. Mal, 942 F.2d 687, 688(9th Cir. 1991). . . . . . . . .20

U.S. v. Miller, 444 Fed. Appx. 106, 108(8th Cir. 2011). . . . . . 13

U.S. v. Miller, 471 U.S. 130, 134(1985). . . . . . . . . 11,12

U.S. v. Rineheart, 539 F. Supp. 2d 1334, 1336(W.D. Ok. 2008). . . . . 6

U.S. v. Root, 585 F.3d 145, 152(3rd Cir. 2009). . . . . . . .20

U.S. v. Springer, 08-cv-278(N.D.Ok. 2008). . . . . . . . . 16

-v-

## TABLE OF AUTHORITIES (con'td)

U.S. v. Springer, 444 Fed. Appx. 256, 262(10th Cir. 2011).   .   .   6,13,16,17

VonMoltke v. Gillies, 332 U.S. 708, 723(1948).   .   .   .   .   .   .   .   .23

Wayte v. U.S., 470 U.S. 598, 608(1985).   .   .   .   .   .   .   .   .   . 22

Yick Wo v. Hopkins, 118 U.S. 356, 373(1886).   .   .   .   .   .   .   . 22

Yaselli v. Goff, 12 F.2d 396, 404(2nd Cir. 1926).   .   .   .   .   .   .   . 4

## STATUTES INVOLVED

18 U.S.C. § 3231.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . 2

§ 3663A.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .10

§ 3663(a)(1)(A).   .   .   .   .   .   .   .   .   .   .   .   . 8,10

26 U.S.C. § 6001.   .   .   .   .   .   .   .   .   .   .   .   .   .   . 17

§ 6011.   .   .   .   .   .   .   .   .   .   .   .   .13,14,17,19

§ 6012.   .   .   .   .   .   .   .   .   .   .   .   .13,17,19,23

§ 6065.   .   .   .   .   .   .   .   .   .   .   .   .   . 14,15

§ 6091(a).   .   .   .   .   .   .   .   .   .   .   .   .   . 13,15

§ 6091(b).   .   .   .   .   .   .   .   .   .   .   .   .   . 13,15

§ 7201.   .   .   .   .   .   .   .   .   .   .   .   .   .8,20,21

§ 7203.   .   .   .   .   .   .   .   .   .   .   .   .   . 17,20

§ 7608(b).   .   .   .   .   .   .   .   .   .   .   .   . 6,7,8

§ 7611(a)(2).   .   .   .   .   .   .   .   .   .   .   .   .   .2

§ 7701(a)(11)(A).   .   .   .   .   .   .   .   .   .   .   .   .1

§ 7801(a)(1).   .   .   .   .   .   .   .   .   .   .   .   . 1,4

§ 7803(a).   .   .   .   .   .   .   .   .   .   .   .   .   . 1,4

§ 7805(a).   .   .   .   .   .   .   .   .   .   .   .   .   . 14

28 U.S.C. § 541.   .   .   .   .   .   .   .   .   .   .   .   .   . 3,4

§ 542.   .   .   .   .   .   .   .   .   .   .   .   .   .   . 3

§ 547(1).   .   .   .   .   .   .   .   .   .   .   .   .   .2,3,4

-vi-

## STATUTES INVOLVED (con'td)

44 U.S.C. § 3506(c)(1)(B)(i). . . . . . . . . . . . 16

§ 3506(c)(1)(B)(ii). . . . . . . . . . . . .16

§ 3506(c)(1)(B)(iii)(I). . . . . . . . . . .16

§ 3506(c)(1)(B)(iii)(II). . . . . . . . . . 16

§ 3506(c)(1)(B)(iii)(III). . . . . . . . . . 16

§ 3506(c)(1)(B)(iii)(IV). . . . . . . . . . 16

§ 3506(c)(1)(B)(iii)(V). . . . . . . . . . .16

§ 3507. . . . . . . . . . . . . . . . .16

§ 3512(a)(1995). . . . . . . . . . . . .16

## REGULATIONS INVOLVED

5 CFR § 1320.8(b)(3). . . . . . . . . . . . . 16

26 CFR § 1.6011-1. . . . . . . . . . . . . .14

§ 1.6012-1(a)(6). . . . . . . . . . . 14,19

§ 1.6065-1. . . . . . . . . . . . . .14

§ 1.6091-2(2005). . . . . . . . . . . 15

§ 1.6091-2(1999 to 2004). . . . . . . . . 15

28 CFR § 0.136. . . . . . . . . . . . . . . .3

§ 60.2(a). . . . . . . . . . . . . . 7

§ 60.2(b). . . . . . . . . . . . . . 7

## MISC.

Section 35 of the Judicary Act of 1789, 1 Stat. at Large, § 92. . . . .4

Federal Rules of Criminal Procedure Rule 41. . . . . . . . . 7

MEMORANDUM AND BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO VACATE, SET ASIDE, AND CORRECT
CONVICTION, SENTENCE AND JUDGMENT

GROUND ONE THROUGH FOURTEEN

(a) Ground One

June 3, 2005 is the date all administration and enforcement authority Congress granted the Secretary of the Treasury ceases and is transferred to a local U.S. Attorney for Grand Jury indictment.[1]

Congress withheld jurisdiction over Title 26, and Title 26 related offenses from the U.S. Attorney without a proper referral.[2]

"Federal Courts are not Courts of general jurisdiction. They have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress." [3]

It is presumed that a cause lies outside this limited jurisdiction,[4] and the burden of establishing the contrary rests upon the party asserting jurisdiction.[5]

Subject matter jurisdiction cannot be waived by an agreement of the parties and correction is mandatory.[6]

26 U.S.C. § 7801(a)(1) specifically states:

"Except as otherwise expressly provided by law the administration and enforcement of this title shall be performed by or under the Supervision of the Secretary of the Treasury."

26 U.S.C. § 7803(a) directs the duties of the Commissioner of Internal Revenue ("CIR") are those prescribed by the Secretary [of the Treasury].

The term "Secretary of the Treasury" is defined to only mean at 26 U.S.C. § 7701(a)(11)(A):

"The Secretary of the Treasury personally, and shall NOT include any delegate."

---

1.  See U.S. v. LaSalle, 437 U.S. 298, 312(1978)("A referral...permits criminal litigation to proceed. The IRS cannot try its own prosecutions. Such authority is reserved...to the U.S. Attorney. 28 U.S.C. § 547(1).")
2.  See LaSalle, at 308 ("The Secretary of the Treasury and the [CIR] are charged with the responsibility of administering and enforcing the Internal Revenue Code.")
3.  Bender v. Williams Area Sch.Dist., 475 U.S. 534, 541 (1986)
4.  Turner v. Bank of North America, 4 Dall 8, 11(1799)
5.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377(1994)
6.  U.S. v. Cotton, 535 U.S. 625, 630(2002)

The June 3, 2005 proffered letter of referral for years 2000 through 2004 is not signed by the Secretary of the Treasury personally.[7] See Doc. 80-10; 224-16

Without a proper referral to the U.S. Attorney authorizing enforcement of Title 26, or Title 26 related offenses, Congress withheld authority to prosecute such offenses from the U.S. Attorney under 28 U.S.C. § 547(1).

Without a proper referral the U.S. Attorney has no authority to present an indictment to a Grand Jury in effort to obtain and enforce Title 26, or Title 26 related offenses.

18 U.S.C. § 3231 limits a Federal Court's Jurisdiction to only "offenses against the laws of the United States."

Without a proper referral the District Court is without jurisdiction and cannot proceed at all in any case.[8]

If once a criminal referral has been made the CIR is under "well known restraints"[9] then without a referral the U.S. Attorney, Grand Jury, and District Court, are each under the same well known restraints.

The United States District Court for the Northern District of Oklahoma lacked jurisdiction over the subject matter alleged in each of the Six Counts of the Grand Jury indictment and the United States Attorney or Grand Jury lacked standing to sue Defendant over Title 26, and Title 26 related offenses for want of a Grand Jury referral signed and issued by the Secretary of the Treasury.[10]

(b) Ground Two

The referral must be to a U.S. Attorney for prosecution to be authorized at

---

7. The June 3, 2005 letter is signed by Mr. Lacenski as Special Agent in Charge.
8. Steel v. Citizen for Better Env't., 523 U.S. 83, 95 (1998)
9. Bedarco v. CIR, 646 U.S. 386, 399(1983)
10. See U.S. v. Livingword Christian Church, 2009 Dist. Minn., Lexis 6902(quashing summons due to Agent First not obtaining a "resonable belief" letter (in writing) from a proper "high-level Treasury official" pursuant to 26 U.S.C. § 7611(a)(2) and (h).

28 U.S.C. § 547(1).[11]

The appointment of U.S. Attorney is provided by Congress at 28 U.S.C. § 541.

Congress provides for assistant U.S. Attorneys to be appointed by the Attorney General at 28 U.S.C. § 542.[12]

U.S. Attorney David O'Mielia was nominated by the President and confirmed by the Senate until he resigned his office as of June 28, 2009 from the Northern District.

Trial began on October 26, 2009 in 09-CR-043, see Doc. 215, and ended on November 16, 2009. Doc. 245.

Although Mr. O'Reilly and Snoke profered that assistant U.S. Attorney Scott Woodward became at all time after June 28, 2009 "acting" U.S. Attorney, and at all times relevant to Defendant's prosecution, Mr. Woodward could never be "Designated as "Acting United States Attorney."

28 CFR § 0.136 entitled "Designation of Acting United States Attorney" states:

"Each U.S. Attorney is authorized to designate any assistant U.S. Attorney in his office to perform the functions and duties of the U.S. Attorney during his absence from office..."

The Office of U.S. Attorney at 28 U.S.C. § 541 is a "high-government position."[13]

The "structural interests protected by the appointment clause are not those of any one branch of government but of the entire union."[14]

"An appointee exercising significant authority pursuant to the laws of the United States is an 'officer of the United States,' and MUST, therefore, be appointed in the manner prescribed by § 2, Cl. 2 of that Article [Article II]."[15]

The appointment clause is "more than a matter of 'etequette or protocol,' its among the significant structural safeguards of the Constitutional scheme."[16]

---

11. See U.S. v. Bradshaw, 580 F.3d 1129, 1136(10th Cir. 2009)
12. In 2009, Attorney General Holder stated to his assistants "Your job as assistant U.S. Attorneys is not to convict people...Your job is to do justice." See U.S. v. Jones, 620 F. Supp. 2d 163, 185(D.C. Mass, 2009)
13. In Re Nofziger, 925 F.2d 428, 437(D.C. Cir. 1991)
14. Freytag v. CIR, 501 U.S. 868, 880(1991)
15. Bukley v. Valeo, 424 U.S. 1, 126(1976)
16. Edmonds v. U.S., 520 U.S. 651, 659(1979)

Both a "failure to perform [a duty], or an erroneous performance, is regarded as an injury to the public."[17]

The settled rule is:

"that those Courts will not recognize any suit, civil or criminal, as regularly before them if prosecuted in the name and for the benefit of the United States, unless the same is represented by the district attorney, or someone designated by him to attend to such business, in his absence as may pertain to the duties of his office."[18]

Section 35 of the Judiciary Act of 1789, 1 Stat. at Large, § 92, provides:

"the appointment of a attorney of the United States in each district, and the same section makes it his duty to prosecute in such district, all delinquents for crimes and offenses cognizable under the authority of the United States."[19]

An attorney for the United States is to be enjoined when "acting outside his statutory authority."[20]

Mr. Woodward was not a U.S. Attorney pursuant to 28 U.S.C. §§ 541 or 547(1).

Mr. Woodward could not be an "acting" U.S. Attorney without a U.S. Attorney to authorize him to so act, and from June 28, 2009, no such U.S. Attorney under 28 U.S.C. § 541 or § 547(1) existed for the Northern Judicial District of Oklahoma that then would allow Defendant to be prosecuted.

Congress did not authorize Defendant to be prosecuted for any offense, including Title 26 Offenses, or Title 26 related offenses, that Congress initially placed under the direct control of the Secretary of the Treasury at 26 U.S.C. § 7801, or his CIR at 26 U.S.C. § 7803(a), without a properly appointed U.S. Attorney.

The conviction, sentence, and judgment are void.

(c) Ground Three

The June 3, 2005 letter identifies years 2000 through 2004 only. Doc. 80-10; 224-16.  Count One alleges 2000 through 2009; Count Two same; Count Three alleges

---

17.  Yaselli v. Goff, 12 F.2d 396, 404(2nd Cir. 1926)
18.  Confiscation Cases, 7 Wall 454, 457(1864)
19.  Confiscation Cases, 7 Wall at 456
20.  Fay v. Miller, 183 F.2d 986, 988 (D.C. Cir. 1950)

2003 through 2009; and Count Four alleges 2005 through 2009.

Each Counts One through Four exceed the proffered referral time period.

(d) Ground Four

The June 3, 2005 letter identifies Defendant and Defendant's tax liabilities for 2000 through 2004. The January 6, 2007 letter adding Oscar Stilley does not modify the Tax Years 2000 through 2004 preferred by the June 3, 2005 letter.

Notwithstanding Grounds One, Two, and Three, no evidence exists that shows the Secretary of the Treasury referred Oscar Stilley's tax liabilities for any years to the Northern Judicial District of Oklahoma, or anywhere else for that matter, for prosecution.

However, in denying Defendant a new trial free of the Court's erroneous charge involving Count One's scope, which boadened Count One, the Trial Judge held:

"Count One references Mr. Stilleys failure to file Form 1040 and alleges conduct by Mr. Stilley that is independent of Mr. Springer's income." [21]

Alleging a failure to report something in the State of Arkansas does not allege a tax liability of Stilley. Even if it did, the referral disproves authority to enforce it.

The Trial Judge at sentencing included, among others, Tax Loss and Restitution calculations from Stilley's State and Federal Tax Liabilities. [22]

Either a new Trial without Stilley's liabilities being considered at issue or dismissal of the indictment on Count One is warranted for exceeding the referral jurisdiction.

(e) Ground Five

The IRS's enforcement jurisdiction to issue summons, subpoenas, or seek and obtain a search warrant regarding Defendant's tax liabilities from 2000 through 2004 ceased on June 3, 3005. Doc. 80-10; 224-16

---

21. See Doc. 293, pg. 8
22. See Doc. 401, pgs 407 to 409, 431 to 433

The June 3, 2005 letter for 2000 through 2004 names both assistant U.S. Attorney Melody Nelson and Special Agent Brian Shern. Id.

The restraints on the IRS is "well known" after referral. [23]

On September 15, 2005, Mr. Shern applied for a search warrant pursuant to his purported statutory authority at 26 U.S.C. § 7608(b). [24]

Ms. Nelson declared under penalty of perjury, as of September 15, 2005, she was "assigned to a case involving investigation by the Internal Revenue Service" and "as part of this investigation" she prepared a search warrant of Defendant's residence. [25]

Mr. Shern also declared that as of September 15, 2005 he prepared and requested a search warrant including attachments A and B of Defendant's home in pursuit of an IRS criminal investigation. [26]

"LaSalle's discussion of bad faith continues to have application to situations where the IRS is alleged to have used the summons as a means of harrassment or as a means to gather information for some other law enforcement entity." [27]

"Bad faith means '[d]ishonesty of belief or purpose."[26]

"[t]he Internal Revenue Code itself terminates the IRS's investigative authority on referral." [28]

Mr. Shern had no § 7608(b) authority after June 3, 2005 to seek or obtain any search warrant on Defendant's home. [29]

As of June 3, 2005 the Secretary of the Treasury would have had no responsibility, as the Government used the June 3, 2005 letter to say a referral of the IRS's criminal enforcement, or other enforcement, was laid in the hands of the U.S. Attorney. [30]

23. Bedarco, 646 U.S. at 399
24. See Doc. 100, Def. Exh. 1; Doc. 75-20; See also Doc. 35-8, pg. 2
25. See Doc. 37-2, pg. 2; Doc. 75-18, pg. 2
26. See Doc. 35-8, pg. 2 ; U.S.v. Lain, 640 F.3d 1134, 1137(10th Cir. 2011)
27. U.S. v. Rineheart, 539 F. Supp. 2d 1334, 1336 (W.D.Ok. 2006)
28. Linda Thompson, et al., v. Resolution Trust Corp., F.3d 1508, 1518(D.C. Cir. 1993); citing LaSalle, 437 U.S. at 312-313
29. Section 7608(b) states "for which the Secretary is responsible.."
30. U.S. v. Springer, 444 Fed. Appx 256,   (10th Cir. 2011)

The Grand Jury cannot be referred by the June 3, 2005 letter and at the same time the IRS remain with simultaneous and joint enforcement authority over the same years. Such use is forbidden by the prophylactic rule gather for other agencies.

Both Shern, Ms. Nelson, and Magistrate McCarthy were aware Shern had no such authority under § 7608(b) accepting the June 3, 2005 letter as the line of demarcation as of and prior to September 15, 2005 which this Court is bound by.

Shern had no jurisdiction, and his affidavit and search warrant were obtained in Bad faith, without authority, including the Ten Agents with him on September 16, 2005, and the fruit of that poisoned tree, including all testimony claimed and all evidence obtained and used at trial, must have been and must now be suppressed finding the Search Warrant was obtained by false and fraudulent claims of authority which were advanced by both Shern and Nelson.

(f) Ground Six

Rule 41(a) of the Federal Rules of Criminal Procedure states that a Federal Magistrate may issue a search warrant "upon the request of a federal law enforcement officer or an attorney for the Government." [31]

None of the 11 Special Agents had law enforcement officer authority under 26 U.S.C. § 7608(b) as of September 15, or 16, 2005 from Congress or the Secretary.

Nor did any of the 11 Agents, including Mr. Shern, have an enforcement officer status regarding Defendant after June 3, 2005 under 28 CFR § 60.2(a) and (b). [32]

Because of the well known and unique nature of Title 26 offenses, or related offenses, Shern was not a "Federal Law Enforcement Officer" regarding Defendant and Tax Years 2000 through 2004 after June 3, 2005, that was available to seek or serve a search warrant on September 16, 2005 gathering evidence for the U.S. Attorney.

The Grand Jury alleged:

---

31.  Taxacher v. Torbic, 2000 U.S.D.C. Lexis 15193 (W.D.Penn 2000)
32.  A "Federal Law Enforcement Officer" is "any government agent who is engaged in the enforcement of the criminal laws and is within the category of officers authorized by the Attorny General to request the issuance of a search warrant. Fed. R.Cr. Pr. 41(h); 28 CFR § 60.2." Id.

"on or about September 16, 2005, Defendant Springer told Internal Revenue Service employees that all funds he received are gifts and donations..." [33]

Counts Two, Thee, and Four also allege Defendant made false statements to Internal Revenue Service employees which as of or after June 3, 2005, was not legally true.

The evidence gathered by the search warrant served on September 16, 2005, and any statements made by Defendant on or after June 3, 2005, must be suppressed, and the fruit from the poisoness tree as Shern was not a law enforcement officer under § 7608(b) capacity during all times after June 3, 2005.

(g) Ground Ten

The Trial Judge ordered Defendant to pay the State of Oklahoma $ 80,000 presumably for 1990 to 1995, 1999, and 2000 through 2007.

First, 18 U.S.C. § 3663(a)(1)(A) only authorizes a district court to order restitution if the Defendant violates certain criminal statutes set forth therein.[34]

Section 3663 does not include 26 U.S.C. § 7201." Id

The State of Oklahoma is not a party to the June 3, 2005 letter of referral.

The District Court does not have the authority to impose restitution pursuant to § 3663. [35]

"Freedom is enhanced by the creation of two governments, not one." [36]

"The question is not what power the Federal Government ought to have but what powers in fact have been given by the people." [37]

The Tenth Amendment provides "an explicit textual source of constitutional protection" against a particular sort of government power. [38]

"If a power is an attribute of State sovereignty reserved by the Tenth Amendment it is necessarily a power the constitution has not conferred on Congress." [39]

33. Doc. 2, pg. 4
34. U.S. v. Anderson, 545 F.3d 1072, 1078(D.C. Cir. 2008)
35. U.S. v. Hassebrock, 663 F.3d 906, 925(7th Cir. 2011)
36. Alden v. Maine,527 U.S. 706, 758(1999)
37. U.S. v. Butler, 297 U.S. 1, 63(1936)
38. Graham v. Condor, 490 U.S. 386, 395(1989)
39. New york v. U.S., 505 U.S. 144, 156 (1992)

"Impermissive interference with State sovereignty is not within the enumerated powers of the National Government."[40]

For purposes of both  Restitution and Tax Loss calculations, the District Court had no jurisdiction to include any "Tax Loss" the Court found Defendant owed the State of Oklahoma, or that Stilley owed the State of Arkansas, in its determination of sentence and restitution order.

The District Court must vacate its sentencing and Restitution order removing the State of Oklahoma as both to Tax Loss from Defendant's lenth of sentence and restitution order, as well as Stilley's losses proffered to the State of Arkansas because the term "tax" in "tax loss" means Federal Taxes only. To the extent the Sentencing Guidelines advise otherwise Defendant claims such application is unreasonable in light of Federalism issues raised by such construction and must be rejected by the District Court for want of jurisdiction.

(h) Ground Eleven

The Sixteenth Amendment says Congress was surrendered by the States their full power to tax income without the limitation of apportionment.[41]

"If a power is delegated to Congress in the Constitution the Tenth Amendment expressly disclaims any reservation of that power to the States..."[42]

At no time did the 50 States, including the State of Oklahoma, reserve power to tax income in the manner enumerated to the United States in the 16th Amendment.

Although the Court did not identify the State of Oklahoma statutes it relied upon supporting its restitution of more than $ 80,000, notwithstanding Ground  Ten. Defendant claims such a law is repugnant to the Constitution of the United States.

(i) Ground Twelve

The restitution order is definitely difficult to understand.  However, it is clear that the restitution years extend far outside years 2000 through 2004.

---

40.  Bond v. U.S., 131 S.Ct 2355, 2359(2011)
41.  Brushaber v. Union Pacific RR Co., 240 U.S. 1, 17(1916)
42.  New York, 505 U.S. at 156

The years identified are 1990 to 1995, 1999, and 2000 through 2007. The restitution order apparently includes Stiley's Tax Liabilities, but to what extent or degree the transcript does not say, and whether it includes the tax liabilities of Mr. Turner, is likewise unclear.

18 U.S.C. § 3663 or § 3663A do not set forth any Title 26 offenses, or Title 26 related offenses. [43] The District Court does not have authority to impose restitution pursuant to § 3663. [44]

On this ground, Defendant claims the restitution order exceeds the time limitations of the proffered referral exceeding the limitation of years 2000 through 2004, and going beyond the charges for those years, and exceeding Defendant's claimed liabilities.

(j) Ground Thirteen

Defendant's Six Counts obviously go beyond years 2000 through 2004. Doc. 2

In the Court's order for restitution it does not identify what particular statutory authority it claimed authorized it to impose restitution in any amount. Doc. 401, pg. 337, ln 6

18 U.S.C. § 3663 does not list any Title 26 offenses, or Title 26 related offenses.[45]

No restitution is authorized for Counts Two through Six as these are Title 26 offenses.   Count One is a Title 26 related offense and it also is not within the reach of § 3663.  Congress would not have withheld jurisdiction on Title 26 offenses but granted jurisdiction on Title 26 related offenses to impose restitution.

The Court simply had no jurisdiction to order restitution to anyone as Congress did not authorize restitution in the offenses of each of the Six Counts.

---

43. U.S. v. Anderson, 545 F.3d 1072, 1078(D.C. 2008)
44. U.S. v. Hassebrock, 663 F.3d 906, 922(7th Cir. 2011)
45. Anderson, 545 F.3d at 1078; Hassebrock, 663 F.3d at 925

GROUND FIFTEEN THROUGH TWENTY-SEVEN

Ground Fifteen to Twenty-Seven are basically premised on the revelation by the Government for the first time after Judgment, and the Tenth Circuit's holding that Form 1040 was divorced from the obligations and duties alleged in all Six Counts.

The Grand Jury alleged Defendant had not filed individual income tax returns since the late 1980s (¶ 6)(incorporating this claim in to all Counts); that Defendant refrained from filing forms with the IRS including Form 1040 (¶ 14)(See also Doc. 293, pg. 8), and willfully failed to file United States Individual Income Tax Returns or make income tax return to the proper person and place required by law. (¶¶ 41,43,45, 47,49)

The Government filed two bills of particulars pointing directly at Form 1040, See Doc. 104,201, and the Court with Defendant had numerous discussions about 1040.[46]

Had Defendant been given notice the offense conduct in each Count was "divorced" instead of inexorably linked to each Count's offense conduct, and thus each element,[47] Defendant would have conducted himself entirely different in every right he had. [48]

The "Court cannot permit a defendant to be tried on charges that are not made in the indictment." [49]  Therefore, "after an indictment has been returned its charges may not be BROADENED through amendment except by Grand Jury." [50]

To be punished as a criminal under Federal Law the case against a Defendant "must be plainly and unmistakably within the provision of some statute."[51]

"This principal is found on two policies that have been part of our tradition."[52]

First, a "fair warning should be given to the world in language the common world will understand of what the law intends to do when a certain line is passed." Id.  "To make the warning fair, so far as possible, the line should be clear." [53]

---

46. See Springer Declaration at pgs. 17 to 19
47. Hamling v. U.S., 418 U.S. 87, 117(1974)
48. See Springer Declaration at pgs. 40 to 43
49. U.S. v. Miller, 471 U.S. 130, 134(1985)
50. U.S. v. Farr, 536 F.3d 1174, 1180(10th Cir. 2008)
51. U.S. v. Gradwell, 243 U.S. 476, 485(1917)
52. U.S. v. Bass, 404 U.S. 336, 347(1971)
53. McBoyle v. U.S., 283 U.S. 25(1931); Bass, at 347

Second, "because of the seriousness of criminal penalties, and because criminal penalties usually represent the moral condemnation of the community, legislatures and not Courts should define criminal activities." Id.

"A deprivation of the right to fair warning can result not only from vague statutory language but also from unforseeable and retroactive judicial expansion of narrow and precise statutory language." [54]

The tax laws are "very complex," [55] and "[i]migration law has been described ...as 'second only to the internal revenue code' in terms of complexity." [56]

And 26 years later the tax laws are even more complex as the Commissioner says:

"we try to create forms and instructions that can be easily understood. Often this is difficult to do because our tax laws are very complex." [57]

"The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions." [58] "A criminal statute cannot rest upon an uncertain foundation. The crime and elements constituting it must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue." [59]

"Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the Courts upon another." Id.

No person is "required to speculate as to the meaning of penal statutes." [60]

The Grand Jury alleged Form 1040 and United States Individual Income Tax Returns in or meant in each of the Six Counts, and the Tenth Circuit, at the Government's insistance, switched the Six Counts from inexorably linked to divorced from Form 1040.

If the Courts can change the "charging part of indictment to suit its own notion ...the great importance" of a Grand Jury is dead. [61]

54. Bouie v. City of Columbia, 378 U.S. 347, 352(1964)
55. Bob Jones v. U.S., 461 U.S. 574, 596(1985)
56. Castro-O'Ryan v. U.S. Dept. of Imig., 847 F.2d 1307, 1312(9th Cir. 1987)
57. See Springer Declaration at 1,2; See Def. Trial Exh. at 24,26,28,30,32,34
58. Connolly v. General Const. Co., 269 U.S. 385, 391(1926)
59. Connolly, at 393
60. Bouie, 387 U.S. at 351
61. U.S. v. Miller, 471 U.S. 130, 134(1985)

The "system of self assessment," also called "self reporting and self assesment one," [63] is "based upon the voluntary assessment and payment, not upon distraint." Id.

"The Federal Tax system is basically one of self assessment, whereby taxpayer computes the tax due and then files the APPROPRIATE FORM OF RETURN along with the requisite payment." [64]

The Supreme Court referred to the "wagering excise tax" as a "statutory obligation" requiring by the Statutory "scheme" to "submit...Form 730." [65]

The "code and regulations must be construed in light of the purpose to locate and check upon recipients of income and the amount they received." [66]

"We are dealing with criminal sanctions in the complicated, technical field of revenue laws." Id. "But at the same time every citizen is entitled to fair warning of the trap which the criminal law lays." Id.

The "purpose is not alone to get tax information in some FORM, but also to get it with such uniformity, completeness, and arrangment that the physical task of handling and verifying returns may be readily accomplished." [67]

The code does not define "file" or "return." Courts have long held for returns to be considered "filed," the "returns must be delivered IN THE APPROPRIATE FORM to the specific individual or individuals identified in the code and regulations." [68]

Congress directs "Tax Returns" required by 26 U.S.C. §§ 6011 and 6012 to be filed pursuant to 26 U.S.C. § 6091(b), not § 6091(a). [69]

"To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notion of due process." [70]

---

62. U.S. v. Boyle, 469 U.S. 241, 249(1985)
63. Flora v. U.S., 362 U.S. 145, 176(1960)
64. U.S. v. Galletti, 541 U.S. 114, 122(2004); see also Hollywell v. Smith, 503 U.S. 47, 53(1992)(tying duty to pay income taxes to duty to make an income tax return)
65. Grosso v. U.S., 390 U.S. 62, 65(1968)
66. Connolly, 269 U.S. at 393
67. CIR v. Lanewells, 321 U.S. 219, 223(1944)
68. Allnutt v. CIR, 523 F.3d 406, 413(4th Cir. 2008)
69. See Allnutt at 412; cited for other reasons by the Panel, 444 Fed. Appx. at 262; see also Byers v. Intuit, Inc., 600 F. 3d 286, 293(3rd Cir. 2009); U.S. v. Miller, 444 Fed. Appx. 106, 108(8th Cir. 2011); U.S. v. Barry, 327 Fed. Appx. 3,6(11th Cir.2010)
70. Dunn v. U.S., 442 U.S. 100, 106(1979)

"It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." [71]

The Government must prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." [72]

The verb "prescribe" in 26 U.S.C. § 6011 and § 7805(a), also appearing at 26 CFR § 1.6011-1, as both §§ 6011 and 1.6011-1 appear in both bills of particualrs, means "to lay down the rule." [73]

The "language of [1.6012-1(a)(6)] is not permissive or indicative of OPTIONAL compliance." Id (holding taxpayer "must make his return on Form 1040.")

Congress directs at 26 U.S.C. § 6065 the decision whether information sought on a form should be verified to the discretion of the Secretary [of the Treasury]. See also 26 CFR §1.6065-1(directing forms indicate whether verification is required).

"Form 1040 is a prescribed form on which to prepare the return." [74]

Defendant's entire defense was based on the allegation in each Count and both bills of particulars regarding Form 1040 and United States Individual Income Tax Return.

Recently, the 11th Circuit reversed a conviction because the pro-se Defendant did not understand about his right to testify. [75]

"[i]f the laws are unconstitutional and void the [District] Court acquired no jurisdicition of the cause." [76]   "An unconstitutional law is void and is no law." [77]

When a law is unconstitutinal it "was...as inoperative as if it had never been passed." [78]

71. Cole v. Arkansas, 333 U.S. 196, 201(1948)
72. In Re Winship, 397 U.S. 358, 364(1974)
73. Manka v. U.S., 1993 U.S. District of Colorado, Lexis 5343
74. Barnes v. Rehbern, 2006 U.S. District of New Mexico, Lexis 67624
75. U.S. v. Hung Thein Ly, 646 F.3d 1307, 1318(11th Cir. 2011)
76. Ex Parte Siebold, 100 U.S. 371, 376-77(1880)
77. Nigro v. U.S. 276 U.S. 332, 341(1828)
78. Chicago I & L.R. Co. v. Hackett, 278 U.S. 559, 566(1913)

The two constructions, one alleged by the Grand Jury inexorably linking each Count to or based upon Form 1040 United States Individual Income Tax Returns, as also in accord with the Secretary of the Treasury and CIR, and the Tenth Circuit's holding Form 1040 is divorced, as insisted by the Government on appeal, are at opposite poles.   Two constructions, one where Congress directs "Tax Returns" ("Part II") comply with the place specifically set forth at 26 U.S.C. § 6091(b), and the Tenth Circuit switched "Tax Returns" to § 6091(a).  Two constructions, one demanding no Treasury Regulations are at issue in the obligations and duties alleged in the Six Counts by the Grand Jury, and after the double speak by the Government Attorneys, the Tenth Circuit saves all Six Counts on the 2005 version of 26 CFR § 1.6091-2 applying the 2005 version to years 2000 through 2004, and where the District Court for sentencing purposes applied the 2005 version back to 1999, which is prohibited by the Ex Post Factor Clause of the Constitution, Article I, § 9, Cl. 3 and 26 U.S.C. § 7805(b). This multiple construction also caused the place taxes were due and owing under 26 U.S.C. § 6151 to move from 26 U.S.C. § 6091(b) to Treasury Regulations which was another switch at issue in Counts One through Four (unless the Court insists Counts 5 and 6 are failure to pay, instead of failure to file or make, as it switched Counts 2,3 and 4 to evasion of payment). This switch had major impact on sentencing issues.

And there can be no doubt under 26 U.S.C. § 6065 Congress directs the Secretary to determine when information sought is to be verified which flies in the face of the Government's claim the requirement to file a verified "Tax Return" is mandated by Statute. The statutes and regulations must be construed against the Government.[79]

GROUND TWENTY-EIGHT THROUGH THIRTY

The Trial Judge directed the Jury he had factually found Form 1040 did not violate the Paperwork Reduction Act.[80]  At sentencing, the trial judge said he had rejected the PRA defense as a matter of law and the jury rejected it as a factual matter.[81]  Mr. Barringer appealed to the Tenth Circuit and it stated he failed to show

79. Gould v. Gould, 245 U.S. 151, 153 (1917)
80. Doc. 293, pg. 6; Doc. 393, pg. 1949, ln 16-18
81. Doc. 399, pg. 8, ln 21-23

Form 1040 violated the PRA. [82] Finding Form 1040 "divorced" is completely different from telling the Jury Form 1040 did not and does not violate the PRA both factually and legally. This is Defendant's sixth time attempting to have the Court rule on obvious meritorious claims Form 1040 is a bootleg Form. [83] Defendant cannot find anywhere in the Court's record below where the finding Form 1040 complied with the PRA was made with any analysis whatsoever. Form 1040 does not display an OMB number issued in accordance with the PRA.

Form 1040 United States Individual Income Tax Return for 1995 through 2007 did not display what is mandated by 44 U.S.C. §§ 3506(c)(1)(B)(i), (ii), (iii)(I), (iii)(II), (iii)(III), (iii)(IV), (iii)(V), and 3507 or 3512(a)(1995).

Furthermore, Form 1040 does not comply with the "certification" the IRS filed with OMB for the three year periods of 1998, 2001 and 2004, which the IRS purportedly and falsley certified Form 1040 displayed compliance with 5 CFR § 1320 8(b)(3). See Doc. 54, Exhibit 6,7 and 8

Defendant had a good faith defense as to why he chose not to supply the information asked by the Secretary of the Treasury and CIR on Form 1040. [84]

The law is clear that a taxpayer may reasonably rely on the advice of counsel on issues of tax law. [85]

The Tenth Circuit actually reported in one of Defendant's cases that he raised difficult issues between the tax code and the PRA. [86]

Defendant is allowed by Congress to raise the public protection of the PRA at any time and now  he has been a "defendant," [87] and now the Federal Courts has refused to provide a merits based analysis on Defendant's claims. Defendant now is raising the public protection again. [88]

82. 444 Fed. Appx. at 262
83. Springer Declaration at pgs. 4,5,25
84. Springer Declaration at pgs. 1 to 6, 9,12, 18 to 25
85. U.S. v. Boyle, 469 U.S. 241, 251 (1985)
86. Springer v. CIR, 580 F.3d 1142, 1145(10th Cir. 2009)
87. U.S. v. Springer, 08-CV-278(N.D.Ok. 2008)
88. Springer Declaration at 2 ; See Grounds 28 to 30

Defendant "shows" Form 1040 does not comply with the PRA by explaining in his declaration the areas of the Paperwork Reduction Act to which Form 1040 is deficient.[89]

GROUND THIRTY-ONE

The Secretary of the Treasury and CIR entrap the public directing in their instructions for Form 1040 that under 26 U.S.C. §§ 6001, 6011, and 6012(a), and their regulations, the public must use Form 1040 (saying it is "mandatory."). [90]

The Secretary of the Treasury and CIR also direct the public to scrutinize Form 1040 and if it does not comply with the Paperwork Reduction Act the public is "not required to provide the information" asked for. [91] This is called scrutinize.

The Secretary of the Treasury and CIR direct "your response is mandatory under these sections...You must fill in all parts of the TAX FORM that apply to you." [92]

There is no question the Grand Jury alleged the requiement to file a "Form 1040" or "United States Individual Income Tax Return" and "income tax return," in each Count. Doc. 2, ¶¶ 6,9,14,41,43,45,47,49

The Trial Judge asknowledged this numerous times. [93] Defendant was allowed to present a good faith defense on why he did not willfully fail to file Form 1040. [94]

Defendant preserved the record regarding the Court's instruction to the Jury it had factually found Form 1040 did not violate the PRA and even justified its inclusion of Stilley's liabilities in Count One due to ¶ 14's allegation Stilley refrained from filing with the IRS Form 1040. [95]

However, during Defendant's appeal the Tenth Circuit held Form 1040 is divorced from 26 U.S.C. §§ 6012 and 7203, [96] and no crime arises out of Form 1040. Id.

---

89. Springer Declaration at pgs. 1 to 3,9,25,37,41
90. Springer Declaration at pgs. 1,2
91. Springer Declaration at pgs. 1,2,25
92. Springer Declaration at pgs. 1,2
93. Springer Declaration at pgs. 1 to 3, 16 to 19,21,25.31.32
94. Springer Declaration at pgs. 19,25
95. Doc. 293, pg. 8
96. 444 Fed. Appx. at 262; See also Doc.104 including § 7203 as lessor included offense.

Furthermore, the Tenth circuit held the PRA may apply to giving "faulty inform-
ation on a non-compliant IRS Form but they cannot use the PRA to side step criminal
offenses arising under the Internal Revenue Code." Id.

This decision or statement is in conflict with a decision by the Tenth Circuit
that is not mentioned in its order. [97]

Furthermore, in Four different appeals Defendant challenged Form 1040 for
violating the PRA and never did the Tenth Circuit say Form 1040 was divorced from the
requirement to file an income tax return or that the PRA did not apply to non-compli-
ant IRS Forms. [98]   In fact, on August 31, 2009, the Tenth Circuit held Defendant
raised difficult issues between the tax code and the PRA. [99]

The Secretary of the Treasury and CIR explain they are "ask[ing] for information"
as a legal right. [100]

In order to establish an entrapment-by-estoppel defense a defendant must prove
(1) that there was an "active misleading by a government agent"; (2) that the defend-
actually relied upon the agents representation, which was "reasonable in light of the
identity of the agents"; (3) that the government agent is "one who is responsible for
interpreting, administering, or enforcing the law defining the offense." [101]

The Supreme Court held the conviction of a defendant "for exercising a privilege":
"which the State had clearly told him was available to him [was an] indefensible
sort of entrapment by the State.." [102]

A claim of entrapment by estoppel is at heart of due process. [103]

Defendant clearly satisfies all three of the entrapment by estoppel elements.

First, the Secretary of the Treasury and CIR actively misled Defendant regarding
three key issues in the Six Counts against Defendant: (1) the Form 1040 is mandatory

97.  U.S. v. Collins, 920 F.2d 619, 631 and (n. 12 & 13)(10th Cir. 1990)
98.  Springer Declaration at pgs. 3 to 5, 36
99.  Springer v. CIR, 580 F.3d 1142, 1145(10th Cir. 2009)
100.  Springer Declaration at 1 ; Trial Def. Exh. 24,26,28,30,32,34
101.  U.S. v. Bader, 678 F.3d 858, 886(10th Cir. 2012);citing U.S. v. Apperson,
441 F.3d 1162, 1204(10th Cir. 2006); U.S. Hardridge, 379 F.3d 1188(10th Cir. 2004)
102.  Accord Cox v. Louisianna, 379 U.S. 559, 571(1965)
103.  Raley v. Ohio, 360 U.S. 423, 426(1959)

when the Tenth Circuit says its not; (2) that Form 1040 asks questions of an individual required by Title 26 §§ 6011 and 6012 when there is no such legal right; (3) and that Form 1040 is subject to the public protection of the Paperwork Reduction Act which the Tenth Circuit said is not true because no person is required to use Form 1040.

The Secretary of the Treasury prescribes at 26 CFR § 1.6012-1(a)(6) Form 1040. The Grand Jury alleged it and up until October 26, 2011, Defendant believed it.

Second, there is no doubt Defendant relied upon the Secretary of the Treasury and CIR's words and regulations in choosing his pre-indictment conduct. [104]

Defendant sought a merits ruling in April of 2005 on his PRA claims. Defendant not only sought judicial findings he also created public access to a web page that provided information regarding Form 1040 and the PRA. [105]

Defendant moved to dismiss all Six Counts regarding the PRA. [106]

Defendant sought and was approved to present a good faith defense to the Jury regarding his reliance upon the PRA. [107]

Defendant submitted Form 1040 and instructions (non accompanying) in his civil action in 2006. [108]

Defendant declared he relied upon the 1040 Form and instructions in his determination Form 1040 was both subject to the PRA and otherwise mandatory for use. [109]

Defendant's reliance upon the Secretary of the Treasury and CIR that Form 1040 was subject to the Paperwork Reduction Act and otherwise mandatory was "reasonable in light of the identity of the agents."

Third, there is no doubt the Secretary of the Treasury and CIR are "responsible for interpreting, administering, and enforcing the law defining the offense[s]." [110]

104.  Springer Declaration at pgs. 1,2,17,27,36,51
105.  Springer Declaration at pgs. 25,29
106.  Doc. 53,54 and exhibits
107.  Springer Declaration at pgs. 19,25
108.  Springer Declaration at pg. 5
109.  Springer Declaration at pgs. 1,2
110.  LaSalle, 437 U.S. at 308; Springer v. U.S., 447 F.Supp.2d 1235(N.D.Ok.2006)

This defense would have been raised at trial, along with the Fifth Amendment Good Faith belief Defendant was not required to answer the questions asked on Form 1040 due to self-incrimination protections, had the Grand Jury, Government, and Court not led Defendant to believe or understand Form 1040 was inexorably linked to the "tax imposed" under 26 U.S.C. § 7201, the requirement to make a return at § 7203, and Count One's devistating claims Defendant refrained from filing Forms with the IRS including Form 1040.  Defendant was entrapped by estoppel.

GROUNDS THIRTY-THREE THROUGH THIRTY-SIX

26 U.S.C. § 7201, at issue in Counts Two, Three, and Four, and with spill over into all Six Counts due to Section 7203's lessor included offense, see Doc. 104 (citing 7203 for the Tax Evasion Counts), makes it a felony to "attemp[t] in any manner to evade and defeat any tax imposed by the code." [111]

"[a] conviction upon a charge of attempting to evade assessment of income taxes ...cannot stand in the absence of proof of a deficiency." [112]

"The principal interest of the United States must be assumed to be the collection of revenue." [113] The Government however explained in its Trial Brief their case against Defendant was not a collection case. [114]

The Department of Justice, Criminal Tax Manual, § 807[2](2008) directs in evasion of assessment cases the Count "must relate to a specific year."

The 7th Circuit explained evading assessment offense conduct "as foiling the IRS about your income" was different from evading payment conduct which they described as "secreting assets after taxes have been assessed." [115]

The 3rd Circuit rejected the Government's claim Mr. Root was "charged with evading both the assessment and payment of his taxes." [116]

---

111. Bouleware v. U.S., 552 U.S. 421, 424(2008)
112. Lawn v. U.S., 355 U.S. 339, 361(1958)
113. Grosso v. U.S., 390 U.S. 62, 68(1968)
114. Doc. 138, pg. 10
115. U.S. v. Dunkel, 900 F.2d 105, 107(7th Cir. 1990)
116. U.S. v. Root, 585 F.3d 145, 152(3rd Cir. 2009); See also U.S. v. Mal, 942 F.2d 687, 688(9th Cir. 1991)(agreeing 7201 was one offense, not two)

Though Counts Two, Three, and Four, charged acts or offense conduct of attempting to evade the tax imposed, i.e. assessment, at some point the Court turned these three Counts into the offense of evading the payment. [117]

On February 12, 2012, the Supreme Court settled the "one offense, not two" controversy surrounding the Circuit Courts reading of, or misreading of its decisions regarding § 7201 by emphatically finding:

> "7201 includes two offenses: 'the offense of willfully attempting to evade or defeat the assessment of a tax as well as the offense of willfully attempting to evade and defeat the payment of tax.' Sansone v. U.S., 380 U.S.345,354(1965)" [118]

The change of evasion of payment from assessment renders the conviction on Counts Two, Three, and Four in violation of the Bill of Rights in so many fundamental ways, including but not limited to, Defendant was given no Grand Jury on any charge of evasion of payment, no notice, and as Defendant pointed out to the Court in its only exception to its finding Defendant waived Sixth Amendment Counsel, he could not understand which offense was charged and how one could go for Nine Years. [119]

Defendant also claims Count Two's evasion of assessment is either outside of the statute of limitations of 6 years, or none of the Acts alleged qualify as acts, either before or after trial, extending the statute of limitations passed 4.15.07. [120]
GROUNDS THIRTY-SEVEN AND THIRTY-EIGHT.

Defendant's Pre-trial Motion to Dismiss was denied finding Defendant had no evidence to support his claim. [121]  The Government admitted Defendant was "selected" for prosecution. Doc. 71, pg. 17 "'Selective prosecution' implies that a selection has taken place." [122]

One of the constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, [123] is that the decision whether to prosecute

---

117. Springer Declaration at pgs. 6 to 9,15,21,23,25,28,31,38,40
118. Kawashima v. Holder, 182 L.Ed. 1,11(2012)
119. Springer Declaration at pgs. 8,9
120. Count One's "defraud" is limited by 3 years under 26 U.S.C. § 6531.
121. Springer Declaration at pg. 14
122. U.S. v. Armstrong, 517 U.S. 456, 469(1996)
123. Bolling v. Sharp, 347 U.S. 497, 500 (1954)

may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification." [124]

A Defendant may demonstrate that the administration of criminal laws "directed so exclusively against a particular class of persons...with a mind so unequal and oppressive" that the system of prosecution amount to "practical denial of equal protection of the law." [125] The requirement of selective prosecution claim draw on "ordinary equal protection standards." [126]  A Defendant must show discriminatory effect or purpose. Id.

As the News Paper explained, the enforcement of the tax laws of the United States are not being enforced with a degree of equality on 33,000 people. [127]

Allowing 33,000 people to pay a civil fine to avoid criminal prosecution shows both effect and purpose.  If you are rich you can avoid criminal indictment by paying money to the United States under the guise of a "fine" or "restitution," while if you are not wealthy you will be indicted and prosecuted. [128]

It is also widely reported that almost 2.5 million false and fraudulent tax Forms were filed recenlty with the IRS and yet no wide spread indictments for these millions of tax evaders have been brought. [129]

While in Prison for not "paying" taxes, Defendant learned that almost every drug prosecution in the State and Federal Courts do not include any charges of tax evasion or filing false tax returns. [130]

It is no secret that Congress is deciding whether to offer amnesty to 13 million plus illegal imigrants and as part of that amnesty Congress is considering whether to impose a fine and require back income taxes to be paid as a condition of citizenship.

---

124.  Oyler v. Boles, 368 U.S. 448, 456 (1962)
125.  Yick Wo v. Hopkins, 118 U.S. 356, 373 (1886)
126.  Wayte v. U.S., 470 U.S. 598, 608(1985)
127.  Springer Declaration at pg. 48
128.  See Freeman v. Heman, 426 F.2d 1050, 1052 ("The Oklahoma Constitution provides that "(imprisonment) for debt is prohibted, except for the non payment of fines and penalties imposed for the violation of law. Okla. Const. Art. 2 § 13
129.  Springer Declaration at pg. 48
130.  Springer Declaration at pg. 39

Defendant claims he was prosecuted being labeled a "tax defier" by the U.S. Department of Justice, and a "tax protestor" by the Tenth Circuit. [131]  As the Government stated in its Trial Brief tax evasion cases are not "collection" cases. [132]

Defendant was selectively prosecuted for his ministry public stance regarding Form 1040 and his public standing nationally on the subject of abolishing the IRS.

GROUNDS FIFTY-SEVEN THROUGH SIXTY

Defendant, before trial, should have been told the Trial Judge found Form 1040 did not or does not violate the PRA. [133] Defendant can find no place in the Court's record, prior to its factual finding instruction on Form 1040 to the Jury, where it ever even stated it had so found.  Defendant finds no place in the Court's record where the Trial Judge, before construing waiver of Sixth Amendment counsel, discussed possible defenses with Defendant (or Stilley).

Equally, Defendants proffer during Trial permitted him to testify about his good faith defense as to why he did not believe he was required to file Form 1040 United States Individual Income Tax Returns answering the questions asked therein. [134]

Defendant was not aware Form 1040 was divorced from the requirements to file an income tax return "as required by law" until the announcement by the Tenth Circuit.

Without the requirement to file an income tax return at § 6012, and the decision by the Secretary to require Form 1040 be filed under penalty of perjury, there is no charge or case against Defendant. [135]

Defendant would never have defended the Six Counts that he did not willfully fail to file Form 1040, or deliver any taxes shown owed therein, had he been given notice Form 1040 was divorced from the obligations and duties in the offense conduct.

The burden is on the government and the presumption is "against waiver." [136]

131. Springer Declaration at p.39 ; Springer, 231 Fed. Appx. at 795
132. Doc. 138, pg. 10
133. Springer Declaration at pg. 19
134. Springer Declaration at pg. 19
135. See Ground # 22
136. Von Moltke v. Gillies, 332 U.S. 708, 723(1948)

The defenses are a very critical stage. [137] "A Court's jurisdiction, at the beginning of trial may be lost in the course of the proceedings due to failure to... provid[e] counsel for an accused who has not intelligently waived this Constitutional guarantee and whose....liberty is at stake." [138]

Defendant never would have waived counsel had the indictment not alleged "Form 1040" and even then Defendant sought a Bill of Particulars prior to arraignment. [139]

The Trial Judge acknowledged Defendant's knowledge of the PRA. [140] In addition, to Defendant's Sixth Amendment Right being withheld from him at trial, no discussion of defenses took place prior to trial, and the changes made during the appeal review demonstrated how unconstitutional the Trial process really was.

The Sixth Amendment applies to direct appeals also. [141] "Nominal represent-ation on appeal...does not suffice..." [142] "[a] party...is no better position than one who has no counsel at all." Id. Cumulative errors are as prejudicial as a single reversible error." [143]

The Tenth Circuit after suspending Mr. Barringer addressed 8 issues in his brief and pointed out its difficulty understanding the 8 issues. [144] Barringer was suspended on September 2, 2011 for conduct committed on December 14, 2010, in case 10-5037 and 10-5055, explained in the June 23, 2011 and July 28, 2011 orders in 10-5037.

As a result of suspending Barringer Defendant was left in his criminal appeal "pro-se" and held responsible for Mr. Barringer's appeal brief. Defendant didn't waive his right to be represented by conflict free counsel under the Sixth Amendment.

The Tenth Circuit should have appointed Defendant new counsel and started the appeal process over. Defendant had previously been found informa pauperis by the Trial Judge. If not for the deficiencies in the Appeal Brief in 10-5055, and the

---

137. Patterson v. Illinois, 487 U.S. 285, 298(1988)
138. Johnson v. Zerbst, 304 U.S. 458, 467-68(1938)
139. Doc. 8 ; See also Springer Declaration @ page 8.
140. Springer Declaration at pg. 25
141. Douglas v. California, 372 U.S. 353, 357(1963)
142. Harris v. Champion, 928 F.2d 1062, 1073(10th Cir. 1991)
143. Duckett v. Mulin, 306 F.3d 982, 992(10th Cir. 2002)
144. Springer Declaration at pgs. 46,47

failure to fully develope certain issues, [145] or not raising certain issues, [146] "there is a reasonable probability that but for Counsel's errors the result of the [appeal] proceeding would have been different." [147]

GROUND SIXTY-EIGHT

My claims of Judicial Entrapment by Estoppel are well grounded in decisions beginning with the Supreme Court and Tenth Circuit's continued decisions involving application of the Paperwork Reduction Acts to the information sought on Form 1040 prescribed by the Secretary. [148] At no time ever did the Tenth Circuit hold Form 1040 "divorced" from 26 U.S.C. § 6012 or the penalties imposed criminally involved in Title 26 offenses, or related offenses withstood what Congress said at 44 U.S.C. § 3512(a) was not to be withstood.

Congress was surely aware of how it collected income tax information when it enacted the PRA of 1980.  No doubt, by 1995 Congress was intimately aware of their intention regarding the penalties the PRA was to protect against and in for the public.

As the Tenth Circuit noted in Dawes [149] "[G]iven the fact that the issue is one of national in scope which affects the tax revenues of the United States we find this posture regretable." Yet, the Panel in my direct appeal decided there would be no national problem because Form 1040 is divorced from the information Congress directs the Secretary to seek specifically thus divorcing the PRA protections from the penalties imposed by Congress for failing to provide such information. [150]

CONCLUSION

This Court, after appointment of Criminal Justice Act Counsel, and an order to expand the record and evidentiary hearing, with allowing Counsel to supplement this Memorandum, should grant the relief requested in each Ground respectively.

_Lindsey K Springer_   3.4.13

---

145.   Springer Declaration pages 33 through 93; Grounds in Motion 1 through 76
146.   Id.
147.   Enberg v. Wyoming, 265 F.3d 1109, 1120(10th Cir. 2001)
148.   Springer Declaration at pages 68 through 73
149.   Springer Declaration at page 69, specifically ¶ 472
150.   Springer, 444 Fed. Appx. at 262