In The United States District Court
For the Northern District of Oklahoma


Lindsey Kent Springer
        Petitioner

                                    13-CV-145
                              (Formerly 09-CR-043)

v.

United States of America
        Respondent.

**FILED**

MAY 31 2013

Phil Lombardi, Clerk
U.S. DISTRICT COURT

                Motion To Disqualify
                Charles A. O'Reilly
                    (Cover Sheet)


                              Lindsey Kent Springer
                              Prisoner # 02580-063
                              Federal Correctional Institute
                              1900 Simler Ave
                              Big Spring, Texas 79720

___ Mail  ___ No Cert Svc  ___ No Orig Sign
___ C/J   ___ C/MJ  ___ C/Ret'd  ___ No Env
___ No Cpys  ___ No Env/Cpys  ___ O/J  ___ O/MJ

- 1 -

# Table of Contents

Table of Contents        - 1 -

Table of Authorities        - III -

Statutes Involved        - III -

Misc.        - IV -

Issues Presented        1

Facts        2

A. Charles A. O'Reilly has not been authorized to prosecute, argue or sign pleadings and documents in the Northern District of Oklahoma   17

   1. From January 1, 2009 to June 28, 2009    17

   2. From June 28, 2009 to January 27, 2010    17

   3. From January 21, 2010 to June 20, 2010    20

   4. After June 21, 2010    21

B. Mr. O'Reilly made false statements to a material matter from March 9, 2009 to present    22

# Table of Contents (cont'd)

C. Mr. O'Reilly is an eye witness to Petitioner's civil rights claims in this § 2255 LCvR 9.2 action.     23

D. The office of Writ of Habeas Corpus requires a person to account, not a sovereign creature.     24

E. Mr. O'Reilly deserves disqualification 25

Conclusion     25
Certificate of Service     26
Declaration of Mailing     26

# Table of Authorities

Braden v. 30th Cir. County Court, 410 U.S. 484 (1973)   24

Buckley v. Valeo, 424 U.S. 1, 126 (1976)   20

Burgess v. U.S, 553 U.S. 124, 128 (2008)   22

Edmonds v. U.S., 520 U.S. 651, 659 (1979)   20

Freytag v. CIR, 501 U.S. 868, 880 (1991)   20

Groman v. CIR, 302 U.S. 82, 86 (1937)   22

Hill v. U.S., 368 U.S. 424, 427 (1962)   24

In Re Nofziger, 925 F.2d 428, 437 (D.C.Cir. 1991)   19

Martinez v. Ensor, 958 F. Supp. 515, 518 (D. Colo. 1997) 18

New York v. Muka, 440 F. Supp. 33, 36 (N.D N.Y 1977) 18

U.S. v. Boullier, 359 F Supp. 165, 171 (N.D. N.Y 1972)   18

U.S v. Cespedes, 151 F.3d 1329, 1332 (11th Cir. 1998) 18

U.S v. Dunlap, 17 F. Supp. 2d 1183, 1185 (D.C. Colo 1998) 19

U.S v. Bradshaw, 580 F.3d 1129, 1136 (10th Cir 2009) 18

U.S v. Hayman, 342 U.S. 205, 219 (1952)   24

U.S v. LaSalle, 437 U.S. 298, 312 (1978)   22

U.S v. Providence Journal Co, 485 U.S 693 (1988)   21

U.S v. Williams, 65 F.R.D. 422 (W.D. Mo, 1974)   21

Yaselli v. Goff, 12 F.2d 396, 404 (2nd Cir. 1926)   19

U.S. v. Springer, 444 Fed, Appx 256 (10th Cir. 2011)   12

## Statutes Involved

28 U.S.C § 518(a)                        17

        § 541            1, 18, 19, 25

        § 547                            19

- IV -

## Statutes Involved (cont'd)

28 U.S.C § 2255                          1, 2, 21, 23, 24


## Misc.

LCvR. 9.2                               1, 21, 23, 25
Rule 3 of § 2255                        24
Rule 4 of § 2255                        24
USSG. § 2T1.1                           12
26 CFR § 1.6091-2                       12
Article 2, § 2                          19
28 CFR Part 0, § 0.136                  18

In The United States District Court
For The Northern District of Oklahoma

Lindsey Kent Springer

      Petitioner        13-CV-145

v.

United States of America

      Respondent.


Motion To Disqualify Attorney
Charles A. O'Reilly


1.    Lindsey Kent Springer ("Petitioner") moves this Court For an order disqualifying Attorney Charles A. O'Reilly From representing the United States attorney Danny C. Williams in this LCvR 9.2 § 2255 action Finding Mr. O'Reilly (1) has made false Fraudulent, and misleading statements; (2) is not a United States attorney pursuant to 28 USC § 541, (3) is a witness and a central part of Petitioners civil rights violation claims in his 76 Grounds; and (4) has no statutory authority to either conduct or argue in Petitioners § 2255 proceeding.

2.             Issues Presented

    A. Has Charles A. O'Reilly the Statutory authority at all times Since January 1, 2009 through May 13, 2013 to conduct, supervise, and or

1

argue in either 09-CR-043 or 13-CU-145?

B. Did Charles A. O'Reilly make false, fraudulent and misleading statements to this court and Petitioner from March 9, 2009 through May 13, 2013 at issue in Petitioner's 76 Grounds?

C. Is Charles A. O'Reilly an eye witness regarding Petitioner's 76 Grounds for habeas corpus civil rights relief?

D. Does § 2255 require the United States attorney stand account for Petitioner's unlawful incarceration raised in Petitioner's civil rights claims?

E. Should Charles A. O'Reilly be disqualified from representing Danny C. Williams in Petitioners habeas corpus § 2255 civil rights proceeding or action?

### Facts

3. On June 3, 2005 Mr. O'Reilly claimed the Department of Justice received authorization from the Secretary of the Treasury ("SOTT") to prosecute Petitioner for Title 26, or Title 26 related crimes limited to Calendar Year 2000 through 2004. See Petitioner's Declaration with 2255, Doc 474, pg 4, ¶ 26

4. On or about January 15, 2009 Petitioner met with

2

Mr. O'Reilly and Special Agent Brian Shern discussing what Petitioner should have reported on Form 1040 United States Individual Income Tax Returns From Calendar Year 2000 through 2005. ("Form 1040"), Doc 2, II 39. Petitioner met again on or about February 15, 2009 with O'Reilly and Shern discussing Form 1040.

5.  On March 9, 2009, Shern and O'Reilly sought and obtained an indictment alleging six counts of Title 26, or Title 26 related crimes. Doc. 2.

6.  Count One alleged the conduct that defrauded the Internal Revenue Service ("IRS"), in the manner and means section, was that Petitioner refrained from filing with the IRS Form 1040s. Doc 2, II 14

7.  Count Two, Three, and Four, alleged conduct that Petitioner failed to File "United States Individual Income Tax Returns" For calendar years 2000, 2003 and 2005 (hereinafter referred to also as Form 1040)

8.  During arraignment both Mr. Snoke and Mr. O'Reilly instructed Petitioner the place the Form 1040 was to be delivered was published on the last page of Form 1040 instructions.

9.  Petitioner sought a Bill of Particulars on March 18, 2009, Doc 8, and again on June 15, 2009, Doc 82, and again on July 30, 2009, Doc 105, and again on Sept-

3

ember 30, 2009, Doc 166. The point of each of these Motions was for Petitioner to understand the Grand Jury's charges.

10.    Mr. O'Reilly opposed Doc 8, at Doc 19. He opposed Doc 82, at Doc 97. He opposed Doc 105, at Doc 116. He opposed Doc 166, after that request had been granted, Doc 184, at Doc 185.

11.    Petitioner moved to dismiss all Six counts for the alleged Form 1040 violating Federal Law and thus not being "required by law." Doc 53, 54

12.    Mr. O'Reilly opposed but never claimed Form 1040 was not at issue in the Six counts:

> "Some court have simply noted that the PRA applies to the Forms themselves... and because the Form 1040 does have a Control number, there is no PRA violation...tax instruction books are not agency requests for information."

Doc. 474, pg. 10, ¶ 80

13.    In opposition to Petitioner's Fifth Motion to Dismiss on Fifth Amendment Grounds, Mr. O'Reilly argued:

> "If the Form of Return provided called for answers that the defendant was privileged from making he could have raised the objection in the return..."

Doc 474, pg. 11, ¶ 81

4

14.     On June 28, 2009, United States attorney David O'Miella resigned.

15.     After this court granted in Part Petitioner's Bill of Particulars, Doc 82, at Doc 100; see also Doc. 474, pg. 12, II ¶¶ 90, 91, 92, 93, Mr. O'Reilly declared the meaning of "required by law" meant:

      "Count 2, 3, 5 and 6, of the indictment include the phrase 'required by law' in reference to defendant Springer's failure to file a Federal Income Tax Return..." See Doc. 474, pg 14, II 105.

16.     In Mr. O'Reilly's Second Bill of Particulars, he further explained what the Grand Jury meant by identifying 26 CFR § 1.6011-1 and 1.6012-1. Doc. 474, pg 17, II 127

17.     In their "Trial Brief" Mr. O'Reilly claims:

      "throughout this period of time, Defendant Springer and Stilley did not file income tax Forms with the IRS including Form 1040..." See Doc. 474, pg 15, II 112.

18.     Mr. O'Reilly's IRS expert "witness" on the requirement to file and the Form," Doc. 474, pg 31, II 235, testified to the jury that Petitioner "was required to report all these transactions on would be the Form 1040," Doc 474, pg 20, II II 148, 149

19. Mr. Miller, as a 20 year expert and conducting over a thousand audits and trained on Fraud, testified the Form of Return at issue in all six counts was Form 1040. Doc 474, pg 20, II 152

20. Mr. O'Reilly explained:

"I also understand Mr. Springer wanted to introduce the Form 1040 From his direct. If Mr. Springer lays a foundation that makes those admissible, we want the instruction books as well From years 2000 through 2005."

Doc. 474, pg 20, II 153

21. During introduction of Form 1040 For 2000 through 2005 and non accompanying instructions, Mr. O'Reilly said:

"Your honor, with respect to the material the information books and returns For the years 2000 to 2005, we're not going to oppose the introduction of those, they're voluminous, but at least they do fall within the scope of the conspiracy, although Mr. Springer didn't File any of the Forms in issue." Doc. 474, pg 21, II 161

22. Special Agent Shern testified:

"You not Filing tax returns I think is relevant with tax evasion and Failure to File tax returns For obvious reasons."

<u>Doc</u> 385, pg 156, ln 23-25

23. Petitioner at trial asked Mr. Shern "what is a tax return" to which he told the Jury:

"Its a Form that you submit to the Government that shows how much tax you owe."

<u>Doc</u> 392, pg 1863, ln 3-4

24. During Trial Mr. O'Reilly claimed to the trial Judge:

"The evasion counts are independent of whether or not he filed a return because of all the affirmative acts"

<u>Doc</u> 474, pg 21, II 157

25. Mr. O'Reilly asked Mr. Shern "is the Failure to file -- thats not alleged as an affirmative act is it. <u>Doc</u> 394, pg 2389, ln 21-24, Mr. Shern answered "I don't know. I'd

26. Mr. O'Reilly asked Petitioner in front of the Jury about Petitioner's belief:

"That Form 1040 Failed to comply with any of the criteria set Forth under the Paperwork Reduction Act."

<u>Doc</u> 474, pg 22, II 166.

27. Mr. O'Reilly then asked "Mr. Springer isn't it a Fact it is mandatory and you know it. <u>Doc</u> 396, pg 2755-56. Petitioner asked "what is mandatory," Id at ln 2. Mr. O'Reilly responded "the Filing of a return." Id at ln 3. Petitioner answered:

"My understanding of the Form 1040 is that in order

7

28. For it to be mandatory they must tell you that."
Id. at ln 4-5

Mr. O'Reilly asked Petitioner:

"And each year -- and in fact, it was put into evidence by Mr. Stilley the years 2000 through 2005 -- the IRS provides instruction that explain what the current exemption amount and standard deduction are, correct." Doc 396, pg 2764, ln 8-12

29. Mr. O'Reilly asked Petitioner in front of the Jury if the Supreme Court in its Dole decision in 1990 "ever mentions the Form 1040." Doc 396, pg. 2767, ln. 20

30. To further show the role Form 1040 played in the events that led to the six count indictment by Mr. O'Reilly, he asked Petitioner:

"Well, then, could you please explain why when Mr. Shern interviewed you on September 16, 2005, in a search warrant, you didn't mention that defense once?" Doc 396, pg 2785, ln 14-15

31. Mr. O'Reilly then brings up his meeting with Petitioner:

"You spent several hours speaking with Special Agent Shern ... and myself ... in January of this year, correct? Doc 396, pg 2786, ln 17-19

32. Mr. O'Reilly continued:

"You never raised the Paperwork Reduction Act as

8

a defense during that meeting did you?"

Doc 396, pg 2786, ln 21-22

33.    The only relevance to these questions regarding
a defense is the public notice:

> "You are not required to provide the information
> requested on a Form that is subject to the Paper-
> work Reduction Act unless the Form displays a
> valid OMB number." Doc 474, pg 1, ¶ 8

34.    At Sentencing, Mr. O'Reilly stood and listened as
an officer of the Court and Said nothing when he
heard these words from Judge Friot:

> "As for Mr. Springer, at trial he looked at the Jury
> and testified under oath that he never had an
> agreement with Mr. Stilley or anyone else to defraud
> the United States. He testified that he did not
> willfully fail to file Form 1040 for the years 2000
> through 2005... These Statements are Categorically
> false. They were made under oath, They were
> made for the purpose of deceiving the Jury, and
> they amounted to obstruction of Justice, Mr.
> Springer."

Doc. 401, pg 426-27! Doc 486, pg 1, ¶ 3,

35.    Mr. O'Reilly was fully aware the role Form 1040 played
in the defraud crime in Count One where he convinced

9

Judge Friot the conduct alleged to defraud was:
"collecting taxes and getting lawful returns
in by some means that is dishonest."
Doc. 474, pg 13, II 98

36. Mr. O'Reilly was fully aware the indictment only involved Petitioners Federal Income Taxes, Doc 71, pg 18, note 7.

37. Judge Friot continued "And that is exactly what is charged here." Doc. 474, pg. 13, II 98

38. In denying Petitioner's Motion for a new trial, Mr. O'Reilly sat their and said nothing when Judge Friot justified expanding Count One to include Stilleys State of Arkansas derived Federal Income Taxes saying:
"Defendant Springer and Stilley would and did refrain from Filing Forms with the Internal Revenue Service, including Form 1040 and 1099."
Doc. 474, pg 32, II 245

39. Judge Friot explained:
"Count One references Mr. Stilley's failure to File Form 1040 and alleged conduct by Mr. Stilley that is independent of Mr. Springer's income, Id at II 246

40. Mr. O'Reilly was the author of the six Counts:
"I appreciate that because I did help draft this indictment. Doc 383, pg 127, ln 1-2

10

41.   Mr O'Reilly in opposing Petitioner's Motion For Release argued:

"As stated by the Court, the Form 1040 complies with the Paperwork Reduction Act. However, whether or not the Form 1040 complies is irrelevant because Defendant's convictions were for conspiracy to defraud the United States, attempted tax evasion, and willful failure to File a tax return (not necessarily a Form 1040)."

Doc 361, pg 5-6

42.   In his Appellee brief, Mr. O'Reilly secured his victory by arguing:

"despite Springer's claim that each Count of conviction is inexorably linked with a Form 1040, only the two Failure to File Counts could potentially be affected by the PRA." Doc 474, pg 27, II 203

43.   Mr O'Reilly continued in his opposition to Petitioner's release arguing:

"Never the less, Defendant willfully Failed to file a tax return for any year From 2000 through 2007." Doc 361, pg 6.

44.   Mr. O'Reilly Further instructed the Tenth Circuit:

"Springer tries to avoid the case law by maintaining that because the Form he was required

11

to file by regulation, the PRA applies. But Springer is not punished for willfully failing to file a particular agency specified form, he is being punished for willfully failing to "make a return ... at the time or times required by law or regulation." Doc. 474, pg 27, ¶ 204

45.   Mr. O'Reilly argued and maintained the government would not "be relying on Treasury Regulations in proving its case in chief." Doc. 474, pg 17, ¶ 125

46.   Mr. O'Reilly in opposing Petitioner's Release noted Judge Eagan's decision, 447 F. Supp. 2d 1235, 1238 (N.D. Ok 2006) stating "the requirement to file a tax return is mandated by Statute, not by regulation." Doc 361, pg 5

47.   That same decision also was wrong when it held: "The Secretary of the Treasury and IRS have clear authority to impose criminal and civil penalties related to form 1040." Doc 474, pg 5, ¶ 38.

48.   Mr. O'Reilly convinced the Tenth Circuit the requirement to file a tax return was controlled by 26 CFR § 1.6091-2(2005). See U.S.A. v. Springer, 444 Fed Appx 256, 261 (10th Cir 2011)

49.   Mr. O'Reilly made no objection to the Tenth Circuit's decision where they held U.S.S.G. § 2 T1.1(c)(2) applied i

12

"If the offense involved failure to file a tax return the tax loss shall be treated as equal to 20% of the gross income." Id at 265.

50. The Tenth Circuit's decision secured by Mr. O'Reilly held:
"There is no substantive obligation or crime arising out of Form 1040 itself." Id at 262.

51. The Tenth Circuit also held:
"The obligation to file a tax return and the criminalization of willful failure to do so represent statutory mandates divorced from Form 1040."
Id. at 262.

52. Besides one minute claiming Form 1040 is "at issue," and next "not necessarily," Mr. O'Reilly perfected a change in Counts Two, Three, and Four, from the crime involving Failure to File a Form 1040 for years 2000, 2003, and 2005, called evasion of assessment, to evasion of payment in violation of the Fifth and Sixth Amendment.

53. Its plain this was Mr. O'Reilly's intent by how Counts One through Four exceed years 2000 through 2004.

54. In Mr. O'Reilly's opposition to Petitioners Motion to Dismiss he argued:
"It is enough to prove that defendant attempted to evade the payment of a substantial income tax."
Doc 71, pg 10

13

55. Mr O'Reilly's claim also stated:

"The indictment clearly alleges that Defendant Stilley attempted to evade defendant Springer's Federal Income Taxes." Doc 71, pg 8.

56. This statement is in conflict with Judge Friot's order denying a new trial. Doc 474, pg 32, II 246

57. Mr. O'Reilly showed the intent that he had in bringing Count Two, Three, and Four:

"The defendant intended to evade and defeat the assessment and payment of that additional tax." Doc. 474, pg 15, II 114

58. Mr. O'Reilly also altered the "affirmative acts" by coloring with words like placing assets in the name of others and paying creditors instead of the government. See Doc 138, pg 8.

59. Judge Friot instructed the jury, as to Counts Two, Three, and Four, they must find "Defendant Springer intended to evade and defeat the payment of that tax." Doc 474, pg 25, II 188.

60. Judge Friot also instructed the Jury:

"To evade and defeat the payment of tax means to escape paying a tax due other than lawful avoidance." Doc. 474, pg 25, II 190

61. Judge Friot instructed the Jury that:

14

"an affirmative act to evade and defeat payment
of taxes is a positive act of commission designed
to mislead and conceal." Doc 474, pg. 25, ¶ 141

62, Mr. O'Reilly knew evasion of assessment was a
different crime from evasion of payment and that
there was no allegation Petitioner attempted to hide
assets to conceal them from the IRS so they
would be unable to collect on assessed taxes. See
Doc 383, pg 113, ln 9-16

63, In Mr. Shern's "Affidavit" to obtain a search warrant
he stated:

"Below is a chart that shows the vehicles registered
to Springer, the date registered, and the purchase
price of each vehicle. None of the vehicles below
have an associated lien on file with the State of
Oklahoma." Doc 75-20, pg 13, ¶ 16! See also Doc
486, pg. 37, ¶ 194.

64. Shern's Affidavit showed $227,000 worth of assets
in Petitioner's name hidden from no one.

65. The indictment is signed by Charles A. O'Reilly as a
Trial Attorney with the DOJ and this continues till June
28, 2009. See Docs 2, 19, 42, 71, 93.

66. After Mr. O'Miella resigns, Mr. O'Reilly signs as a
"Special" Assistant United States attorney assisting Thomas

15

Scott Woodward as "Acting United States Attorney." See Doc 94, 99, 104, 138, up to Doc 292.

67. On January 27, 2010, Kenneth P. Snoke signed Doc. 292 which stated that:

> "On January 21, 2010, Thomas Scott Woodward was sworn in as the Attorney General's appointed United States Attorney For the Northern District of Oklahoma." (Footnote 1).

68. This statement was false.

69. Even as of March 14, 2011, Charles A. O'Reilly continued to state in documents filed in 09-CR-043 that Mr. Woodward was "United States Attorney." See Doc 443 or 444.

70. In the Summer of 2012, the Tulsa world reported Danny C. Williams was approved as United States attorney For the Northern District of Oklahoma. See Doc 474, Exh 8.

71. On May 3, 2013, Mr. O'Reilly Filed a Motion to Strike in the 2255 proceeding herein listing Mr. Woodward as "Acting United States Attorney (Switched back) and AUSA Kenneth P. Snoke among the authority behind that motion (Snoke retired in 2010). See Doc 487, 491

72. Thereafter on May 13, 2013, Mr. O'Reilly underneath the name of Mr. Williams files an Errata removing Mr. Woodward and Mr. Snoke. Doc 495.

16

A. Charles A. O'Reilly has not been authorized to prosecute, argue or sign pleadings and documents in the Northern District of Oklahoma

1. From January 1, 2009 to June 28, 2009

73. Mr. O'Reilly signed the Grand Jury indictment and was the "Department of Justice" alleged in II 39. Doc 2.

74. Mr. O'Reilly signed numerous filings as a Trial Attorney with the Department of Justice. No statute allows Mr. O'Reilly to conduct and argue in any Judicial District to which he is Found.

75. The only possible authority would be to "assist" a United States attorney and as 28 U.S.C § 518(a) shows, when Congress authorizes to conduct and argue it will say it.

76. Mr. O'Reilly did not sign as "Special" until after Mr. O'Mielia resigned on June 28, 2009. Compare Doc 93 to Doc 94, and 99.

2. From June 28, 2009 to January 27, 2010.

77. As of June 28, 2009, there was no United States attorney for the Northern District of Oklahoma. Immediately, Mr. O'Reilly and Snoke signed pleadings and documents in 09-CR-043 underneath the name "Thomas Scott Woodward, Acting United States Attorney," See Doc. 94, 99, 104, 138, and so fourth.

17

78. Sometimes documents were signed by Mr. Snoke and sometimes by Mr. O'Reilly. Compare Doc 104, with 138 and 292.

79. Labeling Mr. Woodward as "Acting" was false and Fraudulent as that term is meant at 28 C.F.R. Part 0, § 0.136 entitled "Designation of Acting United States Attorney" which requires that designation be made by the "U.S. Attorney" which after June 28, 2009, there was not one to make that designation.

80. U.S. Attorney's decide who to charge because "they are designated by statute as the Presidents delegates to help him discharge his constitutional responsibility, to 'take care that the laws be faithfully executed,'" U.S. v. Cespedes, 151 F.3d 1329, 1332 (11th Cir. 1998).

81. For instance, a United States attorney under 28 U.S.C. § 541 "For one district has no authority to authorize dismissal of indictment in another district." U.S. v. Boulier, 359 F.Supp. 165, 171 (E.D. N.Y. 1972); See Martinez v. Enser, 958 F.Supp. 515, 518 (D.Colo. 1997) ("Criminal Statutes can be enforced by the proper authorities of the United States government such as U.S. Attorneys,"); See also New York v. Muka, 440 F.Supp. 33, 36 (N.D. N.Y. 1977) ("Federal crimes are prosecuted by United States Attorney"); U.S. v. Bradshaw, 580 F.3d 1129, 1136 (10th Cir. 2009) (The

18

United States Attorney "has the power to prosecute
or not to prosecute."

82. Without a United States attorney as of June 28,
2009, no such office of "Acting United States attorney
existed.

83. Both a "Failure to perform [a duty], or an erroneous
performance is regarded as an injury to the public."
Yaselli v. Goff, 12 F.2d 396, 404 (2nd Cir 1926)

84. Section 541(a) requires the United States attorney be
"appointed by the President and with advice and consent
of the Senate." See U.S. v. Dunlap, 17 F.Supp. 2d 1183, 1185
(D.C. Colo. 1998); See also Nichols v. Reno, 931 F.Supp.
748, 750 (D.C. Colo. 1996) ("the attorney for the government
referred to in the statute is the United States
[A]ttorney, appointed for each judicial district
by the President pursuant to 28 U.S.C. § 541 within his
district, 28 U.S.C. § 547.")

85. The office of United States attorney at 28 U.S.C §
541 is a "high-government position." In Re Nofziger,
935 F2d 428, 437 (D.C. 1991) "An appointee exercising
significant authority pursuant to the laws of the
United States is an 'officer of the United States,
and must, therefore, be appointed in the manner pre-
scribed by § 2 cl. 2 of that Article. [Article II],"

19

_Buckley v. Valeo_, 424 U.S. 1, 126 (1976) The appointment clause is "more than a matter of 'etiquette or protocol, its among the significant safeguards of the Constitutional Scheme." _Edmonds v. U.S_, 520 US 651, 659 (1979)

86. The "Structural interests protected by the appointment clause are not those of any one branch of government but of the entire union." _Freytag v. CIR_ 501 U.S. 868, 880 (1991)

87. The prosecuting attorney must be designated by the "district attorney." Confiscation Cases, 7 wall 454 457 (1864)

88. Neither Mr O'Reilly or Snoke were designated by any United States attorney after June 28, 2009 to January 27, 2010.

89. The proper course is for the indictment to be set aside and or its conviction. See _U.S. v. Williams_, 65 F.R.D 422 (1974) (W.D. Mo) Lexis 11786

### 3. From January 21, 2010 to June 20, 2010

90. After Mr. O'Reilly and Snoke informed the record of this case Mr Woodward was sworn in on January 21, 2010, Mr. O'Reilly signed all documents underneath Mr Woodward as "United States Attorney." Doc 441, 443, 444. Even if Mr. Woodward was appointed by

20

the Attorney General on January 21, 2010, that 6 month period would terminate on June 20, 2010.

91. There is no question the District Court lost Trial Jurisdiction on June 28, 2009 when it learned it did not have a proper representative of the government "participating in the action." U.S. v. Providence Journal Co., 485 U.S. 693, 108 S.CT 1502, 1511, 99 L.Ed 2d 785 (1988)

92. There is nothing that happened on January 21, 2010 that Fixed the want of Jurisdiction.

## 4. After June 21, 2010

93. Long after June 21, 2010, Mr. O'Reilly was referring to Mr. Woodward as United States attorney. See Doc 441, 443 or 444.

94. Even as of May 3, 2013, Mr. O'Reilly declared to this court he acted with Mr. Woodward but Mr. Woodward was back to "Acting" United States attorney. Doc 487, 491,

95. Mr. O'Reilly is fully aware he is not authorized by Federal Statute to argue, conduct, or sign any documents in Petitioner's § 2255 LCvR 9.2 Civil action. As demonstrated below, Rules and 2255 itself require the United States attorney personally.

21

B. Mr. O'Reilly made false statements to a material matter from March 9, 2009 to Present.

96. First, Mr. O'Reilly lied to the Grand Jury as to the extent of its jurisdiction which was limited to years 2000 through 2004.

97. Second Mr. O'Reilly lied that he had authorization from the Secretary of the Treasury to seek a Grand Jury indictment for Title 26, or Title 26 related crimes.

98. Third, he lied to this Court when he stated the referral "would be made by the June 3rd letter", Doc 383, pg 71, ln 1 to 5, which did not come from the Secretary of the Treasury. See US v. LaSalle, 437 U.S. 298, 312 (1978). The term 'Secretary of the Treasury' means the Secretary of the Treasury personally and does not include his delegate. See 26 U.S.C § 7701(a)(11). "When an exclusive definition is intended the word 'means' is employed..." Burgess v. US, 553 US 124, 128 (2008) citing Groman v. CIR, 302 U.S. 82, 86 (1937) ('"As a rule [a] definition which declares a term 'means' ... excludes any meaning that is not stated."')

99. Fourth, Mr. Lacenski was never the Secretary of the Treasury.

22

100. _Fifth_, Mr. O'Reilly was fully aware the role Form 1040 played in all Six Counts and as II **3** through II **72** above show, Mr. O'Reilly would go from Form 1040 is at issue to not necessarily Form 1040.

101. _Sixth_, Mr. O'Reilly attempted a de facto change in Count Two, Three, and Four, by changing the three alleged crimes from evasion of assessment to evasion of payment.

102. _Seventh_, Mr. O'Reilly was fully aware Mr. Woodward was not "Acting" anything as of June 28, 2009, and never became United States attorney ever.

103. _Eighth_, Mr. O'Reilly would claim to this Court no regulations were relied upon in his case in chief but then on appeal argued regulations controlled the outcome.

104. _Ninth_, Mr. O'Reilly knew Form 1040 was not required by law but he argued it was to the Grand Jury, to the Jury, and to this Court.

105. _Tenth_, Mr. O'Reilly never corrected these errors and has no intention of doing so.

C. Mr. O'Reilly is an eye witness to Petitioners civil rights claims in this § 2255 & CuR 9.2 action.

106. Charles A. O'Reilly is at the center of Petitioner's

23

civil rights violation claims or grounds. The bar
rules prohibit an attorney from acting as a witness
and a party representative at the same time.

107.   Petitioner incorporates the claim Mr O'Reilly
is not authorized by Federal law to argue anyway.


D.  The Office of Writ of Habeas Corpus requires
    a person to account, not a Sovereign creature.


108.   28 U.S.C § 2255(b) directs "the Court shall cause
notice thereof to be served upon the United States
attorney, grant a prompt hearing thereon..." Rule
4 of the Rules Governing 2255 proceedings directs
the Judge to order the United States attorney to
answer. Rule 3 requires Service on the United
States attorney as the habeas substitute for the
Jailer. See U.S v Hayman, 342 U.S 205, 219 (1952)
The remedy is "exactly commensurate." Hill v. U.S,
368. U.S. 424, 427 (1962) "The writ of habeas corpus
... acts upon the person who holds him..." Braden
v. 30th Judicial Cir. Court of Kentucky, 410 U.S 484,
494-95 (1973).

109.   The Supreme Court by Rule and Opinion, and Congress
by Statute, require Danny C Williams as Respondant.

24.

E. Mr. O'Reilly deserves disqualification

110.    As demonstrated above and throughout this document and the Court record Mr. O'Reilly is disqualified from this 2255 & CvR 9.2 action because (1) he lies and his word cannot be trusted as an officer of the Court; (2) he is not a United States attorney pursuant to 28 USC § 541, (3) he is a witness and a central reason for Petitioner's civil rights claims in his § 2255 & CvR 9.2 action, and (4) he has no statutory authority to conduct or argue in Petitioner's § 2255 & CvR 9.2 action.

## Conclusion

111.    Petitioner respectfully prays the Court issue an order disqualifying Charles A. O'Reilly from representing Danny C. Williams or the USA in this § 2255 & CvR 9.2 action.

Respectfully Submitted

Lindsey K. Springer

Prisoner # 02580-063
Federal Correctional Institution
1900 Simler Ave
Big Spring, TX 79720

25

Certificate of Service

I hereby Certify that on May 27, 2013, I mailed my Motion to Disqualify Charles A. O'Reilly to the Clerk of Court, 333 West Fourth Street, Tulsa, Oklahoma, 74103;

I Further certify that all parties to this LCvR 9.2 § 2255 action are ECF users and will receive service through the ECF System:

Denny C. Williams
United States attorney

*Lindsey K. Springer*
Server

Declaration of Mailing

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 (1) under the laws of the United States of America that on May 27, 2013, I deposited the above Motion to Substitute in the U.S. mailbox located inside FCI Big Spring Federal Prison within the external boundaries of Big Spring, Texas

*Lindsey K. Springer*
declarant

26



Lindsey Kent Springer
Prisoner # 02580-063
Federal Correctional Institution
1900 Simler Ave
Big Spring, Texas

RECEIVED
MAY 31 2013
Phil Lombardi, Clerk
U.S. DISTRICT COURT

Legal Mail

Clerk of Court
United States District Court
Northern District of Oklahoma
333 West Fourth Street
Tulsa, Oklahoma 74103