4/4

In The United States District Court
For the Northern District of Oklahoma

**FILED**

MAR 19 2014

Phil Lombardi, Clerk
U.S. DISTRICT COURT

United States of America,

     Plaintiff,

v.

Lindsey Kent Springer

     Defendant.

Case No. 09-CR-043

Declaration of Lindsey K. Springer

I, Lindsey K. Springer, declare:

1. On September 16, 2005 Brian Shern and Ten other individuals served and executed a Search warrant on me and my home claiming and producing portions of a September 15, 2005 purported Search warrant signed by Magistrate Judge Frank H. McCarthy. Exhibit 1 attached to this declaration is a copy of Judge McCarthy's warrant issued.

2. Exhibit B attached to Judge McCarthy's warrant listed Title 26 §§ 7201 and 7203 with the time period from calender year 2000 through 2004.("the execution of the warrant" which took place on September 16, 2005). See Exhibit 1, pg 7

3. On September 16, 2005 $19,000 was located during the search, counted several times (not Shern), including in the presence of my ex-wife. Exhibit 2 attached to this declaration is a copy of Jeanie Springer's declaration made near the time of the September 16, 2005 Search in Springer v. Horn, et al, 06-CV-156.

1 of 4

✓ Mail  ___No Cert Svc  ___No Orig Sign
___C/J  ___C/M/J  ___C/Ret'd  ___No Env
___No Cpy's  ___No Env/Cpy's  ___O/J  / KGW Decl.

4.   At the conclusion of the search I was tendered a receipt listing the $19,000 being seized along with 3 pages of property taken from various locations within my former property located in Kellyville, Oklahoma Exhibit 3 attached to this declaration is a copy of what I have of the list.

5.   Immediately, I sought the Affidavit and Application in support of the warrant which Assistant United States Attorney Melody Noble Nelson ("Nelson") opposed. Exhibit 4 attached to this declaration is Nelson's opposition dated October 5, 2005.

6.   I was denied relief by Judge McCarthy. See Exhibit 5 attached to this declaration is the October, 2005 order.

7.   On or about December 1, 2005 Brian Shern returned all original vehicle Titles taken on September 16, 2005.

8.   On January 10, 2006 Brian Shern delivered a check from the IRS in the amount of $17,000. See Exhibit 6 attached to this declaration is a copy of the $17,000 check.

9.   Shern also requested I waive suing the IRS in exchange for the check. See Exhibit 7 attached to this declaration is a copy of that waiver.

10.  I asked where the remaining $2,000 was and Shern, on January 10, 2006, replied "I do not know."

2 of 4

LKS Decl.

11. In February, 2006 I filed a Bivens Complaint against Nelson, Douglas Horn ("Horn"), Shern, and the other Ten individuals with Shern on September 16, 2005, in a case styled <u>Springer v. Horn, et al</u> 06-CV-156, to which current Chief Judge Gregory K. Frizzell is assigned.

12. In 06-CV-156, Nelson and Horn claimed prosecutorial immunity as an affirmative defense, and Shern and the other Ten individuals claimed qualified immunity for their acts. See <u>Exhibit 8</u> attached to this declaration is Shern's Declaration in 06-CV-156. See also <u>Exhibit 9</u> attached to this declaration is Nelson's Declaration in 06-CV-156.

13. I was indicted on March 10, 2009 in <u>USA v. Springer</u>, 09-CR-043 to which at present District Judge Stephen P. Friot out of the Western District of Oklahoma presides as well as in 13-CV-145 in consideration of an Application by Motion pursuant to 28 U.S.C. § 2255. See <u>Exhibit 10</u> attached to this declaration is excerps from that indictment.

14. On June 15, 2009, or there abouts, United States attorney David E. O'Meilia ("O'Meilia") tendered a June 3, 2005 letter authored by Michael D. Lacenski to Eileen J. O'Connor ("O'Connor") referring me for grand jury investigation. <u>Exhibit 11</u> attached to this declaration is Mr. Lacenski's June 3, 2005 letter.

3 of 4

LKS Decl.

15. The June 3, 2005 Lacenski letter references Title 26, and Title 26 related violations, Movant, and the time period 2000 through 2004.

16. On June 15, 2009 or there abouts, I also received from O'Meilia a copy of a June 10, 2005 letter from O'Connor to O'Meilia authorizing a grand jury investigation of me referencing me and the June 3, 2005 letter. Exhibit 12 attached to this declaration is a copy of the June 10, 2005 letter. Exhibit 13 is a general warranty deed.

17. The Title 26 violations, Movant, and time period at issue in the June 3, 2005 Lacenski letter are the same in the September 15, 2005 search warrant given to Shern by Judge McCarthy

18. All copies attached as Exhibits are copies of the copies given me.

19. I received an unsworn affidavit from the Court Clerk.

I declare under penalty of perjury, pursuant to 28 USC § 1746(1), under the laws of the United States of America, the foregoing is true and correct.

Lindsey K Springer  3/12/14
Reg # 02580-0163
Federal Satellite Low-La Tuna
P.O. Box 6000
Anthony, New Mexico 88021

4 of 4

LKS Decl.

Certificate of Service

I hereby Certify that on March 14, 2014 I mailed First Class the above Declaration and Exhibits to the Clerk of Court, 333 West Fourth Street, Tulsa, Oklahoma 74103:

I Further certify that all parties shall receive Service of process through the Court's ECF System:

Danny C. Williams, Sr.

Charles A. O'Reilly

Jeffrey A. Gallant.

Lindsey K Springer
Service

Declaration of Mailing

I declare under penalty of perjury, pursuant to 28 U.SC § 1746(1), under the laws of the United States of America, that on March 14, 2014 I deposited the above Declaration and Exhibits in the U.S mailbox located inside FSL LaTuna,

Lindsey K Springer
declarant

AO 93 (Rev. 5/85) Search Warrant

# United States District Court

NORTHERN    District of    OKLAHOMA

In the Matter of the Search of
Name, address or brief description of person, property or premises to be searched)

### SEARCH WARRANT

Premises known as:
25758 South 201st West Avenue
Kellyville, Oklahoma

Case No.

To: Brian M. Shern and any Authorized Officer of the United States:

Affidavit(s) having been made before me by Brian M. Shern, who has reason to believe that on the premises known as

SEE ATTACHMENT A – LOCATION TO BE SEARCHED, ATTACHED HERETO AND MADE A PART HEREOF
BY REFERENCE

In the Northern District of Oklahoma, there is now concealed certain property, namely

SEE ATTACHMENT B – ITEMS TO BE SEIZED, ATTACHED HERETO AND MADE A PART HEREOF BY
REFERENCE

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before    9-25-05
                                                     Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) and if the person or property to be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to Magistrate Judge Frank H. McCarthy as required by law.

9-15-05    4:01 PM
Date and Time Issued    at

Frank H. McCarthy, U.S. Magistrate Judge

Name and Title of Judicial Officer

Tulsa, Oklahoma

Frank H. McCarthy

Signature of Judicial Officer

EXHIBIT

1

1 of 11

## ATTACHMENT A

### LOCATION TO BE SEARCHED

Two-story residence and curtilage, surrounding outbuildings, appurtenances, buses, automobiles, and property (including locked containers) of LINDSEY SPRINGER located at 25758 SOUTH 201ST WEST AVENUE, KELLYVILLE, OKLAHOMA, 74039, more specifically described as follows:

A two-story residence located on the west side of South 201st West Avenue. The entrance of the residence faces northeast. The residence is made of reddish-brown colored brick with light colored grayish siding covering the majority of the front of the residence. The door and windows of the residence are white. There is an unattached two-car garage and two small outbuildings that are perpendicular to the residence and face southeast. South 201st West Avenue is not identified with a street sign. It is 1.2 miles west of the turnpike gate on State Highway 33, which can be accessed from exit number 211 off the Turner Turnpike, headed westbound from Sapulpa. Adjacent to the entrance of South 201st West Avenue from State Highway 33 is a gray mailbox on a wooden post with the numbers "12244". The residence located at 25758 South 201st West Avenue is approximately one quarter-mile on South 201st West Avenue from this mailbox.

Attached is a map showing the location of the residence, a satellite photograph of the residence and surrounding area, and some photographs of the residence and the mailbox adjacent to the road leading up to the residence.

Page 1 of 5

2 of 11

2.





John Christner Trucking

25758 S 201st Street West
Springer's Residence

3



4 of 11

4



5



Page 5 of 5

6 of 11

6

## ATTACHMENT B

## ITEMS TO BE SEIZED

Based on the foregoing, I respectfully submit that there is probable cause to believe that the following items, which constitute evidence of violations of Title 26, United States Code Sections 7201 and 7203, will be found at the location described in Attachment A in individual and business names including, but not limited to LINDSEY SPRINGER, OSCAR STILLEY, and BONDAGE BREAKERS MINISTRIES. All of the items to be seized as referenced below are for the year beginning January 1, 2000 through the execution of the warrant including the following:

1. Client billing records, fee schedules, contracts for employment, estimates for services, filed court documents, and correspondence (opened and unopened) relating to the above referenced items;

2. Currency and monetary instruments including cashier's checks, receipts of cashier's checks, money orders, traveler's checks, and other monetary instruments;

3. Bank records including bank statements, deposit tickets, cancelled checks, debit and credit memos, records of wire transfers, and records of safe deposit box rental and entry, financial statements, and correspondence (open and unopened) with banks and financial institutions;

4. Financial records including tax returns, documents relating to the preparation of his tax returns, documents related to the purchase and sale of automobiles or

other vehicles or machinery, documentation of business expenses,

documentation of other expenses, documentation of personal expenditures, and

credit card records;

5. Financial statement records including books, ledgers, notations, memoranda,

cash receipts and disbursements journals, general journals, accounts receivable

and payable ledgers, general ledgers, balance sheets, profit and loss statements,

and income distribution statements;

6. Loan records from any source whatsoever and payments relating thereto, as well

as loan applications, financial statements, and documents related to the

attainment of loans;

7. Address and/or telephone records reflecting names, addresses, and/or telephone

numbers;

8. Property records including documents related to the purchase and sale of real

estate;

9. Records of mailbox or drop box rentals;

10. Records of storage rentals;

11. Rental or lease agreements of real property, autos, electronics, equipment, and

machinery;

12. As used above, the terms records, documents, or statements include records,

documents, or statements created, modified, or stored in any form.

13. In searching for data capable of being read, stored or interpreted by a computer,

law enforcement personnel executing this search warrant will employ the

following procedure:

8

a. Upon securing the premises, law enforcement personnel trained in
searching and seizing computer data (the "computer personnel") will make
an initial review of any computer equipment and storage devices to
determine whether these items can be searched on-site in a reasonable
amount of time and without jeopardizing the ability to preserve the data.

b. If the computer equipment and storage devices cannot be searched on-
site in a reasonable amount of time, then the computer personnel will
determine whether it is practical to copy the data during the execution of
the search in a reasonable amount of time without jeopardizing the ability
to preserve the data.

c. If the computer personnel determine it is not practical to perform an on-
site search or make an on-site copy of the data within a reasonable
amount of time, then the computer equipment and storage devices will be
seized and transported to an appropriate law enforcement laboratory for
review. The computer equipment and storage devices will be reviewed by
appropriately trained personnel in order to extract and seize any data that
falls within the list of items to be seized set forth herein.

d. In searching the data, the computer personnel may examine all of the data
contained in the computer equipment and storage devices to view their
precise contents and determine whether the data falls within the items to
be seized as set forth herein. In addition, the computer personnel may
search for and attempt to recover "deleted," "hidden" or encrypted data to

9

determine whether the data falls within the list of Items to be seized as set
forth herein.

e. If the computer personnel determine that the data does not fall within any
of the Items to be seized pursuant to this warrant or is not otherwise
legally seized, the government will return these items within a reasonable
period of time not to exceed 60 days from the date of seizure unless
further authorization is obtained from the court.

14. In order to search for data that is capable of being read or interpreted by a
computer, law enforcement personnel will need to seize the following items,
subject to the procedures set forth above:

a. Any computer equipment and storage device capable of being used to
commit, further or store evidence of the offense listed above;

b. Any computer equipment used to facilitate the transmission, creation,
display, encoding or storage of data, including word processing
equipment, modems, docking stations, monitors, printers, plotters,
encryption devices, and optical scanners;

c. Any magnetic, electronic or optical storage device capable of storing data,
such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs,
DVDs, optical disks, printer or memory buffers, smart cards, PC cards,
memory calculators, electronic dialers, electronic notebooks, and personal
digital assistants;

d. Any documentation, operating logs and reference manuals regarding the
operation of the computer equipment, storage devices or software;

10

e. Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f. Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN JUDICIAL DISTRICT OF OKLAHOMA

LINDSEY K. SPRINGER,

     Plaintiff,

                                Case No. 3:06-cv-156-GKF-FHM

v.

Douglas Horn, et al.,

     Defendants.

DECLARATION OF JEANIE L. SPRINGER

My name is Jeanie L. Springer and I am the wife of Lindsey K. Springer and we have been married for over 4 years. On September 16, 2005, I arrived home from taking my son to school and was met with numerous cars in my drive way. As I exited my car a very tall man confronted me with his gun holstered and asked who I was. He informed me a search of the home was underway. There were four men standing with this man. This person asked me to see my driver's license, social security number, and did I have any guns in the home. He then asked me if I knew what Lindsey did and if I had filed any tax returns recently. He asked me why Lindsey did not file tax returns on money given to him. He also asked me how I purchased groceries.

Once his questions were finished, I demanded I be allowed to enter the home to take control of my personal belongings to include jewelry of mine. I was never asked about any cash or currency other than how I purchased groceries.

1

Exhibit 2

APP. 71

1 of 3

12

While I was gathering my jewelry the oldest man walked in the room and standing over my shoulder asked me what was in the light red and white bag in the same drawer.   While I was taking control of my jewelry this older man grabbed the bag and opened it up exposing currency.   I was asked by this man did I know how much was in each paper clip of money and I told him I did not know.   This man then said well then we better count it to be certain.        This man counted each note of each paper clip in my presence, and in the presence of two other men, and concluded there was $ 19,000 in paper clipped currency.   There were one dollar, five dollar and ten dollar bills, which this man did not count in arriving at the $ 19,000.   This count of the currency took over 10 minutes and was done in the presence of a black man, which I also do not know his name, and another white man who followed my every move. After this count concluded, I was directed to the living room with my jewelry only and was handed a gold coin.   I never had any control over the currency and was never given the option to control the currency. I never saw it again or new where it was.    I was never told what they were intending to do with the currency. At all times the amount was $ 19,000 in paper clipped currency and not $ 17,000..   From the moment I was in the home until the search concluded, an Agent was with me at all times and all movements, including when I had to change my shirt because my dog got mud on it.   I was not allowed to do, say or go anywhere without permission in my home.   I did not know how much currency was in the bag until after the older man counted the currency

2

13


App. 72
2 of 3

in front of me and the other two men in the bedroom.

I was told by the man taking pictures of the home that "we may need to take your wedding ring also" to which I replied no you will not. Then he said we need to at least take pictures of the ring can you take it off and I said no to that also. Then he had me sit my hand down on a table and he took a picture of my wedding ring. I was told later by Lindsey that seizing the wedding ring was not on the warrant. I was also told by Lindsey that taking pictures was not on the warrant. I was never handed a copy of any warrant or told any reason why the people were at my home or taking pictures, until Lindsey came down from being asked questions and I overheard him asking to see a copy of the warrant and other papers. This time period was around 12:00 pm. I witnessed the man at the table agree to give Lindsey what the man referred to as an inventory list of all the items taken. I witnessed a receipt for $19,000 being handed to Lindsey as the search concluded along with other items listed..

On or about January 10, 2006, I was present when Mr. Shern and another man arrived at the home to purportedly return the $ 19,000 to Lindsey that was seized on September 16, 2005. I viewed the check and observed it was only for $ 17,000 and not $ 19,000.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

/s/ Jeanie Springer

3

App. 73
3 of 3

14

*Brian Shern.*

*M. Exh.*

# Inventory Listing of All Items Seized at Search Warrant Site

| | |
|---|---|
| **Site Name:** | **Investigation Number:** |
| LINDSEY SPRINGER | 750530384 |
| Residence | **Starting Date and Time:** |
| 25758 South 201st West | 09/16/2005 08:20 AM |
| Avenue | **Ending Date and Time:** |
| Kellyville, OK | 09/16/2005 02:40 PM |

**Report Date:**
Friday, September 16, 2005

---

| **Control #:** | 1 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | Master Bedroom (1st) | **Locator Code:** | |
| **Found:** | Chest of Drawers | | |
| **Description:** | Seized Per Warrant   Approximately $19,000.00 in U.S. Currency | | |

---

| **Control #:** | 2 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | Kitchen / Dining | **Locator Code:** | |
| **Found:** | Cabinet | | |
| **Description:** | Seized Per Warrant   Paper Bag containing various cash receipts, copies of money orders, and copies of cashiers checks. | | |

---

| **Control #:** | 3 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | Kitchen / Dining | **Locator Code:** | |
| **Found:** | Pantry | | |
| **Description:** | Seized Per Warrant   Copies of Bills,m Money Orders, and Cash Receipts | | |

---

| **Control #:** | 4 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | Kitchen / Dining | **Locator Code:** | |
| **Found:** | 1 | | |
| **Description:** | Not Used | | |

---

| **Control #:** | 5 | **Evidence Box:** | 2 |
|---|---|---|---|
| **Location:** | Kitchen / Dining | **Locator Code:** | |
| **Found:** | Cabinet | | |
| **Description:** | Seized Per Warrant   Receipts and Misc. Records | | |

---

| **Control #:** | 6 | **Evidence Box:** | 2 |
|---|---|---|---|
| **Location:** | Kitchen / Dining | **Locator Code:** | |
| **Found:** | Counter | | |
| **Description:** | Seized Per Warrant   Misc. Expenditures Records and and Money Orders | | |

---

| **Control #:** | 7 | **Evidence Box:** | 2 |
|---|---|---|---|
| **Location:** | Kitchen / Dining | **Locator Code:** | |
| **Found:** | 1 | | |
| **Description:** | Not Used | | |

---

Page 1 of 3

*App. 78*
*Exhibit 3*
*1 of 1*

15



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH OF )
)
PREMISES KNOWN AS )
25758 SOUTH 201ST WEST AVENUE ) CASE NO.
KELLYVILLE, OKLAHOMA )

## UNITED STATES OF AMERICA'S RESPONSE TO MOVANT'S MOTION FOR COPY OF SWORN TESTIMONY, APPLICATION FOR SEARCH WARRANT AND RETURN OF CERTAIN SEIZED ITEMS

The United States, by its Assistant United States Attorney Melody Noble Nelson,

requests that the Court deny Movant's Motion, based on the following arguments and

authorities.

**I.    The Application for Search Warrant and Sworn Testimony in support of the Application should remained sealed.**

Movant, Lindsey Springer, requests release of all sworn testimony and the application

considered by this Court in issuing the search warrant served upon him at the property known

as "25758 South 201st West Avenue, Kellyville, Oklahoma". This information should not

be provided to Movant because the United States has a compelling government interest

justifying the sealing of the search warrant affidavits until the conclusion of the investigation.

"[There is] no right of access to search warrant materials while a pre-indictment

investigation is under way." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1211 (9th Cir.

1989). Although there is a common law right of access to court documents, this presumption

has not applied to materials properly under seal. *In the Matter of the Search of 1638 E. 2nd*

16



#215
1 of 6

*Street, Tulsa Oklahoma v. United States*, 993 F.3d 773, 775 (10th Cir. 1993) (internal citations omitted.) "[T]here is no right of access to documents which have traditionally been kept secret for important policy reasons." *Times Mirror Co.* at 873 F.2d 1219.

This search warrant was issued only after an ex parte application by the Government and in camera consideration by this Court. This Court determined sufficient reason existed to keep the warrant materials under seal. "The process of disclosing information to a neutral magistrate to obtain a search warrant [therefore] has always been considered an extension of the criminal investigation itself. It follows that the information disclosed to the magistrate in support of the warrant request is entitled to the same confidentiality accorded to other aspects of the criminal investigation." *Times Mirror Co.*, 873 F.2d at 1214. The Court, in *Times Mirror Co.*, recognized the importance that search warrant materials remain inaccessible while a pre-indictment investigation is ongoing. *See, Matter of the Search of Flower Aviation of Kansas, Inc.* 789 F. Supp. 366, 368 (D.Kan. 1992).

Often, a party providing information for an affidavit for a search warrant is protected by the "informer's privilege". Under this privilege, "the state is normally entitled to refuse to disclose the identity of the person who has furnished information relating to an investigation of a possible violation of law." *Hoffman v. Reali*, 973 F.2d 980, 987 (1st Cir. 1992). However, this privilege is not absolute. If the party seeking disclosure makes a proper showing of need, the privilege will give way. It will yield when " the identification of the informant or of a communication is essential to a balanced measure of the issues and

2

17

the fair administration of justice. The party opposing the privilege may overcome it upon showing his need for the information outweighs the government's entitlement to the privilege." *Doe v. Local 1942, IBEW,* 870 F.2d 368, 372-73 (7th Cir. 1989).

Movant has not established that his need for the affidavit or for sworn testimony is essential to fair justice. As of the date of this Response, Movant is not the subject of a criminal indictment. At this early stage of the investigation, the Government's need to protect informers outweighs Movant's need for the information. The informers' privilege is stronger since Movant's motion is civil in nature and the constitutional guarantees assured to criminal defendants are inapplicable. *See, Matter of Search of 1638 E. 2nd Street, Tulsa, Okl.,* 993 F.2d 773,775 (10th Cir. 1993) citing *Doe,* 870 F.2d at 372.

Movant has failed to allege any facts that would warrant unsealing the affidavit in a ongoing investigation case where the government is asserting an informer privilege.

## II. Movant is not entitled to the return of the cash and car title seized during the execution of the search warrant.

Movant has requested this Court order the Government return cash and a car title seized pursuant to the search warrant executed at his property. Requests for return of property taken pursuant a search warrant are governed by FED. R. CRIM. P. 41(g). Rule 41(g) provides,

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose

3

18

3 of 6

reasonable conditions to protect access to the property and its use in later proceedings.

Actions for return of property are governed by equitable principles which should be undertaken with "caution and restraint." *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988).[1]  Therefore, a district court may assume jurisdiction over a preindictment Rule 41(g) motion if a movant demonstrates that being deprived of actual possession of the seized property causes irreparable injury and must be otherwise without adequate remedy at law. *Floyd* at 860 F.2d 1003.  However, "the mere threat of imminent indictment does not establish irreparable injury as required for a motion under Rule 41(e)." *Blinder , Robinson & Co. v. United States (In re Matter of Search of 6455 South Yosemite, Englewood, Colo.)*, 897 F.2d 1549, 1557 (10th Cir. 1990).

Movant fails to establish that he will be irreparably harmed if the money and title are not returned to him immediately.  In addition, this evidence is needed to continue the investigation.

The elements of 26 U.S.C. § 7201 are 1) the existence of a tax deficiency, 2) an affirmative act constituting an evasion or attempted evasion of the tax, and 3) the defendant acted willfully. *United States v. Townsend*, 31 F.3d 262, 266 (5th Cir. 1994) citing *Sansone v. United States* 380 U.S. 343, 351 (1965), *United States v. Wisenbaker*, 14 F.3d 1022, 1024

---

[1]Effective December 1, 2002, Rule 41 was amended and reorganized.  What was formerly Rule 41(e) was changed to Rule 41(g) with minor stylistic changes.  Most of the cases cited by the Government were decided prior to the amendment and reorganization.  Therefore, the cited opinions will refer to Rule 41(e) instead of Rule 41(g).

19

(5th Cir. 1994). Dealing in cash has been held as evidence of an affirmative act for purposes of tax evasion, 26 U.S.C. § 7201. *See, United States v. Daniel*, 956 F.2d 540, 543 (6th Cir. 1992). Therefore, the cash seized from Movant's home may constitute evidence should the Government file criminal charges against Movant.

Movant requests his car title be returned. However, Movant has failed to allege how the Government's retention of his car title will cause him irreparable harm. Movant currently has four automobiles and two motor homes in his possession, therefore, he will have transportation even if he does not have the original title to his new Lexus automobile.

In addition, evidence that shows any act taken by Movant in order to mislead or conceal funds from the Government to avoid paying taxes could be used as an affirmative act constituting evasion. *See, United States v. Voigt*, 89 F.3d 1050, 1090 (3rd Cir. 1996). Accordingly, the title of Movant's recent car purchase is important as potential evidence should the Government file charges.

Movant has not established that he will be irreparably harmed if his cash and car title are not returned to him. Further, the cash and car title are needed in the event the Government files criminal charges in this case. Therefore, the Government requests the Court deny his request for return of his property.

**Conclusion**

Movant is not entitled to the affidavit and sworn statements in support of search warrant sealed by this Court. The Government's interest in its ongoing investigation and the

20

protection of its informants outweigh Movant's interest in the affidavit and sworn statements

in support of search warrant.

In addition, Movant has failed to establish irreparable harm if his cash and car title are

not returned. Therefore, his Motion for return of these items should be denied.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney

MELODY NOBLE NELSON, OBA #16467
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119-1013
(918)382-2700

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of October, 2005, I served the foregoing
document by postage paid U.S. Mail, who are not registered participants of the ECF
System:

Lindsey K. Springer
5147 South Harvard, #116
Tulsa, Oklahoma 74135

MELODY NOBLE NELSON

6

21

6 of 6



Received
OCT 3 1 2005

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

In the Matter of the Search of

"Premises known as
25758 South 201st West Avenue
Kellyville, Oklahoma"

) Case No.
)
)
)   [UNDER SEAL]

## ORDER

Movant's Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant (2) The Application for the Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure, is before the Court for consideration. The motion concerns a search warrant issued in an on-going criminal investigation. The application for the warrant and the affidavit in support of the application were ordered sealed by the Court.

Movant asserts that the warrant was served on him at the address listed on the warrant and that he was provided with an inventory of the items seized pursuant to the warrant. Movant contends he is entitled to the application for the warrant and the sworn testimony the Court considered in issuing the warrant because without that information the warrant violates Movant's Fourth Amendment rights and also because he needs the information to determine if items outside the scope of the warrant were seized. Movant also contends that there was no basis for the seizure of currency and car title(s) and seeks their return.

Initially the Court notes that Movant's motion fails to establish his lawful personal interest in the property searched or the items seized which provides an independent basis to deny the motion. Even assuming that Movant has a lawful personal interest, the law

EXHIBIT
5

1 of 4

does not support the relief requested. There is no right to access to the application or affidavit in support of a search warrant during an on-going investigation. *Matter of Search of 1638 E. 2nd Street, Tulsa, Okl.*, 993 F.2d 773 (10th Cir. 1993); *Times Mirror Co. v. U.S.*, 873 F.2d 1210 (9th Cir. 1989). If the investigation results in a criminal prosecution, access to those materials may be sought in those proceedings. Movant's motion is DENIED as to (1)Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant, and (2) The Application for the Search Warrant.

Movant's request for the return of the seized currency and car title(s) is also insufficient. Such motions are best deferred until the completion of the criminal investigation unless irreparable harm will occur during the delay. *First Nat. Bank of Tulsa v. U.S. Dept. of Justice*, 965 F.2d 217 (10th Cir. 1989). Here, Movant has not only failed to establish his lawful personal interest in the seized items, he has also failed to establish irreparable harm. The motion for the return of the currency and the car title(s) is, therefore, DENIED WITHOUT PREJUDICE.[1]

SO ORDERED this 28th day of October, 2005.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

---

[1] If any subsequent proceedings arise concerning the currency or car title(s) the Government should address why its interests would not be fully met by making copies of the items for use in its investigation and returning these apparently non-contraband items to the lawful owner.

2

23                                                                                    2 of 4

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA



In the Matter of the Search of        )
                                       )    Case No.
"Premises known as                     )
25758 South 201st West Avenue          )
Kellyville, Oklahoma"                  )    [UNDER SEAL]

### ORDER

The Motion to Unseal Documents [Dkt. 285] filed by the United States is before the

Court for decision. A response to the motion [Dkt. 286] was filed by Mr. Lindsey Springer.

The motion requests that the Court unseal: Movant's Motion for (1) Copy of All Sworn

Testimony Court Considered in Issuance of Search Warrant (2) the Application for the

Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search

Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the United States of America's

Response to Movant's Motion for Copy of Sworn Testimony, Application for Search

Warrant and Return of Certain Seized Items [Dkt. 215]; and the Court's Order of October

28, 2005 [Dkt. 227], for use in a civil case, Case No. 06-CV-156-TCK-FHM.

After consideration of the papers on file, the Court concludes that the motion should

be granted as set forth herein. The documents sought to be unsealed were served on the

United States and Mr. Springer so they are aware of the contents of those documents and

making the documents available for use in the pending civil case, No. 06-CV-156-TCK-

FHM, would not jeopardize any ongoing investigation.

The Court, therefore, GRANTS the United State's Motion to Unseal Documents [Dkt.

285] to the following extent:  Both the United States and Mr. Springer are hereby

authorized to publicly disclose, including public filings in Case No. 06-CV-156-TCK-FHM,

c/USA & Springer

# 301
3 of 4

24

the Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant (2) the Application for the Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the United States of America's Response to Movant's Motion for Copy of Sworn Testimony, Application for Search Warrant and Return of Certain Seized Items [Dkt. 215]; and the Court's Order of October 28, 2005 [Dkt. 227].

The Court Clerk for the United States District Court for the Northern District of Oklahoma is hereby authorized to provide to the United States and to Mr. Springer copies of the Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant (2) the Application for the Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the United States of America's Response to Movant's Motion for Copy of Sworn Testimony, Application for Search Warrant and Return of Certain Seized Items [Dkt. 215]; and the Court's Order of October 28, 2005 [Dkt. 227]. The Court Clerk is also directed to provide a copy of this Order to the United States and to Mr. Springer.

However, the Court will not order the Court Clerk to unseal the documents in the Court's filing system as the documents are filed in the general sealed grand jury file.

SO ORDERED this _20th_ day of _JULY_ , 2006.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

2

25

4 of 4



**EXHIBIT**

6

1 of 1

26

Seizure Case Number: _____
Evidence <$500 Number: _____
Aftrak Number: _____

## INTERNAL REVENUE SERVICE
## RELEASE OF CLAIM

This agreement is made between

_____LINDSEY K. SPRINGER_____          5147 South Harvard, #116, Tulsa, OK
              (Name)                                    (Address)

and the Internal Revenue Service of the United States Department of the Treasury. This
agreement is made in consideration of the return of:

_____$17,000.00  U.S._____

_____

_____

_____
                        (Description of Property)

registered to/owned by:
_____LINDSEY K. SPRINGER_____          5147 South Harvard, #116, Tulsa, OK
                                          (Name and Address)

which was seized pursuant to Title 18 U.S.C. Section 981 or 982/Title 26 U.S.C. Section 7302 in
the course of a criminal or civil investigation, and for other consideration, the receipt of which is
hereby acknowledged.

Being the      **OWNER AND/OR AUTHORIZED AGENT**      of the property as evidence by a
                     (Type of Interest)
_____owner's possession_____
                     (Title, Registration, Contract, Note, Etc.)
dated      09/16/2005      .

The registrant/owner hereby agrees to unconditionally release and hold harmless the Internal
Revenue Service, its officers, employees and agents, from any and all claims, demands, damages,
causes of action or suits, whether in official or individual capacity, of whatever kind and
description, and wheresoever situated, that might now exist or hereafter exist by reason of, or
growing out of, or affecting, directly or indirectly, the seizure, custody or return of the above-
described property.

Executed this _____10th_____ day of _____January_____ , 20 _06_ .

**EXHIBIT**
**7**

_____
              Signature of Recipient

_____
              Signature of Witness

27

1 of 1

15

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF OKLAHOMA

LINDSEY K. SPRINGER,                    )
                                        )
      Plaintiff,                       )
                                        )
vs.                                     )   Case No. 06-CV-156-GKF-FHM
                                        )
DOUGLAS HORN, Individually;             )
MELODY NOBLE NELSON,                    )
Individually; BRIAN SHERN,              )
Individually; and 10 Unknown Agents     )
of the Internal Revenue Service,        )
Individually; and Others Unknown,       )
Individually,                           )
                                        )
      Defendants.                      )

## DECLARATION OF IRS SPECIAL AGENT BRIAN SHERN

I, BRIAN SHERN, declare that:

1.    I am a duly commissioned Special Agent with the Criminal Investigation Division of the Internal Revenue Service with post of duty in Tulsa, Oklahoma. I have been a Special Agent since February 11, 2005.

2.    This Declaration is being executed in support of the individual federal defendants' motion for summary judgment in the above-captioned civil action. I am one of the defendants in this civil action.

3.    Except where specifically noted to the contrary, I have personal knowledge of the facts set forth in this Declaration, and, if called upon to testify to said facts, could do so competently.

4.    As a Special Agent with the Internal Revenue Service – Criminal Investigation, I have the authority to perform all duties conferred upon such officers

Exhibit 8

28

under all laws and regulations administered by the Internal Revenue Service, including
the authority to investigate, execute and serve search warrants and arrest warrants, make
arrests without warrant, carry firearms, make seizures of property subject to forfeiture
and to require and receive information, as to all matters relating to such laws and
regulations.

   5.  On or about April 26, 2005, I was assigned as the case agent to conduct an
investigation of Lindsey Springer for allegations of violations of Title 26, United States
Code, including tax evasion and failure to file income tax returns. On September 15,
2005, I presented an application and affidavit for search warrant to search Springer's
residence in Kellyville, Oklahoma, to United States Magistrate Judge Frank H.
McCarthy. On the same date, Magistrate Judge McCarthy signed a search warrant to
search Lindsey Springer's Kellyville, Oklahoma, residence. A true and correct copy of
the Search Warrant (including Attachments A and B thereto) is attached to this
Declaration as Exhibit 4.

### The execution of the search warrant on September 16, 2005

   6.  The authority of Special Agents of the Internal Revenue Service –
Criminal Investigation to execute search warrants is set forth in section 7608(b) of the
Internal Revenue Code (26 U.S.C.). On September 16, 2005, I and ten other Special
Agents with the Internal Revenue Service – Criminal Investigation executed a search
warrant signed by U.S. Magistrate Judge Frank H. McCarthy on September 15, 2005,
with respect to the personal residence of Lindsey K. Springer in Kellyville, Oklahoma.

   7.  I arrived at Lindsey Springer's residence in Kellyville, Oklahoma at
approximately 8:20 a.m. on the morning of September 16, 2005. At the outset of the

29

-2-

execution of the search warrant, I explained to Mr. Springer that we were conducting a search of his residence in accordance with the search warrant signed by Magistrate Judge McCarthy on September 15, 2005. I showed Mr. Springer a copy of the search warrant. To ensure the safety of both Mr. Springer and the IRS Special Agents who were assigned to assist me in the execution of the search warrant, Mr. Springer was asked if any firearms or weapons were located in his home.

8.       In the presence of IRS Special Agent Donald G. Shoemake, I asked Mr. Springer if there was a more private place where we could speak to him. Mr. Springer led Agent Shoemake and myself to an upstairs bedroom where we interviewed Mr. Springer from approximately 8:27 a.m. to approximately 11:20 a.m.

9.       At the conclusion of the search on September 16, 2005, all of the evidence seized from Lindsey Springer's residence was placed in the back of Supervisory Special Agent William R. Taylor's vehicle to be transported back to the IRS-CI Office in Tulsa, Oklahoma.

## The seized currency is counted at Arvest Bank

10.       After contacting IRS Special Agent Mark Parsons, a forfeiture specialist, it was decided by Supervisory Special Agent Taylor and myself that the currency seized from Mr. Springer's residence would be taken to a bank and converted into a cashier's check.

11.       Upon leaving Springer's residence in Kellyville, Oklahoma, Supervisory Special Agent Taylor and myself traveled to the Arvest Bank located at 10615 E. 81st Street in Tulsa, Oklahoma. Once we arrived at the Bank, we informed the branch manager, Julie Powders, that we needed to obtain a cashier's check.

30

2878673.1

3 of 7

12.     We gave the sealed evidence bag containing the currency seized from Springer's residence to Ms. Powders, who gave the evidence bag to a teller on duty to count the cash using a currency counting machine. The teller opened the evidence bag in order to count the currency seized from Springer's residence, and counted it using a counting machine.

13.     The teller who counted the currency contained in the evidence bag informed Supervisory Special Agent Taylor and myself that there was $17,000 in the evidence bag. We requested the teller to count the currency a second time, which she did. The count of the currency again came to $17,000.

14.     We requested a check for $17,000, which we obtained from the teller who had counted the currency. The $17,000 cashier's check was subsequently given to Special Agent Parsons to deposit.

### Springer's motion for the return of currency and car titles

15.     After the execution of the search warrant on September 16, 2005, I was informed that Mr. Springer had filed a motion from the Court for the return of the currency and car titles seized from him on September 16, 2005. I was also informed that AUSA Nelson had responded to Mr. Springer's motion for the return of the currency and car titles, and that the District Court had denied Mr. Springer's motion.

16.     After the Court denied Mr. Springer's motion for the return of the currency and car titles, I was instructed by Assistant United States Attorney Douglas Horn to return the seized currency and car titles to Mr. Springer. I then made a request to Robin Bryant, a forfeiture specialist, to obtain the $17,000 to give back to Springer.

31

- 4 -

2878673.1

4 of 7

17.     On January 10, 2006, after I obtained a $17,000 Treasury Department check from Robin Bryant, I went to Springer's house in Kellyville, Oklahoma, to give him the $17,000 Treasury check. A true and correct copy of the $17,000 Treasury check is attached to this Declaration as Exhibit 5

18.     After tendering the $17,000 Treasury check to Springer, I asked him to sign an Internal Revenue Service Release of Claim (hereinafter, "Release of Claim"). I wrote the handwritten words and figures that appear on the Release of Claim. A true and correct copy of the Release of Claim signed by Lindsey Springer in my presence (and myself as witness), is attached to this Declaration as Exhibit 6.

19.     I was not present for the search of Mr. and Mrs. Springer's first-floor master bedroom, or the seizure of the currency pursuant to the search warrant issued by U.S. Magistrate Judge Frank H. McCarthy on September 15, 2005. My sole involvement with the currency seized from Springer's residence was to take it, in a sealed evidence bag, to the Arvest Bank for counting.

20.     I did not steal any money from Lindsey K. Springer, or enter into any agreement or conspiracy with former Assistant United States Attorney Melody Nelson, Assistant United States Attorney Douglas Horn or any IRS Special Agent, or anyone else, to steal any money from Lindsey Springer.

2878673.1

32

5 of 7

## CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Executed on November **28**, 2007.

_____

BRIAN SHERN
Special Agent
Internal Revenue Service

33

2878673.1
6 of 7

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the forgoing **DECLARATION** was filed

with the Clerk of the court electronically today, July 14, 2008, such that a service copy was sent

by way of the electronic filing system to the plaintiff and all counsel who have arranged for

electronic service of filings

/s/ Robert D. Metcalfe
ROBERT D. METCALFE DC #423163
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington, D.C. 20044

34

7 of 7

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

LINDSEY K. SPRINGER, )
)
          Plaintiff, )
)
    v. )      Case No. 06-CV-156-GKF-FHM
)
DOUGLAS HORN, Individually; MELODY )
NOBLE NELSON, Individually; BRIAN )
SHERN, Individually; 10 UNKNOWN )
AGENTS OF THE INTERNAL REVENUE )
SERVICE, Individually; and OTHERS )
UNKNOWN, Individually, )
)
          Defendants. )
_____ )

## DECLARATION OF MELODY NOBLE NELSON

I, MELODY NOBLE NELSON, declare that:

1. I am presently employed as an Assistant Attorney General in the Oklahoma Attorney General's Office in Tulsa, Oklahoma, where I prosecute criminal and civil cases in the Patient Abuse and Medicaid Fraud Division of our office. I am one of the defendants in the above-captioned civil action.

2. This Declaration is being executed in support of the individual federal defendants' motion for summary judgment in the above-captioned civil action.

3. Except where specifically noted to the contrary, I have personal knowledge of the facts set forth in this Declaration, and, if called upon to testify to said facts, could do so competently.

4. I have read, and am familiar with, the allegations of the Bivens Complaint in this case.

2871148.1

35

Exhibit 9
1 of 9

5. I graduated from the University of Central Arkansas with a degree in Accounting in 1985, and from the University of Arkansas Law School in 1988. After passing the bar and obtaining my license to practice law in Arkansas, I was employed as a civil litigator at the firm of Crockett and Brown, P.A., in Little Rock, Arkansas, between July of 1988 and June of 1990. I was employed by the Pulaski County Prosecuting Attorney's Office between June of 1990 and December of 1992. I was admitted to the Texas Bar and served as an Assistant District Attorney for Bowie County, Texas, between April of 1993 and November of 1994. Between March of 1995 (when I was admitted to the Oklahoma Bar) and November of 2001, I served as an Assistant Attorney General for the State of Oklahoma.

6. From approximately December of 2001 until July of 2006, I served as an Assistant United States Attorney for the Northern District of Oklahoma in Tulsa, Oklahoma, where I prosecuted individuals for violations of federal law. In July of 2006, I left my job as an Assistant United States Attorney to return to my previous employment as an Assistant Attorney General for the State of Oklahoma.

### The investigation into the activities of Lindsey K. Springer and the search warrant for the search of his residence

7. While I was an Assistant United States Attorney for the Northern District of Oklahoma, I was assigned to a case involving an investigation by the Internal Revenue Service into the activities of the plaintiff, Lindsey K. Springer, for alleged violations of Title 26, United States Code (including, but not limited to, section 7201 of the Internal Revenue Code). As part of this investigation, I prepared a search warrant for the search of the plaintiff's residence in Kellyville, Oklahoma. On or about September 15, 2005, I presented the search warrant and the

-2-

2871148.1

36

2 of 9

supporting declaration of IRS Special Agent Brian M. Shern to United States Magistrate Judge

Frank H. McCarthy, who signed the search warrant and authorized the search of Springer's

residence.

8. A copy of the search warrant signed by Magistrate Judge McCarthy is attached to the

"Movant's Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search

Warrant (2) The Application for the Search Warrant and (3) Return of Certain Property Either

Not Items Listing in Search Warrant or Clearly Not Subject to Seizure" filed by Springer in In

the Matter of the Search of Premises Known as 25757 South 201st West Avenue, Kellyville,

Oklahoma, Case No. 05-SM-1 (N.D. Okla.) (hereinafter, "the Movant's Motion").  A true and

correct copy of the Movant's Motion, including Exhibits 1 and 2 thereto (the search warrant

issued by Magistrate Judge McCarthy on September 15, 2005, and the Inventory Listing of All

Items Seized at Search Warrant Site, respectively), is attached to this Declaration as Exhibit 1.

9. Listed among the items to be seized in paragraph 2 of Attachment B to the search

warrant (Exhibit 1 to this Declaration) for Springer's residence were "[c]urrency and monetary

instruments including cashier's checks, receipts of cashier's checks, money orders, traveler's

checks, and other monetary instruments."

**The search of Lindsey Springer's residence on September 16, 2005**

10. The search of Springer's residence pursuant to the search warrant authorized by

Magistrate Judge McCarthy took place on September 16, 2005.  I was not present for the search

of the plaintiff's residence by IRS Special Agent Brian Shern and other IRS Special Agents.

11. I have never traveled to Springer's residence in Kellyville, Oklahoma.

12. On the morning of the execution of the search warrant at Springer's residence on

2871148.1

37

3 of 9

September 16, 2005, I received a telephone call from Supervisory Special Agent William R. Taylor, who was one of the Agents who was involved in the search of Springer's residence. During this conversation, Agent Taylor informed me that approximately $19,000 in U.S. currency had been discovered in the search of Springer's residence. I, along with Douglas Horn (the Chief of the Criminal Division of the United States Attorney's Office for the Northern District of Oklahoma) and Agent Taylor, determined that the currency should be seized pursuant to the search warrant signed by Magistrate Judge McCarthy as potential evidence of one or more violations of Title 26, United States Code, by Lindsey K. Springer.

13. On the afternoon of September 16, 2005, I received a telephone call from Supervisory Agent Taylor, who informed me that although they had thought they had about $19,000 in cash, the actual amount, as counted at a bank, was $17,000. I asked Agent Taylor if any Agent was ever alone with the cash, and he replied "no." I asked Agent Taylor to document who had been around the money, and what had happened.

### Subsequent contacts with Lindsey Springer

14. Shortly after the execution of the search warrant at Springer's residence on September 16, 2005, Lindsey Springer began to call me at my office at the United States Attorney's Office in Tulsa, Oklahoma. In several instances, Springer left messages for me at my office. All of the messages concerned the return of the currency and car titles.

15. IRS Special Agent Brian Shern called and told me that Lindsey Springer was calling him about the return of the currency and car titles. I told Agent Shern to refer Springer to me.

16. During the telephone conversations that I had with Lindsey Springer, he asked me to recuse myself from his case, which I declined to do. Springer also requested the return of the

-4-

2871148.1

38

4 of 9

currency and car titles. Because I believed that the law did not require me to do so, I told him

that I would not return the currency or car titles.

17. Springer informed me by telephone that he would file something with the Court for

the return of the currency and car titles. I informed Springer that the currency and car titles

would be returned to him if the Court ordered the Government to do so. I also asked him to stop

calling me and to put any of his requests or concerns in writing. I did this for two reasons. First,

Springer was the target of an investigation, and I was uncomfortable with discussing matters with

him over the telephone. Second, based on prior experience with Springer, I was concerned that

anything I said to him might be taken out of context.

### Springer's Rule 41 motion

18. On September 23, 2005, one week after the execution of the search warrant at his

residence, Springer filed his "Movant's Motion for (1) Copy of All Sworn Testimony Court

Considered in Issuance of Search Warrant (2) The Application for the Search Warrant and (3)

Return of Certain Property Either Not Items Listing in Search Warrant or Clearly Not Subject to

Seizure" in In the Matter of the Search of Premises Known as 25757 South 201st West Avenue,

Kellyville, Oklahoma, Case No. 05-SM-1 (ND Okla.). The "Movant's Motion" sought the

disclosure of the supporting declaration of IRS Agent Brian Shern (as well as any other

supporting materials) and the return of the currency and car titles that were seized pursuant to the

search warrant. A true and correct copy of the "Movant's Motion," together with all materials

filed in support of that motion, is attached to this Declaration as Exhibit 1.

19. I prepared and filed the United States of America's Response to Movant's Motion for

Copy of Sworn Testimony, Application for Search Warrant and Return of Certain Seized Items

-5-

2871148.1

39

5 of 9

(the "Response") that was filed with the Court on October 5, 2005. A true and correct copy of the Response is attached to this Declaration as Exhibit 2.

20. In an Order entered on October 28, 2005, Magistrate Judge McCarthy denied Springer's request for copies of the materials and/or testimony considered in connection with the issuance of the search warrant and the application for the search warrant. The Court also denied without prejudice Springer's motion for the return of the seized currency and car titles. A true and correct copy of the October 28, 2005 Order is attached to this Declaration as Exhibit 3.

21. After the denial of the Movant's Motion, Assistant United States Attorney Douglas Horn and myself made the decision to return the currency and the car titles that were seized pursuant to the search warrant to Springer. It is my recollection that Agent Shern went to Springer's residence in January of 2006 and gave him a Treasury check in the amount of $17,000.

22. I did not steal any money from the plaintiff in this civil action, or enter into any agreement or conspiracy with Assistant United States Attorney Douglas Horn or any IRS Special Agent, or anyone else, to steal any money from Lindsey Springer.

23. I did not, individually or in conjunction with any other party or individual, "cover up" or attempt to "cover up" any alleged discrepancy between the amount of currency shown on the "Inventory Listing of All Items Seized at Search Warrant Site" ("Approximately $19,000.00 in U.S. Currency") and the $17,000.00 amount shown on the Treasury Check tendered to the plaintiff, Lindsey K. Springer, in January of 2006. I opposed the "Movant's Motion," as described in paragraph 18, above, because of my good-faith belief that Springer had not demonstrated that he would suffer irreparable harm or injury (as he was required to do under

-6-

2871148.1

40

6 of 9

Rule 41 of the Federal Rules of Criminal Procedure) if the money and car titles seized from his residence on September 16, 2005, were not returned to him immediately, and for the other reasons set forth in the United States' response to Springer's motion for the return of seized items.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

-7-

41

7 of 9

## CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed on November 27th, 2007.

_Melody Noble Nelson_
MELODY NOBLE NELSON

-8-

2871148.1

42

8 of 9

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the forgoing **DECLARATION** was filed

with the Clerk of the court electronically today, July 14, 2008, such that a service copy was sent

by way of the electronic filing system to the plaintiff and all counsel who have arranged for

electronic service of filings

*/s/ Robert D. Metcalfe*
ROBERT D. METCALFE DC #423163
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington, D.C. 20044

43

FILED

MAR 1 0 2009

Phil Lombardi, Clerk
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

Case No. _09 CR 043 JHP_

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINDSEY KENT SPRINGER, | ) |
| OSCAR AMOS STILLEY, | ) |
| | ) |
| Defendants. | ) |

**INDICTMENT**
[18 U.S.C. § 371, Conspiracy to
Defraud the United States;
26 U.S.C. § 7201, Tax Evasion;
26 U.S.C. § 7203, Failure to File
Tax Return]

### THE GRAND JURY CHARGES:

#### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.     **LINDSEY KENT SPRINGER** ("Defendant **SPRINGER**") was a resident of the City of Kellyville, in the Northern District of Oklahoma.

2.     Defendant **SPRINGER** used the name Bondage Breakers Ministry to solicit and receive money.  Defendant **SPRINGER**'s stated purpose for Bondage Breakers Ministry was "to get rid of the Internal Revenue Service."

3.     **OSCAR AMOS STILLEY** ("Defendant **STILLEY**") was an attorney residing in Fort Smith, Arkansas.

44

1

Exhibit 10

APP. 47
1 of 4

4.      Defendant **STILLEY** maintained an Arkansas IOLTA Foundation Trust Account ("IOLTA account") at Arvest Bank; an IOLTA account is an interest-bearing account used to hold client funds.

5.      Defendants **SPRINGER** and **STILLEY** each earned income in various ways, including assisting individuals being investigated and prosecuted for federal tax violations. Defendant **SPRINGER** referred individuals to Defendant **STILLEY**, and provided assistance on many of these cases.

6.      Defendant **SPRINGER** last filed an individual income tax return with the Internal Revenue Service in the late 1980's.

7.      Defendant **STILLEY** last filed an individual income tax return with the Internal Revenue Service in the late 1980's.

<u>**COUNT ONE**</u>
**[18 U.S.C. § 371]**

8.      General Allegations paragraphs 1 through 7  are incorporated as if fully set forth herein.

**OBJECT OF THE CONSPIRACY**

9.      Beginning in or about 2000, and continuing until on or about January 15, 2009, within the Northern District of Oklahoma, and elsewhere, Defendants **SPRINGER** and **STILLEY**, and others, both known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions ~~22~~

2



App. Q-2
2 of 4

4.5

of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is, federal individual income taxes.

## MANNER AND MEANS OF THE CONSPIRACY

The object of the conspiracy was to be accomplished, and was accomplished, through the following manner and means:

10.    Defendants **SPRINGER** and **STILLEY** would and did use Defendant **STILLEY**'s IOLTA account to conceal Defendant **SPRINGER**'s income, assets, and personal expenses;

11.    Defendant **SPRINGER** would and did use Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses;

12.    Defendants **SPRINGER** and **STILLEY** would and did use cashier's checks, money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal Defendant **SPRINGER**'s income;

13.    Defendants **SPRINGER** and **STILLEY** would and did knowingly misrepresent the source and nature of Defendant **SPRINGER**'s income to Internal Revenue Service employees, the Grand Jury, and the Department of Justice; and

14.    Defendants **SPRINGER** and **STILLEY** would and did refrain from filing forms with the Internal Revenue Service, including Forms 1040 and 1099.

3

46


APP. 49
3 of 4

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to effect the object thereof, Defendants **SPRINGER** and **STILLEY**, and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Northern District of Oklahoma and elsewhere:

15. On or about September 16, 2005, Defendant **SPRINGER** told Internal Revenue Service employees that all funds he receives are gifts and donations, that he does not have any income, and that he does not provide any services for payment.

16. On or about January 20, 2006, Defendant **STILLEY** stated to Internal Revenue Service employees that people give money to Defendant **SPRINGER** for his ministry, and expect no services in return.

17. On or about March 9, 2006, Defendant **STILLEY** provided the Grand Jury with a document titled "RESPONSE TO SUBPOENA" stating that "LINDSEY SPRINGER does not charge for his services," and purporting to list "any money paid, given, transferred, or provided to LINDSEY SPRINGER for any purpose."

18. On or about June 24, 2003, Defendant **STILLEY** caused to be deposited a check for $112,500 into his IOLTA account.

19. On or about June 30, 2003, Defendant **STILLEY** caused to be written a check for $14,359 from his IOLTA account to Defendant **SPRINGER**.

20. On or about July 21, 2003, Defendant **STILLEY** caused to be written a check for $35,000 from his IOLTA account to Defendant **SPRINGER**.

47



APP. 50
4 of 4



Criminal Investigation

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

*IVal.*

## CAUTION: ENCLOSURES CONTAIN GRAND JURY INFORMATION

June 3, 2005

The Honorable Eileen J. O'Connor
Assistant Attorney General
Department of Justice (Tax Division)
600 E. NW, Room 5013 BICN Bldg.
Washington, DC 20530

*Patterson Invest.
Exp.*

Attn:  Ronald A. Cimino, Chief Western Enforcement Section

Re:   Title 26 Grand Jury Investigation Expansion
       Concerning:  LINDSEY K. SPRINGER

Dear Mr. Cimino:

I am referring the matter shown above to your office concurring with your request to expand a grand jury investigation.  Based on my review of the information provided by Assistant U. S. Attorney Melody Noble Nelson and our examination of the relevant tax records, I find there is reason to believe that federal criminal tax violations have been committed.  Disclosures of tax return and/or tax return information made herein or in the accompanying enclosures are authorized by 26 U.S.C. § 6103(h)(3)(A).  I have authorized the commitment of Internal Revenue Service resources to assist in the investigation of potential Title 26 and Title 26-related violations that Lindsey K. Springer may have committed for the years 2000 through 2004.

The following information is enclosed for your review:

1. Form 9131 and Exhibits
2. Evaluation memorandum prepared by Criminal Tax attorney.

If you need Criminal Tax Counsel to assist in the evaluation of evidence developed by the grand jury as it relates to Title 26 and Title 26-related offenses, please call me at (214) 413-5919 and I will arrange to have a docket attorney assist you.

*Exhibit 11
1 of 2*

*Appendix L*

*5-59N-7848
200020/076*

*6/8/05
48*

1

Originals or copies of an     orrespondence sent to this office s     uld be addressed to me
with the notation, "Material to be opened by address only." If you have any questions
regarding this memorandum, please contact Supervisory Special Agent William R.
Taylor or Special Agent Brian Shern at (918) 581-7050 Ext. 230.

Sincerely,

Michael D. Lacenski
Special Agent in Charge
Dallas Field Office
1100 Commerce Street, DAL 9000
Dallas, TX  75242

Enclosures (2)

Cc:    Richard A. McDonald
       Field Counsel (Criminal Tax)

2

49                                                                        App. K-2
                                                                          2 of 2



U.S. Depa. .... *i* Justice
**Tax Division**

Western Criminal Enforcement Section
P.O. Box 972, Ben Franklin Station          (202) 514-5762
Washington, D.C. 20044          Telefax: (202) 514-9623

EJO'C:RACimino:jhm
DJ# 5-59N-7848
CMN# 2000201076

June 10, 2005

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>

David E. O'Meila, Esquire
United States Attorney
Northern District of Oklahoma
3600 United States Courthouse
110 West 7th Street
Tulsa, OK 74119

Attn: AUSA Melody Noble Nelson

Re:  <u>Grand Jury Investigation</u>
Patterson Investigation
Northern District of Oklahoma
DJ# 5-59N-7848
Concerning: Lindsey K. Springer

Dear Mr. O'Meila:

Reference is made to a letter dated June 3, 2005, the Special
Agent-in-Charge, Internal Revenue Service, Dallas, Texas, approving
your request to expand an existing non-tax grand jury investigation to
include an investigation of potential criminal tax violations in the
above-entitled matter.   In accordance with Tax Division Directive 86-
59, the Tax Division has no objection to this expansion.

Pursuant to established procedures, no tax or tax-related
charges, including charges to which a target has agreed to enter into
a plea agreement, may be filed without prior approval of the Tax
Division.   You are reminded that any expansion of this grand jury
investigation, to include additional targets, requires Tax Division
approval as well.   If you determine that use of the statutory
compulsion process pursuant to 18 U.S.C. § 6003(b) or a non-
prosecution agreement with a witness ("letter immunity") is warranted,
refer to the procedures set forth in U.S.A.M. § 9-23.000, <u>et seq</u>., and
U.S.A.M. § 9-27.600, <u>et seq</u>., respectively.

DJ file copy →

Exhibit 12
1 of 3

50

APP. 34

- 2 -

Upon conclusion of the investigation, please provide the testimony, documents, and other materials accumulated by the grand jury to the assisting Internal Revenue Service agent for the sole purpose of analyzing the potential criminal tax aspects of the case and preparing a report setting forth his or her recommendation regarding prosecution.  This report will be reviewed by an Internal Revenue Service Counsel, who will make a written evaluation and recommendation to the Special Agent-in-Charge.  The Special Agent-in-Charge will forward the reports and exhibits, along with his or her recommendation regarding prosecution to the Tax Division.

You must provide the Tax Division with a written report of your views regarding the prosecution potential of this case, the non-tax charges, if any, that you intend to bring, and the anticipated date of indictment.  In addition, the case should be submitted to the Tax Division for review at least 60 days prior to the date on which you need a decision.

You have the authority to terminate this investigation, <u>provided</u> that prior written notification is given to both the Tax Division and the Internal Revenue Service.  This notification should indicate that the matter is terminated pursuant to 26 U.S.C. § 7602(d).  Please be reminded that your use of all tax returns and return information is governed by 26 U.S.C. § 6103(h).  In the event that the tax aspects of the investigation are terminated, you must obtain a court order pursuant to Section 6103(I) in order to retain and use such returns and return information previously obtained under Section 6103(h).

In all future correspondence, please use the following caption:

Re:  <u>Grand Jury Investigation</u>
Patterson Investigation
Northern District Oklahoma
DJ# 5-59N-7848
Concerning:

Please list each target (individuals and entities) who is the subject of the correspondence.

A copy of the Special Agent-in-Charge's letter and its attachments is enclosed.  You are reminded that Fed. R. Crim. P. 6(e)(3)(B) requires that you furnish the court with the names of all persons with access to grand jury material.  Enclosed with the Special Agent's letter are the IRS Counsel's memorandum and IRS Form 9131 (Request for Grand Jury Investigation) which lists all Internal Revenue Service personnel to whom such material has been disclosed.

2 of 3



51

- 3 -

Please advise all Internal Revenue Service personnel who assist you in this investigation, and who will have access to grand jury material, that such material is supplied to them on the following conditions:

1.  All grand jury material will remain under the custody of the grand jury, the United States Attorney, and the Tax Division;

2.  Disclosure of grand jury material may be made only to Internal Revenue Service personnel who are assisting in the investigation and formulating a recommendation by the Service regarding prosecution, and such Internal Revenue Service personnel may only use the grand jury material for this purpose;

3.  The Internal Revenue Service will furnish the Tax Division with advice and a recommendation, whether favorable or unfavorable, regarding the prosecution potential of this case;

4.  The Internal Revenue Service will return all grand jury material to you when it is no longer needed for use in advising and assisting the Department of Justice in the investigation of this matter.

If you have any questions about this case or your authority under Directive 86-59, you may contact Tax Division, Western Criminal Chief Ronald A. Cimino at (202) 514-5762.  Please acknowledge receipt of this letter and its enclosures.

Sincerely yours,

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By:

RONALD A. CIMINO
Chief, Western Criminal
Enforcement Section

Enclosures
        (1 Volume)
cc:  Special Agent in Charge
     Dallas, Texas

52

APP. 36
3 of 3

94    5312

# REAL ESTATE MORTGAGE WITH POWER OF SALE
(INDIVIDUAL - CORPORATION - PARTNERSHIP)

*Appendix W-1*

**EXHIBIT**
**13**
1 of 2

*KNOW ALL MEN BY THESE PRESENTS that* __William D. Greenhaw and Linda F. Greenhaw (h & w)__

hereinafter called Mortgagor, whether one or more, hereby mortgages to __W. T. Moore and Martha F. Moore, husband and wife,__
__and W. T. Smith and Janeth S. Smith, husband and wife,__

hereinafter called Mortgagee, whether one or more, the following described real estate and premises, situated in ____Creek____
County, State of Oklahoma, to-wit:

> The surface and surface rights only and to the North half (N½) of the Southeast
> Quarter (SE¼) of Northwest Quarter (NW¼) of Section Two, Township 17 North,
> Range 10 East, Creek County, Oklahoma

RECEIPT NO. *7188*
Mortgage Tax Paid $ *30.00*
This *15* day of *Apr 19 94*
BESSA HAMMONTREE, Co. Treas.
*Jean Young* Deputy

STATE OF OKLAHOMA
COUNTY OF CREEK
THIS INSTRUMENT WAS FILED
FOR RECORD ON

*2 o'*APR 15 1994
*2* o'clock *P* M. and duly recorded in
Book *323* Page *290-91*
BETTY RENT, County Clerk
By _____ Deputy

with all the improvements thereon and appurtenances thereunto belonging (hereinafter referred to as the "Mortgaged Property"). Mortgagor warrants the title to same.

Further, the Mortgagor, as further and additional security to the Mortgagee, does hereby sell, assign and transfer unto the Mortgagee all the rents, issues and profits now due and which may hereafter become due under or by virtue of any lease, whether written or verbal, or any letting of, or of any agreement for the use or occupancy of the Mortgaged Property.

This mortgage is given to secure the payment and/or performance of all of the following:
   (a) Mortgagor's promissory Note or Notes of even date with principal sums, interest and maturity dates as follows together with all renewals thereof:
   (a1)  Mortgagor shall not sell, assign, convey, mortgage, or pledge said property
without the prior written approval of mortgagees.
   (a2)  Mortgagor shall timely pay the ad valorem taxes due yearly and furnish mortgagees
with a receipt showing such payment.  Promissory Note dated April 15th, 1994 in the principal
amount of $ 30,000.00 at 12.00% interest with a maturity date of April 15th 2001.
   (b) All sums advanced or paid by Mortgagee on account of the failure of the Mortgagor to comply with the terms or covenants of this Mortgage or any note, agreement or other document signed by the Mortgagor;
   (c) All loans and renewals and all renewals of loans which Mortgagor may hereafter make to Mortgagor; and
   (d) All other and additional debts, obligations and liabilities of every kind and character of Mortgagor now existing or hereafter arising in favor of Mortgagee, whether direct or indirect, absolute or contingent, or originally payable to Mortgagee or any other person; and any renewals or extensions thereof.

Mortgagor further agrees: (a) to pay the indebtedness and perform the obligations secured hereby as and when such payment or performance becomes due; (b) to pay and discharge all taxes and assessments before the same become delinquent; (c) to keep all improvements insured and under policies which are acceptable to, and for the benefit of, the Mortgagee; (d) to cure all title defects or clouds on or claims against Mortgagee's title which may arise or be discovered; (e) to keep all improvements in good condition and repair and to repair or replace any damage or destroyed improvements; (f) to discharge any levies, liens, attachments, or other claims which may be asserted against the Mortgaged Property. In the event of the failure of the Mortgagor to fulfill the agreements of this paragraph, the Mortgagee may purchase insurance or pay taxes, assessments or other liens, and shall have a lien secured by this Mortgage for the amount thereof with interest thereon at the maximum rate of interest on any indebtedness secured hereby.

Mortgagor hereby confers on Mortgagee the power to sell the real estate described herein and the interests of persons therein in the manner provided in the "Oklahoma Power of Sale Mortgage Foreclosure Act", (Title 46, Oklahoma Statutes, Sections 43 through 47). The Mortgagee, at its option, may either exercise the power of sale or foreclose this Mortgage as provided by law in the event the Mortgagor: (a) defaults in the payment of any indebtedness secured hereby; or (b) fails to perform any other covenant or agreement contained herein or in any other indebtedness, obligation or agreement of the Mortgagor to the Mortgagee; or (c) sells, conveys, transfers, mortgages, hypothecates, or in any other manner comes to be the owner of all or any portion or interest of the Mortgaged Property. The Mortgagor does hereby appoint irrevocably the Mortgagee its true and lawful attorney in its name and stead, upon such default, to collect all of said avails, rents, issues and profits arising from or accruing at any time hereafter, and all now due, or that may hereafter become due under each and all of the leases, contracts and agreements, written or verbal, or other tenancy existing or which may hereafter exist on the Mortgaged Property, with the same rights and powers and subject to the same immunities, exoneration of liability and rights of recourse and indemnity as the Mortgagor would have. As often as any proceedings may be taken to foreclose this Mortgage, the Mortgagee agrees to pay to the Mortgagee a reasonable attorney's fee, in addition to other sums due, which shall be secured hereby. In the event that the Mortgagee exercises the power of sale such reasonable attorney's fee shall be $2,500.00. Upon the due payment of the indebtedness described above, and upon the performance of the other covenants and agreements hereof by the Mortgagor, this Mortgage shall become null and void, and discharged of record at the cost of the Mortgagor, which cost Mortgagor agrees to pay.

The Mortgagor, in the event of foreclosure hereunder, hereby waives appraisement of said premises, or not, at the option of the Mortgagee to be declared when the Petition to Foreclose is filed or when judgment is taken.

## "A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS MORTGAGE."

**SIGNATURE OF MORTGAGOR**

Signed and Delivered on this Date:

Date: __April 15, 1994__

*William D. Greenhaw*
William D. Greenhaw
*Linda F. Greenhaw*
Linda F. Greenhaw

## Page 1 of 2 Pages

Attest By: ____
    Secretary        By: ____        President

240

ACKNOWLEDGMENT FOR AN INDIVIDUAL, A CORPORATION AND A PARTNERSHIP (On Reverse Side Hereof)

© Copyright 6/89 American Bank Systems, Inc. (1287)

53

**ACKNOWLEDGMENT FOR AN INDIVIDUAL ACTING IN HIS OWN RIGHT**

TATE OF OKLAHOMA }

OUNTY OF _____ **Creek** } SS.

he foregoing instrument was acknowledged before me on this _____ 15th _____ day of _____ April _____ 19 94

_____ William D. Greenhaw and Linda F. Greenhaw _____

ly Commission Expires _____ OTA 172-98 _____ _____
NOTARY PUBLIC

**ACKNOWLEDGMENT FOR A CORPORATION**

TATE OF OKLAHOMA }

OUNTY OF _____ } SS.

he foregoing instrument was acknowledged before me on this _____ day of _____ 19 _____

y _____
NAME OF OFFICER                                        TITLE

f _____ , a _____ _____ Corporation, on behalf of the Corporation.
NAME OF CORPORATION               STATE OR PLACE OF INCORPORATION

ly Commission Expires: _____ _____
NOTARY PUBLIC

**ACKNOWLEDGMENT FOR A PARTNERSHIP**

TATE OF OKLAHOMA }

OUNTY OF _____ } SS.

he foregoing instrument was acknowledged before me on this _____ day of _____ 19 _____

y _____ , Partner (or Agent), on behalf of _____ _____ a partnership.
NAME OF ACKNOWLEDGING PARTNER OR AGENT                    NAME OF PARTNERSHIP

ly Commission Expires: _____ _____
NOTARY PUBLIC

**Page 2 of 2 Pages**

2 of 2

**241**   64

App. W-2

54                    2



09-cr-43

RECEIVED
MAR 1 9 2014
Phil Lombardi, C__
U.S. DISTRICT COUR

⇔02580-063⇔
Clerk Of Court
U.S. Courthouse Rm 411
333 W 4TH St
Tulsa, OK 74103
United States

Lindsey Kent Springer
Reg # 02580-063
Federal Satellite Low-La Tuna
P.O. Box 6000
Anthony, New Mexico 88021

"Legal Mail"