In The United States District Court
For The Northern District of Oklahoma

United States of America

    Plaintiff

v.        Case No 09-CR-043

Lindsey Kent Springer    ~~13-CV-145-SPF-TLW~~

    Defendant

Defendant's Response in Opposition
To Government Lawyer's Motion

Lindsey Kent Springer ("Defendant") files his response in opposition to Mr. Williams, Mr. Ballent, and Mr. O'Reilly's (hereinafter "government lawyers") motion to order Defendant "retrieve search warrant records" or "authorize the destruction of records not retrieved." Doc. 549-1

1. <u>Initial Statement</u>

The Court needs to decide who is in custody and control of the records at issue. Are the records "grand jury" records, or are the records at issue, IRS Institutional Criminal Investigation Records? Although the government lawyers note this issue has been fully considered and rejected, Doc 549, pg 2, n.1, they cite no record demonstrating such consideration. If failure to address the bad faith of the IRS Criminal Investigators on September 15, 2005 and

1

September 16, 2005, or at any time after the June 3, 2005 IRS Institutional referral, is what the government lawyers mean by "rejected," then it is appropriate to say "the court has failed to consider, or address, on the merits" the issue of bad faith use of IRS Criminal Investigators to gather evidence for the United States attorney to present to a grand jury using enforcement authority of Title 26, after the June 3, 2005 institutional referral.

United States district judge for the Western District of Oklahoma, Honorable Stephen P. Friot (hereinafter referred to as "Western District Judge Friot") only addressed whether Ms. Meadors was used by AUSA Nelson to gather evidence for the Grand Jury prior to June 3, 2005, and no record shows any consideration of the use of IRS enforcement authority to gather evidence for the United States attorney's grand jury investigation after June 3, 2005.

2. Return of Property

There is no dispute over whether the property belongs to Defendant that was seized as listed on the inventory list attached by the government lawyers, See Doc 549-3. There is no dispute the vehicle titles were returned. There is no dispute computer parts were returned. There is no dispute

2

$17,000, of the $19,000 seized, as listed on the "Inventory Listing of All Items Seized at Search Warrant Site," Doc 549-3. There is however the issue that the remaining $2,000 seized has not been returned and the government lawyers seem to argue the attached Exhibits show only $17,000 was seized. That contention is fanciful and the very definition of Frivolous.

Despite all evidence to the contrary, the government lawyers (including United States attorney Danny C. Williams Sr. apparently) argue:

> "Contrary to Mr. Springer's assertion, only $17,000 was seized, and that was the amount returned to him on January 10, 2006."

Doc 549, pg 3 note 2.

Nothing could be further from the truth. Defendant clearly provided evidence showing his Ex-wife declared under penalty of perjury the amount seized was $19,000 in currency, or "cash," as the government lawyers like to refer. See Declaration of Lindsey K. Springer dated March 12, 2014, attached Exhibit 2, pg 2 (Defendant will hereinafter refer to the March 12, 2014 Declaration as "Springer Declaration") (Exhibit 2 to Springer Declaration will herein be referred to as "J. Springer Declaration").

In Springer v. Albin, 398 Fed Appx 427, 429

3

(10th Cir. 2010) the following was found:

> "During the execution of the warrant, Jeanie Springer, Mr. Springer's wife told the agents about currency in her bedroom dresser drawer. The currency consisted of $20 and $100 bills seperated in bundles. Agent Loy Dean Smith photographed the currency, and Agents Daniel A. Anderson and William R. Taylor separately counted it in front of Mrs. Springer. Both agents determined there was approximately $19,000. Agent Taylor prepared an evidence tag for the currency stating on the [evidence] tag that there was approximately $19,000 in cash. Based on the evidence tag, Agent Christopher D. Albin then recorded in the inventory of items seized that approximately $19,000 had been seized pursuant to the warrant."

The district court judge had held "there are genuine issues of material fact remaining for Trial 'concerning whether the amount of money discovered in [Mr. Springer's] house was actually $19,000... or only approximately $19,000' and 'whether, where and how $2,000 of the cash disappeared.'" Springer, 398 Fed Appx at 430.

 In deciding to reverse denial of qualified immunity the Tenth Circuit applied the doctrine without addressing the facts in dispute about the $19,000 stating:

> "We therefore are not required to resolve any genuine issue of material fact. And as the agents argue, whether currency was seized, lost, or stolen is irrelevant to the legal questions posed in this appeal."

Springer, 398 Fed Appx at 432

 Defendant's ex-wife, Agents Smith, Anderson,

4

Taylor (named on June 3, 2005 IRS referral), and Albin, show what was seized on September 16, 2005 was $19,000. What happened after the $19,000 was seized and taken in control by Agents Smith, Taylor, and Anderson, does not change the fact $19,000 was seized.

Even AUSA Nelson was told by Taylor that $19,000 was located and taken control over by Smith, Taylor, and Anderson, early during the September 16, 2005 unlawful search. See Springer Declaration, Exhibit 9, pg 3-4 ("On the morning of the execution of the search warrant at Springer's residence on September 16, 2005, I received a telephone call from Supervisory Special Agent William R. Taylor, who was one of the Agents who was involved in the search of Springer's residence. During this conversation, Agent Taylor informed me that approximately $19,000 in U.S. currency had been discovered in the search of Springer's residence.")

The government lawyers provide no evidence the amount seized, while at Defendant's home, was anything but $19,000.

Although the Order of April 10, 2014 did nothing to address either the lawfulness of the search and seizure, or the return of $2,000, nor did Defendant receive time to Reply to the government lawyers

5

opposition to Defendant's Rule 41(g) Motion, since the April 10, 2014 denial of the 41(g) and the government lawyers claim in their retrieval motion only $17,000 was seized, Defendant makes a record in opposition to any suggestion $17,000 was the total amount seized at Defendant's home on September 16, 2005. Nor is it honest to say the Tenth Circuit in Springer, 398 Fed Appx 427 decided only $17,000 was seized.

The evidence clearly, and only, shows $19,000 was seized by search warrant on September 16, 2005.

3. Dispute as to government lawyer background.

On June 3, 2005 a referral letter was issued institutionally by the IRS after examining information provided by AUSA Nelson gathered during a grand jury investigation being conducted since at least October, 2004. See Doc 293 ("Part I")("discovery related to grand jury testimony of Eddy Patterson and Judy Patterson... [in] October 6, 2004..."), to the Department of Justice authorizing a grand jury investigation only of Defendant, Title 26 or Title 26 related violations, and limited to calendar years 2000 through 2004. See U.S. v. Springer, 444 Fed Appx 256, 260 (and 262)(10TH Cir 2011)("on June 3, 2005 the IRS referred Mr Springer to the

6

Justice Department to investigate potential criminal tax violations.")

The June 3rd letter of referral, besides naming AUSA Nelson, names IRS contacts to be Criminal Investigator Brian Shern and William R. Taylor. See Springer Declaration, Exhibit 11, pg 1 and 2

On June 10, 2005 assistant Attorney General issues an authorization for United States attorney David E. O'Meilia to conduct a Title 26 grand jury investigation referencing the June 3, 2005 letter and warning "no tax or tax-related charges may be filed without prior approval of the tax Division." Springer Declaration, Exhibit 12, pg 1-2 ("and preparing a report setting forth his or her recommendation regarding prosecution...")

On September 15, 2005 AUSA Nelson and IRS Criminal Investigator Brian Shern applied for and obtained a search warrant from Magistrate McCarthy involving the exact same calendar years, type of Tax, and Defendant, listed in the IRS institutional referral dated June 3, 2005. See Springer Declaration Exhibits 1, pg 7; 8, pg 2; 9, pg 2; 11, pg 1

On September 16, 2005 IRS Criminal Investigator Brian Shern, William R. Taylor, and 9 other IRS Criminal enforcement agents, executed the September 15, 2005 search warrant pursuant to enforcement

7

authority of Title 26, § 7603(b). See <u>Springer Declaration, Exhibit 8, pg 2-3; 9, pg 3-4</u> (AUSA Nelson declared "(W)hile I was an Assistant United States Attorney... I was assigned to a case involving an investigation by the Internal Revenue Service into the activities of...Springer, for alleged violations of Title 26... section 7201... As part of this investigation I prepared a search warrant for the search of the plaintiff's residence...")

During the search $19,000 was discovered, counted several times, seized, inventoried, and eventually, departed Defendant's home. See <u>Doc 549-3, Exhibit C; Springer Declaration, Exhibit 3, pg 1</u> (Exhibit 3 displays the accurate "Report date" of "Friday, September 16, 2005,")

Special Criminal Investigator Taylor was in direct contact with AUSA Nelson on September 16, 2005 by cell phone showing AUSA Nelson was using the IRS enforcement procedure to gather evidence for her grand jury. <u>Springer Declaration, Exhibit 9, pg 3-4</u>

In Taylor's conversation with AUSA Nelson, Taylor was instructed to seize the $19,000 by cover of the warrant. <u>Springer Declaration, Exhibit 9, pg 4</u>

After the search concluded, but still on September 16, 2005, AUSA Nelson became aware from

8

Taylor that only $17,000 was presented to a Teller at Arvest Bank. Springer Declaration, Exhibit 8, pg 3; 9, pg 4

Defendant moved for Return of the Vehicle Titles, $19,000, and both application and affidavit used to obtain the September 15, 2005 search warrant. Springer, 398 Fed Appx at 429

AUSA Nelson objected arguing a "pre-indictment investigation is under way." Springer Declaration, Exhibit 4, pg 1-2 ("Investigation is ongoing")

On or about October 23, 2005 AUSA Horn instructed Brian Shern to return the seized currency and Titles to Defendant. Springer Declaration, Exhibit 8, pg 4

On November 28, 2005 IRS Criminal Investigator Shern returned the Vehicle Titles to Defendant. Doc 549-2, pg 3.

On January 10, 2006 IRS Criminal Investigator Shern returned $17,000 of the $19,000 seized. Doc 549-2, pg 4.

It is painstakenly and abundantly clear AUSA Nelson and Horn were directing IRS Criminal Investigators to use their enforcement authority to gather evidence for a grand jury after the June 3, 2005 IRS institutional referral.

After AUSA Nelson and Horn were relieved, Ms.

Radford, Mr. Snoke, and Mr. O'Reilly, continued to use IRS enforcement authority to gather evidence to present to a grand jury.

The indictment alleges Defendant gave false answers to questions posed by IRS Criminal Investigator Shern on September 16, 2005 and January 15, 2009. Doc 2. At all times between September 16, 2005 through January 15, 2009, the June 3, 2005 referral remained in tact.

Defendant did move to suppress the evidence, due to the evidence gathered on September 16, 2005 being in violation of LaSalle, but the Court focussed on evidence gathered before June 3, 2005, and not after, by IRS Criminal Investigators using enforcement authority of Title 26. "Doc 100" is a minute order and addresses nothing on the merits.

During the July 2, 2009 motions hearing Western District Judge Friot stated the June 3, 2005 date is "the bright line were going to look at." Trans. 7.2.09, Doc 383, pg 74.

At Trial Defendant was denied being allowed to cross examine, or then examine, IRS Criminal Investigator Shern about the seizure of $19,000 after O'Reilly opened the door.

At sentencing, Shern testified he was unable to explain his authority when asked. Trans 4-21-10

10

Doc 399, pg <u>40</u> ("I don't know")

The government lawyers continue to argue Western District Judge Friot "considered and rejected" Defendants claim the prophylactic rule announced in <u>U.S v. LaSalle</u>, 437 U.S. 298, 308-317 (1978) was violated where IRS Criminal Investigators used enforcement authority to gather evidence after June 3, 2005, and on September 16, 2005, for AUSA Nelson and Horn's grand jury investigation. Doc 549, pg 2 n.1

It is true the issues were raised both in the district court, and in a perfunctory way, in the appeal brief, and reply by appellate counsel, in 10-5055. However, the March 4, 2014 order holds the issues on appeal were not raised at all.

The government lawyers agreed Defendant attempted to raise issue with the post June 3, 2005 IRS enforcement procedures used to gather evidence for a grand jury, but no court has resolved the clear violation of LaSalle, post June 3, 2005, except to ignore it.

4. The case is not only not final it was never authorized in the first place.

The June 3, referrall is for grand jury investigation only and forbids criminal prosecution. <u>Springer Decl</u>-

11

cration, Exhibit 12, 1-2. There exists no authorization to prosecute Defendant for Title 26 violations anywhere in the record. There was no United States attorney in office between June 28, 2009 through November 16, 2009 authorized to prosecute Defendant for any Title 26, or Title 26 related violations. Defendant was never indicted for evasion of payment as the jury was instructed. And, the purported conviction rests upon the imbedded allegations in all six counts that Defendant was required by law to file, or deliver, Form 1040 United States Individual Income Tax Returns for many calender years, conduct of which the Tenth Circuit held in Defendant's direct appeal not conduct that is criminal in any way. Springer 444 Fed Appx 261-262.

Then there is the issue regarding whether Defendant waived Sixth Amendment Trial Counsel not understanding the grand jury charges, including the switch in Count Two, Three, and Four, from the distinct crime of evasion of assessment to evasion of payment crime.

There is little doubt appellate counsel was ineffective in properly raising the above. There is clearly no power to switch charges. U.S. v. Farr, 536 F.3d 1174, 1179-80 (10th Cir. 2008) And 26 U.S.C. § 7201 prescribes two distinct crimes, Evasion of Assessment and evasion of payment of assessed taxes. Kawashima v. Holder

182 L.ED 2D 1, 10 (2012) citing <u>Sansone v. U.S</u> 380 U.S 343, 354 (1965)

Although 49 grounds for release and relief remain pending in 13-CV-145 (Formerly 09-CR-043), "a motion under 28 U.S.C § 2255... is entered on the docket of the original criminal case..." <u>Wall v. Kholi</u>, 179 L.Ed 2d 252, 266 (2011) Furthermore, 45 grounds at present raise ineffective appellate counsel issues that "the district court must address Defendants... claims." <u>U.S. v. Cook</u> 997 F.2d 1312, 1318 (10th Cir. 1993); see also <u>U.S. v. Cook</u>, 45 F.3d 388, 392 (10th Cir. 1995) ("When a defendant alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue.")

The case may be "Final" for purpose of 28 U.S.C § 2255 1-year time limitation, but the "case" is anything but final. And as the Tenth Circuit stated in <u>Cook</u>, 997 F.2d at 1319, 2255 proceedings are a continuation of the same criminal matter.

A "clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." <u>Clyma v. Sunoco Inc</u> 594 F.3d 777, 783 (10th Cir. 2010)

The case is not final

13

### 4. Return v. Retrieve

Other than the lawfulness of the search, as explained above, the custody and control of the property taken control of and seized, including the $19,000, in that unlawful search, it would appear the rest of the matter is whether Defendant, who is in prison at present, is required to retrieve the 4 Boxes or whether the 4 boxes must be returned to Defendant.

The government lawyers cite no authority in support of their spurious argument "return" means "retrieve." The 4 Boxes derive from the same inventory list that shows $19,000 was seized on September 16, 2005.

Defendant is more than happy to provide an address where the 4 Boxes can be delivered. Defendant will also sign agreeing to allow those boxes to be delivered to that address. What Defendant will not do is allow the government lawyers to deliver 4 Boxes saying everything seized has been returned. Defendant needs to inspect the boxes' content or view an itemized list of exactly what is at present in each box and the custody up until returned.

### 5. Defendant claims deprivation.

It is unclear to Defendant the connection between Defendant's Rule 41(g) motion and the government's

14

motion being addressed herein.

In their motion an assertion is made Defendant has not been deprived of any property. Such a bald statement is false.

Defendant moved for the return of his property which clearly meets the meaning of deprived. Furthermore, Defendant has clearly been deprived of $2,000.

Equally, there is no question Defendant has alleged a "genuine issue of material fact for trial regarding" both the legality of the search as well as the seized $19,000 and return of only $17,000. See Anderson v. U.S., 62 Fed Appx 883, 886 (10th Cir. 2003)(unpublished); see also, Springer, 398 Fed Appx at 429-430.

## Conclusion

Defendant request denial of the government lawyers motion, order a hearing on the seizure of $19,000, the unlawfulness of the search on September 16, 2005, and a list of each boxes' contents in advance of returning the seized property to Defendant at an agreed address. The order should also find the case is far from final.

Respectfully
Lindsey K Springer
Reg # 02580-063
Federal Satellite Low-La Tuna
P.O. Box 6000
Anthony, New Mexico 88021

Certificate of Service

I hereby certify that on April 23, 2014 I mailed First Class the above Response to Clerk of Court, 333 W. 4th St. Tulsa, Oklahoma 74103;

I further certify that all parties are ECF users and shall receive service through the ECF System:

Danny C. Williams Sr.
Charles A. O'Reilly
Jeffrey A. Gallant

*/s/ Lindsey K. Springer*
Server

Declaration of Mailing

I declare under penalty of perjury, pursuant to 28 U.S.C § 1746(i), under the laws of the United States of America, that on April 23, 2014 I deposited the above response in the U.S. Mailbox located inside FSL La Tuna to the address above.

*/s/ Lindsey K. Springer*
declarant.

16

