IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

Lindsey Kent Springer,  ]
  ]
  Movant,  ]
  ]
v.  ]  Case No. 13-cv-145
  ]  (Formerly 09-CR-043)
United States of America,  ]
  ]
  Respondent.  ]

**FILED**

JUN 2 0 2014

Phil Lombardi, Clerk
U.S. DISTRICT COURT

Declaration of Lindsey Kent Springer
in Support of § 2255 merits brief

I, Lindsey Kent Springer, declare the following:

1.  Attached to this Declaration are excerps from Appellate Counsel Jerold W. Barringer's revised brief filed in my direct appeal in U.S.A. v. Springer, 10-5055, as Attachment A;

2.  Attached to this Declaration are excerps from Volume XII of the Trial Transcripts involving jury instructions on the tax liabilities at issue in Count 1 and pretrial objections to including Co-Defendant Oscar Amos Stilley's Arkansas Federal Tax Liabilities in those instructions taken on October 21, 2009, as Attachment B;

3.  Attached to this Declaration are excerps from the Sentencing Transcript involving the calculation of Tax Loss and Restitution dated April 23, 2010, as Attachment C;

4.  Attached to this Declaration are excerps from my Trial Testimony involving my explanation as to how I determined Form 1040 United States Individual Income Tax Returns for Title 26 years 2000 through 2005 violated the Paperwork Reduction Act, as Attachment D;

5.  Attached to this Declaration are excerps from Volume XII of the Trial Transcripts involving Jury Instructions on both the elements of "willfulness" and its Good Faith opponent, as Attachment E;

1

___✓_Mail  ___No Cert Svc  ___No Orig Sign
___C/J  ___C/M/J  ___C/Ret'd  ___No Env
___No Cpys  ___✓_No Env/Cpys  ___O/J  ___O/MJ

6.   Attached to this Declaration are excerps from Volume XII of the Trial Transcripts involving Jury Instructions showing the Jury was specifically instructed for Counts 2,3, and 4, to the offense under 26 U.S.C. § 7201 of willful attempt to evade payment of individual income taxes and not the Grand Jury's Evasion of Assessment, as Attachment F;

7.   Attached to this Declaration are excerps from Volume IX of the Trial Transcripts where Agent Miller testified the threshold exemption amount for Count Four's Calendar Year 2005 triggering the requirement to file a Form 1040 United States Individual Income Tax Return was $ 16,400.00 as well as his testimony how he determined placing Mr. Turner's $ 250,000.00 transaction in 2005's Gross Income calculations, as Attachment G;

8.   Attached to this Declaration are excerps from Volume VII of the Trial Transcripts where Mr. Turner testified the $ 250,000.00 transaction was a loan in 2005 to me and that I made $ 1,400.00 payments to him, as Attachment H;

9.   Attached to this Declaration are excerps from Mr. O'Reilly's opposition brief in my direct criminal appeal, case # 10-5055, where he argued the requirment to file tax returns for 2000 through 2004 derived from Treasury Regulation 26 CFR § 1.6091-2 published in the Federal Register on September 16, 2004, and relying upon "applicable tax return's instructions," as Attachment I;

10.  Attached to this Declaration are excerps from the July 2, 2009 hearing where the hearing Judge found the requirment to file a tax return duty at in all Six Counts derived from 26 U.S.C. § 6091(b)(1)(B), as Attachment J;

11.  Attached to this Declaration are excerps from Volume XI of the Trial Transcripts invovling my objection to the Trial Judge's instructions on "gift," as Attachment K;

12.  attached to this Declaration is a True and Correct Copy of an order issued by a Panel of Judges at the Tenth Circuit on August 2, 2011, involving

the proceedings leading up to the suspension of Jerold W. Barringer from the Tenth Circuit's Bar and ultimately removal from my direct appeal in 10-5055, as Attachment L;

13.  Attached to this Declaration is a True and Correct Copy of a filing by the State of Illinois disbarment proceedings against my Appellate Counsel Jerold W. Barringer listing numerous exhibits relied upon in that proceeding, as Attachment M;

14.  Attached to this Declaration is a True and Correct Copy of a pleading filed in U.S.A. v. Barringer, 12-3324(C.D. Illinois, 2012) dated January 10, 2013, disclosing Jerold W. Barringer had not filed Tax Returns between 2001 and 2007, as Attachment N (minus page 4 to which I did not get);

15.  Attached to this Declaration is a True and Correct Copy of an order issued in U.S.A. v. Barringer, 12-3324 dated January 18, 2013, by District Judge Sue E. Myerscough, further identifying the years at issue in the IRS Summons issued in August, 2011 by the IRS to Mr. Barringer involving his failure to file tax returns, as Attachment O;

16.  Attached to this Declaration is a True and Correct Copy of the Tenth Circuit's suspension of Mr. Barringer on September 2, 2011, as Attachment P;

17.  I received Attachment M,N,O,P. in October or November, 2013.

    I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that the above is true and correct.

                                        _____
                                        Declarant

## CERTIFICATE OF SERVICE

I hereby certify that on June /5, 2014, I mailed First Class U.S. Mail the above Declaration of Lindsey Kent Springer in Support of § 2255 merits brief to the Clerk of Court, 333 West Fourth Street, Tulsa, Oklahoma 74103:

I further certify that all parties to the proceeding are ECF users and shall receive service of process through the ECF system:

United States Attorney Danny C. Williams, Sr.
Jeffrey A. Gallant
Charles A. O'Reilly

Server

## DECLARATION OF MAILING

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746(1) under the laws of the United States of America, that on June /5, 2014, I deposited the above Declaration of Lindsey Kent Springer in Support of § 2255 merits brief in the U.S. Mailbox located inside FSL La Tuna Federal Prison to the address above.

declarant

4

suppressed. This Court should reverse the Court's decision, Doc. 100, 293, with instructions to hold a hearing and suppress according to LaSalle and Donaldson.

## V. The Court's instructions on "Gift," "income," "venue," that Form 1040 did not violate the PRA, along with its application of Toughy Regulations, violated Springer's 5th and 6th Amendment Right to a Trial by Jury and to call witnesses.

A Grand Jury investigated Springer and Stilley prior to October 6, 2004. Doc. 224, 252, pg 3, 293, pg 2. There is no doubt Meadors was simultaneously conducting a civil audit of Springer for the same years. Doc 71, pg 15. This is known as the Meadors civil investigation. Doc. 394, 2361, 16-18; Doc. 383, 63, 1-7. See also Meadors deposition. Doc. 75-50; Doc. 395, 2632, 13-24.

Springer cooperated with Meadors' audit conducted by Summons. Doc. 395, 2633, 1-3; Doc. 396, 2722, 20-24. Meadors first issued Summons to Springer on January 26, 2004. Doc. 71, pg 15, and concluded on December 2, 2004. Id.

May 6, 2004, Eddy Patterson met with Steven Knorr, Douglas Horn, Melody Nelson. Each exchanged information with Special Agent Tim Arsenault and FBI Agent Haggerty. Doc. 75-8; Doc. 383, 73, 6.

Mr. Patterson was indicted April, 2003 for Tax, Bank and Security Fraud. Doc. 388, 666, 2-11. The prosecution team was Horn, Nelson, Doc. 75-22, Meadors as "cooperating Agent," Doc. 71, pg 14 and Miller as the expert. Doc. 393, 2059, 12-14. The Pattersons were convicted on December 16, 2003. Doc. 388, 691, 14; Doc. 75, pg 3; Doc. 382, 49, 1.

On August 30, 2004, Eddy Patterson entered a plea with Horn and Nelson. Doc. 75-22, and on September 1, 2004, Nelson moved for a sentencing reduction pursuant to Rule 35(b)

Attachment A
1 of 9

for purportedly providing substantial assistance. Doc. 75. No such assistance was given prior to Ms. Patterson's release. Doc. 388, 820, 16. In the motion under Rule 35(b), which was granted, Horn and Nelson told the court false information: Doc. 75.

The motion was unsealed at trial court's direction. Doc. 382, 50, 13-25; Doc. 382, 51,1-22. Springer sought the May 3, 2004 memorandum of interview, which didn't exist. At all times, it was said it was "not anticipated" that Ms. Patterson would be a witness. Doc. 382, 44,14-15.

On October 21, 2009, the Government finally turned over the October 6, 2004 Grand Jury Transcript of Judith Patterson in the matter of Lindsey Springer and Oscar Stilley. Doc. 252, pg 3. Springer moved to dismiss, Doc. 65, 66, and suppress, Doc. 74, 75, claiming the Patterson agreement and Rule 35(b) showed the U.S. Attorney's office had received a criminal referral in 2004. The Trial Court denied each on July 2, 2009. Doc. 100.

The October 6, 2004 transcript shows Ms. Patterson, after being released, was asked multiple questions about money given to Springer from 2000 to 2003. Yet, the Government told the Trial Court on July 2, 2009, the referral date was June 3, 2005. The Court explained the "bright line" where Treasury authority stops is when referral is made. Doc. 383, 74, 17-23. The Court reasoned that no exhibits presented by Springer "suggest" there was an "existing criminal investigation much less a criminal referral." Doc. 383, 82, 24-25. The deal with Patterson shows a U.S. Attorney investigation was ongoing. The October 6, 2004 Grand Jury was investigating Springer and Stilley. The Court committed reversible error.

A
2 of 9

2

The Court stated the burden rested on Springer.  Doc. 383, 84, 11-12.  Mr. Shern testified he learned of the October 6, 2004 Grand Jury in 2007.  Doc. 392, 1841, 4-6, but after the "IRS investigation" was opened.  Doc. 392, 1841 1-3.  After trial, Mr. O'Reilly told the Court he learned of Mrs. Patterson's testimony from 2004 on October 6, 2009.  Doc. 252, 2 (n.2).

On January 28, 2010, the court referred to the "Prosecution Team" to include Shern and Acting U.S. Attorney Woodard.  Doc. 293, pg 12.  Springer showed in reply to his Motion to Dismiss, Doc. 81-4, a request by Horn dated December 15, 2004, for Justice Department approval to subpoena Oscar Stilley.  Horn refers to Stilley as a "target" but not a subject of a Grand Jury investigation.  Doc. 383, 71, 19-23.  The Government also produced a letter in January, 2007 suggesting Stilley was added to the closed Eddy Patterson investigation.  Doc. 80-6.

Stilley was subpoenaed on March 9, 2006 to testify before the Grand Jury.  Doc. 2, Count One, paragraph 17.  The Government disputes Meadors was providing information to Horn and Nelson through her civil administrative summons.  Doc. 252, pg 5.  Meadors then became a Special Agent in July, 2005.  Doc. 71, pg 15, n.5.

As discussed fully in Issue 1, all IRD's and offices of DD were abolished in late 1999.  Doc. 71, pg 4.  All Summonses issued by or in the authority of the Secretary of Treasury must comply with 26 U.S.C. §§7601 & 7602.  LaSalle, 437 U.S. at 310.  The DD is to canvas the IRD,  U.S. v. Bisceglia, 420 U.S. 141, 145 (1975), 26 C.F.R. § 301.7601, but each was

A
3 of 9

3

abolished in calendar year 2000.  Doc. 71, pg 4, Doc. 383, 130-131, 25-1.  All seals come

from DD's.  26 U.S.C. §7514. See also 26 C.F.R. 301.7514-1(a)(2)(ii).  If none existed, how

can a summons be issued.

No Summons can issue under the authority of the Secretary as "long as ... referral has

been made to the Justice Department for criminal prosecution."  Stoffels v Hegarty,

Fed.Appx. 814.  Section 7602(d) prohibits Summons after referral.  Anaya v. U.S., 815 F.2d

at 1377.

Horn, Nelson, Miller, and Meadors were the prosecution team in Patterson.  Meadors

issued Civil Summons between January 26, 2004 and December 2, 2004.  Mr. Patterson

shared information with Horn and Nelson on May 6, 2004 in their ongoing investigation of

Springer and Stilley.  On September 1, 2004, Ms. Patterson's sentence was reduced for

providing assistance she never provided.  Ms. Patterson testified on October 6, 2004.  Mr.

Paterson worked a deal for himself on August 30, 2004.

Shern used information obtained from Meadors' investigation.  Springer was added to

the closed Patterson investigation on June 3, 2005.  Shern raided Springer's home as an agent

of the Grand Jury when no power of the Secretary remained.  Shern asked Nelson on

September 17, 2005, a day after the Springer raid, placing a question mark as to whether

Stilley was being investigated by the Grand Jury.  Stilley's name was mentioned throughout

the Search Warrant for Springer's home.  Horn asked for DOJ approval to subpoena Stilley

on December 15, 2005, asserting Stilley was not a subject of a Grand Jury investigation.

A
4 of 9

4

Stilley was subpoenaed and testified on March 9, 2006 to a Grand Jury with Horn and Nelson asking questions.  Stilley was added to the Patterson investigation that ended on September 1, 2004, on January 26, 2007.   Shern discovered Ms. Patterson testified before Horn and Nelson's Grand Jury on October 6, 2004.  Springer and Stilley are indicted based on Meadors' evidence obtained by use of Summons before she became a Special Agent.

Springer moved to dismiss, to suppress and for a Franks hearing.  Meadors and Ms. Patterson were subpoenaed.  The trial court found Springer did not satisfy his burden.  No testimony was allowed.  Even though Mr. O'Reilly, did not anticipate calling Ms. Patterson, the prosecution team of O'Reilly, Snoke, Shern and Miller discovered the October 6, 2004, testimony of Ms. Patterson "for the first time" on October 6, 2009.

The trial court refused to make any "findings of fact" regarding the impact the October 6, 2004 Grand Jury testimony had on its "bright line referral date of June 3, 2005".  There had to be a referral before June 3, 2005, or else how did a Grand Jury investigate Springer as of October 6, 2004, and what of the communication between Horn, Nelson and Patterson on May 6, 2004 and August 30, 2004?

This issue is the source of tremendous turmoil.  The turmoil arises from the false statements by the prosecution team regarding the "ongoing" investigation of Springer and Stilley prior to October 6, 2004.

The Secretary must stop, after a referral is made, because Fifth Amendment protections arise.  Prior to a Grand Jury referral of Springer, the prosecution team argued U.S. v Sullivan

A
5 of 9

5

held refusing to answer any questions on a tax form, took the Fifth Amendment too far. Doc. 71, pg 9. In this case that theory is in error due to Springer's business of "getting rid of the IRS." If the Secretary can issue Summons during Grand Jury investigations, the Fifth Amendment should provide a defense to failure to file a 1040.

The trial court should have allowed a hearing on suppression and quashed the evidence tainted by Meadors' use of Civil Summons in bad faith which necessarily reached evidence obtained from Springer's home during the raid. This would also reach any misconstrued statements Springer made to case agents.

Shern, O'Reilly, Snoke, Sivils, Shoemake or the Grand Jury weren't performing any of the lawful functions listed in Count One. That power ended either prior to October 6, 2004, or on October 6, 2004, without the Government turning over evidence in their possession. Even if June 3, 2005, were the line for capacity, that date is well before the September 16, 2005 raid. O'Reilly recognized the issue could be different if Meadors were working as a secret special agent. Doc. 383, 78, 20-22, when when Shern was present in the courtroom, Doc. 383, 23, 15. As Shern testified, he knew about the Judith Patterson testimony before, or at the time, Stilley was being investigated by DOJ and Shern. Doc. 392, 1841, 1-6, 8. Under the circumstances, this Court should reverse and suppress the evidence obtained, or order a hearing on suppression, and dismiss all Counts in the Indictment as appropriate.

A
6 of 9

6

**VI. Definition of "gift," "income" and "minister," and Toughy Issues violated Springer's 5th Amendment Right to Due Process and Sixth Amendment Right to Trial by Jury and to call witnesses.**

**(A) Gift – Income**

The Trial Court's waiting to the trial's end to announce it's definition of "Gift" violated Springer 5th Amendment Right to Due Process. The Court referred to gross income and "terms of art", and was confused by such. Doc. 393, 1938, 19-22. The Court's instruction is at Doc. 396, 2902-2903. 26 U.S.C. §102 states gifts are not gross income. Instead, the Court called gifts or minister income as income (not defined), and instructed the jury on income, not gross income. Doc. 393, 21-24, which applied on all counts. Id.

This issue goes to the alleged "material false statement" whether Springer said he received gross income or income. The alleged false statements hold several counts. Doc. 394, 2374, 10, and Doc. 394, 2374, 17-19. Filing requirements are tied to gross income. If gifts are not gross income, no filing requirement. Doc. 393, 2113, 6-9

The Court's definition of gift was legally wrong and affected all counts. Only CIR v. Duberstein, 363 U.S. 278 (1960), Doc. 293, pg. 4, offered guidance. The fact finder is to determine whether money received by Springer is a gift. Id. at 289 Springer moved to dismiss since Gift is not defined. Doc. 55, 56. This was denied by minute sheet. Doc. 100. No definition given. Springer objected repeatedly. Doc. 227; Doc. 394, 2377, 7-11; Doc. 394, 2382, 1. The two most important words concerning false statements in Counts One through Four, including the only thing extending the Statute of Limitations in Count Two, were not defined by Congress or the Secretary, and the Court said were "terms of Art".

-35-

## G.  Springer didn't willfully fail to deliver prescribed forms of return.

Without IRD and DD no duty exists, which creates the rule of voluntary compliance and self assessment. The PRA and CIR's words also stated information was not required. The Privacy Act of 1974 was violated, and there are no current Treasury Regulations.  Section 6091 is a complete mess, and the rule of lenity should apply.

Springer told the jury he has never seen the Court's definition of income or gift.  Doc. 396, 2806, 15-21, and the Court rejected the 3rd Circuit in SEC v. TIGC.  Doc. 396, 2700-2704.  Springer accurately testified there was no quid pro quo for any money that he always acknowledged receiving.  See Gov. Exh. 731.

### Summary

There is no finding of criminal violations for tax loss conduct according to Meeks.  The direct method should have been used at sentencing minus the Turner loan.  Tax loss at 2T1.1, or enhancements at 2T1.1(b)(I)[-2], 2T1.1(b)(2)[-2], 2T1.9[-2], 3B1.1(a)[-4], 3C1.1[-2], are each unsupported by any evidence, and each are clearly erroneous and unreasonable.

### Other Issues

This Court should reconsider and allow Springer to file an over-length brief.

Count Two violated the Statute of Limitations.  Count Four failed to allege and prove the tax deficiency element since the $250,000 was a loan.  Springer claims the prosecution was unlawful without a U.S. Attorney to exercise the criminal referral.  Springer also claims District Judges Eagan and Friot were prevented from participating due to Judge Eagan's

-53-

A
8 of 9

8

involvement in 03-cr-55.

Springer claims the evidence was insufficient to establish beyond reasonable doubt each element of each offense alleged in Counts One through Six. The "required by law" duty was not shown. The Trial Court should have granted Judgment of Acquittal at any of the three times Springer requested it. After de novo review, this Court should reverse dismiss each count as the evidence was insufficient.

## CONCLUSION

The Tax Division had 6 years, 4 grand juries, 40,000 exhibits in discovery, with over 400 docket entries, a 3 week trial, 3,300 pages of transcripts, a three day sentencing hearing with 10,000 words of reasons for the sentence, yet Springer is required to address each error to this Court in under 14,000 words. That violates due process. Nonetheless, Springer has shown numerous reasons why Conviction, and Judgment and Sentence must be set aside, requiring a new trial or further hearings in some instances, and outright dismissal in others. Springer requests this Court make such rulings.

Respectfully submitted,

Lindsey Springer, Defendant-Appellant

By:    /s/ Jerold W. Barringer
       Jerold W. Barringer
       P.O. Box 213
       200 W. Front St.
       Nokomis, IL 62075
       217-563-2646 Phone
       217-563-2646 Fax
       jbarry@consolidated.net

-54-

A
9 of 9

9

1  intend to argue is fairly embraced within the concept of

2  willfulness and a stock instruction of willfulness -- or

3  a stock definition of willfulness.  In this case, which I

4  don't think is a run-of-the-mill case in some ways, I'm a

5  little concerned as to whether the defendants' theory,

6  recognized by the law that we've discussed, is adequately

7  covered within the context simply of "willfulness," but

8  we'll cross that bridge at a later stage.

9       The next question, on page 29.

10          MR. O'REILLY:  Yes, Your Honor.  Nature of the

11 offense.

12          THE COURT:  Yes.  Mr. Springer has suggested and

13 I -- offhand, I'm having a hard time with -- hard time

14 arguing with that because I think Count 1 goes to the

15 taxes of Lindsey Springer, right?

16          MR. O'REILLY:  I'm trying to think if in any way

17 it does not.  May I have a moment with counsel?

18          THE COURT:  Sure.

19          MR. O'REILLY:  Your Honor, while that is -- the

20 crux of this case is about how they cheated on

21 Mr. Springer's taxes, yes, but the indictment doesn't

22 read that way and we think it would not be a good idea to

23 be changing the jury instructions that effectively amend

24 the indictment.  So we would resist changing the jury

25 instruction to be inconsistent with how the indictment is

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505    Attachment B

1 of 4

10

131

1    charged because that's what the grand jury brought.

2         THE COURT:  Well, I got reversed in the Skoshi

3    Farr case for doing that, but that was over the objection

4    of the defendant.  I understand your point.  This, in my

5    estimation, would not so much be an amendment of the

6    indictment as it would simply be -- an indictment is the

7    grand jury's document and the -- my leeway to tinker with

8    the verbiage of the grand jury's document is limited to

9    the point of being vanishingly small, so said Court of

10   Appeals in the Skoshi Farr case.  But the instructions

11   are my documents, not the grand jury's, and this

12   instruction on page 29 really is not intended to --

13   necessarily to parrot the indictment, so we'll -- we will

14   have time to revisit this, but I have some inclination to

15   add "of Lindsey Springer," we'll see.  I have that

16   inclination at the moment because the instructions, as my

17   document, must, at least equally with every other

18   purpose, give the jury all the clarity that I reasonably

19   can.  And that's the reason that Mr. Springer's

20   suggestion may be well taken, but we'll come back to

21   that.

22         Let's go to page 30.  Mr. O'Reilly, in the second to

23   the last paragraph, after the word "functions," or

24   effectively somewhere in that passage, Mr. Springer

25   suggested that I specify the functions as specified in

B
2of4

11

2882

1   Defendant Springer's stated purpose for Bondage Breakers

2   Ministry was "to get rid of the Internal Revenue

3   Service."

4        Oscar Amos Stilley, known as Stilley, was an

5   attorney residing in Fort Smith, Arkansas.  Defendant

6   Stilley maintained an Arkansas IOLTA foundation trust

7   account known as IOLTA account at Arvest Bank.  An IOLTA

8   account is an interest-bearing account used to hold

9   client funds.

10       Defendant Springer and Stilley each earned income in

11  various ways, including assisting individuals being

12  investigated and prosecuted for federal tax violations.

13  Defendant Springer referred individuals to Defendant

14  Stilley and provided assistance on many of these cases.

15       Defendant Springer last filed an individual income

16  tax return with the Internal Revenue Service in the late

17  1980s.  Defendant Stilley last filed an individual income

18  tax return with the Internal Revenue Service in the late

19  1980s.

20       Beginning on or about 2000 and continuing until on

21  or about January 15, 2009, within the Northern District

22  of Oklahoma, and elsewhere, Defendants Springer and

23  Stilley and others, both known and unknown to the grand

24  jury, unlawfully and knowingly combined, conspired,

25  confederated, and agreed together to defraud the United

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

B
3 of 4              12

2883

1    States by impeding, impairing, obstructing, and defeating

2    the lawful government functions of the Internal Revenue

3    Service, an agency of the United States, in the

4    ascertainment, computation, assessment, and collection of

5    revenue, that is the federal individual income taxes.

6        The object of the conspiracy was to be accomplished

7    and was accomplished through the following manner and

8    means:   Defendants Springer and Stilley would and did use

9    Defendant Stilley's IOLTA account to conceal Defendant

10   Springer's income, assets, and personal expenses.

11   Defendant Springer would and did use Defendant Stilley's

12   credit card to pay Defendant Springer's personal

13   expenses.

14       Defendants Springer and Stilley would and did use

15   cashier's checks, money orders, cash, and other means to

16   avoid creating the usual records of financial

17   transactions and to conceal Defendant Springer's income.

18   Defendants Springer and Stilley would and did knowingly

19   misrepresent the source and nature of Defendant

20   Springer's income to the Internal Revenue Service

21   employees, the grand jury, and the Department of

22   Justice.   And Defendants Springer and Stilley would and

23   did refrain from filing forms with the Internal Revenue

24   Service, including Forms 1040 and 1099.

25       In furtherance of the conspiracy and to effect the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

B
4 of 4

13

407

1  could be imagined.  And by saying that about Mr. Stilley, I

2  don't mean to put Mr. Springer in a favorable light, but,

3  nevertheless, the situation with respect to Mr. Springer is a

4  bit more complicated.

5      I will first cover the tax loss which I conclude for

6  guidelines purposes is attributable Mr. Springer.  For 1990

7  through 1995, the assessed amount of tax was $91,196.

8      Now, I'm going to read the gross income from my notes with

9  respect to '99 through 2007, it's a simple mathematical

10  proposition to take 20 percent of this, but I won't read the 20

11  percent calculation into the record other than when I get to

12  the total.

13      The gross income that I attribute to Mr. Springer for

14  is $111,702; for 2000, it is $160,000; for 2001, it is $63,000;

15  for 2002, it is $48,986; for 2003, it is $391,171; for 2004, it

16  is $117,550; for 2005, it is $278,500; for 2006, it is

17  $185,650; for 2007, it is $141,400; for a total gross income of

18  $1,497,959.  At 20 percent, the tax loss attributable to that

19  is $390,787.  I also attribute to Mr. Springer the state tax

20  loss --

21      MR. O'REILLY:  Your Honor, I apologize for

22  interjecting, but you say the tax loss was 390,000?

23      THE COURT:  That's --

24      MR. O'REILLY:  That's 20 percent?  Because I believe

25  that would be an overstatement of the tax loss for --

Attachment C
1 of 5     14

408

1    THE COURT:  Well, that adds the 91,000 --

2        MR. O'REILLY:  I apologize, Your Honor.

3    THE COURT:  That adds the 91,196 from 1990 through

4  1995.

5        MR. O'REILLY:  I apologize.

6    THE COURT:  I have proportionately reduced

7  Mr. Springer's state tax loss based on the proportion by which

8  I have reduced the federal tax loss.  The state tax loss

9  accordingly is $80,186, to which I add the federal tax loss

10 attributable to Mr. Stilley, which I will cover in a minute,

11 but which amounts to $377,161, and Mr. Stilley's state tax

12 loss, which is $91,627.  So the total for Mr. Springer,

13 including his state tax loss and Mr. Stilley's state and

14 federal tax loss is $548,974.  Adding Mr. Springer's federal

15 tax loss, but ignoring for the moment the tax loss attributable

16 to Mr. Turner, Mr. Springer's state and federal tax loss,

17 including his own and Mr. Stilley's, is $939,761.80, to which I

18 add $145,713 attributable to Mr. Turner for a total tax loss

19 under Guideline 2T1.1 attributable to Mr. Springer in the

20 amount of $1,085,474.80.  The penalties and interest

21 attributable to that amount to $431,801.

22      With respect to Mr. Stilley, his gross income for 2000 was

23 $131,533; for 2001, it was $73,598; for 2002, it was $117,653;

24 for 2003, it was $466,774; for 2004, it was $96,600; for 2005,

25 it was $106,984; for 2006, it was $433,368; for 2007, it was

C
2 of 5    15

1   advisory guidelines of 121 to 151 months.

2        I will now address restitution.  I must admit that I was a

3   bit limited, I guess is one way to say it, in my ability to

4   thoroughly evaluate restitution because there were some

5   adjustments to the tax loss amounts and then there is obviously

6   penalty and interest applicable to some items and not to others

7   and the parties, perhaps understandably, from both standpoints

8   did not devote a great deal of attention in their briefs to the

9   issue of what items are fair game for restitution, what the

10  legal basis for the restitution might be, whether there's any

11  difference among the various counts with respect to restitution

12  and even whether and to what extent there should be joint and

13  several liability for restitution.

14       I'm not critical of either side for not focusing any

15  harder than they did on that from the government's standpoint.

16  These defendants are likely to be buried in restitution

17  obligations for the rest of their lives.  And under any

18  reasonable assessment of restitution, it is likely that these

19  defendants will never see the end of their restitution

20  obligation.  These tax liabilities continue to bear interest.

21  The interest payments alone, which I do not waive and will not

22  waive, will be substantial.

23       So from that standpoint, it's probably understandable that

24  the government did not spend a great deal of time on the issue

25  of restitution.  From the defendant's standpoint, the issue of

C
3 of 5   16

1    restitution is certainly, by any measure, quite secondary to

2    considerations relating to their incarceration and those

3    guidelines and other sentencing-related matters that have a

4    more direct bearing on whether and how long they would be

5    incarcerated.

6         So I'm not critical either of the defendants for not

7    spending a great deal of time on restitution.  But the net

8    effect of all of that was that I was just a little bit at sea,

9    if you will, in my ability to determine what the outcome should

10   be with respect to restitution.

11        I have gone back through the numbers.  I have adjusted the

12   numbers and selected the ones that it appears to me are

13   appropriate for restitution.  To some degree, especially in the

14   case of Mr. Springer, I adjusted the numbers to reflect my

15   revision of the conclusions and findings with respect to tax

16   loss, although I have not modified the numbers as to the

17   assessed amounts.

18        And I'm also cognizant that Mr. Springer's and

19   Mr. Stilley's restitution obligation is an independent

20   freestanding obligation under the judgment and sentence of this

21   Court.  And there may well be and I suspect are other

22   independent legal means of proceeding against these defendants

23   for any amounts that are not embraced by my restitution order.

24        That said, my conclusion is that Mr. Springer's federal

25   restitution obligation is $691,343 and that his state

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

C
4 of 5   17

```
 1  restitution obligation is $80,186.  I conclude that
 2  Mr. Stilley's federal restitution obligation is $684,653 and
 3  that his state restitution obligation is $91,627.
 4       Does either defendant have any procedural objection to the
 5  sentencing proceedings to this point?  Mr. Springer?
 6            MR. SPRINGER:  May I have just a moment, Your Honor?
 7  None other than the same objections I made yesterday with
 8  reference to prior to the sentencing hearing objections I had,
 9  Your Honor.
10            THE COURT:  Thank you, Mr. Springer.  Mr. Stilley?
11            MR. STILLEY:  I would likewise continue to maintain
12  all the objections that I have previously made and state that I
13  do not see that my due process complaints have been remedied
14  anything that has taken place up to now.
15            THE COURT:  Thank you, Mr. Stilley.  I will now give
16  you -- for all concerned, I'll give you some understanding of
17  how we will proceed from here.
18       The defendants have a right, and it goes back hundreds of
19  years, to have what is called "allocution."  That is their
20  statements to the Court of anything, and I truly mean anything,
21  that they would want the Court to consider by way of mitigation
22  or with respect to any other matter relating to sentencing.
23  That's a very valuable right and I certainly intend to afford
24  the defendants a full opportunity to exercise their rights of
25  allocution.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

C
5 of 5   18

LINDSEY SPRINGER - CONT'D DIRECT BY MR. SPRINGER

2688

1    THE COURT:  Counsel and the parties will
2   approach.

3       (THE FOLLOWING PROCEEDINGS WERE HAD AT THE BENCH AND
4   OUT OF THE HEARING OF THE JURY.)

5       THE COURT:  Mr. Springer, when we recessed day
6   before yesterday you told me you had 20 more minutes on
7   the Paperwork Reduction Act.  We resumed at 8:59 this
8   morning, then we promptly had a bench conference until
9   9:07, and then we resumed on the Paperwork Reduction
10  Act.  It's now 9:26.  How much more do you have that
11  relates to the Paperwork Reduction Act?

12      MR. SPRINGER:  I'm now on the Form 1040, Your
13  Honor.  I just had to lay my foundation for what I'm
14  getting ready to show them on the Form 1040 and then I'm
15  done.

16      THE COURT:  How long is this going to take?

17      MR. SPRINGER:  Ten more minutes.

18      THE COURT:  What do you have that relates to the
19  1040 that does not relate to the Paperwork Reduction Act?

20      MR. SPRINGER:  I just need to show the jury that
21  in my due diligence that I went and looked at the Form
22  1040, set it side by side to the application, and --

23      THE COURT:  To what application?

24      MR. SPRINGER:  To the 83-Is that I was just
25  reading from, Your Honor.

Attachment D
1 of 5

19

LINDSEY SPRINGER - CONT'D DIRECT BY MR. SPRINGER                2689

1          THE COURT:  That's under the Paperwork Reduction
2     Act?

3          MR. SPRINGER:  Well, actually, no, those are
4     just applications for approval, those aren't Paperwork
5     Reduction Act.  It's an application.

6          THE COURT:  Why do they call it a Paperwork
7     Reduction Act submission then?

8          MR. SPRINGER:  This is a part of the 1040 form
9     is what I'm saying that they can't get to the form
10    without having this document and I needed to show the
11    jury after I read the report from the General
12    Accountability Office.

13         THE COURT:  Okay.  You told me day before
14    yesterday you had 20 more minutes.

15         MR. SPRINGER:  Right.

16         THE COURT:  I have bent over backwards, I have
17    not charged the seven-minute bench conference against you
18    and we started this bench conference at 9:26.  I'm going
19    to give you ten minutes and after that ten minutes,
20    nothing relating to the 1040 or the Paperwork Reduction
21    Act will be said any further in your narrative
22    testimony.  You're going to hear about it on cross, but
23    I'm going to give you ten minutes and it's -- and I don't
24    care if you're in the middle of a syllable.

25         MR. SPRINGER:  I'm ready.

D
2 of 5

20

LINDSEY SPRINGER - CONT'D DIRECT BY MR. SPRINGER

2690

1          THE COURT:  Okay.

2      (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN COURT,

3  WITH ALL PARTIES AND COUNSEL PRESENT, AND WITHIN THE

4  PRESENCE AND HEARING OF THE JURY.)

5          THE COURT:  Proceed.

6          MR. SPRINGER:  Thank you, Your Honor.

7      Defense Exhibit Number 23 is the Form 1040 for the

8  year 2000.  It's two pages long and I have looked at it

9  intrinsically.  And as I read to you yesterday what the

10 General Accountability Office said, that there is none --

11 in my belief, there is not one of the certification

12 requirements on the Form 1040.  There is no statement

13 that it is mandatory.  There is no citation to statute

14 that makes it mandatory or supports it.  And that is

15 true, that I found to be true with respect to Defense

16 Exhibit Number 23 for the year 2000.  Defense Exhibit

17 Number 25.

18     Defense Exhibit Number 25 is the Form 1040 for the

19 year 2001, although my statement -- my belief is

20 consistent with the year 2000, as it is with 2001, that

21 there is no statement of mandatory or there is no

22 statutory citation on any of the certification

23 requirements that IRS certified to the Office of

24 Management and Budget that would appear on the Form 1040.

25     And then Defense Exhibit Number 27 is the Form 1040

D
3 of 5
21

1   for the year 2002.  And it's the same -- my findings and

2   my belief are the same for the year 2002 that they were

3   for 2000 or 2001.

4       Defense Exhibit Number 29 is the Form 1040 for the

5   year 2003.  I found the same omission on the Form 1040 on

6   any of the certification statements that are signed by

7   the CIO to OMB on their application of Form 83-I.

8       And then Defense Exhibit Number 31 is the Form 1040

9   for the year 2004.  And the same I found and believe to

10  be true that there is none of the certification

11  requirements that IRS CIO certified to OMB that was on

12  the Form 1040.  And that same holds true with Defense

13  Exhibit Number 33, which is the Form 1040 for 2005, that

14  none of the certifications that were made by the CIO to

15  OMB on their 83-I application appear nor did I find that

16  they even had attempted -- to attempt to satisfy what

17  they signed on their certification.

18      Defense Exhibit Number 172 is a Form 709 for the

19  year 2000 and it's a United States gift tax return.  And

20  up until 2002 and Defense Exhibit Number 172 is for the

21  year 2000, the very top --

22      MR. O'REILLY:  Objection.  I'd like some

23  reference of when Mr. Springer first saw this form.

24      THE COURT:  That would be fair.

25      MR. SPRINGER:  2004 is when I first saw this

D
4 of 5

22

LINDSEY SPRINGER - CONT'D DIRECT BY MR. SPRINGER

2692

1   form.  And it was based upon a conversation I had had

2   with the United States Department of Justice lawyer

3   Robert D. Metcalf.

4        And on Exhibit -- Defense Exhibit 172, at the very

5   top, it says, in parentheses, Section 6019 of the

6   Internal Revenue Code for gifts made during the calendar

7   year 2000.  In 2003, I found that this same 709 form they

8   removed all reference to any statute whatsoever and they

9   haven't ever came back and added any more statutes to the

10  form.  I extensively read that General Accountability

11  Office report and it was as if I had written it myself.

12       Defendants' Exhibit Numbers 24, 26, 28, 30, 32, and

13  34 are the instruction booklets for the Form 1040 for all

14  relevant years in this case.  I have read them

15  intrinsically, as you will find the General

16  Accountability Office had also done.

17       I relied on the Paperwork Reduction Act's promise.

18  I relied upon the circulated documents that the IRS gave

19  us.  I did everything I could and am still trying to do

20  everything I can to get IRS to comply with the Paperwork

21  Reduction Act.  I will not stop.  Because I believe that

22  it is the key to our future as a nation.  We must have

23  the rule of law.  We cannot have agencies of the United

24  States, in my belief, not accountable to you and I.

25            MR. O'REILLY:  Your Honor, objection.  This is

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

D
5 of 5

23

2899

1  will use to express your verdicts separately as to each

2  of the two defendants.  Your verdict as to any one

3  defendant or count, whether it is guilty or not guilty,

4  should not influence your verdict as to the other

5  defendant or any other counts.

6      Intent ordinarily may not be proved directly.

7  Because there is no way of fathoming or scrutinizing the

8  operations of the human mind.  You may infer a

9  defendants' intent from the surrounding circumstances.

10 Intent may be and usually is proved by circumstantial

11 evidence, if it is proved at all.

12     You may consider any statements made and any acts

13 done or omitted by a defendant and all other facts and

14 circumstances in evidence that indicate his state of

15 mind.  You may consider it reasonable to draw an

16 inference and thus find that a person intends the natural

17 consequences of acts knowingly done.  As I have stated,

18 it is entirely up to you to decide what facts to find

19 from the evidence.

20     Knowingly.  When the word "knowingly" is used in

21 these instructions, it means that the act was done

22 voluntarily and intentionally and not because of mistake

23 or accident.

24     Willfully.  For purposes of these instructions, an

25 act is done willfully if it is done voluntarily and

Attachment E
1 of 2     24

1  intentionally and if it is done with the purpose of

2  violating a known legal duty.

3      Willfulness requires the government to prove that

4  the law imposed a duty on the defendant, that the

5  defendant knew of this duty, and that the defendant

6  voluntarily and intentionally violated this duty.

7      Good faith defense.  In this case, the defendants

8  maintain they are not guilty of any of the crimes charged

9  because they contend they did not act willfully and acted

10  in good faith.

11      You are instructed that if a defendant had a good

12  faith misunderstanding of the law's requirements to

13  report the income at issue here, he is not guilty of

14  willfully violating a known legal duty.  You are further

15  instructed, however, a defendants' disagreement with the

16  law, no matter how earnestly held, does not constitute a

17  defense of good faith, misunderstanding, or mistake.  It

18  is the duty of all citizens to obey the law regardless of

19  whether they agree with it.

20      In determining whether or not a defendant acted

21  willfully and in determining whether a defendant acted in

22  good faith, you may consider all of the circumstances

23  surrounding the transactions and activities which you

24  find occurred.  To the extent that you are called upon to

25  evaluate the state of mind of the parties to various

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

E
2 of 2

25

1          THE COURT:  Very well.  You've heard me read

2    those paragraphs one time already and they are there for

3    you to see on pages 35, 36, and down to the middle of 37

4    of the instructions and you should regard those as having

5    been re-read by me.  But with the courtesy of counsel and

6    the parties, I will not read them again.

7          Finally, you are instructed that in addition to the

8    elements described in this instruction, proof of proper

9    venue is also required before you may find a defendant

10   guilty of the crime charged in Count 1.  I will instruct

11   you later regarding proof of venue.

12         Next, I will instruct you regarding Counts 2 through

13   4 of the indictment.  Counts 2, 3, and 4 charge a

14   violation of Section 7201 of Title 26 of the United

15   States Code.  Section 7201 provides in pertinent part

16   that "any person who willfully attempts in any manner to

17   evade or defeat any tax imposed by this title or the

18   payment thereof" shall be guilty of an offense against

19   the United States.

20         Defendant Springer is charged in Count 2 with a

21   violation of this law, Title 26 of the United States

22   Code, Section 7201.  This law makes it a crime for anyone

23   to willfully attempt to evade or defeat the payment of

24   federal income tax.  The indictment charges that from on

25   or about January 1, 2000, and continuing to on or about

Tracy Washbourne, RDR, CRR
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

Attachment F
1 of 9
26

1  guilty of the crime of tax evasion as charged in Count 2,
2  you must be convinced that the government has proved each
3  of the following essential elements beyond a reasonable
4  doubt:
5      First, that Defendant Springer owed substantial
6  income tax for the year 2000.
7      Second, that Defendant Springer intended to evade
8  and defeat payment of that tax.
9      Third, that Defendant Springer committed an
10  affirmative act in furtherance of this intent.
11      And, fourth, that Defendant Springer acted
12  willfully, that is, with the voluntary intent to violate
13  a known legal duty.
14      To "evade and defeat" the payment of tax means to
15  escape paying a tax due other than by lawful avoidance,
16  for the proof need not show the exact amount of the
17  additional tax due; however, the government is required
18  to prove beyond a reasonable doubt that the additional
19  tax due from Defendant Springer was substantial.
20      And by the way, the presence of the word
21  "additional" in those two sentences is also an error on
22  my part.
23      You are instructed that an affirmative act to evade
24  and defeat payment of taxes is a positive act of
25  commission designed to mislead or conceal.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

F
2 of 9

27

2955

1    For purposes of Count 2, the affirmative acts
2  alleged in the indictment to have been committed by
3  Defendant Springer are:  Receiving income in a fictitious
4  name; directing individuals to write "donation" or "gift"
5  on checks that were payment for services; directing
6  individuals to pay for services by cashier's check; using
7  a check-cashing business to cash checks; using money
8  orders, cash, and other means to avoid creating the usual
9  records of financial transactions and to conceal
10  Defendant Springer's income; making false statements to
11  agents and employees of the Internal Revenue Service; or
12  otherwise concealing and attempting to conceal from all
13  proper officers of the United States of America Defendant
14  Springer's true and correct income.

15    Finally, you are instructed that in addition to the
16  elements described in this instruction, proof of proper
17  venue is also required before you may find the defendant
18  guilty of the crime charged in Count 2.  I will instruct
19  you later regarding proof of venue.

20    Counts 3 and 4 of the indictment charge both
21  Defendant Springer and Defendant Stilley with tax
22  evasion, in violation of Title 26, Section 7201, of the
23  United States Code.

24    As previously stated, this law makes it a crime to
25  willfully attempt to evade or defeat the payment of

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

F
3 of 9

28

1  federal income tax.

2     In Count 3, the indictment charges that from on or

3  about January 1, 2003, and continuing to on or about

4  January 15, 2009, within the Northern District of

5  Oklahoma and elsewhere, Defendant Springer had and

6  received taxable income and upon that taxable income

7  there was a substantial income tax due and owing.

8     The indictment further charges that well-knowing and

9  believing the foregoing facts, Defendants Springer and

10 Stilley did willfully attempt to evade and defeat the

11 individual income taxes due and owing by Defendant

12 Springer to the United States of America for calendar

13 year 2003 by failing to file a United States Individual

14 Income Tax Return, as required by law, and by committing

15 various affirmative acts of evasion.

16    In Count 4, the indictment charges that from on or

17 about January 1, 2005, and continuing to on or about

18 January 15, 2009, within the Northern District of

19 Oklahoma and elsewhere, Defendant Springer had and

20 received taxable income and upon that taxable income

21 there was a substantial income tax due and owing.

22    The indictment further alleges that well-knowing and

23 believing the foregoing facts, Defendants Springer and

24 Stilley did willfully attempt to evade and defeat the

25 individual income taxes due and owing by Defendant

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

F
4 of 9

29

1    Springer to the United States of America for calendar

2    year 2005 by failing to file a United States Individual

3    Income Tax Return, as required by law, and by committing

4    various affirmative acts of evasion.

5         Count 3, to find a defendant guilty of the crime of

6    tax evasion, as charged in Count 3, you must be convinced

7    that the government has proved each of the following

8    elements beyond a reasonable doubt:

9         First, that Defendant Springer owed substantial

10   income tax for the year 2003;

11        Second, that the defendant intended to evade and

12   defeat payment of that tax owed by Defendant Springer;

13        Third, that in furtherance of this intent, the

14   defendant committed one of the affirmative acts charged

15   in the indictment;

16        And, fourth, that the defendant acted willfully,

17   that is, with the voluntary intent to violate a known

18   legal duty.

19        As previously stated, to evade and defeat the

20   payment of tax means to escape paying a tax due other

21   than by lawful avoidance.

22        Count 3 of the indictment does not allege a specific

23   amount of tax due from Defendant Springer from calendar

24   year 2003.  The proof need not show the exact amount of

25   the tax due for that year.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

F.
5 of 9          30

1    And in the official copy, I will delete the word

2  "additional."

3    The government is required to prove beyond a

4  reasonable doubt that the tax due was substantial.

5    An affirmative act to evade or defeat the payment of

6  taxes is a positive act of commission designed to mislead

7  or conceal.

8    For purposes of Count 3, the affirmative acts

9  charged in the indictment to have been committed by

10  Defendant Springer are:  Directing individuals to make

11  checks payable to Bondage Breakers Ministry; using a

12  check-cashing business to cash checks; and accepting

13  collectable coins as payment for services.

14    The affirmative acts charged in the indictment by

15  Defendants Springer and Stilley are:  Using Defendant

16  Stilley's IOLTA account; using Defendant Stilley's credit

17  card to pay Defendant Springer's personal expenses; using

18  cashier's checks, money orders, cash, and other means to

19  avoid creating the usual records of financial

20  transactions and to conceal income; making false

21  statements to agents and employees of the Internal

22  Revenue Service; and otherwise concealing and attempting

23  to conceal from all proper officers of the United States

24  of America Defendant Springer's true and correct income.

25    In addition to being charged as a principal,

Tracy Washbourne, RDR, CRR
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

F
6 of 9

31

2959

1   Defendant Stilley is charged as an aider and abetter in

2   Count 3.   I will instruct you shortly regarding the

3   elements of aiding and abetting.

4       Finally, you are instructed that, in addition to the

5   other elements described in this instruction, proof of

6   proper venue is also required before you may find a

7   defendant guilty of the crime charged in Count 3.   I will

8   instruct you later regarding proof of venue.

9       Count 4.   To find a defendant guilty of the crime of

10   tax evasion as charged in Count 4, you must be convinced

11   that the government has proved each of the following

12   elements beyond a reasonable doubt:

13       First, that Defendant Springer owed substantial

14   income tax for the year 2005;

15       Second, that the defendant intended to evade and

16   defeat payment of that tax owed by Defendant Springer;

17       Third, that in furtherance of this intent, the

18   defendant committed one of the affirmative acts charged

19   in the indictment;

20       And, fourth, that the defendant acted willfully,

21   that is, with the voluntary intent to violate a known

22   legal duty.

23       Again, as previously stated, to evade and defeat the

24   payment of taxes means to escape paying a tax due other

25   than by lawful avoidance.

F
7 of 9

32

2960

1    Count 4 of the indictment does not charge a specific
2    amount of tax due from Defendant Springer for calendar
3    year 2005.  The proof need not show the exact amount of
4    the tax due for that year.

5        And, again, in the official version, I will delete
6    the word "additional" there.

7        The government is required to prove beyond a
8    reasonable doubt that the tax due was substantial.

9        I'll make the same correction, deleting the word
10   "additional."

11       Again, an affirmative act to evade or defeat payment
12   of taxes is a positive act of commission designed to
13   mislead or conceal.

14       For purposes of Count 4, the affirmative acts
15   alleged to have been committed by Defendant Springer, as
16   charged in the indictment, are:  Directing individuals to
17   make checks payable to Bondage Breakers Ministry and
18   using a check-cashing business to cash checks.

19       The affirmative acts by Defendants Springer and
20   Stilley, as charged in the indictment, are:  Using
21   Defendant Stilley's IOLTA account; using Defendant
22   Stilley's credit card to pay Defendant Springer's
23   personal expenses; using cashier's checks, money orders,
24   cash, and other means of payment to avoid usual records
25   and to conceal income; making false statements to agents

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

F
8 of 9

33

1    and employees of the Internal Revenue Service; and

2    otherwise concealing and attempting to conceal from all

3    proper officers of the United States of America Defendant

4    Springer's true and correct income.

5         In addition to being charged as a principal,

6    Defendant Stilley is charged as an aider and abetter in

7    Count 4.

8         Again, you are instructed that, in addition to the

9    other elements described in this instruction, proof of

10   proper venue is also required before you may find a

11   defendant guilty of the crime charged in Count 4.  I will

12   instruct you later regarding proof of venue.

13        I will now instruct you on the elements of aiding

14   and abetting.

15        With respect to aiding and abetting, you are

16   instructed that Section 2(a) of Title 18 of the United

17   States Code provides that, "Whoever commits an offense

18   against the United States or aids, abets, counsels,

19   commands, induces, or procures its commission is

20   punishable as a principal."

21        As previously stated, Counts 3 and 4 of the

22   indictment charge Defendant Stilley with violations of

23   this statute, 18 United States Code, Section 2.  This law

24   makes it a crime to intentionally help someone else

25   commit a crime.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

F
9 of 9

34

BRIAN MILLER - DIRECT BY MR. SNOKE

2008

1   payment to Mr. Turner.

2        MR. SNOKE:   I'm sorry.  From Mr. Turner.  I

3   misspoke.

4   Q.   (BY MR. SNOKE)  It includes that as income in this

5   year, is that right, 2005?

6   A.   Yes.  The $250,000 that was paid by the Turners to

7   the IOLTA account of Mr. Stilley and then transferred to

8   Mr. Springer, that was included on this exhibit as income

9   to Mr. Springer.

10  Q.   All right.  And can you tell us why you included

11  that as income?

12  A.   Initially, I felt like it might have been a loan,

13  based on the testimony of Mr. Turner, but then I heard

14  the testimony of other witnesses, saw some other

15  exhibits, that led me to believe in all likelihood the

16  $250,000 would never be repaid by Mr. Springer and that

17  Mr. Springer felt he had complete control over that money

18  for his own uses and would therefore be treated as income

19  to him.

20  Q.   All right.  Did that include the testimony of

21  Mr. Turner that he had originally sought to shield that

22  money from the IRS seizing it?

23  A.   Yes.  Mr. Turner indicated in his testimony that he

24  transferred that money to the IOLTA account so that they

25  would simply hold those funds for him to protect those

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

Attachment 6
1 of 2
35

1    But, clearly, there was a filing requirement in that

2    year.

3    Q.   All right.   And for the year 2004?

4    A.   For the year 2004, the filing threshold, and for

5    2005, for that matter, increased substantially and that

6    was due to the fact that he was married in those two

7    years.   But the filing threshold in '04 was 15,000 or

8    15,900, I can't see it very well.   But the gross income

9    was over 93,000, certainly requiring the filing of a

10   return.

11       And then in 2005, 16,400 is the threshold.   Gross

12   income, 265,000.   Again, a return certainly required to

13   be filed.

14   Q.   All right.   It looks like it changed quite a bit

15   there in 2004 and 2005.   Was there something that

16   triggered that or just the Congress formula?

17   A.   No, the fact that he was married caused the

18   exemption amount, the standard deduction amounts to go up

19   so that the filing threshold is larger based on that.

20        MR. SNOKE:   I don't believe I have any other

21   questions of the witness at this time.

22        THE COURT:   Cross-examination.

23                CROSS-EXAMINATION

24   BY MR. SPRINGER:

25   Q.   Mr. Miller.

Attachment 6
2 of 2        36

PATRICK TURNER - DIRECT BY MR. O'REILLY

1475

1  Q.   What has Mr. Stilley said?

2  A.   That Lindsey goes through a lot of money.  That was

3  actually prior -- that was prior to me actually meeting

4  Mr. Springer.  That was back in 2003.

5  Q.   Oh.  You said Mr. Springer has made some payments on

6  the loan?

7  A.   Yes.

8  Q.   What do those payments represent?

9  A.   Repayment of the loan.

10 Q.   Aren't they simply to cover the interest that you've

11 been paying on the loan?

12 A.   They're of the same amount that I pay monthly, yes.

13 Q.   So with respect to the principal, has Mr. Springer

14 paid back any of the loan?

15 A.   In one manner of speaking, yes.  That's a -- as you

16 may know, is an accounting issue.  I leave that to my

17 accountant.

18 Q.   How much, as you sit here today, do you understand

19 Mr. Springer still owes you on this loan?

20 A.   $250,000.

21 Q.   So in other words, he's paid nothing of the

22 principal on that loan?

23 A.   With -- there is interest accruing at this point,

24 yes.

25 Q.   So, in fact, now he's not making any payments?

Attachment H
1 of 4

37

1  that's something you will need to cover in your case.

2  The government did not march this witness through the

3  Paperwork Reduction Act, and we're not going to go there

4  until your case.

5          MR. SPRINGER:  And just for the record -- never

6  mind.

7          THE COURT:  Very well.

8      (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN COURT,

9  WITH ALL PARTIES AND COUNSEL PRESENT, AND WITHIN THE

10  PRESENCE AND HEARING OF THE JURY.)

11          THE COURT:  Members of the jury, I'm going to

12  see if we can get a little closer to 3:00 before we take

13  our mid-afternoon break, but, of course, if anyone needs

14  a break, why, we'll certainly take one.  You may proceed,

15  Mr. Springer.

16  Q.  (BY MR. SPRINGER)  Now, Mr. Turner, there were

17  discussions between you and Mr. O'Reilly regarding

18  payments that I was making to you?

19  A.  Correct.

20  Q.  And those were $1,400 payments?

21  A.  Yes.

22  Q.  And isn't it true that the reason why those payments

23  began because we both could see that the one year of the

24  loan agreement was coming to a conclusion and that, based

25  upon the current situation of the investigation of

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

H
2 of 4

38

PATRICK TURNER - CROSS BY MR. SPRINGER

1  Lindsey Springer, that it was going to be at least

2  difficult to satisfy that loan agreement?

3  A.   Correct.

4  Q.   And so you agreed to extend that loan under the

5  conditions that I pay $1,400 a month, which is the

6  interest that you would owe?

7  A.   It's equal to that amount.

8  Q.   Equal to that amount.  And on numerous occasions,

9  we've had discussions about how -- isn't it true that

10 we've had discussions about how, when the IRS

11 investigates you and they go and speak to all the people

12 that support you, that that makes it a little difficult

13 to gather more support?

14 A.   Right.  The timid start to fall away.

15 Q.   And then on top of that, isn't it true that the

16 economy started getting really difficult?

17 A.   Correct.

18 Q.   And one of the things to suffer at that time, isn't

19 it true, is those ministries that you spoke about at your

20 church?

21 A.   Yes, they are all suffering.

22 Q.   So if you do live off of whether somebody wants to

23 give you money or not, it -- in this instance, it got

24 really difficult for me, didn't it?

25 A.   Correct.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

H
3 of 4

39

PATRICK TURNER - CROSS BY MR. SPRINGER                    1512

```
 1  Q.   Now, for at least a couple of years, or two and a
 2  half years, isn't it true that I paid you $1,400 a month
 3  every month at the first of the month?
 4  A.   I don't recollect the exact length of time, but
 5  something on that frame, yes.
 6  Q.   But at some point in time, those payments stopped,
 7  didn't they?
 8  A.   That's correct.
 9  Q.   Now, did we continue to have discussions about that?
10  A.   Oh, yes.
11  Q.   And you and your wife have been making those
12  interest payments every month, have you not?
13  A.   We have.
14  Q.   Now, when you and I came to this short-term loan
15  agreement, this one-year agreement, Mr. O'Reilly asked
16  you why you didn't send it to an account that I had, or
17  something -- I'm sorry.   Strike that.
18  A.   Didn't send it directly to you.
19  Q.   Isn't it true that the reason why that loan
20  agreement -- the proceeds of the loan were sent to
21  Mr. Stilley's account was because in your discussions
22  with him and I, you had learned that he had a type of an
23  account that allowed him to hold money for persons that
24  he agreed to hold money for?
25  A.   That's correct.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

H
4 of 4                    40

- 18 -

The gist of Springer's argument appears to be that the IRS's internal reorganization makes it impossible for anyone to be convicted of tax crimes. In short, he argues that, without internal revenue districts, there was no place where he was "required by law" to file his tax returns. (Br. 11.) This argument fails for several reasons.

First, its premise is wrong: there was a place where Springer was required to file his tax returns. Section 6091(b)(1)(B)(i) of Title 26 provides—as it provided in 2000—that the returns of "persons who have no legal residence or principal place of business in any internal revenue district . . . shall be made at such place as the Secretary may by regulations designate." 26 U.S.C. 6091(b)(1)(B). Since 2004, the Treasury Department's regulations have required individual taxpayers to file either at their local IRS office or at the IRS Service Center specified in the applicable tax return's instructions. *See* 26 C.F.R. 1.6091-2(a),(c),(d); 69 Fed. Reg. 55743 (Sept. 16, 2004) (amending 26 C.F.R. 1.6091-2). And the pre-2004 filing regulation, like the current one, required taxpayers to file their returns by mailing them to their particular Service Center. *See* 26 C.F.R. 1.6091-2(c) (2003). At all times relevant to this case, Springer's legal residence was in the county of Creek (*see* Springer May 4, 2010, Bail Mot. at 39 n.14) and the local IRS office serving his residence was in Tulsa (Doc. 71 at 5), both of which are in the Northern District of Oklahoma. *See* 28 U.S.C. 116(a). Thus Springer was required by law to file his tax returns, and he was resident in the Northern District of Oklahoma when he failed to do so.

Attachment I
1 of 1

41

130

```
 1          THE COURT:  I don't want a list this long.
 2          MR. O'REILLY:  Actually, Your Honor, it won't
 3 be --
 4          THE COURT:  Okay.  Okay.  Very well.  I have
 5 carefully considered the other motions that are pending,
 6 and I'm not sure that this is going to be taking them in
 7 the exact order in which they were docketed.  That's
 8 obviously neither here nor there.  But I do have the
 9 benefit, of course, of the motions, of the papers filed
10 in support of the motions, the government's response, the
11 defendant's reply, and as to some issues the government's
12 sur-replies.
13      Addressing first Mr. Springer's first motion to
14 dismiss at Docket Entry Number 51 joined in by
15 Mr. Stilley at Docket Entry Number 69, it is my
16 conclusion that venue is properly laid in this district
17 and that the motions will be denied.
18      The defendants have cited Title 26, Section 6091,
19 which governs where income tax returns may be filed and
20 which refers to filing "in the internal revenue district
21 in which is located the legal residence of the person
22 making the return."  Now, I've left out some words, but
23 the words I have said there are the relevant ones.
24 That's 26 United States Code, Section 6091(b)(1)(A)(i).
25      Because the internal revenue districts have been
```

Attachment J

1 of 1

42

1    page be removed.

2              THE COURT:  That's noted.  Thank you.

3              MR. SPRINGER:  Your Honor, may I, just one more

4    point just to make the record clear on this subject.  It

5    is my contention, if I haven't been clear about this,

6    that I believe Duberstein clearly says that the trier of

7    fact should determine whether the -- under the mainstream

8    of society whether these transfers of money were, in

9    fact, gifts.  And I just wanted to make the record clear

10   on that, that I object on that --

11             THE COURT:  And I certainly understand that.

12   Okay.  Now, we get into the numbered paragraphs.  The

13   government may not like what I did with the numbered

14   paragraphs, but here's my reasoning.  I did go back and

15   read the Duberstein opinion.  My first draft of this

16   instruction basically lifted the numbered paragraphs from

17   the Terrell decision and that's the Fifth Circuit's

18   decision, 754 F.2d 1139.  And in footnote -- on pages --

19   the relevant passage from the Terrell opinion is at pages

20   1148 and 1149 in the main text and in footnote 3.

21             In footnote 3, the Court gives a verbatim quote of

22   an instruction on gifts.  That verbatim quote includes

23   the numbered paragraphs.  At the end of that footnote,

24   the Fifth Circuit says, "We find that the Court's

25   instructions were complete and accurate in all respects

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

Attachmt K
1 of 3        43

1946

1   and reject all of appellant's objections to them as

2   lacking in merit."

3       Now, from the standpoint of a district judge, it

4   doesn't get much better than that as a security blanket.

5   But, frankly, reading Duberstein -- what's that Justice

6   Frankfurter's opinion, he kind of -- the Court in that

7   case kind of endorses what, for lack of a better word, we

8   might call a "Gastalt" approach to determining whether a

9   payment is a gift.  I think in -- to be true to that

10  opinion, I think what the Terrell court did may well be

11  exactly right, but I think it rubs up against the opinion

12  in Duberstein to some degree perhaps.

13      It takes some -- what they call factors, they call

14  them factors, but they actually lay them down as hard and

15  fast rules.  Consistent with Duberstein and

16  Mr. Springer's argument about Duberstein is to this

17  extent well taken.  I really think that it is appropriate

18  and more appropriate to articulate these in terms of what

19  the Terrell court called them and that is "factors."  We

20  say whether you consider how the defendant made his

21  living and what was the initial sentence in paragraph 1

22  has been deleted because the issue of whether it was a

23  gift or for services is already quite adequately covered

24  up above in the instructions.  So I deleted that from

25  paragraph 1.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

K
2 of 3    44

1  So paragraph 1 says the jury will take into account

2  how the defendant made his living, whether the person

3  making the payment expects to receive anything in return,

4  whether the person making the payment felt he had a duty

5  or obligation, whether the person making the payment did

6  so out of fear or intimidation and so forth.

7  I don't expect the government to be elated with

8  that, but my best judgment at this point is that that is

9  a more appropriate way to address that under all the

10  circumstances.  With that understanding, first of all,

11  what says the government with respect to that revision?

12  MR. O'REILLY:  Your Honor, the government has no

13  opposition to the changes.  When we presented it, we

14  lifted it directly from the Terrell opinion because we

15  didn't want to be changing what had been approved.  But,

16  Your Honor, we have no objection.

17  THE COURT:  Okay.  Addressing now the numbered

18  paragraphs.  And, Mr. Springer, bearing in mind that you

19  object overall to the scope and breadth of this

20  instruction, what do you have to say about the numbered

21  paragraphs?

22  MR. SPRINGER:  I'm proud to be an American, Your

23  Honor, and I'll take that instruction as the alternative.

24  THE COURT:  Mr. Stilley.

25  MR. STILLEY:  I would join Mr. Springer on that.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

K

3 of 3    45

**E-FILED**
Thursday, 10 January, 2013  10:30:37 AM
Clerk, U.S. District Court, ILCD

UNITED STATES COURT OF APPEALS

August 2, 2011

FOR THE TENTH CIRCUIT

Elisabeth A. Shumaker
Clerk of Court

In re: JEROLD W. BARRINGER

No. 11-816

A true copy
Teste.

Elisabeth A. Shumaker
Clerk, U.S. Court of
Appeals, Tenth Circuit

ORDER

By _____
Deputy Clerk

The panel of judges who reviewed the briefs and decided the issues in Case No.

10-5037, *United States v. Springer*, directed that a disciplinary proceeding be initiated

with regard to the conduct of attorney Jerold W. Barringer, who represented the appellant

in the appeal, as provided in the Tenth Circuit Rules, Addendum III, Plan For Attorney

Disciplinary Enforcement ("Plan") § 6.2. *Springer*, Order (10th Cir. July 28, 2011).

Accordingly, this proceeding was initiated based on the following findings of the

panel:

On December 15, 2010, this court admonished Mr. Barringer for submitting
a motion containing "numerous blatantly frivolous statements" asserting that the
Internal Revenue Service (IRS) does not exist and could not collect taxes outside
Washington, D.C. *United States v. Springer*, No. 10-5037, Order at 2 (10th Cir.
Dec. 15, 2010). This court warned Mr. Barringer that frivolous statements would
not be tolerated "from a licensed attorney in the guise of advocacy," and "[i]f such
conduct persists, Mr. Barringer will be referred to the Tenth Circuit Disciplinary
Committee." *Id.*

The warning from this court issued after multiple appeals in which Mr.
Barringer advanced patently frivolous arguments. The briefs in this appeal, filed
before the admonishment, suggested or explicitly stated that the IRS has no
authority to collect taxes outside of Washington, D.C. According to Mr. Barringer,
the Secretary of the Treasury must delegate collection authority to individual

GOVERNMENT
EXHIBIT
1

Attachment L
1 of 3

46
6

revenue districts, which were abolished when the IRS was restructured in 1998. Mr. Barringer similarly stated in another recent appeal that "there is no authority to act on behalf of the Secretary [of the Treasury] outside of D.C." *Springer v. Comm'r*, No. 10-9001, Aplt. Reply Br. at 9 (filed Nov. 15, 2010); *see also id.* at 11 ("Without [Division Districts] and [Internal Revenue Districts,] all treasury regulations are effectively meaningless."). And in a petition for mandamus relief: "Without Internal Revenue Districts encompassing the State of Oklahoma none of the claimed offenses of violating the 'internal revenue laws' can be alleged or proven." *In re Springer*, No. 09-5165, Pet. at 16 (filed Nov. 30, 2009). These types of unauthorized-delegation arguments "have long been held to be lacking in legal merit and frivolous." *Ford v. Pryor*, 552 F.3d 1174, 1177 n.2 (10th Cir. 2008).

Mr. Barringer has persisted advancing meritless arguments. For example, in a pending criminal matter, Mr. Barringer "challenges the [Treasury] Secretary's jurisdiction and authority to enforce offenses concerning the Internal Revenue Laws." *United States v. Springer*, No. 10-5055, Aplt. Revised Opening Br. at 8 (filed January 3, 2011). Similar to the frivolous claims he made in this appeal, Mr. Barringer argues that "[w]ithout [Internal Revenue Districts] and [Division Districts] there could never have been any proper delegation of authority outside the District of Columbia from the Secretary [of the Treasury] to any U.S. Attorney." *Id.* at 11. Mr. Barringer thus concludes that "[t]he District Court should have dismissed all counts for failure to establish jurisdiction and venue of each Count since all [Internal Revenue Districts] and [Division Districts] were abolished in 2000 preventing any authorization to prosecute [defendant] for any offenses related to internal revenue . . . ." *Id.*

*Springer*, Order (10th Cir. June 23, 2011). As provided in Plan § 6.3, Mr.

Barringer may show cause why he should not be disciplined by this court for the

aforementioned conduct in violation of Rule of Professional Conduct 3.1 ("A lawyer shall

not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a

basis in law and fact for doing so that is not frivolous, which includes a good faith

argument for an extension, modification or reversal of existing law."). Any response to

this show cause order must be filed within 20 days from the date of the order.

The response shall include a statement identifying all state and federal bars of

*L*
*2 of 3*

*47*
*7*

which Mr. Barringer is a member, and shall also include a statement identifying any prior

order or decision of a state or federal court or agency that: (1) imposed a sanction or

discipline of any kind for attorney misconduct and/or for advancing a frivolous argument;

or (2) otherwise determined that Mr. Barringer had advanced an argument that was found

to be frivolous by the court or agency.  Failure to fully and forthrightly comply with these

required statements will itself be a basis for discipline or shall be deemed an aggravating

circumstance with regard to any discipline that may be imposed based on the findings of

this court in *Springer*.


Entered for the Court
ELISABETH A. SHUMAKER
Clerk of Court


by:
Douglas E. Cressler
Chief Deputy Clerk


3

3 of 3.

48

8

BEFORE THE HEARING BOARD
OF THE
ILLINOIS ATTORNEY REGISTRATION
AND
DISCIPLINARY COMMISSION

In the Matter of:

JEROLD WAYNE BARRINGER,

Attorney-Respondent,

No. 6185092.

Commission No. 2012PR00055

ADMINISTRATOR'S REQUEST FOR THE ADMISSION OF
FACTS AND GENUINENESS OF DOCUMENTS

Jerome Larkin, Administrator of the Illinois Attorney Registration and Disciplinary Commission, by his attorney, Denise Church, pursuant to Supreme Court Rule 216, requests that Respondent Jerold Wayne Barringer, admit under oath the genuineness of the following described documents within 28 days:

**"WARNING: If you fail to serve the response required by Rule 216 within 28 days after you are served with this paper, all the facts set forth in the request will be deemed true and all the documents described in the request will be deemed genuine."**

1.     Administrator's Group Exhibit 1, pages 1-14, attached hereto, is a true and accurate copy of the Petition for Redetermination, Judicial Review, Reversal and Quashing Concerning Collection Action(s) Under Section 6330, in *Patridge v. United States Internal Revenue Service, et al.*, case no. 05 CV 3249, filed by Respondent September 21, 2005, in the United States District Court, Central District of Illinois.

2.     Administrator's Group Exhibit 2, pages 1-8, attached hereto, is a true and accurate copy of the Opinion, in case no. 05 CV 3249, entered December 23, 2005, dismissing the case for lack of subject matter jurisdiction.



Attachment M
1 of 8

49

3.      Administrator's Group Exhibit 3, pages 1-63, attached hereto, is a true and accurate copy of Respondent's brief in *USA v. Patridge*, case no. 06-3635, filed January 30, 2007, Seventh Circuit Court of Appeals.

4.      Administrator's Group Exhibit 4, pages 1-5, attached hereto, is a true and accurate copy of the Seventh Circuit Order, entered November 14, 2007.

5.      Administrator's Exhibit 5, attached hereto, is a true and accurate copy of the docket entry of the Seventh Circuit Order, entered December 6, 2007, in case no. 06-3635, sanctioning Respondent $10,000.

6.      Administrator's Group Exhibit 6, pages 1-38, attached hereto, are true and accurate copies of attorney David R. Reid opinion letter and supporting documentation, dated September 3, 2013.

7.      Administrator's Group Exhibit 7, pages 1-5, attached hereto, is a true and accurate copy of the Bloomberg BNA Tax & Accountability Center's – Guide to Commonly Used Frivolous Arguments.

8.      Administrator's Group Exhibit 8, pages 1-22, attached hereto, is a true and accurate copy of the IRS publication – The Truth About Frivolous Tax Arguments, January 1, 2011.

9.      Administrator's Group Exhibit 9, pages 1-15, attached hereto, is a true and accurate copy of the Complaint, in *USA v. Springer, et al.*, case no. 08 CR 278, filed May 9, 2008, United States District Court, Northern District of Oklahoma.

10.     Administrator's Group Exhibit 10, pages 1-14, attached hereto, is a true and accurate copy of the Indictment, in *USA v. Springer, et al.*, case no. 09 CR 043, filed March 10, 2009, United States District Court, Northern District of Oklahoma.



2

11.     Administrator's Group Exhibit 11, pages 1-6, attached hereto, is a true and accurate copy of the Judgment, in *USA v. Springer*, case no. 09 CR 043, filed April 28, 2010, United States District Court, Northern District of Oklahoma.

12.     Administrator's Group Exhibit 12, pages 1-8, attached hereto, is a true and accurate copy of the Opinion, in *Springer v. IRS, ex rel.*, filed May 1, 2007, United States Court of Appeals, 10th Circuit, (cited as 231 Fed. Appx. 793), restricting Springer's ability to file further litigation (Respondent not involved).

13.     Administrator's Group Exhibit 13, pages 1-6, attached hereto, is a true and accurate copy of the Order of Sale, in *USA v. Springer, et al.*, case no. 08 CV 278, filed March 16, 2010.

14.     Administrator's Exhibit 14, attached hereto, is a true and accurate copy of the Order denying motion to stay, in case no. 08 CV 278, entered April 14, 2010.

15.     Administrator's Group Exhibit 15, pages 1-43, attached hereto, is a true and accurate copy of the Appellant's brief, in *USA v. Springer*, case no. 10-5037, filed July 21, 2010.

16.     Administrator's Group Exhibit 16, pages 1-13, attached hereto, is a true and accurate copy of the Motion for Stay of District Court Orders and Motion for Stay of Confirmation of Sale of Appellant's Real Estate, in *USA v. Springer*, case no. 10-5037, filed by Respondent, December 14, 2010, United States Court of Appeals, 10th Circuit.

17.     Administrator's Group Exhibit 17, pages 1-2, attached hereto, is a true and accurate copy of the Order denying motion for stay, in case no. 10-5037, filed December 15, 2010, United States Court of Appeals, 10th Circuit.



3

18.     Administrator's Group Exhibit 18, pages 1-6, attached hereto, is a true and accurate copy of the Order and Judgment, in case no. 10-5037, entered June 23, 2011, Unites States Court of Appeals, 10th Circuit.

19.     Administrator's Group Exhibit 19, pages 1-3, attached hereto, is a true and accurate copy of the Order, in *In re: Jerold W. Barringer*, case no. 11-816, filed August 2, 2011, United States Court of Appeals, 10th Circuit.

20.     Administrator's Group Exhibit 20, pages 1-56, attached hereto, is a true and accurate copy of Respondent's Response to August 2, 2011 Order, filed August 22, 2011, in case no. 11-816.

21.     Administrator's Group Exhibit 21, pages 1-5, attached hereto, is a true and accurate copy of the Order, entered September 2, 2011, suspending Respondent indefinitely from the practice of law in the United States Court of Appeals for the 10th Circuit.  *NOTE*: page 2 reference to Respondent's motion should read December 14, 2010.

22.     Administrator's Group Exhibit 22, pages 1-12, attached hereto, is a true and accurate copy of the Opinion, in *USA v. Springer, et al.*, 444 Fed. Appx. 256 (United States Court of Appeals, 10th Circuit), October 26, 2011.

23.     Administrator's Group Exhibit 23, pages 1-36, attached hereto, are true and accurate copies of the Opinion letter and supporting documentation from attorney David R. Reid to counsel for the Administrator, dated April 6, 2012, regarding IRS legal authority to collect tax outside the District of Columbia.

24.     Administrator's Group Exhibit 24, pages 1-20, attached hereto, are true and accurate copies of Respondent's Motion to Dismiss, in *USA v. Sanders*, case no. 12 CV 96, filed March 30, 2012, in United States District Court, Southern District of Illinois.



52

25.     Administrator's Group Exhibit 25, pages 1-17, attached hereto, is a true and accurate copy of the Response to Motion to Dismiss, in case no. 12 CV 96, filed May 3, 2012.

26.     Administrator's Group Exhibit 26, pages 1- 6, attached hereto, is a true and accurate copy of Respondent's Reply to the Response of the United States to Motion to Dismiss, in case no. 12 CV 96.

27.     Administrator's Group Exhibit 27, pages 1- 2, attached hereto, is a true and accurate copy of the Order, denying the motion to dismiss, in case no. 12 CV 96, entered October 22, 2012.

28.     Administrator's Group Exhibit 28, pages 1-11, attached hereto, is a true and accurate copy of the Memorandum & Order, in *USA v. Sanders, et al.*, case no. 11 CV 912, entered September 17, 2012.  (Referred to in Admin. Group Exh. #27, above)

29.     Administrator's Group Exhibit 29, pages 1-2, attached hereto, is a true and accurate copy of an Order of reciprocal discipline, suspending Respondent from the practice of law indefinitely, in *In Re: Jerold Barringer*, case no. 12 MC 78, filed December 10, 2012, United States District Court, Southern District of Illinois.

30.     Administrator's Group Exhibit 30, pages 1-3, attached hereto, is a true and accurate copy of an Order on Respondent's Petition for Reinstatement in *In re: Jerold W. Barringer*, case no. 11-816, filed November 28, 2012 in United States Court of Appeals, 10th Circuit.

31.     Administrator's Group Exhibit 31, pages 1-22, attached hereto, is a true and accurate copy of Respondent's Motion to Dismiss, in *USA v. Jerold Barringer*, case no. 12-3324, filed January 9, 2013, United States District Court, Central District of Illinois.



M
5 of 8

53

32.     Administrator's Group Exhibit 32, pages 1-8, attached hereto, is a true and accurate copy of United States Response to Motion to Dismiss, in *USA. v. Barringer*, case no. 12-3324, filed January 10, 2013, in United States District Court, Central District of Illinois.

33.     Administrator's Group Exhibit 33, pages 1-6, attached hereto, is a true and accurate copy of the Opinion, in *USA v. Barringer*, case no. 12-3324, entered January 18, 2013, United States District Court, Central District of Illinois.

34.     Administrator's Exhibit 34, attached hereto, is a true and accurate copy of the Curriculum Vitae for David R. Reid.

35.     Administrator's Group Exhibit 35, pages 1-5, attached hereto, is a true and accurate copy of the Opinion, in *USA v. Ouwenga*, 173 Fed. Appx. 411 (6th Circuit Court of Appeals), filed March 17, 2006. Obtained from PACER, Public Access to Court Electronic Records.

36.     Administrator's Exhibit 36, attached hereto, is a true and accurate copy of Respondent's appeal in *USA v. Springer*, case no. 09 CR 043, United States Court of Appeals, 10th Circuit, appeal no. 10-5055, showing original filing date of December 6, 2010, of Respondent's brief, (one page only). Obtained from PACER, Public Access to Court Electronic Records.

37.     Administrator's Group Exhibit 37, pages 1- 65, attached hereto, is a true and accurate copy of Respondent's Brief, Appeal No. 10-5055, in *USA v. Springer, et al.*, case no. 09 CR 043, filed January 3, 2011, United States Court of Appeals, 10th Circuit. Obtained from PACER, Public Access to Court Electronic Records.

38.     Administrator's Group Exhibit 38, pages 1-23, attached hereto, is a true and accurate copy of Jerold W. Barringer's Response in Opposition and Show Cause to the Court



54

Clerk's Order dated June 23, 2011, in *USA v. Springer*, filed July 13, 2011, United States Court of Appeals, 10th Circuit, case no. 10-5037. Obtained from PACER, Public Access to Court Electronic Records.

39.      Administrator's Group Exhibit 39, pages 1-2, attached hereto, is a true and accurate copy of the Opinion, in *USA v. Miller*, 444 Fed. Appx. 106, (8th Circuit Court of Appeals), filed October 24, 2011.

40.      Administrator's Group Exhibit 40, pages 1-27, attached hereto, is a true and accurate copy of Respondent's brief, in *USA v. Miller*, appeal no. 10-3652, filed December 29, 2010, United States Court of Appeals, 8th Circuit. Obtained from PACER, Public Access to Court Electronic Records.

41.      Administrator's Group Exhibit 41, pages 1-3, attached hereto, is a true and accurate copy of Order, per curiam, in *USA v. Gilbert*, appeal no. 10-6527, United States Court of Appeals, 6th Circuit, (unpublished opinion filed April 12, 2012). Obtained from PACER, Public Access to Electronic Records.

42.      Administrator's Group Exhibit 42, pages 1-59, attached hereto, is a true and accurate copy of Respondent's brief, in *USA v. Gilbert*, appeal no. 10-6527, filed July 25, 2011, United States Court of Appeals, 6th Circuit. Obtained from PACER, Public Access to Court Electronic Records.

43.      Administrator's Group Exhibit 43, pages 1-19, attached hereto, is a true and accurate copy of Respondent's brief, in *USA v. Sanders*, case no. 09 CV 430, filed December 20, 2009, United States District Court, Southern District of Illinois. Obtained from PACER, Public Access to Court Electronic Records.



M

7 of 8

55

7

44.     Administrator's Group Exhibit 44, pages 1-10, attached hereto, is a true and accurate copy of USA's brief, in *USA v. Sanders*, case no. 09 CV 430, filed December 9, 2009, United States District Court, Southern District of Illinois. Obtained from PACER, Public Access to Court Electronic Records.

45.     Administrator's Group Exhibit 45, pages 1-4, attached hereto, is a true and accurate copy of *USA v. Sanders*, 2012 U.S. Dist. LEXIS 129554, Opinion in case no. 09 CV 430, filed September 12, 2012, United States District Court, Southern District of Illinois.

46.     Administrator's Group Exhibit 46, pages 1-2, attached hereto, are true and accurate copies of ARDC letters to Respondent regarding his sworn statement and the reopening of Administrator's investigation no. 07 SI 5291 (Patridge).

47.     Administrator's Group Exhibit 47, pages 1- 7, attached hereto, is a true and accurate copy of the (excerpt) of Respondent's sworn statement dated February 1, 2012, regarding Administrator's investigations, 2011 IN 4171 and 2007 SI 5291.

Respectfully submitted,

Jerome Larkin, Administrator
Attorney Registration and
Disciplinary Commission

By:_____
Counsel for the Administrator

Denise Church
Illinois Attorney Registration and
Disciplinary Commission
3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
Telephone: (217) 546-3523
doc. #472985


8 of 8        56

**E-FILED**
Thursday, 10 January, 2013  10:30:36 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No.  12-3324 |
| | ) |
| JEROLD BARRINGER, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## UNITED STATES RESPONSE TO MOTION TO DISMISS

Now comes the United States of America, by and through its attorneys, James A.

Lewis, United States Attorney for the Central District of Illinois, and Assistant United

States Attorney Hilary W. Frooman and states as follows in response to defendant's

Motion to Dismiss:

The Court should deny the motion to dismiss, as it contains typical tax protester

rhetoric and deliberately makes convoluted arguments on which this Court should

waste no time.  Barringer's argument is basically that the IRS can take no action against

him for failure to file tax returns because the IRS no longer has district directors as a

result of an IRS reorganization.  Barringer is correct that the Internal Revenue Service

Restructuring and Reform Act of 1998 (RRA), Pub.L. 105-206, 112 Stat.  685, eliminated

the district director position within the IRS.  However, as the tax court in *Grunsted v.*

*Commissioner* explained:

> The IRS has been reorganized several times in recent history.
> The district director position and responsibilities were

*57*

Attachment N
1 of 5



ADM. GRP. EX.
032

> assigned to others after the Internal Revenue Service
> Restructuring and Reform Act of 1998(RRA), Pub.L. 105-206,
> 112 Stat. 685, required the Commissioner to eliminate or
> substantially modify the IRS' national, regional and **district**
> structure. *Id.* sec. 1001, 112 Stat. 689. To ensure continuity of
> operations, the RRA specifically included a savings
> provision. *Id.* sec. 1001(b). The savings provision applies to
> keep in effect regulations that refer to officers whose
> positions no longer exist. *Id.* It also provides that nothing in
> the reorganization plan would be considered to impair any
> right or remedy to recover any penalty claimed to have been
> collected without authority. *Id.*

*Grunsted v. Commissioner,* 136 T.C. 455, 461 (2011).

Barringer has been involved in a number of cases in which he asserted that the elimination of IRS district directors prevented the IRS from enforcing rules and regulations to collect taxes. In each case, the court ruled against Barringer's client and the argument made by Barringer. *United States v. Sanders,* 2012 WL 4088823 at *5 (S.D. Ill.) (defendant sought dismissal of the criminal complaint, claiming that the lack of district directors meant the United States and IRS were not entitled to pursue criminal tax collections actions; the court concluded otherwise, stating: "To ensure continuity of operations, the RRA specifically included a savings provision. The savings provision applies to keep in effect regulations that refer to officers whose positions no longer exist. It also provides that nothing in the reorganization plan would be considered to impair any right or remedy to recover any penalty claimed to have been collected without authority" (citations omitted)); *United States v. Miller,* 2011 WL 5026462 (C.A.8 Iowa)) (the court rejected contention that IRS restructuring abrogated the duty to pay taxes by eliminating district offices where taxpayers previously filed returns).

Attachment N
2 of 5

58

2

While representing Lindsey Springer in the Tenth Circuit, Barringer himself came under the strict scrutiny of the court and the Tenth Circuit made it abundantly clear to him that it utterly rejected his argument that IRS' restructuring abrogated the powers of the IRS. *United States v. Springer*, No. 10-5037 (10th Cir. Dec. 15, 2010). Barringer was indefinitely suspended from practice before the Tenth Circuit for making just such arguments. *See In re Barringer*, No. 11-816 (10th Cir. Sept. 2, 2011).

On August 2, 2011, a panel of judges of the Tenth Circuit ordered that Barringer show cause why he should not be disciplined by that court. In its Order, the Tenth Circuit quoted a previous Order:

> Mr. Barringer thus concludes that "[t]he District Court should have dismissed all counts for failure to establish jurisdiction and venue of each Count since all [Internal Revenue Districts] and [Division Districts] were abolished in 2000 preventing any authorization to prosecute ...for any offenses related to internal revenue.

*United States v. Springer*, No. 10-5037, Order (10th Cir. June 23, 2011).

The Tenth Circuit rejected Barringer's argument and also commented that unauthorized delegation arguments "have long been held to be lacking in legal merit and frivolous," quoting *Ford v. Pryor*, 552 F.3d 1174, 1177 n.2 (10th Cir. 2008); *In Re Jerold Barringer*, No. 11-816 Order (10th Cir. 2011). (Ex. 1)

Most importantly, mere bureaucratic restructuring of the IRS failed to eliminate the statutory requirement that Barringer and other United States citizens file tax returns under the circumstances set forth in the tax statutes. *See* 26 U.S.C. § 6012(a)(2002). An individual is required to file their tax return "in the internal revenue district in which is located the legal residence or principal place of business of the person making the

Attachment N
3 of 5                    59

3

Did Not Receive Page 4 *RS

N
4 of 5

60

## CERTIFICATE OF SERVICE

The following persons were served with a copy of the foregoing:

Jerold Barringer (via federal express)
200 West Front St.
Nokomis, IL 62075

jbarry@consolidated.net

Date:   January 10, 2013

s/ Hilary W. Frooman
Hilary W. Frooman

N
5 of 5

61

**E-FILED**
Friday, 18 January, 2013  04:10:23 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Petitioner, <br><br> v. <br><br> JEROLD BARRINGER, <br><br> Respondent. | ) <br> ) <br> ) <br> ) <br> )    No. 12-3324 <br> ) <br> ) <br> ) <br> ) |

### OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Petitioner, the United States of America, filed a Petition to Enforce Internal Revenue Service Summons (Petition) (d/e 1). This matter is now before the Court on Respondent Jerold Barringer's "Motion to Dismiss" (Motion) the Petition (d/e 4). The Motion is more akin to a Motion to quash the summons issued by the Internal Revenue Service (IRS). Respondent maintains that because of the lack of internal revenue districts and "district directors", the United States is without authority to issue the summons. Respondent's Motion is DENIED.

### I. BACKGROUND

In August 2011, Mark J Bettinger, an IRS officer, served Respondent with a summons. The summons required Respondent to appear before Bettinger on

Attachment O
1 of 6

62

ADM. GRP. EX.
033

September 6, 2011, and give testimony related to Respondent's tax liability for tax years 2001, 2002, 2003, 2004, 2005, 2006, and 2007. The summons also instructed Respondent to bring all documents and records in his possession that related to income Respondent received during those years. Respondent has refused to comply with the summons.

On November 30, 2012, the United States filed the Petition. This Court ordered Respondent to appear before the Court to show cause why he should not be compelled to obey the IRS summons served upon him in August 2011. The Court ordered Respondent to appear in court on January 14, 2013. In the meantime, Respondent filed the Motion, in which he argues the United States does not have the authority to issue the summons. In its response, the United States asserts that the Motion should be denied because the bureaucratic restructuring of the IRS did not eliminate the statutory requirement that United States citizens file tax returns under the circumstances set forth in the tax statutes. The United States also noted several cases in which Respondent's argument has been rejected.

At the January 14, 2013 hearing, Respondent stated that if the Court rejected the arguments contained in his Motion regarding the structure of the IRS, the Court could compel him to comply with the summons. The Court orally denied the Motion and ordered Respondent to comply with the summons.

2 of 6

63

## II. ANALYSIS

If an IRS summons is challenged, the United States must meet the

requirements for enforcement set out by the United States Supreme Court in United

States v. Powell, 379 U.S. 48, 57-58 (1964). Those factors have been applied by

the Seventh Circuit, which described the factors as follows:

> [T]he government must make a prima facie case that the IRS issued
> the summons in good faith . . . . The government must only show: the
> investigation underlying the summons has a legitimate purpose; the
> information sought may be relevant to that purpose; the information is
> not already in the IRS's hands; and the IRS has followed the statutory
> steps for issuing a summons. The government typically makes that
> showing through the affidavit of the revenue agent conducting the audit.

2121 Arlington Heights Corp. v. IRS, 109 F.3d 1221, 1224 (7th Cir. 1997)

(citations omitted).

Instead of addressing these factors, Respondent challenges the authority of

the United States to seek enforcement of the summons. As stated, the crux of

Respondent's Motion is that the Internal Revenue Service Restructuring and

Reform Act or 1998, Pub.L. No. 105-206, 112 Stat. 685 (1998) (Restructuring and

Reform Act) eliminated internal revenue districts and district directors.

Respondent cites 26 C.F.R. 301.6301-1, which states that "[t]he taxes imposed by

the internal revenue laws shall be collected by district directors of internal

revenue." Because the position of district director no longer exists, "and no new

delegation individual in a statutory or regulatory structure has been identified", the

United States does not have the authority to proceed with enforcement of the

summons.

This argument has been rejected by the United States Tax Court in <u>Grunsted</u>

<u>v. Commissioner</u>, where the court stated as follows:

> The IRS has been reorganized several times in recent history.
> The district director position and responsibilities were assigned to
> others after the Internal Revenue Service Restructuring and Reform
> Act of 1998(RRA), Pub.L. 105–206, 112 Stat. 685, required the
> Commissioner to eliminate or substantially modify the IRS' national,
> regional and district structure. To ensure continuity of operations, the
> RRA specifically included a savings provision. Id. sec. 1001(b). The
> savings provision applies to keep in effect regulations that refer to
> officers whose positions no longer exist. It also provides that nothing
> in the reorganization plan would be considered to impair any right or
> remedy to recover any penalty claimed to have been collected without
> authority.
>
> Furthermore, IRS Deleg. Order 1–23 (formerly IRS Deleg.
> Order 193, Rev. 6), Internal Revenue Manual pt. 1.2.40.22 (Nov. 8,
> 2000) allows directors, submission processing field, compliance
> services field and accounts management field to appoint assessment
> officers. This order further implemented Congress' intent that the IRS'
> normal duties, including that of assessment, not be obstructed by the
> reorganization.

136 T.C. 455, 461 (2011) (citations omitted). Moreover, as the United States

points out in its Reply to Respondent's Motion, Respondent is an attorney and has

taken this position as an advocate for his clients in other courts and this position

has been rejected. See <u>United States v. Sanders</u>, 2012 WL 4088823, at *7 (S.D. Ill.

O
4 of 6

65

4

2012) (calling Respondent's argument "patently frivolous" and "meritless");
United States v. Springer, No. 10-5037, Order (10th Cir. July 28, 2011) (ordering
the clerk of the Tenth Circuit to initiate a disciplinary case against Respondent
after stating that "these types of spurious delegation arguments have been
consistently rejected as patently frivolous"); United States v. Miller, 444 Fed.
Appx. 106 (8th Cir. 2011).  The Court agrees with the reasoning set forth in
Grunsted, and repeated in Sanders, Springer, and Miller.  Accordingly, the Court
finds that the United States has the authority to issue and proceed with enforcement
of the summons.  Because the United States has satisfied the Powell factors,
Respondents Motion, which seeks to dismiss or quash the summons, is denied.

## III. CONCLUSION

THEREFORE, the United States Petition (d/e 1) is GRANTED and
Respondent's Motion (d/e 4)is DENIED.  Respondent must comply with the IRS
summons by February 7, 2013.  This matter is set for a status conference on
February 11, 2013, at 9:00 A.M. at which time the Parties will update the Court on
Respondent's compliance with the summons and this Court's order that he comply
with the summons.  If Respondent complies with the summons and the Parties
determine the February 11, 2013 hearing is no longer necessary, the Parties are
instructed to inform the Court in writing and status conference will be canceled.

5 of 6

5

IT IS SO ORDERED.

ENTER: January 18, 2013.

FOR THE COURT:

s/ Sue E. Myerscough
SUE E. MYERSCOUGH
United States District Judge

6 of 6

67

6

FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

September 2, 2011

## FOR THE TENTH CIRCUIT

Elisabeth A. Shumaker
Clerk of Court

In re: JEROLD W. BARRINGER

No. 11-816

## ORDER

Before **BRISCOE**, Chief Judge, **KELLY** and **GORSUCH**, Circuit Judges.

*Per Curiam.*

The panel that decided a federal tax lien foreclosure appeal also determined that the appellant's counsel, Jerold W. Barringer, made statements and arguments to the court that were frivolous. United States v. Springer, No. 10-5037 (10th Cir. Orders: Dec. 15, 2010, June 23, 2011, July 28, 2011). The panel directed that an attorney disciplinary proceeding be initiated. See Plan for Attorney Disciplinary Enforcement ("Plan") §§ 4.3, 6.2; No. 10-5037 (Order, July 28, 2011).

Accordingly, this proceeding was opened and a show cause order was issued to Mr. Barringer. See Plan § 4.2. The show cause order allowed him an opportunity to explain why he should not be sanctioned for advancing frivolous arguments. Mr. Barringer filed a response to the show cause order.

As a preliminary matter, he asks in his response for a hearing wherein he might present evidence. The court's Plan permits a hearing, but does not require it. (If requested by the respondent, "the disciplinary panel <u>may</u> set the matter for a hearing

Attachment P
1 of 5

ADM. GRP. EX.
021

68

before a special master." Plan § 8.1 (emphasis added)). In this instance, the court finds

no need for a hearing. That request is therefore denied.

We need not repeat the various frivolous statements and arguments made by Mr.

Barringer, as they can be found in the briefs and motions he has filed and are noted in the

above-referenced orders entered in the <u>Springer</u> proceeding. Two examples of Mr.

Barringer's statements will suffice and are illustrative of the nature of his arguments to

the court:

> "Appellees cannot justifiably dispute the 'IRS' no longer legally exists." No.
> 10-5037 (Motion p. 4, Dec. 14, 2011).
>
> "It should be clear by now there is no lawfully established Internal Revenue
> Service with jurisdiction outside the District of Columbia or among the several
> States." No. 10-5037 (Motion p. 7, Dec. 14, 2011).

As to whether or not he should be sanctioned, Mr. Barringer asserts in his response

that his prior arguments to the court were either based on existing law or that they were

based on a good faith argument for an extension, modification, or reversal of existing law.

Therefore, asserts Mr. Barringer, they are not frivolous and he should not be sanctioned.

<u>See</u> Model Rule of Professional Conduct 3.1.

However, the question of whether Mr. Barringer breached his ethical duties to the

court by repeatedly asserting frivolous arguments has already been decided and this panel

will not relitigate it.

We are guided by <u>In re Smith</u>, 10 F.3d 723 (10th Cir. 1993). In <u>Smith</u>, as here, an

attorney was ordered to show cause why he should not be sanctioned for filing frivolous

P
2 of 5

69

2

pleadings. Id. at 724. There, as here, the attorney argued in the disciplinary action that his pleadings in prior appeals "were not frivolous." Id. But the disciplinary panel declined to address that contention, stating: "The appeals were found to be frivolous by the panels who decided them. We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding decision by the Supreme Court." Id. (citations omitted).

The Springer panel has already made a legal determination that Mr. Barringer filed frivolous pleadings in this court. We "cannot overrule" that judgment. Id.

Our decision not to revisit the previous determination is further bolstered by the fact that the Springer panel allowed Mr. Barringer the opportunity to respond to the panel's concern about his frivolous arguments. See, e.g., Selling v. Radford, 243 U.S. 46, 51 (1917) (stating that a court may recognize and follow a disciplinary sanction imposed by another court so long as the attorney was afforded due process in the prior disciplinary action). At the same time the panel issued its Order and Judgment on the merits of the appeal, it issued a separate order affording Mr. Barringer the chance to show cause why his conduct should not be referred for possible discipline. No. 10-5037 (Order, June 23, 2011). Mr. Barringer took that opportunity to reiterate his prior arguments and insist that "[t]here is nothing Counsel has said that was frivolous . . ." No. 10-5037 (Response p. 22, July 13, 2011). The Springer panel considered this response, and then issued the order directing that this disciplinary proceeding be commenced. No. 10-5037 (Order, July 28, 2011).

P
3 of 5

70

3

In summary, the question of whether Mr. Barringer advanced frivolous arguments to this court has already been answered in the affirmative.

Having determined that Mr. Barringer committed ethical misconduct by filing frivolous pleadings, the only remaining question before the court is what sanction, if any, is appropriate to the circumstances.

To assist the court in answering that question, Mr. Barringer was required in his response to the show cause order issued in this proceeding to identify any prior instances where a court has imposed a sanction on him or where an argument he raised was found to be frivolous by a tribunal.

In response to the show cause order, Mr. Barringer states that in 2001, he was publicly censured in Illinois for filing an improper motion to recuse a state trial judge; that in 2007, he was required to pay a $10,000 sanction by the United States Court of Appeals for the Seventh Circuit for, among other things, making frivolous arguments in a tax related case; and that in the past two years he was required by the United States Tax Court to pay a $1,200 sanction for misconduct in one case and another $4,725 sanction for misconduct in another. Response, pp. 51-54.

These prior instances demonstrate that monetary sanctions have not proven effective in deterring Mr. Barringer from unethical conduct. We also note that Mr. Barringer is unapologetic about his consumption of court time with meritless contentions. Significantly, he offers no assurances that he will not continue to make frivolous arguments regarding the authority of the Internal Revenue Service if given the chance.

4

P
4 of 5

71

4

We are mindful that courts should exercise care in imposing sanctions for raising meritless arguments. See, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) (noting that Fed. R. Civ. P. 11 must be read in light of concerns that the imposition of sanctions may spawn satellite litigation and chill vigorous advocacy). However, asserting frivolous legal arguments is simply ethical misconduct masquerading as advocacy.

For all the foregoing reasons, we find that a suspension from practicing before this court is warranted.

Jerold W. Barringer is accordingly indefinitely suspended from the practice of law in the United States Court of Appeals for the Tenth Circuit. After one year from the date of this order, Mr. Barringer may petition for reinstatement. Any petition to reinstate must be filed in this case and must: (1) demonstrate good cause why Mr. Barringer should be reinstated; (2) identify any other discipline or sanctions to which he has been subject since this court's suspension; (3) identify all bars to which he is a member in good standing and those bars from which he has been suspended, disbarred, or has otherwise been deemed not in good standing; and (4) otherwise comply with the applicable provisions of Plan § 10.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk

by:
Douglas E. Cressler
Chief Deputy Clerk

5

P
5 of 5

72

5

To:   Clerk of Court
      333 West Fourth Street
      Tulsa, Oklahoma 74103


From:  Lindsey Kent Springer
       Reg. # 02580-063
       Federal Satellite Low-La Tuna
       P.O. Box 6000
       Anthony, New Mexico 88021

           Re:  13-CV-145(09-CR-043)
       Please find enclosed my  _Declaration and Attachments_

to be filed in the above referenced matter.  I was unable to enclose the

_Response Merits Brief_                      with this pleading

due to weight restrictions.

       Thank you for your attention to this matter and I hope your office is

highly favored.  Have a blessed day.

                              Truly,

                              _Lindsey K Springer_


Dated this  15  Day of June, 2014

Lindsey Kent Springer
Reg # 02580-063
Federal Satellite Low - La Tuna
P.O. Box 6000
Anthony New Mexico 88021

    
   

No
Postmark

**RECEIVED**

JUN 20 2014

Phil Lombardi, Clerk
U.S. DISTRICT COURT

09-cr-43-SPF

⇔02580-063⇔
Clerk Of Court
U.S. Courthouse Rm. 411
333 W 4TH ST
Tulsa, OK 74103
United States

"Legal Mail"

EL PASO TX 799
TUE 17 JUN 2014 PM