

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

     Plaintiff,

v.                              Case No. 09-CR-043
                                    (13-CV-145)

LINDSEY KENT SPRINGER,

     Defendant.

MOTION FOR RECONSIDERATION OF ORDER AND JUDGMENT

DATED JUNE 22, 2018

(Docs. 645 and 646)

FILED

JUL 5 2018

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

By:  Lindsey Kent Springer
     Reg. # 02580-063
     Federal Satellite Camp
     P.O. Box 9000
     Seagoville, Texas 75159

___✓ Mail    ___ No Cert Svc    ___ No Orig Sign

___ C/J    ___ C/MJ    ___ C/Ret'd    ___ No Env

___ No Cpys    ___✓ No-Env/Cpys    ___ O/J    ___ O/MJ

-i-

TABLE OF CONTENTS

Motion to Reconsider.......................................................1

   1.  The facts in dispute warrant discovery...........................1

   2.  An evidentiary hearing is warranted on all facts in dispute to
      to enable the Court to make proper findings of facts and conclu-
      sions of law in deciding Springer's Rule 60(d)(3) application.....6

   3.  This Court should proceed to make findings of facts as to the
      uncontroverted facts as well as those in dispute or controverted..8

      A.  First, the Court is required to make specific findings of
          facts.......................................................8

          (i)  Springer, the Public, and the reviewing Court need
              specific findings of facts to determine the issues for
              appeal..............................................8

              (a)  The standard of review.........................8

      B.  FRCvP Rule 52(a) applies to Rule 60(d)(3) applications requir-
          ing findings of facts for specific purposes..................8

      C.  The facts uncontroverted but not specifically found by the
          Court yet...................................................10

   4.  After ascertaining all the facts, this Court should make specific
      conclusions of law.............................................17

      A. The Court did not give the evidence presented by Springer from
         the USDOJTD, EOUSA, and NPRC, the presumption of legitimacy
         required at this stage of the Rule 60(d)(3) proceedings.......18

   5.  Springer needs appointment of counsel in these proceedings.......19

   6.  Springer contends the COA standard does not apply to True Rule
      60(d)(3) proceedings when the Court denies the application.......20

   7.  This Court should issue a COA, if it finds against Springer's
      argument above in ¶ 6, on each issue raised in this Motion,
      Springer's Rule 60(d)(3) application, and Springer's objections
      in his Reply to Doc. 641 and its Exhibits....................22

      A.  The October 24, 2013 theory changed dramatically on April 10,
         2018........................................................23

Conclusion.............................................................25

Certificate of Service and Declaration of Mailing......................26

-ii-

TABLE OF AUTHORITIES

Anderson v. Albuquerque, 690 F.2d 796, 803(10th Cir. 1982)............10,17

Anderson v. Liberty Lobby, 477 U.S. 242, 248(1986)........................10

Bell v. A.T. & T., 946 F.2d 1507, 1510(10th Cir. 1991)....................9

Browder v. Director, Ill. Dept. of Corr., 434 U.S. 257, 263(n.7)(1978)....20

Brown v. Sirmons, 515 F.3d 1072, 1089(10th Cir. 2008)..................8,17

Bulloch v. U.S., 763 F.2d 1115, 1121(10th Cir. 1985)(en banc)..........3,5,6

California v. Green, 399 U.S. 149, 158(1970)..............................3

Douglas v. Workman, 560 F.3d 1156, 1182(10th Cir. 2009)................8,17

Endberg v. Wyoming, 265 F.3d 1109, 1122(10th Cir. 2001)...................20

Featherstone v. Barash, 345 F.2d 246, 249(10th Cir. 1965)..............9,10

Fed.Dep.In.Co. v. United Pac. Ins. Co., 152 F.3d 1266, 1272(10th Cir. 1998)................................................................8,18

Gonzalez v. Crosby, 545 U.S. 524, 529(2005)..............................20

H.K. Porter Co. v. Goodyear Tire, 56 F.2d 1115, 1119(6th Cir. 1976).......3

Holloway v. Arkansas, 435 U.S. 475, 486(1978).............................4

In Re Pickard, 681 F.3d 1201, 1207(10th Cir. 2012)........................5

Kupferman v. Conso. Research & MFG Co., 459 F.2d 1072, 1078(2nd Cir. 1972).6

Lee v. Brown, 2013 U.S. Dist. Lexis 152576(N.D.GA, 2013).................21

Maynard v. Boone, 468 F.3d 665, 673(10th Cir. 2006)....................8,17

Morris v. Adams-Millis Corp., 758 F.2d 1352, 1357(10th Cir. 1985)........21

National Archives v. Favish, 541 U.S. 157, 174(2004)...................3,19

Rich Dad Oper. Co., LLC v. Zubrod, 652 Fed. Appx. 625, 631(10th Cir. 2016).9

Robinson v. Audi, 56 F.3d 1259, 1267(10th Cir. 1995)..............5,7,9,17

Slack v. McDaniel, 529 U.S. 473, 484(2000)...............................22

Switzer v. Coan, 261 F.3d 985, 989(10th Cir. 2001).......................7

Trans. Exchange Corp. v. Worlds Largest Pearl, 457 Fed. Appx. 761, 763 (10th Cir. 2012).........................................................21

-iii-

TABLE OF AUTHORITIES (cont'd)

U.S. v. Armstrong, 517 U.S. 456, 464(1996)............................3,19

U.S. v. Baker, 718 F.3d 1204, 1207(10th Cir. 2013)........................18

U.S. v. Buck, 281 F.3d 1336, 1343(10th Cir. 2002)...................5,6,7,8,9

U.S. v. Chon, 512 Fed. Appx. 855, 858(10th Cir. 2013)....................21

U.S. v. Deberry, 430 F.3d 1294, 1300(10th Cir. 2005)......................4

U.S. v. Damato, 672 F.3d 832, 838(10th Cir. 2013).......................8,18

U.S. v. Plesinski, 912 F.2d 1033, 1038(9th Cir. 1990)....................3

U.S. v. Pullman, 748 F.3d 967, 970(10th Cir. 2014)........................5

U.S. v. Springer, 875 F.3d 968, 972(10th Cir. 2017)......................21

U.S. v. Weeks, 653 F.3d 1188, 1200(10th Cir. 2011)....................10,18

U.S. v. Williams, 790 F.3d 1059, 1066(10th Cir. 2015)...............5,6,19

Vance v. U.S., 60 Fed. Appx. 236, 239(10th Cir. 2003)....................7

Weese v. Shukman, 98 F.3d 542, 549(10th Cir. 1996).......................18

Wilkin v. Sunbeem Corp., 466 F.2d 714, 717(10th Cir. 1972)...............19

Workman v. Bell, 484 F.3d 387, 840(n.1)(6th Cir. 2007)...................7

Zurich N. Am. v. Matrix Serv., 426 F.3d 1281, 1289(10th Cir. 2005)........8

STATUTES INVOLVED

5 U.S.C. § 3331...............................................11,12

         § 3345(a)(1)...............................4,11,12,13,14,16

         § 3346....................................................11,12,13

18 U.S.C. § 3006A.............................................20,22

28 U.S.C. § 503....................................................11

         § 515(a)..............................................4,12,14

         § 542(a)...........................................11,12,13,14,17

         § 543(a)..............................................11,12

         § 544..................................................11,13

-iv-

## STATUTES INVOLVED (cont'd)

28 U.S.C. § 546(a)..................................................... 4,13,15,16

§ 546(d)...............................................................16

§ 1291.................................................................21

§ 2253(c)..............................................................21

§ 2255............................1,3,5,10,14,15,17,18,19,20,21,22

§ 2255(d)..............................................................21

§ 2255(h)..............................................................22

## FEDERAL RULES

Federal Rules of Civil Procedures Rule 4(a).............................20

9(b)...............................7

52(a).............................8,9

59(e).............................1

60...............................17,21

60(b)..........................8,9,20

60(b)(6)..........................1

60(d)(3)...............................
..................................1,2,3,4,5,6,8,9,10,14,17,18,20,21,22

## REGULATIONS INVOLVED

28 CFR § 0.13(a).......................................................4,12,14

## CONSTITUTIONAL PROVISIONS INVOLVED

Article VI, Cl.3.......................................................12

MOTION TO RECONSIDER

Lindsey Kent Springer ("Springer") moves this Court pursuant to Rules 59(e) and 60(b)(6) of the Federal Rules of Civil Procedures ("FRCvP") for reconsideration of its Order denying Springer's FRCvP Rule 60(d)(3) application containing Ten Fraud on the § 2255 Court claims, Doc. 645, and its final judgment, Doc. 646, dated June 22, 2018.

Springer requests the Court reconsider and (1) allow discovery on all facts in dispute; (2) hold an evidentiary hearing to resolve each fact in dispute; (3) make findings of facts on each of the Ten Fraud Claims at issue in Springer's Rule 60(d)(3) application; (4) make separate specific conclusions of law as to each of the Ten Fraud Claims; (5) appoint counsel to assist Springer in discovery, the evidentiary hearing, and to help prepare the record for appeal purposes, and in consideration of the undisputed fact Springer is a Federal Prisoner greatly restricted and where the fact witnesses are the attorneys presently representing the United States of America in these Rule 60(d)(3) proceedings; (6) find the Certificate of Appealability ("COA") standard does not apply to appeals denying Rule 60(d)(3) proceedings; and (7) alternatively, issue a COA as to each issue presented by Springer's Rule 60(d)(3) application and reply, and to the issues raised in the motion herein, as jurists of reason would debate whether this Court's order complies with the rules governing Rule 60(d)(3) proceedings, as listed above, and whether it applied the correct standard, or any standard, in arriving at its Order, Doc. 645, and Judgment. Doc. 646.

1.  The facts in dispute warrant discovery.

In this Court's Order, Doc. 645, it makes no finding of facts or conclusions of law, and states:

1

"To the extent that Mr. Springer's briefs request additional discovery ...those requests are denied."
Doc. 645, p.3.

First, Springer has never had any discovery so concluding Springer is requesting "additional discovery" is clearly an erroneous assessment of the previous procedure. Springer's application, Doc. 625, p. 22, clearly directs this Court's attention to the undisputed fact it "has never made an inquiry into the appointments and authorizations purported by" O'Meilia, Woodward, O'Reilly, and Snoke. No discovery has ever been allowed and the evidence Springer referenced, Doc. 627, was obtained under the Freedom of Information Act ("FOIA") from the United States Department of Justice, Tax Division ("USDPJTD"), the Executive Office for United States Attorneys ("EOUSA"), and the National Personnel Records Center ("NPRC"). See Doc. 528.

Though this Court characterizes Springer's application as a motion challenging the Court's August 22, 2014 Judgment, Springer's instant application also seeks reconsideration of several orders including the Court's Order denying discovery "on appointments to office of Woodward, O'Reilly, Gallant, and Snoke..." Doc. 625, p.23(citing Docs. 524 and 528).

Second, this Court explained it was holding Springer to a "demanding standard of proof." Doc. 645, p.2-3. Clearly, all the evidence that Charles A. O'Reilly ("O'Reilly"), Jeffrey A. Gallant ("Gallant"), Danny C. Williams, Sr. ("Williams"), and now R. Trent Shores ("Shores") purportedly have access to, in order to have declared what they did, must be in their personal possession. It should be no burden for them to have to provide to this Court, the public, and Springer, what they eyeballed in making the declarations they made on October 24, 2013, and now on April 10, 2018.

Clearly, Exhibits 2, 3, and 4, attached to Doc. 641's response, which

2

are not sworn or certified, were not available to the USDOJTD and EOUSA officers of the United States.  There is a presumption of legitimacy given to the official conduct of the USDOJTD and EOUSA when responding to Springer's Freedom of Information Act ("FOIA") requests.  <u>National Archives v. Favish</u>, 541 U.S. 157, 174(2004); See also <u>U.S. v. Armstrong</u>, 517 U.S. 456, 464(1996)("In the absence of clear evidence to the contrary, Courts presume that [Government Agents] have properly discharged their official duties [under FOIA]."

The Tenth Circuit in <u>Bulloch v. U.S.</u>, 763 F.2d 1115, 1121(10th Cir. 1985)(en banc), cited to <u>H.K. Porter Co., v. Goodyear Tire and Rubber Co.</u>, 536 F.2d 1115, 1119(6th Cir. 1976), which held the test is whether the Court "abused its discretion in holding that no evidentiary basis was shown warranting **further** discovery."

In <u>H.K. Porter</u>, the Sixth Circuit found Goodyear Tire had been allowed "extensive discovery" in the original proceeding, Id., yet Springer has been given no discovery whatsoever.

The "greatest legal engine ever invented for the discovery of truth," <u>California v. Green</u>, 399 U.S. 149, 158(1970), provides that witnesses are subject to cross examination.

In these Rule 60(d)(3) proceedings, as during the § 2255 proceedings, O'Reilly, Gallant, Williams, and now Shores, are the sole witnesses as to whether O'Reilly, Kenneth P. Snoke ("Snoke"), or Thomas Scott Woodward ("Woodward"), held Appointments Clause appointments to the offices of the United States they declared to hold.  There must be at least one proper representative of the United States for criminal proceedings to properly provide the Court with original jurisdiction.  <u>U.S. v. Plesinski</u>, 912 F.2d 1033, 1038(9th Cir. 1990)(only case cited in Doc. 641's response).

"Attorneys are officers of the Court, and when they address the judge solemnly upon a matter [such as whether any of them are properly appointed to the office they purport to hold Appointments Clause appointment to] before the court, their declarations are virtually made under oath." U.S. v. Deberry, 430 F.3d 1294, 1300(10th Cir. 2005)(quoting Holloway v. Arkansas, 435 U.S. 475, 486(1978).

As Springer's uncontroverted Rule 60(d)(3) application asserts, the witness/attorneys declared that Woodward held Appointments Clause appointment to, and taken the oath of office to, the inferior office of Assistant United States Attorney ("AUSA") for the Northern District of Oklahoma ("NDOK") prior to June 28, 2009 through January 21, 2010, qualified as the Acting United States Attorney("Acting USA") under 5 U.S.C. § 3345(a)(1) between June 28, 2009 through January 21, 2010, and received appointment as the United States Attorney ("USA") for the NDOK from Attorney General Eric Holder, Jr., on January 21, 2010, pursuant to 28 U.S.C. § 546(a).

Springer's uncontroverted application also asserts that the witness/ attorneys declared that Snoke held Appointments Clause appointment to, and taken the oath of office to, the inferior office of AUSA for the NDOK, which was continuing between June 28, 2009 through July, 2010.

Springer's application also asserts that the witness/attorneys declared that O'Reilly held Appointments Clause appointments to, and taken the oath of office to, the inferior office of Special Assistant United States Attorney ("SAUSA") for the NDOK, between January 5, 2009 through at least April 28, 2010, and was also authorized by John A. Marrella ("Marrella") to prosecute Springer for Tax and related offenses, pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a), pursuant to letter dated December 23, 2008.

4

These witness/attorney declarations were made during Springer's § 2255 proceedings and influenced the Court's decision involving Grounds One and Two of Springer's § 2255 Motion.

On April 10, 2018, O'Reilly, Gallant, and now Shores, reaffirmed that the evidence they possessed showed each of them that Woodward, Snoke, and O'Reilly were appointed, qualified, and were authorized, as declared on October 24, 2013.  Doc. 641, p.3-6.

In U.S. v. Buck, 281 F.3d 1336, 1343(10th Cir. 2002), a fraud on the Court Rule 60 motion, discovery had been allowed in the original proceedings and also given a hearing on the fraud on the court claims.

As this Court is most definitely aware, Rule 60(d)(3) proceedings are to be adversarial proceedings, Bulloch, 763 F.2d at 1121, which includes discovery and a hearing on disputed facts.

Springer clearly met the standard for alleging fraud on the court, supported with 27 Exhibits obtained from the USDOJTD and EOUSA while Springer has remained incarcerated, for which may have been summarily disputed by a few sentences, see Doc. 641, p.3-6, but never controverted by proper evidence.

In a Rule 60(d)(3) application, the initial burden is to show that the alleged false statements of the witness/attorneys had "improperly forstalled discovery in the § 2255 proceedings."  In Re Pickard, 681 F.3d 1201, 1207 (10th Cir. 2012).

In U.S. v. Williams, 790 F.3d 1059, 1066(10th Cir. 2015), the Tenth Circuit found that Williams received discovery, an evidentiary hearing, and appointment of Counsel on his Rule 60(d)(3) motion.  Springer is required to show "conscious wrong doing."  Robinson v. Audi, 56 F.3d 1259, 1267(10th Cir. 1995). "Since attorneys are officers of the Court, their conduct, if

5

dishonest, would constitute fraud on the court." Kupferman v. Consolidated Research & MFG Corp. 459 F.2d 1072, 1078(2nd Cir. 1972)

O'Reilly, Gallant, Williams, and now Shores, have represented to this Court and Springer certain facts in their personal knowledge and represent-ation, apparently not available from the USDOJTD or EOUSA, refuse to provide any information for the source of Exhibits 2, 3, and 4, or their knowledge in regard to the appointments and oaths of Woodward, Snoke, Marrella, and upon scrutinizing Exhibits 2, 3, and 4, who "RAC" is (Exhibit 2), his auth-ority to sign the name of Marrella, and the purported delegation of authority from Attorney General Michael B. Mukasey ("Mukasey") to David E. O'Meilia ("O'Meilia") as of January 5, 2009 (Exhibit 3) and from Attorney General Eric Holder, Jr. ("Holder") to Woodward on January 4, 2010 as Acting USA for the NDOK. Doc. 641, p. 3-6.

This Court should reconsider and allow Springer to conduct discovery on the disputed facts involving Springer's Ten Fraud Claims and the Four Exhibits attached to Doc. 641.

2.   An evidentiary hearing is warranted on all facts in dispute to enable the court to make proper findings of facts and conclusions of law in deciding Springer's Rule 60(d)(3) application.

In Buck, 281 F.3d at 1343, the Court held an evidentiary hearing on the Rule 60(d)(3) claims of fraud on the court to make appropriate findings of facts and correct conclusions of law.  See same in Bulloch, 763 F.2d at 1121, and Williams, 790 F.3d at 1066.

This Court made no findings of facts or conclusions of law with respect to each of Springer's Ten Fraud Claims, or Springer's objections to Exhibits 2, 3, and 4 of Doc. 641.

Fraud on the Court claims require the allegations to be plead with

"strict specificity." <u>Switzer v. Coan</u>, 261 F.3d 985, 989(10th Cir. 2001);
See <u>Vance v. U.S.</u>, 60 Fed. Appx. 236, 239(10th Cir. 2003)(unpublished)(citing
<u>Buck</u>, 281 F.3d at 1341 and FRCvP Rule 9(b)(finding fraud on the court "must
be pleaded with particularity").

The elements of fraud on the court are:

1) that the frauds are alleged against officers of the Court;

2) that the frauds alleged were directed at the judicial machinery
   itself;

3) that the frauds alleged were intentionally false, willfully blind
   to the truth, or is in reckless disregard for the truth;

4) that the acts alleged to be fraudulent are a positive averment or
   a concealment when officers of the court are under a duty to disclose
   the truth;

5) that such acts deceived the Court.

<u>Workman v. Bell</u>, 484 F.3d 837, 840(n.1)(6th Cir. 2007)

To show "conscious wrong doing," <u>Robinson</u>, 56 F.3d at 1267, Springer
needs an evidentiary hearing to show the intent of O'Reilly, Gallant, Williams,
and now Shores, on the facts that are clearly in dispute.

Springer easily satisfies the heavy burden at the pleading stage showing
all 5 elements of fraud on the court listed above.

If there was any doubt as to the intent of O'Reilly, Gallant, and Williams,
that has been proven by Doc. 641 and the affirming nature of the arguments made
by O'Reilly, Gallant, and now Shores on April 10, 2018.

The facts alleged by Springer are either uncontroverted with any evidence,
or recklessly controverted, requiring discovery, an evidentiary hearing, the
appointment of counsel, and findings of facts and conclusions of law.

Springer requests the Court reconsider its denial of an evidentiary hear-
ing and enter an order for an evidentiary hearing after discovery has been
completed.

7

3.  This Court should proceed to make findings of facts as to the uncontr-
    averted facts as well as those in dispute or controverted.

   A.  First, the Court is required to make specific findings of facts.

      (i)  Springer, the public, and the reviewing Court need specific
     findings of facts to determine the issues for appeal.

         (a)  The standard of review.

It is clear the Tenth Circuit reviews denial of a Rule 60(d)(3) appli-

cation for an abuse of discretion.  Buck, 281 F.3d at 1342-43[discussing

former Rule 60(b)].  A district court's discretion is abused "when it renders

a judgment that is arbitrary, capricious, whimsical, or manifestly unreason-

able.  U.S. v. Damato, 672 F.3d 832, 838(10th Cir. 2013)  A "clearly erroneous

assessment of the evidence qualifies as an  atypical abuse of discretion."

FDIC v. United Pac. Ins. Co., 152 F.3d 1266, 1272(10th Cir. 1998)(citing

Zurich N. Am. v. Matrix Serv., 426 F.3d 1281, 1289(10th Cir. 2005))

A finding of fact is "clearly erroneous" if it is without factual supp-

ort in the record.  U.S. v. Pullman, 748 F.3d 967, 970(10th Cir. 2014). An

insufficiency of the evidence finding is a legal question which is reviewed

de novo.  Douglas v. Workman, 560 F.3d 1156, 1182(10th Cir. 2009) Sufficiency

of the evidence is a mixed question of law and fact.  Maynard v. Boone, 468

F.3d 665, 673(10th Cir. 2006).

The question then is whether the facts found are correct and whether

the law was properly applied to those facts.  Brown v. Sirmons, 515 F.3d 1072,

1089(10th Cir. 2008).

But, neither Springer, the public, or the Tenth Circuit would be able to

make these reviewing standards where no findings of facts were made to judge

their correctness.

   B.  FRCvP Rule 52(a) applies to Rule 60(d)(3) applications requiring
    findings of facts for specific purposes.

To begin, the Tenth Circuit applies FRCvP Rule 52(a) to fraud on the court proceedings under FRCvP Rule 60(d)(3). <u>Robinson</u>, 56 F.3d at 1268 [applying former Rule 60(b) fraud on the court claims to Rule 52(a)].

FRCvP Rule 52(a) reads in relevant part:

"(i) In General.  In an action tried on the facts without a jury... the Court must find the facts specifically and state its conclusions of law separately."

In <u>Buck</u>, 281 F.3d at 1342, the Tenth Circuit held the district court in fraud on the court proceedings treats the claims as both an "independent action" and "a pleading invoking the Court's inherent power to grant relief for fraud upon the court."  This Court has referred to Springer's Doc. 625 as both an application and motion interchangeably.

Findings of facts "aid[s] the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court, to make definite what is decided in order to apply the doctrine of estoppel and res judicata to future cases, and to evoke care on the part of the trial judge in considering and adjudicating the facts in dispute."  <u>Featherstone v. Barash</u>, 345 F.2d 246, 249(10th Cir. 1965)

"And when findings wholly fail to resolve in any meaningful way the basic issues of fact in dispute, they become **clearly** insufficient to permit the reviewing court to decide the case at all, except to remand it for proper findings by the trial court." Id. at 250.

"Findings of facts satisfy Rule 52(a)...if they afford the reviewing court a **clear** understanding of the factual basis for the trial court's dec- ision." <u>Rich Dad Operating Co., LLC., v. Zubrod</u>, 652 Fed. Appx. 625, 631 (10th Cir. 2016)(unpublished)(quoting <u>Bell v. A.T. & T.</u>, 946 F.2d 1507, 1510 (10th Cir. 1991).  The Court must state its legal basis upon which it eval- uated the evidence.  <u>Anderson v. Albuquerque</u>, 690 F.2d 796, 803(10th Cir.

1982).  The Court's findings must be "clear, definite, and concise language [on] the contested issue or issues in the case."  Featherstone, 345 F.2d at 250.  A material fact is one that is capable of affecting the outcome of the litigation.  Anderson v. Liberty Lobby, 477 U.S. 242, 248(1986)

In addition, the Ten Fraud Claims Springer raised in his True Rule 60(d)(3) application are alleged as part of a scheme to prevent the § 2255 Court from performing its judicial functions in a § 2255 proceeding where Congress requires the Court to "grant a prompt hearing thereon, determine the issues and make findings of facts and conlcusions of law with respect thereto."  U.S. v. Weeks, 653 F.3d 1188, 1200(10th Cir. 2011).

"To be sure, the requirement for cancassing the whole record in order to ascertain substantiality does not furnish a calculous of value by which a reviewing court can assess the evidence."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488(1951)

This Court did not make findings of facts and every jurist to have considered a Rule 60(d)(3) application, by motion or independent action, has made findings of facts specifically.

The Court should reconsider its decision not to make specific findings of facts as to each of the Ten Fraud claims, and the dispute over Exhibits 2, 3, and 4, by Springer's Reply, Docs. 625, 642, and make specific findings of facts for Springer to obtain meaningful appellate review (after discovery and evidentiary hearing or otherwise).

C.  The facts uncontroverted but not specifically found by the Court yet.

The uncontroverted facts are as follows:

1.  No Federal Statute establishes an office of SAUSA authorizing a sitting USA for the NDOK to appoint or fill such office. Doc. 625, p.15

2.  There is no Federal Statute that establishes the executive office

10

of "Trial Attorney" in the Department of Justice or under the control of the
Attorney General properly then in office. Doc. 626; Doc. 642, p.2.

3.   The Statute establishing the office of Attorney General, 28 U.S.C.
§ 503, the office of AUSA, 28 U.S.C. § 542(a), and the office of SAUSA, 28
U.S.C. § 543, do not identify a term of office for such person properly
appointed. Doc. 625, p. 1, 8-9; Doc. 626, p.14-15; Doc. 642, p.6.

4.   There is no Federal Statute establishing an office in the USDOJTD
entitled Deputy Assistant Attorney General, Tax Division. Doc. 626, p.13-14.

5.   In order for an AUSA to qualify as Acting USA for the NDOK such
person must currently hold an appointment under 28 U.S.C. § 542(a), be des-
ignated as the First AUSA by the outgoing USA, see 5 U.S.C. § 3345(a)(1),
and is authorized by § 3345(a)(1) to Act as the USA for no more than 210
days. See 5 U.S.C. § 3346. Doc. 626, p.15-16; Doc. 642, p.8.

6.   28 U.S.C. §§ 542(a) and 543(a) require the appointment to office be
made by the Attorney General. Doc. 626, p.14-16.

7.   Under 28 U.S.C. §§ 503, 542, and 543, the term of office is only
that of the appointing officer.  Doc. 625, p.15; Doc. 626, p. 12-13.

8.   The office of Attorney General is filled by appointment of the
President of the United States and the term of the Attorney General is that
of the President who appointed him or her. Doc. 626, p.12-14.

9.   Before taking the office for which they are appointed, each AUSA,
SAUSA, and USA(including Acting USA), are required to sign an oath to that
particular office under 28 U.S.C. § 544. Doc. 626, p.17.

10.   Trial Attorneys, as federal employees, are required to take the oath
pursuant to 5 U.S.C. § 3331.

11.   All executive officers of the United States are required to take an

11

an oath to support and defend the Constitution.  Article VI, Cl.3.

12.  Marrella was not a Deputy Assistant Attorney General, Tax Division ("DAAGTD"), on or around December 23, 2008.  Doc. 625, p.11 and Doc. 627, Exhibits 9-11.

13.  Marrella did not sign the December 23, 2008 letter marked as Exhibit 2 attached to Doc. 641.  Doc. 642, p.2.

14.  Springer is not named in the December 23, 2008 letter.  Doc. 642, p.2.

15.  The December 23, 2008 letter, marked as Exhibit 2 to Doc. 641, lists no tax offenses, tax years, or tax liabilities, for which are purported to be authorized for criminal prosecution.  Doc. 642, p.2.

16.  The December 23, 2008 letter, marked as Exhibit 2 to Doc. 641, is signed by the person with initials "RAC."  Doc. 642, p.2.

17.  RAC does not stand for Marrella as a DAAGTD.  Doc. 642, p.2.

18.  RAC stands for Ronald Cimino.  Doc. 642, p.2.

19.  Ronald Cimino is not authorized under 28 U.S.C. § 515(a) and 28 CFR § 0.13(a) to authorize O'Reilly to prosecute Springer for Tax and related offenses in the Northern District of Oklahoma.  Doc. 642, p.2.

20.  O'Reilly never took the oath under 5 U.S.C. § 3331 as a Trial Attorney.  Doc. 642, p.3.

21.  On January 5, 2009, the Attorney General was Mukasey.  Doc. 642, p.2.

22.  On January 5, 2009, the USA for the NDOK was O'Meilia.  Doc. 641, Exhibit 3.

23.  As of January 5, 2009, Attorney General Mukasey did not delegate his statutory authority to appoint AUSAs and SAUSAs to O'Meilia under 28 U.S.C. §§ 542 and 543.  Doc. 642, p.4-5.

24.  Mukasey's term of office as Attorney General ended on January 20, 2009.  Doc. 642, p.3.

25.  O'Meilia resigned as the NDOK USA on June 28, 2009.  Doc. 641, p.6.

26.  Beginning March 10, 2009, Snoke represented to this Court, the public, and Springer, that he held a current appointment as an AUSA in the NDOK.  Doc. 2. p.14.

27.  Beginning March 10, 2009, O'Reilly represented to this Court, the public, and Springer, that he was an officer of the United States appointed to the office of Trial Attorney.  Doc. 2, p. 14.

28.  Upon O'Meilia's June 28, 2009 resignation, Snoke continued to represent himself as an AUSA and  O'Reilly changed his officer of the United States title to SAUSA for the NDOK. Doc. 100.

29.  As of June 28, 2009, Woodward represented to this Court, the public, and Springer, that he held a current appointment as an AUSA in the NDOK, was designated under 5 U.S.C. § 3345(a)(1) as outgoing O'Meilia's First AUSA, and qualified as the NDOK Acting USA under § 3345(a)(1) for 210 days under 5 U.S.C. § 3346.  Doc. 100(for example); Doc. 641, p.6.

30.  Woodward did not qualify under 5 U.S.C. § 3345(a)(1) where he currently held no appointment, as an AUSA for the NDOK, was not designated as O'Meilia's First AUSA under § 3345(a)(1), had taken no oath of office under 28 U.S.C. § 544 for the office of AUSA or Acting USA, and otherwise did not qualify as Acting USA under § 3345(a)(1). Doc. 625, p.17-18 and Doc. 627, Exhibit 17, p.4.

31.  Between June 28, 2009 through January 21, 2010, Woodward represented to this Court, the Public, and Springer, that he was lawfully qualified as the NDOK Acting USA.  Doc. 625, p.17; Doc. 627, Exhibit 7, p.2; Doc. 641, p.6.

32.  On January 27, 2010, Woodward, Snoke, and O'Reilly declared to this Court, the public, and Springer, that on January 21, 2010, Attorney General Holder appointed Woodward under 28 U.S.C. § 546(a) to the office of USA for the NDOK for a term of 120 days.  Doc. 625, p.20; Doc. 627, Exhibit 20, p.1.

1 3

33.  On January 4, 2010, Woodward, in his purported capacity as Acting USA for the NDOK under 28 U.S.C. § 542(a) and 5 U.S.C. § 3345(a)(1), signed a letter extending the January 5, 2009 letter signed by O'Meilia for 1-year. Doc. 641, p.5-6 and Exhibits 3 and 4.

34.  On January 21, 2010, Woodward's term under § 3345(a)(1) terminated. Doc. 625, p. 20; Doc. 627, Exhibit 7, p.2.

35.  Springer was sentenced on April 23, 2010 with formal judgment being entered on April 28, 2010. Doc. 337.

36.  On March 4, 2013, Springer timely filed a § 2255 Motion with Grounds One and Two relevant to this Rule 60(d)(3) proceedings. Docs. 472-475.

37.  On September 9, 2013, O'Reilly, Gallant, and Williams, filed a Court ordered response to Springer's § 2255 Motion. Doc. 518.

38.  On October 7, 2013, Springer moved to strike Doc. 518, see Doc. 522, and moved for limited discovery on the appointments to office of O'Reilly, Woodward, and Snoke, during district court proceedings relevant to Grounds One and Two of Springer's § 2255 Motion. Doc. 524.

39.  On October 24, 2013, O'Reilly, Gallant, and Williams declared, as personal witnesses, that O'Reilly was authorized to prosecute Springer for Tax and related offenses, by letter dated December 23, 2008, signed by Marrella under 28 U.S.C. § 515(a) and 28 CFR § 0.13(a). Doc. 525, p.2.

40.  On October 24, 2013, O'Reilly, Gallant, and Williams declared, in opposing discovery of the appointment records for O'Reilly, Woodward, and Snoke, that each of them were properly appointed to office and discovery was unnecessary.  Doc. 526, p.1-2.

41.  This Court denied Springer leave to reply and denied Springer's Motions.  Doc. 528.

42.  On January 17, 2014, Williams declared that Woodward was an AUSA

for the NDOK prior to March 3, 2009, O'Meilia's First AUSA as of March 3, 2009, and qualified as Acting USA for the NDOK beginning June 28, 2009 upon the resignation of O'Meilia. Doc. 625, p.17; Doc. 627, Exhibit 7, p.2.

43.   Williams also declared to the Court, public, and Springer, that Attorney General Holder appointed Woodward under 28 U.S.C. § 546(a) on January 25, 2010.  Doc. 625, p.10; doc. 627, Exhibit 7, p.2.

44.   On March 4, 2014, this Court rejected Springer's Ground One and Two of his § 2255 Motion.  Doc. 537, p.6-7.

45.   On March 25, 2015, Springer requested from the USDOJTD for all records of appointment naming Marrella to the office of DAAGTD between January 1, 2008 through January 1, 2013, and on July 17, 2015, the USDOJTD responded informing Springer they possessed no records showing Marrella ever held appointment or the position of DAAGTD nor any oath to such office or position. Doc. 625, p. 10-11; Doc. 627, Exhibit 8,9,10,11.

46.   The Office of Information Policy ("OIP") affirmed the USDOJTD by letter dated September 11, 2015.  Doc. 625, p.11; Doc. 627, Exhibit 11.

47.   On March 25, 2015, Springer requested to the USDOJTD for all records of appointment for O'Reilly as a Trial Attorney or SAUSA between December 1, 2008 to January 1, 2015 and on july 21, 2015, the USDOJTD responded with finding only TWO records in O'Reilly's personnel file. Doc. 625, p.12; Doc. 627, Exhibit 13-14.

48.   The only TWO records were a 1992 oath taken as a Law Clerk and a 1993 notification of personnel action. Doc. 625, p.12; Doc. 627, Exhibit 14.

49.   The USDOJTD located no records showing Marrella authorized O'Reilly on December 23, 2008 to prosecute Springer pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a).  Doc. 625, p.12; Doc. 627, Exhibit 13.

50.   On December 31, 2014, Springer requested from Williams all records

15

of appointment naming O'Reilly as an SAUSA between December 1, 2008 through January 1, 2015 and on July 23, 2015, EOUSA responded locating no such records. Doc. 625, p. 13; Doc. 627, Exhibit 17, p.1.

51. On July 29, 2015, EOUSA supplemented their July 23, 2015 response with a January 5, 2009 oath naming O'Reilly and signed the same day. Doc. 625, p. 13-14; Doc. 627, Exhibit 18.

52. On July 30, 2015, under the penalty of perjury, Ms. Richardson declared she searched every place such appointment records would be located and found no records for O'Reilly other than the January 5, 2009 oath. Doc. 625, p.14-15; Doc. 627, Exhibit 19, p.3-5.

53. On December 31, 2014, Springer requested from Williams all records of appointment naming Woodward as an AUSA between January 1, 2009 through January 1, 2013. Doc. 625, p.18; Doc. 627, Exhibit 23.

54. Springer also requested from Williams the records showing O'Meilia designated Woodward as his First AUSA under § 3345(a) between January 1, 2009 through January 28, 2009. Doc. 625, p.17; Doc. 627, Exhibit 22.

55. On July 23, 2015, EOUSA responded finding only an Oath taken by Woodward on May 25, 2010 as USA under 28 U.S.C. § 546(d). Doc. 625, p.18; Doc. 627, Exhibit 17, p.4.

56. Ms. Richardson conducted the search for EOUSA and Williams. Doc. 625, p.18; Doc. 627, Exhibit 19, p.2.

57. On December 31, 2014, Springer requested from Williams all records of appointment naming Woodward as the NDOK USA under 28 U.S.C. § 546(a). Doc. 625, p.20; Doc. 627, Exhibit 23.

58. On July 23, 2015, EOUSA responded finding no such § 546(a) appointment. Doc. 625, p.21; Doc. 627, Exhibit 19, p.3-5.

59. On December 31, 2014, Springer requested from Williams all records

16

of appointment naming Snoke as an AUSA between January 1, 2008 through January 1, 2011. <u>Doc. 625, p.21; Doc. 627, Exhibit 24</u>.

60. On July 23, 2015, EOUSA responded finding no such § 542(a) appointment. <u>Doc. 625, p.21; Doc. 627, Exhibit 19, p.3-5; Doc. 642, Exhibit 27, p.4</u>.

61. On February 26, 2016, Springer requested from the National Personnel Record Center ("NPRC") for all appointment records naming Snoke as an AUSA between January 20, 2001 through July, 2010. <u>Doc. 625, p.22; Doc. 627, Exhibit 25</u>.

62. On March 24, 2016, NPRC responded they were unable to locate any appointment records for Snoke. <u>Doc. 625, p.22; Doc. 627, Exhibit 26, p.1</u>.

63. On April 10, 2018, O'Reilly, Gallant, and now Shores, responded to Springer's Rule 60(d)(3) application affirming the declarations made on October 24, 2013 were intentional and within their personal knowledge. Doc. 641 and Exhibit 2, 3, and 4.

This Court should reconsider its Order and Judgment dated June 22, 2018 and make findings of facts consistent with the aforementioned list of 63 uncontroverted facts.

4. <u>After ascertaining all the Facts, this Court should make specific conclusions of law</u>.

Insufficiency of the evidence is a legal question which is reviewed de novo. <u>Douglas</u>, 560 F.3d at 1182. Sufficiency of the evidence is a mixed question of law and fact. <u>Maynard</u>, 468 F.3d at 673. Whether the law was applied correctly is the question. <u>Brown</u>, 515 F.3d at 1089. FRCvP Rule 52(a) also requires conclusions of law, <u>Robinson</u>, 56 F.3d at 1268, including in a fraud on the court proceeding under Rule 60. The Court must state its legal basis upon which it evaluated the evidence. <u>Anderson</u>, 690 F.2d at 803. In § 2255 proceedings, for which Springer's Ten Fraud claims sought to restore,

required conclusions of law. Weeks, 653 F.3d at 1200. A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable. Damato, 672 F.3d at 838. An erroneous view of the law is an abuse of discretion. FDIC, 152 F.3d at 1272. Issues of law are reviewed de novo. Weese v. Shukman, 98 F.3d 542, 549(10th Cir. 1996).

The Court cites four cases in total to resolve all Ten of Springer's Fraud claims and Springer's objections to Doc. 641's Exhibits 2, 3, and 4.

Besides citing to U.S. v. Baker, 718 F.3d 1204, 1207(10th Cir. 2013), which was found to be a second or successive § 2255 Motion case, the Court cites Two Supreme Court decisions regarding the COA requirements and one Federal Case in New York that the Court points to suggesting Rule 60(d)(3) application decisions require a COA. Doc. 645.

A. The Court did not give the evidence presented by Springer from the USDOJTD and EOUSA the presumption of legitimacy required at this stage of the Rule 60(d)(3) proceedings.

The Court's order failed to give the evidence presented by Springer the weight it deserved from the USDOJTD and EOUSA:

"The government's response brief explains why certain of the FOIA responses are not material, and goes on to submit its own documents."

Doc. 645, p.2.

These "documents" are Exhibits 2, 3, and 4 and only involve O'Reilly never controverting the evidence involving Woodward, Snoke, or Marrella.

The only thing caused by Exhibits 2, 3, and 4, is that there is a genuine dispute of fact between the three Exhibits attached to Doc. 641 and those legitimate records provide to Springer from the USDOJTD and EOUSA.

There is a presumption of legitimacy the Court is required to give to the official conduct of the USDOJTD and EOUSA in response to Springer's

FOIA requests.  National Archives, 541 U.S. at 174; Armstrong, 517 U.S. at 464.

This Court's order expresses no conclusions of law as to the weight it gave the official records of the USDOJTX and EOUSA for which O'Reilly, Gallant, and Shores, argued the USDOJTD was the appropriate location of O'Reilly's personnel file.  Each of the FOIA records provided to this Court by Springer, which took years to obtain, are signed under the official names of those for whom the presumption of legitimacy must be given controlling weight at this stage.

This Court should reconsider its Order and Judgment and, after finding the facts both in dispute and not, make specific conclusions of law in regard to those facts it finds.

5.   Springer needs appointment of counsel in these proceedings.

The Court Order dated June 22, 2018 denied Springer appointment of counsel based upon its finding Springer is an "experienced and capable pro-se litigant."  Springer is unable to locate the standard for the Court's label.

However, this Court clearly is aware these proceedings involve fraud on the Court during Springer's § 2255 proceedings and Springer has been in prison now more than 8 years.  Springer was recently appointed in 2017, under the CJA, counsel to assist in 15-5109 (an order appealed from this Court and case).

Fraud is a nebulous concept.  Wilkin v. Sunbeem Corp., 466 F.2d 714, 717 (10th Cir. 1972).  This Court placed the demanding standard of proof into these proceedings. Doc. 645, p.2.  Other litigants in the NDOK have been appointed CJA counsel when fraud on the court proceedings are at issue. Williams, 790 F.3d at 1066.  Springer demonstrated enormous official records obtained on his own but could use help to fully prosecute the Ten Fraud on the Court claims for which the instant Motion seeks reconsideration to address.

19

The Court may apopint counsel under the CJA when "the interest of justice so requires." 18 U.S.C. 3006(A)(a)(2)(B).  The interest of justice is triggered unless the issues are not complex legally or factually and the merits do not appear colorable.  Endberg v. Wyoming, 265 F.3d 1109, 1122(10th Cir. 2001)

Springer has endured numerous procedural block attempts by O'Reilly, Gallant, Williams, and now Shores, and the stage for appeal and reconsideration are complex and Springer needs the help.  One of the problems is that this Court is allowing the fact witnesses, and the Court that was defrauded, to speak on behalf of their personal knowledge through the purported representation of the United States of America.  These attorneys should have to present the source of their knowledge on all Ten Frauds, and respond to Springer's objections to Exhibits 2, 3, and 4.  Doc. 625; Doc. 642.

This Court should reconsider its Order and Judgment not to appoint Springer Counsel under the CJA and appoint Springer Counsel for the remainder of these Rule 60(d)(3) proceedings and appeal.

6.  <u>Springer contends the COA standard does not apply to True Rule 60(d)(3) proceedings when the Court denies the application.</u>

Of the Four cases cited by the Court in its Order, Doc. 645, Three of them involve the COA standard applicable to final orders on § 2255 Motions.

The "AEDPA did not expressly circumscribe the operation of Rule 60(b)." Gonzales v. Crosby, 545 U.S. 524, 529(2005).  Fraud on the Court is one example of a defect in the integrity of § 2255 proceedings.

The Supreme Court long ago held that "[A] timely appeal may be taken under Fed. Rule App. Proc. 4(a) from a ruling on a Rule 60(b) motion." Browder v. Director, Ill. Dept. of Corr., 434 U.S. 257, 263 and n.7(1978)

"The Court of Appeals may review the ruling only for abuse of discretion however, and an appeal from denial of Rule 60(b) relief **does not bring up**

20

the underlying judgment for review." Id.; see also Morris v. Adams-Millis Corp., 758 F.2d 1352, 1357(10th Cir. 1985)(quoting Browder); and see Trans Exchange Corp. v. Worlds Largest Pearl Co. 457 Fed. Appx. 761, 763(10th Cir. 2012(unpublished)(citing Browder).

There is no question the Order, Doc. 645, and Judgment, Doc. 646, are final appealable orders under 28 U.S.C. § 1291.

In U.S. v. Chon, 512 Fed. Appx. 855 (10th Cir. 2013), the Court compared a Rule 60(b)[after 2007 changes that moved fraud on the court to Rule 60(d)(3)] and held it could find no case on whether the AEDPA applies to such claims made under fraud on the Court via Rule 60(d)(3). Id. at 858.

In Lee v. Brown, 2013 U.S. Dist. Lexis 152576(N.D. GA, 2013), the Court held a COA is unnecessary in Rule 60(d) proceedings.  In every case dealing with Rule 60 that require a COA, the appellant is having to appeal whether his Rule 60 claims are Second or Successive § 2255 claims in disguise. Chon, 512 Fed. Appx. at 858; see Baker, 718 F.3d at 1206; U.S. v. Springer, 875 F.3d 968, 972(10th Cir. 2017).

It is inconsistent to treat Rule 60(d)(3) applications as not § 2255 motions but yet subject to COA under 28 U.S.C. § 2253(c).  Browder holds that the § 2255 judgment cannot be addressed but only the denial of the Rule 60(d)(3) application.

28 U.S.C. § 2255(d), which follows if a COA is applicable and granted, allows an appeal "from the order entered on the [§ 2255] motion from the final judgment on application for a writ of habeas corpus."

Springer requests this Court reconsider its decision that a COA is required for Springer to appeal its June 22, 2018 Order and Judgment, and find consistent with Browder, the other cases cited above, and the language of § 2255(d), that Springer does not need a COA to appeal its final Order

21

and Judgment, Doc. 645, 646, on June 22, 2018.

Springer also requests this Court continue that decision as to any issue denied by its June 22, 2018 Order and Judgment that survives this Motion to Reconsider.

7.   <u>This Court should issue a COA, if it finds against Springer's argument above in ¶ 6, on each issue raised in this Motion, Springer's Rule 60-(d)(3) application, and Springer's objections in his Reply to Doc. 641 and its Exhibits.</u>

The Court denied Springer a COA in its Order and Judgment dated June 22, 2018.  Although the issues raised in Springer's Rule 60(d)(3) application, and objections to Doc. 641, see Doc. 642, do not and cannot raise constitutional claims under Rule 60(d)(3) without running afoul of 28 U.S.C. § 2255-(h), the Court found a COA may only issue if Springer can show that reasonable jurists would disagree as to the Court's resolution of constitutional claims and procedural rulings. Doc. 645, p.4.  See <u>Slack v. McDaniel</u>, 529 U.S. 473, 484(2000)

It is clearly debatable among jurists (1) whether the district court abused its discretion in denying Springer permission to conduct discovery; (2) whether the district court abused its discretion in denying Springer an evidentiary hearing on these complex issues; (3) whether the district court failed to make findings of facts and was required to; (4) whether the district court failed to make specific conclusions of law and was required to; (5) whether the district court abused its discretion on refusing to appoint Springer CJA counsel under 18 U.S.C. § 3006A; (6) whether a denial of a Rule 60(d)(3) application requires a COA to appeal when the Order and Judgment is not a final order on a § 2255 Motion.

Springer also asserts it is debatable among jurists whether the district court abused its discretion, and made an error of law, when it failed to give

22

Springer's evidence obtained from the USDOJTD and EOUSA the presumption of legitimacy.

Springer also asserts that reasonable jurists would debate whether the district court's resolution of Springer's Ten Fraud claims was decided wrongly.

Springer also asserts that reasonable jurists would debate whether the district court's handling of Springer's objections to O'Reilly, Gallant, and Shores' Exhibit 2, 3, and 4, attached to Doc. 641, was in error as raised in Springer's Reply. Doc. 642.

Springer also asserts that reasonable jurists would debate whether the district court should have denied O'Reilly, Gallant, and Shores' Motion to File their response out of time, and with extension, as requested by Springer in a timely manner.

Springer also asserts that reasonable jurists would debate whether the district court abused its discretion when it accepted the argument that a United States Attorney is authorized to appoint AUSAs and SAUSAs without any delegation from the Attorney General.

A.  The October 24, 2013 theory changed dramatically on April 10, 2018.

As Springer pointed out in his Reply, Doc. 641, the October, 2013 theory accepted by this Court on March 4, 2014, and again on August 22, 2014, was that O'Reilly's appointment came from USA O'Meilia on January 5, 2009, and O'Reilly's authority to prosecute Springer came independently from DAAGTD Marrella on December 23, 2008.  Doc. 627, Exhibit 1, p.2(Doc. 525, p.2).

In addition, Marrella, as a delegate of the Attorney General, it was declared, authorized O'Reilly to prosecute Springer under 28 U.S.C. § 515(a). Id.  Also, the October, 2013 theory declared an unnamed USA for the NDOK

23

extended the January 5, 2009 O'Meilia appointment for an additional year. Id.

After throwing the Kitchen Sink at Springer, the April 10, 2018 response advances a theory that completely contradicts the October, 2013 theory.

For instance, O'Reilly was "appointed" by the December 23, 2008 letter by Marrella. Doc. 641, p.5. The office purportedly is entitled "Trial Attorney" but no Law of Congress establishes the office of Trial Attorney. Doc. 642, p.2. The April 10, 2018 theory advances that O'Meilia appointed O'Reilly under 28 U.S.C. § 543 which only allows the Attorney General make such appointment. But, to answer this glaring dear in the road, the April 10, 2018 theory states the Attorney General delegated his appointment duty under § 543 to O'Meilia, on or before January 5, 2009, and again to Woodward, as Acting USA, on or before January 4, 2010. Doc. 641, p.5. But there is a problem in that they do not identify, or produce, any evidence of such delegations. Id.

This is no problem they say. This Court can alternatively, find that Trial Attorneys have the authority independent of being apppointed to office to prosecute Springer in the NDOK. Doc. 641, p.6. No they don't!

Exhibit 3 attached to Doc. 641, clearly shows O'Reilly's investigation authority came from O'Meilia under 28 U.S.C. § 547(1)("You are appointed [under § 543] to assist the office [O'Meilia] with a DOJ Tax Investigation.") There is no mention of prosecution. And, O'Reilly agreed that O'Meilia could "terminate[] at any time without cause or notice" O'Meilia's purported appointment of O'Reilly. Doc. 641, Exhibit 3.

The Trial Attorney appointment theory takes a sudden twist when it is revealed by the December 23, 2008 letter, Doc. 641, Exhibit 2, that it was signed by "RAC" on behalf of Marrella. The fact Marrella did not sign this letter supports the USDOJTD official finding that Marrella never held the office of DAAGTD. And if not signed by Marrella then O'Reilly was not either

24

appointed or authorized under 28 U.S.C. § 515(a) and 28 CFR § 0.13(a)(not-withstanding § 515(a) establishes no appointments clause office by Law).

The identity of "RAC" appears to be Ronald A. Cimino and at not time in the October, 2013 theory, or the April 10, 2018 surprise, is the name Cimino mentioned or what his office of appointment is or authority to act under 28 CFR § 0.13(a) would be. Compare Doc. 627, Exhibit 1, p.2(Doc. 525, p.2 with Doc. 641, p.3-6 and attached Exhibit 2.

O'Reilly, Gallant, and Williams lied about Marrella, did not say anything about Cimino or the signing of the December 23, 2008 letter, lied about Springer being named in the December, 2008 letter, lied about O'Meilia having the authority to appoint O'Reilly under § 543, lied about who extended O'Meilia's purported appointment, lied about Woodward's qualifications to be Acting USA, lied about the Attorney General delegating his appointment duty to O'Meilia and Woodward, lied about who held the Secretary of the Treasury's authority to prosecute the Tax and Related offenses on March 10, 2009, lied about Snoke and Woodward holding appointments as AUSAs in the NDOK, and lied about the Attorney General appointing Woodward as USA for the NDOK on January 21, 2010.

CONCLUSION

Springer requests this Court reconsider its Order and Judgment dated June 22, 2018, and grant the relief requested in this Motion, reinstate Springer's Rule 60(d)(3) application, and proceed in these adversarial proceedings to a just outcome which the facts and law support.

Lindsey K. Springer
Reg. # 02580-063
Federal Satellite Camp
P.O. Box 9000
Seagoville, Texas 75159

25

CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2018, I mailed the above Motion to Reconsider to the Clerk of Court, 333 west Fourth Street, Tulsa, Oklahoma 74103, by First Class Mail, Postage Prepaid;

I further certify that the persons representing the United States of America will receive service through the Court's ECF system as follows:

R. Trent Shores
Jeffrey A. Gallant
Charles A. O'Reilly

Server

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that I placed the above Motion to Reconsider in the U.S. Mailbox located inside Seagoville Federal Prison Camp to the address for the Clerk listed above on July 2, 2018.

Declarant

26

Lindsey Kent Springer
Reg. #02580-063
Federal Satellite Camp
P.O. Box 9000
Seagoville, Texas 75159

"Legal Mail"

09-CR-43-SPF

No Postmark

<>02580-063<>
Clerk Of Court
Northern District of Okla
333 W 4TH ST
Tulsa, OK 74103
United States

RECEIVED
JUL 5 2018
Mark C. McCartt, Clerk
U.S. DISTRICT COURT