

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

     Plaintiff,

v.                       Case No. 09-CR-043

LINDSEY KENT SPRINGER,

     Defendant.

MOTION TO REDUCE SENTENCE PURSUANT TO

18 U.S.C. § 3582(c)(1)(A)(i)


               By:  Lindsey Kent Springer
                     Reg. # 02580-063
                     Federal Satellite Camp
                     P.O. Box 9000
                     Seagoville, Texas 75159

FILED
SEP 3 2019
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

___Mail   ___No Cert Svc   ___No Orig Sign
___C/S   ___C/MJ   ___C/Ret'd   ___No Env
___No Cpys   ___No Env/Cpys   ___O/J   ___O/MJ

TABLE OF CONTENTS

Table of Authorities..........................................-ii-
Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)........1

Jurisdiction.................................................2

Facts Involving Exposure.....................................3

Sentencing Modification Under 18 U.S.C. § 3582(c)(1)(A)(i)..........17

    A. U.S.S.G. § 1B1.13, Application Note 1(D) covers Springer's
       Circumstances..........................................17

    B. The amendment to 18 U.S.C. § 3582(c)(1)(A) has overridden
       that part of § 1B1.13, Application Note 1(D)'s terms
       regarding its limits to "other reasons" being determined
       by the Director of the BOP.............................18

Post Judgment History.......................................20

With full consideration of the § 3553(a) factors, Springer's
Time Served constitutes a sentence sufficient but not greater than
necessary to accomplish the goals of sentencing....................21

Conclusion..................................................22
Declaration of Facts and Exhibits...........................23
Certificate of Service......................................23
Declaration of Mailing......................................23

## TABLE OF AUTHORITIES

Mistretta v. U.S. 488 U.S. 361, 394(1989)...........................18
Springer v. Fox, 2015 U.S. Dist. Lexis 11755(W.D.OK.)...............20
U.S. v. Anderson, 686 F.3d 585, 591(8th Cir. 2012).................18
U.S. v. Berberena, 694 F.3d 514, 524-25(3rd Cir. 2012).............18
U.S. v. Cantu, 2019 U.S. Dist. Lexis 100923(S.D.TX.)...............18
U.S. v. Colon, 707 F.3d 1255, 1261(11th Cir. 2013).................18
U.S. v. Fox, 631 F.3d 1128, 1131(9th Cir. 2011)....................18
U.S. v. Horn, 679 F.3d 397, 405-06(6th Cir. 2012)..................18

### STATUTES OF INVOLVED

18 U.S.C. § 3553(a)............................................1,17,21
          § 3582................................................18
          § 3582(c)(1)(A).......................................17,18
          § 3582(c)(1)(A)(i)...................................1,2,17,23
28 U.S.C. § 994(a)(2)(C).........................................17
          § 994(t).............................................17
          § 1746(a)............................................23

### SENTENCING GUIDELINES INVOLVED

U.S.S.G. § 1B1.13.............................................1,17,18
         § 1B1.13(2)...........................................20
         § 1B1.13(A)...........................................17
         § 1B1.13(B)...........................................17
         § 1B1.13(C)...........................................17
         § 1B1.13(D)...........................................17,18

### REGULATIONS INVOLVED

28 CFR § 571.60...............................................17
29 CFR § 1910.1001(a).........................................3
       § 1910.1001(b).........................................3
       § 1910.1001(j)(2)......................................3
       § 1910.1001(j)(4)(i)...................................10
       § 1910.1001, Appendix G, Section II, A.................19
               Appendix H, Section II.........................19

### MISCELLANEOUS

Program Statement § 5050.50(2019)..............................17
Pub. L. 115-391, § 603(b), 132 Stat. 5194(2018)................18

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

     Plaintiff,

v.                             Case No. 09-CR-043

LINDSEY KENT SPRINGER,

     Defendant.

MOTION TO REDUCE SENTENCE PURSUANT TO
18 U.S.C. § 3582(c)(1)(A)(i)

Lindsey Kent Springer ("Springer") moves this Court pursuant to the newly-amended 18 U.S.C. § 3582(c)(1)(A)(i) for an order reducing Springer's Sentence to time served based upon Springer's exposure to more than 500 days of Cancer Causing Asbestos and Breath-Taking Mold.  Springer raised his request for administrative action to the Warden, then the Regional Director's Office, and then the General Counsel's Office in Washington D.C. ("BOP"). The BOP refused Springer's sentence reduction request for action based upon Two post sealing air-quality reports taken on October 18, 2018 and October 22, 2018.  The source of the Asbestos and Mold were directed to be sealed up by Safety Administrator C. Rees to Springer and completed on October 11, 2018. As this Court will see below, both Storage Rooms were filled with Asbestos Containing Material ("ACM") and Mold for 500 plus days under air-quality condictions the post sealing reports were unable to capture under non-replic-ating conditions.  **After the General Counsel denied Springer's BP-11, the BOP had both Storage Rooms containing the Asbestos and Mold completely Abated.**

Pursuant to the First Step Act, the Court now has jurisdiction to deter-mine whether "extraordinary and compelling reasons" warrant a sentence reduct-ion after considering the sentence factors under 18 U.S.C. § 3553(a) and the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13.  Because

1

Springer's more than 500 days of exposure to Cancer Causing Asbestos and Breath-Taking Mold was Cruel and Unusual Punishment inflicted on Springer, for which the Court's April 28, 2010 Judgment and Committment Order does not authorize or condone, such circumstances fall within the Sentencing Commissions standards for reduction of Springer's sentence to time served and placing Springer on supervised release.

## JURISDICTION

On December 21, 2018, the President signed the First Step Act into law. Among the criminal justice act reforms, Congress amended 18 U.S.C. § 3582(c)-(1)(A)(i) to provide the sentencing judge jurisdiction to consider a motion for reduction of sentence under the subsection where "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf[.]" First Step Act of 2018, at 119. Springer has exhausted all available administrative remedies that were available at Seagoville Federal Prison seeking the Warden to approve the seeking of a reduction in Springer's 180 month sentence which initially was treated as denied by silence and then appealed to the Regional Director and then General Counsel. During that process, the Regional Director ordered the Warden to address my BP-9-way out of time-and after the Warden denied my request in that response, the Regional Director and General Counsel affirmed the Warden's response solely based upon the October 18, 2018 and October 22, 2018 "air-quality" reports taken after both Storage Rooms were sealed from all air on October 11, 2018. The BOP's out-of-time response never addressed the fact the Storage Rooms containing the ACM were open to air movement during the time of Springer's exposure and covered everything contained in both rooms on a continuous and daily basis. Springer shows that the administrative remedies contemplated by Congress and the BOP were unavailable to Springer.

2

## FACTS INVOLVING EXPOSURE

1.  The Commissary Warehouse at FCI Seagoville ("Warehouse") was built in the 1930s.

2.  The United States is required to presume its buildings constructed prior to 1980 were constructed with and using Asbestos Containing Materioa ("PACM"). See 29 CFR § 1910.1001(a), (b), and (j)(2).

3.  Inside the Warehouse there exists Two storage rooms that were used since the late 1930s to present day as (i) a morgue, (ii) freezers storing food that feeds the federal inmate population, (iii) dry storage rooms ("Storage 1" and "Storage 2") storing both food that feeds the inmates, toilet paper for the inmates, mattresses for the inmates, washer and dryers for the inmates (new and those rebuilt by Springer personally), Executive Staff and Medical Staff furniture, and dangerous regulated chemicals used to keep the prison clean.

4.  The Warehouse is shared by both Food Service and Commissary Trust Fund distributing food to the inmate population.

5.  On April 28, 2010, this Court issued its Judgment imposing a 180 month sentence for Springer to serve.

6.  Springer arrived at FCI Seagoville Prison Camp on or about March 16, 2016.

7.  Springer began working in the Laundry Department within the Warehouse on or about April 1, 2016.

8.  Springer's general job description was to repair and maintain washer and dryers for the entire institution, save the FCI, and Staff Training Center.

9.  On or about July 1, 2016, Springer was relocated from the Laundry Department to a third Storage Room adjacent to Storage 2 ("Storage 3").

10.  From on or about July 1, 2016 to November 1, 2016, Springer performed many types of repairs on many different items for the BOP including (i) the repairing of microwaives, (ii) golf carts, (iii) vehicles related to Commissary,

3

and (iv) furniture.

11.   On or about November 1, 2016 Springer was promoted to the position of Wharehouse Clerk with Springer's office station location just outside of Warehouse staff's office.

12.   Part of Springer's job was to move furniture, toilet paper, mattresses, lockers, repair and maintain washers and dryers, and help in the receiving, distribution, and shipping, of all property being received by, or sent from, the Warehouse.

13.   Another aspect of Springer's job was to keep the overall appearance of the Warehouse clean and in as much order as possible under Warehouse type conditions.

14.   Springer usually spent from 2:30 to 3:30 every day sweeping the front of the Warehouse and Breeze-Way areas just outside both Storage Rooms 1 and 2 and his previous work station next to Storage 2.

15.   As of November 1, 2016, Storage 1 and 2 were not controlled by the Commissary Staff but under the lock and key control of Food Service staff.

16.   On or about April 1, 2017, the Freezer in Storage 1 went down for the last time causing all of its contents to be removed and stored in either Storage 2 or mobile freezers positioned throughout the outside of the Warehouse and Facilities (facilities is a different building).

17.   On or about April 1, 2017, Springer was informed by Commissary Warehouse Supervisor Robert Freeman, that the shelf system located in Storage 1 was to be removed and cleaned.

18.   On or about April 1, 2017, Springer and other inmates dismantled Storage 1's shelf system, removed the shelf system, and after being totally cleaned of all foreign substances, reassembled the shelf system inside Warehouse laundry.

19.  Springer personally cleaned every piece of the shelf system (apprx. 50 large pieces of steel) removing accumulated dusty dry dark substances, chuncks of black substance, and black surface substances.

20.  Once the shelves were removed, Springer and other inmates cleaned the entirety of Storage 1 from all the falling dust and debris from the ceiling and walls.

21.  At no time during the shelf removal or cleaning of Storage 1 did Springer, or any other inmate, wear protective gear or informed by Warehouse staff that the substances being cleaned contained Cancer Causing Asbestos or Breath-Taking Mold.

22.  On or about May 1, 2017, Food Service Assistant Supervisor Ms. White began to use Storage 1 as a dry storage room for inmate food used to feed the inmates.

23.  At this time Storage 2 remains a freezer controlled by Food Service.

24.  Once Ms. White visually could see the inmate food was being covered (outer surfaces) with a fine dusty substance and chunks of a black substance apparent to all was falling from the ceiling and walls, Ms. White decided to use Storage 1 for storing chemicals used by Food Service and not food.

25.  On or about June 1, 2017, Springer assisted Ms. White in removing Safety notices from the Second Floor of Food Service Warehouse, where the Food Service Chemicals had been stored, and moved such notices inside Storage 1 mounting such notices onto the Wall in Storage 1.

26.  At this point, both Storage 1 and 2 had solid doors (apprx. 8 inches thick with defrosting mechanism) that contained a latch, lock, and seal.

27.  On or about June 1, 2017, Springer began to suffer upper respratory breathing issues, along with other inmates, including excessive bloody nose instances, being informed by medical staff the bleeding's cause was from

5

ceder pollen which Springer previously received a nasal inhaler type spray
to combat the effects from that type of pollen.

28. Several inmates working in Commissary Warehouse were also treated with
the same type of nasal spray.

29. What Springer was unaware of is that Storage 1 had an excessive mold
problem, in addition to being unaware of the Cancer Causing Asbestos, where
Storage 1 produced a very strong odor for which Springer was unfamiliar.

30. On or about July 1, 2017, and in preparation for Food Service's annual
inspection, Food Service Administrator Damon Lynn made the decision that both
Storage 1 and 2 would not pass inspection, abandoned both Storage rooms 1
and 2, and removed the locks to both rooms.

31. Both Storage 1 and 2 had a history of leaking water out from under their
solid doors and, as of July 1, 2017, Storage 2 daily leaked water out from
under the door in such a magnitude that repairing it before inspection was
not feasable (Storage 1 was already dry storage only).

32. Springer cleaned leaked water out front of Storage 2 on multiple occass-
ions simply due to the volume of freight moving in from the back dock that
would need travel through the water tracking that water into the Commissary
aspects of the Warehouse.

33. Cleaning the water up was a safety issue and required constant attention.

34. On or about July 1, 2017, Food Service Administrator Damon Lynn emailed
Trust Fund Supervisor Bruce Padgett that Food Service would no longer be
responsible for anything involving Storage 1 and 2.

35. At some point between July 1, 2017, and July 31, 2017, the Freezer sys-
tem in Storage 2 broke down and the contents of Storage 2 were moved into a
mobile Freezer trailer outside the Warehouse itself.

36. At one point, Food Service Warehouse utilized as much as 10 mobile

6

Freezer trailers to store inmate food products outside the Warehouse.

37. Beginning on or about August 1, 2017, Springer was instructed by Robert Freeman, at the direction of Bruce Padgett, that both Storage 1 and 2 were now the responsibility of Commissary Warehouse and that Springer was now fully responsible for the cleaning and maintaining both Storage Rooms.

38. Springer and the other inmates cleaned, scrubbed, and used high pressure water to wash out both Storage 1 and 2.

39. As of August 1, 2017, Springer assisted in filling both Storage 1 and 2 with property belonging to the BOP for either use by federal inmates or Executive and Madical Staff.

40. Storage 1 was used to store in excess of 100 boxes of toilet paper and at times more than 100 mattresses for use and distribution to the inmate population.

41. Storage 2 was used to store numerous washers and dryers for which Springer had mostly rebuilt, including 3 or 4 new in the box machines, Executive and Medical Furniture, and at least 96 inmate lockers stacked on top of wood pallets.

42. On numerous occassions Springer would spend time, and sometimes with other inmates, cleaning both rooms when either were depleted of their contents making cleaning more accessable.

43. Springer was specifically instructed by Mr. Freeman to keep both doors on Storage 1 and 2 closed when not moving property of the prison in or out of those rooms.

44. By on or about September 1, 2017, Mr. Freeman emails Executive Staff and Acting Safety Administrator Mark Christian about the continued falling substances in both Storage 1 and 2 for which Springer was constantly having to clean off of BOP property and the floors, as well as due to the strong odor.

7

45. It was routine for Springer and the other inmates to clean off from all property being removed from Storage 2 the dusty substance and black matter that had fallen from the walls and ceiling landing thereon.

46. On or about September 23, 2017, Assistant Warden Rosales, Facilities Supervisor S. Jefferson, Counselor Mike Shelp, and Mr. Christian, visited the Warehouse to view the substance falling from the walls and ceiling in both Storage 1 and 2, as well as the odor.

47. Mr. Christian decided to test the black substance in both rooms and determined that, on or about October 20, 2017, the substance and smell was mildew only.

48. On or about October 27, 2017, along with two inmates (Hooper and Perpich), Mr. Christian directed Springer and other inmates from the Commissary Warehouse, to remove all property from both Storage 1 and 2 so he could spray some substance or chemical to combat the mildew diagnosis.

49. Mr. Christian, with a full body suit and respratory protection, along with inmate Hooper and Perpich, sprayed a soapy smelling substance in both Storage 1 and 2.

50. Springer was directed by Mr.Freeman to return all property to each Storage 1 and 2 that had been removed and to clean off all property before its return.

51. On or about November 15, 2017, Mr. Freeman instructed Springer to remove both solid doors from Storage 1 and 2 in effort to combat the strong odor continuing to exist inside both after Mr. Christian's treatment.

52. Inmate Brooks used the Forklift to place both doors in Seagoville's bone yard.

53. As of November 15, 2017, both rooms are completely open and exposed to the elements of weather due to their position in the Breeze-way.

54.  Between on or about December 15, 2017, through on or about January 15, 2018, Trust Fund Supervisor Bruce Padgett requested facilities manufacture Two gate style open doors for each Storage 1 and 2 allowing property to remain secure while allowing the air from inside Storage 1 and 2 to filter out into the Breeze-Way.

55.  Both Storage 1 and 2 received their new doors immediately.

56.  Continuing from December 15, 2017, through September 15, 2018, Springer continued to utilize and frequent both Storage 1 and 2, as a routine part of Springer's job duties, and continued to clean, sweap, and breath in dust covering the property, including the black substance.

57.  Needless to say, the new gate doors did not stop the strong odor.

58.  Also, the dust covering the property and the black chunks increased in volume only now both were compiling outside both Storage 1 and 2 and into the air of the Breeze-Way and the floor.

59.  During the winter months of 2017-2018, the Breeze-Way doors remained closed allowing the heat to remain inside as much as possible and circulating the air moving out of Storage 1 and 2 throughout the area surrounding both rooms.

60.  At all times Springer was on cronic care for upper respiratory issues to prevent complete closure of Springer's nasal air-way and to prevent bloody nose instances.

61.  On or about July 1, 2018, Mr. Christian left employment at Seagoville FCI for another job within the Federal Government.

62.  On or about July 1, 2018, Mr. Rosales transferred to FCI Forrest City, Arkansas.

63.  On or about July 1, 2018, Ms. White transferred to Food Service Admin-istrator at FCI Coleman, Florida.

64.  On or about July 1, 2018, Bruce Padgett, B. Roper, and Damon Lynn, were

9

all experiencing significant upper respiratory breathing issues stemming from their exposure to the air at the Warehouse.

65. Springer was informed by Mr. Lynn and Mr. Roper, sometime in July, 2018, that they both had been diagnosed with asthma for the first time in their life.

66. On or about July 20, 2018, New Safety Administrator C. Rees began his employment at Seagoville.

67. On or about July 24, 2018, Mr. Rees paid a visit to the Warehouse and introduced himself to Springer and Mr. Freeman, as well as other Warehouse Staff and inmates.

68. On a visit to the Warehouse in early September, 2018, Mr. Freeman introduced Mr. Rees to Storage 1 and 2 causing Mr. Rees to orally announce he would have the substances falling from the walls and ceiling in Storage 1 and 2 tested.

69. On or about October 9, 2018, Mr. Rees appeared at the Warehouse with an outside company representative that tested the substances falling from the walls and ceilings in Storage 1 and 2.

70. On or about October 10, 2018, Warehouse Staff member R. Fulce instructed Springer to place Two 8.5 by 11 inch signs on both Storage 1 and 2 gate doors per Mr. Rees stating neither Staff or Inmates were to enter into either room.

71. On October 11, 2018, Mr. Rees had Springer, with the assistance of another inmate, cover both Storage 1 and 2 doorways with a thick but otherwise clear plastic and duck tape, and posting Two red signs that read:

> "Danger, Asbestos, May Cause Cancer, Cause Damage to Lungs, Authorized Personnel only. 29 CFR [1910-1001(j)(4)(i)]. C. Rees, Safety Manager Ext. 4431."

See Exhibit 1 attached to this Motion.

72. On October 11, 2018, Mr. Rees instructed Springer personally to maintain the duck tape seal on Storage 1 and 2 and provided Springer with one roll of

10

duck tape.

73. On or about October 15, 2018, Springer was informed by Mr. Freeman that he would be departing the Warehouse for an administrative job at Seagoville.

74. On October 18, 2018, Mr. Rees explained to Springer the air-quality testing, that the percentage of asbestos found in the Two Storage Rooms was 10% and the strong odor stemmed from a major case of **MOLD**, NOT MILDEW.

75. Mr. Rees conveyed the percentage of Asbestos and the Mold presence while Mr. Freeman and other inmates listened in.

76. The person testing the air-quality confirmed to Springer the finding of 10% Asbestos and Mold during the October 9, 2018 testing.

77. On or about October 22, 2018, another company, headed by a former BOP employee, appeared to take a second air-quality sample.

78. On or about October 22, 2018, Mr. Rees instructed Springer, in the presence of Mr. Padgett, to exchange all Springer's clothes and bedding due to extended exposure to the 10% Asbestos and Mold.

79. At the same time, and in the same conversation, Mr. Rees informed Springer and Mr. Padgett that all toilet paper, mattresses, washers and dryers, and all cardboard boxes inside both rooms would need to be abated and then destroyed.

80. On October 29, 2018, Springer made, after several attempts to obtain administrative remedy request forms went unresponded to by the Warden and her administration, See Exhibit 2 attached to this Motion.

81. On October 31, 2018, Mr. Rees issued to Springer a memorandum reporting the finding of Asbestos present in both Storage 1 and 2. See Exhibit 3 attached to this Motion.

82. On or about Mr. Lynn informed Mr. Padgett of his treatment for being diagnosed with asthma.

11

83. On November 9, 2018, Springer visited sick call seeking medical treatment due to Springer's extended exposure to Cancer Causing Asbestos and Breath-Taking Mold.  See Exhibit 4 attached to this Motion.

84. During Springer's visit to sick call, Springer and the other exposed inmates seeking medical treatment were informed by Nurse Mohon that Dr. Holla would let her know what treatment was recommended by the CDC by November 13, 2018. See Exhibit 4 attached to this Motion.

85. On November 20, 2018, after it became apparent Dr. Holla was not proceeding as Nurse Mohon indicated with medical treatment, Springer requested administrative remedy from the Warden for medical treatment due to Springer's extended exposure to Cancer Causing Asbestos and Breath-Taking Mold. See Exhibit 5 attached to this Motion.

86. On December 5, 2018, Springer submitted a BP-10 to the Regional Director's Office based upon the Warden's silence and lack of response to Springer's October 29, 2018 BP-9.  See Exhibit 6 attached to this Motion.

87. On December 10, 2018, Springer was reassigned from Warehouse by furlough to the Bureau of Prison's National facilities located in Grand Prairie, Texas.

88. On December 10, 2018, the Regional Director's Office received Springer's December 5, 2018 BP-10. See Exhibit 7 attached to this Motion.

89. On December 11, 2018 the Warden's Office at Seagoville decided to **index** Springer's October 29, 2018 BP-9. See Exhibit 8 attached to this Motion.

90. On December 13, 2018, indicating a December 10, 2018 received date, the Regional Director's Office issued Springer a **rejection** letter to Springer's December 5, 2018 BP-10 stating Springer **did not attach the Warden's Response and simultaneously ordering the Warden to Respond by December 31, 2018.** See Exhibit 7 attached to this Motion.

91. On December 26, 2018, the Warden denied Springer's October 29, 2018

12

BP-9 relying upon the post October 11, 2018 air-quality reports. See Exhibit 9 attached to this Motion.

92.  On January 7, 2019, Springer submitted a BP-11 to General Counsel in Washington D.C. from the December 13, 2018 rejection letter by the Regional Director's Office based upon the silence of the Warden more than 50 days and showing there is no administrative remedy available at Seagoville Federal Prison. See Exhibit 10 attached to this Motion.

93.  On January 9, 2019, out of an abundance of caution, Springer submitted a BP-10 to the Regional Director from the Warden's December 26, 2018 out-of-time denial showing her reliance on the post October 11, 2018 air-quality reports was erroneous where the more than 500 days of Springer's exposure was not replicated in the findings of those Two reports. See Exhibit 11 attached to this Motion.

94.  On February 15, 2019, the General Counsel denied Springer's January 7, 2019 BP-11 referencing the pending BP-10 filed from the December 26, 2018 out-of-time response and denial by the Warden. See Exhibit 12 attached to this Motion.

95.  On February 22, 2019, the Regional Director's Office denied my January 9, 2019 BP-10 for the reasons given by the Warden in her out-of-time December 26, 2018 response and denial from Springer's October 29, 2018 BP-9. See Exhibit 13 attached to this Motion.

96.  On March 12, 2019, Springer submitted his BP-11 to the General Counsel's Office from the Regional Director's February 22, 2019 response and denial of Springer's appeal from the Warden's out-of-time denial of Springer's October 29, 2019 BP-9.  See Exhibit 14 attached to this Motion.

97.  On April 9, 2019, the General Counsel's Office denied Springer's March 12, 2019 BP-11 for the reasons given by the Regional Director's Office and

Warden.  See Exhibit 15 attached to this Motion.

98.  Beginning on or about April 30, 2019, Springer began to process of being approved to work specifically within the Regional Director's Office at Grand Prairie, Texas, where only two such postions are available to the inmates on furlough.

99.  On or about May 6, 2019, an outside contract company named **ARC Abatement** began the abatement prcedure removing the Cancer Causing Asbestos and Breath-Taking Mold from both Storage 1 and 2. See Exhibit 16 attached to this Motion as the Declaration of inmate A. Vela, a current employee of Commissary Ware-house, at  1 .

100.  The abatement begins with **ARC Abatement** construing a temporary plastic wall surrounding both Storage 1 and 2 from floor to ceiling causing complete separation from access by inmates and staff. See Exhibit 16, p.  2 .

101.  The plastic walls were made difficult to see through. See Exhibit 16, p.  2 .

102.  Between May 6, 2019, through May 13, 2019, **ARC Abatement** utilized the process of spraying water in each Storage 1 and 2 causing any Asbestos in each room to fall to the floor. See Exhibit 16, p.  2 .

103.  Since September, 2001, The Department of Health and Human Services has recognized two types of asbestos fibers. See Exhibit 14, p. 4(desribing "small diameter fibers and particles that remain suspended in the air for a long time and can be carried long distances by wind or water before settling down" and "Larger diameter fibers and particles tend to settle more quickly").

104.  On or about May 7, 2019, **ARC ABATEMENT** removed all lockers and washers and dryers out of Storage 2, after removing asbestos and mold from such pro-perty.  See Exhibit 16, p.  2 .

105.  On or about May 8, 2019, **ARC ABATEMENT** removed the mattresses and toilet paper from Storage 1, after removing the asbestos and mold from such property. See Exhibit 16, p. _2_.

106.  On or about May 9, 2019, **ARC ABATEMENT** began removing the ceiling and wall covering in Storage 1, the source of the asbestos and mold. See Exhibit 16, p. _2_.

107.  On or about May 10, 2019, **ARC ABATEMENT** began removing the ceiling and wall covering in Storage 2, the source of the asbestos and mold. See Exhibit 16, p. _2_.

108.  On or about May 13, 2019, **ARC ABATEMENT** procláims to the Bureau of Prisons that both Storage 1 and 2 were free of Asbestos and Mold. See Exhibit 16, p. _2_.

109.  Throughout the abatement process for Storage 1 and 2 staff and employees wore complete protective suits to protect themselves from being exposed to Cancer Causing Asbestos and Breath-Taking Mold. See Exhibit 16, p. _3_.

110.  On or about May 13, 2019, **ARC ABATEMENT** removed their temporary walls surrounding both Storage 1 and 2.  See Exhibit 16, p. _3_.

111.  On or about May 13, 2019, I began working inside the Regional Director's Office at Grand Prairie, Texas.

112.  On or about May 14, 2019, **ARC ABATEMENT** finished and departed the Warehouse where Springer previously worked from April 1, 2016 to December 9, 2018. See Exhibit 16, p. _3_.

113.  Between May 13, 2019 through May 26, 2019, Springer worked by furlough in the Regional Director's Office.

114.  On May 26, 2019, Springer was informed by Case Manager Ruiz that the Warden's Office had been notified by the Regional Director's Office that Springer was to no longer work at the Grand Prairie complex.

15

115. Springer was given no reason for the reassignment and was reassigned as town driver for the camp.

116. Springer spoke to Mr. Padgett about Springer's reassignment by the Warden (since he works in her office) and Padgett informed Springer that they were not going to tell him but that it probably has something to do with the asbestos and mold exposure claims.

117. Springer spoke to Mr. Freeman, who assisted Springer in reassignment, and who informed Springer that Springer did nothing wrong and that the reassingment directive was most likely based upon the asbestos and mold claims.

118. Mr. Padgett informed Springer that Mr. Padgett would be getting checked yearly for any signs of the asbestos exposure he suffered was affecting his physical body.

119. Mr. Padgett also informed Springer that the other staff infected by the Asbestos and Mold exposure were being represented by the Union and that all exposed were informed by the Warden's Office to get checked out By a medical professional.

120. R. Fulce, I. Hunter, and C. Herring, are all seeking the Union's representation in being compensated, including medical treatment, for their exposure to asbestos and mold. (Springer is unaware as to Roper due to reassignment).

121. Springer filed a Petition for Writ of Habeas Corpus in the Northern District of Texas, seeking an order for the Warden to provide Springer medical attention and release from prison but that Court found Springer, instead, needs to file a civil rights action under Bivens. See Exhibit 17 attached to this motion.

122. Springer has never received any response from the Warden on his November 20, 2018 medical treatment BP-9 nor has it ever been indexed.

SENTENCE MODIFICATION UNDER 18 U.S.C. § 3582(c)(1)(A)(i)

This Court has discretion to reduce the term of imprisonment imposed by its April 28, 2010 Judgment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which states in relevant part that the Court "may reduce the term of imprisonment after consideration of the facts set forth in section 3553(a) to the extent they are applicable, if it finds that extraordinary and compelling reasons warrant a reduction[.]"

Pursuant to the requirement of 28 U.S.C. § 994(t), as authorized by 28 U.S.C. § 994(a)(2)(C), the Sentencing Commission promulgated a policy statement "in regard to extraordinary and compelling reasons." U.S.S.G. § 1B1.13 and Application Note 1 provides "extraordinary and compelling reasons" means (A) medical conditions of the Defendant; (B) age of the Defendant; (C) family circumstances; and (D) other reasons.

Springer contends that (D) either covers Springer's more than 500 days of exposure to Cancer Causing Asbestos and Breath-Taking Mold or has been overriden by the First Step Act's amendments to 18 U.S.C. § 3582(c)(1)(A).

A. <u>U.S.S.G. § 1B1.13, Application Note 1(D) covers Springer's circumstances.</u>

Section 1B1.13, Application Note 1(D) reads in part:

"As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivision (A) through (C)."

The Attorney General also provides that the "extraordinary and compelling circumstances" be of the type that "could not reasonably have been forseen by the Court at the time of sentencing." See 28 CFR § 571.60. The BOP has provided some guidance in Program Statement § 5050.50(2019).

Springer argues that Application 1(D) connects the medical condtion of exposure to asbestos and mold with "extraordinary and compelling reason other

17

than, or in combination with, the reasons described in subdivision (A)..."

B. The amendment to 18 U.S.C. § 3582(c)(1)(A) has overridden that part of § 1B1.13, Application Note 1(D)'s terms regarding its limits to "other reasons" being determined by the Director of the BOP.

Congress "can override any guideline or policy statement by statute." U.S. v. Colon, 707 F.3d 1255, 1261(11th Cir. 2013); U.S. v. Berberena, 694 F.3d 514, 524-25(3rd Cir. 2012)("Congress can...pass a law overruling the Commission's [policy] determination 'at any time.'")(quoting U.S. v. Horn, 679 F.3d 397, 405-06(6th Cir. 2012)(quoting Mistretta v. U.S., 488 U.S. 361, 394(1989); U.S. v. Anderson, 686 F.3d 585, 591(8th Cir. 2012)("Congress...can modify or override the Commission's policy statements."(citations omitted)); U.S. v. Fox, 631 F.3d 1128, 1131(9th Cir. 2011)("Congress of course can override both Guidelines and policy statements by statute.")

Springer posits the policy statement under § 1B1.13, Application Note 1(D) should not be read to limit "other reasons" to those "determined" by the Director of the BOP. In U.S. v. Cantu, 2019 U.S. Dist. Lexis 100923 (S.D. TX), United States District Judge Marina Garcia Marmolejo found that § 1B1.13 Application Note 1(D) should not be read to prevent "other" reasons if the Director of the BOP had not determined the reasons provided satisfied (D). Judge Marmolejo explained that the Title to the First Step Act of 2018's amendment to 18 U.S.C. § 3582 is "Increasing The Use of Transparency of Compassionate Release." Pub. L. 115-391, § 603(b), 132 Stat. 5194(2018). Id. at 10. Judge Marmolejo found that the Title to the changes of § 3582 "supports the reading that U.S.S.G. § 1B1.13 cmt. n.1(D) is not applicable when a defendant requests relief under § 3582(c)(1)(A) as amended because **it no longer explains an appropriate use of that statute.**" She continued:

"For if the Director of the BOP were still the sole determiner of what constitutes an extraordinary and compelling reason, the amendment's allowance of defendant's own § 3582(c)(1)(A) motion for reduction of

sentence would be to no avail.  Such a reading would contravene the explicit purpose of the new amendments."

Id.

Springer has clearly exhausted any available administrative remedies and argues there are no such remedies available as reflected in the regulations by the Attorney General establishing any such remedies.  Either way, this Court has jurisdiction to consider Springer's Motion.  In doing so, Springer requests this Court to consider the following regulations and their findings.

29 CFR § 1910.1001, Appendix G, Section II, A, reads:

"Asbestos can cause disabling respiratory disease and various types of cancer if the fibers are inhaled.  Inhaling or ingesting fibers from contaminated clothing or skin can also result in these diseases, the symptoms of these diseases **generally do not appear for 20 years or more after initial exposure.**"

Under Appendix H to § 1910.1001, Section II, entitled Toxicology, explains:

"clinical evidence of the adverse effects associated with exposure to asbestos is present in the form of several **well conducted epidemiological studies of occupationally exposed workers, family contacts of workers, and persons living near asbestos mines.** These studies have shown a **DEFINITE** association between exposure to asbestos and an increased incidence of lung cancer, pleural and peritorial mesothelioma, gastrointestinal cancer, and asbestos.  The latter is a disabling fibrotic lung disease that is caused only by exposure to asbestos.  Exposure to asbestos has also been associated with an increased incidence of esophagel, kidney, phayngeal, and buccal cavity cancers.  As with known chronic occupational diseases, disease associated with asbestos generally appears 20 years folling the first occurrence of exposure.  **There are no known acute effects associated with exposure to asbestos.**"

Section III goes on to explain that Mesothelioma and Lung Cancer resulting from exposure are "always fatal."  Exposure to mold appears to be less than fatal and is more of an immediate effect on breathing and the lungs.  The regulations go on to say that anyone exposed over the age of 45 (Springer is 53) should be medically treated on a yearly basis.

19

POST JUDGMENT HISTORY

Springer's release for time served would not pose a danger to the safety of any other person or the community. U.S.S.G. § 1B1.13(2).

Springer has been in custody since April 23, 2010 equalling 9 years and 4 months and has received approximately 506 days of good time credit totalling approximately 129 months credit towards the 180 months.

Springer has received one incident report on October 31, 2013, for allegedly violating FCI El Reno's unwritten institutional policy involving trulinks emails for which Springer will continue to show that he did not receive the limited due process afforded for such incidents. See Springer v. Fox, 2015 U.S. Dist. Lexis 11755(W.D.Ok.)(affirming Magistrate's Report that Springer had not exhuasted administrative remedies made available by the BOP).

Springer has conducted himself while in Prison in a proper manner and has received the highest marks available from his supervisors having worked for Facilities at Big Spring FCI trained and repairing institutional Washer and Dryers, then at FSL LaTuna working for Unit Team doing payroll and other Clerk duties (known as the "Institutional Clerk"), and while at Seagoville Camp, Springer has worked in the Trust Fund Laundry and Commissary Departments, rising to the position of Warehouse Clerk, with the highest of trust from both Springer's supervisors and inmates, and most recently, Springer was furloughed daily to the Grand Prairie Complex being assigned first to the Designation and Sentencing Building 345, then promoted to Human Resources and Property Acquisition Building 346, and then promoted again, to the Regional Director's fortress Building 344.  At all times, Springer has worked in the highest of security and trust areas and performed those tasks with the highest degree of integrity.

Springer has also programmed. See Exhibit 18 attached to this motion.

20

Springer has also volunteered his time to assist the Chaplains at all Four Institutions he has served involving religous services.  Springer also stays in contact with his parents, children, now grand children, and his sister.  Springer is scheduled by the BOP as out-custody and when furloughed as community custody.

Springer believes the Court should consider that his separation from the source of the Cancer Causing Asbestos and Mold does not end the effects of the exposure Springer received while at Seagoville.  Springer seeks the modification of his sentence to time served based upon the history of the abestos exposure shortening both the life expectancy of any exposed person and that the quality of life becomes greatly diminished as such exposed person begins to suffer the effects of that exposure.

### WITH FULL CONSDIERATION OF THE § 3553(a) FACTORS, SPRINGER'S TIME SERVED CONSTITUTES A SENTENCE SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACCOMPLISH THE GOALS OF SENTENCING

Springer was not sentenced to 180 months so that he could be exposed to more than 500 days of Cancer Causing Asbestos and Breath-Taking Mold. At the time this Court sentenced Springer, it did not consider that Springer would be exposed to extended periods of asbestos and mold.  All this Court needs to see is that the reasons the Warden, Regional Director's Office, and General Counsel gave for denying Springer the remedy assisting Springer to obtain a sentence reduction being based upon Two post-sealing air-quality reports that were generated without replicating the instability of the air-quality between April 1, 2017 through October 11, 2018 (when the rooms were sealed from outside air movement), compared with the post-denial ARC Abatement of both Storage 1 and 2.  Beginning May 6, 2019, after the General Counsel's denial, the BOP then began the abatement process over an 8-day period of time.  The optics of the expense and scope of the abatement procedures, along

21

with how the persons performing the abatement procedures took precautions to prevent their own exposure, overwhelmingly shows Springer, Executive Administration Staff, Union represented Staff, and other inmates, were highly exposed to lethal doses of asbestos and mold.

The evidence of the abatement procedures, and the duration of time the asbestos and mold was disturbed and falling from the ceiling and walls in both Storage 1 and 2, which to Springer was more than 500 days, shows the October 18, 2018 and October 22, 2018 post-sealing air-quality reports (even if they say what the Warden says they say) have little to no evidentiary value on determining the extraordinary and compelling reasons where those reports were not a sample of replicated conditions for which Springer and others suffered. To suggest the asbestos and mold were not airborn is simply, and grossly, in error.

Springer contends that the exposure to asbestos and mold inflicted on Springer during his service of his term of imprisonment should be accounted for at the end of his term of imprisonment based upon the amount of life such exposure has in historically shortening the life of a person so exposed.

### CONCLUSION

For the foregoing reasons, Springer respectfully requests that this Court grant reduction in the sentence dated April 28, 2010 to time served and direct Springer's supervised release begin.

Respectfully Submitted,

Reg. # 02580-063
Federal Satellite Camp
P.O. Box 9000
Seagoville, Texas 75159

22

DECLARATION OF FACTS AND EXHIBITS

I, Lindsey Kent Springer, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that the facts asserted in numbered paragraphs 1 through 122 are true and correct to the best of my knowledge and belief, and to the extent those facts are based upon exhibits referenced therein, the exhibits attached hereto are true and correct copies of the original, except for Exhibit 16, which is an original, or correct copies of copies.

Declarant

CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2019, I sent by U.S. Mail, First Class, Postage Prepaid, the above Motion under 18 U.S.C. § 3582(c)(1)(A)(i), and attached and referenced Exhibits, to the Clerk of Court, 333 West Fourth Street, Tulsa, Oklahoma 74103;

I further certify that the following are registered persons for the United States of America and shall receive service of the above Motion through the ECF system:

Charles A. O'Reilly
Jeffrey A. Gallant
R. Trent Shores

Server

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that on August 28, 2019, I deposited the above Motion and Exhibits in the U.S. Mailbox located inside Seagoville Federal Prison Camp to the address for the Clerk listed above.

Declarant

23

**E X H I B I T**

**1**

E X H I B I T

2

U.S. DEPARTMENT OF JUSTICE                REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

BP-9
Copy

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: SPRINGER, LINDSEY K     02580-063     Camp, S-1     Seagoville
     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A- INMATE REQUEST**

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong mold, between on or about April 1, 2017 through on or about October 11, 2018, when Mr. Rees had me help seal up two storage rooms at the Warehouse where I work and post signs warning cancer causing asbestos was factually determined to be present in both storage rooms. Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms falling from the ceilings on or about September/October 2017 causing air quality issues with breathing I was experiencing and abnormal amounts of blood flowing from my nose. The Warehouse had previously been determined to contain asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos and mold was built in the 1930s and required to presume any substance in any room that becomes loose contains asbestos. Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided (see page 2 attached for a continuation of the request herein)

10-29-18     gave BP-9 to Shelp on     _(signature)_
DATE     10.29.18 mail present.     SIGNATURE OF REQUESTER

**Part B- RESPONSE**

_____                 _____
DATE                                      WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE       CASE NUMBER: _____

              CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____     _____     _____     _____
     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

page 2 attached

oxygen-or air-free from cancer causing asbestos and mold.  After Mr. Christian treated both storage rooms for the finding of mildew, I was directed that both storage rooms were safe to enter and use.  I enquired of Mr. Christian as to whether both rooms were safe to enter and use to which Mr. Christian affirmed to me that they were safe and usable. Both rooms were sprayed with a substance which had a soapy smell to it.  I proceeded to enter both rooms on numerous occassions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering the property to its destination that had fallen from the ceiling. As of October 11, 2018, I was instructed not to enter either storage for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer causing asbestos, and mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so.

Attached to this BP-9 are (1) a copy of my attempt at informal resolution, marked as Exhibit 1, and (2) a copy of my Inmate Request to Staff, marked as Exhibit 2.

I request the following:

First Request:
I request payment for violating my Eighth Amendment right to be free from cruel and unusual punishment in the amount of $ 2,000,000.00;

Second Request:
I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish in the amount of $ 2,000,000.00;

Third Request:
I request the United States be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment;

Fourth Request:
I request, due to the cruel and unusual punishment of being exposed for approximately 1-year to cancer causing asbestos, and mold, that I be given 5 days credit for every day of my incarceration from April 1, 2017 through, to, and including, October 11, 2018.  The total number of days is 560 served equaling a total credict of 2800 days or 93.3 months credited towards my 180 month sentence.

Thank you for your consideration of these facts and deciding in my favor as to each of the requests identified above and herein. (this page 2 attached is a continuation of my BP-9 for which this page accompanies).

*gave to Shelp in office at 4:50 PM 10.29.18*
*Amak present LKS*

SEA 1330.16(a)
Administrative Remedy Program
May 30, 2009
Attachment 1

**Federal Correctional Institution**
**Seagoville, Texas**

Administrative Remedy Procedures for Inmates
Informal Resolution Form   *Exhibit 1 - BP-9*

Bureau of Prisons Program Statement 1330.16, <u>Administrative Remedy Program</u>, requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form will be used to document your efforts toward informally resolving your grievance. Complete items 1-3 and return to your Correctional Counselor.

**INMATE'S COMPLAINT:**

1. State your specific complaint:   I was exposed to asbestos while at the Warehouse in vio-
lation of the Eighth Amendment from on or about April 1, 2017 to October 11,
2018. This was deliberately indifferent to my serious safety and medical needs.
I was also exposed to mold during the same time period due to the same reason
above. This could easily have been avoided.

2. State what efforts you have made to informally resolve your complaint:   This is the first effort I
have made to informally resolve my complaint and I know of no other effort I
could make to do so that is available to me.

3. State what resolution you request:   I request (1) $ 2,000,000.00 for violating 8th Amendment,
(2) $ 2,000,000.00 for loss of capacity of life in the future, pain, and mental
anguish, (3) medical/dental coverage for life, (4) 93.3 months credit since 4/2017.

| Springer, Lindsey Kent | 02580-063 | S-1 |
|---|---|---|
| Inmate Name | Register Number | Unit |

Inmate Signature _____   Date *10.29.18*

*Told by Shelp he will
route and return copy to me
10/29/18 4:50 PM*
*LKS*

**CORRECTIONAL COUNSELOR:**

. Efforts made to informally resolve and staff contacted: _____

_____

_____

_____

_____

_____

| No Informal Resolution - Issued BP-9 on _____ (Date)

| Informally Resolved on _____     _____
                              Date                 Inmate Signature

Counselor's Signature: _____     Date: _____

Unit Manager Review: _____     Date: _____

gave to P on 10.29.18
at 4:50 pm  not present ass

BP-A0148
JUNE 10

INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Counsel Shelp | October 29, 2018 |
| FROM: | REGISTER NO.: |
| Lindsey Kent Springer | 02580-063 |
| WORK ASSIGNMENT: | UNIT: |
| Warehouse Clerk | Camp, S-1     Exhibit 2-BP-9 1 of 2 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong

mold, between on or about April 1, 2017 through on or about October 11, 2018

when Mr. Rees had me help seal up two storage rooms at the Warehouse where I

work and post signs warning cancer causing asbestos was factually determined

to be present in both storage rooms. Mr. Christian and Mr. Rosales were

aware of the white panels with dark substances scattered throughout both rooms

falling from the ceilings on or about September/October 2017 causing air

quality issues with breathing I was experiencing and abnormal amounts of blood

flowing from my nose. The warehouse had previously been determined to contain

(see continuation of this request on the "ATTACHED SHEET" to this 1st page)

(Do not write below this line)
Page 1 of 2

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

ecord Copy - File; Copy - Inmate
OF

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER        SECTION 6

ATTACHED SHEET

Exhibit 2
2 of 2   BP-9

asbestos and received certain abatement procedures. Mr. Christian, in charge
of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were
aware that the Warehouse where I was exposed to asbestos-and mold-was built in
the 1930s and required to assume any substance in any room contains asbestos.
Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious
safety and medical needs to be provided oxygen-or air-free from cancer causing
asbestos and mold. After Mr. Christian treated both storage rooms for mildew,
I was directed that both storage rooms were safe to enter and use. I enquired
of Mr. Christian whether both rooms were safe to which Mr. Christian affirmed
to me that they were. Both rooms were sprayed with a substance which had a
soapy smell to it. I proceeded to enter both rooms on numberous occassions,
sometimes for extended periods of time, including cleaning the debris from the
government's property stored in each room before delivering it to its destinat-
ion. As of October 11, 2018, I was instructed not to enter either storage for
any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer
causing asbestos, and mold, subjecting me to cruel and unusual punishment in
violation of the Eighth Amendment to the Constitution of the United States,
when it was their duty to do so.

I am required to provide any request for relief administratively.
First Request for Relief:
     I request payment for violating my Eighth Amendment right to be free from
cruel and unusual punishment in the amount of $ 2,000,000.00;
Second Request for Relief:
     I request payment for having to fear for the rest of my life the loss of
capacity of life in the future, pain, and mental anguish in the amount of
$ 2,000,000.00;
Third Request for Relief:
     I request the United States be held liable for my medical and dental
expenses for the rest of my life due within 30 days of demand of payment;
Fourth Request for Relief:
     I request, due to the cruel and unusual punishment of being exposed for
approximately 1-year to cancer causing asbestos, and mold, that I be given 5
days credit for every day of my incarceration from April 1, 2017 through, to,
and including, October 11, 2018. The total number of days is 560 days served
equaling a total credit of 2800 days or 93.3 months credited towards my 180
month sentence.

     Thank you for your consideration of these facts and deciding in my favor
as to each of the requests identified above and herein. (this attached sheet
attaches with my Inmate Request to Staff and should be considered as if it
is a part and continuation of that request to its conclusion).

                              Truly,

                              Reg. # 02580-063
                              Lindsey Kent Springer
                              Warehouse Clerk

E X H I B I T

3



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

Federal Correctional Institution        Seagoville, Texas 75159

October 31, 2018

MEMORANDUM FOR SPRINGER #02580-063

FROM:        C. Rees, Environmental & Safety Compliance
Administrator

SUBJECT:        Notification

Upon notification of concerns of possible hazardous materials in
the outside Warehouse, FCI Seagoville has conducted the
following.
To ensure that OSHA standards were being followed, bulk material
samples were taken in the Warehouse storage areas 1&2 by two
independent licensed contractors on 10/10/2018 and 10/18/2018.
The results of both material samples read positive for Asbestos
Containing Materials (ACM). As a result, both areas with ACM
were sealed and labeled according to OSHA standards.
On 10/18/2018 and 10/22/2018 air samples were taken by two
independent licensed contractors and the laboratory results for
both air samples read negative for airborne asbestos.
Remediation by an independent licensed contractor of both areas
with ACM is going to commence as soon as possible. The areas
with ACM will remain sealed until the contractor begins the
remediation process.

FCI Seagoville makes every effort to ensure a safe work
environment for both staff and inmates.
I trust this has been responsive to your request.

**E X H I B I T**

4



## INMATE TRIAGE/SICKCALL/MEDICATION

## FCI SEAGOVILLE

### REASON FOR VISIT (MOTIVO DE LA VISITA)

____SICK CALL ONLY                          ____SICKCALL AND MED

SOLAMENTE                                   RENOVATION

NAME(NOMBRE) _Springer, Lindsey Kent_ DATE _11/9/18_

REGISTER# (Numero#) _02580-063_ UNIT _S-1_ Work _Warehouse_

What is your problem (PROBLEMA HOY? _I was exposed to asbestos and mold while working at the Warehouse for a lengthy period of time. See attached Memoradum as Exhibit 1._

**DO NOT WRITE ON THE BACK**

HOW LONG HAVE YOU HAD THIS PROBLEM _My exposure began apprx. 4/17 (April 1, 2017)_

DO YOU TAKE ANY OVER THE COUNTER MEDICATIONS _nose spray currenty_

PAIN SCALE 0-10_____ CALLOUTS TODAY_____

TRIAGE PERSONNEL NOTES: _Ms. Mohon —_
_Will contact Dr. Holla to determine what test to be taken and will know today, 11.9.18, or by Tuesday, 11.13.18, what will happen medically next for all 4 of us_



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

Federal Correctional Institution      Seagoville, Texas 75159

October 31, 2018

MEMORANDUM FOR SPRINGER #02580-063

FROM:      C. Rees, Environmental & Safety Compliance
Administrator

SUBJECT:      Notification

Upon notification of concerns of possible hazardous materials in
the outside Warehouse, FCI Seagoville has conducted the
following.
To ensure that OSHA standards were being followed, bulk material
samples were taken in the Warehouse storage areas 1&2 by two
independent licensed contractors on 10/10/2018 and 10/18/2018.
The results of both material samples read positive for Asbestos
Containing Materials (ACM). As a result, both areas with ACM
were sealed and labeled according to OSHA standards.
On 10/18/2018 and 10/22/2018 air samples were taken by two
independent licensed contractors and the laboratory results for
both air samples read negative for airborne asbestos.
Remediation by an independent licensed contractor of both areas
with ACM is going to commence as soon as possible. The areas
with ACM will remain sealed until the contractor begins the
remediation process.

FCI Seagoville makes every effort to ensure a safe work
environment for both staff and inmates.
I trust this has been responsive to your request.

Exhibit 1

E X H I B I T

5

U.S. DEPARTMENT OF JUSTICE                     **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons                                                        *Copy*

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Springer, Lindsey K.__   __02580-063__  __S-1__   __Seagoville__
       LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.      UNIT      INSTITUTION

**Part A– INMATE REQUEST**

I am requesting to receive medical treatment for exposure to cancer causing
asbestos and mold. On October 31, 2018 I was notified by Mr. Rees that I had
been exposed to asbestos found in two storage rooms in the warehouse. I made
sick call on November 9, 2018 and informed I would be contacted no later than
Tuesday, November 13, 2018 and informed of the medical treatment approved for
my exposure. I have not been contacted as of November 20, 2018. I have XXXXXXX
attached my attempt at informal resolution as Exhibit 1(2 pages).

I gave this to Counselor Shelp at 3:50 PM
on November 20, 2018 in his office.

__11.20.18__                                    __Lindsey K Springer__
    DATE                                        SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____          _____
        DATE                       WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

                                              CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____    _____   _____   _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____          _____
        DATE                       RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                                                         BP–229(13)
                                                               APRIL 1982



## INMATE TRIAGE/SICKCALL/MEDICATION

## FCI SEAGOVILLE

REASON FOR VISIT (MOTIVO DE LA VISITA)

____SICK CALL ONLY                          ____SICKCALL AND MED

SOLAMENTE                                    RENOVATION

NAME(NOMBRE) _Springer, Lindsey Kent_ DATE _11/9/18_

REGISTER# (Numero#) _02580-063_ UNIT _S-1_ Work _Warehouse_

What is your problem (PROBLEMA HOY? _I was exposed to asbestos and mold while working at the Warehouse for a lengthy period of time. See attached Memoradum as Exhibit 1._

**DO NOT WRITE ON THE BACK**

HOW LONG HAVE YOU HAD THIS PROBLEM _My exposure began apprx. 4/17 (April 1, 2017)_

DO YOU TAKE ANY OVER THE COUNTER MEDICATIONS _nose spray currenty_

PAIN SCALE 0-10_____ CALLOUTS TODAY_____

TRIAGE PERSONNEL NOTES: _Ms. Mohan —_
_Will contact Dr. Holla to determine what test to be taken and will know today, 11.9.18, or by Tuesday, 11.13.18, what will happen medically next for all 4 of us_

Exhibit 1
1 of 2



**U.S. Department of Justice**

**Federal Bureau of Prisons**

Federal Correctional Institution          Seagoville, Texas 75159

October 31, 2018

MEMORANDUM FOR SPRINGER #02580-063

FROM:          C. Rees, Environmental & Safety Compliance
               Administrator

SUBJECT:          Notification

Upon notification of concerns of possible hazardous materials in
the outside Warehouse, FCI Seagoville has conducted the
following.
To ensure that OSHA standards were being followed, bulk material
samples were taken in the Warehouse storage areas 1&2 by two
independent licensed contractors on 10/10/2018 and 10/18/2018.
The results of both material samples read positive for Asbestos
Containing Materials (ACM). As a result, both areas with ACM
were sealed and labeled according to OSHA standards.
On 10/18/2018 and 10/22/2018 air samples were taken by two
independent licensed contractors and the laboratory results for
both air samples read negative for airborne asbestos.
Remediation by an independent licensed contractor of both areas
with ACM is going to commence as soon as possible. The areas
with ACM will remain sealed until the contractor begins the
remediation process.

FCI Seagoville makes every effort to ensure a safe work
environment for both staff and inmates.
I trust this has been responsive to your request.

Exhibit 1
2 of 2

E X H I B I T

6

To:   Regional Director
      346 Marine Forces Dr.
      Grand Prairie, Texas 75051

From: Lindsey Kent Springer
      Reg. # 02580-063
      Federal Satellite Camp
      P.O. Box 9000
      Seagoville, Texas 75159

      Dear Regional Director:

      Please find enclosed with this letter my BP-10 with an original and
two additional copies of a continuation page.  Please also find attached to
my BP-10 an original and two additional copies of my BP-9 and accompanying
continuation page with attached Informal Resolution and Request to Staff
Forms.
      Thank you for your consideration of these matters.

                                          Truly,

December 5, 2018

Page 1 of 1

U.S. Department of Justice

Federal Bureau of Prisons

Regional Administrative Remedy Appeal   BP-10

*Copy*

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | Springer, Lindsey K. | 02580-063 | S-1, Camp | Seagoville |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

My reason for appeal is the denial by silence of my Request to Staff, Attempt at Informal Resolution, and BP-9.  See 28 CFR § 542.18. I filed my Request to Staff, Attempt at Informal Resolution, and BP-9 on October 29, 2018 and within 20 days of learning I had been exposed to cancer causing asbestos and mold from on or about April 1, 2017 to October 11, 2018 at Seagoville Federal Prison Camp.  Due to the absence of regulatory designated staff, and after finally obtaining the Informal Resolution and BP-9 Forms on or about October 25, 2018, I submitted the Three above listed Forms to Counselor Shelp at or around October 29, 2018 at around 4:50 PM. This date and time was the first opportunity to tender the attempts at administrative remedy exhaustion I had since finally obtaining the Forms on or about October 25, 2018.  I have made numerous oral and electronic attempts to determine the date my BP-9 was indexed in accordance with 28 CFR § 542.18 and no member of unit team has been able to provide me that information and I have never received any receipt acknowledging the Warden's receipt of my BP-9.  28 CFR § 542.11(a)(2) requires I be given a receipt by the Warden. I am unable to locate the administrative remedies required by 28 CFR §§ 542.10 through 542.18. (continued at attached sheet to this BP=10 also identified as page 2 of 2)

| December 5, 2018 | page 1 of 2 BP-10 | *Lindsey K. Springer* |
|---|---|---|
| DATE | | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

| | |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                     CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

| Return to: | | | | |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

⊛

BP-230(13)

page 2 of 2 BP-10 ATTACHED SHEET

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong mold, between on or about April 1, 2017         through on or about October 11, 2018 when Mr. Rees had signs warning two storage rooms at the Warehouse where I worked contained the Asbestos were posted.  Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms falling from the ceilings on or about September/October 2017 causing air quality issues with breathing that I was experiencing along with others.  I experienced abnormal flow of blood from my nose         .
The Warehouse had previously been determined to contain asbestos and received certain abatement procedures.  Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos-and mold-was built in the 1930s and required to presume any substance in any room that becomes loose contains asbestos.  Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided oxygen-or air-free from cancer causing asbestos and mold.  After Mr. Christian treated both storage rooms for the finding of mildew, I was directed that both storage rooms were safe to enter and use.  Mr. Christian was the source of that direction confirmed by Mr. Freeman.  Both rooms were sprayed with a substance which had a soapy smell to them.  I proceeded to enter both rooms on numerous occassions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering the property to its destination that had fallen from the ceiling.  As of October 11, 2018, I was instructed not to enter either storage room for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer causing asbestos, and mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so.

Attached to this BP-10 are (1) a copy of my Attempt at Informal Resolution, marked as Exhibit 1, (2) a copy of my Inmate Request to Staff, marked as Exhibit 2, and (3) a copy of my BP-9, marked as Exhibit 3.

I request the following:
**First Request**--I request you reverse the denial by silence of my BP-9 and GRANT the four requests for Remedy;
**Second Request**--I request you find there is no administrative remedy available to me at Seagoville Federal Prison Camp that is authorized to grant or deny the remedies I sought in my BP-9;
**Third Request**--I request payment for violating my Eighth Amendment right to be free from cruel and unusal punishment in the amount of $ 2,000,000.00;
**Fourth Request**--I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish in the amount of $ 2,000,000.00;
**Fifth Request**--I request the United States agree to be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment;
**Sixth Request**--I request, due to the cruel and unusal punishment of exposure to cancer causing asbestos and mold for approximately 18 months, that I be given 5 days credit for every day of my incarceration from April 1, 2017 through October 11, 2018. The total number of days is 560 equalling a credit of 2800 days or 93.3 months towards my 180 month sentence.

*gave to Shelp in office at 4:50 PM 10.29.18*
*Amat present XES*

SEA 1330.16(a)
Administrative Remedy Program
May 30, 2009
Attachment I

Federal Correctional Institution
Seagoville, Texas

Administrative Remedy Procedures for Inmates
Informal Resolution Form

Bureau of Prisons Program Statement 1330.16, <u>Administrative Remedy Program</u>, requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form will be used to document your efforts toward informally resolving your grievance.  Complete items 1-3 and return to your Correctional Counselor.

<u>INMATE'S COMPLAINT:</u>

1. State your specific complaint:   I was exposed to asbestos while at the Warehouse in violation of the Eighth Amendment from on or about April 1, 2017 to October 11, 2018. This was deliberately indifferent to my serious safety and medical needs. I was also exposed to mold during the same time period due to the same reason above. This could easily have been avoided.

2. State what efforts you have made to informally resolve your complaint: This is the first effort I have made to informally resolve my complaint and I know of no other effort I could make to do so that is available to me.

3. State what resolution you request: I request (1) $ 2,000,000.00 for violating 8th Amendment, (2) $ 2,000,000.00 for loss of capacity of life in the future, pain, and mental anguish, (3) medical/dental coverage for life, (4) 93.3 months credit since 4/2017.

Springer, Lindsey Kent            02580-063                    S-1

| Inmate Name | Register Number | Unit |
|---|---|---|

*[signature] Lindsey K. Springer*          10.29.18

Inmate Signature                 Date

*Told by Shelp he will route and return copy to me 10/29/18 4:50 PM XES*

<u>CORRECTIONAL COUNSELOR:</u>

1. Efforts made to informally resolve and staff contacted: _____

_____

_____

_____

_____

[ ] No Informal Resolution - Issued BP-9 on _____ (Date)          *Exhibit 1 - BP-10*
                                                                           *1 of 1*
[ ] Informally Resolved on _____     _____
                              Date                 Inmate Signature

Counselor's Signature: _____     Date: _____

Unit Manager Review: _____     Date: _____

*gave to IP VR 10-29-18*
*at 4:56 pm*     *Amck Present*

BP-A0148
JUNE 10
U.S. DEPARTMENT OF JUSTICE

INMATE REQUEST TO STAFF CDFRM

FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Counsel Shelp | DATE: October 29, 2018 |
|---|---|
| FROM: Lindsey Kent Springer | REGISTER NO.: 02580-063 |
| WORK ASSIGNMENT: Warehouse Clerk | UNIT: Camp, S-1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong

mold, between on or about April 1, 2017 through on or about October 11, 2018

when Mr. Rees had me help seal up two storage rooms at the Warehouse where I

work and post signs warning cancer causing asbestos was factually determined

to be present in both storage rooms. Mr. Christian and Mr. Rosales were

aware of the white panels with dark substances scattered throughout both rooms

falling from the ceilings on or about September/October 2017 causing air

quality issues with breathing I was experiencing and abnormal amounts of blood

flowing from my nose. The warehouse had previously been determined to contain

(see continuation of this request on the "ATTACHED SHEET" to this 1st page)

(Do not write below this line)

Page 1 of 2

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Prescribed by P5511

*Exhibit 2-BP-10*
*1 of 2*

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

SECTION 6

ATTACHED SHEET

asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos-and mold-was built in the 1930s and required to assume any substance in any room contains asbestos. Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided oxygen-or air-free from cancer causing asbestos and mold. After Mr. Christian treated both storage rooms for mildew, I was directed that both storage rooms were safe to enter and use. I enquired of Mr. Christian whether both rooms were safe to which Mr. Christian affirmed to me that they were. Both rooms were sprayed with a substance which had a soapy smell to it. I proceeded to enter both rooms on numberous occassions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering it to its destination. As of October 11, 2018, I was instructed not to enter either storage for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer causing asbestos, and mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so.

I am required to provide any request for relief administratively.

First Request for Relief:
I request payment for violating my Eighth Amendment right to be free from cruel and unusal punishment in the amount of $ 2,000,000.00;

Second Request for Relief:
I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish in the amount of $ 2,000,000.00;

Third Request for Relief:
I request the United States be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand of payment;

Fourth Request for Relief:
I request, due to the cruel and unusual punishment of being exposed for approximately 1-year to cancer causing asbestos, and mold, that I be given 5 days credit for every day of my incarceration from April 1, 2017 through, to, and including, October 11, 2018. The total number of days is 560 days served equaling a total credit of 2800 days or 93.3 months credited towards my 180 month sentence.

Thank you for your consideration of these facts and deciding in my favor as to each of the requests identified above and herein. (this attached sheet attaches with my Inmate Request to Staff and should be considered as if it is a part and continuation of that request to its conclusion).

Truly,

Reg. # 02580-063
Lindsey Kent Springer
Warehouse Clerk

Exhibit 2 - BP-10
2 of 2

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | SPRINGER, LINDSEY K | 02580-063 | Camp, S-1 | Seagoville |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong mold, between on or about April 1, 2017 through on or about October 11, 2018, when Mr. Rees had me help seal up two storage rooms at the Warehouse where I work and post signs warning cancer causing asbestos was factually determined to be present in both storage rooms. Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms fall-ing from the ceilings on or about September/October 2017 causing air quality issues with breathing I was experiencing and abnormal amounts of blood flow-ing from my nose. The Warehouse had previously been determined to contain asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos-and mold-was built in the 1930s and required to presume any substance in any room that becomes loose contains asbestos. Both Mr. Christian and Mr. Rosales were deliberat-ely indifferent to my serious safety and medical needs to be provided (see page 2 attached for a continuation of the request herein)

10-29-18                    gave BP-a to Shelp on
_____            10.29.18 mak present
DATE                                                    SIGNATURE OF REQUESTER

**Part B- RESPONSE**

Exhibit 3-BP10
1 of 2

_____                    _____
DATE                                   WARDEN OR REGIONAL DIRECTOR

*dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

                                              CASE NUMBER: _____

Part C- RECEIPT

eturn to: _____    _____    _____    _____
           LAST NAME, FIRST, MIDDLE INITIAL              REG. NO.        UNIT      INSTITUTION

JBJECT: _____

page 2 attached

oxygen-or air-free from cancer causing asbestos and mold.  After Mr. Christian treated both storage rooms for the finding of mildew, I was directed that both storage rooms were safe to enter and use.  I enquired of Mr. Christian as to whether both rooms were safe to enter and use to which Mr. Christian affirmed to me that they were safe and usable. Both rooms were sprayed with a substance which had a soapy smell to it.  I proceeded to enter both rooms on numerous occassions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering the property to its destination that had fallen from the ceiling.  As of October 11, 2018, I was instructed not to enter either storage for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer causing asbestos, and mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so.

Attached to this BP-9 are (1) a copy of my attempt at informal resolution, marked as Exhibit 1, and (2) a copy of my Inmate Request to Staff, marked as Exhibit 2.

I request the following:

First Request:

I request payment for violating my Eighth Amendment right to be free from cruel and unusual punishment in the amount of $ 2,000,000.00;

Second Request:

I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish in the amount of $ 2,000,000.00;

Third Request:

I request the United States be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment;

Fourth Request:

I request, due to the cruel and unusual punishment of being exposed for approximately 1-year to cancer causing asbestos, and mold, that I be given 5 days credit for every day of my incarceration from April 1, 2017 through, to, and including, October 11, 2018.  The total number of days is 560 served equaling a total credit of 2800 days or 93.3 months credited towards my 180 month sentence.

Thank you for your consideration of these facts and deciding in my favor as to each of the requests identified above and herein. (this page 2 attached is a continuation of my BP-9 for which this page accompanies).

Exhibit 3 -BP-10
2 of 5

*gave to Shefp in offece at 4:50 PM 10.29.18*
*Anat present ∠(S)*

SEA 1330.16(a)
Administrative Remedy Program
May 30, 2009
Attachment 1

**Federal Correctional Institution**
**Seagoville, Texas**

Administrative Remedy Procedures for Inmates
Informal Resolution Form

*Exhibit 1 - BP-9*

Bureau of Prisons Program Statement 1330.16, <u>Administrative Remedy Program</u>, requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form will be used to document your efforts toward informally resolving your grievance. Complete items 1-3 and return to your Correctional Counselor.

**INMATE'S COMPLAINT:**

State your specific complaint: I was exposed to asbestos while at the Warehouse in violation of the Eighth Amendment from on or about April 1, 2017 to October 11, 2018. This was deliberately indifferent to my serious safety and medical needs. I was also exposed to mold during the same time period due to the same reason above. This could easily have been avoided.

State what efforts you have made to informally resolve your complaint: This is the first effort I have made to informally resolve my complaint and I know of no other effort I could make to do so that is available to me.

State what resolution you request: I request (1) $ 2,000,000.00 for violating 8th Amendment, (2) $ 2,000,000.00 for loss of capacity of life in the future, pain, and mental anguish, (3) medical/dental coverage for life, (4) 93.3 months credit since 4/2017.

| Springer, Lindsey Kent | 02580-063 | S-1 |
|---|---|---|
| Inmate Name | Register Number | Unit |

Inmate Signature: *Lindsey K Springer*   Date: *10.29.18*

*Told by Shefp he will route and return copy to me 10/29/18 4:50 PM ∠(S)*

**CORRECTIONAL COUNSELOR:**

Efforts made to informally resolve and staff contacted: _____
_____
_____
_____
_____
_____

No Informal Resolution - Issued BP-9 on _____ (Date)

*Exhibit 3 - BP-10*
*3 of 5*

Informally Resolved on _____        _____
                          Date                 Inmate Signature

Counselor's Signature: _____   Date: _____

Unit Manager Review: _____   Date: _____

*gave to ___ at 4:56 pm Amek Asst*

INMATE REQUEST TO STAFF CDFRM

BP-A0148
JUNE 10

FEDERAL BUREAU OF PRISONS

U.S. DEPARTMENT OF JUSTICE

| TO: (Name and Title of Staff Member) Counsel Shelp | DATE: October 29, 2018 |
| FROM: Lindsey Kent Springer | REGISTER NO.: 02580-063 |
| WORK ASSIGNMENT: Warehouse Clerk | UNIT: Camp, S-1 |

*Exhibit 2  1 of 2*  *BP.9*

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong mold, between on or about April 1, 2017 through on or about October 11, 2018 when Mr. Rees had me help seal up two storage rooms at the Warehouse where I work and post signs warning cancer causing asbestos was factually determined to be present in both storage rooms. Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms falling from the ceilings on or about September/October 2017 causing air quality issues with breathing I was experiencing and abnormal amounts of blood flowing from my nose. The warehouse had previously been determined to contain

(see continuation of this request on the "ATTACHED SHEET" to this 1st page)

(Do not write below this line)
Page 1 of 2

DISPOSITION:

| Signature Staff Member | Date |

Record Copy - File; Copy - Inmate

Prescribed by P5511

*Exhibit 3-BP-10  4 of 5*

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR Privacy Folder

SECTION 6

ATTACHED SHEET

Exhibit 2
2 of 2 BP-9

asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos-and mold-was built in the 1930s and required to assume any substance in any room contains asbestos. Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided oxygen-or air-free from cancer causing asbestos and mold. After Mr. Christian treated both storage rooms for mildew, I was directed that both storage rooms were safe to enter and use. I enquired of Mr. Christian whether both rooms were safe to which Mr. Christian affirmed to me that they were. Both rooms were sprayed with a substance which had a soapy smell to it. I proceeded to enter both rooms on numberous occassions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering it to its destination. As of October 11, 2018, I was instructed not to enter either storage for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer causing asbestos, and mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so.

I am required to provide any request for relief administratively.

First Request for Relief:

I request payment for violating my Eighth Amendment right to be free from cruel and unusal punishment in the amount of $ 2,000,000.00;

Second Request for Relief:

I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish in the amount of $ 2,000,000.00;

Third Request for Relief:

I request the United States be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand of payment;

Fourth Request for Relief:

I request, due to the cruel and unusual punishment of being exposed for approximately 1-year to cancer causing asbestos, and mold, that I be given 5 days credit for every day of my incarceration from April 1, 2017 through, to, and including, October 11, 2018. The total number of days is 560 days served equaling a total credit of 2800 days or 93.3 months credited towards my 180 month sentence.

Thank you for your consideration of these facts and deciding in my favor as to each of the requests identified above and herein. (this attached sheet attaches with my Inmate Request to Staff and should be considered as if it is a part and continuation of that request to its conclusion).

Truly,

_Lindsey K. Springer_

Reg. # 02580-063
Lindsey Kent Springer
Warehouse Clerk

Exhibit 3-BP-10
5 of 5

CERTIFICATE OF SERVICE

I hereby certify that on December 5 , 2018 I sent by U.S. Mail, First Class, Postage Prepaid, my BP-10 and continuation pages and accompaning Exhibits to the Regional Director, 346 Marine Forces Dr., Grand Prairie, Texas 75051,

_Server_

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that on December 5 , 2018 I deposited my BP-10 and continuation pages and accompanying Exhibits in the U.S. Mailbox located inside Seagoville Federal Prison Camp to the address for the Regional Director listed above.

I also declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that I personally witnessed the BP-10 and continuation pages, and accompanying Exhibits, were deposited in the envelope for which this Certificate of Service and Declaration of Mailing was placed within.

_Declarant_

Page 1

**E X H I B I T**

7

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: DECEMBER 13, 2018

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : LINDSEY KENT SPRINGER, 02580-063
      SEAGOVILLE FCI   UNT: CAMP    QTR: S01-011U
      2113 NORTH HWY 175
      SEAGOVILLE,  TX 75159


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 962199-R1       REGIONAL APPEAL
DATE RECEIVED   : DECEMBER 10, 2018
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : REQUESTS FOR MONETARY COMPENSATION
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF YOUR   INSTITUTION
                 ADMINISTRATIVE REMEDY REQUEST (BP-9) FORM OR   A COPY
                 OF THE (BP-09) RESPONSE FROM THE WARDEN.

REJECT REASON 2: SEE REMARKS.

REMARKS         : YOU MUST INCLUDE A COPY OF THE WARDEN'S RESPONSE
                  WITH YOUR APPEAL.  THE WARDEN'S RESPONSE IS DUE
                  12/31/18.

RECEIVED
WARDEN'S OFFICE
DEC 18 2018
FCI SEAGOVILLE

E X H I B I T

8

RECEIPT - ADMINISTRATIVE REMEDY

DATE: DECEMBER 21, 2018

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SEAGOVILLE FCI

TO  : LINDSEY KENT SPRINGER, 02580-063
      SEAGOVILLE FCI     UNT: CAMP     QTR: S01-011U

THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID      : 962199-F1
DATE RECEIVED  : DECEMBER 11, 2018
RESPONSE DUE   : DECEMBER 31, 2018
SUBJECT 1      : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2      : REQUESTS FOR MONETARY COMPENSATION

Springer
03580-063

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | SPRINGER, LINDSEY K | 02580-063 | Camp, S-1 | Seagoville |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong mold, between on or about April 1, 2017 through on or about October 11, 2018, when Mr. Rees had me help seal up two storage rooms at the Warehouse where I work and post signs warning cancer causing asbestos was factually determined to be present in both storage rooms. Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms falling from the ceilings on or about September/October 2017 causing air quality issues with breathing I was experiencing and abnormal amounts of blood flowing from my nose. The Warehouse had previously been determined to contain asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos-and mold-was built in the 1930s and required to presume any substance in any room that becomes loose contains asbestos. Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided (see page 2 attached for a continuation of the request herein)

10.29.18
_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B- RESPONSE**

RECEIVED
WARDEN'S OFFICE

DEC 11 2018

FCI SEAGOVILLE

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

CASE NUMBER: 962199-F1

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 962199-F1

**Part C- RECEIPT**

Return to: Springer Lindsey        02580-063    Camp      SEA
          LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: Asbestos/Reg Compensation        (Wandersluc)

12/11/18

**E X H I B I T**

**9**

Part B: Response to Request for Administrative Remedy          FCI Seagoville, Texas

Springer, Lindsey
Register No.: 02580-063
Remedy No.: 962199-F1


This is in response to your Request for Administrative Remedy
receipted December 11, 2018, wherein you allege that: You were
exposed to friable and non-friable cancer causing Asbestos and
strong mold between on or about January 29, 2018 through on or
about October 11, 2018 at your place of work, the outside
warehouse. Staff were indifferent to your serious safety and
medical needs to be provided oxygen-air-free from cancer causing
asbestos and mold. Staff failed to protect you from exposure to
cancer causing asbestos and mold. You were subjected to cruel
and unusual punishment in violation of the eighth amendment of
the Constitution of the United States.

Research into your request reveals that upon notification of
concerns of possible hazardous materials in the outside
Warehouse, FCI Seagoville has conducted the following:
To ensure that OSHA standards were being followed, bulk material
samples were taken in the Warehouse storage areas 1&2 by two
independent licensed contractors on 10/10/2018 and 10/18/2018.
The results of both bulk material samples read positive for
Asbestos Containing Materials (ACM) in the mastic that adheres
to the ceilings of the storage areas. Although present, the
Asbestos was determined to be non-friable. As a result, both
areas with ACM were sealed and labeled according to OSHA
standards.

On 10/18/2018 and 10/22/2018 air samples were taken by two
independent licensed contractors and the laboratory results for
both air samples read negative for airborne asbestos.

The Occupational Safety and Health Administration has quantified
an Asbestos Exposure to be as follows:

     1910.1001(c)
     Permissible exposure limit (PELS) --
     1910.1001(c) (1)
     Time-weighted average limit (TWA). The employer shall
     ensure that no employee is exposed to an airborne
     concentration of asbestos in excess of 0.1 fiber per cubic
     centimeter of air as an eight (8)-hour time-weighted
     average (TWA) as determined by the method prescribed in
     Appendix A to this section, or by an equivalent method.

1910.1001(c) (2)
Excursion limit. The employer shall ensure that no employee
is exposed to an airborne concentration of asbestos in
excess of 1.0 fiber per cubic centimeter of air (1 f/cc) as
averaged over a sampling period of thirty (30) minutes as
determined by the method prescribed in Appendix A to this
section, or by an equivalent method.

Due to the results of the two air samples taken and analyzed by
two independent contractors, it can be determined that that no
exposure has taken place.

Remediation by an independent licensed contractor of both areas
with ACM is going to commence as soon as possible.  The areas
with ACM will remain sealed until the contractor begins the
remediation process.

FCI Seagoville makes every effort to ensure a safe work
environment for both staff and inmates.

Based on the above facts/information/reasons, the relief you
seek is denied.

If you are not satisfied with this response, you may appeal to
the South Central Regional Director, 344 Marine Forces Drive,
Grand Prairie, Texas 75051, via BP-DIR-10, within 20 calendar
days of the date of this response.

_____          12/26/14
M. Underwood, Warden             Date

E X H I B I T

10

To:   National Inmate Appeals Administrator
      Office of General Counsel
      Central Office-Bureau of Prisons
      320 First Street, N.W.
      Washington, D.C. 20534

From:  Lindsey Kent Springer
       Reg. # 02580-063
       Federal Satellite Camp
       P.O. Box 9000
       Seagoville, Texas 75159

Dear General Counsel/National Inmate Appeals Administrator:

Please find enclosed with this letter my BP-11 and 4 copies of the continuation page with (1) a copy of the Regional Director's Rejection Letter dated December 13, 2018 (Attachment A), (2) a copy of my Institutional Filings (Attachment B), and (3) a copy of my Regional Filings (Attachment C).

Thank you for your consideration of these matters.

January __7__, 2019

Truly,

*[signature]*

Page 1 of 1

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: __Springer, Lindsey K.__    __02580-063__    __S-1, Camp__    __Seagoville__
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

Part A—REASON FOR APPEAL   My reason for this appeal under 28 CFR § 542.15(a) are that my
December 5, 2018 BP-10 and attached 3 Exhibits (including a complete copy of my
BP-9) received by the SCRO on December 10, 2018, was rejected on December 13,
2018, by an unsigned letter returning my complete BP-10 and Exhibits, stating
(1) I had not provided a copy of my BP-9, or (2) I had not provided a copy of the
Warden's Response to my BP-9. See Attachment A, p.X 1. Under 28 CFR § 542.18, the
Regional Director ("RD") has 30 days from December 10, 2018, to make response to
my BP-10. The rejection letter must be signed. 28 CFR § 542.17(b). I clearly pro-
vided a copy of my BP-9 and Exhibits with my BP-10. See Attachment A. As indic-
ated by my BP-10, there was no BP-9 Response from the Warden and the time to do
so had expired by December 5, 2018. See 28 CFR § 542.18(20 days). From October
29, 2018, through December 5, 2018, I was unable to obtain from the Warden's
staff any receipt required by 28 CFR § 542.11(a)(2).  The unsigned rejection let-
ter from the RD Office directs the Warden Respond to my BP-9 by December 31, 2018.
See Exhibit A.  The unsigned rejection letter does not provide the opportunity
to correct triggering my right to appeal to the Central Office under 28 CFR §§
542.15 and 542.17(c). (continued at continuation page marked as page, 2 attached)

__January 7, 2019__                        _[signature]_
DATE                                    SIGNATURE OF REQUESTER

Part B—RESPONSE




_____                        _____
DATE                                    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE              CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Part C—RECEIPT                          CASE NUMBER: _____

Return to: _____    _____    _____    _____
           LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____          ⊕          _____
DATE                                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN                                                              BP-231(13)
                                                                    APRIL 1982

Page 2 of BP-11

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong Mold, between on or about ___April 1, 2017___ through on or about October 11, 2018, when Mr. Rees had signs warning two storage rooms at the Warehouse where I worked contained the Asbestos were posted. Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms falling from the ceilings on or about September/October 2017 causing air quality issues with breathing that I was experiencing along with others. I experienced ___abnormal flow of blood from my nose___.

The Warehouse had previously been determined to contain Asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, AW in charge of operations, were aware that the Warehouse where I was exposed to Asbestos-and Mold-was built in the 1930s and required to presume any substance in any room that becomes loose contains Asbestos. Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided oxygen-or air-free from Cancer Causing Asbestos and Mold. After Mr. Christian treated both storage rooms for the finding of mildew, I was directed that both storage rooms were safe to enter and use. Mr. Christian was the source of that direction confirmed by Mr. Freeman. Both rooms were sprayed with a substance which had a soapy smell to them. I proceeded to enter both rooms on numerous occassions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering the property to its destination that had fallen from the ceiling. As of October 11, 2018, I was instructed not to enter either storage room for any reason. Mr. Christian and Mr. Rosales failed to protect me from exposure to Cancer Causing Asbestos, and Mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so. Attached to this BP-11 are (1) one complete copy of my Institutional filings (Attachment B), (2) one complete copy of my Regional filings (Attachment C), and (3) the Rejection Letter (unsigned) from the SCRO. See Attachment A, p.1.

**First Request--**I request you find my BP-9 was attached to my BP-10, as Exhibit 3, and that the RD's letter is a denial of my claims therein;

**Second Request--**I request you accept this completed BP-11 for filing and GRANT all the relief requested on the claims made;

**Third Request--**I request payment for violatiing my Eighth Amendment right to be free from cruel and unusual punishment in the amount of $ 2,000,000.00;

**Fourth Request--**I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish, in the amount of $ 2,000,000.00;

**Fifth Request--**I request the United States agree to be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment;

**Sixth Request--**I request, due to the cruel and unusual punishment of exposure to Cancer Causing Asbestos, and Mold, for approximately 18 months, that I be given 5 days credit for everyday of my incarceration from ___April 1, 2017___ to October 11, 2018, the Total number of days is ___560___, equaling a credit of ___2800___ days, or ___93.3___ months, towards my ___180___ month sentence.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: DECEMBER 13, 2018

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : LINDSEY KENT SPRINGER, 02580-063
      SEAGOVILLE FCI    UNT: CAMP    QTR: S01-011U
      2113 NORTH HWY 175
      SEAGOVILLE, TX 75159


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 962199-R1        REGIONAL APPEAL
DATE RECEIVED   : DECEMBER 10, 2018
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : REQUESTS FOR MONETARY COMPENSATION
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF YOUR   INSTITUTION
                 ADMINISTRATIVE REMEDY REQUEST (BP-9) FORM OR   A COPY
                 OF THE (BP-09) RESPONSE FROM THE WARDEN.

REJECT REASON 2: SEE REMARKS.

REMARKS         : YOU MUST INCLUDE A COPY OF THE WARDEN'S RESPONSE
                  WITH YOUR APPEAL.  THE WARDEN'S RESPONSE IS DUE
                  12/31/18.


RECEIVED
WARDEN'S OFFICE

DEC 18 2018

FCI SEAGOVILLE


Attachment A
(1 page)

U.S. DEPARTMENT OF JUSTICE                           REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

BP-9
Copy

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | SPRINGER, LINDSEY K | 02580-063 | Camp, S-1 | Seagoville |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong mold, between on or about April 1, 2017 through on or about October 11, 2018, when Mr. Rees had me help seal up two storage rooms at the Warehouse where I work and post signs warning cancer causing asbestos was factually determined to be present in both storage rooms. Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms falling from the ceilings on or about September/October 2017 causing air quality issues with breathing I was experiencing and abnormal amounts of blood flowing from my nose. The Warehouse had previously been determined to contain asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos-and mold-was built in the 1930s and required to presume any substance in any room that becomes loose contains asbestos.  Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided (see page 2 attached for a continuation of the request herein)

| 10-29-18 | gave BP-9 to Shelpin 10-29-18 mak present |  |
|---|---|---|
| DATE | | SIGNATURE OF REQUESTER |

**Part B- RESPONSE**

Attachment B
(5 pages)

| | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                         CASE NUMBER: _____

                                                    CASE NUMBER: _____

**Part C- RECEIPT**

turn to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

BJECT: _____

page 2 attached

oxygen-or air-free from cancer causing asbestos and mold. After Mr. Christian treated both storage rooms for the finding of mildew, I was directed that both storage rooms were safe to enter and use. I enquired of Mr. Christian as to whether both rooms were safe to enter and use to which Mr. Christian affirmed to me that they were safe and usable. Both rooms were sprayed with a substance which had a soapy smell to it. I proceeded to enter both rooms on numerous occassions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering the property to its destination that had fallen from the ceiling. As of October 11, 2018, I was instructed not to enter either storage for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer causing asbestos, and mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so.

Attached to this BP-9 are (1) a copy of my attempt at informal resolution, marked as Exhibit 1, and (2) a copy of my Inmate Request to Staff, marked as Exhibit 2.

I request the following:

First Request:

I request payment for violating my Eighth Amendment right to be free from cruel and unusual punishment in the amount of $ 2,000,000.00;

Second Request:

I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish in the amount of $ 2,000,000.00;

Third Request:

I request the United States be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment;

Fourth Request:

I request, due to the cruel and unusual punishment of being exposed for approximately 1-year to cancer causing asbestos, and mold, that I be given 5 days credit for every day of my incarceration from April 1, 2017 through, to, and including, October 11, 2018. The total number of days is 560 served equaling a total credict of 2800 days or 93.3 months credited towards my 180 month sentence.

Thank you for your consideration of these facts and deciding in my favor as to each of the requests identified above and herein. (this page 2 attached is a continuation of my BP-9 for which this page accompanies).

*gave to Shelp in office at 4:50 PM 10.29.18*
*Inmate present LKS*

SEA 1330.16(a)
Administrative Remedy Program
May 30, 2009
Attachment I

**Federal Correctional Institution
Seagoville, Texas**

Administrative Remedy Procedures for Inmates
Informal Resolution Form          *Exhibit 1 - BP-9*

Bureau of Prisons Program Statement 1330.16, <u>Administrative Remedy Program</u>, requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form will be used to document your efforts toward informally resolving your grievance.   Complete items 1-3 and return to your Correctional Counselor.

<u>INMATE'S COMPLAINT</u>:

1. State your specific complaint:    I was exposed to asbestos while at the Warehouse in vio-
    lation of the Eighth Amendment from on or about April 1, 2017 to October 11,
    2018.   This was deliberately indifferent to my serious safety and medical needs.
    I was also exposed to mold during the same time period due to the same reason
    above.   This could easily have been avoided.

2. State what efforts you have made to informally resolve your complaint:   This is the first effort I
    have made to informally resolve my complaint and I know of no other effort I
    could make to do so that is available to me.

3. State what resolution you request:   I request (1) $ 2,000,000.00 for violating 8th Amendment,
    (2) $ 2,000,000.00 for loss of capacity of life in the future, pain, and mental
    anguish, (3) medical/dental coverage for life, (4) 93.3 months credit since 4/2017.

Springer, Lindsey Kent          02580-063          S-1

Inmate Name                     Register Number          Unit

*Lindsey K Springer*       *10.29.18*       *Told by Shelp he will
route and return copy to me
10/29/18 4:50 PM LKS*

Inmate Signature          Date

<u>CORRECTIONAL COUNSELOR</u>:

.. Efforts made to informally resolve and staff contacted: _____
_____
_____
_____
_____
_____

]  No Informal Resolution - Issued BP-9 on _____   (Date)

]  Informally Resolved on _____     _____
                          Date                  Inmate Signature

Counselor's Signature: _____     Date: _____

Unit Manager Review: _____     Date: _____

*gave to ... at 4:50 pm ... Ack recpt ...*

INMATE REQUEST TO STAFF CDFRM

BP-A0148
JUNE 10
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member)<br>Counsel Shelp | DATE:<br>October 29, 2018 |
|---|---|
| FROM:<br>Lindsey Kent Springer | REGISTER NO.:<br>02580-063 |
| WORK ASSIGNMENT:<br>Warehouse Clerk | UNIT:<br>Camp, S-1    *Exhibit 2-BP-9*<br>*1 of 2* |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong
mold, between on or about April 1, 2017 through on or about October 11, 2018
when Mr. Rees had me help seal up two storage rooms at the Warehouse where I
work and post signs warning cancer causing asbestos was factually determined
to be present in both storage rooms. Mr. Christian and Mr. Rosales were
aware of the white panels with dark substances scattered throughout both rooms
falling from the ceilings on or about September/October 2017 causing air
quality issues with breathing I was experiencing and abnormal amounts of blood
flowing from my nose. The warehouse had previously been determined to contain
(see continuation of this request on the "ATTACHED SHEET" to this 1st page)

(Do not write below this line)
Page 1 of 2

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

ecord Copy - File; Copy - Inmate
DF

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER    SECTION 6

ATTACHED SHEET

Exhibit 2
2 of 2    BP-9

asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos-and mold-was built in the 1930s and required to assume any substance in any room contains asbestos. Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided oxygen-or air-free from cancer causing asbestos and mold. After Mr. Christian treated both storage rooms for mildew, I was directed that both storage rooms were safe to enter and use. I enquired of Mr. Christian whether both rooms were safe to which Mr. Christian affirmed to me that they were. Both rooms were sprayed with a substance which had a soapy smell to it. I proceeded to enter both rooms on numberous occassions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering it to its destination. As of October 11, 2018, I was instructed not to enter either storage for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer causing asbestos, and mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so.

I am required to provide any request for relief administratively.
First Request for Relief:
I request payment for violating my Eighth Amendment right to be free from cruel and unusal punishment in the amount of $ 2,000,000.00;
Second Request for Relief:
I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish in the amount of $ 2,000,000.00;
Third Request for Relief:
I request the United States be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand of payment;
Fourth Request for Relief:
I request, due to the cruel and unusual punishment of being exposed for approximately 1-year to cancer causing asbestos, and mold, that I be given 5 days credit for every day of my incarceration from April 1, 2017 through, to, and including, October 11, 2018. The total number of days is 560 days served equaling a total credit of 2800 days or 93.3 months credited towards my 180 month sentence.

Thank you for your consideration of these facts and deciding in my favor as to each of the requests identified above and herein. (this attached sheet attaches with my Inmate Request to Staff and should be considered as if it is a part and continuation of that request to its conclusion).

Truly,

Reg. # 02580-063
Lindsey Kent Springer
Warehouse Clerk

To:   Regional Director
      346 Marine Forces Dr.
      Grand Prairie, Texas 75051

From: Lindsey Kent Springer
      Reg. # 02580-063
      Federal Satellite Camp
      P.O. Box 9000
      Seagoville, Texas 75159

      Dear Regional Director:

      Please find enclosed with this letter my BP-10 with an original and
two additional copies of a continuation page.  Please also find attached to
my BP-10 an original and two additional copies of my BP-9 and accompanying
continuation page with attached Informal Resolution and Request to Staff
Forms.
      Thank you for your consideration of these matters.

                                        Truly,

December 5, 2018

                        Attachment C
                         (14 pages)

                        Page 1 of 1

U.S. Department of Justice

Federal Bureau of Prisons

Regional Adminis...ve Remedy Appeal BP-(O

Copy

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: **Springer, Lindsey K.**               **02580-063**          **S-1, Camp**        **Seagoville**
　　　LAST NAME, FIRST, MIDDLE INITIAL                REG. NO.                UNIT                INSTITUTION

**Part A—REASON FOR APPEAL**

My reason for appeal is the denial by silence of my Request to Staff, Attempt at Informal Resolution, and BP-9.  See 28 CFR § 542.18. I filed my Request to Staff, Attempt at Informal Resolution, and BP-9 on October 29, 2018 and within 20 days of learning I had been exposed to cancer causing asbestos and mold from on or about April 1, 2017 to October 11, 2018 at Seagoville Federal Prison Camp.  Due to the absence of regulatory designated staff, and after finally obtaining the Informal Resolution and BP-9 Forms on or about October 25, 2018, I submitted the Three above listed Forms to Counselor Shelp at or around October 29, 2018 at around 4:50 PM. This date and time was the first opportunity to tender the attempts at administrative remedy exhaustion I had since finally obtaining the Forms on or about October 25, 2018.  I have made numerous oral and electronic attempts to determine the date my BP-9 was indexed in accordance with 28 CFR § 542.18 and no member of unit team has been able to provide me that information and I have never received any receipt acknowledging the Warden's receipt of my BP-9.  28 CFR § 542.11(a)(2) requires I be given a receipt by the Warden. I am unable to locate the administrative remedies required by 28 CFR §§ 542.10 through 542.18. (continued at attached sheet to this BP=10 also identified as page 2 of 2)

December 5, 2018                        page 1 of 2 BP-10  _Lindsey K. Springer_
　　　DATE                                                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____               _____
　　　DATE                                                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                          CASE NUMBER: _____

**Part C—RECEIPT**

                                                                    CASE NUMBER: _____

Return to: _____  _____  _____  _____
　　　　　　LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.        UNIT          INSTITUTION

SUBJECT: _____

BP-230(13)

### page 2 of 2 BP-10 ATTACHED SHEET

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong mold, between on or about  April 1, 2017  through on or about October 11, 2018 when Mr. Rees had signs warning two storage rooms at the Warehouse where I worked contained the Asbestos were posted.  Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms falling from the ceilings on or about September/October 2017 causing air quality issues with breathing that I was experiencing along with others.  I experienced  abnormal flow of blood from my nose                         .
The Warehouse had previously been determined to contain asbestos and received certain abatement procedures.  Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos-and mold-was built in the 1930s and required to presume any substance in any room that becomes loose contains asbestos.  Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided oxygen-or air-free from cancer causing asbestos and mold.  After Mr. Christian treated both storage rooms for the finding of mildew, I was directed that both storage rooms were safe to enter and use.  Mr. Christian was the source of that direction confirmed by Mr. Freeman.  Both rooms were sprayed with a substance which had a soapy smell to them.  I proceeded to enter both rooms on numerous occcasions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering the property to its destination that had fallen from the ceiling.  As of October 11, 2018, I was instructed not to enter either storage room for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer causing asbestos, and mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so.

Attached to this BP-10 are (1) a copy of my Attempt at Informal Resolution, marked as Exhibit 1, (2) a copy of my Inmate Request to Staff, marked as Exhibit 2, and (3) a copy of my BP-9, marked as Exhibit 3.

I request the following:
**First Request**--I request you reverse the denial by silence of my BP-9 and GRANT the four requests for Remedy;
**Second Request**--I request you find there is no administrative remedy available to me at Seagoville Federal Prison Camp that is authorized to grant or deny the remedies I sought in my BP-9;
**Third Request**--I request payment for violating my Eighth Amendment right to be free from cruel and unusal punishment in the amount of $ 2,000,000.00;
**Fourth Request**--I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish in the amount of $ 2,000,000.00;
**Fifth Request**--I request the United States agree to be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment;
**Sixth Request**--I request, due to the cruel and unusal punishment of exposure to cancer causing asbestos and mold for approximately  18 months,  that I be given 5 days credit for every day of my incarceration from  April 1, 2017  through October 11, 2018.  The total number of days is  560  equalling a credit of  2800  days or  93.3  months towards my  180  month sentence.

E X H I B I T

11

**To:** South Central Regional Director
344 Marine Forces Drive,
BP-DIR-10
Grand Prairie, Texas 75051

**From:** Lindsey Kent Springer
Reg. # 02580-063
Federal Satellite Camp
P.O. Box 9000
Seagoville, Texas 75159

Dear Regional Director:

Please find enclosed with this letter my New BP-10 with 4 copies of the continuation page (28 CFR § 542.15) and one complete copy of my BP-9. I have included 4 copies of the Warden's response also per the BP-10 Form's advice. Thank you for you consideration of these matters.

Truly,

January 9 , 2019

Page 1 of 1

U.S. Department of Justice              **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From:    **Springer, Lindsey K.**      **02580-063**      **S-1, Camp**      **Seagoville**
           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A—REASON FOR APPEAL    This appeal is from the Warden's denial of my requested relief in my BP-9.  I request you reverse, and overrule, the reasons the Warden gave for her denial.  **First**, I request you find my exposure claim was from April, 2017, to October, 2018, and not from January 29, 2018.  **Second**, I request you find the Warden's interpretation of the two referenced (but not provided) reports finding Asbestos Containing Material ("ACM") is inconsistent with that finding.  I ask you to find ACM contains both FRIABLE and NONFRIABLE material where the ACM can be crumbled, pulverized, or reduced to powder by hand pressure.  See 40 CFR § 61.141. And see 29 CFR § 1910.1001, Appendix G, I(c).  In my case, I ask you to find the ACM fell from the ceiling in both rooms scattering all over everything within the two rooms meeting the meaning of FRIABILITY.  Under § 61.141 "nonfriable" cannot ever be crumbled, pulverized, or reduced to powder.  My informal and BP-9 claims show the ACM substance "scattered throughout both rooms falling from the ceiling."  This undisputed fact satisfies FRIABILITY.  The Warden's response agrees ACM was found in the "mastic that adheres to the ceilings of the storage areas."  The fact the ceiling panels fell exposing the ACM, which the ACM is the substance that covered everything in both rooms (continued at continuation page 2 attached)

_January 9, 2019_                     _Lindsey K. Springer_
     DATE                                    SIGNATURE OF REQUESTER

Part B—RESPONSE

_____                                      _____
     DATE                                        REGIONAL DIRECTOR

dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar ays of the date of this response.

ORIGINAL: RETURN TO INMATE                                 CASE NUMBER: _____

Part C—RECEIPT

                                                  CASE NUMBER: _____

eturn to: _____
               LAST NAME, FIRST, MIDDLE INITIAL            REG. NO.          UNIT         INSTITUTION

UBJECT: _____

CONTINUATION PAGE 2

for more than 1 year.  Accordingly, I request you find the ACM in both storage rooms was Friable, or became Friable, when the ceiling collapsed causing the ACM to break into small particles, including dust, covering all property held in both rooms and that the ACM continued to fall daily in both rooms. **Third**, I request you find the ACM contained 10% Asbestos. **Fourth**, I ask you to find that October 10, 2018 and October 18, 2018 reports finding ACM in both rooms, and the October 18, 2018 and October 22, 2018 testing air quality, were post-exposure reports and were at least 1 week after the two rooms were totally sealed up from the normal elements of open air movement for which I was exposed for more than __18__ months. I ask you to find the air-quality exposure reports were not derived from replicated conditions that I was exposed to prior to October 11, 2018. I request you find the air quality reports do not show the air quality from the ACM that I was exposed to prior to October 11, 2018. **Fifth**, I request you reject the Warden's position that it "can be determined (sic) that no exposure has taken place." My exposure took place prior to the air-quality test dates and the ACM, at the time of testing, was dry, crumbly, and pulverized when it fell to the ground or landing, and scattering, all over the property located in both rooms on a daily basis for __18__ months. **Sixth**, I request you find the exposure was caused by the deliberate indifference of Mr. Christian, and Mr. Rosales.  The Warden concedes that if her determination is incorrect then my exposure was caused by the actions and inactions of both men named above.  **Seventh**, I request you find OSHA does not apply to the United States, as an Employer under 29 U.S.C. § 652(5) rendering 29 CFR § 1910.1001, the regulation cited by the Warden in her BP-9 response, inapplicable. Additionally, I request you find, in regard to the two storage rooms in the Warehouse, that OSHA standards were not followed or applied during the time periods of my exposure.  **Eighth**, I request you find I was exposed to asthma inducing mold during the same time period I was exposed to the Cancer Causing Asbestos. The Warden's response never disputes this claim.

I request you find (1) due to the violation of my Eighth Amendment right to be free from cruel and unusual punishment, that I be paid $ 2,000,000.00; (2) due to having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish, that I be paid $ 2,000,000.00; (3) due to my exposure to Cancer Causing Asbestos and Asthma Inducing Mold, the United States agree to held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment; and (4) due to the cruel and unusual punishment of exposure to Cancer Causing Asbestos and Asthma Inducing Mold for approximately __18__ months, that I be given 5 days credit for every day of my incarceration from __April 1__, 201_7_ through October 11, 2018, totaling __560__ days equaling __2800__ days or __93.3__ months towards my __180__ month sentence..

Part B: Response to Request for Administrative Remedy          FCI Seagoville, Texas

Springer, Lindsey
Register No.: 02580-063
Remedy No.: 962199-F1

This is in response to your Request for Administrative Remedy
receipted December 11, 2018, wherein you allege that: You were
exposed to friable and non-friable cancer causing Asbestos and
strong mold between on or about January 29, 2018 through on or
about October 11, 2018 at your place of work, the outside
warehouse. Staff were indifferent to your serious safety and
medical needs to be provided oxygen-air-free from cancer causing
asbestos and mold. Staff failed to protect you from exposure to
cancer causing asbestos and mold. You were subjected to cruel
and unusual punishment in violation of the eighth amendment of
the Constitution of the United States.

Research into your request reveals that upon notification of
concerns of possible hazardous materials in the outside
Warehouse, FCI Seagoville has conducted the following:
To ensure that OSHA standards were being followed, bulk material
samples were taken in the Warehouse storage areas 1&2 by two
independent licensed contractors on 10/10/2018 and 10/18/2018.
The results of both bulk material samples read positive for
Asbestos Containing Materials (ACM) in the mastic that adheres
to the ceilings of the storage areas. Although present, the
Asbestos was determined to be non-friable. As a result, both
areas with ACM were sealed and labeled according to OSHA
standards.

On 10/18/2018 and 10/22/2018 air samples were taken by two
independent licensed contractors and the laboratory results for
both air samples read negative for airborne asbestos.

The Occupational Safety and Health Administration has quantified
an Asbestos Exposure to be as follows:

    1910.1001(c)
    Permissible exposure limit (PELS) --
    1910.1001(c) (1)
    Time-weighted average limit (TWA). The employer shall
    ensure that no employee is exposed to an airborne
    concentration of asbestos in excess of 0.1 fiber per cubic
    centimeter of air as an eight (8)-hour time-weighted
    average (TWA) as determined by the method prescribed in
    Appendix A to this section, or by an equivalent method.

1910.1001(c) (2)
Excursion limit. The employer shall ensure that no employee
is exposed to an airborne concentration of asbestos in
excess of 1.0 fiber per cubic centimeter of air (1 f/cc) as
averaged over a sampling period of thirty (30) minutes as
determined by the method prescribed in Appendix A to this
section, or by an equivalent method.

Due to the results of the two air samples taken and analyzed by
two independent contractors, it can be determined that that no
exposure has taken place.

Remediation by an independent licensed contractor of both areas
with ACM is going to commence as soon as possible.  The areas
with ACM will remain sealed until the contractor begins the
remediation process.

FCI Seagoville makes every effort to ensure a safe work
environment for both staff and inmates.

Based on the above facts/information/reasons, the relief you
seek is denied.

If you are not satisfied with this response, you may appeal to
the South Central Regional Director, 344 Marine Forces Drive,
Grand Prairie, Texas 75051, via BP-DIR-10, within 20 calendar
days of the date of this response.

M. Underwood, Warden                    12/26/14
M. Underwood, Warden                    Date

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | SPRINGER, LINDSEY K | 02580-063 | Camp, S-1 | Seagoville |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong mold, between on or about April 1, 2017 through on or about October 11, 2018, when Mr. Rees had me help seal up two storage rooms at the Warehouse where I work and post signs warning cancer causing asbestos was factually determined to be present in both storage rooms. Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms falling from the ceilings on or about September/October 2017 causing air quality issues with breathing I was experiencing and abnormal amounts of blood flowing from my nose. The Warehouse had previously been determined to contain asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos and mold was built in the 1930s and required to presume any substance in any room that becomes loose contains asbestos. Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided (see page 2 attached for a continuation of the request herein)

| 10. 29. 18 | |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

RECEIVED
WARDEN'S OFFICE

DEC 1 1 2018

FCI SEAGOVILLE

| DATE | WARDEN OR REGIONAL DIRECTOR |
|---|---|

*dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 962199-F1

CASE NUMBER: 962199-F1

**Part C– RECEIPT**

return to: Springer Lindsey   02580-063   Camp   SEA

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: Asbestos/ Req Compensation        (Wanderslin)

12/11/18

page 2 attached

oxygen-or air-free from cancer causing asbestos and mold.  After Mr. Christ-
ian treated both storage rooms for the finding of mildew, I was directed
that both storage rooms were safe to enter and use.  I enquired of Mr.
Christian as to whether both rooms were safe to enter and use to which Mr.
Christian affirmed to me that they were safe and usable.  Both rooms were
sprayed with a substance which had a soapy smell to it.  I proceeded to
enter both rooms on numerous occassions, sometimes for extended periods of
time, including cleaning the debris from the government's property stored in
each room before delivering the property to its destination that had fallen
from the ceiling.  As of October 11, 2018, I was instructed not to enter
either storage for any reason.
     Mr. Christian and Mr. Rosales failed to protect me from exposure to
cancer causing asbestos, and mold, subjecting me to cruel and unusual punish-
ment in violation of the Eighth Amendment to the Constitution of the United
States, when it was their duty to do so.
     Attached to this BP-9 are (1) a copy of my attempt at informal resolut-
ion, marked as Exhibit 1, and (2) a copy of my Inmate Request to Staff,
marked as Exhibit 2.
     I request the following:
First Request:
     I request payment for violating my Eighth Amendment right to be free
from cruel and unusual punishment in the amount of $ 2,000,000.00;
Second Request:
     I request payment for having to fear for the rest of my life the loss
of capacity of life in the future, pain, and mental anguish in the amount of
$ 2,000,000.00;
Third Request:
     I request the United States be held liable for my medical and dental
expenses for the rest of my life due within 30 days of demand for payment;
Fourth Request:
     I request, due to the cruel and unusual punishment of being exposed
for approximately 1-year to cancer causing asbestos, and mold, that I be
given 5 days credit for every day of my incarceration from April 1, 2017
through, to, and including, October 11, 2018.  The total number of days is
560 served equaling a total credit of 2800 days or 93.3 months credited
towards my 180 month sentence.

     Thank you for your consideration of these facts and deciding in my
favor as to each of the requests identified above and herein. (this page 2
attached is a continuation of my BP-9 for which this page accompanies).

*gave to shelp in office at 4150 PM 10.29.18*
*Anat present OKS*

SEA 1330.16(a)
Administrative Remedy Program
May 30, 2009
Attachment I

Federal Correctional Institution
Seagoville, Texas

Administrative Remedy Procedures for Inmates
Informal Resolution Form                    *Exhibit 1 -BP-9*

...eau of Prisons Program Statement 1330.16, <u>Administrative Remedy Program</u>, requires, in most cases, that
...ates attempt informal resolution of grievances prior to filing a formal written complaint. This form will be used
...ocument your efforts toward informally resolving your grievance.   Complete items 1-3 and return to your
...ectional Counselor.

**...ATE'S COMPLAINT:**

...tate your specific complaint:   I was exposed to asbestos while at the Warehouse in vio-
lation of the Eighth Amendment from on or about April 1, 2017 to October 11,
2018.  This was deliberately indifferent to my serious safety and medical needs.
I was also exposed to mold during the same time period due to the same reason
above.  This could easily have been avoided.

...ate what efforts you have made to informally resolve your complaint:  This is the first effort I
have made to informally resolve my complaint and I know of no other effort I
could make to do so that is available to me.

...ate what resolution you request:  I request (1) $ 2,000,000.00 for violating 8th Amendment,
(2) $ 2,000,000.00 for loss of capacity of life in the future, pain, and mental
anguish, (3) medical/dental coverage for life, (4) 93.3 months credit since 4/2017.

Springer, Lindsey Kent              02580-063                    S-1
...e Name                          Register Number                Unit

...Signature _____     10.29.18         *Told by shelp he will*
                                  Date            *route and return copy to me*
                                                  *10/29/18 4:50 PM*
                                                  *OKS*

**...RECTIONAL COUNSELOR:**

...orts made to informally resolve and staff contacted:_____
_____
_____
_____
_____
_____

Informal Resolution - Issued BP-9 on _____ (Date)

...ormally Resolved on _____          _____
                        Date                       Inmate Signature

...lor's Signature: _____     Date: _____

...anager Review: _____       Date: _____

*gave to elp on 10.29.18*
*at 4:55 pm    amck present* LKS    C

INMATE REQUEST TO STAFF CDFRM

BP-A0148
JUNE 10                                                          FEDERAL BUREAU OF PRISONS
J.S. DEPARTMENT OF JUSTICE

| TO: (Name and Title of Staff Member) Counsel Shelp | DATE: October 29, 2018 |
|---|---|
| FROM: Lindsey Kent Springer | REGISTER NO.: 02580-063 |
| WORK ASSIGNMENT: Warehouse Clerk | UNIT: Camp, S-1   *Exhibit 2-BP-9 1 of 2* |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong
mold, between on or about April 1, 2017 through on or about October 11, 2018
when Mr. Rees had me help seal up two storage rooms at the Warehouse where I
work and post signs warning cancer causing asbestos was factually determined
to be present in both storage rooms. Mr. Christian and Mr. Rosales were
aware of the white panels with dark substances scattered throughout both rooms
falling from the ceilings on or about September/October 2017 causing air
quality issues with breathing I was experiencing and abnormal amounts of blood
flowing from my nose. The warehouse had previously been determined to contain
(see continuation of this request on the "ATTACHED SHEET" to this 1st page)

(Do not write below this line)

Page 1 of 2

POSITION:

| Signature Staff Member | Date |
|---|---|

d Copy - File; Copy - Inmate

Prescribed by P5S11

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

SECTION 6

ATTACHED SHEET

Exhibit 2
2 of 2   BP-9

asbestos and received certain abatement procedures. Mr. Christian, in charge
of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were
aware that the Warehouse where I was exposed to asbestos-and mold-was built in
the 1930s and required to assume any substance in any room contains asbestos.
Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious
safety and medical needs to be provided oxygen-or air-free from cancer causing
asbestos and mold. After Mr. Christian treated both storage rooms for mildew,
I was directed that both storage rooms were safe to enter and use. I enquired
of Mr. Christian whether both rooms were safe to which Mr. Christian affirmed
to me that they were. Both rooms were sprayed with a substance which had a
soapy smell to it. I proceeded to enter both rooms on numberous occassions,
sometimes for extended periods of time, including cleaning the debris from the
government's property stored in each room before delivering it to its destinat-
ion. As of October 11, 2018, I was instructed not to enter either storage for
any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer
causing asbestos, and mold, subjecting me to cruel and unusual punishment in
violation of the Eighth Amendment to the Constitution of the United States,
when it was their duty to do so.

I am required to provide any request for relief administratively.
**First Request for Relief:**
I request payment for violating my Eighth Amendment right to be free from
cruel and unusal punishment in the amount of $ 2,000,000.00;
**Second Request for Relief:**
I request payment for having to fear for the rest of my life the loss of
capacity of life in the future, pain, and mental anguish in the amount of
$ 2,000,000.00;
**Third Request for Relief:**
I request the United States be held liable for my medical and dental
expenses for the rest of my life due within 30 days of demand of payment;
**Fourth Request for Relief:**
I request, due to the cruel and unusual punishment of being exposed for
approximately 1-year to cancer causing asbestos, and mold, that I be given 5
days credit for every day of my incarceration from April 1, 2017 through, to,
and including, October 11, 2018. The total number of days is 560 days served
equaling a total credit of 2800 days or 93.3 months credited towards my 180
month sentence.

Thank you for your consideration of these facts and deciding in my favor
as to each of the requests identified above and herein. (this attached sheet
attaches with my Inmate Request to Staff and should be considered as if it
is a part and continuation of that request to its conclusion).

Truly,

Reg. # 02580-063
Lindsey Kent Springer
Warehouse Clerk

Page 2 of 2

CERTIFICATE OF SERVICE

I hereby certify that on January _9_, 2019, I sent by U.S. Mail, First Class, Postage Prepaid, my New BP-10 and continuation pages (4), a copy of the Institutional Filings, and 4 copies of the Warden's response with a cover letter, to the South Central Regional Director, 344 Marine Forces Drive, BP-DIR-10, Grand Prairie, Texas 75051.

Server

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that on January _9_, 2019, I deposited my New BP-10 and continuation pages (4), a copy of the Institutional Filings, and 4 copies of the Warden's response with a cover letter, in the U.S. Mailbox located inside Seagoville Federal Prison Camp to the address for the South Central Regional Director listed above.

I also declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that I personally witnessed the New BP-10 and continuation pages (4), a copy of the Institutional Filings, and 4 copies of the Warden's response with a cover letter, as identified above, were so deposited in an envelope for which this Certificate of Service and Declaration of Mailing were placed within.

Declarant

Page 1 of 1

**E X H I B I T**

**12**

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 15, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : LINDSEY KENT SPRINGER, 02580-063
      SEAGOVILLE FCI      UNT: CAMP    QTR:
      2113 NORTH HWY 175
      SEAGOVILLE,  TX 75159

RECEIVED
WARDEN'S OFFICE

FEB 2 7 2019

FCI SEAGOVILLE

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 962199-A1       CENTRAL OFFICE APPEAL
DATE RECEIVED   : JANUARY 28, 2019
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : REQUESTS FOR MONETARY COMPENSATION
INCIDENT RPT NO:

REJECT REASON 1: SEE REMARKS.

REMARKS         : YOUR REGIONAL APPEAL IS DUE ON 03/15/2019. YOU CAN
                  APPEAL TO THIS LEVEL ON OR AFTER THAT DATE.

E X H I B I T

13

```
LINDSEY KENT SPRINGER, 02580-063
SEAGOVILLE FCI     UNT: CAMP     QTR:
2113 NORTH HWY 175
SEAGOVILLE,  TX 75159
```

RECEIVED
WARDEN'S OFFICE

MAR 0 1 2019

FCI SEAGOVILLE

Regional Administrative Remedy Appeal No. 962199-R2
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal receipted January 14, 2019.  You claim you were exposed
to asbestos while working in the institution warehouse at FCI
Seagoville.

A review of this matter reveals that sampling of the material in
the storage rooms at the warehouse was conducted and found the
black mastic to be composed of 5% Chrysotile. The mastic itself
is considered to be non-friable and due to its composition, the
only way for such material to become airborne would be by using
an aggressive method such as grinding, drilling, or sanding.
None of these methods was used on the mastic itself. Regardless,
in order to determine if it was airborne, air sampling was also
conducted and the results were negative. Sampling was conducted
by two independent contractors and both returned with the same
results. The areas have been sealed and will remain sealed until
the remediation process is complete.

A review of the sampling documentation and speaking with FCI
Seagoville staff indicates that proper procedures have been
followed.

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to
the Federal Bureau of Prisons, Office of General Counsel,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in the Office of General Counsel within 30 days
from the date of this response.

FEB 2 2 2019
_____
Date

_____
J. F. Caraway
Regional Director

**E X H I B I T**

14

To:    National Inmate Appeals Administrator
        Office of General Counsel
        Central Office-Bureau of Prisons
        320 First Street, N.W.
        Washington, D.C. 20534

From:   Lindsey Kent Springer
        Reg. # 02580-063
        Federal Satellite Camp
        P.O. Box 9000
        Seagoville, Texas 75159

Dear General Counsel/National Inmate Appeals Administrator:

Please find enclosed with this letter is my BP-11 and 4 copies of the continuation page, along with 4 copies of Exhibit 1 referenced therein, and (1) a copy of my BP-10 which included (2) a copy of my BP-9, (3) a copy of my Informal Resolution Form, (4) a copy of my Inmate Request to Staff, (5) and a copy of the Regional Director's response, (6) a copy of the Warden's response, (7) a copy of your recent Rejection Notice, and (8) my Certififate of Service and Declaration of Mailing.

Thank you for your consideration of these matters.

Truly,

March _12_, 2019

Page 1 of 1

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

*original copy*

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attach-
ments must be submitted with this appeal.

| From: | Springer, Lindsey K. | 02580-063 | S-1, Camp | Seagoville |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**   My reasons for this appeal are that the Regional Director
("RD") did not address in my BP-10 (1) the dates and length of my exposure; (2)
my claim the Asbestos Containing Material ("ACM") had fell from the ceilings,
scattered over everything in both rooms, and was dry, crumbly, pulverized, some
of which was reduced to powder or dust, rendering the disturbed ACM Friable; (3)
the Black ACM contained 10% Asbestos; (4) the two air reports were not derived
from replicated conditions for which I was exposed to the ACM; (5) it could be
determined that I was exposed over an extended period of time to Friable Asbestos;
(6) my exposure was based upon the deliberate indifference to my serious medical
and safety needs by Mr. Christian and Mr. Rosales; (7) the OSHA standards do not
apply to the BOP's facilities and that OSHA standards were not followed in what
led to my Friable Asbestos exposure; (8) or that I was exposed over an extended
period of time to asthma inducing mold.  I request you specifically address these
Eight issues respectively and in my favor.  I request you reject the RD's finding
(i) the Black ACM composed of 5% Chrysotile; (ii) find the ACM composed 10% Asb-
estos; (iii) find the ACM was dry, crumbly, pulverized as it fell from the 11 ft.
(continued at continuation page marked as page 2 attached hereto)

_March 11, 2019_
DATE

_Lindsey K. Springer_
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____   _____
DATE                       GENERAL COUNSEL

**ORIGINAL: RETURN TO INMATE**   CASE NUMBER: _____

**Part C—RECEIPT**   CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____          _____   BP-231(13)
DATE                              SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

U.S. Department of Justice        Central Office Adm...trative Remedy Appeal

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: | Springer, Lindsey K. | 02580-063 | S-1, Camp | Seagoville |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**  My reasons for this appeal are that the Regional Director ("RD") did not address in my BP-10 (1) the dates and length of my exposure; (2) my claim the Asbestos Containing Material ("ACM") had fell from the ceilings, scattered over everything in both rooms, and was dry, crumbly, pulverized, some of which was reduced to powder or dust, rendering the disturbed ACM Friable; (3) the Black ACM contained 10% Asbestos; (4) the two air reports were not derived from replicated conditions for which I was exposed to the ACM; (5) it could be determined that I was exposed over an extended period of time to Friable Asbestos; (6) my exposure was based upon the deliberate indifference to my serious medical and safety needs by Mr. Christian and Mr. Rosales; (7) the OSHA standards do not apply to the BOP's facilities and that OSHA standards were not followed in what led to my Friable Asbestos exposure; (8) or that I was exposed over an extended period of time to asthma inducing mold. I request you specifically address these Eight issues respectively and in my favor. I request you reject the RD's finding (i) the Black ACM composed of 5% Chrysotile; (ii) find the ACM composed 10% Asbestos; (iii) find the ACM was dry, crumbly, pulverized as it fell from the 11 ft. (continued at continuation page marked as page 2 attached hereto)

| March 11, 2019 | _(signature)_ |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

| | |
|---|---|
| DATE | GENERAL COUNSEL |

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

---

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
         LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

| | | |
|---|---|---|
| DATE | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL | BP-231(13) |
| | | APRIL 1982 |

page 2 attached to BP-11

ceilings landing on the property or floor below and not the type of ACM that anyone would grind, drill, or sand, like floor tile; (iv) find the type of Asbestos disturbed would have settled down quickly in both rooms under the circumstances, see Exhibit 𝑙 , rendering unreliable both post-sealing air reports in determining my pre-sealing Asbestos exposure; and (v) find the source of the RD's conclusions or information was not identified in the RD's BP-10 response to test whether the proper procedures have been followed.

As a result, I request you conclude my Eighth Amendment right to be free from cruel and unusual punishment was violated over an extended period of time directing, due to those violations, (1) I be paid $ 2,000,000.00; (2) due to having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish, I be paid $ 2,000,000.00; (3) due to my lengthy exposure to Cancer Causing Asbestos and Asthma Inducing Mold, the United States agree to be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment; and (4) due to the cruel and unusual punishment of being exposed to Cancer Causing Asbestos and Asthma Inducing Mold for approximately _18_ months, that I be given 5 days credit for every day of my incarceration from __April 1__ , 201_7_ through October 11, 2018, totaling __560__ days equaling __2800__ days or __93.3__ months credited towards my __180__ month sentence.



# ATSDR

AGENCY FOR TOXIC SUBSTANCES
AND DISEASE REGISTRY

# ASBESTOS
## CAS #  1332-21-4

**Division of Toxicology ToxFAQs™**                                **September 2001**

This fact sheet answers the most frequently asked health questions (FAQs) about asbestos. For more information, call the ATSDR Information Center at 1-888-422-8737. This fact sheet is one in a series of summaries about hazardous substances and their health effects. It's important you understand this information because this substance may harm you. The effects of exposure to any hazardous substance depend on the dose, the duration, how you are exposed, individual susceptibility and personal habits, and whether other chemicals are present.

> HIGHLIGHTS: Exposure to asbestos usually occurs by breathing contaminated air in workplaces that make or use asbestos. Asbestos is also found in the air of buildings that are being torn down or renovated. Asbestos exposure can cause serious lung problems and cancer. This substance has been found at 83 of the 1,585 National Priorities List sites identified by the Environmental Protection Agency (EPA).

## What is asbestos?

Asbestos is the name given to a group of six different fibrous minerals (amosite, chrysotile, crocidolite, and the fibrous varieties of tremolite, actinolite, and anthophyllite) that occur naturally in the environment. Asbestos minerals have separable long fibers that are strong and flexible enough to be spun and woven and are heat resistant. Because of these characteristics, asbestos has been used for a wide range of manufactured goods, mostly in building materials (roofing shingles, ceiling and floor tiles, paper products, and asbestos cement products), friction products (automobile clutch, brake, and transmission parts), heat-resistant fabrics, packaging, gaskets, and coatings. Some vermiculite or talc products products may contain asbestos.

## What happens to asbestos when it enters the environment?

Asbestos fibers can enter the air or water from the breakdown of natural deposits and manufactured asbestos products. Asbestos fibers do not evaporate into air or dissolve in water. Small diameter fibers and particles may remain suspended in the air for a long time and be carried long distances by wind or water before settling down. Larger diameter fibers and particles tend to settle more quickly.

Asbestos fibers are not able to move through soil. Asbestos fibers are generally not broken down to other compounds and will remain virtually unchanged over long periods.

## How might I be exposed to asbestos?

We are all exposed to low levels of asbestos in the air we breathe. These levels range from 0.00001 to 0.0001 fibers per milliliter of air and generally are highest in cities and industrial areas.

People working in industries that make or use asbestos products or who are involved in asbestos mining may be exposed to high levels of asbestos. People living near these industries may also be exposed to high levels of asbestos in air.

Asbestos fibers may be released into the air by the disturbance of asbestos-containing material during product use, demolition work, building or home maintenance, repair, and remodeling. In general, exposure may occur only when the asbestos-containing material is disturbed in some way to release particles and fibers into the air.

Drinking water may contain asbestos from natural sources or from asbestos-containing cement pipes.

## How can asbestos affect my health?

Asbestos mainly affects the lungs and the membrane that surrounds the lungs. Breathing high levels of asbestos fibers for a long time may result in scar-like tissue in the lungs and in the pleural membrane (lining) that surrounds the lung. This disease is called asbestosis and is usually found in workers exposed to asbestos, but not in the general public. People with asbestosis have difficulty breathing, often a cough, and in severe cases heart enlargement. Asbestosis is a serious disease and can eventually lead to disability and death.

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, Public Health Service**
**Agency for Toxic Substances and Disease Registry**

BP-11                Exhibit 1

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

---

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | Springer, Lindsey K. | 02580-063 | S-1, Camp | Seagoville |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**   This appeal is from the Warden's denial of my requested relief in my BP-9.  I request you reverse, and overrule, the reasons the Warden gave for her denial.  **First**, I request you find my exposure claim was from April, 2017, to October, 2018, and not from January 29, 2018.  **Second**, I request you find the Warden's interpretation of the two referenced (but not provided) reports finding Asbestos Containing Material ("ACM") is inconsistent with that finding. I ask you to find ACM contains both FRIABLE and NONFRIABLE material where the ACM can be crumbled, pulverized, or reduced to powder by hand pressure. See 40 CFR § 61.141. And see 29 CFR § 1910.1001, Appendix G, I(c). In my case, I ask you to find the ACM fell from the ceiling in both rooms scattering all over everything within the two rooms meeting the meaning of FRIABILITY.  Under § 61.141 "nonfriable" cannot ever be crumbled, pulverized, or reduced to powder. My informal and BP-9 claims show the ACM substance "scattered throughout both rooms falling from the ceiling." This undisputed fact satisfies FRIABILITY. The Warden's response agrees ACM was found in the "mastic that adheres to the ceilings of the storage areas." The fact the ceiling panels fell exposing the ACM, which the ACM is the substance that covered everything in both rooms (continued at continuation page 2 attached)

| January 9, 2019 | _Lindsey K. Springer_ |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

RECEIVED

JAN 14 2019

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

| | |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                          CASE NUMBER: _962199-R_

---

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

BP-230(13)

CONTINUATION PAGE 2

for more than 1 year. Accordingly, I request you find the ACM in both storage rooms was Friable, or became Friable, when the ceiling collapsed causing the ACM to break into small particles, including dust, covering all property held in both rooms and that the ACM continued to fall daily in both rooms. **Third,** I request you find the ACM contained 10% Asbestos. **Fourth,** I ask you to find that October 10, 2018 and October 18, 2018 reports finding ACM in both rooms, and the October 18, 2018 and October 22, 2018 testing air quality, were post-exposure reports and were at least 1 week after the two rooms were totally sealed up from the normal elements of open air movement for which I was exposed for more than __18__ months. I ask you to find the air-quality exposure reports were not derived from replicated conditions that I was exposed to prior to October 11, 2018. I request you find the air quality reports do not show the air quality from the ACM that I was exposed to prior to October 11, 2018. **Fifth,** I request you reject the Warden's position that it "can be determined (sic) that no exposure has taken place." My exposure took place prior to the air-quality test dates and the ACM, at the time of testing, was dry, crumbly, and pulverized when it fell to the ground or landing, and scattering, all over the property located in both rooms on a daily basis for __18__ months. **Sixth,** I request you find the exposure was caused by the deliberate indifference of Mr. Christian, and Mr. Rosales. The Warden concedes that if her determination is incorrect then my exposure was caused by the actions and inactions of both men named above. **Seventh,** I request you find OSHA does not apply to the United States, as an Employer under 29 U.S.C. § 652(5) rendering 29 CFR §. 1910.1001, the regulation cited by the Warden in her BP-9 response, inapplicable. Additionally, I request you find, in regard to the two storage rooms in the Warehouse, that OSHA standards were not followed or applied during the time periods of my exposure. **Eighth,** I request you find I was exposed to asthma inducing mold during the same time period I was exposed to the Cancer Causing Asbestos. The Warden's response never disputes this claim.

I request you find (1) due to the violation of my Eighth Amendment right to be free from cruel and unusual punishment, that I be paid $ 2,000,000.00; (2) due to having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish, that I be paid $ 2,000,000.00; (3) due to my exposure to Cancer Causing Asbestos and Asthma Inducing Mold, the United States agree to held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment; and (4) due to the cruel and unusual punishment of exposure to Cancer Causing Asbestos and Asthma Inducing Mold for approximately __18__ months, that I be given 5 days credit for every day of my incarceration from __April 1__, 201_7_ through October 11, 2018, totaling __560__ days equaling __2800__ days or __93.3__ months towards my __180__ month sentence..

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: SPRINGER, LINDSEY K    02580-063    Camp, S-1    Seagoville

       LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A- INMATE REQUEST**

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong mold, between on or about April 1, 2017 through on or about October 11, 2018, when Mr. Rees had me help seal up two storage rooms at the Warehouse where I work and post signs warning cancer causing asbestos was factually determined to be present in both storage rooms. Mr. Christian and Mr. Rosales were aware of the white panels with dark substances scattered throughout both rooms falling from the ceilings on or about September/October 2017 causing air quality issues with breathing I was experiencing and abnormal amounts of blood flowing from my nose. The Warehouse had previously been determined to contain asbestos and received certain abatement procedures. Mr. Christian, in charge of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were aware that the Warehouse where I was exposed to asbestos-and mold-was built in the 1930s and required to presume any substance in any room that becomes loose contains asbestos. Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious safety and medical needs to be provided
(see page 2 attached for a continuation of the request herein)

10.29.18
DATE

SIGNATURE OF REQUESTER

**Part B- RESPONSE**

RECEIVED
WARDEN'S OFFICE

DEC 11 2018

FCI SEAGOVILLE

_____
DATE                 WARDEN OR REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE      CASE NUMBER: 962199-F1

                         CASE NUMBER: 962199-F1

**Part C- RECEIPT**

Return to: Springer Lindsey   02580-063   Camp   SEA

         LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: Asbestos/Req Compensation     (Wandersee)

12/11/18

page 2 attached

oxygen-or air-free from cancer causing asbestos and mold.  After Mr. Christian treated both storage rooms for the finding of mildew, I was directed that both storage rooms were safe to enter and use.  I enquired of Mr. Christian as to whether both rooms were safe to enter and use to which Mr. Christian affirmed to me that they were safe and usable. Both rooms were sprayed with a substance which had a soapy smell to it.  I proceeded to enter both rooms on numerous occassions, sometimes for extended periods of time, including cleaning the debris from the government's property stored in each room before delivering the property to its destination that had fallen from the ceiling.  As of October 11, 2018, I was instructed not to enter either storage for any reason.

Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer causing asbestos, and mold, subjecting me to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States, when it was their duty to do so.

Attached to this BP-9 are (1) a copy of my attempt at informal resolution, marked as Exhibit 1, and (2) a copy of my Inmate Request to Staff, marked as Exhibit 2.

I request the following:
First Request:
I request payment for violating my Eighth Amendment right to be free from cruel and unusual punishment in the amount of $ 2,000,000.00;
Second Request:
I request payment for having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish in the amount of $ 2,000,000.00;
Third Request:
I request the United States be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment;
Fourth Request:
I request, due to the cruel and unusual punishment of being exposed for approximately 1-year to cancer causing asbestos, and mold, that I be given 5 days credit for every day of my incarceration from April 1, 2017 through, to, and including, October 11, 2018.  The total number of days is 560 served equaling a total credict of 2800 days or 93.3 months credited towards my 180 month sentence.

Thank you for your consideration of these facts and deciding in my favor as to each of the requests identified above and herein. (this page 2 attached is a continuation of my BP-9 for which this page accompanies).

gave to clp on 10.29.18
at 4:55 pm smck present ☆S

INMATE REQUEST TO STAFF CDFRM

BP-A0148
JUNE 10
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member)<br>Counsel Shelp | DATE:<br>October 29, 2018 |
|---|---|
| FROM:<br>Lindsey Kent Springer | REGISTER NO.:<br>02580-063 |
| WORK ASSIGNMENT:<br>Warehouse Clerk | UNIT:<br>Camp, S-1      Exhibit 2-BP-9<br>1 of 2 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.

I was exposed to Friable and Non-Friable Cancer Causing Asbestos, and strong

mold, between on or about April 1, 2017 through on or about October 11, 2018

when Mr. Rees had me help seal up two storage rooms at the Warehouse where I

work and post signs warning cancer causing asbestos was factually determined

to be present in both storage rooms. Mr. Christian and Mr. Rosales were

aware of the white panels with dark substances scattered throughout both rooms

falling from the ceilings on or about September/October 2017 causing air

quality issues with breathing I was experiencing and abnormal amounts of blood

flowing from my nose. The warehouse had previously been determined to contain

(see continuation of this request on the "ATTACHED SHEET" to this 1st page)

(Do not write below this line)
Page 1 of 2

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER      SECTION 6

ATTACHED SHEET

Exhibit 2
2 of 2    BP-9

asbestos and received certain abatement procedures. Mr. Christian, in charge
of Safety, and Mr. Rosales, Assistant Warden in charge of operations, were
aware that the Warehouse where I was exposed to asbestos-and mold-was built in
the 1930s and required to assume any substance in any room contains asbestos.
Both Mr. Christian and Mr. Rosales were deliberately indifferent to my serious
safety and medical needs to be provided oxygen-or air-free from cancer causing
asbestos and mold. After Mr. Christian treated both storage rooms for mildew,
I was directed that both storage rooms were safe to enter and use. I enquired
of Mr. Christian whether both rooms were safe to which Mr. Christian affirmed
to me that they were. Both rooms were sprayed with a substance which had a
soapy smell to it. I proceeded to enter both rooms on numberous occassions,
sometimes for extended periods of time, including cleaning the debris from the
government's property stored in each room before delivering it to its destinat-
ion. As of October 11, 2018, I was instructed not to enter either storage for
any reason.
   Mr. Christian and Mr. Rosales failed to protect me from exposure to cancer
causing asbestos, and mold, subjecting me to cruel and unusual punishment in
violation of the Eighth Amendment to the Constitution of the United States,
when it was their duty to do so.
   I am required to provide any request for relief administratively.
First Request for Relief:
   I request payment for violating my Eighth Amendment right to be free from
cruel and unusal punishment in the amount of $ 2,000,000.00;
Second Request for Relief:
   I request payment for having to fear for the rest of my life the loss of
capacity of life in the future, pain, and mental anguish in the amount of
$ 2,000,000.00;
Third Request for Relief:
   I request the United States be held liable for my medical and dental
expenses for the rest of my life due within 30 days of demand of payment;
Fourth Request for Relief:
   I request, due to the cruel and unusual punishment of being exposed for
approximately 1-year to cancer causing asbestos, and mold, that I be given 5
days credit for every day of my incarceration from April 1, 2017 through, to,
and including, October 11, 2018. The total number of days is 560 days served
equaling a total credit of 2800 days or 93.3 months credited towards my 180
month sentence.

   Thank you for your consideration of these facts and deciding in my favor
as to each of the requests identified above and herein. (this attached sheet
attaches with my Inmate Request to Staff and should be considered as if it
is a part and continuation of that request to its conclusion).

                              Truly,

                              Reg. # 02580-063
                              Lindsey Kent Springer
                              Warehouse Clerk

*gave to Shelp in office at 4:50 PM 10.29.18*
*Amak present LKS*

SEA 1330.16(a)
Administrative Remedy Program
May 30, 2009
Attachment I

Federal Correctional Institution
Seagoville, Texas

Administrative Remedy Procedures for Inmates
Informal Resolution Form

*Exhibit 1 - BP-9*

reau of Prisons Program Statement 1330.16, <u>Administrative Remedy Program</u>, requires, in most cases, that
nates attempt informal resolution of grievances prior to filing a formal written complaint. This form will be used
document your efforts toward informally resolving your grievance. Complete items 1-3 and return to your
rrectional Counselor.

## MATE'S COMPLAINT:

State your specific complaint:  I was exposed to asbestos while at the Warehouse in vio-
lation of the Eighth Amendment from on or about April 1, 2017 to October 11,
2018. This was deliberately indifferent to my serious safety and medical needs.
I was also exposed to mold during the same time period due to the same reason
above. This could easily have been avoided.

State what efforts you have made to informally resolve your complaint:  This is the first effort I
have made to informally resolve my complaint and I know of no other effort I
could make to do so that is available to me.

State what resolution you request:  I request (1) $ 2,000,000.00 for violating 8th Amendment,
(2) $ 2,000,000.00 for loss of capacity of life in the future, pain, and mental
anguish, (3) medical/dental coverage for life, (4) 93.3 months credit since 4/2017.

Springer, Lindsey Kent          02580-063                    S-1

ate Name                        Register Number              Unit

*Lindsey K Springer*   10.29.18     *Told by Shelp he will*
ate Signature          Date        *route and return copy to me*
                                   *10/29/18 4:50 PM*
                                   *LKS*

## RRECTIONAL COUNSELOR:

fforts made to informally resolve and staff contacted: _____

_____

_____

_____

_____

fo Informal Resolution - Issued BP-9 on _____ (Date)

nformally Resolved on _____          _____
                       Date                    Inmate Signature

selor's Signature: _____          Date: _____

Manager Review: _____          Date: _____

Regional Administrative Remedy Appeal No. 962199-R2
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal receipted January 14, 2019.  You claim you were exposed
to asbestos while working in the institution warehouse at FCI
Seagoville.

A review of this matter reveals that sampling of the material in
the storage rooms at the warehouse was conducted and found the
black mastic to be composed of 5% Chrysotile. The mastic itself
is considered to be non-friable and due to its composition, the
only way for such material to become airborne would be by using
an aggressive method such as grinding, drilling, or sanding.
None of these methods was used on the mastic itself. Regardless,
in order to determine if it was airborne, air sampling was also
conducted and the results were negative. Sampling was conducted
by two independent contractors and both returned with the same
results. The areas have been sealed and will remain sealed until
the remediation process is complete.

A review of the sampling documentation and speaking with FCI
Seagoville staff indicates that proper procedures have been
followed.

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to
the Federal Bureau of Prisons, Office of General Counsel,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in the Office of General Counsel within 30 days
from the date of this response.

FEB 2 2 2019
_____          _____
Date                                  J. F. Caraway
                                      Regional Director

**Part B: Response to Request for Administrative Remedy**      **FCI Seagoville, Texas**


Springer, Lindsey
Register No.: 02580-063
Remedy No.: 962199-F1


This is in response to your Request for Administrative Remedy
receipted December 11, 2018, wherein you allege that: You were
exposed to friable and non-friable cancer causing Asbestos and
strong mold between on or about January 29, 2018 through on or
about October 11, 2018 at your place of work, the outside
warehouse. Staff were indifferent to your serious safety and
medical needs to be provided oxygen-air-free from cancer causing
asbestos and mold. Staff failed to protect you from exposure to
cancer causing asbestos and mold. You were subjected to cruel
and unusual punishment in violation of the eighth amendment of
the Constitution of the United States.

Research into your request reveals that upon notification of
concerns of possible hazardous materials in the outside
Warehouse, FCI Seagoville has conducted the following:
To ensure that OSHA standards were being followed, bulk material
samples were taken in the Warehouse storage areas 1&2 by two
independent licensed contractors on 10/10/2018 and 10/18/2018.
The results of both bulk material samples read positive for
Asbestos Containing Materials (ACM) in the mastic that adheres
to the ceilings of the storage areas. Although present, the
Asbestos was determined to be non-friable. As a result, both
areas with ACM were sealed and labeled according to OSHA
standards.

On 10/18/2018 and 10/22/2018 air samples were taken by two
independent licensed contractors and the laboratory results for
both air samples read negative for airborne asbestos.

The Occupational Safety and Health Administration has quantified
an Asbestos Exposure to be as follows:

     1910.1001(c)
     Permissible exposure limit (PELS) --
     1910.1001(c) (1)
     Time-weighted average limit (TWA). The employer shall
     ensure that no employee is exposed to an airborne
     concentration of asbestos in excess of 0.1 fiber per cubic
     centimeter of air as an eight (8)-hour time-weighted
     average (TWA) as determined by the method prescribed in
     Appendix A to this section, or by an equivalent method.

1910.1001(c) (2)
Excursion limit. The employer shall ensure that no employee
is exposed to an airborne concentration of asbestos in
excess of 1.0 fiber per cubic centimeter of air (1 f/cc) as
averaged over a sampling period of thirty (30) minutes as
determined by the method prescribed in Appendix A to this
section, or by an equivalent method.

Due to the results of the two air samples taken and analyzed by
two independent contractors, it can be determined that that no
exposure has taken place.

Remediation by an independent licensed contractor of both areas
with ACM is going to commence as soon as possible.  The areas
with ACM will remain sealed until the contractor begins the
remediation process.

FCI Seagoville makes every effort to ensure a safe work
environment for both staff and inmates.

Based on the above facts/information/reasons, the relief you
seek is denied.

If you are not satisfied with this response, you may appeal to
the South Central Regional Director, 344 Marine Forces Drive,
Grand Prairie, Texas 75051, via BP-DIR-10, within 20 calendar
days of the date of this response.

M. Underwood, Warden                      Date

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 15, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : LINDSEY KENT SPRINGER, 02580-063
      SEAGOVILLE FCI      UNT: CAMP    QTR:
      2113 NORTH HWY 175
      SEAGOVILLE,  TX 75159

RECEIVED
WARDEN'S OFFICE

FEB 2 7 2019

FCI SEAGOVILLE

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 962199-A1        CENTRAL OFFICE APPEAL
DATE RECEIVED   : JANUARY 28, 2019
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       : REQUESTS FOR MONETARY COMPENSATION
INCIDENT RPT NO:

REJECT REASON 1: SEE REMARKS.

REMARKS         : YOUR REGIONAL APPEAL IS DUE ON 03/15/2019. YOU CAN
                  APPEAL TO THIS LEVEL ON OR AFTER THAT DATE.

CERTIFICATE OF SERVICE

I hereby certify that on March _12_, 2019, I sent by U.S. Mail, First Class, Postage Prepaid, my BP-11 with 4 copies of the continuation page, 4 copies of Exhibit 1, 1 copy of my BP-10, 1 copy of the Regional Director's Response, 1 copy of my BP-9, 1 copy of the Warden's Response, 1 copy of my Inmate Informal Resolution Form, 1 copy of my Inmate Request to Staff Form, a cover letter and this Certificate of Service, to the National Inmate Appeals Administrator, Office of General Counsel, 320 First Street, N.W., Washington, D.C. 20534.

SERVER

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that on March _12_, 2019, I deposited my BP-11 and the above referenced documents, in the U.S. Mailbox located inside Seagoville Federal Prison Camp to the address for the Appeals Administrator, Office of General Counsel, listed above.

I also declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that I personally witnessed the BP-11 and above referenced documents, were so deposited in an envelope for which this Certificate of Service and Declaration of Mailing were placed within and with.

DECLARANT

Page 1 of 1

E X H I B I T

15

```
LINDSEY KENT SPRINGER, 02580-063
SEAGOVILLE FCI     UNT: CAMP     QTR:
2113 NORTH HWY 175
SEAGOVILLE,  TX 75159
```

RECEIVED
WARDEN'S OFFICE

APR 2 2 2019

FCI SEAGOVILLE

Administrative Remedy No. 962199-A2
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal, wherein you claim you were exposed asbestos while working
in the institution warehouse at FCI Seagoville.  For relief, you
request monetary compensation, jail credit and lifetime medical and
dental coverage.

We have reviewed documentation relevant to your appeal and, based
on the information gathered, concur with the manner in which the
Warden and Regional Director addressed your concerns at the time of
your Request for Administrative Remedy and subsequent appeal.  Staff
actions in this matter are consistent with the requirements of
Program Statement 1600.11, National Occupational Safety and Health
Policy.  We find no further review in this matter is warranted.

The Administrative Remedy Program does not provide for monetary
relief.  For the type of relief you seek, the Inmate Accident
Compensation Program, 28 C.F.R. 301, is the statutorily mandated
procedure.

Accordingly, your appeal is denied.


_____4|9|19_____                    _____JC_____
Date                                     Ian Connors, Administrator
                                         National Inmate Appeals

U.S. Department of Justice                                   **Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: **Springer, Lindsey K.** _____ **02580-063** _____ **S-1, Camp** ____ **Seagoville** ___
              LAST NAME, FIRST, MIDDLE INITIAL              REG. NO.              UNIT              INSTITUTION

Part A—REASON FOR APPEAL    My reasons for this appeal are that the Regional Director
("RD") did not address in my BP-10 (1) the dates and length of my exposure; (2)
my claim the Asbestos Containing Material ("ACM") had fell from the ceilings,
scattered over everything in both rooms, and was dry, crumbly, pulverized, some
of which was reduced to powder or dust, rendering the disturbed ACM Friable; (3)
the Black ACM contained 10% Asbestos; (4) the two air reports were not derived
from replicated conditions for which I was exposed to the ACM; (5) it could be
determined that I was exposed over an extended period of time to Friable Asbestos;
(6) my exposure was based upon the deliberate indifference to my serious medical
and safety needs by Mr. Christian and Mr. Rosales; (7) the OSHA standards do not
apply to the BOP's facilities and that OSHA standards were not followed in what
led to my Friable Asbestos exposure; (8) or that I was exposed over an extended
period of time to asthma inducing mold.  I request you specifically address these
Eight issues respectively and in my favor.  I request you reject the RD's finding
(i) the Black ACM composed of 5% Chrysotile; (ii) find the ACM composed 10% Asb-
estos; (iii) find the ACM was dry, crumbly, pulverized as it fell from the 11 ft.
(continued at continuation page marked as page 2 attached hereto)

_March 11, 2019_ _____      _Lindsey K. Springer_ _____
        DATE                                            SIGNATURE OF REQUESTER

Part B—RESPONSE

RECEIVED

MAR 1 9 2019

Administrative Remedy Section
Federal Bureau of Prisons

_____                    _____
        DATE                                            GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                   CASE NUMBER: _962199·A1_
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Part C—RECEIPT

                                                     CASE NUMBER: _____

Return to: _____
                    LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.        UNIT        INSTITUTION
SUBJECT: _____

_____       ⊕        _____       BP-231(13)
        DATE                                 SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL        APRIL 1982

page 2 attached to BP-11

ceilings landing on the property or floor below and not the type of ACM that anyone would grind, drill, or sand, like floor tile; (iv) find the type of Asbestos disturbed would have settled down quickly in both rooms under the circumstances, see Exhibit **I**, rendering unreliable both post-sealing air reports in determining my pre-sealing Asbestos exposure; and (v) find the source of the RD's conclusions or information was not identified in the RD's BP-10 response to test whether the proper procedures have been followed.

As a result, I request you conclude my Eighth Amendment right to be free from cruel and unusual punishment was violated over an extended period of time directing, due to those violations, (1) I be paid $ 2,000,000.00; (2) due to having to fear for the rest of my life the loss of capacity of life in the future, pain, and mental anguish, I be paid $ 2,000,000.00; (3) due to my lengthy exposure to Cancer Causing Asbestos and Asthma Inducing Mold, the United States agree to be held liable for my medical and dental expenses for the rest of my life due within 30 days of demand for payment; and (4) due to the cruel and unusual punishment of being exposed to Cancer Causing Asbestos and Asthma Inducing Mold for approximately **18** months, that I be given 5 days credit for every day of my incarceration from **April 1**, 201**7** through October 11, 2018, totaling **560** days equaling **2800** days or **93.3** months credited towards my **180** month sentence.

E X H I B I T

16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                     Case No. 09-CR-043

LINDSEY KENT SPRINGER,

     Defendant.

DECLARATION OF ALEJANDRO VELA

     I, Alejandro Vela, declare the following:

1.  I am currently a Federal Prisoner serving a federal sentence at Seagoville Federal Prison Camp located in Seagoville, Texas.

2.  I make this declaration freely and I am competent to testify as to the statements being made herein.

3.  I have worked for the Trust Fund Commissary Department since at least November, 2017 at Seagoville Federal Prison.

4.  I worked with inmate Lindsey Springer, James Broosk, Yahanna Sherriff, and Staff members R. Freeman, C. Herring, I. Hunter, R. Fulce, and B. Roper between November 1, 2017 and present day in Commissary Warehouse.

5.  I personally viewed the falling debris from the ceiling and walls in Two Storage Rooms located inside Commissary Warehouse at Seagoville.

6.  I personally assisted inmate Springer and others in repeatedly cleaning Government property located inside both Storage Rooms from the dust and black chunky debris accumulating therein and thereon between November 1, 2017 through October 11, 2018, when both Storage Rooms were completely sealed from any air movement outside both Rooms.

7.  Both Storage Rooms remained sealed until on or about May 6, 2019.

8.  On or about May 6, 2019, an outside Company named ARC Abatement began

Page 1 of 3

an abatement procedure to remove asbestos and mold that had fallen from the ceiling and walls in both Storage Rooms on the property and floor below.

9.  The first event ARC Abatement conducted was the building of a temporary wall surrounding both Storage Rooms in Commissary Warehouse.

10. I was instructed by staff that the Breeze-Way directly in front of both Storage Rooms would be completely closed off until both Rooms were abated.

11. The walls were made of a plastic covering that was difficult to see through.

12. Between May 6, 2019 through May 13, 2019, ARC Abatement utilized an airless spraying of liquid into each Storage Rooms for the purpose of causing the asbestos to fall to the ground.

13. On or about May 7, 2019, ARC Abatement removed all lockers and washers and dryers out of Storage number 2 after removing asbestos and mold from these properties belonging to Government.

14. On or about May 8, 2019, ARC Abatement removed the mattresses and toilet paper from Storage number 1, after removing the asbestos and mold from this property belonging to the Government.

15. On or about May 9, 2019, ARC Abatement began removing the ceiling and wall covering in Storage number 1, which was the source of where the asbestos and mold originated as it would fall and cover everything below.

16. On or about May 10, 2019, ARC Abatement began removing the ceiling and wall covering in Storage number 2, which was the source of where the asbestos and mold originated as it would fall and cover everything below.

17. On or about May 13, 2019, ARC Abatement expressed to Commissary Warehouse Staff that both Storage Rooms were completely free of asbestos and mold.

18.  During the abatement process, between May 6, 2019 through May 13,
2019, I witnessed those persons conducting the abatement of both Storage
Rooms that they wore complete covering protective gear and including an
external source of air protection from the air inside both Storage Rooms.

19.  On or about May 13, 2019, ARC Abatement began to remove the termpor-
ary walls surrounding both Storage Rooms.

20. On or about May 14, 2019, ARC Abatement finished and departed the Ware-
house complex.

21.  I was informed by Staff that both Storage Rooms were now free of all
asbestos and mold and it was safe to enter them and breath the air around
them.

22.  I have experienced upper respiratory complications as a result of my
exposure to the air circulating in and around both Storage Rooms beginning
in November, 2017 and continue to suffer from that exposure.

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1),
under the laws of the United States of America, that the foregoing is true
and correct to the best of my knowledge and belief.

Alejandro Vela

Page 3 of 3

E X H I B I T

17

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LINDSEY KENT SPRINGER<br>(BOP Register No. 02580-063),<br><br>Petitioner,<br><br>V.<br><br>M. UNDERWOOD, Warden,<br><br>Respondent. | § § § § § § § § § § | No. 3:19-cv-1433-S |

## JUDGMENT

This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered, it is ORDERED, ADJUDGED, and DECREED that this habeas action is DISMISSED without prejudice to Petitioner reasserting the same claims in a civil rights action.

SIGNED this _22_ day of July, 2019.

UNITED STATES DISTRICT JUDGE

E X H I B I T

18

```
 SEABZ          *        INMATE EDUCATION DATA        *     08-28-2019
PAGE 001 OF 001 *            TRANSCRIPT               *     07:40:45

REGISTER NO: 02580-063    NAME..: SPRINGER            FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: SEA-SEAGOVILLE FCI

------------------------- EDUCATION INFORMATION --------------------------
FACL ASSIGNMENT DESCRIPTION                START DATE/TIME STOP DATE/TIME
SEA  ESL HAS    ENGLISH PROFICIENT         07-29-2010 1521 CURRENT
SEA  GED HAS    COMPLETED GED OR HS DIPLOMA 07-29-2010 0001 CURRENT

--------------------------- EDUCATION COURSES ----------------------------
SUB-FACL    DESCRIPTION              START DATE  STOP DATE EVNT AC LV  HRS
SEA SCP     RELEASE REQUIREMENTS   5 03-30-2016 03-30-2016  P  C  P    1
SEA SCP     ESTABLISHING A CHECKING ACCNT 03-30-2016 03-30-2016 P C P  1
SEA SCP     DIVERSITY IN A DIVERSE ENVIRON 03-30-2016 03-30-2016 P C P 1
SEA SCP     DISEASE PREVENTION     1 03-30-2016 03-30-2016  P  C  P    1
SEA SCP     FORKLIFT OPERATOR & SAFETY TRN 03-07-2016 03-11-2016 P C P 30
LAT CAD M   FSL ENGLISH PARENTING    06-03-2015 06-29-2015  P  C  P   20
LAT CAD M   FSL TODDLER PARENTING CLASS 04-15-2015 05-28-2015 P C P   20
LAT CAD M   NUTRITION FOR FITNESS    01-15-2015 03-12-2015  P  C  P   42
LAT CAD M   FSL TEEN PARENTING CLASS 01-29-2015 03-03-2015  P  C  P   20
LAT CAD M   FSL CAREER GUIDANCE CLASS 11-20-2014 12-18-2014 P  C  P    8
ERE SCP     A&O FAMILIARIZATION - CAMP  09-26-2013 09-26-2013 P C P    7




G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

P S00000100000014

EP14F July 2013
OD: 12.5 x 9.5



WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

AUG 29 2019
COLLINSVILLE, OK

AUG 29 2019

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES
POSTAL SERVICE®



EXPECTED DELIVERY DAY: 08/31/19

9505 5102 4176 9241 2910 12

04-CR-43-SPF-1

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

RECEIVED
SEP 3 2019

FROM:
Lindsey Kent Springer
Reg # 02580-063
Federal Satellite Camp
P.O. Box 9000
Seagoville, Texas 75159

Postmark 8/29/19-SL

TO: Clerk of Court
Northern District of Oklahoma
333 W. 4th St.
Tulsa, Oklahoma 74103

≪02580-063≫
Clerk Of Court
Northern District of Okla
333 W 4TH ST
Tulsa, OK 74103
United States