

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                         Case No. 09-CR-043

LINDSEY KENT SPRINGER,

    Defendant.

MOTION FOR LEAVE TO FILE REPLY

Lindsey Kent Springer ("Springer") moves this Court for Leave to File a Reply to the Response filed by Charles A. O'Reilly opposing Springer's request for sentencing relief under the First Step Act. See Doc. 673. In this Court's September 3, 2019 Order, Doc. 670, the Court directed the Government file a response to Springer's Motion under the First Step Act. However, the Court's order stayed Sprigenr's right to reply until further order of the Court. Id.

There are Four general areas raised by O'Reilly to which a Reply is clearly warranted and would help the Court in its ultimate decision on Springer's pending Motion, <u>First</u>, if Springer were sentenced today, Amendment 791 by the Sentencing Commission would lower the sentencing range by two levels due to the cause of inflation relating to tax loss numbers. <u>Second</u>, O'Reilly has raised a limited affirmative defense claim that Springer has not exhausted his administrative remedies relevant to the First Step Act including that Springer failed to reference in his request the magic words "file a motion." <u>Third</u>, O'Reilly argues the asbestos for which Springer was exposed was nonfriable. <u>Fourth</u>, O'Reilly raises issue with whether Springer sought a sentence reduction. For the following reasons, this Court should allow Springer to file a REply to O'Reilly's response.

1

1. <u>If Springer were resentenced today, the factors under 18 U.S.C. § 3553 bring into play that those sentenced today, under the exact same facts, receive a guideline range two level lower due to inflation.</u>

If Springer were sentenced today, on the facts used by this Court on April 23, 2010, that advice by the Sentencing Commission would be two levels lower based upon the passage of Amendment 791 adjusting tax loss table at 2T4.1 for inflation. See <u>U.S. v. Fox</u>, 2017 U.S. Dist. Lexis 89473(D. Main)("Amendment 791 adjusted the monetary loss table for various economic and tax offenses to account for inflation. USSG Supp. to App. C, Amnd. 791.")

Though Amendment 791 is not retroactive, it is clarifying and this Court can consider it under its analysis of the 18 U.S.C. § 3553(a)(5)(perintent policy statement issued by the Sentencing Commission that are in effect on the date of the sentencing) and § 3553(a)(6)(the need to avoid unwarranted sentencing disparity among defendants with similar records found guilty of similar offenses). Springer brings this up based upon O'Reilly raising terms out of 18 U.S.C. § 3742(g) about whether Springer is a danger to community. Springer's community custody with the Bureau of Prisons cuts against any such assertion by O'Reilly.

2. <u>O'Reilly has raised a limited affirmative defense that Springer has not exhausted available administrative remedies at FCI Seagoville involving Springer's admitted exposure for more than 500 days of cancer causing asbestos and breath-taking mold.</u>

O'Reilly agrees somewhat that this Court has jurisdiction to reduce Springer's sentence to time served under 18 U.S.C. § 3582(c)(1)(A)(i) but raises a limited challenge to Springer's attempt at administrative remedy exhaustion available to Springer at FCI Seagoville Camp. Doc. 673, p. 7-9. Other than his limited defense, O'Reilly has waived and forfeited all other aspects of the affirmative defense. See <u>Kontrick v. Ryan</u>, 540 U.S. 443, 447(2004)("[W]aiver is the 'intelligent relinquishment or abandonment of a known right.'"); see also 540 U.S. 458(n.13)(quoting <u>U.S. v. Olano</u>, 507 U.S. 725, 733(1993)).

This is known as an "affirmative defense." Jones v. Bock, 549 U.S. 199, 212(2007). In Woodford v. NGO, 548 U.S. 81, 88(2006), the Court explained administrative remedies are those "defined by the prison grievance process itself." This is all that is required. Administrative remedies are called "claim processing rules." Kontrick, 540 U.S. at 456. The "level of detail necessary...to comply with the grieveance procedure will vary from system to system and claim to claim, but, it is the prison's requirements...that defines the boundaries of proper exhaustion." Forbes v. Garcia, 606 Fed. Appx. 381, 382 (10th Cir. 2017)(unpublished)(quoting Jones, 549 U.S. at 218).

"Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." Jernigan v. Stichell, 304 F.3d 1030, 1032(10th Cir. 2002). Of course, exhaustion is requied. Booth v. Chimer, 532 U.S. 731, 740(2001).

The Tenth Circuit explained in Jernigan that "the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable." 304 F.3d at 1033. In Underwood v. Wilson, 151 F.3d 292, 295(5th Cir. 1998). The Fifth Circuit explained "available administrative remedies are exhausted when the time limits for the prisoner's response set forth in the prison grieveance Procedures have expired."

In Shah v. Quilin, 901 F.2d 1241, 1244(5th Cir. 1990), the Fifth Circuit required only a "substantial effert to obtain an administrative remedy." (quoting Holloway v. Gunnell, 685 F.2d 150, 154(5th Cir. 1982). This exception excuses exhaustion on the "allegation that the Bureau's own procedural irregularities cause the failure." Rourke v. Thompson, 11 F.3d 47, 50(5th Cir. 1993).

So, the Fifth, Seventh, Eighth, and Tenth Circuits are in lock step that they deem "administrative remedies exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable.'"

3

Underwood, 151 F.3d at 295; Lewis v. Washington, 300 F.3d 829, 833(7th Cir. 2002); Foulk v. charrier, 262 F.3d 687, 698(8th Cir. 2001); Jernigan, 304 F.3d at 1032.

Springer should be allowed to present his position to the limited defense raised by O'Reilly involving the affirmative defense of failure to exhaust, as well as to show all available remedies that were available were substantially made. There is a reason for having filedd Two BP-10s and Two BP-11s and that is because the Warden refused to respond or index Springer's BP-9 as the BOP's Policy required. For one of many examples, Springer requests this Court to take notice that Springer's October 29, 2018 BP-9 to the Warden was not "received" by the Warden until December 11, 2018 after the Regional Director's Office directed the Warden to respond by December 31, 2018. See Doc. 669, Exhibit 8, p.1(Dated December 21, 2018 explaining the Warden's response was due by December 31, 2018);(compared with the Regional Dirctor's December 13, 2018 rejection letter directing the Warden to respond by December 31, 2018), See Doc. 669, Exhibit 7, p.1. In this example, the Warden attempts to hide this fact by stamping the Regional Director's letter dated December 13, 2018 as if she received that letter on December 18, 2018. Id. But see Doc. 669, Exhibit 8, p.3(showing the October 29, 2018 BP-9 was "RECEIVED WARDEN'S OFFICE" on December 11, 2018).

Springer should be allowed to present this argument sinc he was not required to plead exhaustion in his Motion but only raise his plausible claim for relief.

3. <u>Springer was clearly exposed to cancer causing asbestos and breath-taking mold for which the asbestos was clearly disturbed as it fell from the ceiling and crumbled all over everything.</u>

O'Reilly argues, as a well trained Tax Division Criminal attorney, that Springer's exposure to more than 500 days of cancer causing asbestos and

4

breath-taking mold is not accurage where "BOP officials have repeatedly explained, although asbestos was present in the Seagoville warehouse," "the asbestos was determined to be nonfriable." Doc. 673, p.12.

Springer's BP-9 showed that "Mr. Christian and Mr. Rosales were aware of the white panels with dark substance scattered through out both rooms falling from the ceilings on or about September/October 2017..." Doc. 669, Exhibit 2, p.2. Springer "proceeded to enter both rooms on numerous occassions...cleaning the debris from the government's property...that had fallen from the ceiling..." Id. at p.2. Springer informed the Regional Director of the same condition in his first BP-10, Doc. 669, Exhibit 6, p. 2-3, and in Springer's second BP-10, explaining:

> "Second, I request you find the Warden's interpretation of the two referenced (but not provided) reports finding Asbestos Containing Material ("ACM") is inconsistent with that finding. I ask you to find ACM contains both Friable and Nonfriable material when the ACM can be crumbled, pulverized, or reduced to powder by hand. See 40 CFR § 61.141. And see 29 CFR § 1010.1001, appendix G, I(c). In my case, I ask you to find the ACM fell from the ceiling in both rooms scattering all over everything within the two rooms meeting the meaning of friability. Under § 61.141 "nonfriable" cannot ever be crumbled, pulverized, or reduced to powder. My informal and BP-9 claims show the ACM substance "scattered throughout both rooms fall[ing] from the ceiling." This undisputed fact satisfies FRIABILITY. The Warden's response agrees ACM was found in the "mastic that adhere to the ceilings of the storage areas." The fact the ceiling panels fell exposing the ACM, which is the substance that covered everything in both rooms for more than 1 year."

Doc. 669, Exhibit 1, p.2-3.

Springer's Second BP-10 shows the BOP that the Regional Director did not "address in my BP-10 (1) the date and length of [Springer's] exposure, and (2) [Springer's] claim the Asbestos Containing Material ("ACM") had fell from the ceilings, scattered over everything in both rooms, and was dry, crumbly, pulverized, some of which was reduced to powder or dust rendering the disturbed ACM Friable.." Doc. 669, Exhibit 14, p.2.

Springer requested the BOP find the "ACM was dry, crumbly, pulverized as

5

it fell from the 11ft ceilings landing on the property or floor below and not the type of ACM that anyone would grind, drill, or sand, like floor tile." Doc. 669, Exhibit 14, p.2-3.

The EPA has adopted a work-practice standard for the handling of asbestos in building demolition and renovation "[B]ecause asbestos...escape from more diffuse sources such as open construction or demolition sites..." U.S. v. Malley, 739 F.3d 1001, 1006(7th Cir. 2013)(quoting from U.S. v. Wentraub, 273 F.3d 137, 144(2nd Cir. 2001)).

EPAs regulations are the National Emmissions Standard for asbestos, 40 CFR §§ 61.140, to 61.157.  EPA finds six types of Regulated Asbestos Containing Material ("RACM") defined as:

> "(a) Friable asbestos material, (b) Category I non-friable ACM that has become friable, (c) Category I non-friable ACM that will be or has been subjected to sanding, grinding, cutting, or abrading, or (d) Category II nonfriable ACM that has a high probability of becoming or has become crumbled, pulverized, or reduced to powder by the forces expected to act on material in the course of demolition or renovation operation regulated by this subpart." 40 CFR § 61.141."

Malley, 739 F.3d at 1006.

"Friable asbestos material" is defined as "any material containing more than 1 percent asbestos as determined using...Polorized Light Microscopy that, when dry, can be crumbled, pulverized, or reduced to powder by hand pressure." Malley, 739 F.3d at 1006.

The asbestos found in Storage 1 and 2 was clearly disturbed having fallen from the ceiling and walls, was crumbly, pulverized when it collided with what was below it, dry, and dusty covering everything in its path. The asbestos was clearly airborn until October 11, 2018 when both rooms were sealed up from all air movement.

4. Springer clearly sought the Warden's assistance in obtaining a reduced sentence.

6

The Warden cannot reduce Springer's sentence. Only the District Court can do that. O'Reilly argues Springer did not ask the Warden, who herself is not an attorney, to file a motion with this Court. O'Reilly is wrong in his characterization of Springer's requested relief.

Springer's BP-9, both BP-10s, and both BP-11s request the Bureau of Prisons to assist Springer in obtaining a sentence reduction. Doc. 669, p.1("Springer raised his request for administrative action to the Warden, then to the Regional Director's Office, and then the General Counsel's Office in Washington D.C.")

Springer showed the "BOP refused Springer's Sentence reduction request for action based upon two post sealing air-quality reports taken on October 18, 2018 and October 22, 2018." Id. Springer explained he "exhausted all available administrative remedies that were available at Seagoville Federal Prison seeking the Warden to approve the seeking of a reduction in Springer's 180 month sentence..." Doc. 669, p.2. Springer's request to the Warden sought the assistance necessary for Springer to receive a reduction of his sentence by 93.3 months. Doc. 669, Exhibit 2, p.1-2.

Springer explained in his Administrative Informal Resolution Form the "resolution you request" was "(4) 93.3 months credited since 4/2017." Doc. 669, Exhibit 2, p.3. Springer's "Request to Staff" again requested "consideration of these facts and deciding in [Springer's] favor as to each of the requests identified above and herein." Doc. 669, Exhibit 2, p.2.

Springer's first BP-10 repeats the request in the BP-9, Doc. 669, Exhibit 6, p.2, and again, in Springer's second BP-10. Doc. 669, Exhibit 11, p.2. The Warden's out-of-time BP-9 response(from 46 days to 58 days) reads "the relief you seek is denied." Doc. 669, Exhibit 9, p.2. The Warden did not say sorry I do not know what you are talking about like O'Reilly suggests.

The Regional Director's response says it "is for informal purposes only." <u>Doc. 669, Exhibit 13, p.2</u>. The Central Offic denied Springer's appeal stating "no further review in this matter is warranted." <u>Doc. 669, Exhibit 15, p.2</u>.

Springer clearly sought the Warden's assistance in Springer obtaining a sentence modification due to Springer's exposure to cancer causing asbestos and breath-taking mold. The only thing that has changed is the First Step Act of 2018 no longer leaves that discretion in the hands of the Director of the Bureau of Prisons and now allows a defendant to ask the Court to determine whether such a reduction is warranted under the circumstances presented.

## CONCLUSION

Springer respectfully requests this Cout to authorize Springer to file a reply to the response filed opposing his Motion under the First Step Act to allow Springer to address more fully the issues raised by O'Reilly in his response so Springer's position is in the record for all purposes.

Respectfully,

Lindsey Kent Springer
Reg. # 02580-063
Federal Transfer Center
P.O. Box 889801
Oklahoma City, Oklahoma 73189

CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2019, I sent by U.S. Mail, First Class, Postage Prepaid, the above Motion to the Clerk of Court at 333 West Fourth Street, Tulsa, Oklahoma 74103;

I further certify that the following are ECF registered users and shall receive service of the above Motion through the Court's ECF system:

Charles A. O'Reilly

/s/ Lindsey K. Springer
Server

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that on November 11, 2019, I deposited the above Motion in th U.S. Mail System inside the Federal Transfer Center to the Clerk of Court at the address listed above.

/s/ Lindsey K. Springer
Declarant

NAME: Lindsey Kent Springer
REG# 02580-063
FEDERAL TRANSFER CENTER
P.O. BOX 898801
OKLAHOMA CITY, OK 73189-8801

**FILED**
NOV 14 2019
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

OKLAHOMA CITY OK 730
12 NOV 2019 PM 5 L

Post marked 11/12/19
AG

09-CR-00043

⇔02580-063⇔
Clerk Of Court
Northern District of Okla
333 W 4TH ST
Tulsa, OK 74103
United States

"Legal Mail"

74103-383999

FTC Oklahoma City
7500 S. MacArthur Blvd.
P.O. Box 8801
Oklahoma City, OK 73189-8801

DATE: **NOV 12 2019**

"The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, pleas return the enclosure to the above address."