IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                    Case No. 4:09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY                                                    DEFENDANTS

BRIEF IN SUPPORT OF DEFENDANT OSCAR STILLEY'S VERIFIED MOTION
FOR SENTENCE REDUCTION PURSUANT TO 18 USC 3582(c)(1)

Comes now Defendant Oscar Stilley (Defendant Stilley) and for his brief in support of verified motion states.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    PRELIMINARY MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.    Legal and factual background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.    Use of links for the convenience of the reader.. . . . . . . . . . . . . . . . . . . . . . 2

II.   RE-SENTENCING IS REQUIRED DUE TO MISCALCULATION OF TAX LOSS,
      IMPROPER ENHANCEMENTS, ETC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    The District Court's announced foundation for the sentence. . . . . . . . . . . . 2

      B.    This Court included "tax losses" that didn't meet up with this Court's own
            stated rules and evidentiary standards.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.    Dr. Roberts' trial testimony obliterates the government's theories.
                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            2.    James Lake only provides additional entertainment. . . . . . . . . . . . . . 8

            3.    Patrick Turner's tax loss is the gateway to discarding Count 4. . . . . 10

-i-

**III.**    **AT RE-SENTENCING, THE COURT IS DUTY BOUND TO ENTER JUDGMENT AS A MATTER OF LAW IN FAVOR OF DEFENDANT STILLEY, AS TO ALL COUNTS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    **A.**    **Defendant Stilley had no knowledge of any intent to use his IOLTA account to move money from Patrick Turner to Lindsey Springer, until long after all the money had left his account.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    **B.**    **The government abandoned the alleged _Grand Jury_ indictment wholesale.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**IV.**    **DEFENDANT STILLEY WAS DENIED DUE PROCESS.** . . . . . . . . . . . . . . . . . . . 15

    **A.**    **The District Court acted contrary to its own belief and understanding of the law of due process.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    **B.**    **Defendant was not given fair notice that his conduct may have been construed as illegal, a clear violation of due process.** . . . . . . . . . . . . . . . . . . . 19

**V.**    **THE INDICTMENT IN THIS CASE HAS NOT BEEN RETURNED IN OPEN COURT; THUS THE INDICTMENT IS DUE TO BE DISMISSED.** . . . . . . . . . . . 21

    **A.**    **The rules require that indictments be returned in open court.** . . . . . . . . . . . 21

    **B.**    **The indictment in this case was not returned in open court.** . . . . . . . . . . . . . 22

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASELAW

*Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62, 66-67 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

*Brasfield v. United States*, 272 U.S. 448, 449-450, 47 S. Ct. 135, 71 L. Ed. 345 (1926). . . . . . . 2

*Clyatt v. United States*, 197 U.S. 207, 222, 25 S. Ct. 429, 49 L. Ed. 726 (1905). . . . . . . . . . . . . 2

*Commissioner v. Duberstein*, 363 U.S. 278, 285, 4 L. Ed. 2d 1218, 80 S. Ct. 1190 (1960) . . . . 20

*Day v. McDonough*, 547 U.S. 198, 209, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006). . . . . . . . . 16

*Grannis v. Ordean*, 234 U.S. 385, 394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hicks v. United States*, 582 U.S. ___, ___, 137 S. Ct. 2000, 198 L. Ed. 2d 718 (2017) (Gorsuch, J., concurring) (137 S. Ct. 2000, 198 L. Ed. 2d 0718) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 32 (1976). . . . . . 11

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*Ross v. Blake*, 136 S. Ct. 1850, 195 L. Ed. 2d 117, 126-27 (2016) . . . . . . . . . . . . . . . . . . . . . 1, 22

*Silber v. United States*, 370 U.S. 717, 717-718, 82 S. Ct. 1287, 8 L. Ed. 2d 798 (1962) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Conley*, 942 F.2d 1125, 1127-1128 (7th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Farr*, 536 F.3d 1174, 1179 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Franks*, 723 F.2d 1482 (10th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Haymond*, 139 S. Ct. 2369, 2379, 204 L. Ed. 2d 897, 906-907 (2019) . . . . . . . 1

*United States v. Holly*, 2009 U.S. Dist. LEXIS 95021, 2009 WL 3275087 . . . . . . . . . . . . . 16, 17

*United States v. Ladell Fitzgerald Pace*, **2016** U.S. Dist. LEXIS 182029, *4-5 . . . . . . . . . . . . 16

*United States v. Mitchell*, 518 F.3d 740 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Patridge*, 507 F.3d 1092, 1094-1095 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Springer*, 2010 U.S. Dist. LEXIS 6906, 2010 WL 419936 . . . . . . . . . . . . . . . 17

*United States v. Stillhammer*, 706 F.2d 1072, 1074-1075 (10th Cir. 1983). . . . . . . . . . . . . . . . . 21

## STATUTORY AUTHORITY

18 USC 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 USC 371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 USCS § 3582(c)(1)(A)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 25

26 USC 7201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER AUTHORITY

Ark. R. Prof. Cond. 1.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

FRCrP 6(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

FRCrP Rule 52(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

USSG 2T1.1(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

USSG 2T1.1(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

USSG 2T1.9(b)(2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

USSG 2T4.1 (Tax Table) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

USSG 3B1.1(a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

USSG 3B1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

USSG 3C1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I.  PRELIMINARY MATTERS

### A.  Legal and factual background.

Defendant Oscar Stilley on 4-23-2010 was sentenced to 180 months of incarceration,

consisting of Count 1 - Conspiracy to Defraud the United States - 18 USC 371; Count 3, Tax

Evasion for year 2003 (26 USC 7201; 18 USC 2); and Count 4, Tax Evasion for year 2005 (26

USC 7201; 18 USC 2).  The Court imposed 5 years incarceration on each count, all to run

consecutive to the others.   Defendant Stilley since that time has been in the custody of either the

US Marshal Service or the Department of Justice-Federal Bureau of Prisons (DOJ-FBOP).

Defendant Stilley has served the full Congressionally authorized maximum punishment

of 5 years incarceration, as to two out of the three counts of conviction.   Defendant has

furthermore served part of the sentence on the remaining count of conviction.

Therefore, the loss of *any* count of conviction imposes upon the Court a legal duty to

immediately order the restoration of Defendant Stilley's full liberty, without any "supervised

release."  *United States v. Haymond*, 139 S. Ct. 2369, 2379, 204 L. Ed. 2d 897, 906-907 (2019).

Congress in the First Step Act of 2018 created 18 USCS § 3582(c)(1)(A)(i), which

provides that a district court may reduce a sentence for "extraordinary and compelling reasons."

Having exhausted all remedies "available"[1] to him within the meaning of the law and the express

language of Congress in the enactment of the First Step Act of 2018, Defendant Stilley provides

the following facts and evidence to show that the District Court is duty bound to discharge

---

[1]     What constitutes a lack of availability may be reviewed at *Ross v. Blake*, 136 S.
Ct. 1850, 195 L. Ed. 2d 117, 126-27 (2016).  Certain particularly relevant text is highlighted for
the reader's convenience.  The burden is on the government to plead and prove failure to exhaust
- not the other way around.  *Id.* at preceding page, footnote 1.  Click and scroll up 3 clicks.

Defendant Stilley from any further confinement, supervision, or punishment whatsoever.

### B.    Use of links for the convenience of the reader.

Defendant Stilley has included links to certain documents, for the convenience of the reader.   A Timeline  provides numerous links to other documents, primarily docket items and transcripts.  The Timeline generally has links to the actual transcript or docket item referenced.

## II.    RE-SENTENCING IS REQUIRED DUE TO MISCALCULATION OF TAX LOSS, IMPROPER ENHANCEMENTS, ETC.

The US Supreme Court in *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2019) held that plain error review is sufficient to correct a multitude of errors, with or without contemporanous objection by the injured party.  The *Rosales-Mirales* court opined that:

> That standard is not reflected in Rule 52(b) itself, nor in how this Court has applied the plain-error doctrine. The Court repeatedly has reversed judgments for plain error on the basis of inadvertent or unintentional errors of the court or the parties below. See, e.g., [*1907] *Silber v. United States*, 370 U.S. 717, 717-718, 82 S. Ct. 1287, 8 L. Ed. 2d 798 (1962) (per curiam) (reversing judgment for [***16]  plain error as a result of insufficient indictment); *Brasfield v. United States*, 272 U.S. 448, 449-450, 47 S. Ct. 135, 71 L. Ed. 345 (1926) (reversing judgment for plain error where the trial judge improperly inquired of a jury's numerical division); *Clyatt v. United States*, 197 U.S. 207, 222, 25 S. Ct. 429, 49 L. Ed. 726 (1905) (reversing judgment for plain error where the Government presented insufficient evidence to sustain conviction). The Court also "routinely remands" cases involving inadvertent or unintentional errors, including sentencing errors, for consideration of *Olano'*s fourth prong with the understanding that such errors may qualify for relief. *Hicks v. United States*, 582 U.S. ___, ___, 137 S. Ct. 2000, 198 L. Ed. 2d 718 (2017) (Gorsuch, J., concurring) (137 S. Ct. 2000, 198 L. Ed. 2d 0718).

### A.    The District Court's announced foundation for the sentence.

Tax loss is the main driver of sentence, in a tax case.  The US Probation Officer (USPO) found the tax loss to be $561,201.67, for a Base Offense Level of 20.  The USPO added 2 points for encouraging others to violate internal revenue laws, and 2 points for obstructing justice, for an Adjusted Offense Level of 26 and a sentencing Guideline Range of 63-78 months in prison.

Based on Defendant Stilley's objections, the USPO removed the objection for encouraging others to violate internal revenue laws.  Thus the USPO's final position was for 24 points, Criminal History Category 1 (no prior convictions, Criminal History Score of zero) which resulted in a Guideline Range of 51-63 months of incarceration.

The District Court at the conclusion of sentencing proceedings found tax losses, with respect to Stilley, totaling $1,303,096.  Sent. TR 408.  The District Court found Springer responsible for $1,085,474.80.  Sent. TR. 407.

For 3rd party tax loss, the reader is directed first to Government Exhibit 1179 (Gov. Ex. 1179), the government's "Summary of Tax Loss and Restitution - Oscar Stilley."  Gov. Ex. 1178 is the same document with respect to Springer.  Gov. Ex. 1177-OS is the Tax Loss of Third Parties Relevant to Oscar Stilley.[2]   Springer's counterpart is Gov. Ex. 1177-LS.

United States Sentencing Guidelines (USSG) §2T4.1 is the "Tax Table" extant in 2009. In 2009, the "Offense Level" from the Tax Table for $1,000,000 but less than $2,500,000 was 22, for less than $1 million but over $400,000 was 20, for $200,000 to $400,000 was 18.   The "Base Offense Level" is in tax cases the offense level taken from the Tax Table.  Adjustments are then applied, to find the "Total Offense Level." The Sentencing Table determines the Guideline Sentence, based on the Total Offense Level.

Thus a successful attack sufficient to bring the tax loss down below $1 million mandates re-sentencing pursuant to *Rosales-Mirales*.  A reduction below $400,000, or some other threshold of the Tax Table, doesn't change the *fact* of re-sentencing.  It might however influence

---

[2]       This document has no exhibit sticker, but this number is assigned by the government's witness and exhibit list at 319-2.

the appropriate outcome *as a result* of the re-sentencing.

The District Court's tax loss findings placed both Defendants in the "Base Offense Level" of 22."  This Court then calculated  points for Stilley on page 430 as follows:

| Source of points | # of pts | Applied to | Agreed by USPO | Basis for the finding |
|---|---|---|---|---|
| 2T1.1(b)(1) Failing to report criminal source income | 2 | Both | No | Turner (Count 4) and Hawkins (no part of indictment) |
| 2T1.1(b)(2) Sophisticated means | 2 | Both | Yes | IOLTA account, use of name "Bondage Breakers Ministry," cash dealing, check cashing service, "fraudulent" advice |
| 2T1.9(b)(2) Encouraging others to violate law | 2 | Both | Yes first, no after objection | Dr. Philip Roberts, James Lake (Also Mr. Dingman and Mr. Grady, but they had nothing to do with Stilley) |
| 3C1.1  Obstructing justice | 2 | Both | Yes | Stilley testimony regarding lack of statute saying who is liable for income tax, statute defining "income," statute commanding the filing of tax return, saying to Grand Jury that Springer does not charge for his services |
| 3B1.1(a) Organizing others | 4 | Springer | ??? | |
| 3B1.3  Using position to carry out crimes | 2 | Stilley | No | Status as lawyer facilitated commission and concealment of crimes |

To summarize the District Court's conclusions with respect to Stilley, he found a Base Offense Level from (USSG) §2T4.1 of 22, (more than $1 million) together with 10 additional points, giving a Total Offense Level of 32.  A Total Offense Level of 32 called for a Guideline Range of 121 to 151 months, pursuant to the Sentencing Table.

US Probation arrived at a Total Tax Loss of $561,201.67.  However, US Probation cited

*United States v. Franks*, 723 F.2d 1482 (10th Cir. 1983) for the proposition that "restitution in tax

cases shall not be ordered as a condition of probation or supervised release when the amount of

tax loss has not been acknowledged, conclusively established in a criminal proceeding, or finally

determined in a civil proceeding."

**B.      This Court included "tax losses" that didn't meet up with this Court's own stated rules and evidentiary standards.**

This Court found a total tax loss of $1,303,096 against Defendant Stilley.      Sent. TR

408.   The following chart shows the amounts and sources:

| Time frame | Nature of claimed tax loss | Amount |
|---|---|---|
| 2000-2008 | Stilley's estimated federal income tax | $        377,161.00 |
| 2000-2008 | Stilley's estimated state tax extrapolated from fed | $         91,627.00 |
| 2000-2007 | Springer's estimated federal income tax | $        299,591.00 |
| 2000-2007 | Springer's estimated state tax extrapolated from fed | $         80,186.00 |
| 1992-1995 | Dr. Philip Roberts | $        129,818.00 |
| 2000 | James Lake | $        176,000.00 |
| 1999-2003 | Patrick Turner | $        145,713.00 |
| Total | | $      1,300,096.00 |

The tally from this chart is exactly $3,000 less than the District Court's, for unknown

reasons.  For our purposes this discrepancy is irrelevant.

Roberts, Lake, and Turner collectively amount to $451,531.00 laid at the feet of

Defendant Stilley.  Therefore, if Defendant Stilley can lay waste to the foundations of all three of

these add-ons, re-sentencing is not optional.  The Base Offense Level declines from 22 to 20.

*Rosales-Mirales* then demands a re-sentencing.

1.      **Dr. Roberts' trial testimony obliterates the government's theories.**

The government persuaded the Court that Dr. Roberts testified that Defendant Stilley

confirmed the rectitude of his legal position.  Actually, this is what he said, on the second day of

trial, 10-27-09, at transcript (TR) 316 on direct examination by Mr. O'Reilly.

> 10 Q. With respect to whether or not you were required to
> 11 file taxes, what did Mr. Stilley tell you?
> 12 A. I don't remember him specifically saying that there
> 13 wasn't a requirement. He's quite gifted in
> 14 constitutional and legal issues. And to be -- quite
> 15 frankly, he overwhelmed me a lot. So I couldn't actually
> 16 tell you definitively that I recall him making that
> 17 statement ever.
> (Emphases added)

As much as Defendant Stilley likes his Sixth Amendment right of confrontation, he didn't feel

led to confront *that*.  What's to confront?

Dr. Roberts initially testified to basically the same thing, with respect to Lindsey Kent

Springer.  Mr. O'Reilly, clever and cunning lawyer that he is, "rehabilitated" his witness, starting

at 316 and continuing to the next page.  It went like this:

> 18 Q. Okay. Did you ever have a conversation with
> 19 Mr. Springer about whether or not you had to file tax
> 20 returns?
> 21 A. Again, I cannot recall any specific conversation in
> 22 that regard.
> 23 Q. Is it possible that in the past you had a
> 24 recollection that -- or that reference to this grand jury
> 25 transcript might assist you in remembering?
> 317
> 1 A. Anything could help me with remembering. It was a
> 2 long time ago.
> 3 Q. Yes. Yes, Dr. Roberts. Let me ask you, if you
> 4 could, to look at page 9 of that same grand jury
> 5 transcript and simply look, I believe, from lines 9
> 6 through 11 and read it to yourself, sir.
> 7 A. Page 9, lines 9 through 11?

8 Q. I believe so, sir, yes. Actually, line 6 through
9 12. I apologize. Have you read that, sir?
10 A. Yes, I have.
11 Q. **Does that refresh your recollection**?
12 A. It certainly reflects what I said then, yes.
13 Q. What did you say?
14 A. At what part of this?
15 Q. Actually, let me just ask, **did Mr. Springer** ever
16 tell you whether or not you had an obligation to pay
17 incomes taxes and file tax returns?
18 **A. Yes. He stated that my conclusions were correct and**
19 **there was no requirement or liability to do those.**
(Whereupon Mr. O'Reilly passes the witness)
(Emphases added)

A few items are worthy of mention.  The government should have paid attention when

this court at Pretrial 10-21-09 TR 109-110, on the first day of trial, forbade "off the cuff"

impeachment, and exhorted the parties that *"it's never as good as you remember"*."

O'Reilly was totally confused about the testimony of Dr. Roberts. Sent. TR 300-302

What he lacked in accuracy he made up for with enthusiasm.  See Sent. TR 379:

14 MR. O'REILLY: Yes, Your Honor. And based upon
15 Dr. Roberts' testimony, it appears that he was also counseling
16 others. The fact that we **only have Dr. Roberts as the one that**
17 **we have identified** does not change the fact that it was part of
18 a common -- Mr. Stilley's common scheme.
(Emphases added)

How nice of Mr. O'Reilly to admit that he hooked his wagon to *exactly one* crippled up,

foundered horse, and tied a buggy onto the back.  Thus when the horse fell over dead, not only

the ersatz "tax losses" but also the 2 point enhancement under  2T1.9(b)(2), encouraging others

to violate the revenue laws, headed straight for the ditch.

When the government's case falls into the ditch, the wise approach is to invite the

government to pull it out themselves - if they can.  Gently remind them that you didn't put their

garbage case in the ditch, and it's not your job or prerogative to pull it out.  You wish them the very best, you might even hope they win, but you're not going to **help**.  You're going to rule betwixt and between the belligerent parties.  *U.S. v. Farr*, 536 F.3d 1174, 1179 (10th Cir. 2008) (When you get to this one, roll the cursor up a few clicks.)

### 2.        James Lake only provides additional entertainment.

Defendant Stilley in his chart included James Lake, despite Mr. O'Reilly's kind concession at Sent. TR 379.  Defendant Stilley got tagged for Lake, so let's take a look at it.  We have a link to Government Exhibit 1143, so let's see why it's a total joke.

This record shows "no return filed" but provides not the slightest evidence of any duty on the part of James Lake, to file a tax return that year.

Mr. Lake fired Stilley early December 2001 or thereabouts, just before his trial. TR 860 Exhibit shows the payment of $176,000, on 3-22-2002.  On 7-1-03, over a year later, someone again noted that no tax return had been filed.  On 1-14-08 this **credit balance** was cleared because the time to **claim refund** expired.  For reasons not explained, the credit was re-instated.

If there was a tax liability on Lake for the year 2000, why wasn't the $176,000 applied to it?  That hasn't been explained.  Lake after all did go to prison, with supervised release to follow.

 At Sent. TR 49, Lindsey Kent Springer elicited the following testimony from Brian Shern:

> 17 Q. As you stand here today, did **James Lake** not file a tax
> 18 return for the year 2000 by April 15, 2001?
> 19 A. Did he not file?
> 20 Q. Did he or did he not?
> 21 A. I'm not for certain whether he did or didn't. I know
> 22 there was a -- the transcript of his account for 2000 shows a
> 23 restitution payment of -- and that is what we included in our
> 24 calculations, I believe.
> 25 Q. Restitution payment?
> (Emphases added)

Springer continued to rip Shern to shreds over the next 3 pages.  At Sent. TR 52 we see this gem:

17 THE COURT: Okay. Except that I've heard on cross
18 that maybe he may well have filed for 2000.
19 MR. O'REILLY: I'll try to rehabilitate the witness.
20 THE COURT: Okay. Well, proceed.

Now, we know that Mr. O'Reilly knows how to rehabilitate a witness.  He very deftly

rehabilitated Dr. Roberts - as to *Springer*.   You could call it a textbook case of the use of grand

jury testimony to rehabilitate a witness.  He followed the Court's ground rules, respected the

witness, respected the 6th Amendment right to confrontation, etc.  He got his testimony.

At Sent. TR pg. 172, Defendant Stilley finished his cross examination of Brian Shern.

The following colloquy was had:

17 Pass the witness.
18 THE COURT: Redirect?
19 MR. O'REILLY: No questions, Your Honor.
(Emphasis added)

Mr. O'Reilly's rehabilitation is conspicuous by its absence.  Thus we have no ***evidence***

whether Lake filed a return for that year or not, nor whether ***anybody*** thought he was legally

required to file one.  We only know that a large payment was made but never applied - at least up

through sentencing in this case - to any real or imagined tax obligations of James Lake.   To

understand what's going on as to Lake, It may be helpful to review a certain objection at TR

1289, during Springer's cross examination of Brian Miller:

5 MR. O'REILLY: Objection as to what is the IRS's
6 position **and you should use common sense.**
7 THE COURT: Don't go there. That will be
8 overruled.
(Emphasis added)

There are practical reasons that a prosecutor should not check his common sense at the

courthouse door.  The government otherwise conceded that holding a defendant liable for events

prior to meeting an individual is simply untenable.  Sent. TR 302   A quick Google search will tell

you that the average salary for a Delta pilot in the year 2000 was  $150,549.  Click the link - see

for yourself.  So why would James Lake owe well over that much in taxes, for 2000 alone?

What we're left with is 1) a tax loss that the District Court didn't accept for lack of proof,

2) that the government didn't rehabilitate as promised, and 3) that makes no logical sense

whatsoever.  This tax loss is in the ditch, mired in mud up to the axles.

### 3.      Patrick Turner's tax loss is the gateway to discarding Count 4.

The District Court set forth the government's theory at Sent. TR 83, saying that the

government claimed these moneys not as tax evasion, but as impairment of the collectibility of

Turner's prior year tax liabilities.  The first problem with that theory is that there is absolutely no

evidence that the conveyance of this $250,000 rendered Mr. Turner insolvent or partly so.  There

is absolutely no evidence that he couldn't have paid both the $250,000 and the full amount

claimed by the government - at the same time.  Mr. O'Reilly asked Mr. Turner about his ability

to pay, at TR 1459-1460 as follows:

> 22 Q. Were you **able to pay** the money that was reported as
> 23 owed when you filed those tax returns?
> 24 A. There was a dispute on the amounts, so, no, I did
> 25 not pay the amounts on the tax returns.
> 1459
> 1 Q. Okay. And then you said you wanted to finish your
> 2 answer on the other question?
> 3 A. Yes.
> 4 Q. Please do so.
> (Emphasis added)

If a prosecutor wants to take away years of a man's life on the theory that he helped

someone else become "judgment proof," that is emphatically not the way to do it.   Mr. O'Reilly walked straight up to the issue with which he savaged the Defendants at sentencing - and then meandered away without an answer.  Lawyers don't generally do that - if they think the answer *will help their case.*

O'Reilly had already proven his ability to deftly and professionally rehabilitate a ***rather adverse*** witness.  Let us not forget that Dr. Roberts came straight from a jail cell to the witness stand, with jail clothes and handcuffs.  At TR 319, asked the reason for the outfit, Dr. Roberts laconically responded "Well, it's not because red is a good color for me."

The second problem with this theory is that the government gave no notice of their theory in time to cross examine Turner on the subject.  It is exceedingly unlikely that a man of Turner's abilities and station in life would not have been able to pay the sum claimed by the government, after exhaustion of legal remedies, but that's beside the point.  The point is that raising a theory for the first time after the trial is a flagrant violation of due process.  The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 32 (1976).

It cannot be denied that Turner's stated reason for conveying the money was a fear that the government would "scorch the earth" on him so as to prevent an effective criminal defense. TR 1460  There is not the slightest indicia, in the record, that the conveyance was done with the purpose or with the effect to render himself "judgment proof," in whole or in part.

Other parts of this tax loss analysis are better addressed in other parts of this brief. Defendant Stilley incorporates all parts of this brief into all other parts, as if set forth therein

word for word.

III.    **AT RE-SENTENCING, THE COURT IS DUTY BOUND TO ENTER JUDGMENT AS A MATTER OF LAW IN FAVOR OF DEFENDANT STILLEY, AS TO ALL COUNTS.**

A.    **Defendant Stilley had no knowledge of any intent to use his IOLTA account to move money from Patrick Turner to Lindsey Springer, until long after all the money had left his account.**

Stilley had no knowledge about the original plan to loan or gift money from Patrick

Turner to Lindsey Springer, until long after all such funds had been disbursed from Defendant

Stilley's account.   Nor does the official record contain any evidence of such knowledge.

This Court provided an example of how to get such information, at Sent. TR 288, with

this colloquy:

> 12 THE COURT: Perhaps you didn't understand my
> 13 question. My question was very simple: **To what extent did**
> 14 **Mr. Stilley have knowledge of this letter or its contents at**
> 15 **the time that it was provided to Mr. Hawkins?**
> 16 **MR. SPRINGER: Fully aware of it**.
> (Emphases added)
> (Question regarding Stilley's knowledge of Exhibit 204 when sent.)

The government knows how to get essential testimony at trial.  They just didn't.

Stilley at all relevant times reasonably believed that Patrick Turner was simply another

prospective client, who wished to retain the services of Oscar Stilley.  He was totally left in the

dark about plans to promptly cause Oscar Stilley to convey that money to Lindsey Springer.

As the Court explained in its jury instructions, Oscar Stilley had no burden to prove or

disprove anything.  See Jury Instruction #5, given by the Court.

Defendant Stilley was puzzled about why he was getting tagged for prior year taxes of

Patrick Turner, when he didn't even know Turner at that time.  Brian Shern explained as follows,

at Sentencing 164-165:

> 24 Q. Can you tell this Court what Oscar Stilley should have
> 25 done differently so that he would not be charged with this
> 164
> 1 substantial sum of money as being relevant conduct?
> 2 A. **Not helped Mr. Springer hide Mr. Turner's $250,000 by**
> 3 **going through your account. Just walk away from the**
> 4 **transaction.**
> (Emphasis added)

At trial and during sentencing, the government claimed that Turner had made his

$250,000 transfer of funds look like an ordinary attorney retainer payment.  TR 1465; Sent. TR

82.  That's a fine theory, but it raises the question of what Defendant Stilley knew, and when he

knew it.  Concerning whose idea it was to convey the money in this manner, consider TR 1461:

> Did Mr. Springer come up with an idea for a
> 4 course of action to take?
> 5 A. No, sir. I did.

At TR 1462 we see:

> 7 Q. You then agreed with Mr. Springer to do something
> 8 about this; is that correct?
> 9 A. Right. That's correct.

At TR 1464 we see:

> 13 Q. -- what did you do with the funds that you received?
> 14 A. I transferred them -- we wanted to make this as out
> 15 in the open as possible.
> 16 Q. Who is "we"?
> 17 A. Lindsey and I.
> (Emphases added throughout)

At no time did the government prove that Stilley knew or believed that the money was

anything other than a legitimate, bona fide retainer for the purpose of representation in the

pending criminal investigation, and criminal trial if any, during the time that any of the funds

remained in Defendant Stilley's IOLTA account.

This Court has a solemn legal duty to enter judgment as a matter of law, with respect to

Oscar Stilley, on Count 4 of the indictment.

**B.    The government abandoned the alleged _Grand Jury_ indictment wholesale.**

The government on March 3, 2010, at page 3 of its Objections to the Presentence Reports

of Springer & Stilley stated:

> All of Defendant Springer's income was generated from his elaborate con, defrauding
> numerous individuals with false promises and enticements in order to separate them from
> their money.  In addition, the jury verdict indicates that the jury found that Defendants
> **Springer and Stilley stole money from Mr. Patrick Turner**. Had the jury found that
> Defendant Springer borrowed from Mr. Turner, **the jury would have acquitted
> Defendants** of the tax evasion count for 2005.  Their return of a guilty verdict with
> respect to that count, corroborated by the evidence at trial, proved that Defendant
> Springer and Defendant Stilley, utilizing wire communications, stole $250,000 from
> Mr.Turner during 2005.
> (Emphases added)

This bold pronouncement is just another way of saying that the government _necessarily_

failed to prove the allegations of the indictment, allegedly handed down by the Grand Jury.  If the

verdicts _ipso facto_ prove theft, that means that the government _concedes_ that the trial evidence

cannot possibly support the government's _theory at trial_.  That being said, let's list off the

government's most prominent overall theories, including when they started and stopped.  We are

assisted by Exhibit 1 to this pleading, a Timeline of the proceedings.

1)    Springer earned money and concealed the fact of receipt of that money from the
       government.   In the first seven pages of the Timeline, covering 3-10-09 (date on
       the purported indictment) through the first day of trial (10-26-09) the government
       not less than 6 times emphatically declared that Springer _earned_ income, and hid
       _the fact_ of receiving that income.  Springer is blasted for claiming the funds are
       gifts or donations.  At Dkt. 212, filed on the 1ˢᵗ day of trial, the government said
       "[Ms. Wiggins] caused the issuance of these five checks to Defendant Springer for
       services, and _not as gifts or donations_. (Emphasis added)

2)    Although Springer freely disclosed all of his gross receipts to the IRS, Springer
       concealed from the IRS the true nature of the payments by claiming that they were
       gifts when they weren't; See e.g. Dkt. 173 pg. 4.

3)      On 11-2-09, the 6th day of trial, Brian Miller says that the question of whether transfers were gifts or donations is "almost a moot point" in this case, because **either way**, they're income to Springer, that he was required to report on a federal individual income tax return.  TR 1295-1296

4)      Springer stole the money, pure and simple.  See comment made 2-12-10, at Dkt. 310, pg. 11, about Patrick Turner's "naive belief" that "Defendant Springer had any intention of repaying the money Defendants stole."  Then on 3-3-10, in the quote provided at the beginning of this section, the government firmly committed that (at the very least as to count 4) there was *no other theory* that would sustain the conviction.  This theory was promoted through the day of sentencing, on 4-23-10, where this District Court said "Mr. Stilley, you are not a lawyer in any normal sense of the word.  You are a *thief with a law degree*."  Sent. TR 450 (Emphases added)

It's not like there was any great effort at consistency.  At Sent. TR 84-85, during Springer's cross examination of Brian Shern, the Court whipsawed back to the 1st or possibly the 2nd theory of liability, telling Springer that "the overarching question of whether the funds that you received over the years that were involved in this case were **received by you for services rendered** has been **conclusively resolved against you** by the jury verdict." (Emphases added)

Defendant Stilley was bound by his oath as an Arkansas attorney not to refuse the causes of Turner, Patterson, or other persons similarly situated, for reasons personal to himself.  Fifteen years of prison for crimes he *could not possibly have committed* is a *reason personal to himself*.

## IV.    DEFENDANT STILLEY WAS DENIED DUE PROCESS.

### A.    The District Court acted contrary to its own belief and understanding of the law of due process.

The District Court sua sponte (on his own motion) struck Plaintiff's consolidated motions for judgment as a matter of law (JAML) (Dkt. 261)  and new trial, (Dkt. 263) despite stating the knowledge and belief, in other opinions and orders, that such a sua sponte motion violates due

process.  For example, consider the case of *United States v. Ladell Fitzgerald Pace*, **2016** U.S.

Dist. LEXIS 182029, *4-5, where this Court, Stephen P. Friot, opined as follows:

> Consequently, defendant's motion appears to be untimely and subject to dismissal with prejudice. District courts are "permitted, but not obliged" to review, ***sua sponte***, a federal prisoner's § 2255 motion to determine whether it has been timely filed. The Tenth Circuit case law makes clear that a district court may raise a procedural bar on its own motion. [citations omitted]. If the district court acts on its own raising a limitations defense, **however, it must "accord the parties fair notice and an opportunity to present their positions."** ***Day v. McDonough***, **547 U.S. 198, 209, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006). The court therefore shall permit defendant to file a response within 30 days demonstrating why his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody should not be dismissed as time-barred.** ...
> (Emphasis added)

That was 2016, and plainly shows what this District Court thought the law was on July

20, 2016.  This Court struck the pleadings that would have necessarily resulted in the entry of a

judgment of acquittal, as to Oscar Stilley, as a matter of law, on 12-8-2009. Dkt. 261 and 263.

This gives rise to the question of this Court's understanding of the law *before* striking

Stilley's critical pleadings.   In fact the Court's understanding of the law prior to Stilley's trial

was no different than it was afterward.  Consider *United States v. Holly*, 2009 U.S. Dist. LEXIS

95021, 2009 WL 3275087, where this Court said:

> The court further notes that defendant's motions appear to be untimely filed as they were not filed within three years after the verdict or finding of guilty in defendant's criminal case. Rule 33 (b)(1), Fed. R. Crim. P. ("Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."). The court, however, **does not raise the issue sua sponte**. See, e.g., *United States v. Mitchell*, 518 F.3d 740 (10th Cir. 2008).
> (Emphases added)

*Mitchell* cited to *Day v. McDonough*, and discussed it extensively.  There can be no reasonable

doubt as to why this Court cited to Mitchell in support of its statement that it would not raise the

timeliness issue sua sponte.  *United States v. Holly* was decided by this Court on October 13,

2009.  This Court held the final pretrial conference in this case just eight (8) days later, on

October 21, 2009, and started the trial on October 26, 2009.  It is hard to imagine better proof

that this legal principle was fresh in the Court's mind.

This Court's order [Dkt. 264] cites no authority except LCvR7.2(c).  That document

wasn't picked up by LexisNexis, but another order on the same subject was. [Dkt. 293] *United

States v. Springer*, 2010 U.S. Dist. LEXIS 6906, 2010 WL 419936.   Shepardization of that case

discloses that it has been cited nowhere except in another Springer case, namely *Springer v.

Willis*, 2015 U.S. Dist. LEXIS 186334.  Defendant Stilley cannot see one other case in which a

federal *criminal* defendant has had a pleading stricken on the basis of LCvR7.2(c).

We must face multiple issues.  First, we're looking for a federal criminal case in which

LCvR7.2(c) is applied so as to limit the length of a criminal pleading.  Second, we're looking for

a case in which the court "stacked" a motion and brief, determined the ***combined*** page count to

be over-length, then struck ***both documents***.  ***Both propositions*** are conspicuous by their

absence.  If the government thinks not, perhaps they can give us the citations.

This District Court wasn't confident of its own theories.  The District Court denounced

Springer for his very long pleadings, sometimes triple the 25 pages allowed by the civil rules, for

an opening brief in support of a motion. Dkt. 293, pg. 14.  But that just throws the hot glare of

the spotlight onto Stilley's brief. Dkt. 263   With a mere 13 pages (excluding the certificate of

service) Defendant Stilley's brief wasn't even long enough to require tables of contents and

authorities, under the civil rules.  It wasn't over-length at all - until the District Court construed

the motion as "argumentative," [Dkt. 293, pg. 18] added the 18 countable pages of the motion,

and even then had a page count a mere 24% over the max allowed by the civil rules.

On 6-18-09, at Dkt. 87, this Court denied a motion to strike a 28 page reply.  By this Court's sua sponte theories, that brief exceeded the civil rule limit by 180%, and furthermore had no table of contents or authorities.  There was no commentary to the effect that, for future reference, the parties should be more concise, or should file motions for over-length brief.

How was Defendant Stilley to construe such an order on the part of the District Court?

All the Court had to do to get compliance with the *civil* rules, in a *criminal* case, was to say that in the future the page limits of the civil rules would be enforced.  That's not hard to do - see Dkt. 290 for an example.  The problem with that expression of intent is that it was too late.  The Court had already stricken a critical pleading, and denied Defendant Stilley any opportunity to amend his pleading to comply with the newfound "rules."

For that matter, a statement of preference for following the civil rules regarding brief page limitations would have been sufficient.  Based on the District Court's rulings, Defendant concluded that the civil rules simply weren't applicable in a *criminal* case.

Pushed on the issue, this Court said that if it couldn't construe a motion as part of a brief, then litigants would always be able to evade the rules. Dkt. 293  The easiest answer to that logic is the fact that Defendant Stilley could have easily prepared a motion for new trial, and a motion for judgment as a matter of law, with briefs for each, each incorporating the other briefs and motions as if set forth word for word.

Pleadings drafted on Trulincs allow a word count per page about twice as much as that of a pleading drafted on word processor, in accordance with the rules.  Take a look.  Dkt. 454 Defendant Stilley has prepared countless pleadings on Trulincs, for himself and others, and has

never had one stricken for length, or because they conform to virtually no court rules *anywhere*.

The Supreme Court has already stated the requirement that an illegal order be set aside, giving the litigant a fresh start.  As the Court explained in *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62, 66-67 (1965):

> A fundamental requirement of due process is "the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394. **It is an opportunity which must be granted at a meaningful time and [****13]  in a meaningful manner.** The trial court could have fully accorded this right to the petitioner only by granting his motion to set aside the decree and consider the case anew. Only that would  [***67]  have wiped the slate clean. **Only that would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place.** His motion should have been granted.
> (Emphases added)

Applying the teachings of *Armstrong v. Manzo*, this Court should set aside its order striking Dkt. 257, 258, 260, 261, and 263.  The same order can allow the government a reasonable time to respond to the motions and briefs, responding numbered paragraph by numbered paragraph, and fully briefing the court on the issues raised therein.

Then, if the government thinks that some or all of the pleadings are too long, it can file a motion requesting that the Court once again strike some or all of the listed pleadings.  That will give the defendants a fair chance to respond, in conformity with the requirements of due process.

The Northern District of Oklahoma has now placed the rules for criminal briefs within the Local Criminal Rules proper.  LCrR47-5.  That's all well and good, and should have been done long ago.  No litigant should pay, with years of his life, for ambiguity in local rules.

**B.      Defendant was not given fair notice that his conduct may have been construed as illegal, a clear violation of due process.**

In *United States v. Conley*, 942 F.2d 1125, 1127-1128 (7th Cir. 1991) the Court explained:

[**2]  Under *Commissioner v. Duberstein*, 363 U.S. 278, 285, 4 L. Ed. 2d 1218, 80 S. Ct. 1190 (1960), the donor's intent is the "critical consideration" in distinguishing between gifts and income. We reverse Conley's conviction and remand with instructions to dismiss the indictment against her because the government failed to present sufficient evidence of Kritzik's intent regarding the money he gave her. We also reverse Harris' conviction. The district court excluded as hearsay letters in which Kritzik wrote that he loved Harris and enjoyed giving things to her. These letters were central to Harris' defense that she [*1128] believed in good faith that the money she received was a nontaxable gift, and they were not hearsay for this purpose.

**We do not remand Harris' case for retrial, however, because Harris had no fair warning that her conduct might subject her to criminal tax liability.** Neither the tax code, the Treasury Regulations, or Supreme Court or appellate cases provide a clear answer to whether Harris owed any taxes or not. ......
(Emphasis added)

Consider the facts:

1)      The government says it is not criminal to earn income.  Dkt. 42 pg. 3

2)      The government claimed not less than 6 times that Springer had earned income, which by necessary implication means he was entitled to the money; Id. pg. 1-5

3)      Pursuant to Arkansas Rule of Professional Conduct 1.15 (Ark. R. Prof. Cond. 1.15), Stilley had a legal and ethical duty to ***promptly deliver*** any "third person entitled to receive" such moneys, or face professional discipline.  This is true whether the money was compensation, donation, or gift.

4)      Asked if Stilley or Springer had interfered with any IRS official in the performance of their official duties, Brian Miller, who watched the whole trial, couldn't think of a single name.  TR 2127

5)      Stilley couldn't file Springer's tax return if he tried, amongst other reasons because of the requirements of Form 56 and Form 2848.

6)      Springer answered all questions from IRS employees.  TR 563; TR 2366 Without controversy, the IRS had sufficient information from which it could have assessed a tax, giving Springer fair notice and opportunity to litigate his contentions in a civil proceeding.

7)      The government seized all of Springer's financial papers, and Springer provided answers to all questions asked such that Brian Miller was confident of his ability to calculate the tax due.  Thus Springer already provided papers and answers

sufficient to constitute a "tax return" as defined by *United States v. Stillhammer*, 706 F.2d 1072, 1074-1075 (10th Cir. 1983) and *United States v. Patridge*, 507 F.3d 1092, 1094-1095 (7th Cir. 2007).

Springer bitterly complained that he faced a "heads I win tails you lose" proposition, because the O'Reilly said ***keeping*** property on which Patrick Turner had a lien was theft, but ***giving it back*** was tax evasion.   Sent. TR 339

That's the same trick bag for which Stilley is now serving 15 years in federal prison.  If I pay the money to the person entitled, in compliance with Ark. R. Prof. Cond. 1.15, I'm a conspirator and a tax evader.  If I don't, I'm a thief, guilty of a real crime that real people recognize as a crime and an evil deed.

At a proper time, the government should be ordered to set forth, in writing, where and how Stilley was placed on notice that paying money to a person who allegedly "earned" the money, is nevertheless a crime, and 2) where and how Stilley was given notice of some lawful way, not contrary to his oath of office as an Arkansas attorney at law, to avoid criminal liability. Anything less deprives Defendant Stilley of due process.

## V.     THE INDICTMENT IN THIS CASE HAS NOT BEEN RETURNED IN OPEN COURT; THUS THE INDICTMENT IS DUE TO BE DISMISSED.

### A.     The rules require that indictments be returned in open court.

FRCrP 6(d) provides as follows:

(f) Indictment and Return. A grand jury may indict only if at least 12 jurors concur. The grand jury—or its foreperson or deputy foreperson—**must return the indictment to a magistrate judge in open court.** To avoid unnecessary cost or delay, the magistrate judge may take the return by video teleconference from the court where the grand jury sits. If a complaint or information is pending against the defendant and 12 jurors do not concur in the indictment, the foreperson must promptly and in writing report the lack of concurrence to the magistrate judge.
(Emphasis added)

The US Supreme Court promulgated this rule because we don't trust federal prosecutors to carry their own indictments back to the clerk's office and file them.  Basically, it's a matter of "trust but verify."  Just to make sure prosecutors don't pull any tricky stuff, have the grand jury foreman or deputy foreman bring the indictment into open court, hand it to the magistrate, and say the document is a true bill of indictment actually approved by the grand jury.

**B.      The indictment in this case was not returned in open court.**

How do we know that an indictment has been returned in open court?  It is very simple.  Certainly we can't just **assume** the return in open court - the very reason for a requirement of return in open court is a well-justified lack of trust.  So we have to have means of proof.  Therefore you affix the proof to the document, and file it.  Here's a copy of the indictment of Roland Daza-Cortez, so we can see what the indictment looks like when it has been returned in open court.  This is a matter of public record, available on PACER.

Take a look at the Daza-Cortez docket sheet.  It says nothing about any return in open court.  Proof of that fact is endorsed on ***the first page of the indictment.***  That's how we know.

Take a look at the indictment in this case, Dkt. 2.  There is no endorsement saying that it was returned in open court.  Now take a look at the Docket Sheet in this case.  That doesn't say the indictment was returned in open court either.  Remember, the whole point of requiring the return in open court is to satisfy ***the public*** that the prosecutors didn't either ***phony up*** the indictment altogether, or ***embellish the words*** of the grand jury.

Nor is it acceptable to go outside the certified record in order to prove such a point.  *Ross v. Blake*, 136 S. Ct. 1850, 1862, 195 L. Ed. 2d 117, 130 (2016) (Justice **Thomas**, concurring in

part and concurring in the judgment)  We have a certified record in this case.  Take a look at the appellate docket, 10th Cir. 10-5057.  At page 5, entry #15,[3] we see that the record on appeal consists of 7,354 pages.  If the government thinks that Defendant Stilley is mistaken on this point, they are invited to bring the Court's attention to any and all specified pages of this 7,354 page record, that it urges as sufficient to prove a return of the indictment in open court.

Lest an accusation of hyper-technicality be made against undersigned, remember the government objected to questions by Lindsey Springer asking about Brian Shern's position on a certain matter, at TR 1837.  Mr. O'Reilly and the Court reminded Springer that the grand jury, and not Brian Shern, was the source of the purported indictment.

The District Court is in accord.  See Sent. TR 450:

10 One other matter should be mentioned before sentence is
11 imposed. Both of you are going to have some time, considerable
12 time to perfect your self-image as tax protestors who have been
13 persecuted and victimized by the Internal Revenue Service.
14 **Before you get too far down that road, let me remind you that**
15 **you were indicted by a grand jury consisting of your fellow**
16 **citizens and not by the IRS.** You were convicted by a trial
17 jury sitting in this courtroom consisting of your fellow
18 citizens and not by the IRS.
(Emphasis added)

Two matters are apropos in response to such claims.  First, if the government and the Court are to rely on the grand jury as accuser, they need to make sure they have proof *in conformity with applicable rules* that the grand jury actually indicted, and the specific accusations approved by the grand jury.

---

[3]      The docket has been modified, for the convenience of interested persons, to include numbered links to the pleadings, orders, and other papers (not to include the full 7,354 page record) at no cost.  Entries relevant to Defendant Stilley's efforts to secure his right of reasonable access to the courts have been highlighted in yellow.

Second, and perhaps more importantly, if the government is so proud of the indictment, they need to stick with it from start to finish.  This they did not do.  Along those lines, consider the basic foundation of claims of tax loss from the following chart:

| Tax year | 08-19-09 | | During trial | | At sentencing | | Sentencing minus trial | |
|---|---|---|---|---|---|---|---|---|
| 1999 | $ | 0.00 | $ | 0.00 | $ | 22,340.40 | $ | 22,340.40 |
| 2000 | $ | 33,777.11 | $ | 32,979.00 | $ | 35,400.00 | $ | 2,421.00 |
| 2001 | $ | 500.00 | $ | 0.00 | $ | 15,000.00 | $ | 15,000.00 |
| 2002 | $ | 0.00 | $ | 0.00 | $ | 12,367.20 | $ | 12,367.20 |
| 2003 | $ | 89,349.61 | $ | 97,223.00 | $ | 82,134.20 | $ | (15,088.80) |
| 2004 | $ | 0.00 | $ | 3,854.00 | $ | 26,010.00 | $ | 22,156.00 |
| 2005 | $ | 33,463.00 | $ | 41,189.00 | $ | 59,300.00 | $ | 18,111.00 |
| 2006 | $ | 0.00 | $ | 0.00 | $ | 39,630.00 | $ | 39,630.00 |
| 2007 | $ | 0.00 | $ | 0.00 | $ | 30,680.00 | $ | 30,680.00 |
| | $ | 197,132.72 | $ | 175,245.00 | $ | 322,861.80 | $ | 147,616.80 |

For the source of the numbers for 08-19-09 see Dkt. 130, pg. 32 and 37.  Defendant Stilley asked about the government's conspiracy theories at page 32.  At page 37 of the document, we can see that Special Agent Brian Shern essentially considers the tax evasion charges the substantive offenses that correlate to the conspiracy charges.  This is in accord with the indictment.  At trial the government introduced Exhibit 683 into evidence.  The numbers at sentencing are derived from Sentencing Exhibits 1178 (Springer) and 1179 (Stilley).

On both Springer and Stilley, the government used "tax liability" numbers that they **_knew and believed_** to be a pure unadulterated fraud, to "run up the score."  Their "experts" had already calculated the **_actual_** tax losses, according to their (admittedly bogus) theories.  The government

then switched to "estimates" which by their own tacit (or open) admissions may be used only when more accurate numbers are not available.  Sent. TR 10, 189, 299, 323-324

Then they tagged each Defendant with the known fraudulent claims against the other.

## CONCLUSION

Defendant respectfully submits that the pleadings and papers submitted by Defendant Stilley satisfactorily demonstrate "extraordinary and compelling reasons," within the meaning of 18 USCS § 3582(c)(1)(A)(i), warranting a reduction of Defendant Stilley's sentence.

Defendant Stilley has been deprived of the ***process due*** unto him.  Happily, a remedy exists, which the US Supreme Court kindly shared with us in *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62, 66-67 (1965).  This Court can - and should - set aside the offending orders and judgments, and give Defendant Stilley the process due.   After the process due, Defendant Stilley is confident that this Court will reduce Defendant's sentence to zero, for lack of a solitary count sufficient to support any punishment whatsoever.

Defendant Stilley having felt the sting of the denial of due process, has no desire to visit the same upon his adversary.  Therefore Defendant Stilley is, contemporaneously with this pleading, submitting a proposed order through authorized channels, for the consideration of the Court and opposing counsel.  This order gives the government a full and fair chance to be heard, in a meaningful time and a meaningful manner, concerning the allegations of this motion and brief.  Due to the extensive scope of the claims, Defendant Stilley submits that legal issues be briefed in a reasonable and orderly manner, so as to limit the imposition upon the Court and the parties.

Respectfully submitted,

By:/s/ Oscar Stilley                                    May 12, 2021
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  Defendant Stilley is not certain that Lindsey Springer is enrolled in CM/ECF but will ascertain that later and with reasonable promptness make sure Lindsey Springer receives service.