IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              Case No. 4:09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY                                         DEFENDANTS

DEFENDANT OSCAR STILLEY'S REPLY TO RESPONSE TO VERIFIED
MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 USC 3582(c)(1)

Comes now Defendant Oscar Stilley (Defendant Stilley) and for his reply to response to

verified motion for sentence reduction pursuant to 18 USC 3582(c)(1) states:


## TABLE OF CONTENTS

TABLE OF AUTHORITIES
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

REPLY BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    The Positions of the Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.    An Outline of the Government's Position. . . . . . . . . . . . . . . . . . . . . . . . . . 1
      B.    What Stilley does and does not plead. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   The Oklahoma Code, and attorney ethics requirements, obligate the government to
      present this Court with a true and correct record. . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    Government lawyers on this case are bound by oath to give to this Court
            knowledge of falsehoods in the record, that the record may be reformed. . . . 3
      B.    US v. Farr is an object lesson in why the government must confess error. . . 4
      C.    ORPC 3.3 requires lawyers to correct known false, material evidence. . . . . . 7
      D.    ORPC 3.8 is the sledgehammer that the government cannot get around. . . . . 8
      E.    ORPC 3.4 prohibited the government's obstruction of Stilley's timely access
            to critical documents and materials, having potential evidentiary value. . . . 11
      F.    ORPC 5.1 requires supervisory attorneys in this case to ensure O'Reilly
            corrects his falsehoods in time to avoid adverse consequences. . . . . . . . . . . 12
      G.    ORPC 8.3 requires lawyers to report unrepentant attorneys who knowingly
            and persistently violate attorney ethical requirements. . . . . . . . . . . . . . . . . 13

**III.** **Incarceration pending appeal destroyed Stilley's ability to appeal.** . . . . . . . . . . . . 15

    **A.** **The Court acknowledged the fact that incarceration negatively affects the ability to effectively defend pro se.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    **B.** **Time to let the parties fight and the Court decide.** . . . . . . . . . . . . . . . . . . . . . 16

    **C.** **The government got information - for itself.** . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    **D.** **Even "innocent" mistakes must be corrected.** . . . . . . . . . . . . . . . . . . . . . . . . . 19

    **E.** **A court commits an abuse of discretion when it bases its decision on a clearly erroneous finding of fact or conclusion of law.** . . . . . . . . . . . . . . . . . . . . . . . 20

    **F.** **Stilley is not the only one stomped out by denial of due process.** . . . . . . . . . . 22

    **G.** **Let's level the playing field first, and then let the Court decide.** . . . . . . . . . . 23

**IV.** **Plain speech isn't inherently evil - sometimes it is a necessity.** . . . . . . . . . . . . . . . . 24

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

### CASELAW

*Berger v. United States*, 295 U.S. 78, 88 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981) . . . . . . . 21

*In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 40 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . 21

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008) . . . 21

*Kilgore v. AG of Colo..*, 519 F.3d 1084, 1086 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Farr*, 536 F.3d 1174, 1179 (10th Cir. 2008), (WDOK case # 5:06-cr-00191-F-1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Farr*, 591 F.3d 1322, 1325 (10th Cir. 2010), OKWD 5:08-cr-00271-F-1 (Farr II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Vallario v. Vandehey*, 554 F.3d 1259, 1264-1265 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . 21

### STATUTORY AUTHORITY

18 U.S.C. 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

18 USC 3006A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 USC 3582(c)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

### OTHER AUTHORITY

5 Okl. St. Chap. 1, Appx. 5, Rule 1, *Qualifications to Practice Law in Oklahoma - Oath* . . . . . . 3

ORPC 3.3, *Candor Toward The Tribunal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

ORPC 3.4. *Fairness to Opposing Party and Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ORPC 3.8 *Special Responsibilities of a Prosecutor* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ORPC 5.1. *Responsibilities of Partners, Managers, and Supervisory Lawyers* . . . . . . . . . . . . 12

ORPC 8.3. *Reporting Professional Misconduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Proverbs 26:28, *Modern English Version* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**REPLY BRIEF**

I.      **The Positions of the Parties.**

   A.      **An Outline of the Government's Position.**

Lets start with a run-down of the United States' response to this motion, over the signature of Mr. Charles O'Reilly.  We need to know what we're dealing with, what actually requires a reply.  Here are the pertinent facts.

   1)      O'Reilly challenges not so much as a word of the facts stated under oath in Defendant Stilley's motion.

   2)      O'Reilly challenges not so much as a word of the factual allegations in the supporting brief.  Defendant Stilley's argument is carefully and thoroughly supported by citations to the record.

   3)      O'Reilly cites a solitary published case from the 10th Circuit - and that case is by O'Reilly's own admission favorable to Defendant Stilley.

   B.      **What Stilley does and does not plead.**

For starters let's get some facts straight.  First, Defendant Stilley is not raising the issue of failure to provide reasonable dental care, ***in this pleading***.  Defendant Stilley knows how to plead and argue a legal claim.  If something was omitted *inadvertently*, Mr. O'Reilly can rely upon Defendant Stilley to bring that fact to the attention of the Court.

Second, Defendant Stilley is not asking for ***mercy***, he is asking for ***justice***.  Defendant Stilley used 25 pages to make arguments to show the fraud and chicanery practiced upon him by the government.  Defendant Stilley has shown a legal duty, on the part of both the government and the Court, to correct "errors," that have resulted in his utterly lawless incarceration.

Third, Defendant Stilley is not on the 11th year of a 15 year sentence imposed by this Court on April 28, 2020, as alleged on page 2 of the government's response brief. He is on the *twelfth* year of a 15 year sentence imposed April 28, *2010*. However, this is entirely forgivable because, by all appearances, it is the result of oversight, not intentional falsehood.

Not so for O'Reilly's false and fraudulent claim that Defendant Stilley is not an ECF registrant. This is a deliberate and willful lie uttered for nefarious purposes. He can't possibly believe the truth of that assertion. Defendant Stilley filed via CM/ECF. All the links in his motion and brief work. That's impossible, unless Defendant Stilley filed electronically.

Mr. O'Reilly told this lie to keep up his charade, whereby he hides Lindsey Springer out from Defendant Stilley. He knows that the whole of Stilley & Springer are far more than the sum of the parts. He knows that Defendant Stilley will share all his information with Lindsey Springer, and help him in every way possible, given the chance. Depriving Defendant Stilley of this valuable resource is the reason for O'Reilly's outrageous lies. That's why he instructed William Foreman to perform the useless task of mail service. O'Reilly likes his fig leaves.

## II.     The Oklahoma Code, and attorney ethics requirements, obligate the government to present this Court with a true and correct record.

Mr. O'Reilly is infatuated with the Court's alleged inability to find a "thin strand" or a "speck" of integrity in the conduct or way of life of Stilley & Springer. Interesting indeed that he would hurl such invective against Defendant Stilley, despite his inability to attack so much as a solitary fact or legal argument advanced by Stilley. Is this really the mark of a man with no integrity at all? How does a man with *no integrity* craft 7 pages of motion and 25 pages of brief, *not one word of which* O'Reilly is capable of attacking?

2

**A.    Government lawyers on this case are bound by oath to give to this Court knowledge of falsehoods in the record, that the record may be reformed.**

Since O'Reilly gets so much pleasure out of looking for "thin strands" and "specks" of integrity, let's look for the same in his own integrity, ethics, and sense of justice in this case. Let's start with the attorney's oath, in Oklahoma, set forth in Title 5, Attorneys and State Bar, Chapter 1, Appendix 5, *Rules Governing Admission to the Practice of Law in the State of Oklahoma*, sometimes abbreviated as 5 Okl. St. Chap. 1, Appx. 5, Rule 1, which provides in pertinent part as follows:

> RULE 1. Qualifications to Practice Law in Oklahoma
> Upon being permitted to practice as attorneys and counselors at law, they shall, in open court, take the following oath: **You do solemnly swear** that you will support, protect and defend the Constitution of the United States, and the Constitution of the State of Oklahoma; **that you will do no falsehood or consent that any be done in court, and if you know of any <u>you will give knowledge thereof to the judges of the court</u>, or some one of them,** *that it may be reformed***;** you will not wittingly, willingly or knowingly promote, sue, or procure to be sued, any false or unlawful suit, or give aid or consent to the same; you will delay no man for lucre or malice, but will act in the office of attorney in this court according to your best learning and discretion, with all good fidelity as well to the court as to your client, so help you God.
> (Emphases added)

Technically, O'Reilly probably hasn't taken this oath. He's a *California* attorney and this a very mid-western, *Oklahoma* sort of oath. But Acting US Attorney Clinton J. Johnson, whose name appears ½ inch (I measured) above O'Reilly's, *<u>is</u>* an Oklahoma lawyer. He has taken the oath of Oklahoma attorneys. So has Jeffrey Andrew Gallant, who has appeared as local counsel in this case. I'm so proud to have these fine lawyers on this case, for reasons which will become increasingly apparent over the next few pages.

Perhaps one might think that since Stilley has done such a superb job of telling the truth to the Court, *Mr. O'Reilly* has no duty to admit the rectitude of Stilley's factual statements and

3

legal arguments.  Such thinking is highly erroneous.  One need look no further than the prosecutorial vendetta against Skoshi Thedford Farr to see a case in which the government lawyer clammed up, in the face of an ethical duty to speak, and thereby cheated an outstanding citizen out of incontrovertible constitutional rights.

> **B.      US v. Farr is an object lesson in why the government must confess error.**

In  *United States v. Farr*, 536 F.3d 1174, 1179 (10th Cir. 2008), (WDOK case # 5:06-cr-00191-F-1) which I'll call ***Farr I***, Farr's lawyer, the Honorable Mack K. Martin, persistently complains to this Court, Stephen P. Friot, about the fact that Farr simply could not possibly have committed the crime charged in the indictment.

The Assistant US Attorney, Susan Dickerson Cox, knew she screwed up and didn't procure an indictment that both charges a crime *that Farr could possibly commit*, and complies with the constitution.  She knows she has an ethical duty to *admit it*, but she won't.  In this case at least, honesty and compliance with ethical rules is inconsistent with the "aura of invincibility" so carefully cultivated by the US Department of Justice.  Cox chooses her own interests over legal ethics and the honor of the bench and bar.  Ethics and honor fly out the window.

This decision was written by Neil McGill Gorsuch, who now sits on the US Supreme Court.  Here's how his eminence explained the situation in ***Farr I***:

> .... The court acknowledged, with some regret, that its jury instruction "forecloses [closing] argument that the defendant did not evade the quarterly employment tax because all she was ever assessed for was the trust fund recovery penalty," and "cuts . . . clean off" Ms. Farr's primary trial defense based on the language of the indictment. Aplt. App. # 11 at 115, 114. The court went on to state that "it rankles me to be having to scab over this problem [that] could so easily have been avoided. . . . [B]y giving this instruction, I'm pulling the case out of the ditch for the government, and as I said, it rankles me to have to be doing that." Id. Aplt. App. # 11 at 113, 115. Ultimately, the jury convicted Ms. Farr, and the district court sentenced her to thirty months in prison, three years of supervised

4

release,  and $ 72,076.21 in restitution, but suspended the sentence pending this appeal. (Emphases added)

Note carefully that this Court said he was "*having to*" scab over the government's problem, and that he "*had to*" fix the indictment in the jury instructions.  This Court **felt an obligation, a duty** to ensure that the government won regardless of law or fact.

Here's what the 10th Circuit said on Farr's subsequent appeal, *United States v. Farr*, 591 F.3d 1322, 1325 (10th Cir. 2010), OKWD 5:08-cr-00271-F-1 which I'll call **Farr II**:

> Neither the district court nor this court made factual findings **_tantamount to_** a judgment of acquittal. See *Hunt*, 212 F.2d at 544 (holding that the district court's conclusion that the packages were not in the "mail" as defined by statute when the theft occurred constituted a factual resolution of one of the elements of the crime in favor of the defendant and was equivalent to acquittal). While the district court **implied** that the government was incapable of proving the first element of the offense--that the quarterly employment tax was "due and owing" of Farr, **it never _found_** that the government could not or had not proven that element. For instance, the district court said that it was "pulling the case out of the ditch for the government," **implying** that the government could not otherwise prove its case without finding that the government's evidence was insufficient. (Emphases added)

*Implied* is not the same as *found, or tantamount to*.  This Court and the government got their way because this Court was willing to dodge the question he was duty bound, by his oath and judicial ethics, to answer promptly, honestly, and forthrightly.

More importantly, Judge Friot would not have faced his own ethical dilemma, had Susan Dickerson Cox honored **her own** ethical commitments.  By oath and lawyer ethics, she had a duty to *be honest*.  It was her ethical duty to confess the truth, promptly, when either the law or the facts or both were inescapably contrary to her pursuit of a criminal conviction.

Does that explain why Defendant Stilley isn't satisfied with *implications*?  Does that explain why Stilley won't give O'Reilly any peace as long as he stands mute in the face of a legal

5

and ethical duty to speak?  Does that explain why Stilley is firmly committed to whipsawing every other lawyer involved in this litigation up against the ethical breaches of O'Reilly, unless he repents of his evil?

Now let's look at the next chapter of the prosecutorial assault on Skoshi Thedford Farr, known as *Farr II*.  Susan Dickerson Cox is trying to lick her calf over, in flagrant, willful violation of the US Constitution.  Mack K. Martin is putting up a valiant defense, this time with the assistance of the Honorable Kendall A. Sykes.

Making the long story short, the docket shows that, despite the hard work and diligence of defense counsel, Farr is convicted and sent to prison.  Here's the docket entries for the Judgment and Commitment Order in *Farr I*,  followed by the J & C in *Farr II*:

> 08/08/2007     67     JUDGMENT & Commitment as to Skoshi Thedford Farr (1), Count(s) 1, Dft found not guilty on count 1; Count(s) 2, Dft sentenced to custody of Bureau of Prisons for a term of 30 months; Supervised Release 3 years; Dft ordered to pay restitution in the amount of $72,076.21; S/A fee $100.00 due immediately;. Signed by Judge Stephen P. Friot on 8/8/07. (hm, ) (Entered: 08/08/2007)

> 10/28/2011     88     JUDGMENT & Commitment as to Skoshi Thedford Farr (1), Count(s) 1, Dft sentenced to custody of Bureau of Prisons for a term of 33 months; Supervised Release 3 years; Dft ordered to pay restitution in the amount of $72,076.21; S/A fee $100.00 due immediately. Signed by Honorable Stephen P. Friot on 10/28/11. (hm, ) (Entered: 10/28/2011)

Wait a minute!  The restitution is the same amount, to the penny, that it was over four years earlier, when this Court entered the first Judgment and Commitment Order.  In fact everything is the same - except she got 33 months in prison, instead of 30.

What happened?  Did the historical facts change?  The appearance is that Skoshi Thedford Farr got an extra 3 months in prison for putting up a valiant fight.  It looks like she was punished for her exercise of the 1st Amendment right of peaceful petition, trial by jury, etc.

6

**C.      ORPC 3.3 requires lawyers to correct known false, material evidence.**

Consider 5 Okl. St. Chap. 1, Appx. 3-A, Rule 3.3, *Candor Toward The Tribunal*,[1] which

provides in pertinent part as follows:

(a) A lawyer shall not ***knowingly***:

>    (1) ***make a false statement of fact or law to a tribunal <u>or fail to correct a false</u>***
>    ***<u>statement of material fact or law previously made to the tribunal by the lawyer</u>***;
>    (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction
>    known to the lawyer to be directly adverse to the position of the client and not
>    disclosed by opposing counsel; or
>    (3) offer evidence that the lawyer knows to be false. ***If a lawyer, the lawyer's***
>    ***client, or a witness called by the lawyer, has offered material evidence and the***
>    ***lawyer comes to know of its falsity, <u>the lawyer shall take reasonable remedial</u>***
>    ***<u>measures, including, if necessary, disclosure to the tribunal.</u>*** A lawyer may
>    refuse to offer evidence that the lawyer reasonably believes is false.
>    (4) fail to disclose a fact to a tribunal when disclosure is necessary to avoid
>    assisting a criminal or fraudulent act by the client.

(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a
person intends to engage, is engaging ***or has engaged in*** criminal or fraudulent conduct
related to the proceeding shall take reasonable remedial measures, including, if necessary,
disclosure to the tribunal.

(c) The duties stated in paragraphs (a) and (b) continue *to the conclusion of the*
*proceeding*, and apply even if compliance requires disclosure of information otherwise
protected by Rule 1.6.
............
(Emphases added)

Admittedly these requirements "continue to the conclusion of the proceedings."  The

question arises.  Is this motion under 18 USC 3582(c)(1)(A) a "proceeding?"  If not what is it?

Are the government lawyers involved in this case exempted from the requirement to correct prior

false testimony and false statements of law?  Where is that written?

---

[1]      Also known as the Oklahoma Rules of Professional Conduct (ORPC).  Future
citations to these rules will use the abbreviation "ORPC," together with the rule number.

7

**D.     ORPC 3.8 is the sledgehammer that the government cannot get around.**

Even if the government lawyers squirm their way around ORPC 3.3, they run smack into

ORPC 3.8, *Special Responsibilities of a Prosecutor*, which provides in pertinent parts:

The prosecutor in a criminal case shall:

(a) refrain from prosecuting a charge that *the prosecutor knows is not supported by probable cause*;

(b) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel;

(c) not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing;

(d) make ***timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused <u>or mitigates the offense</u>***, and, in *connection with sentencing, disclose to the defense **and to the tribunal** all <u>unprivileged mitigating information known to the prosecutor</u>*, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal;

(e) not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless the prosecutor reasonably believes:

    (1) the information sought is not protected from disclosure by any applicable privilege;
    (2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and
    (3) there is no other feasible alternative to obtain the information;

......................
(h) When a prosecutor knows of new, credible, and material evidence creating ***a reasonable likelihood*** that *a convicted defendant did not commit an offense of which the defendant was convicted*, the prosecutor shall within a reasonable time:

    (1) *disclose that evidence to an **appropriate court** <u>and</u> **prosecutorial authority** in the jurisdiction where the conviction occurred,* and

    (2) *if the judgment of conviction was entered by a court in which the prosecutor exercises prosecutorial authority,*

(i) unless a court authorizes delay, make reasonable efforts to disclose that evidence to the defendant's attorney or if the defendant is not represented by counsel to the defendant, and

(ii) if the defendant is not represented by counsel, move the court in which the defendant was convicted to appoint counsel to assist the defendant concerning the evidence, and

(iii) request an appropriate authority to investigate whether the defendant was convicted of an offense that the defendant did not commit.

(i) When a prosecutor learns of clear and convincing evidence establishing that a defendant was convicted in a court *in which the prosecutor exercises <u>prosecutorial authority</u> of an offense that the defendant did not commit, the prosecutor shall promptly notify the appropriate court and <u>make reasonable efforts to notify the defendant's counsel and the defendant.</u>*

(j) A prosecutor's judgment, made in good faith, that the new evidence is not of such nature as to trigger the obligations of sections (h) and (i) of this rule, though subsequently determined to have been erroneous, does not constitute a violation of this rule. (Emphases added)

Mr. O'Reilly violated the provision concerning subpoena of lawyers when he subpoened Stilley despite the fact that Lindsey Kent Springer provided all requested information and was totally cooperative.  He is violating most of the rest of the rule when he stubbornly refuses to forthrightly admit, on he record, true facts adverse to his prosecutorial interests in this case.

Only parts of this rule are quoted.  However, we should understand that nothing in *this* rule prohibits the prosecutor from presenting false testimony.  That's plowed ground.  ORPC 3.3 already prohibits that, and it is entirely unnecessary to repeat that ethical prohibition here.

What is Mr. O'Reilly's duty when he knows he has a conviction for an offense which the defendant did not commit?  Here is the last comment to the rule.

[8] When the requirements of paragraph (i) are met, the prosecutor should support the ***defendant's efforts*** to seek a remedy consistent with justice, applicable law, and the circumstances of the case.

9

(Emphasis added)

O'Reilly in his response blasts Stilley for trying to get a "second bite at the appellate apple." Dkt. 698, pg. 8. However, consider these facts concerning Defendant Stilley's efforts to get the one direct appeal to which he was and still is entitled.

1) This Court struck Defendant Stilley's motion for Judgment as a Matter of Law, and for New Trial, Docket 261, with supporting brief (Id.) utterly contrary to his own prior and later statements about a district court's authority to act sua sponte. O'Reilly has nothing to say about this.

2) Stilley moved for transcripts promptly, which the government did not oppose. This Court denied the motion some 6 weeks later. Then at sentencing the Court would ask the government about which transcripts they had. Clearly the government got what they wanted - they just didn't share with the defense. After the defendants were locked up, O'Reilly quickly agreed to Springer's request for transcripts, and the Court granted it. Both knew full well that these transcripts were now as a practical matter worthless to Stilley, since he no longer had no access to the docket items, computers, paper files, effective research tools, etc.

3) Nothing in the 10-5057 appellate docket indicates that the 10th Circuit clerk ever thought Stilley filed an appellate brief. He joined Springer's brief, which was mandatory to avoid waiver, and claimed his right to appeal after the obstruction of his capability to prepare a brief was terminated.

4) This Court ordered both Stilley and Springer to perform 30 hours per week of community service, effectively denying the defense of perhaps 70 hours per week

10

of time needed for defense.

**E.      ORPC 3.4 prohibited the government's obstruction of Stilley's timely access to critical documents and materials, having potential evidentiary value.**

ORPC 3.4. *Fairness to Opposing Party and Counsel* provides as follows:

A lawyer shall not:
(a) unlawfully obstruct another party's ***access*** to evidence or unlawfully alter, destroy or conceal a document or **other material having potential evidentiary value**. A lawyer shall not counsel or assist another person to do any such act;
(Emphases added)

Somebody did that to Defendant Stilley.  O'Reilly knew he could gain unfair advantage if he could prevent Stilley from getting access to the transcripts, prior to incarceration. He knew that transcripts post-incarceration were a foregone conclusion - he had no reasonable hope of preventing that.  His goal was to make sure the transcripts did not allow Stilley to 1) effectively defend at sentencing, or 2) prepare a creditable appeal brief or part thereof prior to incarceration.

Who was it?  O'Reilly stood silent, but he got exactly what he wanted.  Who obstructed Stilley's access to this information?  Somebody, actually a collection of people, stomped out Stilley's ability to defend at sentencing, or to prepare creditable briefs for his one direct appeal.

Stilley has never forgotten or forgiven.  Stilley's decade in prison was devoted to attempting to get "keys to the courthouse" to litigate his claim that he has been denied due process, by being denied access to those things indispensable to a creditable appeal.

Stilley's enemies heap praise on his efforts by claiming that none of them were successful.  Government's response brief in *Stilley v. Garland* et al, 5th Cir. 21-60022.  See also Stilley's opening brief, as well as his reply brief.  Stilley's enemies claim that in a decade, with more than 50 administrative remedy attempts, he has exhausted exactly *none*.  That's an absurd

11

conclusion, and proves the insecurity of the government with respect to the conviction and

punishment of Stilley.

      **F.**     **ORPC 5.1 requires supervisory attorneys in this case to ensure O'Reilly corrects his falsehoods in time to avoid adverse consequences.**

O'Reilly clearly hopes to dodge all the questions, violate as many ethical rules as

necessary, and keep his conviction regardless of consequences.  But O'Reilly's signature, on the

offending pleading, is a half inch under the name of Acting US Attorney Clinton J. Johnson.

Please consider what ORPC Rule 5.1 says about the duties of lawyers with supervisory authority.

> ORPC 5.1. *Responsibilities of Partners, Managers, and Supervisory Lawyers*
> (a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that **the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct**.
> (b) A lawyer having **direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct**.
> (c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:
> > (1) the lawyer orders or, with knowledge of the specific conduct,   ratifies the conduct involved; or
> > (2) the lawyer is a partner **or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and <u>knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action</u>**.
> (Emphases added)

This Court can be certain that O'Reilly's many refusals to comply with the Oklahoma

ethical rules will be brought to the immediate attention of the Honorable Clinton J. Johnson.

Ditto for Jeffrey Andrew Gallant, and altogether without rancor to him.  He just happens to be

counsel of record, which imposes upon him certain duties.  No hard feelings, Stilley just wants to

make sure that those duties are discharged, with the punctilio of honor the most sensitive.

The specific request?  Compel O'Reilly to comply with the ethical rules.  Compel O'Reilly to correct his blatant lies, his wilfully dishonest factual or legal representations to this Court, *and his unintentional false statements of material fact*.  In other words, correct it all.  Give the Court a ***true and correct factual and legal record*** upon which to render a proper judgment, **at a time when adverse consequences can be avoided**.

Please understand that there is no intent to disrespect or offend this Court, or Mr. Johnson, or Mr. Gallant, in the slightest degree.  All three individuals in the foregoing sentence have taken the oath of office for an Oklahoma attorney - whereas Mr. O'Reilly, who is a California attorney, apparently has not.  That makes these three a special treasure for Oscar Stilley.  All three have made oath which compels the oath-taker to ensure that Defendant Stilley does not pay with years of his life for lies, or even inadvertent falsehoods.  Defendant Stilley hopes to get every one of these three on his side - which is to say, on the side of ethics and honesty in the practice of law.

### G.     ORPC 8.3 requires lawyers to report unrepentant attorneys who knowingly and persistently violate attorney ethical requirements.

This brings up one more ethical rule.  ORPC 8.3 is entitled "*Maintaining the Integrity of the Profession*."  It states, in pertinent part:

ORPC 8.3. Reporting Professional Misconduct
(a) A ***lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct*** that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, ***shall inform the appropriate professional authority***.
(b) A lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority.
(Emphasis added)

One might think that Stilley is suggesting that Messrs. Johnson and Gallant have a duty to report O'Reilly to the proper bar disciplinary authorities.  Not necessarily, at least not immediately.

Remember the original goal?  We were looking for a "thin strand" or a "speck" of integrity.  Doing the right thing *only under extreme pressure* hardly qualifies as "exemplary conduct," or "high integrity."  However, if Johnson and Gallant can persuade O'Reilly to present this court an honest record upon which to rule, by any means necessary, this *would* be indicia of a "thin strand" or a "speck" of integrity on the part of O'Reilly.   That would give Johnson and Gallant good cover for concluding that O'Reilly's misconduct, while serious and eminently *worthy* of punishment, does not rise to the level of a "mandatorily reportable" offense.  Their remonstration with a wayward fellow attorney would save them a lot of trouble, save O'Reilly from ruin before the ethics committee, and would in at least some eyes count as a "good deed."

O'Reilly has trotted out 18 U.S.C. 3553(a), *Factors To Be Considered in Imposing a Sentence*.  He has nothing specific of course.   Apparently he has never read *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), which says that "[J]udges are not like pigs, hunting for truffles buried in briefs."  Stilley declines to manufacture issues out of nothing, but consider the fact that 18 U.S.C. 3553(a)(3) requires the court to consider "the kinds of sentences available."

This Court thought it was sentencing Stilley to the statutory maximum, which the Court construed to be 5 years on each of 3 counts, each run consecutive.  If O'Reilly is even slightly honest with himself and this Court, he will have to admit that Count 4 is a dead letter.  The loss of *any count* of conviction means that any attempt at continued punishment amounts to *pure lawlessness*.  That means his opposition to *any reduction of sentence whatsoever* is also pure

14

lawlessness.

O'Reilly now asks this Court to completely flout its duty under *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2019), to re-sentence Defendant Stilley, this time on the basis of an accurate rendition of the facts, furthermore giving honest consideration to the "kinds of sentences available." That case is essentially the embodiment of certain lawyer ethical duties, couched as a Supreme Court opinion. O'Reilly by dodging the questions presented in this case impliedly claims *Rosales-Mireles* doesn't apply to him - even though he cites no US Supreme Court case law whatsoever.

## III.   Incarceration pending appeal destroyed Stilley's ability to appeal.

### A.   The Court acknowledged the fact that incarceration negatively affects the ability to effectively defend pro se.

This Court admitted that the decision to immediately remand Springer and Stilley to custody would impact appeal rights. Here's what this Court said at Sentencing TR 466 and 467:

> 24 On the issue of remand, let me first say, gentlemen, that
> 25 I am fully cognizant of the seriousness of this question,
> Page 466
> 1 especially as it applies in your situation having invoked your
> 2 right, as you have, and it's an important right, to represent
> 3 yourselves. And I am fully cognizant of the fact that
> 4 incarceration may well have some impact on your ability to
> 5 proceed representing yourselves. **To the extent that the Court**
> **6 can within the bounds of the law and common sense <u>ameliorate</u>**
> **7 <u>that,</u> then I will be happy to consider anything that the Court**
> **8 might properly address in that regard.**
> (Emphases added)

This would be a great time to "ameliorate" the devastation visited upon Stilley by depriving him of the tools indispensable for a competent appellate brief. First, this Court should *settle for nothing less* than an honest record. Second, enter a new judgment and commitment

order based upon the true facts and applicable law.  Third, include within that order a provision stating that Stilley is entitled to appeal any part of the original judgment and commitment order, as if appealed at the time, and also any part of the new judgment and commitment order.

### B.     Time to let the parties fight and the Court decide.

This is not an effort attack this Court.  Quite the opposite, this amounts to best efforts to give this Court an "off-ramp," so that Stilley's quarrel is with his *adversary*, and not with his *judge*.  This Court, and the interested public, can plainly see that any sentence over 10 years is *not available* consistent with well established law.[2]  O'Reilly's fall-back to 18 USC 3553(a) is balderdash, a tacit admission that he has nothing left except to scurry away from the disinfectant of sunlight.

Docket 254 is Stilley's five page motion for transcript at public expense filed 12-1-2009. Docket 255 is Stilley's five page brief in support filed the same day. The government filed no opposition.  Docket 278 is the Court's denial of the motion 1-12-2010, some six weeks later.

The Court's order denied the motion for 3 stated reasons.  First the Court says there is no statutory authority saying that the government must pay for transcript.  Second, the Court complains of no specific, current information showing indigency.  The Court commented that it had received reliable information that Stilley has recently solicited funds for his defense. Third, motion is premature because the defendants haven't been sentenced.

What should a defendant do when the Court raises its own arguments and rules on them? Get in the judge's face?  Is that a logical approach for a pro se defendant about to be sentenced

---

[2]     None of the counts of conviction are valid.  Defendant Stilley focuses on Count 4 because it is easiest to prove, to a lay person, that Stilley cannot possibly be guilty of Count 4.

by that judge?  Does forcing a defendant to argue *with* the judge, rather than *before* the judge, comport with *due process*?  How does one do that *effectively* without inflaming the passions of the judge?  Let us not forget that this Court found a Sentencing Guideline Range of 121-151 months, and then sentenced Stilley to 180 months, without prior notice of the intent to sentence above the Guideline Range.

If the Court's third objection is valid, there is no logical basis for any subsequent motion. *Indigent* defendants just aren't entitled to the benefit of transcripts for *sentencing*.  Unless Stilley chooses to argue *with* the judge who will soon sentence him to prison, he is stuck with that ruling, whether or not it makes sense or agrees with the case law.

Compare and contrast what happened when Stilley was safely in jail, (with a "separatee order" so Stilley and co-defendant Lindsey Springer couldn't help each other) and thus deprived of the essentials necessary for due process.  Springer on 4-29-2010 filed a motion for transcripts (Docket # 343) with no citation to authority at all, and a bare-bones statement of poverty. O'Reilly sprang to action the very next day, generously supplied the missing statutory citations, and stated that he had no objections to transcripts at public expense.  He is very generous - when his generosity costs him nothing.  On that very day this Court granted the motion.  Docket # 351.

Why?  Because the defendants were *de-fanged*.  O'Reilly was sure they would never get the essentials for a competent defense.  He was right - save for the First Step Act, covid-19, and home confinement.  He couldn't, at the time, foresee that Stilley might get the wherewithal to effectively advance his legal arguments, prior to the termination of official detention.

Stilley's wife sent his docket and docket items - they were returned to her by the DOJ-FBOP without even giving Stilley his due process right to object.

17

The failure to get the capabilities necessary for due process certainly was not for lack of trying.  Stilley spent over 400 days in SHU (Special Housing Unit, or jail for the prison) on hunger strike, mostly either directly or indirectly over his claim of rights of due process, 1st Amendment peaceful petition, etc.  Stilley has been force fed with a nasogastric tube 8 times, and threatened with it many more times.  Stilley has used up literally reams of paper, trying to get the "keys to the courthouse."  *Stilley v. Garland*, 5th Circuit #21-60022, remains pending.  Here's the official record, but be forewarned that it is 668 pages, and more than 17 megabytes despite compaction and optimization.  It takes a while to download.

### C.      The government got information - for itself.

The public should know that the government got all the transcripts they wanted.  How do we know?  This Court asked the government at Sentencing Transcript page 309 if Lake's testimony had been transcribed, and at 379 if Dr. Roberts' testimony had been transcribed.  The answer in both of these cases was "no."  The point is not which were ordered and which weren't.  The point is that O'Reilly spent a boatload of money on this political persecution, and could have gotten any and all transcripts he wanted to get.

At 381 this Court claimed that "[B]oth sides have had ample opportunity to order a transcript." The first problem with that logic is that the government had spent at least the previous 5 years "scorching the earth" on Stilley and Springer.  The government committed the evil that Patrick Turner feared, which motivated his agreement with Springer, which in turn forms the basis for Count 4 of the indictment. Concerning the solicitation of funds for defense, please know that absent the generosity of a friend Stilley didn't have gas money to drive to and from court hearings.  Stilley's right to order the transcripts was a right in theory only.

18

This amounts to a "tag-team" approach from the government and the Court. This Court approved $91,771.56 out of $117,000.06 requested by Charles Robert Burton IV, for his services as standby counsel for Oscar Stilley in the present case, pursuant to the Criminal Justice Act (CJA) 18 USC 3006A. The Court said he was tempted to allow it all, and offered sincere appreciation for his services.

The government sent its "assets" to Arkansas to help attack Stilley's law licence, opposed and obstructed his efforts to get and keep CJA appointments as well as work for paying clients, and used their police-state surveillance capabilities to determine when their scorched earth campaign had done its work. Then and only then they attacked. Then they used Stilley's economic weakness to destroy his ability to effectively defend or appeal.

That's the complaint. There is nothing *per se* wrong with complaining about attorney behavior thought to be unethical. Stilley's doing that right now, in this very pleading. There absolutely is something wrong with using ethics attacks to economically destroy a well-known political enemy, and *then use that economic weakness to defeat the target's right of due process*. That's what O'Reilly and his cronies did in this case. That's what he's using as a fig leaf, to justify his obstinate refusal to give this Court a truthful record upon which to render a decision.

**D.    Even "innocent" mistakes must be corrected.**

This Court and the public, my friends who will read these words, can easily see an example of an *unintentional* error. At Sentencing Transcript page 381-382, this Court tried his best to get Stilley to admit that he had told Dr. Roberts that he had no duty to pay income taxes or file returns. Stilley asked if it would be possible to see the testimony - clear indicia that he didn't believe that story line. The Court gave a short negative response. The following day the Court

19

would sentence Stilley to 15 years in prison, with immediate remand to Marshal custody.

The Court's statement was *erroneous,* but not an intentionally false statement.   This Court would never have asked for such concession if he knew the transcripts would obliterate his theory.  That's just way too embarrassing.

For just a moment, forget about intentional perversions of the truth.  The government engaged in plenty of that, and continues on with its perfidy to this very day.  We're not talking about that - not at this precise moment, anyway.  We're talking about a mistake.  Granted, this Court invited the mistake by "burning the clock" and then denying the motion for transcripts on the basis of its own arguments.  The Court tripped itself up worse than it tripped up Stilley - but Stilley is the one paying for the mistake, with years of his life.

"White heart empty head" (of any strength or flavor) doesn't excuse corrective action.   A false statement of material fact, *however innocently made*, must be corrected.  Any member of the Oklahoma bar *ipso facto* has a duty to correct the falsehoods - they've already *made oath* so to do.  Dodging and bobbing and weaving and obfuscating and shrill invective don't count.  Lies and evasions of the truth have no place in a government, bench, or bar that values *integrity*.

> **E.    A court commits an abuse of discretion when it bases its decision on a clearly erroneous finding of fact or conclusion of law.**

We're looking for integrity.  Not big amounts - just "thin strands" or "specks" of integrity.  Just enough integrity to prove that Special Assistant United States Attorney, Mr. Charles Anthony O'Reilly, California licensed attorney #160980,  has a *detectible amount* of it.

This brief is not a re-hash of the opening brief.  Stilley assumes that persons reading this brief have already read the opening brief.  The opening brief has many examples of falsehoods

that strongly appear to be deliberate, willful, devious attempts to procure a conviction and

sentence that is utterly compatible with *prosecutorial integrity*.  Those *deliberate* falsehoods also

need to be corrected.

A court commits an abuse of discretion when it bases its decision on a clearly erroneous

The idea that prosecutors have special responsibilities is not a new thing.  The significant

responsibility of the public prosecutor was aptly described by Justice Sutherland in *Berger v.*

*United States*, 295 U.S. 78, 88 (1935):

> The United States Attorney is the representative not of an ordinary party to a
> controversy, but of a sovereignty whose obligation to govern impartially is as compelling
> as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution
> is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar
> and very definite sense the servant of the law, the twofold aim of which is that guilt shall
> not escape or innocence suffer. He may prosecute with earnestness and vigor -- indeed, he
> should do so. But, while he may strike hard blows, *he is not at liberty to strike foul ones*.
> It is as much his duty to refrain from improper methods calculated to produce a wrongful
> conviction as it is to use every legitimate means to bring about a just one.
> (Emphasis added)

A court commits an abuse of discretion when it bases its decision on a clearly erroneous

finding of fact, or a clearly erroneous conclusion of law.  Consider the following, from *Vallario*

*v. Vandehey*, 554 F.3d 1259, 1264-1265 (10th Cir. 2009):

> HN13 The abuse of discretion standard, while forgiving, is not without teeth. See *In re*
> *New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008). As
> the Supreme Court has recognized, some boundaries exist. See *Gulf Oil Co. v. Bernard*,
> 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981) (noting that the district court's
> discretion in certifying a class is "bounded by the relevant provisions of the Federal
> Rules"); see also *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 40 (2d Cir. 2006).
> A district court abuses its discretion when it bases a decision on either a *clearly*
> *erroneous finding of fact **or** an erroneous conclusion of law*, or when its ruling manifests
> a clear error of judgment. See *Kilgore v. AG of Colo*.., 519 F.3d 1084, 1086 (10th Cir.
> 2008). In this case, the district court committed three such errors, which are both
> substantial and manifestly erroneous.  ...
> (Emphases added)

Defendant Stilley doesn't want this Court to abuse its discretion.  An appeal is not an

adequate substitute for a correct decision in the first place.  That's why his proposed order seeks

an accurate record, from which the Court can render a decision.  An accurate record is a

***condition precedent*** to a decision in compliance with due process.

Some lawyers are keenly aware of their duty to present an honest record upon which the

court can render a decision based upon the *true facts*.  Others are more like a puppy dog that has

to have his nose rubbed in the carpet where he peed on the floor.  Still others are "on the fence"

and might need a little nudge, a little help in deciding which side of the fence to land upon.

### F.    Stilley is not the only one stomped out by denial of due process.

Stilley has four children.  Sami Stilley was one of two Celebrate Senior winners.  She

was also a starter on the Greenwood High School girl's volleyball team.  They won the state

championship for 2020.  Sami really wanted Dad to watch her play, at least for one game.

Sami didn't get her wish, and now that wish is impossible of fulfillment.  She graduated,

and has the good sense to carry on with her life, as opposed to devote a massive amount of

resources to sports at a higher level.

Daughter Gayla Stilley earned a perfect score of 36 on the ACT.  Dad wasn't there to

support her or congratulate her.  Dad was in prison, far away, out of "day trip" driving range.

Adopted children Roman Stilley and Zhenya Stilley Samoshkin have for the second time

in their lives lost their father to prison.  They'd like to sample American style due process.  They

want an *honest decision*, a decision based on *the true facts*.  So far they haven't gotten it.  They'd

like to think that now is as good a time as any for that dynamic to change.

Sami desperately wanted Dad in the stands, for at least one game.  But even more than

that, she wanted to know that Dad did everything in his power *to try*.  She wanted to know that

22

Dad loved her and deeply cared for her and was willing to exert every fiber of his being to support her and cheer for her success.

This Court didn't just sentence Oscar Stilley to 15 years in prison, plus three years of supervised release.  He sentenced Stilley's family to 15 years without Oscar.  He sentenced Stilley's friends to 15 years without Oscar.

"A lying tongue hates those who are afflicted by it..." Proverbs 26:28, *Modern English Version*.  What Stilley did to earn the wrath of officialdom isn't really hard to discern.  But what did these children do to deserve to be rendered *de facto* fatherless, ***on the basis of falsehoods***?

Is it fair and ethical to include pictures of children?  Consider these questions.  One, why would anyone be embarrassed to look them in the face, if they facilitate an honest decision on the basis of the true facts and a correct statement of the law?  Such a decision requires the return of Stilley's passport.  Such a decision restores Dad back to his liberty, whereupon he immediately wants to see his children on a regular basis.  Two, for those afflicted with an intractable unwillingness to comply with ethics and law, and present this Court with an honest and accurate record for decision, why should anyone care about their shame and embarrassment?

Stilley's request for due process is not for Oscar Stilley only.  It is for them too.  That is why I cheerfully produce 25 pages of reply brief, for this Court, the government, and friends and family.  The local criminal rules say briefs must not exceed 25 pages without permission.  For my own good reasons, I don't want to ask for permission.  I'm asking for my rights and the rights of friends, family, and society.  That's altogether without prejudice to my right to ask for some special permission, should the need arise.  I just don't feel that need right now.

**G.     Let's level the playing field first, and then let the Court decide.**

23

That's why the proposed order doesn't purport to immediately rule on the merits of this motion.  It orders the government to either forthrightly oppose the facts presented by Defendant Stilley, on oath or on the basis of statements in the record, or else confess to their truth, in default of which they will be *deemed admitted*.  Only when the Court has an honest record can due process be given, and justice be dispensed.  Anything less is fundamentally unfair.

## IV.     Plain speech isn't inherently evil - sometimes it is a necessity.

Defendant Stilley has engaged in what could fairly be called "plain speech" with respect to the actions of this Court and opposing counsel.  Please don't take it hard - it's not meant to offend.  In fact, Defendant Stilley would like to build this Court's legacy, not tear it down.  How?  This Court's Wikipedia entry contains the following paragraph:

> In June 2017, Friot controversially suggested he would give a reduced sentence to a 34-year-old counterfeiting defendant if she got medically sterilized.[1] He suggested it [was] because she had seven children and had lost parental rights to six of them.[2] In February 2018, he sentenced the woman to a year in federal prison, and he defended his sterilization suggestion by arguing the U.S. Supreme Court "has yet to recognize a constitutional right to bring crack- or methamphetamine-addicted babies into this world."

Plainly this Court wasn't trying to hurt this woman or deny her a legal right.  This Court was in fact trying *to help* both her and her children.  Stilley supports this Court's actions and motivations in this regard, with every fiber of his being.  In fact, Stilley intends to live the rest of his life in pursuit of the following simple but powerful ideal:

> Every child brought into this world *should be* entitled to two competent parents and the best set of genes reasonably possible under the circumstances.

Who will help convert the italicized "should be" into "as a practical matter *is*?"  The truth is that Stilley's conviction and incarceration was necessitated by the foolish idea that the foregoing ideal isn't necessary for an enduring and powerful society, but rather that "the rich" can be safely

24

cannibalized to support an ever-growing tsunami of ever more irresponsible parents.

Wikipedia also speaks of this Court's work in Russia.  Defendant Stilley has a daughter, son-in-law, and two grandchildren in Voronezh Region, Russia.  Of course a visit is on the radar screen.  Just as soon as this Court orders the government to return Stilley's passport, planning for a trip will commence.  But we cannot get the cart before the horse.  An honest rendition of the facts and the applicable law is *condition precedent* to a ruling that comports with due process.

Legendary federal judge Isaac Parker was said, by others, to have hanged a lot of men. Judge Parker countered by saying "I've never hanged a man. It is the law that has done it."

This principle is available to Messrs. Johnson and Gallant.  Mr. O'Reilly is sure to complain when his fraud is exposed, undone, and remediated.  They can explain as follows:

> We didn't wreck your conviction.  You lost your conviction when truth (AKA "reality")  slapped you upside the head.  *The law* didn't punish Oscar Stilley - you did. That's why the law can't come to your rescue now - you didn't have it on your side in the first place.  You knew the facts didn't support your conviction - that's why you helped make sure Stilley didn't get the official record **at a time when adverse consequences could be avoided or mitigated.**  That's why you and your buddies in the DOJ-FBOP have spent the last 10 years obstructing Stilley's reasonable access to the wherewithal to vindicate his constitutional due process rights.  It should come as no surprise to you that Stilley asserted the suppressed rights, as soon as such capabilities were effectually restored to him.  Deal with it, O'Reilly.

**CONCLUSION**

This Court should first enter an order commanding the government to provide the Court with an honest record, correct prior falsehoods, and allow the defendants in this case to work together.  This initial order should grant a stay, and order immediate release of Oscar Stilley, pending resolution of this motion.  A final order should follow, dispensing justice as required by the law applicable to the facts of this case.

Respectfully submitted.


By: /s/ Oscar Stilley                              July 21, 2021
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  Charles O'Reilly and his confederates continue on with their scheme to "hide out" Lindsey Kent Springer, and deny both of us the opportunity to work together toward common interests.  This is the only reason that Springer is not being served with this pleading.  Stilley vehemently objects to such lawlessness.