IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                        PLAINTIFF

v.                              Case No. 4:09-CR-043

OSCAR AMOS STILLEY, 10579-062                                   DEFENDANT

DEFENDANT OSCAR STILLEY'S VERIFIED MOTION TO CORRECT OR SET
ASIDE A SENTENCE OR JUDGMENT PURSUANT TO 28 USC 2255

Comes now Oscar Stilley (Stilley) and for his verified motion pursuant to 28 USC 2255

states:

Due to the length of this motion, Stilley is providing a table of contents of the claims.

Because the formal questions are short and cover only a few pages, most of them are not set forth

specifically within this table of contents.

## TABLE OF CONTENTS

12.    FOR THIS MOTION, STATE EVERY GROUND ON WHICH YOU CLAIM THAT
       YOU ARE BEING HELD IN VIOLATION OF THE CONSTITUTION, LAWS, OR
       TREATIES OF THE UNITED STATES.
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       **GROUND 1:**  INSUFFICIENCY OF THE EVIDENCE - THERE IS NEITHER
                RECORD PROOF NOR FACTUAL BASIS FOR A FINDING OF CULPABLE
                MENTAL STATE SUFFICIENT TO SUPPORT THE JURY VERDICT, AS TO
                COUNT 4.   STILLEY IS ACTUALLY INNOCENT OF COUNT 4. . . . . . . . . . 12

       **GROUND 2:**  INSUFFICIENCY OF THE EVIDENCE - THERE IS NO RECORD
                PROOF OR FACTUAL BASIS FOR A FINDING OF CULPABLE MENTAL
                STATE OR ACT SUFFICIENT TO SUPPORT THE JURY VERDICT, AS TO
                COUNTS 1, 3, OR 4.   STILLEY HAD A LEGAL DUTY TO PERFORM THE
                ACTS FOR WHICH HE NOW STANDS CONVICTED AND DEPRIVED OF
                HIS LIBERTY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       **GROUND 3:**   THE GOVERNMENT HAD ALL INFORMATION NECESSARY TO

1

CONSTITUTE A "TAX RETURN" FOR 2005, WITHIN THE LEGAL
MEANING OF THE TERM "TAX RETURN," PRIOR TO ANY RATIONAL
"TAX DEADLINE" AS TO THE 2005 TAX YEAR.   STILLEY HAD NO
MEANS OF SUBMITTING ANY OF THE INFORMATION CLAIMED TO BE
MISSING, FOR LACK OF AUTHORIZATION FROM SPRINGER.  THUS
STILLEY CANNOT BE GUILTY OF COUNT 4, FOR YET ANOTHER
REASON. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**GROUND 4:**   THE GOVERNMENT AND THE DISTRICT COURT ABANDONED
THE PURPORTED INDICTMENT WHOLESALE.  THE GOVERNMENT
REFUSED TO CONFORM THE PROOF TO PARTICULARS SET FORTH
REPEATEDLY IN FILED PLEADINGS, ETC.  THIS PROSECUTION,
CONVICTION, JUDGMENT, AND SENTENCE IS BASED ON THEORIES
NOT ALLEGED IN THE PURPORTED INDICTMENT. . . . . . . . . . . . . . . . . 23

**GROUND 5:**   THE GOVERNMENT KNOWINGLY PRESENTED PERJURED
TESTIMONY AS WELL AS LAUGHABLY FALSE TESTIMONY NOT
MEETING THE LEGAL TEST FOR PERJURY.   FALSE TESTIMONY
ACCOUNTS FOR MANY "POINTS" ASSIGNED UNDER THE
SENTENCING GUIDELINES.  THE GOVERNMENT AND COURT
STUBBORNLY RESIST CORRECTION OF THE FALSEHOODS IN THE
RECORD.  STILLEY IS ENTITLED TO RE-SENTENCING BASED UPON A
RECORD FREE FROM KNOWN FALSEHOODS. . . . . . . . . . . . . . . . . . . . . . 25

**GROUND 6:**   DEFENDANT WAS NOT GIVEN FAIR NOTICE THAT HIS
CONDUCT MAY HAVE BEEN CONSTRUED AS ILLEGAL, A CLEAR
VIOLATION OF DUE PROCESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**GROUND 7:**    THE PURPORTED INDICTMENT WAS NOT RETURNED IN OPEN
COURT; THERE IS NO RECORD EVIDENCE THE PURPORTED
INDICTMENT IS GENUINE; THERE IS NO RECORD EVIDENCE THE
GRAND JURY ACTUALLY APPROVED PART OR ALL OF THE
PURPORTED INDICTMENT; THERE IS EVIDENCE OF SLOPPY EDITS BY
UNKNOWN PARTIES AT UNKNOWN TIMES. . . . . . . . . . . . . . . . . . . . . . 41

**GROUND 8:**   THE DISTRICT COURT ENTERED AN UNCONSTITUTIONAL SUA
SPONTE ORDER; THE DISTRICT COURT ADMITS THE ILLEGALITY OF
SUCH SUA SPONTE ORDERS, BOTH BEFORE AND AFTER THE ONE
COMPLAINED OF HEREIN; THE SUA SPONTE ORDER WAS
LAUGHABLY WRONG, HAVING NO PRECEDENT WHATSOEVER;
THERE WAS NO RATIONAL BASIS FOR THE ACTION OTHER THAN
MALICE; ONLY SETTING ASIDE THE ORDER, AND FULLY LITIGATING
THE MOTION, SATISFIES THE CONSTITUTION; THE DISTRICT COURT

HAS COMMITTED OTHER SIMILAR BAD ACTS, IN THIS CASE AND
OTHERS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

**GROUND 9:**   THE DISTRICT COURT REFUSES TO RULE ON MERITORIOUS
CLAIMS; THE DISTRICT COURT HAS EXHIBITED SIMILAR BEHAVIOR
IN SIMILAR LITIGATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

**GROUND 10:**   THE GOVERNMENT IS AT THE PRESENT TIME CONCEALING
AND SECRETING A MATERIAL WITNESS AND MAJOR SOURCE OF
LITIGATION SUPPORT, IN THE PERSON OF LINDSEY KENT SPRINGER,
THROUGH MEANS THAT ARE THOROUGHLY DISHONEST AND
FRAUDULENT.  THE DISTRICT COURT KNOWS ABOUT IT AND
REFUSES TO ORDER THE CORRECTION OF THIS WRONGDOING. . . . . 49

**GROUND 11:**   THE GOVERNMENT AND THE DISTRICT COURT HAVE
WORKED TOGETHER TO STOMP OUT THE LITIGATING CAPABILITIES
OF STILLEY AND HIS CO-DEFENDANT LINDSEY KENT SPRINGER,
SUCH THAT STILLEY HAS NOT BEEN ABLE TO PROSECUTE THE ONE
DIRECT APPEAL TO WHICH HE IS ENTITLED BY LAW, SINCE HIS
INCARCERATION 4-23-2010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

**GROUND 12:**   THE GOVERNMENT HAS ENGAGED IN WHAT APPEARS TO BE
EX PARTE CONTACT WITH THE DISTRICT COURT. . . . . . . . . . . . . . . . 57

**GROUND 13:**   STILLEY HAS BEEN DENIED A DISINTERESTED AND
IMPARTIAL TRIBUNAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

**END OF PARAGRAPH 12, GROUNDS FOR RELIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year
ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. §
2255 does not bar your motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

## (BEGINNING OF FORM QUESTIONS)

1.     (a)     Name and location of court which entered the judgment of conviction you are challenging: See caption above.

           (b)     Criminal docket or case number (if you know):  See caption above.

2.     (a)     Date of the judgment of conviction (if you know): 4-28-2010

           (b)     Date of sentencing: 4-23-2010 (sentencing proceedings held 4-21-10 through 4-23-10 inclusive)

3.     Length of sentence: 180 months

4.     Nature of crime (all counts):

Please note that the verbiage above is verbatim from the official form.  It does not ask for the customary citations from the indictment or the docket.  It asks for the *"nature of crime."*

Which one?  We have four sets at least:

1)     Springer earned money and concealed the fact of receipt of that money from the government.   In the first seven pages of the Timeline, covering 3-10-09 (date on the purported indictment) through the first day of trial (10-26-09) the government not less than 6 times emphatically declared that Springer ***earned*** income, and hid ***the fact*** of receiving that income.  Springer is blasted for claiming the funds are gifts or donations.  At Dkt. 212, filed on the 1st day of trial, the government said "[Ms. Wiggins] caused the issuance of these five checks to Defendant Springer for services, and ***not as gifts or donations***. (Emphasis added)

2)     Although Springer freely disclosed all of his gross receipts to the IRS, Defendants knowingly misrepresented the source and concealed from the IRS the true nature of the payments. See e.g. Dkt. 173 pg. 4. "Defendant Stilley knowingly misrepresented the source and nature of Defendant Springer's income to Internal Revenue Service employees and the Grand Jury."

3)     On 11-2-09, the 6th day of trial, Brian Miller says that the question of whether transfers were gifts or donations is "almost a moot point" in this case, because **either way**, they're income to Springer, that he was required to report on a federal individual income tax return.  TR 1295-1296

4)     Springer stole the money, pure and simple.  See comment made 2-12-10, at Dkt.

> 310, pg. 11, about Patrick Turner's "naive belief" that "Defendant Springer had
> any intention of repaying the money Defendants stole."  Then on 3-3-10, in the
> quote provided at the beginning of this section, the government firmly committed
> that (at the very least as to count 4) there was ***no other theory*** that would sustain
> the conviction.  This theory was promoted through the day of sentencing, on 4-23-
> 10, where this District Court said "Mr. Stilley, you are not a lawyer in any normal
> sense of the word.  You are a ***thief with a law degree***."  Sent. TR 450
> (Emphases added)

To answer your question there *was no crime*, so there is no *nature* of crime.  The

government has its (apparently) phonied up indictment, for which it has no evidence, by their

own tacit admission.  The government has other theories, none of which are consistent with the

indictment.  The Court had some theories of its own, for example the idea that Patrick Turner's

loan somehow impaired the IRS' ability to collect taxes for other years - altogether without the

slightest proof that such transfers rendered Turner judgment-proof, in whole or in part.

Therefore, the best answer to this question is that "there was no crime."

Altogether without prejudice to the foregoing, the first page of the indictment lists that

following statutes along with words that might be construed to refer to the "nature of crime:"

18 USC 371, Conspiracy to Defraud the United States:

26 USC 7201, Tax Evasion

26 USC 7203, Failure to File Tax Return (these counts aren't relevant to Stilley)

In the interests of even further disclosure, each individual count contains at least

something in the title or heading, from which one might draw conclusions about the "nature of

the crime."  These are set forth below:

Count One at page 2 lists "18 USC 371."

Count Three at page 9 lists "26 USC 7201 and 18 USC 2."

Count Four at page 11 lists "26 USC 7201 and 18 USC 2."

Counts 3 and 4 (but not Count 2) refer to 18 USC 2, whereas the front page of the

purported indictment does not.  This leads Stilley to believe that someone did some editorial

work on counts 3 and 4, after the drafting of the front page of the purported indictment, which

was never returned in open court.  When this editorial work was done, and by whom, is not clear

from the record.

5.    (a)    What was your plea?  (Check one)

            (1)    __**Not guilty**__    (2) Guilty      (3) Nolo contendere

      (b)    If you entered a guilty plea to one count or indictment, and a not guilty plea to
             another count or indictment, what did you plead guilty to and what did you plead
             not guilty to?

6.    If you went to trial, what kind of trial did you have?  (Check one)

            (1)    __**Jury Trial**__    (2)    Judge only

7.    Did you testify at a pretrial hearing, trial, or post-trial hearing?

            (1)    __**Yes**__    (2)    No

8.    Did you appeal from the judgment of conviction?

            (1)    Yes    (2)    No

Stilley filed a notice of appeal and tried to appeal.  Stilley was denied the basics that any

attorney would recognize as indispensable to the preparation of a competent brief.  Stilley asked

for the court to order the government to cease its invidious interference with Stilley's right of

reasonable access to the courts.  This motion was denied and Stilley was denied any further

extensions of time in which to file a brief.

Stilley reserved his rights to appeal when this invidious interference with his

constitutional rights came to an end.  Even though such interference has not been brought to a complete end, Stilley now have access to enough resources to explain to the Court, and to the world, the facts and law that prove that Stilley's judgment and conviction is simply unconstitutional, unsustainable, and unlawful.  Stilley is entitled to a judgment of acquittal, as a matter of law.

The Clerk of the 10th Circuit never believed or claimed Stilley filed an appeal brief.  No docket entry in 10th Cir. 10-5057 purports to reflect the filing of Stilley's opening appeal brief. This Court, Stephen P. Friot, indicated a possibility that he might "ameliorate" some of the hardships arising from incarcerating Stilley and his co-defendant Lindsey Kent Springer pending appeal.

This would be the time to do that, by expressly allowing an appeal to anything adverse in the order pursuant to this motion, furthermore stated to allow Stilley to bring up and appeal any prior adverse order.


9.     If you did appeal, answer the following:

All answers below are altogether without prejudice to Stilley's claim that he has been denied his right to appeal for over 11 years, ***and still has the right to appeal***, and in furtherance thereof is constitutionally entitled to an order giving him not less than the standard and customary time to prepare and file his opening appeal brief.

(a)     Name of court: **Attempted** to appeal to the 10th Circuit

(b)     Docket or case number (if you know): 10th Cir. # 10-5057 (Springer's appeal, which he was able to prosecute by and through counsel, was numbered 10-5055.)

(c)      Result: **<u>Denied access to my own property and rights to property</u>**, so severely

that Stilley was relegated to adopting his co-defendant's brief.

(d)      Date of result (if you know): The 10th Circuit panel on 10-26-11 entered an

unsigned and unpublished *per curiam* which purported to dispose of the appeals of both

Lindsey Springer and Oscar Stilley.

(e)      Citation to the case (if you know):  *United States v. Springer*, 444 Fed. Appx. 256,

(10th Cir. 2011)

(f)      Grounds raised:

Stilley filed an "Adoption of Paperwork Reduction Act and District Director Arguments

by Lindsey Springer..."  Stilley has created a docket which has rational document numbers (of his

own creation) and links that are not hidden behind a paywall.  You can see docket #28 on page 6

of the 10-5057 docket.

You can also see docket #44 at page 8.  At Docket #44 Stilley again adopted certain

arguments of Springer.  You can click through and see every word Stilley said in 10-5057 appeal

docket #44.  Stilley hereby incorporates that pleading as if set forth word for word - it is a matter

of public record.  However, Stilley made it abundantly clear that the calculated efforts to destroy

his ability to litigate were unconscionable and unconstitutional, and that he reserved his right to

plead after the assault on his constitutional rights was lifted sufficiently to allow effective

pleading.

If you want the 10th Circuit's opinion of the issues raised, take a look at page 260 of *US v.*

*Springer*.   The panel claimed that Stilley waived all arguments that he was prevented from

making by the invidious interference by the Department of Justice, its personnel, and various

8

court personnel.

Any such action constitutes a constitutional violation in and of itself.  The government has no right to destroy a litigant's ability to litigate, and then assign those failures as a reason to deny process due under the constitution and laws of the United States.

The Tenth Circuit has held that a waiver is the voluntary relinquishment of a known legal right.  The Tenth Circuit says that it only enforces waivers entered into or done "knowingly" and "voluntarily."  Under no circumstances could a reasonable person say that Stilley has ever knowingly and voluntarily waived his right to competently prosecute the one direct appeal to which he is entitled under the law.

Under 10th Circuit case law, waiver is an affirmative defense that must be pleaded by the party claiming waiver.  That being the case, Stilley declines any invitation to shoulder a burden that does not properly fall upon him.

If the government thinks that they have a valid claim of waiver, they should forthrightly answer all allegations of this pleading, which fairly shows that Stilley's right of appeal has thus far been stomped out and wrecked both by the actions of the government and this Court.  Then they should affirmatively ***state facts*** which establish that Stilley actually waived his right to appeal without government interference condemned by binding federal case law.

(g)     Did you file a petition for certiorari in the United States Supreme Court?

(1)     Yes          (2)     **<u>No</u>**

US Supreme Court records disclose that Stilley did ask for an extension of time to file. Stilley sees no evidence of a petition for certiorari, and has no recollection of any.

10.     Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

9

Stilley filed a motion for reduction of sentence pursuant to the First Step Act of 2018, (FSA) under 18 USC 3582(c), along with a 25 page supporting brief.  The government responded.  Stilley filed a 25 page reply, together with a proposed order.  District Judge Stephen P. Friot denied the motion by order filed as docket # 700 on 7-26-21.  All these pleadings were filed in the captioned case, NDOK 4:09-cr-043, and some have exhibits or embedded links or both.  The operative docket entries are as follows:

| Docket # | Description |
| --- | --- |
| 694 | Motion for Reduction |
| 695 | Brief in Support |
| 698 | Response by the government |
| 699 | Reply |
| 700 | Order denying reduction of sentence |

11.   If your answer to Question 10 was "Yes," give the following information:

(a)   (1)   Name of court: Northern District of Oklahoma (OKND)

(2)   Docket or case number (if you know): OKND 4:09-cr-43

(3)   Date of filing (if you know): 5-12-2021 for filing of motion

(4)   Nature of the proceeding: First Step Act of 2018, motion for reduction of sentence.

(5)   Grounds raised:   This motion was an attack on the fraud and chicanery whereby Stilley received an utterly lawless conviction and sentence.  The Court and interested parties are invited to review the motion, brief, response, and reply.

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

(1)   Yes          (2)   **No**

(7)   Result: This Court said that a challenge to a conviction or sentence could

not be raised under the First Step Act.  The Court did not construe the motion as one under 28 USC 2255.

        (8)      Date of result (if you know): 7-26-2021

    (b)     If you filed any second motion, petition, or application, give the same information:

Stilley filed no such second motion.

    (c)     Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

        (1)      First petition:

            (1)     Yes        (2)    **<u>No</u>**

    (d)     If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

Although there does not appear to be a binding 10th Circuit case on point, Stilley can find cases in other circuits stating that a person in custody may not challenge their conviction or sentence under the First Step Act, but rather must file a motion under 28 USC 2255.  Stilley does not like the odds that the 10th Circuit will side with him against sister circuits, setting up a circuit split, especially since Stilley has preserved his right to file this motion.  Therefore Stilley is filing this motion under 28 USC 2255.

12.    FOR THIS MOTION, STATE EVERY GROUND ON WHICH YOU CLAIM THAT YOU ARE BEING HELD IN VIOLATION OF THE CONSTITUTION, LAWS, OR TREATIES OF THE UNITED STATES.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.  Any legal arguments must be submitted in a separate memorandum.

Defendant Stilley hereby incorporates all factual allegations of each ground for relief into all other grounds for relief, as if set forth word for word.  Defendant Stilley hereby incorporates

all other parts of this motion pursuant to 28 USC 2255 (including, to the extent allowed by law

and rule, linked materials) into all grounds for relief, as if set forth therein word for word.

***IMPORTANT!***   Stilley provides answers with respect to subparagraphs (b) (direct appeals) and

(c) (post-conviction proceedings) as to all the ***grounds*** raised in this motion.  These answers are

included both within the grounds under paragraph 12, and also under paragraph 18 and other

paragraphs.  These answers are hereby incorporated into the end of each ground, as if set forth

word for word from their original places.  Any attempt to re-state these facts separately after the

substantive allegations of each ground would unduly lengthen this pleading, and make the

reading of it unreasonably cumbersome and difficult.

**GROUND 1:**   INSUFFICIENCY OF THE EVIDENCE - THERE IS NEITHER RECORD
PROOF NOR FACTUAL BASIS FOR A FINDING OF CULPABLE MENTAL STATE
SUFFICIENT TO SUPPORT THE JURY VERDICT, AS TO COUNT 4.   STILLEY IS
ACTUALLY INNOCENT OF COUNT 4.

The record evidence was altogether insufficient to sustain the required element of *mens
rea*, (culpable mental state) of Oscar Stilley, with respect to Count 4 of the alleged indictment,
involving tax year 2005. Specifically, the government produced no evidence that Stilley was
aware of the original agreement between Lindsey Springer and Patrick Turner, to use Stilley's
IOLTA account to indirectly transfer $250,000 to Lindsey Springer.  Nor was Stilley in fact privy
to any such agreement, during said time frame.  The record evidence necessarily required that the
District Court grant judgment as a matter of law, as to Oscar Stilley, as to Count 4.  Barring
dismissal at the District Court, that same lack of record evidence of a culpable mental state
would have required reversal and dismissal by the appellate court, had Stilley been allowed the
one direct appeal to which he was entitled.

      (a)     Supporting facts (Do not argue or cite law.  Just state the specific facts that
            support your claim.):

1.    Defendant Oscar Stilley on 4-23-2010 was sentenced to 180 months of incarceration,

consisting of Count 1 - Conspiracy to Defraud the United States - 18 USC 371; Count 3, Tax

Evasion for year 2003 (26 USC 7201; 18 USC 2); and Count 4, Tax Evasion for year 2005 (26

USC 7201; 18 USC 2).  The Court imposed 5 years incarceration on each count, all to run

consecutive to the others. Defendant Stilley since that time has been in the custody of either the US Marshal Service or the Department of Justice-Federal Bureau of Prisons (DOJ-FBOP).

2.      Defendant Stilley has served the full Congressionally authorized maximum punishment of 5 years incarceration, as to two out of the three counts of conviction. Defendant has furthermore served part of the sentence on the remaining count of conviction.

3.      Therefore, the loss of *any* count of conviction imposes upon the Court a legal duty to immediately order the restoration of Defendant Stilley's full liberty, without any "supervised release."

4.      Defendant Stilley has included links to certain documents, for the convenience of the reader. A Timeline provides numerous links to other documents, primarily docket items and transcripts. The Timeline generally has links to the actual transcript or docket item referenced.

5.      Stilley hereby incorporates the Timeline, as if set forth word for word.

6.      Defendant Stilley had no knowledge of any intent to use his IOLTA account to move money from Patrick Turner to Lindsey Springer, until long after all the money had left his account.

7.      Stilley had no knowledge about the original plan to loan or gift money from Patrick Turner to Lindsey Springer, until long after all such funds had been disbursed from Defendant Stilley's account.

8.      The official record contains no evidence of such knowledge.

9.      This Court provided an example of how to get such information, at Sent. TR 288, with this colloquy:

        12 THE COURT: Perhaps you didn't understand my
        13 question. My question was very simple: **To what extent did**

14 Mr. Stilley have knowledge of this letter or its contents at
15 the time that it was provided to Mr. Hawkins?
16 MR. SPRINGER: Fully aware of it.
(Emphases added)
(Question regarding Stilley's knowledge of Exhibit 204 when sent.)

10.     The government knows how to get essential testimony at trial.

11.     They just didn't.

12.     Stilley at all relevant times reasonably believed that Patrick Turner was simply another prospective client, who wished to retain the services of Oscar Stilley.  He was totally left in the dark about plans to promptly cause Oscar Stilley to convey that money to Lindsey Springer.

13.     The trial evidence with respect to Count 4 of the alleged indictment evidence shows a transaction that appeared to be a normal and reasonable deposit of funds into Stilley's IOLTA account, for the purpose of providing for payment of attorney's fees, expenses, payment of taxes due, etc., from Stilley's IOLTA account.  This involved the transfer of $250,000 to the IOLTA account for Oscar Stilley.

14.     The government presented evidence leading to the inescapable conclusion that without the $250,000 transaction, there would not have been any requirement for Lindsey Springer to file a tax return at all, in anyone's theory.

15.     Government witness Brian Miller originally stated that he originally thought that the $250,000 was a bona fide loan, then changed his mind.  The government was unwilling to give the same latitude or consideration to Stilley.

16.     The government well knew that Stilley routinely accepted such funds, provided legal services, paid taxes due according to client instructions, etc.

17.     There is no evidence in the record that Stilley knew about the plan to loan or gift

14

$250,000 from Turner to Springer, until long after all such funds had been disbursed from Defendant Stilley's account.

18.     Stilley was in fact told and in fact believed that Turner's money was being wired for the purpose of retaining Stilley's legal services in a pending federal criminal tax investigation, and subsequent federal criminal court proceedings if any.

19.     Within scant days after receipt of the money from Pat Turner, Defendant Stilley was told that the criminal proceedings had been terminated, that the money had been loaned to Springer, and that Stilley should pay out the money pursuant to the directive of Springer.

20.     Defendant Stilley, at all times relevant to this litigation, reasonably believed the representations made in the foregoing paragraph.

21.     In previous cases, for example the criminal appeal of Judy Patterson, the government had allowed Judy Patterson to walk free, in exchange for dropping an appeal, in which Stilley had drafted the appeal brief with a meritorious argument under the Paperwork Reduction Act.

22.     Therefore Defendant Stilley had no valid reason to question the claim that Turner's criminal investigation had been terminated at the time - not that Turner had any duty to explain to Stilley his reasons for an otherwise lawful act.

23.     Only much later did Stilley come into possession of evidence that the termination of the criminal investigation of Patrick Turner apparently occurred months after Stilley was told that it had been terminated.

24.     Defendant Stilley was bound by his oath as an attorney not to refuse the causes of Patrick Turner and other persons similarly situated, for reasons personal to himself.

25.     Defendant Stilley was duty bound to pay over the money in his IOLTA account to the

"person entitled" to the money.

26.      Based on the representations of Patrick Turner and Lindsey Springer, the "person

entitled" included Lindsey Springer and persons identified to Stilley by Springer, as "persons

entitled" to the money in Stilley's IOLTA account.

27.      The foregoing statement is true whether the funds were in reality a loan, or earnings, or a

donation or gift.

28.      In its jury instructions, Docket #244 page 48, Instruction #29, this Court gave the

following instruction:

> AID AND ABET: THE STATUTE DEFINING THE OFFENSE, THE NATURE
> OF THE OFFENSE, AND THE ELEMENTS OF THE OFFENSE
>
> With respect to aiding and abetting, you are instructed that section 2(a) of Title 18
> of the United States Code provides that: Whoever commits an offense against the United
> States or aids, abets, counsels, commands, induces or procures its commission, is
> punishable as a principal."
>
> As previously stated, counts three and four of the indictment charge defendant
> Stilley with violations of this statute, 18 USC 2.  This law makes it a crime to
> intentionally help someone else commit a crime.
>
> To find Defendant Stilley guilty of the tax evasion charged in count three or count
> four as an aider or abetter, you must be convinced that the government has proved each of
> the following elements beyond a reasonable doubt:
>
> FIRST:       That defendant Springer committed the tax evasion crime charged in the
>              indictment in count three or in count four, respectively, and;
>
> SECOND:      That defendant Stilley intentionally associated himself in some way with
>              that crime and ***intentionally participated in it*** as he would in something
>              that he wished to bring about, which requires ***proof that defendant Stilley
>              consciously shared <u>defendant Springer's knowledge</u> of the underlying
>              criminal act of the tax evasion charged*** and that defendant Stilley
>              intended to help defendant Springer commit that crime.
>
> An aider or abettor need not perform the underlying criminal act, be present when
> it is performed, or be aware of the details of its commission to be guilty of aiding and

abetting.  But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough.  Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Again, in addition to the elements of aiding and abetting described in this instruction, proof of venue is required in order to find a defendant guilty of a crime of aiding and abetting.  I will instruct you later regarding proof of venue.
(Emphases added)

29.     The proof of mental state for the underlying offense of tax evasion cannot be less than the mental state for the aiding and abetting statute.

30.     Assuming arguendo that the acts alleged by Count 4 constitute a crime, Stilley had no knowledge of the plans of Turner and Springer until the money had all been transferred from his account.

31.     Therefore, pursuant to the Court's jury instructions, Stilley could not possibly be guilty of Count 4.

32.     Any competent attorney, having access to the record and the usual and customary tools of attorneys, could have won on appeal on the grounds of insufficiency of the evidence.

33.     To the present day the insufficiency of the evidence, as to Count 4, is not reasonably deniable.

34.     Stilley is actually innocent of Count 4, within the legal meaning of the term.

35.     An appellant in a federal criminal case is entitled to have a challenge to the sufficiency of the evidence decided first, for amongst other reasons the fact that the insufficiency of the evidence (any element) requires reversal and dismissal, with prejudice.  The double jeopardy clause of the US Constitution demands no less.

36.     On information and belief, both the District Court and government attorneys knew that Stilley would be able to prove the insufficiency of the evidence on Count 4, on appeal, as to

Stilley, unless he was prevented from obtaining access to the record and to the tools necessary for the drafting of a competent appellate brief.

37.     Stilley has demonstrated his ability to do exactly that, after regaining access to the record and to the drafting tools he took for granted prior to his incarceration.

38.     Stilley has already served more than ten years incarceration.

39.     That amounts to two consecutive sentences of the maximum presumed available by this Court and the government, same being 5 years.

40.     Therefore, a successful attack on any count of the alleged indictment requires the immediate release of Stilley.

41.     These facts furthermore explain why the government has spend more than a decade crushing Stilley's ability to get the record in this criminal case, and use it effectively.

42.     The lawlessness that has kept Stilley incarcerated based upon manifest frauds, deceit, and chicanery are raised as separate issues elsewhere herein.

43.     As the Court explained in its jury instructions, Oscar Stilley had no burden to prove or disprove anything.  See Jury Instruction #5, given by the Court.

44.     Defendant Stilley was puzzled about why he was getting tagged for prior year taxes of Patrick Turner, when he didn't even know Turner at that time.  Brian Shern explained as follows, at Sentencing 164-165:

> 24 Q. Can you tell this Court what Oscar Stilley should have
> 25 done differently so that he would not be charged with this
> 164
> 1 substantial sum of money as being relevant conduct?
> 2 A. **Not helped Mr. Springer hide Mr. Turner's $250,000 by**
> 3 **going through your account. Just walk away from the**
> 4 **transaction.**
> (Emphasis added)

18

45.     At trial and during sentencing, the government claimed that Turner had made his

$250,000 transfer of funds look like an ordinary attorney retainer payment.   TR 1465; Sent. TR

82.

46.     That plainly raises the question of what Defendant Stilley knew, and when he knew it.

47.     Concerning whose idea it was to convey the money in this manner, consider TR 1461:

>  Did Mr. Springer come up with an idea for a
> 4 course of action to take?
> **5 A. No, sir. I did**.

At TR 1462 we see:          7 Q. **You then agreed with Mr. Springer** to do something
                            8 about this; is that correct?
                            **9 A. Right. That's correct.**

At TR 1464 we see:          13 Q. -- what did you do with the funds that you received?
                            14 A. I transferred them -- we wanted to make this as out
                            15 in the open as possible.
                            16 Q. Who is "we"?
                            **17 A. Lindsey and I**.
                            (Emphases added throughout)

48.     At no time did the government prove that Stilley knew or believed that the money was

anything other than a legitimate, bona fide retainer for the purpose of representation in the

pending criminal investigation, and criminal trial if any, during the time that any of the funds

remained in Defendant Stilley's IOLTA account.

49.     This Court has a solemn legal duty to enter judgment as a matter of law, with respect to

Oscar Stilley, on Count 4 of the indictment.


**GROUND 2:**   INSUFFICIENCY OF THE EVIDENCE - THERE IS NO RECORD PROOF OR
FACTUAL BASIS FOR A FINDING OF CULPABLE MENTAL STATE OR ACT
SUFFICIENT TO SUPPORT THE JURY VERDICT, AS TO COUNTS 1, 3, OR 4.  STILLEY
HAD A LEGAL DUTY TO PERFORM THE ACTS FOR WHICH HE NOW STANDS
CONVICTED AND DEPRIVED OF HIS LIBERTY.

The record evidence was altogether insufficient to sustain the required element of *mens rea*, (culpable mental state) of of any illegal act of Oscar Stilley, with respect to Count 1, 3, or 4 of the alleged indictment.  Specifically, the government produced no evidence that Stilley ever did anything that he wasn't required to do, by civil law, criminal law, or ethical rules, or his oath of office as an Arkansas attorney at law, or some combination thereof, with respect to his current conviction, sentence, official detention, and other punishments.  The record evidence necessarily required that the District Court grant judgment as a matter of law, as to Oscar Stilley, as to counts 1, 3, and 4.  Barring dismissal at the District Court, that same lack of record evidence of a culpable mental state would have required reversal and dismissal by the appellate court.

      (a)    Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

50.    Plain error review is sufficient to correct a multitude of errors, with or without contemporanous objection by the injured party.

51.    The government's original theory, taken from the indictment, was that Springer earned money and concealed the fact of receipt of that money from the government.

52.    In the first seven pages of the Timeline, covering 3-10-09 (date on the purported indictment) through the first day of trial (10-26-09) the government not less than 6 times emphatically declared that Springer *earned* income, and hid *the fact* of receiving that income.

53.    Springer is blasted for claiming the funds are gifts or donations.

54.    At Dkt. 212, filed on the 1st day of trial, the government said "[Ms. Wiggins] caused the issuance of these five checks to Defendant Springer for services, and *not as gifts or donations*. (Emphasis added)

55.    If Springer earned the money, Stilley had a legal duty to pay it to Springer, promptly upon demand.

56.    Stilley demonstrated that he had a legal duty to pay this money to Springer, in his motion for judgment as a matter of law, and brief.  Dkt. 261 and 263.

57.    This Court *sua sponte* (on his own initiative, without a motion) struck the pleadings that

would have necessarily resulted in the entry of a judgment of acquittal, as to Oscar Stilley, as a matter of law, on 12-8-2009.

58.     The government abandoned the theory espoused by the purported indictment, and early particulars disclosed by filings of the government.

59.     This abandonment of the theory of the purported indictment was done precisely because the government lacked evidence sufficient to support a conviction under the theory espoused by the purported indictment.

60.     The *sua sponte* striking of #261 and #263 was done precisely because the Court knew that the claims in said pleadings would require the Court to grant judgment as a matter of law and release Stilley, free of any punishment or court supervision whatsoever.

61.     This Court still has a constitutional obligation to consider and decide the claims and arguments of #261 and #263.

62.     Due process requires nothing less than reinstatement of the motion and brief, an honest response to all facts and arguments by the government, and a ruling by a competent and disinterested judge.

63.     In a motion filed as Docket #694, Stilley alleged the facts necessary to support this ground for relief under 28 USC 2255.

64.     In the government's response to this motion, over the signature of Mr. Charles O'Reilly, there is no challenge to so much as a word of the facts stated under oath in Defendant Stilley's motion.

65.     The government challenges not so much as a word of the factual allegations in the supporting brief.

21

66.     Defendant Stilley's argument was carefully and thoroughly supported by citations to the record.

67.     Stilley has proven, to the legally required quantum of proof, and more, that he is entitled to the immediate grant of a judgment of acquittal as to all counts.

**GROUND 3:**    THE GOVERNMENT HAD ALL INFORMATION NECESSARY TO CONSTITUTE A "TAX RETURN" FOR 2005, WITHIN THE LEGAL MEANING OF THE TERM, PRIOR TO ANY RATIONAL "TAX DEADLINE" AS TO THE 2005 TAX YEAR. STILLEY HAD NO MEANS OF SUBMITTING ANY OF THE INFORMATION CLAIMED TO BE MISSING, FOR LACK OF AUTHORIZATION FROM SPRINGER.  THUS STILLEY CANNOT POSSIBLY BE GUILTY OF COUNT 4, FOR YET ANOTHER REASON.

        (a)      Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

68.     By the admission of government witnesses and government employees, without the $250,000 from Patrick Turner to Lindsey Springer, there would not have been any duty for Springer to make a return for the year 2005.  TR 2006, 2022.  The same is shown by government exhibits.

69.     Also by admission of government witnesses, Springer answered all questions regarding the receipt of the $250,000 from Turner.

70.     Springer answered all other questions by government personnel, concerning his finances in the year 2005, prior to the expiration of any rational tax filing deadline for the year 2005.

71.     The government furthermore seized Springer's records, and thus had all information which in any of their own theories would have been necessary to assess any tax against Springer, for the year 2005.

72.     The government would not have accepted any "tax return" (for any account of Lindsey Springer) from Stilley, for the year 2005.

73.     Other information relevant to this claim is sprinkled throughout this pleading.


**GROUND 4:**   THE GOVERNMENT AND THE DISTRICT COURT ABANDONED THE PURPORTED INDICTMENT WHOLESALE.  THE GOVERNMENT REFUSED TO CONFORM THE PROOF TO PARTICULARS SET FORTH REPEATEDLY IN FILED PLEADINGS, ETC.  THIS PROSECUTION, CONVICTION, JUDGMENT, AND SENTENCE IS BASED ON THEORIES NOT ALLEGED IN THE PURPORTED INDICTMENT.


        The government provided particulars, upon which Stilley was legally entitled to rely, in his preparation for trial.  Thereupon the government prosecuted the case on various other theories not compatible with either the indictment or the particulars.  The government abandoned the purported indictment wholesale.  The government has relied upon various legal theories, most of which are in irreconcilable conflict with the allegations of the purported indictment.  This violates the 5th Amendment right to grand jury indictment, due process, etc.

        (a)      Supporting facts (Do not argue or cite law.  Just state the specific facts that
                support your claim.):


74.     The government abandoned the alleged *Grand Jury* indictment wholesale.

75.     The government on March 3, 2010, at page 3 of its Objections to the Presentence Reports

of Springer & Stilley stated:

        All of Defendant Springer's income was generated from his elaborate con, defrauding
        numerous individuals with false promises and enticements in order to separate them from
        their money.  In addition, the jury verdict indicates that the jury found that Defendants
        **Springer and Stilley stole money from Mr. Patrick Turner**. Had the jury found that
        Defendant Springer borrowed from Mr. Turner, **the jury would have acquitted
        Defendants** of the tax evasion count for 2005.  Their return of a guilty verdict with
        respect to that count, corroborated by the evidence at trial, proved that Defendant
        Springer and Defendant Stilley, utilizing wire communications, stole $250,000 from
        Mr.Turner during 2005.
        (Emphases added)

76.     This bold pronouncement is just another way of saying that the government ***necessarily***

failed to prove the allegations of the indictment, allegedly handed down by the Grand Jury.

77.     If the verdicts ***ipso facto*** prove theft, that means that the government ***concedes*** that the

trial evidence cannot possibly support the government's ***theory at trial***.

78.     That being said, let's list off the government's most prominent overall theories, including when they started and stopped.  We are assisted by Exhibit 1 to this pleading, a Timeline of the proceedings.  This has already been stated in other sections of this motion, but Stilley wants, and is entitled to, an admission or denial, paragraph by paragraph, from the government.

79.     The government's first theory is summarized as follows:

1)      Springer earned money and concealed the fact of receipt of that money from the government.   In the first seven pages of the Timeline, covering 3-10-09 (date on the purported indictment) through the first day of trial (10-26-09) the government not less than 6 times emphatically declared that Springer ***earned*** income, and hid ***the fact*** of receiving that income.  Springer is blasted for claiming the funds are gifts or donations.  At Dkt. 212, filed on the 1st day of trial, the government said "[Ms. Wiggins] caused the issuance of these five checks to Defendant Springer for services, and ***not as gifts or donations***. (Emphasis added)

80.     The government's second theory is summarized as follows:

2)      Although Springer freely disclosed all of his gross receipts to the IRS, Defendants knowingly misrepresented the source and concealed from the IRS the true nature of the payments. See e.g. Dkt. 173 pg. 4. ""Defendant Stilley knowingly misrepresented the source and nature of Defendant Springer's income to Internal Revenue Service employees and the Grand Jury."

81.     The government's third theory is summarized as follows:

3)      On 11-2-09, the 6th day of trial, Brian Miller says that the question of whether transfers were gifts or donations is "almost a moot point" in this case, because **either way**, they're "gross income" to Springer, that he was required to report on a federal individual income tax return.  TR 1295-1296

82.     The government's fourth theory is summarized as follows:

4)      Springer stole the money, pure and simple.  See comment made 2-12-10, at Dkt. 310, pg. 11, about Patrick Turner's "naive belief" that "Defendant Springer had any intention of repaying the money Defendants stole."  Then on 3-3-10, in the quote provided at the beginning of this section, the government firmly committed that (at the very least as to count 4) there was ***no other theory*** that would sustain the conviction.  This theory was promoted through the day of sentencing, on 4-23-

10, where this District Court said "Mr. Stilley, you are not a lawyer in any normal sense of the word.  You are a ***thief with a law degree***."  Sent. TR 450 (Emphases added)

83.    It's not like there was any great effort at consistency.  At Sent. TR 84-85, during Springer's cross examination of Brian Shern, the Court whipsawed back to the 1st or possibly the 2nd  theory of liability, telling Springer that "the overarching question of whether the funds that you received over the years that were involved in this case were **received by you for services rendered** has been **conclusively resolved against you** by the jury verdict." (Emphases added)

84.    Defendant Stilley was bound by his oath as an Arkansas attorney not to refuse the causes of Turner, Patterson, or other persons similarly situated, for reasons personal to himself.

85.    Fifteen years of prison for crimes he ***could not possibly have committed*** is a ***reason personal to himself***.

86.    The government knows that the continued detention of Stilley is an utter fraud, yet continues to refuse to discharge ethical duties, or supply the Court with an honest record upon which to rule.


**GROUND 5:**  THE GOVERNMENT KNOWINGLY PRESENTED PERJURED TESTIMONY AS WELL AS LAUGHABLY FALSE TESTIMONY NOT MEETING THE LEGAL TEST FOR PERJURY.  FALSE TESTIMONY ACCOUNTS FOR MANY "POINTS" ASSIGNED UNDER THE SENTENCING GUIDELINES.  THE GOVERNMENT AND COURT STUBBORNLY RESIST CORRECTION OF THE FALSEHOODS IN THE RECORD. STILLEY IS ENTITLED TO RE-SENTENCING BASED UPON A RECORD FREE FROM KNOWN FALSEHOODS.

This false testimony accounted for several points on the sentencing guidelines table, and increased both the minimum and maximum guideline sentences.  The government stubbornly refuses to acknowledge or remediate this perjury and false testimony.   Government attorneys, as well as the District Court, having been provided irrefutable proof of material falsehoods in the record, stubbornly refuse to take any action to reform or correct the record so that it conforms with the truth.  This District Court has already declined a respectful request and a fair opportunity to require the government to conform the official record to the truth.  The District Court has

already indicated that the factual errors disclosed in pleadings pursuant to the FSA of 2018 has not even **softened** the District Court's harsh assessment of Stilley.

   (a)      Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

87.    The basic foundation of claims of tax loss are shown in the following chart:

| Tax year | 08-19-09 | During trial | At sentencing | Sentencing minus trial |
|---|---|---|---|---|
| 1999 | $            0.00 | $            0.00 | $      22,340.40 | $      22,340.40 |
| 2000 | $      33,777.11 | $      32,979.00 | $      35,400.00 | $        2,421.00 |
| 2001 | $          500.00 | $            0.00 | $      15,000.00 | $      15,000.00 |
| 2002 | $            0.00 | $            0.00 | $      12,367.20 | $      12,367.20 |
| 2003 | $      89,349.61 | $      97,223.00 | $      82,134.20 | $      (15,088.80) |
| 2004 | $            0.00 | $        3,854.00 | $      26,010.00 | $      22,156.00 |
| 2005 | $      33,463.00 | $      41,189.00 | $      59,300.00 | $      18,111.00 |
| 2006 | $            0.00 | $            0.00 | $      39,630.00 | $      39,630.00 |
| 2007 | $            0.00 | $            0.00 | $      30,680.00 | $      30,680.00 |
|  | $    157,089.72 | $    175,245.00 | $    322,861.80 | $    147,616.80 |

88.    The tally in the second column was erroneous in previous filings, because Stilley included

the top row (containing the date) in the sum.

89.    For the source of the numbers for 08-19-09 see Dkt. 130, pg. 32 and 37.  Defendant

Stilley asked about the government's conspiracy theories at page 32.

90.    At page 37 of the document, we can see that Special Agent Brian Shern essentially

considers the tax evasion charges the substantive offenses that correlate to the conspiracy

charges.  This is in accord with the language of the purported indictment.

91.    At trial the government introduced Exhibit 683 into evidence.

92.     The numbers at sentencing are derived from Sentencing Exhibits 1178 (Springer) and 1179 (Stilley).

93.     On both Springer and Stilley, the government used "tax liability" numbers that they **_knew and believed_** to be a pure unadulterated fraud, to "run up the score."

94.     Their "experts" had already calculated the **_actual_** tax losses, according to their (admittedly bogus) theories.

95.     The government then switched to "estimates" which by their own tacit (or open) admissions may be used only when more accurate numbers are not available.  Sent. TR 10, 189, 299, 323-324

96.     Then the government tagged each Defendant with the known fraudulent and perjury laced claims against the other.

97.     The claimed calculated tax amounts and the estimated tax amounts cannot both be true at the same time.

98.     Both claimed tax amounts can be false at the same time.

99.     Tax loss is the main driver of sentence, in a tax case.

100.    The US Probation Officer (USPO) found the tax loss in this case to be $561,201.67, for a Base Offense Level of 20.  The USPO added 2 points for encouraging others to violate internal revenue laws, and 2 points for obstructing justice, for an Adjusted Offense Level of 26 and a sentencing Guideline Range of 63-78 months in prison.

101.    Based on Defendant Stilley's objections, the USPO removed the objection for encouraging others to violate internal revenue laws.  Thus the USPO's final position was for 24 points, Criminal History Category 1 (no prior convictions, Criminal History Score of zero) which

resulted in a Guideline Range of 51-63 months of incarceration.

102.    The District Court at the conclusion of sentencing proceedings found tax losses, with respect to Stilley, totaling $1,303,096.  Sent. TR 408.  The District Court found Springer responsible for $1,085,474.80.  Sent. TR. 407.

103.    For 3rd party tax loss, the reader is directed first to Government Exhibit 1179 (Gov. Ex. 1179), the government's "Summary of Tax Loss and Restitution - Oscar Stilley."

104.    Gov. Ex. 1178 is the same document with respect to Springer.

105.    Gov. Ex. 1177-OS is the Tax Loss of Third Parties Relevant to Oscar Stilley.[1]

106.    Springer's counterpart is Gov. Ex. 1177-LS.

107.    United States Sentencing Guidelines (USSG) §2T4.1 is the "Tax Table" extant in 2009.

108.    In 2009, the "Offense Level" from the Tax Table for $1,000,000 but less than $2,500,000 was 22, for less than $1 million but over $400,000 was 20, for $200,000 to $400,000 was 18.

109.    The "Base Offense Level" is in tax cases the offense level taken from the Tax Table. Adjustments are then applied, to find the "Total Offense Level." The Sentencing Table determines the Guideline Sentence, based on the Total Offense Level.

110.    Thus a successful attack sufficient to bring the tax loss down below $1 million mandates re-sentencing pursuant to well established case law.

111.    A reduction below $400,000, or some other threshold of the Tax Table, doesn't change the *fact* of re-sentencing.  It might however influence the appropriate outcome ***as a result*** of the re-sentencing.

---

[1]      This document has no exhibit sticker, but this number is assigned by the government's witness and exhibit list at 319-2.

28

112.    The District Court's tax loss findings placed both Defendants in the "Base Offense Level" of 22."

113.    The District Court then calculated  points for Stilley on page 430 as follows:

| Source of points | # of pts | Applied to | Agreed by USPO | Basis for the finding |
|---|---|---|---|---|
| 2T1.1(b)(1) Failing to report criminal source income | 2 | Both | No | Turner (Count 4) and Hawkins (no part of indictment) |
| 2T1.1(b)(2) Sophisticated means | 2 | Both | Yes | IOLTA account, use of name "Bondage Breakers Ministry," cash dealing, check cashing service, "fraudulent" advice |
| 2T1.9(b)(2) Encouraging others to violate law | 2 | Both | Yes first, no after objection | Dr. Philip Roberts, James Lake (Also Mr. Dingman and Mr. Grady, but they had nothing to do with Stilley) |
| 3C1.1  Obstructing justice | 2 | Both | Yes | Stilley testimony regarding lack of statute saying who is liable for income tax, statute defining "income," statute commanding the filing of tax return, saying to Grand Jury that Springer does not charge for his services |
| 3B1.1(a) Organizing others | 4 | Springer | ??? | |
| 3B1.3  Using position to carry out crimes | 2 | Stilley | No | Status as lawyer facilitated commission and concealment of crimes |

114.    To summarize the District Court's conclusions with respect to Stilley, he found a Base Offense Level from (USSG) §2T4.1 of 22, (more than $1 million) together with 10 additional points, giving a Total Offense Level of 32.

115.    A Total Offense Level of 32 called for a Guideline Range of 121 to 151 months, pursuant to the Sentencing Table.

116.    US Probation arrived at a Total Tax Loss of $561,201.67.  However, US Probation cited

*United States v. Franks*, 723 F.2d 1482 (10th Cir. 1983) for the proposition that "restitution in tax

cases shall not be ordered as a condition of probation or supervised release when the amount of

tax loss has not been acknowledged, conclusively established in a criminal proceeding, or finally

determined in a civil proceeding."

117.    This Court included "tax losses" that didn't meet up with this Court's own stated rules

and evidentiary standards.

118.    This Court found a total tax loss of $1,303,096 against Defendant Stilley.    Sent. TR

408.    The following chart shows the amounts and sources:

| Time frame | Nature of claimed tax loss | | Amount |
|------------|----------------------------|---|--------|
| 2000-2008 | Stilley's estimated federal income tax | $ | 377,161.00 |
| 2000-2008 | Stilley's estimated state tax extrapolated from fed | $ | 91,627.00 |
| 2000-2007 | Springer's estimated federal income tax | $ | 299,591.00 |
| 2000-2007 | Springer's estimated state tax extrapolated from fed | $ | 80,186.00 |
| 1992-1995 | Dr. Philip Roberts | $ | 129,818.00 |
| 2000 | James Lake | $ | 176,000.00 |
| 1999-2003 | Patrick Turner | $ | 145,713.00 |
| Total | | $ | 1,300,096.00 |

119.    The tally from this chart is exactly $3,000 less than the District Court's, for unknown

reasons.

120.    Roberts, Lake, and Turner collectively amount to $451,531.00 laid at the feet of

Defendant Stilley.

121.    Therefore, if Defendant Stilley can lay waste to the foundations of all three of these add-

ons, re-sentencing is not optional.  The Base Offense Level declines from 22 to 20.

122.    In such case, well established federal case law then demands a re-sentencing.

123.    Dr. Roberts' trial testimony obliterates the government's theories.

124.    The government persuaded the Court that Dr. Roberts testified that Defendant Stilley

confirmed the rectitude of his legal position.

125.    Actually, this is what Dr. Roberts said, on the second day of trial, 10-27-09, at transcript

(TR) 316 on direct examination by Mr. O'Reilly.

> 10 Q. With respect to whether or not you were required to
> 11 file taxes, what did **Mr. Stilley** tell you?
> **12 A. I don't remember him specifically saying that there**
> **13 wasn't a requirement.** He's quite gifted in
> 14 constitutional and legal issues. And to be -- quite
> 15 frankly, he overwhelmed me a lot. **So I couldn't actually**
> **16 tell you definitively that I recall him making that**
> **17 statement ever.**
> (Emphases added)

126.    As much as Defendant Stilley likes his Sixth Amendment right of confrontation, he didn't

feel led to confront *that*.  What's to confront?

127.    Dr. Roberts initially testified to basically the same thing, with respect to Lindsey Kent

Springer.

128.    Mr. O'Reilly, clever and cunning lawyer that he is, "rehabilitated" his witness, starting at

316 and continuing to the next page.  It went like this:

> 18 Q. Okay. Did you ever have a conversation with
> 19 **Mr. Springer** about whether or not you had to file tax
> 20 returns?
> **21 A. Again, I cannot recall any specific conversation in**
> **22 that regard.**
> 23 Q. Is it possible that in the past you had a
> 24 recollection that -- or that reference to this grand jury
> 25 transcript might assist you in remembering?

317

1 A. Anything could help me with remembering. It was a
2 long time ago.
3 Q. Yes. Yes, Dr. Roberts. Let me ask you, if you
4 could, to look at page 9 of that same grand jury
5 transcript and simply look, I believe, from lines 9
6 through 11 and read it to yourself, sir.
7 A. Page 9, lines 9 through 11?
8 Q. I believe so, sir, yes. Actually, line 6 through
9 12. I apologize. Have you read that, sir?
10 A. Yes, I have.
11 Q. **Does that refresh your recollection**?
12 A. It certainly reflects what I said then, yes.
13 Q. What did you say?
14 A. At what part of this?
15 Q. Actually, let me just ask, **did Mr. Springer** ever
16 tell you whether or not you had an obligation to pay
17 incomes taxes and file tax returns?
18 **A. Yes. He stated that my conclusions were correct and**
19 **there was no requirement or liability to do those.**
(Whereupon Mr. O'Reilly passes the witness)
(Emphases added)

129.    The government should have paid attention when this District Court at Pretrial 10-21-09

TR 109-110, on the first day of trial, forbade "off the cuff" impeachment, and exhorted the

parties that *"it's never as good as you remember*."

130.    O'Reilly was totally confused about the testimony of Dr. Roberts. Sent. TR 300-302

131.    What O'Reilly lacked in accuracy he made up for with irrational exuberance.  See Sent.

TR 379:

14 MR. O'REILLY: Yes, Your Honor. And based upon
15 Dr. Roberts' testimony, it appears that he was also counseling
16 others. The fact that we **only have Dr. Roberts as the one that**
17 **we have identified** does not change the fact that it was part of
18 a common -- Mr. Stilley's common scheme.
(Emphases added)

132.    The government manufactured a "common scheme" out of what was admittedly the only

one that they had identified.

133.    It is no longer hard to see why the Court and the government didn't want Stilley or Springer to have the transcripts in time to prepare for sentencing.

134.    Mr. O'Reilly essentially admitted that he hooked his wagon to **_exactly one_** crippled up, foundered horse, and tied a buggy onto the back.

135.    Thus when the horse fell over dead, not only the ersatz "tax losses" but also the 2 point enhancement under  2T1.9(b)(2), encouraging others to violate the revenue laws, headed straight for the ditch.

136.    Defendant Stilley in his chart included James Lake, despite Mr. O'Reilly's kind concession at Sent. TR 379.  Defendant Stilley got tagged for Lake, so let's take a look at it.  We have a link to Government Exhibit 1143, so let's see why it's a total joke.

137.    This record shows "no return filed" but provides not the slightest evidence of any duty on the part of James Lake, to file a tax return that year.

138.    Mr. Lake fired Stilley early December 2001 or thereabouts, just before his trial. TR 860

139.    Exhibit 1143 shows the payment of $176,000, on 3-22-2002.

140.    On 7-1-03, over a year later, someone again noted that no tax return had been filed.

141.    On 1-14-08 this **_credit balance_** was cleared because the time to **_claim refund_** expired.

142.     For reasons not explained, the credit was re-instated.

143.    If there was an arguable or claimed tax liability on Lake for the year 2000, logic suggests that the $176,000 would have been applied to that real or claimed liability.

144.    Lake after all did go to prison, with supervised release to follow.

145.    At Sent. TR 49, Lindsey Kent Springer elicited the following testimony from Brian

Shern:

> 17 Q. As you stand here today, did **James Lake** not file a tax
> 18 return for the year 2000 by April 15, 2001?
> 19 A. Did he not file?
> 20 Q. Did he or did he not?
> 21 **A. I'm not for certain whether he did or didn't. I know**
> 22 **there was a -- the transcript of his account for 2000 shows a**
> 23 **restitution payment of -- and that is what we included in our**
> 24 **calculations, I believe.**
> 25 **Q. Restitution payment?**
> (Emphases added)

146.    Springer continued to rip Shern to shreds over the next 3 pages.  At Sent. TR 52 we see

this gem:

> 17 THE COURT: Okay. Except that I've heard on cross
> 18 that maybe he may well have filed for 2000.
> 19 MR. O'REILLY: **I'll try to rehabilitate the witness.**
> 20 THE COURT: Okay. Well, proceed.

147.    Mr. O'Reilly knows how to rehabilitate a witness.

148.    O'Reilly deftly rehabilitated Dr. Roberts - as to *Springer*.  He followed the Court's

ground rules, respected the witness, respected the 6th Amendment right to confrontation, etc.  He

got his testimony.

149.    At Sent. TR pg. 172, Defendant Stilley finished his cross examination of Brian Shern.

The following colloquy was had:

> 17 Pass the witness.
> 18 THE COURT: Redirect?
> 19 **MR. O'REILLY: No questions, Your Honor.**
> (Emphasis added)

150.    Mr. O'Reilly's promised "rehabilitation" of Brian Shern is conspicuous by its absence.

151.    Thus we have no *evidence* whether Lake filed a return for that year or not.

152.    We have no ***evidence*** whether ***anybody*** thought he was legally required to file a tax return

34

for that year.

153.    The record only shows that a large payment was made but never applied - at least up through sentencing in this case - to any real or imagined tax obligations of James Lake for the year 2000.

154.    To understand what's going on as to Lake, It may be helpful to review a certain objection at TR 1289, during Springer's cross examination of Brian Miller:

> 5 MR. O'REILLY: Objection as to what is the IRS's
> 6 position **and you should use common sense.**
> 7 THE COURT: Don't go there. That will be
> 8 overruled.
> (Emphasis added)

155.    There are practical reasons that a prosecutor should not check his common sense at the courthouse door.

156.    The government otherwise conceded that holding a defendant liable for events prior to meeting an individual is simply untenable. Sent. TR 302

157.    A quick Google search discloses that the average salary for a Delta pilot in the year 2000 was  $150,549.

158.    What we're left with is 1) a tax loss that the District Court didn't accept for lack of proof, 2) that the government didn't rehabilitate as promised, and 3) that makes no logical sense whatsoever.

159.    The government's imagined tax loss related to James Lake was laughably false.

160.    The government's claim of tax losses related to James Lake may not have been perjurious, only due to the government's (Charles O'Reilly, that would be you) massive capacity for self-delusion.

161.    The District Court set forth the government's theory with respect to the Patrick Turner

funds at Sent. TR 83, saying that the government claimed these moneys not as tax evasion, but as

impairment of the collectibility of Turner's prior year tax liabilities.

162.    The first problem with this theory is that it is utterly inconsistent and incompatible with

the purported indictment and the government's particulars sprinkled throughout pleadings.

163.    The second problem with that theory is that there is absolutely no evidence that the

conveyance of this $250,000 rendered Mr. Turner insolvent or partly so.

164.    There is absolutely no evidence that Patrick Turner couldn't have paid both the $250,000

and the full amount claimed by the government - at the same time.

165.    Mr. O'Reilly asked Mr. Turner about his ability to pay, at TR 1459-1460 as follows:

> 22 Q. Were you **able to pay** the money that was reported as
> 23 owed when you filed those tax returns?
> 24 A. There was a dispute on the amounts, so, no, I did
> 25 not pay the amounts on the tax returns.
> 1459
> 1 Q. Okay. And then you said you wanted to finish your
> 2 answer on the other question?
> 3 A. Yes.
> 4 Q. Please do so.
> (Emphasis added)

166.    Mr. O'Reilly walked straight up to the issue with which he savaged the Defendants at

sentencing - and then meandered away without an answer.

167.    Mr. O'Reilly wouldn't rationally do that - if he thought the answer *would help his case.*

168.    The third problem with this theory is that the government gave no notice of their theory in

time to cross examine Turner on the subject.

169.    It is exceedingly unlikely that a man of Turner's abilities and station in life would not

have been able to pay the sum claimed by the government, after exhaustion of legal remedies.

170.     The more important point is that raising a theory for the first time after the trial is a flagrant violation of due process.  This due process violation is only magnified when the victim is unceremoniously tossed in jail immediately after sentencing, and denied access to the docket and docket items while in jail or federal prison.

171.     The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."

172.     Turner's stated reason for conveying the money was a fear that the government would "scorch the earth" on him so as to prevent an effective criminal defense.  TR 1460

173.     The government did engage in "scorched earth" tactics against Stilley, which rendered Stilley incapable of effectively defending against the criminal charges in this case.

174.     There is not the slightest indicia, in the record, that Turner's conveyance of $250,000 was done with the purpose or with the effect to render himself "judgment proof," in whole or in part.

175.     The Oklahoma Code, and attorney ethics requirements, obligate the government to present this Court with a true and correct record.

176.     On information and belief, Mr. O'Reilly was unable to attack so much as a solitary fact or legal argument advanced by Stilley, in his prior motion under the First Step Act of 2018. Dkt. 694, 695.

177.     Government lawyers on this case, admitted to the Oklahoma bar, are bound by oath of office as an Oklahoma attorney to give to this Court knowledge of falsehoods in the record, that the record may be reformed.

178.     This obligation falls upon any licensed Oklahoma attorney having knowledge of such falsehoods, whether or not they actually presented or procured such falsehoods.

179.    This obligation falls upon any licensed Oklahoma attorney regardless of whether or not the falsehood was intentional.

180.    All licensed Oklahoma attorneys are forbidden to *delay* justice for lucre or malice.

181.    All licensed Oklahoma attorneys are forbidden to "give aid or consent" to any of the bad deeds listed in the foregoing paragraphs.

182.    One need look no further than the prosecutorial vendetta against Skoshi Thedford Farr to see a case in which the government lawyer clammed up, in the face of an ethical duty to speak, and thereby cheated a citizen out of incontrovertible constitutional rights.

183.    Lies and evasions of the truth have no place in a government, bench, or bar that values *integrity*.

184.    A court commits an abuse of discretion when it bases its decision on a clearly erroneous finding of fact or conclusion of law.

185.    The District Judge in this case entered a judgment and commitment order on the basis of false findings of fact.

186.    The District Judge in this case (whoever that may be) has a duty to correct erroneous findings of fact and conclusions of law prior to the entry of an order on this motion, whether the falsehoods were perjurious, laughably false, or just plain jane "false."

**GROUND 6:**   DEFENDANT WAS NOT GIVEN FAIR NOTICE THAT HIS CONDUCT MAY HAVE BEEN CONSTRUED AS ILLEGAL, A CLEAR VIOLATION OF DUE PROCESS.

(a)    Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

187.    Defendant was not given fair notice that his conduct, for which he now stands convicted,

38

sentenced, and deprived of his liberty, may have been construed as illegal.

188.    Such constitutes a clear violation of due process.

189.    Neither the tax code, the Treasury Regulations, or Supreme Court or appellate cases provide a clear answer, to the effect that Lindsey Kent Springer owed any taxes on the transactions and matters involved in Count 4 of this litigation.

190.    Neither the tax code, the Treasury Regulations, or Supreme Court or appellate cases provide a clear answer, to the effect that Lindsey Kent Springer owed any taxes on the transactions and matters involved in Count 3 of this litigation.

191.    Neither the tax code, the Treasury Regulations, or Supreme Court or appellate cases provide a clear answer, to the effect that Lindsey Kent Springer owed any taxes on the transactions and matters involved in Count 1 of this litigation.

192.    The government says it is not criminal to earn income.  Dkt. 42 pg. 3

193.    The government claimed not less than 6 times that Springer had earned income, which by necessary implication means he was entitled to the money; Id. (Timeline) pg. 1-5.

194.    Pursuant to Arkansas Rule of Professional Conduct 1.15 (Ark. R. Prof. Cond. 1.15), Stilley had a legal and ethical duty to ***promptly deliver*** money to any "third person entitled to receive" such money, or face professional discipline.

195.    This is true whether the money was compensation, donation, or gift.

196.    Asked if Stilley or Springer had interfered with any IRS official in the performance of their official duties, Brian Miller, who watched the whole trial, couldn't think of a single name. TR 2127

197.    Stilley couldn't file Springer's tax return if he tried, amongst other reasons because of the

requirements of Form 56 and Form 2848.

198.    Springer answered all questions from IRS employees.  TR 563; TR 2366 Without controversy, the IRS had sufficient information from which it could have assessed a tax, giving Springer fair notice and opportunity to litigate his contentions in a civil proceeding.

199.    The government seized all of Springer's financial papers, prior to any arguable "tax deadline" for tax year 2005.

200.    Springer provided answers to all questions asked such that Brian Miller was confident of his ability to calculate the tax due, for years 2005 and 2003.

201.    Thus Springer already provided papers and answers sufficient to constitute a "tax return" as defined by *United States v. Stillhammer*, 706 F.2d 1072, 1074-1075 (10th Cir. 1983) and *United States v. Patridge*, 507 F.3d 1092, 1094-1095 (7th Cir. 2007).

202.    Springer bitterly complained that he faced a "heads I win tails you lose" proposition, because the O'Reilly said ***keeping*** property on which Patrick Turner had a lien was theft, but ***giving it back*** was tax evasion.  Sent. TR 339

203.    That's the same trick bag for which Stilley is now serving 15 years in federal prison.

204.    If Stilley pays the money to the person entitled, in compliance with Ark. R. Prof. Cond. 1.15, he is according to the government's claims a conspirator and a tax evader.

205.    If Stilley doesn't promptly pay the money over to the "person entitled," on demand, he's a thief, guilty of a real crime that honorable and rational people recognize as a crime and an evil deed.

206.    The government should be ordered ***FORTHWITH*** to set forth, in writing, where and how Stilley was placed on notice that paying money to a person who allegedly "earned" the money, is

nevertheless a crime, and 2) where and how Stilley was given notice of some lawful way, not

contrary to his oath of office as an Arkansas attorney at law, to discharge his ethical, civil, and

criminal obligations, yet avoid criminal liability.

207.    Anything less deprives Defendant Stilley of due process.


**GROUND 7:**    THE PURPORTED INDICTMENT WAS NOT RETURNED IN OPEN
COURT; THERE IS NO RECORD EVIDENCE THE PURPORTED INDICTMENT IS
GENUINE; THERE IS NO RECORD EVIDENCE THE GRAND JURY ACTUALLY
APPROVED PART OR ALL OF THE PURPORTED INDICTMENT; THERE IS EVIDENCE
OF SLOPPY EDITS BY UNKNOWN PARTIES AT UNKNOWN TIMES.

The purported indictment was never returned in open court.  There is no record evidence
that the purported indictment is genuine, authentic, and unaltered after being passed upon by the
grand jurors.  On the contrary, there is evidence within the purported indictment suggesting that
certain changes were sloppily made, at unknown times, by unknown parties, with no assurances
whether or not the grand jury gave consideration to the document filed as docket # 2 in this case.
The government and the District Court are prohibited by well established legal principles, from
going outside the official record of this criminal case, to prove a return of the indictment in open
court.

(a)        Supporting facts (Do not argue or cite law.  Just state the specific facts that
support your claim.):

208.    The purported indictment in this case has not been returned in open court.

209.    Thus the purported indictment is due to be dismissed.

210.    FRCrP 6(d) provides as follows:

(f) Indictment and Return. A grand jury may indict only if at least 12 jurors concur. The
grand jury—or its foreperson or deputy foreperson—**must return the indictment to a
magistrate judge in open court.** To avoid unnecessary cost or delay, the magistrate
judge may take the return by video teleconference from the court where the grand jury
sits. If a complaint or information is pending against the defendant and 12 jurors do not
concur in the indictment, the foreperson must promptly and in writing report the lack of
concurrence to the magistrate judge.
(Emphasis added)

211.    The US Supreme Court promulgated this rule because of ***good reason*** not to trust federal

prosecutors to carry their own indictments back to the clerk's office and file them.

212.   Basically, it's a matter of "trust but verify."  Just to make sure prosecutors don't pull any

tricky stuff, we have the grand jury foreman or deputy foreman bring the indictment into open

court, hand it to the magistrate, and say the document is a true bill of indictment actually

approved by the grand jury.

213.   Certainly we can't just **assume** the return in open court.

214.   The very reason for a requirement of return in open court is a well-justified lack of trust.

215.   Therefore we have to have means of proof.

216.   Proof can be affixed to the the document, so the filed "indictment" has on the very pages

of the document a proof of return.

217.   Here's a copy of the indictment of Roland Daza-Cortez, so we can see what the

indictment looks like when it has been returned in open court, with proof of return on the

document itself.  This is a matter of public record, available on PACER.

218.   Take a look at the Daza-Cortez docket sheet.  It says nothing about any return in open

court.  Proof of that fact is endorsed on ***the first page of the indictment.***  That's how we know.

219.   In other cases, the docket sheet contains a statement to the effect that upon a date certain,

the indictment was returned in open court before a particular magistrate.

220.   In such cases a litigant can order the transcript to verify the return of the indictment in

open court.

221.   Take a look at the purported indictment in this case, Dkt. 2.  There is no endorsement

saying that it was returned in open court.  Now take a look at the Docket Sheet in this case.  That

doesn't say the indictment was returned in open court either.

222.    Remember, the whole point of requiring the return in open court is to satisfy **the public** that the prosecutors didn't either **phony up** the indictment altogether, or **embellish the words** of the grand jury.

223.    It is entirely unacceptable and unlawful to go outside the certified record in order to prove such a point.

224.    We have a certified record in this case.

225.    Take a look at the appellate docket, 10th Cir. 10-5057.  At page 5, entry #15,[2] we see that the record on appeal consists of 7,354 pages.  If the government thinks that Defendant Stilley is mistaken on this point, they are invited to bring the Court's attention to any and all specified pages of this 7,354 page record, that it urges as sufficient to prove a return of the indictment in open court.

226.    Lest an accusation of hyper-technicality be made against undersigned, remember the government objected to questions by Lindsey Springer asking about Brian Shern's position on a certain matter, at TR 1837.   Mr. O'Reilly and the Court reminded Springer that the grand jury, and not Brian Shern, was the source of the purported indictment.

227.    The District Court is in accord.  See Sent. TR 450, where the Court explained as follows:

> 10 One other matter should be mentioned before sentence is
> 11 imposed. Both of you are going to have some time, considerable
> 12 time to perfect your self-image as tax protestors who have been
> 13 persecuted and victimized by the Internal Revenue Service.
> **14 Before you get too far down that road, let me remind you that**
> **15 you were indicted by a grand jury consisting of your fellow**

---

[2]    The appellate docket has been modified, for the convenience of interested persons, to include numbered links to the pleadings, orders, and other papers (not to include the full 7,354 page record) at no cost.  Entries relevant to Defendant Stilley's efforts to secure his right of reasonable access to the courts have been highlighted in yellow.

16 citizens and not by the IRS. You were convicted by a trial
17 jury sitting in this courtroom consisting of your fellow
18 citizens and not by the IRS.
(Emphasis added)

228.   Two matters are apropos in response to such claims.

229.   First, if the government and the Court are to rely on the grand jury as accuser, they need

to make sure they have proof *in conformity with applicable rules* that the grand jury actually

indicted, and the specific accusations approved by the grand jury.

230.   Second, they need to be able to show the government that the defendants were convicted

on the basis of allegations in the purported grand jury indictment.

231.   This too is conspicuous by its absence.

232.   The judgment and commitment order against Stilley makes a mockery of the US

constitution and all that it stands for.  Stilley is entitled to immediate release on the basis of a

judgment of acquittal as to all counts.

**GROUND 8:**   THE DISTRICT COURT ENTERED AN UNCONSTITUTIONAL *SUA
SPONTE* ORDER; THE DISTRICT COURT ADMITS THE ILLEGALITY OF SUCH *SUA
SPONTE* ORDERS, BOTH BEFORE AND AFTER THE ONE COMPLAINED OF HEREIN;
THE *SUA SPONTE* ORDER WAS LAUGHABLY WRONG, HAVING NO PRECEDENT
WHATSOEVER; THERE WAS NO RATIONAL BASIS FOR THE ACTION OTHER THAN
MALICE; ONLY SETTING ASIDE THE ORDER, AND FULLY LITIGATING THE
MOTION, SATISFIES THE CONSTITUTION; THE DISTRICT COURT HAS COMMITTED
OTHER SIMILAR BAD ACTS, IN THIS CASE AND OTHERS.

The District Court entered a *sua sponte* order striking Stilley's motion for new trial and
for judgment as a matter of law, in violation of the District Court's own stated understanding of
federal constitutional due process rights.  The District Court has done similar things at other
times in this case.

(a)     Supporting facts (Do not argue or cite law.  Just state the specific facts that
        support your claim.):

233.   The District Court acted contrary to its own belief and understanding of the law of due

process.

234.     The District Court *sua sponte* (on his own motion) struck Plaintiff's consolidated motions

for judgment as a matter of law (JAML) (Dkt. 261)  and new trial, (Dkt. 263) despite stating the

knowledge and belief, in other opinions and orders, that such a *sua sponte* motion violates due

process.

235.     See for example the case of *United States v. Ladell Fitzgerald Pace*, **2016** U.S. Dist.

LEXIS 182029, *4-5, where this Court, Stephen P. Friot, opined as follows:

> Consequently, defendant's motion appears to be untimely and subject to dismissal with
> prejudice. District courts are "permitted, but not obliged" to review, ***sua sponte***, a federal
> prisoner's § 2255 motion to determine whether it has been timely filed. The Tenth Circuit
> case law makes clear that a district court may raise a procedural bar on its own motion.
> [citations omitted]. If the district court acts on its own raising a limitations defense,
> **however, it must "accord the parties fair notice and an opportunity to present their**
> **positions."** ***Day v. McDonough***, **547 U.S. 198, 209, 126 S. Ct. 1675, 164 L. Ed. 2d 376**
> **(2006). The court therefore shall permit defendant to file a response within 30 days**
> **demonstrating why his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or**
> **Correct Sentence by a Person in Federal Custody should not be dismissed as**
> **time-barred.** ...
> (Emphasis added)

236.     That was 2016, and plainly shows what this District Court thought the law was on July

20, 2016.

237.     This Court struck the pleadings that would have necessarily resulted in the entry of a

judgment of acquittal, as to Oscar Stilley, as a matter of law, on 12-8-2009. Dkt. 261 and 263.

238.     This gives rise to the question of this Court's understanding of the law *before* striking

Stilley's critical pleadings.

239.     In fact the Court's understanding of the law prior to Stilley's trial was no different than it

was afterward.  Consider *United States v. Holly*, 2009 U.S. Dist. LEXIS 95021, 2009 WL

3275087, where this Court said:

The court further notes that defendant's motions appear to be untimely filed as they were not filed within three years after the verdict or finding of guilty in defendant's criminal case. Rule 33 (b)(1), Fed. R. Crim. P. ("Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."). The court, however, **does not raise the issue sua sponte**. See, e.g., *United States v. Mitchell*, 518 F.3d 740 (10th Cir. 2008).
(Emphases added)

240.   *Mitchell* cited to *Day v. McDonough*, and discussed it extensively.

241.   There can be no reasonable doubt as to why this Court cited to Mitchell in support of its statement that it would not raise the timeliness issue sua sponte.  *United States v. Holly* was decided by this Court on October 13, 2009.   This Court held the final pretrial conference in this case just eight (8) days later, on October 21, 2009, and started the trial on October 26, 2009.  It is hard to imagine better proof that this legal principle was fresh in the Court's mind.

242.   This Court's order [Dkt. 264] cites no authority except LCvR7.2(c).  That document wasn't picked up by Lexis-Nexis, but another order on the same subject was. [Dkt. 293] *United States v. Springer*, 2010 U.S. Dist. LEXIS 6906, 2010 WL 419936.

243.   Shepardization of that case discloses that it has been cited nowhere except in another Springer case, namely *Springer v. Willis*, 2015 U.S. Dist. LEXIS 186334.

244.   Defendant Stilley cannot see one other case in which a federal *criminal* defendant has had a pleading stricken on the basis of LCvR7.2(c).

245.   We must face multiple issues.

246.   First, we're looking for a federal criminal case in which LCvR7.2(c) is applied so as to limit the length of a criminal pleading.

247.   Second, we're looking for a case in which the court "stacked" a motion and brief, determined the ***combined*** page count to be over-length, then struck ***both documents***.

248.   **Both propositions** are conspicuous by their absence.

249.   If the government thinks not, perhaps they can give us the citations.

250.   This District Court wasn't confident of its own theories.

251.   The District Court denounced Springer for his very long pleadings, sometimes triple the 25 pages allowed by the civil rules, for an opening brief in support of a motion. Dkt. 293, pg. 14.

252.   That just throws the hot glare of the spotlight onto Stilley's brief, with a mere 13 pages, excluding the certificate of service. Dkt. 263

253.   Defendant Stilley's brief wasn't even long enough to require tables of contents and authorities, under the civil rules.  It wasn't over-length at all - until the District Court construed the motion as "argumentative," [Dkt. 293, pg. 18] added the 18 countable pages of the motion, and even then had a page count a mere 24% over the max allowed by the civil rules.

254.   On 6-18-09, at Dkt. 87, this Court denied a motion to strike a 28 page reply.  By this Court's sua sponte theories, that brief exceeded the civil rule limit by 180%, and furthermore had no table of contents or authorities.

255.   There was no commentary to the effect that, for future reference, the parties should be more concise, or should file motions for over-length brief.

256.   Defendant Stilley had no fair notice that the District Court might reasonably construe the civil brief limit rules to apply to criminal cases as well.

257.   All the Court had to do to get compliance with the *civil* rules, in a ***criminal*** case, was to say that in the future the page limits of the civil rules would be enforced.

258.   That's not hard to do - see Dkt. 290 for an example.

259.   The problem with that expression of intent is that it was too late.

47

260.    District Court Stephen P. Friot first gave notice of his novel ideas by striking a critical pleading, and denying Defendant Stilley any opportunity to amend his pleading to comply with his newfound "rules."

261.    Based on the District Court's earlier rulings, Defendant reasonably concluded that the limitations on brief length, in the local civil rules, simply weren't "appropriate in a criminal context..." and thus weren't *applicable* in a *criminal* case.

262.    Pushed on the issue, this Court said that if it couldn't construe a motion as part of a brief, then litigants would always be able to evade the rules. Dkt. 293

263.    The easiest answer to that logic is the fact that Defendant Stilley could have easily prepared a motion for new trial, and a motion for judgment as a matter of law, with briefs for each, each incorporating the other briefs and motions as if set forth word for word.

264.    Pleadings drafted on Trulincs allow a word count per page about twice as much as that of a pleading drafted on word processor, in accordance with the rules.

265.    Take a look.  Dkt. 454

266.    Defendant Stilley has prepared countless pleadings on Trulincs, for himself and others, and has never had one stricken for length, or because they conform to virtually no court rules *anywhere*.

267.    The Supreme Court has already stated the requirement that an illegal order be set aside, giving the litigant a fresh start.

268.    Applying well established law, this Court should have set aside its order striking Dkt. 257, 258, 260, 261, and 263.

269.    The same order can allow the government a reasonable time to respond to the motions

and briefs, responding numbered paragraph by numbered paragraph, and fully briefing the court

on the issues raised therein.

270.    Then, if the government thinks that some or all of the pleadings are too long, it can file a

motion requesting that the Court once again strike some or all of the listed pleadings.

271.    That would give the defendants a fair chance to respond, in conformity with the

requirements of due process.

272.    The Northern District of Oklahoma has now (quite sensibly) placed the rules for criminal

briefs within the Local Criminal Rules proper.  LCrR47-5.

273.    That's all well and good, and should have been done long ago.

274.    US constitutional principles preclude requiring any litigant to pay, with years of his life,

for ambiguity in local rules.


**GROUND 9:**   THE DISTRICT COURT REFUSES TO RULE ON MERITORIOUS CLAIMS;
THE DISTRICT COURT HAS EXHIBITED SIMILAR BEHAVIOR IN SIMILAR
LITIGATION.

This District Court as refused to rule substantively on motions that would require the immediate
release of Stilley.  Furthermore, publicly available court proceedings demonstrate that this
District Court has engaged in similar behavior in other federal criminal proceedings.

        (a)      Supporting facts (Do not argue or cite law.  Just state the specific facts that
                 support your claim.):

275.    This District Court has refused to rule on the claims of Skoshi Thedford Farr, where an

honest ruling necessarily would have restored her to her liberty.

276.    This District Court has refused to rule on Stilley's claims, where a ruling would force the

District Court to grant judgment as a matter of law to Stilley.

277.    On information and belief, this District Court has engaged in similar behavior in other

cases, in which the District Court desired a particular result.

**GROUND 10:** THE GOVERNMENT IS AT THE PRESENT TIME CONCEALING AND SECRETING A MATERIAL WITNESS AND MAJOR SOURCE OF LITIGATION SUPPORT, IN THE PERSON OF LINDSEY KENT SPRINGER, THROUGH MEANS THAT ARE THOROUGHLY DISHONEST AND FRAUDULENT. THE DISTRICT COURT KNOWS ABOUT IT AND REFUSES TO ORDER THE CORRECTION OF THIS WRONGDOING.

    (a)    Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

278. Charles O'Reilly has recently claimed that Defendant Stilley is not an ECF registrant.

279. This was despite the fact that Stilley had just gotten through filing docket items 694 and 695, with extensive links that worked.

280. Pleadings with extensive links that work are irrefutable proof of CM/ECF filing capabilities.

281. Stilley certified his CM/ECF filing capabilities in his certificate of service.

282. O'Reilly's claim that Stilley is not a CM/ECF filer is a deliberate and willful lie uttered for nefarious purposes.

283. O'Reilly can't rationally believe the truth of that assertion.

284. Mr. O'Reilly told this lie to keep up his charade, whereby he hides Lindsey Springer out from Defendant Stilley.

285. O'Reilly knows that the whole of Stilley & Springer is far more than the sum of the parts.

286. O'Reilly knows that Defendant Stilley will share all his information with Lindsey Springer, and help him in every way possible, given the chance.

287. Depriving Defendant Stilley of this valuable resource is the reason for O'Reilly's outrageous lies.

50

288.    That's why O'Reilly instructed William Foreman to perform the useless task of mail

service.


**GROUND 11:**   THE GOVERNMENT AND THE DISTRICT COURT HAVE WORKED
TOGETHER TO STOMP OUT THE LITIGATING CAPABILITIES OF STILLEY AND HIS
CO-DEFENDANT LINDSEY KENT SPRINGER, SUCH THAT STILLEY HAS NOT BEEN
ABLE TO PROSECUTE THE ONE DIRECT APPEAL TO WHICH HE IS ENTITLED BY
LAW, SINCE HIS INCARCERATION 4-23-2010.

(a)      Supporting facts (Do not argue or cite law.  Just state the specific facts that
support your claim.):

289.    O'Reilly in his response blasts Stilley for trying to get a "second bite at the appellate

apple." Dkt. 698, pg. 8.

290.    O'Reilly did his fair share to stomp out Stilley's ability to timely appeal his conviction

and sentence.

291.    Consider these facts concerning Defendant Stilley's efforts to get the one direct appeal to

which he was and still is entitled.

292.    This Court struck Defendant Stilley's motion for Judgment as a Matter of Law, and for

New Trial, Docket 261, with supporting brief (Id., see click-through links) utterly contrary to his

own prior and later statements about a district court's authority to act *sua sponte*.

293.    O'Reilly has nothing to say about this.

294.    Stilley moved for transcripts promptly, which the government did not oppose, at least not

on the record so Stilley could see the action.

295.    This District Court denied the motion some 6 weeks later.

296.    Then at sentencing the Court would ask the government about which transcripts they had.

297.    Clearly the government got what they wanted - they just didn't share with the defense.

51

298.    After the defendants were locked up, O'Reilly quickly agreed to Springer's request for transcripts, and the Court granted it.

299.    Both knew full well that these transcripts were now as a practical matter worthless to Stilley, since he no longer had no access to the docket items, computers, paper files, effective research tools, etc.

300.    Nothing in the 10-5057 appellate docket indicates that the 10th Circuit clerk ever thought Stilley filed an appellate brief.  He joined Springer's brief, which was mandatory to avoid waiver, and claimed his right to appeal after the obstruction of his capability to prepare a brief was terminated.

301.    This District Court ordered both Stilley and Springer to perform 30 hours per week of community service.

302.    This order effectively denied the defense of perhaps 70 hours per week of time needed for defense work.

303.    The constitution as well as ethical rules for attorneys prohibit any attorney from unlawfully obstructing another party's *access* to evidence, or unlawfully alteration, destruction, or conceament of a document or **other material having potential evidentiary value**.

304.    A lawyer is constitutionally and ethically forbidden to counsel or assist another person to do any such act, in a criminal case.

305.    One or more persons did that to Defendant Stilley.

306.    O'Reilly knew he could gain unfair advantage if he could prevent Stilley from getting access to the transcripts, prior to incarceration.

307.    O'Reilly knew that transcripts post-incarceration were a foregone conclusion - he had no

reasonable hope of preventing that.

308.    O'Reilly's goal was to make sure the transcripts did not allow Stilley to 1) effectively defend at sentencing, or 2) prepare a creditable appeal brief or part thereof prior to incarceration.

309.    O'Reilly stood silent, but he got exactly what he wanted.

310.    On information and belief it was a collection of people, who stomped out Stilley's ability to defend at sentencing, or to prepare creditable briefs for his one direct appeal.

311.    In sum and substance, and without limitation whatsoever, on this particular issue Stilley claimed the right to freedom from interference with the right to possess and reasonably use his own property and rights to property, in order to prepare not only the pleadings for the one direct appeal to which Stilley was entitled by law, but also with respect to any other proper legal matters that might call for research, writing of legal papers, etc.

312.    Any claim that Stilley would not have prepared a brief that solidly demonstrated the reversible errors laid out in this pleading (up to his word limit) is utterly implausible and incredible.

313.    The idea that Stilley would do the work necessary to expose the fraud, corruption, and incompetence that caused his lawless incarceration, more than ***11 years after*** being locked up, but would not do it ***within the originally permitted time***, (considering all authorized extensions) is utterly incredible and unreasonable.

314.    Stilley has at all times exercised best efforts to vindicate his right to one direct appeal of his criminal conviction.  These best efforts continues to the present time.

315.    Any lawyer attempting to prepare an appellate brief without reviewing the record, utilizing the record, and citing to the record, would be *ipso facto* (inherently, by definition)

committing malpractice.

316.     In fact, in *Stilley v. Garland*, Stilley was provided a record with numbered pages.  He was given the format for citation, so that the cites to the record would correctly "link" to the pages cited.  Furthermore, his brief was checked for compliance with the rules, so as to ensure that the brief actually and fully complied with the rules.

317.     Stilley has proven by his pleadings and papers submitted with respect to his First Step Act motion, that he had a meritorious appeal that would have mandated the reversal and dismissal of the judgment and conviction against him.

318.     Stilley does not have a photographic memory and has never claimed such.

319.     Furthermore, nobody has shown how to interface the fabled "photographic memory" with any earthly document reproduction equipment, so as to make copies needful for litigation purposes.

320.     The joinder in certain arguments briefed by a counseled co-defendant, who in fact had access to the record, cannot rationally be treated as the prosecution of a separate appeal.

321.     Stilley's decade in prison was devoted to attempting to get "keys to the courthouse" to litigate his claim that he has been denied due process, by being denied access to those things indispensable to a creditable appeal.

322.     Stilley's adversaries in the US DOJ heap praise on Stilley's efforts by claiming that none of them were successful.

323.     Stilley's adversaries claim that in a decade, with more than 50 administrative remedy attempts, he has exhausted exactly *none*.

324.     That's an outrageously absurd conclusion, and proves the insecurity of the US DOJ with

respect to the conviction and punishment of Stilley.

325.    Incarceration pending appeal effectively destroyed Stilley's ability to appeal.

326.    The Court acknowledged the fact that incarceration negatively affects the ability to

effectively defend pro se.

327.    This Court admitted that the decision to immediately remand Springer and Stilley to

custody would impact appeal rights.

328.    Here's what this Court said at Sentencing TR 466 and 467:

> 24 On the issue of remand, let me first say, gentlemen, that
> 25 I am fully cognizant of the seriousness of this question,
> Page 466
> 1 especially as it applies in your situation having invoked your
> 2 right, as you have, **and it's an important right**, to represent
> 3 yourselves. And I am fully cognizant of the fact that
> 4 incarceration may well have some impact on your ability to
> 5 proceed representing yourselves. **To the extent that the Court**
> **6 can within the bounds of the law and common sense** **ameliorate**
> **7 that**, then I will be happy to consider anything that the Court
> **8 might properly address in that regard.**
> (Emphases added)

329.    This would be a great time to "ameliorate" the devastation visited upon Stilley by

depriving him of the tools indispensable for a competent appellate brief.

330.    First, this Court should *settle for nothing less* than an honest and accurate record.

331.    Second, this District Court is duty bound by the constitution and other authorities to enter

a new judgment and commitment order based upon the true facts and applicable law.

332.    Third, to the extent that Stilley is not totally vindicated, the order should include within

itself a provision stating that Stilley is entitled to appeal any part of the original judgment and

commitment order, as if appealed at the time, and also any part of the new judgment and

commitment order, if it is in any way adverse to Stilley.

333.    The government got all the transcripts they wanted.

334.    This Court asked the government at Sentencing Transcript page 309 if Lake's testimony had been transcribed, and again at 379 if Dr. Roberts' testimony had been transcribed.

335.    The answer in both of these cases was "no."

336.    The point is not which were ordered and which weren't.  The point is that O'Reilly spent a boatload of money on this political persecution, and could have gotten any and all transcripts he wanted to get.

337.    At 381 this Court claimed that "[B]oth sides have had ample opportunity to order a transcript."

338.    The first problem with that logic is that the government had spent at least the previous 5 years "scorching the earth" on Stilley and Springer.  The government committed the evil that Patrick Turner feared, which motivated his agreement with Springer, which in turn forms the basis for Count 4 of the indictment.

339.    Stilley's right to order the transcripts was a right in theory only.

340.    This amounts to a "tag-team" approach from the government and the Court.  This Court approved $91,771.56 out of $117,000.06 requested by Charles Robert Burton IV, for his services as standby counsel for Oscar Stilley in the present case, pursuant to the Criminal Justice Act (CJA) 18 USC 3006A.  The Court said he was tempted to allow it all, and offered sincere appreciation for his services.

341.    Stilley was repeatedly denied CJA defense work on the basis of bogus alleged ethical issues.

342.    The government sent its "assets" to Arkansas to help attack Stilley's law licence, opposed

and obstructed his efforts to get and keep CJA appointments as well as work for paying clients, and used their police-state surveillance capabilities to determine when their scorched earth campaign had done its work.

343.    Then and only then they attacked.  Then they used Stilley's economic weakness to destroy his ability to effectively defend or appeal.

344.    The government used ethics attacks to economically destroy a well-known political enemy, and *then used that economic weakness to defeat the target's right of due process.*

345.    That's what O'Reilly and his cronies did in this case.

346.    That's what O'Reilly is now using as a fig leaf, to justify his obstinate refusal to give this Court a truthful record upon which to render a decision.


**GROUND 12:**   THE GOVERNMENT HAS ENGAGED IN WHAT APPEARS TO BE EX PARTE CONTACT WITH THE DISTRICT COURT.

On information and belief, government lawyers engaged in ex parte contact with the district judge.  The result was that the government was able to get illegal and improper benefits without "leaving fingerprints" on their unlawful deeds.

(a)     Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

347.    The government during trial passed to both of the defendants a copy of a proposed jury instruction, but did not file it.

348.    Defendants were puzzled about why the government wouldn't file or otherwise present the jury instruction to the District Court for its consideration.

349.    Later the District Court proposed a jury instruction very similar to one handed to defendants by government counsel.

350.    On information and belief, the government engaged in ex parte (one sided, without the knowledge of the other side of the litigation) contact with the District Court, to get the Court to adopt the government's bogus jury instruction under circumstances that left the government with "plausible deniability" that they were the source of the offending instruction.

351.    This District Court has entered other orders indicating that it is surreptitiously communicating with the government.

352.    For example, this District Court first "burned the clock" for some 6 weeks, then denied the defendants of transcripts in time to show the Court's erroneous conclusion at sentencing, without any written or otherwise identifiable response to the motion by the government.

353.    On information and belief, the government used "back channel" communication to inform the District Court that they wanted the defendants to be denied transcripts until the defendants were locked up.

354.    The District Court's reasoning for denying transcripts was totally contrary to official policy of the federal judiciary.

355.    The requirement to donate 30 hours per week, plus perhaps 10 hours per week of preparation and travel time, per defendant, also appears to be done by the District Court without apparent argument by the government.

356.    In Docket # 290, this Court set a deadline of 2-1-2010, just over a week from the date of the order, for the filing of any dispositive motion, construed to be any motion that would terminate the case short of sentencing, as to any or all counts of the indictment.

357.    This District Court on 1-12-2010 had entered an order, Docket # 278, denying a transcript at public expense.

358.    Said order discussed *ex parte* "evidence" that Stilley was trying to get money for a transcript.

359.    On information and belief, the District Court was worried that Stilley might somehow come up with money for a transcript, and show the very facts and evidence shown by this motion, establishing that Stilley cannot possibly be guilty of any count of the indictment.

360.    These examples should by no means be considered the sole examples of this sort of conduct.

**GROUND 13:**    STILLEY HAS BEEN DENIED A DISINTERESTED AND IMPARTIAL TRIBUNAL.

(a)    Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

361.    This Court said he was "*having to*" scab over the government's problem, and that he "*had to*" fix the indictment in the jury instructions, in the Skoshi Thedford Farr litigation.

362.    Effectively, this Court conveyed the fact that it *felt an obligation, a duty* to ensure that the government won regardless of law or fact.

363.    Here's what the 10th Circuit said on Farr's subsequent appeal, *United States v. Farr*, 591 F.3d 1322, 1325 (10th Cir. 2010), OKWD 5:08-cr-00271-F-1 which I'll call *Farr II*:

>         Neither the district court nor this court made factual findings ***tantamount to*** a judgment of acquittal. See *Hunt*, 212 F.2d at 544 (holding that the district court's conclusion that the packages were not in the "mail" as defined by statute when the theft occurred constituted a factual resolution of one of the elements of the crime in favor of the defendant and was equivalent to acquittal). While the district court ***implied*** that the government was incapable of proving the first element of the offense--that the quarterly employment tax was "due and owing" of Farr, ***it never found*** that the government could not or had not proven that element. For instance, the district court said that it was "pulling the case out of the ditch for the government," ***implying*** that the government could not otherwise prove its case without finding that the government's evidence was insufficient. (Emphases added)

59

364.    *Implied* is not the same as *found, or tantamount to*.

365.    This Court and the government got their way in the *Farr* litigation because this Court was willing to dodge the question he was duty bound, by his oath and judicial ethics, to answer promptly, honestly, and forthrightly.

366.    Judge Friot would not have faced his own ethical dilemma, had Susan Dickerson Cox honored **her own** ethical commitments.

367.    By oath as an Oklahoma lawyer, and by lawyer ethics rules, Ms. Cox had a duty to *be honest*.

368.    It was her ethical duty to confess the truth, promptly, when either the law or the facts or both were inescapably (or even probably) contrary to her pursuit of a criminal conviction.

369.    *Implications* were worthless to Skoshi Thedford Farr, in defense of her constitutional rights.

370.    *Implications* are altogether inadequate to protect Stilley's constitutional rights.

371.    Government lawyers including but not limited to O'Reilly have a legal and ethical duty to speak, sufficiently to ensure that this Court has a factually accurate record upon which to rule.

372.    Following is the docket entry for the Judgment and Commitment Order in ***Farr I***:

> 08/08/2007    67    JUDGMENT & Commitment as to Skoshi Thedford Farr (1), Count(s) 1, Dft found not guilty on count 1; Count(s) 2, Dft sentenced to custody of Bureau of Prisons for a term of 30 months; Supervised Release 3 years; Dft ordered to pay restitution in the amount of $72,076.21; S/A fee $100.00 due immediately;. Signed by Judge Stephen P. Friot on 8/8/07. (hm, ) (Entered: 08/08/2007)

373.    Following is the docket entry for the Judgment and Commitment Order in ***Farr II***:

> 10/28/2011    88    JUDGMENT & Commitment as to Skoshi Thedford Farr (1), Count(s) 1, Dft sentenced to custody of Bureau of Prisons for a term of 33 months; Supervised Release 3 years; Dft ordered to pay restitution in the amount of $72,076.21; S/A fee $100.00 due immediately. Signed by Honorable Stephen P. Friot on 10/28/11.

(hm, ) (Entered: 10/28/2011)

374.     On information and belief, this District Court, Stephen P. Friot, sentenced Skoshi

Thedford Farr to an extra 3 months in prison as retaliation for putting up a valiant fight.

375.     On information and belief Skoshi Thedford Farr was subjected to punishment and

retaliation for her exercise of the 1ˢᵗ Amendment right of peaceful petition, right to trial by jury,

etc.

376.     This Court has refused and neglected to ensure that Stilley's quarrel is with his ***adversary***,

and not with his ***judge***.

377.     Any sentence over 10 years is *not available* consistent with well established law.[3]

378.     O'Reilly's fall-back to 18 USC 3553(a) (in response to Stilley's FSA motion) is

balderdash, a tacit admission that he has nothing left except to scurry away from the disinfectant

of sunlight.

379.     Docket 254 is Stilley's five page motion for transcript at public expense filed 12-1-2009.

Docket 255 is Stilley's five page brief in support filed the same day.

380.     The government filed no opposition.

381.     Docket 278 is the Court's denial of the motion 1-12-2010, some six weeks later.

382.     The Court's order denied the motion for 3 stated reasons.

383.     First the Court says there is no statutory authority saying that the government must pay

for transcript.

384.     Second, the Court complains of no specific, current information showing indigency.  The

---

[3]     None of the counts of conviction are valid.  Defendant Stilley focuses on Count 4 because it is easiest to prove, to a lay person, that Stilley cannot possibly be guilty of Count 4.

Court commented that it had received reliable information that Stilley has recently solicited funds for his defense.

385.    Third, the Court claims the motion is premature because the defendants haven't been sentenced.

386.    All three of these claims are totally frivolous and wholly without merit.

387.    If the Court's third objection is valid, there is no logical basis for any subsequent motion. *Indigent* defendants just aren't entitled to the benefit of transcripts for *sentencing*.

388.    Unless Stilley chooses to argue *with* the judge who will soon sentence him to prison, he is stuck with that ruling, whether or not it makes sense or agrees with the case law.

389.    This Court has forced Stilley to argue *with* the judge, rather than *before* the judge, or else lose arguments and legal rights.

390.    It is impossible to do this *effectively* without inflaming the passions of the judge.

391.    This District Court's decision regarding transcripts was altogether contrary to published official policy for federal courts.

392.    The manual of official policy for federal courts, on these issues, is found at

https://www.uscourts.gov/sites/default/files/vol_07.pdf

393.    This information was straight under

https://www.uscourts.gov/rules-policies/judiciary-policies/criminal-justice-act-cja-guidelines

394.    Certain relevant parts of the official policy are set forth below:

> §       320.30 Transcripts
> §       320.30.10 Authorization and Payment
> ..................
> (b)     In a direct appeal in a case in which counsel is assigned under the CJA, **neither the CJA nor 28 U.S.C. § 753(f)** requires the signing of a **pauper's oath** or certification by the court that the appeal is not frivolous in order to obtain a transcript.

(Emphasis added)

395.    The statutory authority is set forth within policy statements prepared specifically for the use of federal judges.

396.    District Judge Stephen P. Friot was confirmed by the US Senate November 6, 2001, and has the services of a well educated and well trained staff.  If the Court felt the need for research and a statutory citation, he could have promptly requested same.

397.    Furthermore, some 40 days prior to the start of Stilley's trial, this District Court cited the correct statute, 28 U.S.C. § 753(f), in *Holly v. United States*, 2009 U.S. Dist. LEXIS 85203 (Stephen P. Friot, Sept. 17, 2009).  This is not the only prior case in which this District Court has cited this statutory provision.

398.    The idea that this District Court may have honestly and innocently forgot this citation to authority it had previously cited on multiple occasions is not reasonable or credible, especially without evidence, even more so without evidence of rectifying the error upon complaint.

399.    The specific information about authorization or payment for transcripts is easy to find by a search for the word "transcript" or "transcripts."

400.    The published official policy of the US federal court system is diametrically opposed to both the Court's stated rationale for denying an early transcript, and also to case law cited by Stilley, which made it clear that no fair system makes justice dependent upon a defendant's wealth.

401.    This Court's ruling rendered Stilley's access to justice entirely dependent upon wealth, which this Court knew Stilley did not possess.

402.    In fact the government got all the transcripts they wanted, but did not share them with the

defense.

403.     As a result Stilley was forced to "fly blind" at sentencing.

404.     The Court had already appointed standby counsel under the CJA, for both defendants.

405.     The complaint about the lack of proof of indigency was totally frivolous and wholly without legal merit.

406.     The complaint about the lack of citation to authority was likewise totally frivolous and wholly without legal merit.

407.     This District Court accepted what amounts to *ex parte* testimony about Stilley's efforts to get money to defend his liberty.

408.     The District Court has never identified this supposed witness or permitted any cross examination or other challenge.

409.     The District Court raised these arguments only after "burning the clock" for some 6 weeks.

410.     After Stilley was safely in jail, (with a "separatee order" so Stilley and co-defendant Lindsey Springer couldn't help each other) and thus deprived of the essentials necessary for due process, both the District Court and Charles O'Reilly practically fell over themselves in agreeing that transcripts for the defendants should be ordered, at public expense.

411.     Springer on 4-29-2010 filed a motion for transcripts (Docket # 343) with no citation to authority at all, and a bare-bones statement of poverty.

412.     O'Reilly sprang to action the very next day, generously supplied the missing statutory citations, and stated that he had no objections to transcripts at public expense.

413.     The cited statutory authority *just happened* to be *exactly that authority* found in the

policy manual previously cited, to which this District Court had ready access, plus 18 USC

3006A, under which the District Court had already appointed CJA standby counsel in this case,

and therefore had to know about.

414.     On that very day this District Court granted the motion.  Docket # 351.

415.     This feigned generosity was solely because the defendants were *de-fanged*.

416.     Both this Court and O'Reilly were confident that neither defendant would get the

essentials for a competent defense, prior to release from custody and termination of the right to

collaterally attack pursuant to 28 USC 2255.

417.      Both were right - save for the First Step Act, covid-19, and home confinement.

418.     Neither O'Reilly nor the District Court could, at the time, foresee that Stilley might get

the wherewithal to effectively advance his legal arguments, prior to the termination of official

detention.

419.     After going to prison, Stilley's wife sent his docket and docket items that Stilley had used

up through sentencing.

420.     These docket items were returned to Stilley's wife by the DOJ-FBOP.

421.     Stilley was not even given his due process right to object to the failure to deliver this

package.

422.     The failure to get the capabilities necessary for due process certainly was not for lack of

trying.  Stilley spent over 400 days in SHU (Special Housing Unit, or jail for the prison) on

hunger strike, mostly either directly or indirectly over his claim of rights of due process, 1st

Amendment peaceful petition, etc.

423.     Stilley has been force fed with a nasogastric tube 8 times, and threatened with it many

more times.

424.   Stilley has used up literally reams of paper, trying to get the "keys to the courthouse."

*Stilley v. Garland*, 5ᵗʰ Circuit #21-60022, remains pending.  Here's the official record, but

forewarned that it is 668 pages, and more than 17 megabytes despite compaction and

optimization.  It takes a while to download.

425.   This Court has stated that "I hesitate to make harsh findings without

very satisfactory evidence."   Sent. TR 411

426.   Yet this Court has stated that, despite unrebutted proof that all or virtually all the factual

foundation for the "points" for sentencing is undeniably false, it has seen nothing to ***soften*** its

view of Stilley.  Dkt. #700

427.   This can be rationally explained only by the conclusion that this Court is basing its

decisions not on facts, but rather on malice and hatred against Oscar Stilley.

428.   This Court's decision in Stilley's motion under the First Step Act of 1998, 18 USC

3582(c), (FSA) held that the FSA did not allow a challenge to an inmate's conviction or

sentence.  Dkt. 700

429.   Assuming the truth of this argument, the result would not have changed if this Court had

ordered the government to respond to the factual claims of the motion and brief, admitting those

for which the government does not have a legally arguable basis to challenge.

430.   Stilley asked for as much, in his motion and brief, and proposed order.

431.   Specifically, Stilley asked this Court to get an accurate record, and then rule.

432.   This Court declined.

433.   On the basis of the Court's legal ruling, the Court could have gotten an accurate record,

and still denied the motion to reduce Stilley's sentence.

434.    On information and belief, this was not done because both the Court and the government

know that, at the very minimum, not a single felony count of the indictment can possibly survive,

when analyzed in the context of an honest and accurate record.

435.    Under the civil rules, both then and now, failure to respond may be construed by the court

as an admission of the truth of the factual allegations made, or of the claims made.

436.    Stilley's allegations have the ring and the marks of truth, yet this District Court refuses to

give them credit even when the government ignores them.

437.    The District Court has thus converted itself into an instrument of the prosecutors of this

case, incapable or unwilling to engage in impartial and disinterested consideration of the

arguments of defendants in this case.

**END OF PARAGRAPH 12, GROUNDS FOR RELIEF**

13.    Is there any ground in this motion that you have not previously presented in some federal

court?  If so, which ground or grounds have not been presented, and state your reasons for

not presenting them:

**RESPONSE:** Stilley takes the position that he has preserved all of the claims herein

sufficiently for appellate review, to the extent that preservation was reasonably possible.  Stilley

also takes the position that none of the claims herein are barred by res judicata or collateral

estoppel.  Stilley has been denied his right to one direct appeal.  If the government thinks that

Stilley either has not presented any claim at a time when Stilley was legally required to present

the claim in order to raise it in this motion, or that a claim has been decided under terms that bar

Stilley from a legal challenge under 28 USC 2255, they should raise that defense, set forth the

facts in numbered paragraphs, and argue them.

The government is invited to shoulder its burden of attacking grounds numbered 7, 10, and 11 on the basis of an argument of failure to previously present same, as soon as the government responds to every numbered allegation in this motion, numbered paragraph by numbered paragraph.  This invitation should not be construed as a claim that the government cannot attack other numbered grounds on this basis, if they feel that such an attack is justified. Nor should this be deemed a concession, of any kind, as to the mentioned grounds.

The government should note court-ordered "cut-off dates" for dispositive motions, which came prior to the government's advancement of brand new theories.  Perhaps they can help Stilley, the District Court (whoever that may be) and the public understand how Stilley had any duty to raise a claim based upon facts not even disclosed prior to the dispositive motion "deadline" of 2-1-2010.

Interesting indeed that the government would trot out the brand new theory of ***theft*** almost 2 weeks after the "dispositive motion deadline" set forth on page 2 of Dkt. 290.   While the government seeks to avail itself of a technical defense of failure to previously present a ground for relief, perhaps the government can explain how Stilley was supposed to have prescience to see that the government would abandon its ***garbage theories***, and manufacture a brand new (but equally fraudulent) theory of criminal liability, conveniently after the time Stilley is allowed to raise dispositive motions.

Stilley continues to reserve his right to the one direct appeal to which he is entitled, and also reserves all other legal rights to which he is fairly entitled.  To the extent Stilley was supposed to raise issues on direct appeal, Stilley expects the government to explain a ***lawful***

reason they stomped out Stilley's ability to appeal using ***his own property and rights to property***.
Stilley also expects an explanation of how they get to raise a technical defense, despite the fact
that they've made a complete mockery of their duties to incarcerated persons, as laid out in
caselaw from the US Supreme Court on down.

14.      Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in

any court for the you (sic) are challenging?


       (1)      Yes              **(2)**      <u>**No**</u>

          If "Yes," state the name and location of the court, the docket or case number, the

          type of proceeding, and the issues raised.

15.      Give the name and address, if known, of each attorney who represented you in the

following stages of the judgment you are challenging:

      (a)      At the preliminary hearing: Terry Weber?   The docket indicates such, need the
transcript so as to refresh recollection as to what really went down.  It does not appear
that this hearing was transcribed.

      (b)      At the arraignment and plea: Pro se with Charles Robert Burton, IV as standby

      (c)      At the trial: Pro se with Charles Robert Burton, IV as standby

      (d)      At sentencing:  Pro se with Charles Robert Burton, IV as standby

      (e)      On appeal: Stilley was denied his right to one direct appeal.

      (f)      In any post-conviction proceeding: No prior proceedings.

      (g)      On appeal from any ruling against you in a post-conviction proceeding: N/A


16.      Were you sentenced on more than one court (sic) of an indictment, or on more than one

indictment, in the same court and at the same time?

(1)   Yes          (2)   **No**

(If the intent was to say one *count* of an indictment, Stilley was sentenced on three counts

of a *purported* indictment.)

17.   Do you have any future sentence to serve after you complete the sentence for the

judgment that you are challenging?

(1)   Yes          (2)   **No**

(a)   If so, give name and location of court that imposed the other sentence you will

serve in the future:

(b)   Give the date the other sentence was imposed:

(c)   Give the length of the other sentence:

(d)   Have you filed, or do you plan to file, any motion, petition, or application that

challenges the judgment or sentence to be served in the future?

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year

ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255

does not bar your motion.*

**PLEASE NOTE:** This section is numbered seriatim after the last number in paragraph 12.  This

was done because Stilley expects the government, in responding, to forthrightly and honestly

either admit or deny each of these paragraphs, paragraph number by paragraph number.

438.   The US Department of Justice (DOJ) has engaged in a systematic, years long scorched

earth campaign against Defendant Stilley, starting no later than 2004 and continuing at least until

Defendant Stilley's incarceration 4-23-2010, for the purpose and with the effect of ruining

70

Defendant Stilley's ability to effectively defend criminal charges.

439.    Only through these attacks on Defendant Stilley's economic foundation did Defendant Stilley find himself incapable of procuring all the transcripts in this case, at his own expense, in time to prepare a creditable appeal brief as to issues of liability, before being sent to prison.

440.    This Court by delaying the production of the transcripts rendered Stilley utterly incapable of preparing a *competent* appellate brief, as to liability or as to punishment or as to both.

441.    This Court by delaying the production of the transcripts rendered Stilley utterly incapable of preparing a an appellate brief *in compliance with the published rules*.

442.    Stilley places a high value on published rules, and claims the *legal right* to comply with them, over any supposed excuses for failure to so comply.

443.    In sum and substance, and without limitation whatsoever, on this particular issue Stilley claimed the right to freedom from interference with the right to possess and reasonably use his own property and rights to property, in order to prepare not only the pleadings for the one direct appeal to which Stilley was entitled by law, but also with respect to any other proper legal matters that might call for research, writing of legal papers, etc.

444.    Any claim that Stilley would not have prepared a brief that solidly demonstrated the reversible errors laid out in this pleading (up to his word limit) is utterly implausible and incredible.

445.    The idea that Stilley would do the work necessary to expose the fraud, corruption, and incompetence that caused his lawless incarceration, more than ***11 years after*** being locked up, but would not do it ***within the originally permitted time***, (considering all authorized extensions) absent invidious obstruction of his constitutional rights,  is utterly incredible and unreasonable.

446.    Stilley has at all times exercised best efforts to vindicate his right to one direct appeal of his criminal conviction.  This best efforts continues to the present time.

447.    Any lawyer attempting to prepare an appellate brief without reviewing the record, utilizing the record, and citing to the record, would be *ipso facto* (inherently, by definition) committing legal malpractice.

448.    The actions of the parties responsible for the incarceration of Defendant Stilley have effectively denied Defendant Stilley his right to one direct appeal, up until the present time.

449.    The government and the District Court worked together to stomp out Stilley's ability to appeal.  Stilley hasn't been allowed the one direct appeal to which he is entitled.

450.    The 10th Circuit Court clerk never called anything filed by Stilley an opening brief. Stilley was duty bound to adopt his co-defendant's brief in order to avoid waiver.  Stilley's right to adopt a co-defendant's appellate brief is independent of his right to file his own appeal brief.

451.    Stilley claims all legal and equitable rights reasonably arguable upon the facts set forth in this and other pleadings in this litigation and related litigation.

452.    Therefore Stilley would argue that his conviction has not yet become "final" within the legal meaning of the term in 28 USC 2255, even though the 10th Circuit has issued its mandate. However, it is probable that Stilley's political enemies will expect some explanation in this section.

453.    Stilley respectfully demanded his right to one direct appeal, with access to his own property and rights to property, sufficient for an attorney to prepare a competent and creditable appeal brief.  Stilley has persisted in that claim from verdict to the present time.

454.    Nobody has ever explained how anyone can be expected to prepare a competent appeal

brief without a record consisting of literally thousands of pages of text.  This is what was demanded of Stilley.  No human being, not even the smartest and most capable man living, can do such a thing.

455.    Stilley filed a motion to compel the government to cease its invidious interference with his right to appeal, and other remedies to which he was entitled.  Stilley complained of the fraud practiced upon him, which rendered his administrative remedies "unavailable" within the legal meaning of the term.

456.    The DOJ-FBOP had made the administrative remedy system "unavailable" to Stilley, by deceit, trickery, and corrupt practices.

457.    This District Court refused to order the government to allow Stilley access to his own property and rights to property, sufficient to prepare a competent and creditable brief.  The District Court grounded its decision on Stilley's alleged failure to exhaust administrative remedies.

458.    Stilley continues to litigate the denial of access to his property and rights to property, necessary for an appellate brief that would not be so substandard as to expose an attorney to liability for malpractice.  Litigation is under way at the present time.  See *Stilley v. Garland*, 5th Cir. 21-60022.

459.    On 02/24/2011 Stilley filed Dkt. 443,  MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances.

460.    On 03/14/2011 the government filed a response to 443.  Dkt. 444

461.    On 04/18/2011 Stilley filed a REPLY to Response to said Motion.  Dkt. 454

462.    On 04/20/2011 Judge Friot entered an Order denying the motion on grounds of failure to exhaust administrative remedies.

463.    Stilley in his briefings complained that the DOJ-FBOP had simply stonewalled his efforts at administrative remedies, for some 8 months.

464.    In the aforementioned case of *Stilley v. Garland et al*, the government took the position that out of more than 50 administrative remedies attempted over a period of some 10 years, Stilley had not exhausted a single remedy.

465.    This claim was made despite the fact that in other litigation the government had claimed that Stilley had in fact exhausted a single administrative remedy.

466.    The allegation that Stilley was incapable of exhausting a solitary administrative remedy, out of more than 50 attempts, merely proves that the DOJ-FBOP administrative remedy system is a pure unadulterated fraud.

467.    Denial of Stilley's motion implies that he has a right to exhaust remedies, without suffering any prejudice for the time that the exhaustion process might take, along with any time necessary to fully litigate an unacceptable result from the administrative process.

468.    The 10th Circuit's affirmance in the criminal appeal by Springer was entered 10-26-2011.

469.    Due process requires that the District Court re-sentence Stilley without the perverse influences of known false findings of fact in the record.

470.    Upon the entry of said judgment, this District Court has the power to authorize Stilley to appeal, and furthermore to specifically authorize Stilley to raise and argue any issue that he could have raised if he had been allowed to remain free pending appeal, so as to properly litigate the

issues to the extent of his abilities and available resources.

471.    Stilley's decade (and more) in prison was devoted to attempting to get "keys to the courthouse" to litigate his claim that he has been denied due process, by being denied access to those things indispensable to a creditable appeal.

472.    Stilley is currently litigating these issues in *Stilley v. Garland* et al, 5th Cir. 21-60022.  See Stilley's opening brief, as well as his reply brief.  The government, in its response brief, claims that in a decade, with more than 50 administrative remedy attempts, Stilley has exhausted exactly *none*.  That's an absurd and fraudulent conclusion, and proves the insecurity of the government with respect to the conviction and punishment of Stilley.

473.    Stilley's wife sent his docket and docket items to Stilley at FCC Forrest City Low - they were returned to her by the DOJ-FBOP without even giving Stilley his due process right to object.

474.    The failure to get the capabilities necessary for due process certainly was not for lack of trying.

475.    Stilley spent over 400 days in SHU (Special Housing Unit, or jail for the prison) on hunger strike, mostly either directly or indirectly over his claim of rights of due process, 1st Amendment peaceful petition, etc.

476.    Stilley has been force fed with a nasogastric tube 8 times, and threatened with it many more times.

477.    The DOJ-FBOP perverted medical personnel from their lawful purposes of practicing the healing arts, into tools to coercion.

478.    This was done to effectuate a harsh force feeding, to try to intimidate Stilley so as to

break Stilley from his habit of hunger striking.

479.     They rammed the tube down without water, (while Stilley frantically pleaded for water) hit Stilley's throat latch, ran the tube out of his mouth, then pulled it back and put it down Stilley's throat.

480.     Then they destroyed the videotape of the procedure, so as to deny Stilley useful evidence of their abuse and misuse of medical personnel and procedures.

481.     Of course they denied the real reason for destroying the videotape, and refused to disclose the name of the person(s) who ordered the destruction or participated in it.

482.     Stilley has been trying, unsuccessfully, to get his medical record from the DOJ-FBOP.

483.     Stilley's medical records would show the lengths to which Stilley's persecutors were willing to go to try to make Stilley shut up and accept the destruction of his due process rights, and quit trying to get the wherewithal for a competent appeal.

484.     That's approximately 3,000 pages of documentation Stilley's adversaries don't want this Court (or the world) to see.

485.     Stilley has used up literally reams of paper, trying to get the "keys to the courthouse." *Stilley v. Garland*, 5th Circuit #21-60022, remains pending.

486.     Here's the official record, but be forewarned that it is 668 pages, and more than 17 megabytes despite compaction and optimization.  It takes a while to download.

487.     Stilley incorporates the record and briefing of *Stilley v. Garland, et al*, as if set forth herein word for word.  Furthermore, Stilley incorporates all other parts of this motion, as well as the entire criminal record, into this part, as if set forth word for word.

488.     Neither the government nor the District Court honestly believed that Stilley was guilty of

any crime.

489.     To the extent they harbored any such delusions at the outset, they knew better at least by the first week of trial.

490.     Stilley is actually innocent of all three counts of which he stands convicted.  That's why both the government and the District Court engaged in plainly unlawful attacks on his litigating capabilities.

491.     The statute of limitations in 28 USC 2255 is a scam engineered by the mighty US Department of Justice, foisted upon Congress, and used so as to cheat innocent persons out of due process.

492.     They waste the time and money of destitute individuals, litigating limitations, so as to dodge serious legal questions.

493.     The DOJ is estopped to rely upon the statute of limitations in 28 USC 2255, due to their cruelty and abuse aimed at destroying the due process rights of those in the custody of their subsidiary the DOJ-FBOP.

494.     If they want to be allowed to plead limitations, they have a duty to stop their abuses designed to render the first year of incarceration worthless or nearly so, for purposes of litigating serious issues involving amongst other things liberty interests.

495.     The DOJ has crushed educational opportunity in federal prisons, precisely because educational equipment and supplies are dual use technologies.

496.     Educational equipment and supplies allow quality educational opportunities and results, but they *also* allow innocent people (however many or few) to get out of prison, and allow inmates to reduce excessive and illegal sentences.

497.    Virtually everything in federal prison has been degraded so as to render in worthless, or nearly so, for the vindication of due process rights.  "Cut and paste" is disabled on *everything* to which inmates have access, for legal work.  Inmates are routinely forced to work over an hour for enough money to spend 3 minutes on a garbage substitute for a word processor.

498.    Legal opinions most useful to inmates are hidden, so they can be found only with work-arounds.

499.    Much money is spent to create the appearance but not the reality of usable legal research software.

500.    Stilley has offered to donate 10 computers, software, support, printers, office equipment, office supplies, etc.

501.    Stilley gets acknowledgment of receipt, but no substantive response.

502.    Stilley has helped approximately 10 other persons do the same.  All get the same response - a deafening silence, in the face of a duty to speak.

503.    Charles O'Reilly, who presented the false, fraudulent, and perjured "evidence" complained of herein, has an ethical duty to correct the record, and to support Stilley's efforts at justice.

504.    Supporting efforts at justice don't include efforts to evade a decision on the merits, through limitation or other technical claims.  Let us see if O'Reilly once again tosses his ethical duties out the window.

505.    Let us see if the government wishes to defend on grounds of limitations, despite all the cruelty and abuse heaped upon Stilley, designed to snuff out his ability to appeal or otherwise litigate his issues.  Then if the government wants to attack on this theory, how about letting the

parties duke it out, with a decision to be rendered by an impartial judge?

506.     Stilley vigorously objects to the abuse and cruelty heaped upon him, for the claim and exercise of constitutional rights.  A reasonably full rendition of same would render this pleading unduly voluminous.

507.     The District Court said it would be willing to "ameliorate" the impact of incarceration pending appeal.  This matter is quoted and discussed more fully elsewhere in this pleading.  Yet the District Court continued to strategically delay rulings, *sua sponte* advocate on behalf of the government, etc.

508.     If the District Court is truly willing to "ameliorate" the harsh results from its many acts working together with government lawyers to stomp out Stilley's due process rights, it can simply vacate all three of the counts of conviction.  They are all pure garbage, total frauds ginned up by a near total abandonment of the fundamentals of due process.

509.     If anything is left of the conviction when this motion has been litigated, construct an order (which should be expressly agreed by the government) allowing Stilley to have the one direct appeal to which he is entitled, to expressly permitting Stilley to raise and argue any issues anywhere within the entire record.  That is how, at this late date, one might ameliorate the harsh effects of sending a litigant to prison pending appeal.

510.     Stilley relies upon the entirety of this record, and the record in the criminal case, and the record of all civil litigation involving the right of reasonable access to the courts.  It is impossible to lay out all the crimes and abuses against Stilley, in this one section.  In order to get a fair understanding of the lawlessness committed against Stilley, it is necessary to read this entire motion and study the materials referenced in this motion.

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:  A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of

> (1)     the date on which the judgment of conviction became final;
> (2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
> (3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

WHEREFORE, Defendant Stilley respectfully requests that this Court enter judgment as a matter of law, striking the indictment and acquitting Defendant Stilley of all charges; alternatively for an amended order which includes no confinement or punishment whatsoever, in excess of that authorized by Congress in light of the law and facts as shown in this case; alternatively for a judgment and commitment order for incarceration not to exceed "time served;" at a proper time, for a final appealable order and/or judgment expressly acknowledging Defendant Stilley's right of appeal, to include any attack on the original or any subsequent judgment and commitment order, and upon any prior order whatsoever; for express permission and right to appeal any adverse part of this Court's decision whatsoever; and for such other, further, or different relief as may be appropriate, whether or not specifically requested.

## VERIFICATION

Defendant Oscar Stilley by his signature below pursuant to 28 USC 1746 declares under penalty of perjury that the foregoing facts are true and correct.

Respectfully submitted,

By: /s/ Oscar Stilley                          September 1, 2021
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system.  The government has

concealed Lindsey Springer from Oscar Stilley, probably partly because Springer is a material

witness, and partly because Springer could materially assist in this motion.  Thus Stilley cannot

serve Springer with a copy of this pleading.