IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                                        Case No. 4:09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY                                                                  DEFENDANTS

**DEFENDANT OSCAR STILLEY'S VERIFIED MOTION TO QUASH GARNISHMENT AND ORDER RETURN OF SEIZED FUNDS**

Comes now Defendant Oscar Stilley (Stilley) and for his verified motion states:

**I.      THE GOVERNMENT'S CLAIM**

1.      The government on 10-26-2021 filed "Plaintiff's Ex Parte Post-Judgment Continuing Writ of Garnishment." Dkt. 717.

2.      Stilley at page 14 of Dkt. 717 was informed that he had a right to file written objection or claim of exemption within 20 days of receipt of a copy of the Garnishee's answer.

3.      The Garnishee filed answer on 11-04-2021. Dkt. 718. Stilley received a copy the same day, via CM/ECF. Therefore this claim of exemption or objection is timely.

4.      The judgment against Stilley, which the government seeks to enforce, was procured by perjury.

5.      The judgment against Stilley, which the government seeks to enforce, was procured by fraud.

6.      The judgment against Stilley, which the government seeks to enforce, was procured by false testimony.

7.      The judgment against Stilley, which the government seeks to enforce, was procured by

wilful, malicious denials of due process.

8.     The government has seized the 2020 federal tax refund of Stilley, in the amount of $1,065.

9.     The Financial Litigation Unit of the US Attorney's Office for the Northern District of Oklahoma still has the said tax refund in its possession, and could return it to Stilley, the rightful owner, if so ordered by this Court.

10.    The government also claims the right to take 10% of Stilley's non-exempt pay, which at Stilley's current wages amounts to $48 per standard pay period of 80 hours in two weeks.

11.    The government prosecuted Stilley on 4 theories none of which were consistent with the other.

12.    Stilley was sentenced on the basis of a theory utterly inconsistent with the theory of the purported indictment, or the government's theory at trial.

13.    The government denied Stilley the basics necessary to the production of the opening brief, for the one direct appeal to which he is by law entitled.

14.    On information and belief, Judge Stephen P. Friot engaged in ex parte communications with Charles Anthony O'Reilly, special prosecutor, with the purpose and effect of preventing Stilley from having access to the wherewithal to prosecute the one direct appeal to which he is entitled.

15.    On information and belief, Friot and O'Reilly engaged in ex parte communications on various occasions, to deprive Stilley of due process.

16.    The government knowingly and willfully forced Stilley to default on his appeal, by failing to file his opening brief.

17.     The government relegated Stilley to adopting the opening brief of his co-defendant, Lindsey Kent Springer.

18.     Therefore, Stilley suffered a de facto default judgment, in Stilley's appeal, United States v. Stilley, 10th Cir. 10-5057; see *US v. Springer*, 444 Fed. Appx. 256 (10th Cir. 2011)

19.     Stephen P. Friot struck Stilley's motion for judgment as a matter of law, or for new trial, (JAML) on grounds that it was over length.

20.     Stephen P. Friot struck Stilley's JAML on the grounds that the motion was so argumentative that it was, *de facto*, part of the brief.

21.     Stephen P. Friot added the pages of the motion to the pages of the brief, determined that the combined pages exceeded the amount allowed by the local ***civil*** rules, and therefore struck **both** pleadings.

22.     Stephen P. Friot did this because he knew that Stilley was innocent, and that there were no words that he could put on paper, that would justify holding Stilley criminally liable, under the purported indictment.

23.     This constitutes yet another default, forced upon Stilley for the most spurious and lawless of reasons.

24.     This is far from an exhaustive list of the defaults into which Stilley was forced, due to the lawless activities of his adversaries.

**II.     THE GOVERNMENT PRESENTED BOTH PERJURED TESTIMONY, AND FALSE TESTIMONY NOT NECESSARILY RISING TO THE LEVEL OF PERJURY, IN ORDER TO GET THE JUDGMENT AGAINST STILLEY.**

25.     The government presented utterly inconsistent allegations of taxes evaded, in trial as opposed to at sentencing.

26. The testimony and evidence presented by the government at sentencing was necessarily perjurious.

27. The government presented other false evidence, not necessarily arising to the level of perjury, in order to procure the judgment they now seek to enforce.

28. All the government lawyers involved in this case have been informed of the perjurious or merely false evidence, and of their ethical duties to correct same.

29. All such lawyers have neglected and refused to perform their ethical obligation to report such false testimony to the proper authorities.

30. Stilley has exerted much effort in pursuit of an honest record in his criminal case, OKND 4:09-cr-43.

31. Even if Stilley loses the challenge to the garnishment at issue, Stilley most respectfully requests that his loss be made and recorded on the basis of an honest record.

**III.   STILLEY WAS BOUND BY CRIMINAL AND CIVIL LAW, AND BY ETHICAL RULES, TO PERFORM THE ACTS FOR WHICH HE NOW STANDS CONVICTED AND ORDERED TO PAY MONEY TO THE UNITED STATES.**

32. Count 4 of the purported indictment involved a transfer of money from Patrick Turner to Lindsey Springer, in 2005.

33. There is no evidence in the record that Stilley knew about the plan to original plan to loan or gift $250,000 from Turner to Springer, until after all such funds had been disbursed from Defendant Stilley's account.

34. Stilley was in fact told and in fact believed that Turner's money was being wired for the purpose of retaining Stilley's legal services in a pending federal criminal tax investigation, and subsequent criminal proceedings if any.

35. Within scant days after receipt of the money from Pat Turner, Defendant Stilley was told that the criminal proceedings had been terminated, that the money had been loaned to Springer, and that Stilley should pay out the money pursuant to the directive of Springer.

36. Defendant Stilley, at all times relevant to this litigation, believed the representations made in the foregoing paragraph.

37. Defendant Stilley was bound by his oath as an attorney not to refuse the cause of Turner, for reasons personal to himself.

38. Stilley, a former Arkansas attorney, was disbarred in part for allegedly violating his oath of office.

39. Punishing an attorney for adherence to the attorney oath of office is necessarily unlawful.

40. Defendant Stilley was duty bound to pay over the money in his IOLTA account to the "person entitled" to the money.  Thus Stilley cannot possibly be guilty of count 4.

41. Count 3 involved a transfer of money from Stilley's IOLTA account to Eddie Patterson, in the year 2003.

42. Eddie Patterson instructed Stilley to make the transfer.  Therefore, Stilley had an ethical duty to transfer the money.

43. Therefore, pursuant to the Court's jury instructions, Stilley could not possibly be guilty of Count 3 or 4.

44. Since Count 1 conspiracy hangs on the thread of counts 3 and 4, as to Stilley, he can't be guilty of Count 1 either.

45. The District Court sua sponte struck Stilley's consolidated motions for judgment as a matter of law (JAML) and new trial, despite stating the knowledge and belief, in other opinions

and orders, that such a sua sponte motion violates due process.

46. The US Department of Justice (DOJ) has engaged in a systematic, years long scorched earth campaign against Stilley, starting no later than 2004 and continuing at least until Defendant Stilley's incarceration 4-23-2010, for the purpose and with the effect of ruining Defendant Stilley's ability to effectively defend criminal charges.

47. Only through these attacks on Stilley's economic foundation did Stilley find himself incapable of procuring all the transcripts in this case, at his own expense, in time to prepare a creditable appeal brief as to issues of liability, before being sent to prison.

48. The actions of the parties responsible for the incarceration of Stilley have effectively denied Stilley his right to one direct appeal, up until the present time.

49. Stilley has persisted with every reasonable effort to exhaust administrative remedies, and take every other necessary action, in order to vindicate his right to one direct criminal appeal, at the earliest practicable time.

50. Lindsey Kent Springer tendered to proper federal authorities, in good faith, prior to April 15, 2006, sufficient information from which the IRS could compute and assess a tax against Lindsey Kent Springer for the year 2005.

51. Said tender of information constituted a "tax return" within the meaning of applicable case law, including but not limited to the decision in this case.

52. Nevertheless the government also seized the books and records of Lindsey Kent Springer, prior to April 15, 2006.

53. Therefore, the government did indeed procure information, both voluntarily and by distraint, which by operation of law constitutes a return, on the part of Springer, both from

Springer's mouth and Springer's personal property, papers, and records.

54. A review of the record reveals that the purported indictment in this case was never returned in open court.

### IV. STILLEY IS ENTITLED TO RAISE AND LITIGATE THE CLAIMS SET FORTH HEREIN.

55. To the extent not prohibited by law or rule, or disapproved by the Court, Stilley incorporates [Docket # 701](), a motion pursuant to 28 USC 2255, a pleading filed in the cause from which this enforcement action arises, namely US v. Springer & Stilley, OKND 4:09-cr-43.

56. This pleading is 81 pages in length, and made by Stilley under penalty of perjury.

57. The government obtained "dismissal" but did not admit or deny the paragraph by paragraph allegations of that motion.

58. The docket items in OKND 4:09-cr-43 by themselves exceed 7,000 pages.

59. The case also involved approximately 4,000 pages of transcript. Appellate and ancillary litigation documents make it impractical to recreate all pertinent portions of the record, in this case.

60. Amongst the documents made available for ready reference are a [Timeline](), 58 pages in length, which cites extensively both from transcripts and pleadings, to assist interested parties in understanding what happened, and when.

61. Stilley is sensitive to the fact that this litigation is ancillary to a complex criminal case, and hopes to limit his use of judicial and litigation resources, to the extent that he can do this without compromising his due process rights.

62. Stilley includes links within his brief and sometimes also within linked documents, for

the convenience of the Court and counsel. If these links are flattened out of the document, or otherwise rendered unusable or less usable, Stilley will make all reasonable efforts to make such information conveniently available to the Court, opposing counsel, and the public.

### V.  STILLEY IS WILLING TO MAKE COMPLIANCE WITH OBLIGATORY ETHICS REPORTING REQUIREMENTS EASY.

63.     Both Arkansas and Oklahoma require lawyers who know of significant ethical breaches by other attorneys, to report such misconduct to bar disciplinary authorities.

64.     Stilley was prosecuted primarily by a Special Assistant US Attorney, (Special AUSA) named Charles Anthony O'Reilly, California Bar # 160980.

65.     Stilley being sensitive to the time and effort ordinarily required for such ethical duties, is in the process of preparing a bar complaint against Charles Anthony O'Reilly, who engineered the frauds that resulted in Stilley's conviction, and especially in forcing him into repeated defaults, whereby Stilley has thus far been unable to overturn a completely corrupt and fraudulent judgment.

66.     Stilley is willing and able to do all the administrative work, and keep all complaining parties well informed, so that doing those things required by attorney ethical rules, personal honor, and professional integrity, is very easy.

67.     Attorneys who wish to complain about part but not all of those things set forth by Stilley, are of course invited to make whatever complaints, to whatever authorities, that they believe to be sufficient to satisfy their ethical obligations.

68.     On information and belief, Charles Anthony O'Reilly is the only California licensed attorney involved in this litigation or the predicate criminal case.

69. US Probation in the OKND criminal case cited *United States v. Franks*, 723 F.2d 1482 (10th Cir. 1983) for the proposition that "restitution in tax cases shall not be ordered as a condition of probation or supervised release when the amount of tax loss has not been acknowledged, conclusively established in a criminal proceeding, or finally determined in a civil proceeding."

70. The amount of tax loss involved in this case has not been acknowledged, conclusively established in a criminal proceeding, or finally determined in a civil proceeding.

71. On October 26, 2021, Stilley was led to believe that part of the money seized from him will be given to Oklahoma state tax authorities.

72. Stilley has not been ordered to pay any money to Oklahoma state tax authorities. Rather, Stilley and Springer were each individually ordered to pay (admittedly bogus) amounts to the tax authorities of their own respective states. Dkt. 338 pg. 5

73. Stilley is an Arkansas resident, and Springer is an Oklahoma resident.

74. There is no arguable basis for sending any of Stilley's money to Oklahoma tax authorities.

75. Standard statutes and rules require the Financial Litigation Unit of the Northern District of Oklahoma to first pay the State of Arkansas in full (in Stilley's case) before any money is sent to the IRS. See Dkt. 338, pg. 5, which cites 18 USC 3664(i) for this proposition.

76. Although Stilley vehemently objects to all the fraudulent and unethical conduct giving rise to Stilley's judgment and commitment order, he is equally opposed to sending money (if any is sent anywhere except to Stilley) to any entity not statutorily entitled to receive it.

77. The judgment includes $7,901 in restitution that exceeds the amount that could be found

by adding together the alleged liabilities mentioned by Judge Friot at the conclusion of sentencing.

WHEREFORE, Defendant Stilley respectfully requests that this Court quash the garnishment; that this Court order the refund of all moneys seized thus far, including any wages and also including the tax refund; alternatively for a prohibition against sending any money to any entity not specifically identified by the criminal judgment and commitment order against Stilley; and for such other, further, or different relief as may be appropriate, whether or not specifically requested.

**VERIFICATION**

Defendant Oscar Stilley by his signature below pursuant to 28 USC 1746 declares under penalty of perjury that the foregoing facts are true and correct.

Respectfully submitted,

By: /s/ Oscar Stilley                             November 24, 2021
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  Charles O'Reilly and his confederates continue on with their scheme to "hide out" Lindsey Kent Springer, and deny Stilley his witness, together with the opportunity to work together toward common interests.  This is the only reason that Springer is not being served with this pleading.  Stilley vehemently objects to such lawlessness.