IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                      PLAINTIFF

v.                              Case No. 4:09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY                                          DEFENDANTS

**BRIEF IN SUPPORT OF DEFENDANT OSCAR STILLEY'S VERIFIED MOTION TO QUASH GARNISHMENT AND ORDER RETURN OF SEIZED FUNDS**

      Comes now Defendant Oscar Stilley (Defendant Stilley) and for his brief in support of verified motion to quash garnishment and order return of seized funds, and states.

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      PRELIMINARY MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.      **Basis of the government's claim.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.      **Use of links for the convenience of the reader.** . . . . . . . . . . . . . . . . . . . . . 2

      C.      **Efforts to limit required reading.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     THE GOVERNMENT FAILED TO PRESENT EVIDENCE SUFFICIENT TO ALLOW A RATIONAL JURY TO FIND STILLEY GUILTY OF ANY COUNT OF THE PURPORTED INDICTMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.      **Defendant Stilley had no knowledge of any intent to use his IOLTA account to move money from Patrick Turner to Lindsey Springer, until long after all the money had left his account.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.      **The government abandoned the alleged _Grand Jury_ indictment wholesale.**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.    DEFENDANT STILLEY WAS DENIED DUE PROCESS. . . . . . . . . . . . . . . . . . 14

A.      The District Court acted contrary to its own belief and understanding of the law of due process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B.      Defendant was not given fair notice that his conduct may have been construed as illegal, a clear violation of due process. . . . . . . . . . . . . . . . . . . 18

IV.    THE GOVERNMENT OBTAINED ITS JUDGMENT BY THE KNOWING AND WILLFUL USE OF PERJURY, AND ALSO BY FALSE TESTIMONY. . . . . . . . 20

V.     RE-SENTENCING IS REQUIRED DUE TO MISCALCULATION OF TAX LOSS, IMPROPER ENHANCEMENTS, ETC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

A.      The District Court's announced foundation for the sentence. . . . . . . . . . . . 22

B.      This Court included "tax losses" that didn't meet up with this Court's own stated rules and evidentiary standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        1.     Dr. Roberts' trial testimony obliterates the government's theories. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        2.     James Lake only provides additional entertainment. . . . . . . . . . . . . 28

        3.     Patrick Turner's tax loss is the gateway to discarding Count 4. . . . . 30

VI.    THE RESTITUTION ORDER INCLUDES $7,901 TOTALLY UNSUPPORTED BY ANYBODY'S THEORY OF THE RECORD. . . . . . . . . . . . . . . . . . . . . . . . . . 32

VII.   THE GARNISHMENT IS ETHICALLY TAINTED; REMEDIATION IS REQUIRED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# TABLE OF AUTHORITIES

## CASELAW

*Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62, 66-67 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 37

*Brasfield v. United States*, 272 U.S. 448, 449-450, 47 S. Ct. 135, 71 L. Ed. 345 (1926). . . . . . . 22

*Clyatt v. United States*, 197 U.S. 207, 222, 25 S. Ct. 429, 49 L. Ed. 726 (1905). . . . . . . . . . . . 22

*Commissioner v. Duberstein*, 363 U.S. 278, 285, 4 L. Ed. 2d 1218, 80 S. Ct. 1190 (1960) . . . . 18

*Day v. McDonough*, 547 U.S. 198, 209, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006). . . . . . . . . 15

*Grannis v. Ordean*, 234 U.S. 385, 394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hicks v. United States*, 582 U.S. ___, ___, 137 S. Ct. 2000, 198 L. Ed. 2d 718 (2017) (Gorsuch, J., concurring) (137 S. Ct. 2000, 198 L. Ed. 2d 0718) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 32 (1976). . . . . . 31

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

*Silber v. United States*, 370 U.S. 717, 717-718, 82 S. Ct. 1287, 8 L. Ed. 2d 798 (1962) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Conley*, 942 F.2d 1125, 1127-1128 (7th Cir. 1991). . . . . . . . . . . . . . . . . . . . . 18

*United States v. Farr*, 536 F.3d 1174, 1179 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Franks*, 723 F.2d 1482 (10th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Gallup*, 812 F.2d 1271, 1282 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Holly*, 2009 U.S. Dist. LEXIS 95021, 2009 WL 3275087 . . . . . . . . . . . . . 15, 16

*United States v. Ladell Fitzgerald Pace*, **2016** U.S. Dist. LEXIS 182029, *4-5 . . . . . . . . . . . . . 15

*United States v. Mitchell*, 518 F.3d 740 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Patridge*, 507 F.3d 1092, 1094-1095 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . 19

*United States v. Springer*, 2010 U.S. Dist. LEXIS 6906, 2010 WL 419936 . . . . . . . . . . . . . . . 16

*United States v. Stillhammer*, 706 F.2d 1072, 1074-1075 (10th Cir. 1983). . . . . . . . . . . . . . . 19

## STATUTORY AUTHORITY

18 USC 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 USC 3582(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

18 USC 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

26 USC 7201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER AUTHORITY

5 Okl. St. Chap. 1, Appx. 5, Rule 1, *Qualifications to Practice Law in Oklahoma - Oath* . . . . . 33

Ark. R. Prof. Cond. 1.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

FRCrP Rule 52(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

USSG 2T1.1(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

USSG 2T1.1(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

USSG 2T1.9(b)(2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

USSG 2T4.1 (Tax Table) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

USSG 3B1.1(a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

USSG 3B1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

USSG 3C1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

I.      PRELIMINARY MATTERS

A.      Basis of the government's claim.

Defendant Oscar Stilley on 4-23-2010 was sentenced to 180 months of incarceration, consisting of Count 1 - Conspiracy to Defraud the United States - 18 USC 371; Count 3, Tax Evasion for year 2003 (26 USC 7201; Patterson count); and Count 4, Tax Evasion for year 2005 (26 USC 7201; Turner count).[1]   Judge Stephen P. Friot imposed 5 years incarceration on each count, all to run consecutive to the others.   Defendant Stilley since that time has been in the custody of either the US Marshal Service or the Department of Justice-Federal Bureau of Prisons (DOJ-FBOP).

On Count 4, the Turner count, Stilley's co-defendant Lindsey Kent Springer agreed with Patrick Turner to cause $250,000 to be conveyed from Turner to Springer.  This money was first sent to Stilley's IOLTA (Interest on Lawyers Trust Account) account.  Stilley was told and genuinely believed that Turner was simply another client desiring assistance with respect to a federal criminal tax investigation.  This was the "bread and butter" of Stilley's law practice at the time.  Then Stilley was told that the criminal investigation was terminated, and that the money had been loaned to Springer.  Stilley dutifully paid the money over to the "person entitled."

On Count 3, the Patterson count, Stilley's client Eddie Patterson instructed Stilley to pay $90,000 of Eddy Patterson's money to Lindsey Springer.  Stilley followed the requirements of the attorney ethical rules, promptly paying money over to the "person entitled" to the money.

It is difficult to summarize the government's claims, since they morphed and changed based on the evidence, and based on when the defendants annihilated the government's spurious

---

[1]        Sometimes also 18 USC 2.

theories.  The government didn't give up simply because the allegations of the purported indictment were demonstrably false.  The government simply manufactured a new theory every time the defendants destroyed the old one.

None of this was problematic for Western District of Oklahoma Judge Stephen P. Friot.  Friot in the Judgment and Commitment Order commanded Stilley to pay $776,280, an amount which is now over $800,000 due to interest.

The government has issued a writ of garnishment against Stilley's wages.  Counsel for the government who filed the garnishment pleadings has been made well aware of the reasons that no ethical attorney can attempt to enforce this judgment.  The Judgment and Commitment Order the government seeks to enforce is a pure unadulterated fraud.

Stilley therefore brings this motion to quash.

**B.      Use of links for the convenience of the reader.**

Defendant Stilley has included links to certain documents, for the convenience of the reader.  A Timeline[2]  provides numerous links to other documents, primarily docket items and transcripts.  The Timeline generally has links to the actual transcript or docket item referenced.

**C.      Efforts to limit required reading.**

This case involves over 7,000 pages of docket items, along with approximately 4,000 pages of transcript.  Stilley could have litigated the garnishment issues in the Northern District of Oklahoma.  Stilley chose rather to remove this case to the Western District of Arkansas, to a court that presumably has little knowledge as to the background of the case.

---

[2]      The Timeline is filed as Dkt. 694-4, but replacing all the links with a filemarked version is a big job.

A decent respect for the time of the Court requires that Stilley, as a litigant, make serious efforts to limit the burden on the Court.  After all, only certain issues are relevant and justiciable in a garnishment action.  Our legal system presumes that federal courts will make good faith efforts to honestly rule on legal questions properly placed before the Court.

That didn't happen in the underlying case giving rise to this enforcement action.  US District Judge Stephen P. Friot is a sitting judge of the Western District of Oklahoma, yet presides over the case in the NDOK.  Friot was originally hand picked by a disqualified judge of the NDOK, (on the very theory of her own disqualification) on the basis of a general order known as "Miscellaneous #23."  That was the original authority relied upon to allow him to 1) evade random assignment, and 2) allow Judge Friot to sit on a case not in his own district.

Miscellaneous #23 used to be renewed annually.  At some point in time the renewals stopped, such that Miscellaneous #23 is no longer in effect.  Stilley has politely asked Judge Friot to explain by what authority he sits on Stilley's new civil case under 28 USC 2255.  Dkt. #702. Friot refuses to explain his authority, if any, but continues to preside over the criminal case and the related 28 USC 2255 civil case.

Judge Friot has in this case and other cases refused to issue any ruling at all, when a ruling would be contrary to his ideas about who should win and who should lose.  Judge Friot knows and complies with the law - until the law gets in the way of the result that he wants. Judge Friot has repeatedly shown that he will

  1)  rule consistent with established precedent, when he isn't trying to body-slam a political enemy such as Stilley,

  2)  then rule the opposite when the disfavored party is in the dock, and

3)  then return to making rulings consistent with precedent, after he's gotten his licks in on his political enemy.

Stilley's pleadings set forth prior rulings, Stilley's rulings, and later rulings, for all the world to see.  Stilley has also shown that in the case of Skoshi Thedford Farr, Judge Friot has engaged in the same pattern and practice. Dkt. 699 pg. 8-10.[3]

Stilley filed docket #454 on 04/18/2011, a reply brief in an attempt to get the Department of Justice (DOJ) to stop illegally crushing his ability to litigate.  Judge Friot denied Stilley's motion on grounds of an alleged failure to exhaust administrative remedies.  Dkt. #455  From that time until after Stilley left prison to go to home confinement, Stilley filed nothing on the docket[4] of *US v. Springer & Stilley*, NDOK 4:09-cr-43.

Stilley is supplying certain pertinent pleadings and papers filed after leaving prison, consisting of docket numbers 693 through 721, as of November 24, 2021.   Stilley is also supplying a copy of the order presented to Stephen P. Friot preparatory for his motion for reduction of sentence pursuant to 18 USC 3582(c).

 Why a proposed order that wasn't used?  Because Stilley wants this Court to know that the massive amount of time and energy devoted to preparing these documents was ***for a reason***. It was for a reason that has everything to do with the 1st Amendment right of peaceful petition, due process, and the rule of law.

From this proposed order, in particular from the bottom of page 3 through page 5, you can

---

[3]       Stilley has endeavored to consistently cite pages according to the filemark header pagination.

[4]       Click here for the docket after Stilley came to home confinement.

plainly see the ultimate goal of all these efforts.  Since his transfer to home confinement,[5] Stilley

has been asking for a court ruling *on the basis of a truthful record*.  Win, lose, or draw, Stilley

wants a ruling on the basis of an honest record.

Both O'Reilly and Friot know that the judgment and commitment order against Stilley

Dkt. #338 cannot survive a truthful record.  By their actions they tell the world that this is what

they know and believe.  They know and believe that Stilley is an innocent man - pure and simple.

If you read the Court's denial of the motion for reduction of sentence, you can see that

Friot concludes that no matter how lawless, corrupt, false, perjurious, or malicious a criminal

judgment and commitment order may be, that is not cause for a reduction of sentence pursuant to

18 USC 3582(c).

If that is the case, what is the logical reason for refusing to require the government to

correct perjury and embarrassing falsehoods in the record?  Based on Friot's legal reasoning, a

truthful record would not *change the result*.

There is a reason, which this Court needs to know.  The refusal had nothing to do with the

proceedings *then* before the court.  It had *everything* to do with what both Judge Friot and

Charles O'Reilly knew to be coming *next*.

Confessing to the truth of undeniable facts with respect to the judgment ensures that the

prosecutor has an ethical duty to support Stilley's efforts to set aside the judgment. Rule 3.8 of

the California Rules of Professional Conduct provides in pertinent part as follows:

---

[5]        Home confinement is official custody, but Stilley's legal research tool has gone by
the wayside for the time being.

(f) When a prosecutor knows*[6] of new, credible and material evidence creating a reasonable* likelihood that a convicted defendant did not commit an offense of which the defendant was convicted, the prosecutor shall:
(1) promptly disclose that evidence to an appropriate court or authority, and
(2) if the conviction was obtained in the prosecutor's jurisdiction,
     (i) promptly disclose that evidence to the defendant unless a court authorizes delay, and
     (ii) undertake further investigation, or make reasonable* efforts to cause an investigation, to determine whether the defendant was convicted of an offense that the defendant did not commit.
(g) When a prosecutor knows* of clear and convincing evidence establishing that a defendant in the prosecutor's jurisdiction was convicted of an offense that the defendant did not commit, the prosecutor shall seek to remedy the conviction.

Oklahoma has a similar provision.  The Arkansas Rule 3.8 has nothing past paragraph "e."

That's why both Judge Friot and O'Reilly are utterly hostile to idea of generating an accurate record.  That's why Judge Friot says that the unrebutted facts, stated under oath, which absolutely annihilate the foundation of the judgment and commitment order against Stilley, don't even **soften** his assessment of Oscar Stilley. Dkt. 700, pg. 4. The facts, which is to say the **objective truth,** takes the fig leaves and the *plausible deniability* away from both of them.

The complete OKND 4:09-cr-43 docket until Stilley resumed activities after coming to home confinement is available by clicking the link.  Stilley has also created a 10th Cir. 10-5057 appellate docket with ordinal numbers and links, so the world can see Stilley's efforts to get the wherewithal for a competent appeal, and the 10th Circuit's reactions and rulings.  If you want the 448 page full set of docket items, click here, but understand that it is perhaps 14 megabytes.

Friot and O'Reilly would have you believe that Stilley did this work after coming to home confinement, but simply refused to do it while he was locked up in prison, in pursuance of

---

[6]    The presence of an asterisk means the word is defined by the California Rules of Professional Conduct.

the one direct appeal to which he was (and still is) entitled.  This is utterly contrary to human experience.  The only rational conclusion is the truth.  The government stomped out Stilley's ability to litigate while he was in prison, *precisely because they didn't believe he was guilty.* They stomped Stilley's own tools out of his own hands, but never managed to put out the fire in his belly.  Despite their best efforts, they have not snuffed out Stilley's last hope for justice and the rule of law.

O'Reilly has neither admitted nor denied Stilley's factual allegations, made under penalty of perjury.  Rather, he claims that the falsity of Stilley's claims "*need not be said.*"  Dkt. 705 pg. 5.  This is of course antithetical to due process, and diametrically opposed to the ethical rules for attorneys.  If Stilley's allegations under oath are false, that fact indeed ***needs to be said***.

Stilley claims that every penny of both the tax loss for sentencing purposes, and the amounts claimed for restitution, are based upon perjury or undeniably false evidence presented with a reckless disregard for the truth.  For purposes of the attorney ethical rules of Arkansas, Oklahoma, and California (the state of O'Reilly's bar license) whether evidence is perjurious or merely false, with or without malice, is not relevant to the question of ***whether the evidence must be corrected***.

Our legal system is heavily dependent upon referent power.  In other words, judicial pronouncements should carry weight not merely because of consequences, but rather because our judicial system is fully committed to *finding the truth*, and basing its power on more than brute force.

Stilley is presenting this Court with "chokepoint" arguments.  Paramount is the argument that Stilley was left with the option of 1) being disbarred for failing to pay money to the "person

entitled" or 2) going to federal prison for 15 years, for performing his ethical duties.

Stilley is also presenting proof that **not a dollar** of the restitution order is based upon truthful evidence. **All** of the alleged personal tax liabilities of both Stilley and Springer were utterly contrary to the government's own evidence at trial.

Furthermore, the math is simply wrong. The restitution order of $776,280 is $7,901 more than the amounts that can be found by adding up the supposed claims Friot used to arrive at a restitution figure to be placed in his order. See the table below:

| Basis for alleged liability | Page & line | Amount |
|---|---|---|
| Springer's federal tax liability | Sent. TR 409, line 6 | $299,591.00 |
| Stilley's federal tax liability | Sent. TR 408, line 11 | $377,161.00 |
| Stilley's state tax liability | Sent. TR 408, line 12 | $91,627.00 |
| **Total** | | $768,379.00 |

We can know that the math is wrong by looking at Sent. TR 409 line 12, in which Judge Friot calculates the total of both state and federal taxes, for both parties, in the amount of $848,565. From this number subtract the $80,186 Judge Friot found at line 7 of same page as the state tax obligation of Lindsey Kent Springer. That mathematical calculation produces exactly the $768,379 shown in the table above.

An order for restitution cannot exceed the amount of the damage or loss. *United States v. Gallup*, 812 F.2d 1271, 1282 (10th Cir. 1987) We have a plainly illegal restitution order, one which won't survive a trip to the calculator. Yet the government stubbornly refuses to confess to the slightest error, or make such errors known to the sentencing court, or to do any of the things plainly required by attorney ethical rules. They correctly divine this to be a slippery slope. Once

they get started, they won't stop til they hit rock bottom, the conviction is in the garbage can where it belongs, and O'Reilly (and others too) have some explaining to do, with the proper authorities.

Three other claims were made against Stilley.  Shorthand based on the names of the individuals involved allow us to call them the Turner, Patterson, and Roberts claims.  Every single one of these claims is based on incontrovertibly, ***laughably*** false evidence.  That's the kind of thing that the ethical rules necessarily require a lawyer to confess and correct.

This helps us understand why Friot struck Stilley's motion for new trial/judgment as a matter of law, and also refused to allow Stilley to get the transcript for sentencing.  He knew that his planned judgment and commitment order could not possibly survive a ***competent*** attack on appeal.  Judge Friot and Charles O'Reilly tag-teamed to deny Stilley the ability to prosecute the one direct appeal to which he was entitled, precisely because any other approach would ensure the complete exoneration of Stilley.

Perhaps more important, Stilley just suffered the dismissal of Dkt. 701, his motion under 28 USC 2255.  Stilley in Docket #713, his response to the government's motion to dismiss his motion under 28 USC 2255, at pages 3-9, cited and discussed *Robinson v. Ledezma*, 399 Fed. Appx. 329, 329-330 (10th Circuit 2010).  This case indicates that the government had a choice whether or not to raise statute of limitations, in a motion under 28 USC 2255.  Judge Friot dismissed the entire 2255 motion on the basis of limitations, the day after the government's time for reply expired - without a reply, of course.  O'Reilly knows that a stubborn silence, in the face of a duty to speak, is the only practical option for him, so long as he insists on completely abandoning legal ethics and the rule of law.

Judge Friot also denied a certificate of appealability. Dkt. 719 pg. 5. He furthermore "dismissed" Dkt. 702, a motion asking Friot to explain the legal basis for him to preside over the 2255 proceedings. *Id.*

The leaves at least two additional plausible lines of attack in this court. One is further litigation over any further efforts to collect on the judgment. The other is a motion under 28 USC 2241. If a motion under 2255 is inadequate to test the legality of detention, a motion under 28 USC 2241 is the next logical option.

Ethics considerations loom large at every stage. The question arises. Can the mighty United States Department of Justice collect on a judgment that it knows to be founded upon false and perjurious testimony, as well as glaring math errors? Can it collect upon a judgment when it knows of a certainty that the government failed to produce testimony sufficient to support a guilty verdict? Can it proceed in a manner that violates ethical rules, and achieves a result impossible for a litigant who chooses to obey attorney ethical rules?

If this is the position of this Court, Stilley needs to know. Courts are constituted to 1) say what the law is, and 2) to enforce the law. If an utterly fraudulent and corrupt judgment can be saved, preserved, and ***later enforced*** by the simple expedient of destroying the victim's appellate capabilities during the customary time for appeal, Stilley needs to know. Stilley intends to cut off all plausible deniability concerning whether or not the US government can commit a string of frauds to save the crown jewel *fraud first perpetrated*.

Stilley intends to carefully read and study all orders, to determine the true nature and import of the ruling. In a case littered with fraud, corruption, usurpation, and oppression of victims, Stilley is not at the present time convinced that he at this point in time necessarily needs

to plead and brief the Court on each and every example of such lawlessness.

## II.   THE GOVERNMENT FAILED TO PRESENT EVIDENCE SUFFICIENT TO ALLOW A RATIONAL JURY TO FIND STILLEY GUILTY OF ANY COUNT OF THE PURPORTED INDICTMENT.

### A.   Defendant Stilley had no knowledge of any intent to use his IOLTA account to move money from Patrick Turner to Lindsey Springer, until long after all the money had left his account.

Stilley had no knowledge about the original plan to loan or gift money from Patrick

Turner to Lindsey Springer, until long after all such funds had been disbursed from Defendant

Stilley's account.   Nor does the official record contain any evidence of such knowledge.

This Court provided an example of how to get such information, at Sent. TR 288, with

this colloquy:

> 12 THE COURT: Perhaps you didn't understand my
> 13 question. My question was very simple: **To what extent did**
> **14 Mr. Stilley have knowledge of this letter or its contents at**
> **15 the time that it was provided to Mr. Hawkins?**
> **16 MR. SPRINGER: Fully aware of it**.
> (Emphases added)
> (Question regarding Stilley's knowledge of Exhibit 204 when sent.)

The government knows how to get essential testimony at trial.  They just didn't.

Stilley at all relevant times reasonably believed that Patrick Turner was simply another

prospective client, who wished to retain the services of Oscar Stilley.  He was totally left in the

dark about plans to promptly cause Oscar Stilley to convey that money to Lindsey Springer.

As the Court explained in its jury instructions, Oscar Stilley had no burden to prove or

disprove anything.  See Jury Instruction #5, given by the Court.

Defendant Stilley was puzzled about why he was getting tagged for prior year taxes of

Patrick Turner, when he didn't even know Turner at that time.  Brian Shern explained as follows,

at Sentencing 164-165:

> 24 Q. Can you tell this Court what Oscar Stilley should have
> 25 done differently so that he would not be charged with this
> 164
> 1 substantial sum of money as being relevant conduct?
> 2 A. **Not helped Mr. Springer hide Mr. Turner's $250,000 by**
> 3 **going through your account. Just walk away from the**
> 4 **transaction.**
> (Emphasis added)

At trial and during sentencing, the government claimed that Turner had made his

$250,000 transfer of funds look like an ordinary attorney retainer payment.  TR 1465; Sent. TR

82.  That's a fine theory, but it raises the question of what Defendant Stilley knew, and when he

knew it.  Concerning whose idea it was to convey the money in this manner, consider TR 1461:

> Did Mr. Springer come up with an idea for a
> 4 course of action to take?
> 5 A. No, sir. I did.

At TR 1462 we see:
> 7 Q. You then agreed with Mr. Springer to do something
> 8 about this; is that correct?
> 9 A. Right. That's correct.

At TR 1464 we see:
> 13 Q. -- what did you do with the funds that you received?
> 14 A. I transferred them -- we wanted to make this as out
> 15 in the open as possible.
> 16 Q. Who is "we"?
> 17 A. Lindsey and I.
> (Emphases added throughout)

At no time did the government prove that Stilley knew or believed that the money was

anything other than a legitimate, bona fide retainer for the purpose of representation in the

pending federal criminal tax investigation, and federal criminal trial if any, during the time that

any of the funds remained in Stilley's IOLTA account.

The trial court had a solemn legal duty to enter judgment as a matter of law, with respect

to Oscar Stilley, on Count 4 of the indictment.

**B.    The government abandoned the alleged _Grand Jury_ indictment wholesale.**

The government on March 3, 2010, at page 3 of its Objections to the Presentence Reports

of Springer & Stilley stated:

> All of Defendant Springer's income was generated from his elaborate con, defrauding numerous individuals with false promises and enticements in order to separate them from their money.  In addition, the jury verdict indicates that the jury found that Defendants **Springer and Stilley stole money from Mr. Patrick Turner**. Had the jury found that Defendant Springer borrowed from Mr. Turner, **the jury would have acquitted Defendants** of the tax evasion count for 2005.  Their return of a guilty verdict with respect to that count, corroborated by the evidence at trial, proved that Defendant Springer and Defendant Stilley, utilizing wire communications, stole $250,000 from Mr.Turner during 2005.
> (Emphases added)

This bold pronouncement is just another way of saying that the government _necessarily_

failed to prove the allegations of the indictment, allegedly handed down by the Grand Jury.  If the

verdicts _ipso facto_ prove theft, that means that the government _concedes_ that the trial evidence

cannot possibly support the government's _theory at trial_.  That being said, let's list off the

government's most prominent overall theories, including when they started and stopped.  We are

assisted by Exhibit 4 to Docket 694 to this pleading, a Timeline of the proceedings.

1)    Springer earned money and concealed the fact of receipt of that money from the government.   In the first seven pages of the Timeline, covering 3-10-09 (date on the purported indictment) through the first day of trial (10-26-09) the government not less than 6 times emphatically declared that Springer _earned_ income, and hid _the fact_ of receiving that income.  Springer is blasted for claiming the funds are gifts or donations.  At Dkt. 212, filed on the 1st day of trial, the government said "[Ms. Wiggins] caused the issuance of these five checks to Defendant Springer for services, and _not as gifts or donations_. (Emphasis added)

2)    Although Springer freely disclosed all of his gross receipts to the IRS, Springer concealed from the IRS the true nature of the payments by claiming that they were gifts when they weren't; See e.g. Dkt. 173 pg. 4.

3)   On 11-2-09, the 6th day of trial, Brian Miller says that the question of whether transfers were gifts or donations is "almost a moot point" in this case, because **either way**, they're income to Springer, that he was required to report on a federal individual income tax return.  TR 1295-1296

4)   Springer stole the money, pure and simple.  See comment made 2-12-10, at Dkt. 310, pg. 11, about Patrick Turner's "naive belief" that "Defendant Springer had any intention of repaying the money Defendants stole."  Then on 3-3-10, in the quote provided at the beginning of this section, the government firmly committed that (at the very least as to count 4) there was *no other theory* that would sustain the conviction.  This theory was promoted through the day of sentencing, on 4-23-10, where Judge Stephen P. Friot said "Mr. Stilley, you are not a lawyer in any normal sense of the word.  You are a *thief with a law degree*."  Sent. TR 450 (Emphases added)

It's not like there was any great effort at consistency.  At Sent. TR 84-85, during Springer's cross examination of Brian Shern, Judge Friot whipsawed back to the 1st or possibly the 2nd  theory of liability, telling Springer that "the overarching question of whether the funds that you received over the years that were involved in this case were **received by you for services rendered** has been **conclusively resolved against you** by the jury verdict." (Emphases added)

Defendant Stilley was bound by his oath as an Arkansas attorney not to refuse the causes of Turner, Patterson, or other persons similarly situated, for reasons personal to himself.  Fifteen years of prison for crimes he *could not possibly have committed* is a *reason personal to himself*.

## III.   DEFENDANT STILLEY WAS DENIED DUE PROCESS.

### A.   The District Court acted contrary to its own belief and understanding of the law of due process.

The District Court sua sponte (on his own motion) struck Plaintiff's consolidated motions for judgment as a matter of law (JAML) (Dkt. 261)  and new trial, (Dkt. 263) despite stating the knowledge and belief, in other opinions and orders, that such a sua sponte motion violates due

process.  For example, consider the case of *United States v. Ladell Fitzgerald Pace*, **2016** U.S.

Dist. LEXIS 182029, *4-5, where Judge Stephen P. Friot, opined as follows:

> Consequently, defendant's motion appears to be untimely and subject to dismissal with prejudice. District courts are "permitted, but not obliged" to review, ***sua sponte***, a federal prisoner's § 2255 motion to determine whether it has been timely filed. The Tenth Circuit case law makes clear that a district court may raise a procedural bar on its own motion. [citations omitted]. If the district court acts on its own raising a limitations defense, **however, it must "accord the parties fair notice and an opportunity to present their positions."** ***Day v. McDonough***, **547 U.S. 198, 209, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006). The court therefore shall permit defendant to file a response within 30 days demonstrating why his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody should not be dismissed as time-barred.** ...
> (Emphasis added)

That was 2016, and plainly shows what Judge Friot thought the law was on July 20, 2016.

Judge Friot struck the pleadings that would have necessarily resulted in the entry of a judgment

of acquittal, as to Oscar Stilley, as a matter of law, on 12-8-2009. Dkt. 261 and 263.

This gives rise to the question of Judge Friot's understanding of the law *before* striking

Stilley's critical pleadings.   In fact Judge Friot's understanding of the law prior to Stilley's trial

was no different than it was afterward.  Consider *United States v. Holly*, 2009 U.S. Dist. LEXIS

95021, 2009 WL 3275087, where Judge Friot said:

> The court further notes that defendant's motions appear to be untimely filed as they were not filed within three years after the verdict or finding of guilty in defendant's criminal case. Rule 33 (b)(1), Fed. R. Crim. P. ("Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."). The court, however, **does not raise the issue sua sponte**. See, e.g., *United States v. Mitchell*, 518 F.3d 740 (10th Cir. 2008).
> (Emphases added)

*Mitchell* cited to *Day v. McDonough*, and discussed it extensively.  There can be no reasonable

doubt as to why Judge Friot cited to Mitchell in support of its statement that it would not raise

the timeliness issue sua sponte.  *United States v. Holly* was decided by this Court on October 13, 2009.  Judge Friot held the final pretrial conference in Stilley's criminal case just eight (8) days later, on October 21, 2009, and started the trial on October 26, 2009.  It is hard to imagine better proof that this legal principle was fresh in the Court's mind.

Judge Friot's order [Dkt. 264] cites no authority except LCvR7.2(c).  That document wasn't picked up by LexisNexis, but another order on the same subject was. [Dkt. 293] *United States v. Springer*, 2010 U.S. Dist. LEXIS 6906, 2010 WL 419936.  Shepardization of that case discloses that it has been cited nowhere except in another Springer case, namely *Springer v. Willis*, 2015 U.S. Dist. LEXIS 186334.  Stilley cannot see one other case in which a federal *criminal* defendant has had a pleading stricken on the basis of LCvR7.2(c).

We must face multiple issues.  First, we're looking for a federal criminal case in which LCvR7.2(c) is applied so as to limit the length of a criminal pleading.  Second, we're looking for a case in which the court "stacked" a motion and brief, determined the ***combined*** page count to be over-length, then struck ***both documents***.  ***Both propositions*** are conspicuous by their absence.  If the government thinks not, perhaps they can give us the citations.  They've already had the chance, and turned it down.

Judge Friot wasn't confident of its own theories.  Judge Friot denounced Springer for his very long pleadings, sometimes triple the 25 pages allowed by the civil rules, for an opening brief in support of a motion. Dkt. 293, pg. 14.  But that just throws the hot glare of the spotlight onto Stilley's brief. Dkt. 263   With a mere 13 pages (excluding the certificate of service) Stilley's brief wasn't even long enough to require tables of contents and authorities, under the OKND civil rules.  It wasn't over-length at all - until Judge Friot construed the motion as

"argumentative," [Dkt. 293, pg. 18] added the 18 countable pages of the motion, and even then had a page count a mere 24% over the max allowed by the civil rules.

On 6-18-09, at Dkt. 87, Judge Friot denied a motion to strike a 28 page reply.  By this Court's sua sponte theories, that brief exceeded the civil rule limit by 180%, and furthermore had no table of contents or authorities.  There was no commentary to the effect that, for future reference, the parties should be more concise, or should file motions for over-length brief.

How was Defendant Stilley to construe such an order on the part of Judge Stephen P. Friot?

All Judge Friot had to do to get compliance with the *civil* rules, in a ***criminal*** case, was to say that in the future the page limits of the civil rules would be enforced.  That's not hard to do - see Dkt. 290 for an example.  The problem with that expression of intent is that it was too late. Judge Friot had already stricken a critical pleading, and denied Stilley any opportunity to amend his pleading to comply with the newfound "rules."

For that matter, a statement of preference for following the civil rules regarding brief page limitations would have been sufficient.  Based on Judge Friot's rulings, Stilley concluded that the civil rules simply weren't applicable in a *criminal* case - and that Judge Friot wasn't particularly concerned about the length of briefs in a criminal case.

Pushed on the issue, Judge Friot said that if he didn't have "discretion" to construe a motion as part of a brief, then litigants would always be able to evade the rules. Dkt. 293  The easiest answer to that logic is the fact that Stilley could have easily prepared a motion for new trial, and a motion for judgment as a matter of law, with briefs for each, each incorporating the other briefs and motions as if set forth word for word.  A change in form, not substance, would

have insulated the pleading from being stricken on a technicality.

Pleadings drafted on Trulincs allow a word count per page about twice as much as that of a pleading drafted on word processor, in accordance with the rules.  Take a look.  Dkt. 454 Stilley has prepared countless pleadings on Trulincs, for himself and others, and has never had one stricken for length, or because they conform to virtually no court rules *anywhere*.

The Supreme Court has already stated the requirement that an illegal order be set aside, giving the litigant a fresh start.  As the Court explained in *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62, 66-67 (1965):

> A fundamental requirement of due process is "the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394. **It is an opportunity which must be granted at a meaningful time and [****13]  in a meaningful manner.** The trial court could have fully accorded this right to the petitioner only by granting his motion to set aside the decree and consider the case anew. Only that would  [***67]  have wiped the slate clean. **Only that would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place.** His motion should have been granted.
> (Emphases added)

Applying the teachings of *Armstrong v. Manzo*, Judge Friot had a duty to set aside his order striking Dkt. 257, 258, 260, 261, and 263.

The Northern District of Oklahoma has now placed the rules for criminal briefs within the Local Criminal Rules proper.  See OKND LCrR47-5.  That's all well and good, and should have been done long ago.  No litigant should pay, with years of his life, for ambiguity in local rules.

**B.**     **Defendant was not given fair notice that his conduct may have been construed as illegal, a clear violation of due process.**

In *United States v. Conley*, 942 F.2d 1125, 1127-1128 (7th Cir. 1991) the Court explained:

 [**2]  Under *Commissioner v. Duberstein*, 363 U.S. 278, 285, 4 L. Ed. 2d 1218, 80 S. Ct. 1190 (1960), the donor's intent is the "critical consideration" in distinguishing

between gifts and income. We reverse Conley's conviction and remand with instructions to dismiss the indictment against her because the government failed to present sufficient evidence of Kritzik's intent regarding the money he gave her. We also reverse Harris' conviction. The district court excluded as hearsay letters in which Kritzik wrote that he loved Harris and enjoyed giving things to her. These letters were central to Harris' defense that she [*1128] believed in good faith that the money she received was a nontaxable gift, and they were not hearsay for this purpose.

**We do not remand Harris' case for retrial, however, because Harris had no fair warning that her conduct might subject her to criminal tax liability.** Neither the tax code, the Treasury Regulations, or Supreme Court or appellate cases provide a clear answer to whether Harris owed any taxes or not. ......
(Emphasis added)

Consider the facts:

1)      The government says it is not criminal to earn income.  Dkt. 42 pg. 3

2)      The government claimed not less than 6 times that Springer had earned income, which by necessary implication means he was entitled to the money; Id. pg. 1-5

3)      Pursuant to Arkansas Rule of Professional Conduct 1.15 (Ark. R. Prof. Cond. 1.15), Stilley had a legal and ethical duty to ***promptly deliver*** the money to any "third person entitled to receive" such moneys, or face professional discipline. This is true whether the money was compensation, donation, or gift.

4)      Asked if Stilley or Springer had interfered with any IRS official in the performance of their official duties, Brian Miller, who watched the whole trial, couldn't think of a single name.  TR 2127

5)      Stilley couldn't file Springer's tax return if he tried, amongst other reasons because of the requirements of Form 56 and Form 2848.

6)      Springer answered all questions from IRS employees.  TR 563; TR 2366 Without controversy, the IRS had sufficient information from which it could have assessed a tax, giving Springer fair notice and opportunity to litigate his contentions in a civil proceeding.

7)      The government seized all of Springer's financial papers, and Springer provided answers to all questions asked such that Brian Miller was confident of his ability to calculate the tax due.  Thus Springer already provided papers and answers sufficient to constitute a "tax return" as defined by *United States v. Stillhammer*, 706 F.2d 1072, 1074-1075 (10th Cir. 1983) and *United States v. Patridge*, 507

F.3d 1092, 1094-1095 (7th Cir. 2007).

Springer bitterly complained that he faced a "heads I win tails you lose" proposition, because the O'Reilly said **keeping** property on which Patrick Turner had a lien was theft, but **giving it back** was tax evasion.  Sent. TR 339

That's the same trick bag for which Stilley is now serving a 15 year prison term.  If I pay the money to the person entitled, in compliance with Ark. R. Prof. Cond. 1.15, I'm a conspirator and a tax evader.  If I don't, I'm a thief, guilty of a real crime that real people recognize as a crime and an evil deed.

At a proper time, the government should be ordered to set forth, in writing, where and how Stilley was placed on notice that paying money to a person who allegedly "earned" the money, is nevertheless a crime, and 2) where and how Stilley was given notice of some lawful way, not contrary to his oath of office as an Arkansas attorney at law, to avoid criminal liability. Anything less deprives Stilley of due process.

**IV.   THE GOVERNMENT OBTAINED ITS JUDGMENT BY THE KNOWING AND WILLFUL USE OF PERJURY, AND ALSO BY FALSE TESTIMONY.**

Consider the basic foundation of claims of tax loss from the following chart:

| Tax year | 08-19-09 | During trial | At sentencing | Sentencing minus trial |
|----------|----------|--------------|---------------|------------------------|
| 1999 | $      0.00 | $      0.00 | $   22,340.40 | $   22,340.40 |
| 2000 | $  33,777.11 | $  32,979.00 | $   35,400.00 | $    2,421.00 |
| 2001 | $    500.00 | $      0.00 | $   15,000.00 | $   15,000.00 |
| 2002 | $      0.00 | $      0.00 | $   12,367.20 | $   12,367.20 |
| 2003 | $  89,349.61 | $  97,223.00 | $   82,134.20 | $  (15,088.80) |
| 2004 | $      0.00 | $   3,854.00 | $   26,010.00 | $   22,156.00 |

| 2005 | $ | 33,463.00 | $ | 41,189.00 | $ | 59,300.00 | $ | 18,111.00 |
|------|---|-----------|---|-----------|---|-----------|---|-----------|
| 2006 | $ | 0.00 | $ | 0.00 | $ | 39,630.00 | $ | 39,630.00 |
| 2007 | $ | 0.00 | $ | 0.00 | $ | 30,680.00 | $ | 30,680.00 |
|      | $ | 157,089.72 | $ | 175,245.00 | $ | 322,861.80 | $ | 147,616.80 |

For the source of the numbers for 08-19-09[7] see Dkt. 130, pg. 32 and 37.  Defendant Stilley asked about the government's conspiracy theories at page 32.  At page 37 of the document, we can see that Special Agent Brian Shern essentially considers the tax evasion charges the substantive offenses that correlate to the conspiracy charges.  This is in accord with the indictment.  At trial the government introduced Exhibit 683 into evidence.  The numbers at sentencing are derived from Sentencing Exhibits 1178 (Springer) and 1179 (Stilley).

On both Springer and Stilley, the government used "tax liability" numbers that they *knew and believed* to be a pure unadulterated fraud, to "run up the score."  Their "experts" had already calculated the *actual* tax losses, according to their (admittedly bogus) theories.  The government then switched to "estimates" which by their own tacit (or open) admissions may be used only when more accurate numbers are not available.  Sent. TR 10, 189, 299, 323-324

Then they tagged each Defendant with the known fraudulent claims against the other.

This constitutes perjury.  O'Reilly knew that he could not effectively present the 20% theory to the jury.  The government had already stated that they had accurate numbers.  They had already admitted that Springer had answered all their questions and provided all the information the government cared to get.  They knew that Springer had already offered to let the government

---

[7]      Other versions of this table may have the wrong number for this column, apparently due to including the top row of that column when creating the sum formula.

assess, whereupon Springer would challenge their assessments.  In short, they knew that their

own admissions foreclosed their own evidence and arguments - to any fact finder with the

slightest interest in the truth.

**V.    RE-SENTENCING IS REQUIRED DUE TO MISCALCULATION OF TAX LOSS, IMPROPER ENHANCEMENTS, ETC.**

The US Supreme Court in *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2019) held

that plain error review is sufficient to correct a multitude of errors, with or without

contemporanous objection by the injured party.  The *Rosales-Mirales* court opined that:

> That standard is not reflected in Rule 52(b) itself, nor in how this Court has applied the plain-error doctrine. The Court repeatedly has reversed judgments for plain error on the basis of inadvertent or unintentional errors of the court or the parties below. See, e.g., [*1907] *Silber v. United States*, 370 U.S. 717, 717-718, 82 S. Ct. 1287, 8 L. Ed. 2d 798 (1962) (per curiam) (reversing judgment for [***16]  plain error as a result of insufficient indictment); *Brasfield v. United States*, 272 U.S. 448, 449-450, 47 S. Ct. 135, 71 L. Ed. 345 (1926) (reversing judgment for plain error where the trial judge improperly inquired of a jury's numerical division); *Clyatt v. United States*, 197 U.S. 207, 222, 25 S. Ct. 429, 49 L. Ed. 726 (1905) (reversing judgment for plain error where the Government presented insufficient evidence to sustain conviction). The Court also "routinely remands" cases involving inadvertent or unintentional errors, including sentencing errors, for consideration of *Olano's* fourth prong with the understanding that such errors may qualify for relief. *Hicks v. United States*, 582 U.S. ___, ___, 137 S. Ct. 2000, 198 L. Ed. 2d 718 (2017) (Gorsuch, J., concurring) (137 S. Ct. 2000, 198 L. Ed. 2d 0718).

**A.    The District Court's announced foundation for the sentence.**

Tax loss is the main driver of sentence, in a tax case.  The US Probation Officer (USPO)

found the tax loss to be $561,201.67, for a Base Offense Level of 20.  The USPO added 2 points

for encouraging others to violate internal revenue laws, and 2 points for obstructing justice, for

an Adjusted Offense Level of 26 and a sentencing Guideline Range of 63-78 months in prison.

Based on Defendant Stilley's objections, the USPO removed the objection for

encouraging others to violate internal revenue laws.  Thus the USPO's final position was for 24

points, Criminal History Category 1 (no prior convictions, Criminal History Score of zero) which resulted in a Guideline Range of 51-63 months of incarceration.

The District Court at the conclusion of sentencing proceedings found tax losses, with respect to Stilley, totaling $1,303,096.  Sent. TR 408.  The District Court found Springer responsible for $1,085,474.80.  Sent. TR. 407.

For 3rd party tax loss, the reader is directed first to Government Exhibit 1179 (Gov. Ex. 1179), the government's "Summary of Tax Loss and Restitution - Oscar Stilley."  Gov. Ex. 1178 is the same document with respect to Springer.  Gov. Ex. 1177-OS is the Tax Loss of Third Parties Relevant to Oscar Stilley.[8]   Springer's counterpart is Gov. Ex. 1177-LS.

United States Sentencing Guidelines (USSG) §2T4.1 is the "Tax Table" extant in 2009. In 2009, the "Offense Level" from the Tax Table for $1,000,000 but less than $2,500,000 was 22, for less than $1 million but over $400,000 was 20, for $200,000 to $400,000 was 18.   The "Base Offense Level" is in tax cases the offense level taken from the Tax Table.  Adjustments are then applied, to find the "Total Offense Level." The Sentencing Table determines the Guideline Sentence, based on the Total Offense Level.

Thus a successful attack sufficient to bring the tax loss down below $1 million *mandates* re-sentencing pursuant to *Rosales-Mirales*.  Prior to a re-sentencing, the original judgment and commitment order is due to be disregarded.  A reduction below $400,000, or some other threshold of the Tax Table, doesn't change the *fact* of re-sentencing.  It might however influence the appropriate outcome ***as a result*** of the re-sentencing.

---

[8]      This document has no exhibit sticker, but this number is assigned by the government's witness and exhibit list at 319-2.

Judge Friot's tax loss findings placed both Defendants in the "Base Offense Level" of

22."  This Court then calculated  points for Stilley on page 430 as follows:

| Source of points | # of pts | Applied to | Agreed by USPO | Basis for the finding |
|---|---|---|---|---|
| 2T1.1(b)(1) Failing to report criminal source income | 2 | Both | No | Turner (Count 4) and Hawkins (no part of indictment) |
| 2T1.1(b)(2) Sophisticated means | 2 | Both | Yes | IOLTA account, use of name "Bondage Breakers Ministry," cash dealing, check cashing service, "fraudulent" advice |
| 2T1.9(b)(2) Encouraging others to violate law | 2 | Both | Yes first, no after objection | Dr. Philip Roberts, James Lake (Also Mr. Dingman and Mr. Grady, but they had nothing to do with Stilley) |
| 3C1.1  Obstructing justice | 2 | Both | Yes | Stilley testimony regarding lack of statute saying who is liable for income tax, statute defining "income," statute commanding the filing of tax return, saying to Grand Jury that Springer does not charge for his services |
| 3B1.1(a) Organizing others | 4 | Springer | ??? | |
| 3B1.3  Using position to carry out crimes | 2 | Stilley | No | Status as lawyer facilitated commission and concealment of crimes |

To summarize the District Court's conclusions with respect to Stilley, he found a Base

Offense Level from (USSG §2T4.1 of 22, (more than $1 million) together with 10 additional

points, giving a Total Offense Level of 32.  A Total Offense Level of 32 called for a Guideline

Range of 121 to 151 months, pursuant to the Sentencing Table.

US Probation arrived at a Total Tax Loss of $561,201.67.  However, US Probation cited

*United States v. Franks*, 723 F.2d 1482 (10th Cir. 1983) for the proposition that "restitution in tax

cases shall not be ordered as a condition of probation or supervised release when the amount of

tax loss has not been acknowledged, conclusively established in a criminal proceeding, or finally

determined in a civil proceeding."

> **B.    This Court included "tax losses" that didn't meet up with this Court's own stated rules and evidentiary standards.**

Judge Friot found a total tax loss of $1,303,096 against Stilley.    Sent. TR 408.    The

following chart shows the amounts and sources:

| Time frame | Nature of claimed tax loss | Amount |
|------------|----------------------------|--------|
| 2000-2008 | Stilley's estimated federal income tax | $       377,161.00 |
| 2000-2008 | Stilley's estimated state tax extrapolated from fed | $        91,627.00 |
| 2000-2007 | Springer's estimated federal income tax | $       299,591.00 |
| 2000-2007 | Springer's estimated state tax extrapolated from fed | $        80,186.00 |
| 1992-1995 | Dr. Philip Roberts | $       129,818.00 |
| 2000 | James Lake | $       176,000.00 |
| 1999-2003 | Patrick Turner | $       145,713.00 |
| Total |  | $     1,300,096.00 |

The tally from this chart is exactly $3,000 less than the Judge Friot's, for unknown

reasons.  For our purposes this discrepancy is irrelevant.

Roberts, Lake, and Turner collectively amount to $451,531.00 laid at the feet of Stilley.

Therefore, if Stilley can lay waste to the foundations of all three of these add-ons, re-sentencing

is not optional.  The Base Offense Level declines from 22 to 20.  *Rosales-Mirales* then demands

a re-sentencing.

> **1.    Dr. Roberts' trial testimony obliterates the government's theories.**

The government persuaded the Court that Dr. Roberts testified that Defendant Stilley confirmed the rectitude of his legal position.  Actually, this is what he said, on the second day of trial, 10-27-09, at transcript (TR) 316 on direct examination by Mr. O'Reilly.

> 10 Q. With respect to whether or not you were required to
> 11 file taxes, what did **Mr. Stilley** tell you?
> **12 A. I don't remember him specifically saying that there**
> **13 wasn't a requirement.** He's quite gifted in
> 14 constitutional and legal issues. And to be -- quite
> 15 frankly, he overwhelmed me a lot. **So I couldn't actually**
> **16 tell you definitively that I recall him making that**
> **17 statement ever.**
> (Emphases added)

As much as Stilley likes his Sixth Amendment right of confrontation, he didn't feel led to confront *that*.  What's to confront?

Dr. Roberts initially testified to basically the same thing, with respect to Lindsey Kent Springer.  Mr. O'Reilly, clever and cunning lawyer that he is, "rehabilitated" his witness, starting at 316 and continuing to the next page.  It went like this:

> 18 Q. Okay. Did you ever have a conversation with
> 19 **Mr. Springer** about whether or not you had to file tax
> 20 returns?
> **21 A. Again, I cannot recall any specific conversation in**
> **22 that regard.**
> 23 Q. Is it possible that in the past you had a
> 24 recollection that -- or that reference to this grand jury
> 25 transcript might assist you in remembering?
> 317
> 1 A. Anything could help me with remembering. It was a
> 2 long time ago.
> 3 Q. Yes. Yes, Dr. Roberts. Let me ask you, if you
> 4 could, to look at page 9 of that same grand jury
> 5 transcript and simply look, I believe, from lines 9
> 6 through 11 and read it to yourself, sir.
> 7 A. Page 9, lines 9 through 11?
> 8 Q. I believe so, sir, yes. Actually, line 6 through
> 9 12. I apologize. Have you read that, sir?

10 A. Yes, I have.
11 Q. **Does that refresh your recollection**?
12 A. It certainly reflects what I said then, yes.
13 Q. What did you say?
14 A. At what part of this?
15 Q. Actually, let me just ask, **did Mr. Springer** ever
16 tell you whether or not you had an obligation to pay
17 incomes taxes and file tax returns?
18 **A. Yes. He stated that my conclusions were correct and**
19 **there was no requirement or liability to do those.**
(Whereupon Mr. O'Reilly passes the witness)
(Emphases added)

A few items are worthy of mention. The government should have paid attention when

this court at Pretrial 10-21-09 TR 109-110, on the first day of trial, forbade "off the cuff"

impeachment, and exhorted the parties that *"it's never as good as you remember*."

O'Reilly was totally confused about the testimony of Dr. Roberts. Sent. TR 300-302

What he lacked in accuracy he made up for with enthusiasm. See Sent. TR 379:

14 MR. O'REILLY: Yes, Your Honor. And based upon
15 Dr. Roberts' testimony, it appears that he was also counseling
16 others. The fact that we **only have Dr. Roberts as the one that**
17 **we have identified** does not change the fact that it was part of
18 a common -- Mr. Stilley's common scheme.
(Emphases added)

How nice of Mr. O'Reilly to admit that he hooked his wagon to *exactly one* crippled up,

foundered horse, and tied a buggy onto the back. Thus when the horse fell over dead, not only

the ersatz "tax losses" but also the 2 point enhancement under 2T1.9(b)(2), encouraging others

to violate the revenue laws, headed straight for the ditch.

When the government's case falls into the ditch, the wise approach is to invite the

government to pull it out themselves - if they can. Gently remind them that you didn't put their

garbage case in the ditch, and it's not your job or prerogative to pull it out. You wish them the

very best, you might even hope they win, but you're not going to **help**.  You're going to rule

betwixt and between the belligerent parties.  *U.S. v. Farr*, 536 F.3d 1174, 1179 (10th Cir. 2008)

(When you get to this one, roll the cursor up a few clicks.)

**2.     James Lake only provides additional entertainment.**

Stilley in his chart included James Lake, despite Mr. O'Reilly's kind concession at Sent.

TR 379.  Stilley got tagged for Lake, so let's take a look at it.  We have a link to Government

Exhibit 1143, so let's see why it's a total joke.

This record shows "no return filed" but provides not the slightest evidence of any duty on

the part of James Lake, to file a tax return that year.

Mr. Lake fired Stilley early December 2001 or thereabouts, just before his trial. TR 860

Exhibit shows the payment of $176,000, on 3-22-2002.  On 7-1-03, over a year later, someone

again noted that no tax return had been filed.  On 1-14-08 this **credit balance** was cleared

because the time to **claim refund** expired.  For reasons not explained, the credit was re-instated.

If there was a tax liability on Lake for the year 2000, why wasn't the $176,000 applied to

it?  That hasn't been explained.  Lake after all did go to prison, with supervised release to follow.

 At Sent. TR 49, Lindsey Kent Springer elicited the following testimony from Brian Shern:

> 17 Q. As you stand here today, did **James Lake** not file a tax
> 18 return for the year 2000 by April 15, 2001?
> 19 A. Did he not file?
> 20 Q. Did he or did he not?
> 21 A. I'm not for certain whether he did or didn't. I know
> 22 there was a -- the transcript of his account for 2000 shows a
> 23 restitution payment of -- and that is what we included in our
> 24 calculations, I believe.
> 25 Q. Restitution payment?
> (Emphases added)

Springer continued to rip Shern to shreds over the next 3 pages.  At Sent. TR 52 we see this gem:

Page 28 of  37

17 THE COURT: Okay. Except that I've heard on cross
18 that maybe he may well have filed for 2000.
19 MR. O'REILLY: I'll try to rehabilitate the witness.
20 THE COURT: Okay. Well, proceed.

Now, we know that Mr. O'Reilly knows how to rehabilitate a witness.  He very deftly

rehabilitated Dr. Roberts - as to *Springer*.   You could call it a textbook case of the use of grand

jury testimony to rehabilitate a witness.  He followed the Court's ground rules, respected the

witness, respected the 6th Amendment right to confrontation, etc.  He got his testimony.

At Sent. TR pg. 172, Stilley finished his cross examination of Brian Shern.  The

following colloquy was had:

> 17 Pass the witness.
> 18 THE COURT: Redirect?
> **19 MR. O'REILLY: No questions, Your Honor.**
> (Emphasis added)

Mr. O'Reilly's rehabilitation is conspicuous by its absence.  Thus we have no ***evidence***

whether Lake filed a return for that year or not, nor whether ***anybody*** thought he was legally

required to file one.  We only know that a large payment was made but never applied - at least up

through sentencing in this case - to any real or imagined tax obligations of James Lake.   To

understand what's going on as to Lake, It may be helpful to review a certain objection at TR

1289, during Springer's cross examination of Brian Miller:

> 5 MR. O'REILLY: Objection as to what is the IRS's
> 6 position **and you should use common sense.**
> 7 THE COURT: Don't go there. That will be
> 8 overruled.
> (Emphasis added)

There are practical reasons that a prosecutor should not check his common sense at the

courthouse door.  The government otherwise conceded that holding a defendant liable for events

prior to meeting an individual is simply untenable.  Sent. TR 302   A quick Google search will tell

you that the average salary for a Delta pilot in the year 2000 was  $150,549.  Click the link - see

for yourself.  So why would James Lake owe well over that much in taxes, for 2000 alone?

What we're left with is 1) a tax loss that Judge Friot didn't accept for lack of proof, 2)

that the government didn't rehabilitate as promised, and 3) that makes no logical sense

whatsoever.  This tax loss is in the ditch, mired in mud up to the axles.

### 3.    Patrick Turner's tax loss is the gateway to discarding Count 4.

Judge Friot set forth the government's theory at Sent. TR 83, saying that the government

claimed these moneys not as tax evasion, but as impairment of the collectibility of Turner's prior

year tax liabilities.  The first problem with that theory is that there is absolutely no evidence that

the conveyance of this $250,000 rendered Mr. Turner insolvent or partly so.  There is absolutely

no evidence that he couldn't have paid both the $250,000 and the full amount claimed by the

government - at the same time.  Mr. O'Reilly asked Mr. Turner about his ability to pay, at TR

1459-1460 as follows:

> 22 Q. Were you **able to pay** the money that was reported as
> 23 owed when you filed those tax returns?
> 24 A. There was a dispute on the amounts, so, no, I did
> 25 not pay the amounts on the tax returns.
> 1459
> 1 Q. Okay. And then you said you wanted to finish your
> 2 answer on the other question?
> 3 A. Yes.
> 4 Q. Please do so.
> (Emphasis added)

If a prosecutor wants to take away years of a man's life on the theory that he helped

someone else become "judgment proof," that is emphatically not the way to do it.   Mr. O'Reilly

walked straight up to the issue with which he savaged the Defendants at sentencing - and then meandered away without an answer.  Lawyers don't generally do that - if they think the answer *will help their case.*

O'Reilly had already proven his ability to deftly and professionally rehabilitate a ***rather adverse*** witness.  Let us not forget that Dr. Roberts came straight from a jail cell to the witness stand, with jail clothes and handcuffs.  At TR 319, asked the reason for the outfit, Dr. Roberts laconically responded "Well, it's not because red is a good color for me."

The second problem with this theory is that the government gave no notice of their theory in time to cross examine Turner on the subject.  It is exceedingly unlikely that a man of Turner's abilities and station in life would not have been able to pay the sum claimed by the government, after exhaustion of legal remedies, but that's beside the point.  The point is that raising a theory for the first time after the trial is a flagrant violation of due process.  The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 32 (1976).

It cannot be denied that Turner's stated reason for conveying the money was a fear that the government would "scorch the earth" on him so as to prevent an effective criminal defense. TR 1460  There is not the slightest indicia, in the record, that the conveyance was done with the purpose or with the effect to render himself "judgment proof," in whole or in part.

That's exactly what the government did to Stilley.  They started the investigation no later than 2004.  They attacked Stilley's economic foundation, quite successfully.  When they had him sufficiently weakened, in 2009, they brought the alleged indictment.  They already knew that

Stilley couldn't afford the transcript on his own.  By all appearances, they also knew that Judge

Friot wouldn't let Stilley have the transcripts, until Stilley was otherwise "defanged" and could

not effectively defend himself.

Other parts of this tax loss analysis are better addressed in other parts of this brief.

Defendant Stilley incorporates all parts of this brief into all other parts, as if set forth therein

word for word.

## VI.   THE RESTITUTION ORDER INCLUDES $7,901 TOTALLY UNSUPPORTED BY ANYBODY'S THEORY OF THE RECORD.

Judge Friot made specific findings as to the amounts of tax liability to be laid at the feet

of Stilley.  Stilley supplies the following chart.

| Basis for alleged liability | Page & line | Amount |
|---|---|---|
| Springer's federal tax liability | Sent. TR 409, line 6 | $299,581.00 |
| Stilley's federal tax liability | Sent. TR 408, line 11 | $377,161.00 |
| Stilley's state tax liability | Sent. TR 408, line 12 | $91,627.00 |
| **Total** | | $768,369.00 |

At page 433 of the sentencing transcript Judge Friot made the following conclusions:

1 .... I conclude that
2 Mr. Stilley's federal restitution obligation is $684,653 and
3 that his state restitution obligation is $91,627.

The sum of these two numbers is $776,280.  That's the restitution number shown on

Stilley's judgment and commitment order, Dkt. 338 at page 5.

The difference between the additive amounts, where the Judge Friot made findings on

pages 408 and 409, and the conclusions on page 433, is $7,901.  There is absolutely nothing in

the record that supports this $7,901 in restitution.  That additional amount is simply irrational, supported by no facts or evidence whatsoever.

At page 469 you can see that Judge Friot remanded Stilley to custody, directing that Stilley and Springer be kept apart.  Stilley would be denied access to the docket items in his criminal case for over 10 years.  O'Reilly and Judge Friot worked together to ***stomp out*** Stilley's ability to litigate, such that a competent appellate brief was an impossibility.  They both knew that the foundation for Stilley's prosecution and conviction was pure garbage.  Of course they had to protect it, and protection by lawful means simply wasn't enough.

## VII.   THE GARNISHMENT IS ETHICALLY TAINTED; REMEDIATION IS REQUIRED.

All this was grossly unethical.  Let's start with the attorney's oath.  In Oklahoma the attorney's oath is set forth in Title 5, Attorneys and State Bar, Chapter 1, Appendix 5, *Rules Governing Admission to the Practice of Law in the State of Oklahoma*, sometimes abbreviated as 5 Okl. St. Chap. 1, Appx. 5, Rule 1.  The Oklahoma attorney's oath reads as follows:

> RULE 1. Qualifications to Practice Law in Oklahoma
> Upon being permitted to practice as attorneys and counselors at law, they shall, in open court, take the following oath: **You do solemnly swear** that you will support, protect and defend the Constitution of the United States, and the Constitution of the State of Oklahoma; **that you will do no falsehood or consent that any be done in court, and if you know of any <u>you will give knowledge thereof to the judges of the court,</u> or some one of them, *that it may be reformed*;** you will not wittingly, willingly or knowingly promote, sue, or procure to be sued, any false or unlawful suit, or give aid or consent to the same; you will delay no man for lucre or malice, but will act in the office of attorney in this court according to your best learning and discretion, with all good fidelity as well to the court as to your client, so help you God.
> (Emphases added)

Technically, O'Reilly probably hasn't taken this oath.  He's a *California* attorney and this a very mid-western, *Oklahoma* sort of oath.  But Acting US Attorney Clinton J. Johnson, whose

name appears ½ inch (I measured) above O'Reilly's, *is* an Oklahoma lawyer.  He has taken the

oath of Oklahoma attorneys.  So has  Jeffrey Andrew Gallant, who has appeared as local counsel

in the OKND case.  I'm so proud to have these fine lawyers involved in this litigation, for

reasons which will become increasingly apparent over the next few pages.

Please note that this oath says nothing about *perjury*.  It speaks of *falsehood*.  Perjury is a

*subset* of falsehood.  Any Oklahoma lawyer with knowledge of *falsehood* is duty bound to give

knowledge to the court, *that it may be reformed*.  No attorney having taken the Oklahoma oath is

permitted to *give aid or consent* to any such false or unlawful suit.

Rule 3.3, *Candor to the Tribunal*, of Arkansas, California, and Oklahoma, all buttress the

idea that bar licensed lawyers have a duty to correct falsehoods.  Charles O'Reilly made a total

mockery of his duty of candor to the tribunal, in US v. Springer & Stilley, OKND 4:09-cr-43.

Arkansas Rule 3.8. Special Responsibilities of a Prosecutor, provides in pertinent part as

follows:

The prosecutor in a criminal case shall:

(a) refrain from prosecuting a charge that the prosecutor knows is not supported by
probable cause;
..........
(d) make timely disclosure to the defense of all evidence or information known to the
prosecutor that tends to negate the guilt of the accused *or mitigates the offense*, and, in
connection with sentencing, *disclose to the defense and to the tribunal all unprivileged
mitigating information known to the prosecutor*, except when the prosecutor is relieved
of this responsibility by a protective order of the tribunal; and
(Emphases added)

O'Reilly has made a total mockery of this ethical obligation as well.  If he didn't know at

first, he at the very least came to know that Stilley wasn't guilty of the charges in the purported

indictment.  That's why, during trial, O'Reilly abandoned any pretense of the theories of criminal

liability urged pre-trial.  Then he abandoned his trial theories, conveniently after the cut-off for dispositive motions issued by Judge Friot on 1-22-2010. Dkt. 290, pg. 2 He knew his criminal prosecution was pure garbage, but he didn't want to let it go. He didn't want to conform his conduct to law and ethics.

This Court has adopted the Uniform Federal Rules of Disciplinary Enforcement.  Local Rule 83.5(e).   The Model Federal Rules of Disciplinary Enforcement (MFRDE) are the first Appendix to the Local Rules.  MFRDE Rule IV allows this Court to disbar, suspend, reprimand, or otherwise discipline any lawyer appearing before it, as the circumstances may warrant.  Any violation of the Code or Rules of Professional Conduct of the highest court of the state in which the district court sits, is professional misconduct within the meaning of the rule.

Stilley spent much of his 25 (countable) page reply to response (Dkt. 699) in his motion under 18 USC 3582(c) explaining and legally supporting the myriad ethical violations committed against Stilley.  Both O'Reilly and Judge Friot ignored it.  They both knew that the prosecution of Stilley included many ethical violations that would get virtually any non-government lawyer suspended or disbarred.  O'Reilly won't make amends, and Judge Friot won't offer the mildest suggestion that O'Reilly should behave ethically.

Stilley litigation capabilities were stomped out.  Neither the prosecution, nor Judge Friot, believed Stilley to be guilty of the charges laid out in the purported indictment.   None of them believe the judgment and commitment order was obtained in compliance with due process.

That's why Judge Friot forced Stilley into one default after another, on the most spurious and fraudulent theories.  He forced a default on the post-trial motions for judgment as a matter of law and for new trial.  He forced a default with respect to the timely production of the transcript,

which would have allowed Stilley to prepare at least some creditable appellate arguments prior to prison, and competently defend at sentencing.

Judge Friot and O'Reilly tag-teamed to force Stilley into a default on the attempt to get an order commanding the Department of Justice-Federal Bureau of Prisons (DOJ-FBOP) to cease and desist from its invidious interference with Stilley's use of his own property and rights to property, in order to prepare an appeal brief that would not, if done by an attorney, *ipso facto* constitute malpractice.

Stilley has prepared a Bates stamped, 448 page set of the documents filed at the 10th Circuit, in a failed attempt to get the one direct appeal to which he was entitled, plus the appellate docket. The 10th Circuit Clerk didn't believe Stilley ever filed an opening brief. Look for yourself, you'll see that what I am saying is the truth. Nowhere does the clerk state that Stilley filed his opening brief.

Near the end, Stilley asked for a chance to brief the Court after exhausting his administrative remedies. The 3 judge panel denied that motion, but that's not the story. The story is that they never claimed that Stilley had *already had* the one direct appeal to which he was clearly entitled. That would be the most obvious reason for a denial of the motion - but they didn't say it. They couldn't. De facto, they had helped stomp out Stilley's litigation capabilities, so that he was unable to file a competent opening brief.

Judge Friot and Mr. O'Reilly chose to ignore their ethical duties. Even if this Court finds that Stilley does not have a path to quash the garnishment, it does have a procedural path for obtaining a truthful record. It does have a procedural path to use the power of the court to cleanse the taint of grossly unethical attorney conduct.

This Court also has the power to command the government to disclose the contact information of Springer, allow him to be added as a CM/ECF filer, allow Springer to testify if necessary, and allow Springer and Stilley to collaborate in the defense of their legal interests.

## CONCLUSION

Stilley has been deprived of the ***process due*** unto him.  Happily, a remedy exists, which the US Supreme Court kindly shared with us in *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62, 66-67 (1965).  This Court can - and should - deny the government it's requested garnishment. This Court can state that enforcement of the judgment is available only after Stilley gets *the process due to him*.   After the process due, there will not be sufficient evidence to support a solitary count of the purported indictment.  There will be no basis for any "restitution" whatsoever.  Therefore Stilley will be entitled to all of his moneys now held by the government.

Respectfully submitted,

By:/s/ Oscar Stilley                                 November 24, 2021
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  Charles O'Reilly and his confederates continue on with their scheme to "hide out" Lindsey Kent Springer, and deny Stilley his witness, together with the opportunity to work together toward common interests.  This is the only reason that Springer is not being served with this pleading.  Stilley vehemently objects to such lawlessness.