IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                                         PLAINTIFF

v.                                         Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                                               DEFENDANT

**DEFENDANT OSCAR STILLEY'S MOTION TO CLARIFY AND MODIFY CONDITIONS OF SUPERVISED RELEASE, WITH INCLUDED SUPPORTING BRIEF**

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1. This Court imposed upon Stilley the standard conditions of supervision, and also certain special conditions. Dkt. 338.

2. All the special conditions should be stricken.

3. Stilley asks that the standard conditions be clarified so as make it clear that Stilley retains a valid right to plead the 5th Amendment to any oral or written question propounded by US Probation, whether on a form, in casual conversation, or in some other meeting.

4. The special conditions are all "occupational restrictions" within the meaning of the law.

5. Stilley should not be required to release any financial information except by the Release of Financial Information form, which he has already provided.

6. The entirety of the special conditions amount to an extortion racket.

7. Specifically, the special conditions are made impossible of performance. When the hapless supervisee can't comply with impossible conditions, government

personnel can then demand other concessions including but not limited to waivers of constitutional rights.

8. For example, Stilley is forbidden to use encryption.

9. Limiting language as to encryption are all laughable frauds. Encryption and passwords *by definition* limit access to data. Yet Stilley is subjected to a blanket prohibition on the use of "encryption, cryptography, stenography, compression, password protected files *or other methods* that limit access to, or change the appearance of, data and/or images." (Emphasis added)

10. Impossible conditions are antithetical to honest government, but valuable for the purpose of extorting promises not to exercise fundamental rights such as the 1st Amendment rights of speech, the press, peaceful petition, and religion.

11. On 11-17-2022, Jeff Gallant, local counsel for the government, sent documents to Stilley via an encryption service called Proofpoint Encryption.

12. This is a clear, indeed laughable violation of the special conditions, but if Stilley didn't sign up and agree to the terms and conditions and use encryption, he would be denied the government's exhibit list, and copies of the exhibits.

13. The special conditions arrogate to this Court and the government the power to monitor and record all use of Stilley's computer, cell phone, and other devices that access the internet. This would include private texts, phone calls, and video calls to any private attorney, including but not limited to any attorney who might provide 6th Amendment counsel to Stilley, or represent Stilley, or otherwise engage in attorney-client privileged communications.

14. The special conditions amount to a demand to permit the government to surreptitiously make copies of all attorney-client privileged files and communications whatsoever, made and stored during the time that Stilley was a bar licensed attorney.

15. The special conditions specifically give the power to restrict Stilley's use of email, internet connections, or an internet connection service. See paragraph 9 of the special conditions.

16. This special condition apparently includes the power to prohibit most or all of Stilley's use of the internet or things that access the internet, with no guidance or practical limits.

17. The demand to turn over all screen or usernames, passwords, etc., used by Stilley amounts to a demand that Stilley accede to 24/7 monitoring of his computer work.

18. For example, the government could install a keystroke logger, so as to allow Stilley's adversaries to record, watch, analyze, and review all Stilley's writings, including any efforts to secure justice against the fraudulent judgment and commitment order in which these onerous conditions were included.

19. The US government hires some of the best computer hackers in the world.

20. A computer technician of modest skills, armed with the special conditions, could get copies of every file on Stilley's computer or any other computer that Stilley uses.

21. US Probation has demanded the installation of computer monitoring software by IPPC Technologies, AKA NCPTC.

22. NCPTC software is a known resource hog, up to and including the blue screen of death. IPPC technologies refuses to fix problems in a timely fashion.

23. Other persons have been sent to prison for trying to make the computer work in spite of the wretched incompetence of IPPC Technologies.

24. Nobody would pay for NCPTC software, absent coercion or compulsion.

25. The purveyors of this software have virtually no incentive to competence, since the software doesn't have to satisfy anyone except the US Probation officers who monitor the activities of other people.

26. Stilley has requested the source code of NCPTC software for the purposes of analysis, but has been denied.

27. Stilley has made inquiry of Ryan Forsyth, his Probation Officer, about the search terms to be used against Stilley.

28. Mr. Forsyth couldn't identify a solitary search term for which the government had a legitimate need to monitor.

29. Nobody knows or can know of any legitimate search terms, because Stilley has committed no crime, and the government's theories are utterly inconsistent and fraudulent.

30. The District Court made none of the findings required by US Sentencing Guidelines (USSG) §5F1.5.

31. Aric Holloway is a US Probation Officer of the OKWD.

32. Aric Holloway drafted the Violation Report, asked for 3 months in prison, with 33 months supervision afterward, with the same special conditions to be re-imposed for the additional 33 months.

33. US Sentencing Guidelines (USSG) 5F1.5 requires certain findings prior to the imposition of occupational restrictions.

34. The special computer restrictions imposed upon Stilley are without controversy "occupational restrictions" within the meaning of the law.

35. Stilley asked Holloway to draft proposed findings for the District Court, as to such special conditions.

36. Holloway refused, precisely because he knew that such findings would mandate the admission that Stilley is innocent, and cannot lawfully be subjected to any supervised release whatsoever.

37. Holloway was hostile, threatening to hang up if Stilley continued to ask questions that he construed as "legal" or otherwise improper. Actually, Holloway knew he couldn't punish Stilley if he was honest with Stilley and the Court. Therefore he refused to answer questions when a response would poke holes in the government's fraudulent prosecution of Stilley.

38. Holloway already knows that the pretrial theory of criminal liability is diametrically opposed to the theory at sentencing.

39. No matter which theory Holloway picks, it will have fatal flaws. The first theory was abandoned, the last theory makes a complete mockery of the right to grand jury indictment.

40. The special conditions amount to a continuation of the District Court's systematic attacks on Stilley's right of due process and peaceful petition.

41. During trial, Mr. O'Reilly told Stilley he was currently under another criminal investigation. Stilley hasn't learned the source or current status of that investigation, but has never received notice that it has been discontinued.

42. On information and belief, the intent and current plan of action is to make a mirror image of Stilley's hard drive including deleted files, give it to a team of experts to dissect for technical violations, and provide the files and information to the team currently conducting a criminal investigation of Stilley.

43. Stilley is prohibited from "altering or destroying records of computer use…" Special condition 3.5.

44. Evidence of deleting draft copies of files is enough to constitute a violation of the special conditions. Plus, modern computers keep a vast amount of archival data. Every time Stilley deletes a temporary file in Word, the program says it will keep a copy temporarily.

45. The special conditions give the government power to secure access sufficient to plant incriminating files on Stilley's computer hard drive.

46. The special conditions demand tax returns "for any tax years since 1987 for which the defendant has not filed a tax return." Special condition 4.

47. Essentially, this condition demands, at first, admissions of omissions of acts generally deemed criminal by the federal government.

48. Thereupon this condition demands testimony, within the meaning of the 5th Amendment, despite full knowledge that Stilley doesn't have sufficient information to provide an accurate rendition of the testimony sought.

49. Taken together with the other conditions, the government will have a treasure trove of information, with which to attack Stilley under a plethora of federal criminal statutes.

50. The District Court has enormous incentive accomplish just such a result, precisely because the original judgment and commitment order is flagrantly illegal.

51. Trick-bag special conditions are the perfect means to get more information than Stilley can process, and then use that information to turn bogus convictions into convictions that will survive appeal, even if Stilley were allowed an appeal.

52. Additionally, the judgment and commitment in this case (Dkt. 338) proves that Stilley's good faith belief in the representations of his clients and of Lindsey Springer, nevertheless was not enough to avoid criminal liability.

53. Demanding complex judgments and factual and legal claims spanning 35 years, all of which can be immediately turned over to prosecutorial authorities in the midst of a current criminal investigation, is utterly antithetical to the plain language and intent of the 5th Amendment.

54. Demanding *de facto* power to copy and search all of Stilley's files going back literally decades, for a criminal investigation no less, is a breathtaking violation of the 4th Amendment.

55. Stilley has attempted to get a written commitment that the government does not claim any information or performance under special condition 5, but without success.

56. Stilley's special conditions are overly broad, unsupported by the facts, violate his Fourth Amendment privacy rights, affect his employment prospects and make it more difficult for him to pay his monthly mandatory restitution. These special conditions violate too many constitutional protections and statutory and rule-based rights for Stilley to effectively brief them in the limited time available to him.

57. To the extent not contrary to law or rule or Stilley's legal interests, Stilley incorporates all other motions and briefs filed on the same day as this pleading, as if set forth herein word for word. Stilley reserves and claims the right to rely on any other part of the official record in the captioned case, from the filing of the first docket item forward, as defined by Federal Rule of Appellate Procedure (FRAP) 10(a), in support of his claims and arguments.

WHEREFORE, Stilley respectfully requests an order striking the special conditions of Stilley's supervised release; declaring that Stilley has a right to plead the 5th Amendment without fear of separate criminal sanctions for the exercise of a constitutional right; and for such other and further relief as may be appropriate whether or not specifically requested.

**BRIEF IN SUPPORT OF MOTION**

Stilley has a legal right under the 1st Amendment to peacefully petition for clarification or modifications of special conditions. Here's what you'll find under FRCrP 32.1:

> *Note to Subdivision* (b). Subdivision (b) concerns proceedings on modification of probation (as provided for in 18 U.S.C. §3651). The probationer **should have the right to apply to the sentencing court for a <u>clarification</u> or <u>change</u> of conditions**. American Bar Association, Standards Relating to Probation §3.1(c) (Approved Draft, 1970). This avenue is important for two reasons: (1) the probationer should be able to obtain resolution of a dispute over an ambiguous term or the meaning of a condition ***without first having to violate it***; and (2) in cases of neglect, overwork, or simply unreasonableness on the part of the probation officer, **the probationer should have recourse to the sentencing court when a condition needs <u>clarification or modification</u>.**
> (Emphases added)

The special conditions imposed on Stilley are occupational restrictions within the meaning of the law. Stilley has a BSBA in Administrative Management from the University of Arkansas. It would be virtually impossible for Stilley to maintain employment consistent with his education, so long as the special conditions remain outstanding.

*United States v. Sunday*, 447 F. App'x 885, 889-90 (10th Cir. 2012) provides most of the authority needed in this case. Excerpts are reproduced below:

> Mr. Sunday objects to the occupational restriction which prohibited him from using or possessing a computer not authorized by his probation officer, and imposing monitoring and surveillance conditions on any computer use. He argues these restrictions were imposed without the court making the findings required by USSG §5F1.5 for occupational restrictions. Mr. Sunday also argues they are overly broad, unsupported by the facts, violate his Fourth Amendment privacy rights, affect his employment prospects and make it more difficult for him to pay his monthly mandatory restitution.
> USSG §5F1.5 provides as follows:
> **Occupational Restrictions**

(a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or **limiting the terms on which the defendant may do so**, only if it determines that:

(1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

(2) imposition of such a restriction is reasonably necessary to protect the public because **there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.**

(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

**The government concedes that the district court failed to make the findings required by USSG §5F1.5, and <u>thus agrees this failure was a plain error,</u>** for purposes of our plain error review.**2** We now consider whether this plain error, as well as the substance of the actual restriction on computer use and the monitoring conditions, affected Mr. Sunday's substantial rights.

We begin by noting that we have already cautioned that the broad prohibitions on computer use or possession can interfere with such routine activities as "using a computer at a library to do any research, get a weather forecast, or read a newspaper online." <u>United States v. White</u>, 244 F.3d 1199, 1206 (10th Cir. 2001). Indeed, "'although a defendant might use the telephone to commit fraud, this would not justify a condition of probation that includes an absolute bar on the use of telephones.'" <u>United States v. Sofsky</u>, 287 F.3d 122, 126 (2d Cir. 2002) (quoting <u>United States v. Peterson</u>, 248 F.3d 79, 83 (2d Cir. 2001)). Thus, we must ensure that the restriction is "for the minimum time and to the minimum extent necessary to protect the public," and there is a "reasonably direct relationship" between Mr. Sunday's occupation and the offense of conviction.

In this case, Mr. Sunday is a computer repairman which, obviously, requires direct contact with various computers. And while he used his computer, in part, to commit his offense of conviction, the computer was not the central or solitary means he used. He conducted his fraudulent bank transactions in a variety of ways, using the computer for some of them, undoubtedly, but presumably not all.

Furthermore, if Mr. Sunday is to resume working and becoming a productive member of society, he would most likely seek employment in the computer field. The restriction as written would seriously impair his ability to do so. <u>See United States v. Holm</u>, 326 F.3d 872, 878 (7th Cir. 2003) ("Because [defendant] is most likely to find gainful employment in the

computer field upon his release, the conditions as currently written could affect his future productivity and jeopardize his rehabilitation in violation of the command of § 3583(d)."). And, inhibiting Mr. Sunday's work prospects will make it more difficult for him to pay his mandatory monthly restitution.

We note that the government downplays the imposition caused by this restriction, arguing that Mr. Sunday simply has to ask permission from his probation officer. While we realize that such "conditional" restrictions are viewed more favorably by most courts than unconditional restrictions, this restriction could be quite burdensome to Mr. Sunday, were he to return to repairing computers.

**We therefore conclude that the computer restriction, as written, affected Mr. Sunday's substantial rights.** See United States v. Mayo, 642 F.3d 628 (8th Cir. 2011) (computer use restriction was plain error affecting substantial rights); United States v. Barsumyan, 517 F.3d 1154, 1162 (9th Cir. 2008) (same); United States v. Pruden, 398 F.3d 241, 251 (3rd Cir. 2005) ( "A plainly erroneous condition of supervised release will inevitably affect substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration.").

We also conclude that **imposition of an erroneous restriction "seriously affect[ed] the fairness . . . of [the] judicial proceedings."** United States v. Olano, 507 U.S. 725, 736, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). See Pruden, 398 F.3d at 251 ( '[I]mposing a sentence not authorized by law seriously affects the fairness, integrity and reputation of the proceedings.").

In sum, given the required scrutiny which we give to occupational restrictions, we conclude we must vacate the occupational restriction relating to computer use and monitoring and remand for further consideration, including making the findings required before imposition of any occupational restriction. See Mike, 632 F.3d at 698 (noting that where court failed to make §5F1.5 findings before imposing occupational restrictions, we vacated and remanded outright).
(Emphases added)

If the required findings were made, they should be in the Sentencing Transcript, in or near pages 454 through 459.  The required findings were not made. See Timeline pg. 55, and scroll through the relevant portions of the transcript.

If the court made the findings, whether then or now, it would be duty bound to grant Stilley a judgment of acquittal, ***as to everything***.  The government would

11

have to let Stilley have his passport back, and walk out of the courtroom a free and totally vindicated man.

How can we know this?  Mr. O'Reilly first claimed Springer *earned* money, and failed to pay taxes on it.  If Springer earned the money, Stilley had a **legal and ethical duty** to pay the money over, out of his IOLTA (Interest on Lawyer's Trust Account).  That's the sum and substance of Stilley's motion for judgment as a matter of law and new trial.  Dkt. 261 and 263.  Judge Friot struck those pleadings because an honest ruling on them would have completely exonerated Stilley.

Under O'Reilly's pretrial theories, Stilley's "offense" was paying the *just debts* of clients out of *client trust funds*, at the express directive of his clients.  That isn't "unlawful conduct" within the meaning of USSG §5F1.5(a)(2).  Conduct cannot be "unlawful" and a "legal and ethical duty" at the same time.

The government manufactured 4 different theories of criminal liability.  Dkt. 701, pg. 23-25.  The government cannot *lawfully* go beyond the indictment.  See *Bousley v. United States*, 523 U.S. 614, 624, 118 S. Ct. 1604, 1612 (1998), where the Court said:

> In this case, the Government maintains that petitioner must demonstrate that he is ***actually innocent*** of both "using" and "carrying" a firearm in violation of § 924(c)(1). But petitioner's indictment charged him only with "using" firearms in violation of § 924(c)(1). App. 5-6. And there is no record evidence that the Government elected not to charge petitioner with "carrying" a firearm in exchange for his plea of guilty. Accordingly, petitioner need demonstrate no more than that he did not "use" a firearm as that term is defined in *Bailey*.
> (Emphasis added)

The government must prove that Stilley is guilty of the charges of ***the indictment***. Pretrial, the government repeatedly stated their theory that Springer ***earned*** the money but didn't pay taxes on it.  After trial, they said that if the jury hadn't concluded that Springer & Stilley stole Turner's $250,000, they would have acquitted.

In other words, the government admits that Stilley ***could not possibly be guilty*** of the charges **of the indictment**.  That means when the District Court – any District Court – does the analysis required by the Sentencing Guidelines mentioned above, the only lawful outcome is a judgment of acquittal. A district court abuses its discretion when it ***bases a decision*** on a clearly erroneous finding of fact or an erroneous conclusion of law, or when its ruling manifests a clear error of judgment. See *Kilgore v. Attorney Gen. of Co.*, 519 F.3d 1084, 1086 (10th Cir.2008).

Let's make this easy on ourselves.  Stilley has already served two full 5 year prison sentences, plus over 2 years additional custody.  Therefore, the loss of ***any*** count of conviction entitles Stilley to restoration of his full liberty, without any "supervised release." *United States v. Haymond*, 139 S. Ct. 2369, 2379, 204 L. Ed. 2d 897, 906-907 (2019).

Prison time due to revocation proceedings is punishment ***for the original crime***.  See *United States v. Haymond*, 869 F.3d 1153, 1165 (10th Cir. 2017) for an explanation:

> Second, 18 U.S.C. § 3583(k) is unconstitutional because it circumvents the protections of the Fifth and Sixth Amendments by expressly imposing an

13

increased punishment for specific subsequent conduct. In Johnson v. United States , 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000), the Supreme Court made clear that, in order to avoid serious constitutional concerns, **revocation of supervised release must be viewed as punishment for the original crime of conviction**, not as punishment for the violation of the conditions of supervised release. Johnson , 529 U.S. at 699–700, 120 S.Ct. 1795 ; id. at 700, 120 S.Ct. 1795 (noting "the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release."); id. at 701, 120 S.Ct. 1795 ("[P]ostrevocation penalties relate to the original offense."); Cordova , 461 F.3d at 1186 ("It is well-settled that supervised release is 'part of the penalty for the initial offense.' " (quoting Johnson , 529 U.S. at 700, 120 S.Ct. 1795 )). Specifically, **these concerns include the fact that "the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt."** Johnson , 529 U.S. at 700, 120 S.Ct. 1795 (citing 18 U.S.C. § 3583(e)(3) ). Further, "[w]here the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense." Id. "Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties." Id. (collecting cases). "We therefore attribute postrevocation penalties to the original conviction." Id.
(Emphases added)

These revocation proceedings have been a litany of serious problems. None of those problems are more severe than the fact that this Court has no valid original conviction upon which to hang its hat. There are multiple theories of criminal liability, all of which have fatal flaws. The Court had a clear legal duty to make specific findings but didn't make them. The government wants the same conditions reimposed, but refuses to put anything on paper about the findings. Of course – anything the government might say would be damning to its case.

Respectfully submitted,

14

| | |
|---|---|
| By: /s/ Oscar Stilley<br>Oscar Stilley<br>10600 N Highway 59<br>Cedarville, AR 72932-9246<br>479.384.2303 mobile<br>479.401.2615 fax<br>oscarstilley@gmail.com | November 20, 2022<br>Date |

CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, thereby serving all persons having ECF privileges and entitled to service in this case. Stilley does not have access to Lindsey Springer's physical address, email, and phone number, and thus cannot serve him.