IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                        Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                          DEFENDANT

**DEFENDANT STILLEY'S MOTION TO STRIKE THE SPECIAL CONDITIONS OF SUPERVISED RELEASE, WITH INCLUDED SUPPORTING BRIEF**

Comes now Defendant Oscar Stilley (Stilley) and for his Motion to Strike the Special Conditions of Supervised Release, and states:

1.    Stilley on February 27, 2023 inquired of AUSA Jeff Gallant, as to the government's position on this motion. Mr. Gallant with commendable promptness responded the same day, saying that "I would prefer reviewing your filed motion and the precise modifications you are proposing before stating what the government's position will be with respect to specific modifications. I believe that would be a more efficient way to proceed." Stilley trusts that the government in its response will state its position, record facts, and reasons, for all the special conditions it seeks to preserve.

2.    Stilley inquired of his Probation Officer Ryan Forsyth, who stated that US Probation – Western District of Arkansas (ARWD) had no position concerning the relief sought, and that it was his understanding that the Northern District of Oklahoma (OKND) didn't have a position either. Stilley sent an email to Kory McClintock, US Probation on 3-14-2023. She has not responded.

3. This Court on November 21, 2022 imposed upon Stilley the standard conditions of supervision, and also the special conditions originally imposed in Docket #338. Dkt. 752.

4. Stilley has installed NCPTC monitoring software on his computer and phone, and turned over a list of his passwords and usernames. Stilley has complied with the special conditions, but seeks an order terminating all the special conditions, and compelling the destruction of all records and information gained thereby.

5. The special conditions in paragraphs 1, 3, 5, 6, 7, and 9 are all "occupational restrictions" within the meaning of the law.

6. Many of the special conditions are so overbroad as to be impossible of performance.

7. For example, Stilley is forbidden to use encryption, yet the modern world virtually demands the use of encryption.

8. Stilley is prohibited from "altering or destroying records of computer use…" Special condition 3.5.

9. Evidence of deleting draft copies of files is enough to constitute a violation of the special conditions.  Plus, modern computers keep a vast amount of archival data.  Every time Stilley deletes a temporary file in Word, the program says it will keep a copy temporarily.

10. Special condition 5 is worded so broadly that a mere suggestion that someone should get a CPA and prepare and file tax returns violates the condition.

11. While on home confinement, Stilley as part of his duties for his employer REVAMP (Remember Every Victim and Missing Person in US, Inc.) helped an inmate find a CPA, get his papers together, and file his tax returns. If Stilley did the same thing on supervised release, it would violate special condition #5. Stilley's computer and phone would dutifully snitch on him for doing the work.

12. Stilley has been informed by his Probation Officer that any access to an offline computer would be construed as a violation of the special conditions.

13. Stilley's special conditions are overly broad, vague, unsupported by the facts, violate his Fourth Amendment rights, devastate his employment prospects and make it more difficult for him to pay his monthly mandatory restitution. These special conditions violate other legal protections as well.

14. The monitoring software, now on Stilley's computer and phone, allows the government anything up to and including a keystroke logger, so as to allow Stilley's adversaries to record, watch, analyze, and review all Stilley's writings. This would include attempted communications with lawyers, courts, and attorney ethics enforcement authorities.

15. NCPTC software is a known resource hog, up to and including the blue screen of death. Since installing the monitoring software, Stilley's internet doesn't work right, but he can't get an internet speed test to work, as to upload speed. It says something is wrong with the network.

16. Other persons have been sent to prison for trying to effectuate workarounds when IPPC Technologies prevented their computers from working properly.

17. The cost of monitoring is about $35 per device, which Stilley must pay for out of his own very limited funds.

18. Stilley has never been accorded the one direct appeal of his criminal conviction, to which he is by law and rule entitled.

19. US Sentencing Guidelines (USSG) 5F1.5 requires certain findings prior to the imposition of occupational restrictions.

20. The District Court never made the findings required by USSG 5F1.5, specifically a finding as to the offense of conviction.

21. The findings relied upon by the Court, Revocation TR 93-97 for re-imposing the special conditions, (Dkt. 752, pg. 5-6) violate principles of judicial estoppel.

22. The government has used four different theories of criminal liability. Dkt. 701, pg. 23-25.

23. This Court should compel the government to pick one, and then prove that their chosen theory is legally sound and supported by evidence in the record.

24. All four theories have fatal flaws. This Court should not "save" the government by picking a theory and trying to defend it from the bench.

25. This Court should order the government to respond to Docket #701, pages 23-25, and also to the argument at Docket 263, pages 4-13.

26. To the extent not contrary to law or rule or Stilley's legal interests, Stilley reserves the right to rely on any other part of the official record in the captioned case, from the filing of the first docket item forward, as defined by Federal Rule of Appellate Procedure (FRAP) 10(a), in support of his claims and arguments.

WHEREFORE, Stilley respectfully requests an order requiring the government to respond to Ground 4 of Stilley's 2255 motion, Dkt. 701, pg. 23-25, and commit to a theory of criminal liability under which they authorize the Court to make the findings required by USSG 5F.1.5; requiring the government to also respond to the argument at [Docket 263, pages 4-13](); striking the special conditions of Stilley's supervised release, in their entirety; commanding the destruction of all information gained from the enforcement of the special conditions; and for such other and further relief as may be appropriate whether or not specifically requested.

**BRIEF IN SUPPORT OF MOTION**

Stilley previously filed a motion to modify or clarify the special conditions of supervised release. Paragraph 3 of that pleading asked that all the special conditions be stricken. Dkt. 750. The Court asked for further briefing and a definite statement of the relief sought. Tulsa County Jail[1] (AKA David L. Moss Criminal Justice Center) stomped out Stilley's ability to prepare effective pleadings in a timely manner. This Court on December 13, 2022 denied the motion, without prejudice to a properly supported motion, stating the exact proposed modified conditions. Dkt. 760. Stilley by prison mailbox rule filed a motion for extension of time to provide the required supplementation, also on December 13, 2022. It took until the 19th for this pleading to get a few blocks down the street, yet another example of the perfidy of the personnel at Tulsa County Jail.

---

[1]    AKA David L. Moss Criminal Justice Center.

The court's power to modify conditions of supervised release, at any time that such conditions are in effect, is set forth at 18 USC 3583(e)(2). Stilley's right to file this motion is uncontested.

Most of the special conditions imposed on Stilley are occupational restrictions within the meaning of the law. Stilley has a BSBA in Administrative Management from the University of Arkansas, with high honors. It would be virtually impossible for Stilley to find employment consistent with his education and experience, so long as the special conditions remain outstanding.

Stilley's employer REVAMP (Remember Every Victim and Missing Person in US, Inc.) has continued the employment of Stilley, with the understanding that he will challenge the special conditions. REVAMP changed the password of Stilley's work email, thus sealing him off from this information so long as computer and phone monitoring are in place.

US Probation construes the special conditions to prohibit Stilley from using an offline computer. Thus Stilley has no means of working with confidential files, received from governmental authorities on condition that the records remain confidential. Working with the files would require Stilley to expose them to US Probation, to the private corporation providing monitoring services, and quite possibly to other persons as well.

Stilley is REVAMP's sole regular employee. Firing Stilley could well send Stilley back to prison, contrary to REVAMP's legitimate interests. The solution has

6

been to cut off Stilley from sensitive information, pending a resolution of these issues in court.

*United States v. Sunday*, 447 F. App'x 885, 889-90 (10th Cir. 2012) provides most of the authority needed in this case. Stilley at Docket 750, pg. 9-11 quoted extensively from the text. Since the information is a click away, it won't be necessary to burden the record by reprinting the quote. USSG §5F1.5, upon which the *Sunday* court relied, is reproduced below:

> USSG §5F1.5
> **Occupational Restrictions**
> (a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or **limiting the terms on which the defendant may do so**, only if it determines that:
> (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the **offense of conviction**; and
> (2) imposition of such a restriction is reasonably necessary to protect the public because **there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted**.
> (b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.
> (Emphases added)

If the required findings were made as to the original judgment, Docket 338, they should be in the Sentencing Transcript, in or near pages 454 through 459. The required findings were not made. See Timeline pg. 55, and scroll through the relevant portions of the transcript.

Charles O'Reilly, who prosecuted Stilley, first claimed Springer *earned* money, and failed to pay taxes on it. If Springer earned the money, Stilley had a

*legal and ethical duty* to pay the money over, out of his IOLTA (Interest on Lawyer's Trust Account). That was the sum and substance of Stilley's brief in support of motion for judgment as a matter of law and new trial. Dkt. 263, pg. 4-13. Judge Friot *sua sponte* struck #261, the motion, and #263, the brief. Both before and after striking this motion, the Court in written opinions said that issuing such an order *sua sponte* is unconstitutional. Dkt. 701, 44-49.

This Court should order the government to respond specifically to the arguments at Dkt. 263, pg. 4-14. Stilley's argument on those pages is just as relevant to the question of special conditions as it was to the question of judgment as a matter of law, when it was filed. There is no valid legal basis to dodge these questions yet again.

Under O'Reilly's pretrial theories, Stilley's "offense" was paying the *just debts* of clients out of *client trust funds*, at the express directive of his clients. That isn't "unlawful conduct" within the meaning of USSG §5F1.5(a)(2). Conduct cannot be "unlawful" and a "legal and ethical duty" at the same time.

The government manufactured 4 different theories of criminal liability. Dkt. 701, pg. 23-25. The government cannot **lawfully** go beyond the indictment. See *Bousley v. United States*, 523 U.S. 614, 624, 118 S. Ct. 1604, 1612 (1998):

> In this case, the Government maintains that petitioner must demonstrate that he is ***actually innocent*** of both "using" and "carrying" a firearm in violation of § 924(c)(1). But petitioner's indictment charged him only with "using" firearms in violation of § 924(c)(1). App. 5-6. And there is no record evidence that the Government elected not to charge petitioner with "carrying" a firearm in exchange for his plea of guilty. Accordingly, petitioner need demonstrate no more than that he did not "use" a firearm as that term is defined in *Bailey*.

8

(Emphasis added)

The government must prove that Stilley is guilty of the charges of ***the indictment***. Pretrial, the government repeatedly stated their theory that Springer ***earned*** the money but didn't pay taxes on it. After trial, they said that if the jury hadn't concluded that Springer & Stilley stole Turner's $250,000, they would have acquitted.

In other words, the government admits that Stilley ***could not possibly be guilty*** of the charges **of the indictment**. That means when the District Court does the analysis required by USSG 5F1.5, the findings will prove that the special conditions are thoroughly contrary to the Sentencing Guidelines.

A district court abuses its discretion when it ***bases a decision*** on a clearly erroneous finding of fact or an erroneous conclusion of law, or when its ruling manifests a clear error of judgment. See *Kilgore v. Attorney Gen. of Co.*, 519 F.3d 1084, 1086 (10th Cir.2008).

Stilley has already served two full 5 year prison sentences, plus 3 additional years of additional custody,[2] as of April 22, 2023. Therefore, the loss of ***any*** count of conviction entitles Stilley to restoration of his full liberty, without any "supervised release." *United States v. Haymond*, 139 S. Ct. 2369, 2379, 204 L. Ed. 2d 897, 906-907 (2019).

---

[2] Supervised release is considered "custody" for purposes of a petition under 28 USC 2255. *U.S. v. Cervini*, 379 F.3d 987, 989 n.1 (10th Cir. 2004); Oyler v. Allenbrand, 23 F.3d 292, 293-94 (10th Cir. 1992).

Prison time due to revocation proceedings is punishment *for the original crime*. See *United States v. Haymond*, 869 F.3d 1153, 1165 (10th Cir. 2017):

> Second, 18 U.S.C. § 3583(k) is unconstitutional because it circumvents the protections of the Fifth and Sixth Amendments by expressly imposing an increased punishment for specific subsequent conduct. In Johnson v. United States , 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000), the Supreme Court made clear that, in order to avoid serious constitutional concerns, **revocation of supervised release must be viewed as punishment for the original crime of conviction**, not as punishment for the violation of the conditions of supervised release. Johnson , 529 U.S. at 699–700, 120 S.Ct. 1795 ; id. at 700, 120 S.Ct. 1795 (noting "the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release."); id. at 701, 120 S.Ct. 1795 ("[P]ostrevocation penalties relate to the original offense."); Cordova , 461 F.3d at 1186 ("It is well-settled that supervised release is 'part of the penalty for the initial offense.' " (quoting Johnson , 529 U.S. at 700, 120 S.Ct. 1795 )). Specifically, **these concerns include the fact that "the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt."** Johnson , 529 U.S. at 700, 120 S.Ct. 1795 (citing 18 U.S.C. § 3583(e)(3) ). Further, "[w]here the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense." Id. "Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties." Id. (collecting cases). "We therefore attribute postrevocation penalties to the original conviction." Id.
> (Emphases added)

The Court at the revocation hearing cited *U.S. v. Mike*, 632 F.3d 686 (10th Cir. 2011), a case also cited by *US v. Sunday*, supra. Revocation TR 91-92. The Court acknowledged that Stilley opposed the special conditions. *Id. lines 24-25 of 91, plus lines 1-2 of 92.* The Court acknowledged a legal duty to make specific findings, as required by USSG §5F1.5. *Id. page 93.*

10

The Court made findings based *solely* on the "theft theory" that was raised by the government long after trial, and after this Court's deadline for dispositive motions. Dkt. 290, pg. 2. That violates the doctrine of judicial estoppel. The concept of judicial estoppel was explained in *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) as follows:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis* v. *Wakelee*, 156 U.S. 680, 689 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram* v. *Herdrich*, 530 U.S. 211, 227, n. 8 (2000); see 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) ("hereinafter Wright") ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

The elements of judicial estoppel are set forth two paragraphs later, in the same case, at pages 750-751.

> Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *Allen*, 667 F.2d, at 1166; accord, *Lowery* v. *Stovall*, 92 F.3d 219, 223 (CA4 1996); *Patriot Cinemas, Inc.* v. *General Cinema Corp.*, 834 F.2d 208, 212 (CA1 1987). Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. *United States* v. *Hook*, 195 F.3d 299, 306 (CA7 1999); *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (CA5 1999); *Hossaini* v. *Western Mo. Medical Center*, 140 F.3d 1140, 1143 (CA8 1998); *Maharaj* v. *Bankamerica Corp.*, 128 F.3d 94, 98 (CA2 1997). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an

inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards*, 690 F.2d, at 599. Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," *United States* v. *C. I. T. Constr. Inc.*, 944 F.2d 253, 259 (CA5 1991), and thus poses little threat to judicial integrity. See *Hook*, 195 F.3d, at 306; *Maharaj*, 128 F.3d, at 98; *Konstantinidis*, 626 F.2d, at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. See *Davis*, 156 U.S., at 689; *Philadelphia, W., B.R. Co.* v. *Howard*, 13 How. 307, 335-337 (1852); *Scarano*, 203 F.2d, at 513 (judicial estoppel forbids use of "intentional self-contradiction . . . as a means of obtaining unfair advantage"); see also 18 Wright § 4477, p. 782.

As to the first element, the government claimed pretrial, in writing, not less than 6 times, that Springer *earned* money, and didn't pay taxes on it. Dkt. 701, pg. 24-25. After trial the government confessed that, absent a finding that the defendants stole the money, the jury would have acquitted. Dkt. 701, pg. 23. The government's first and last theories of criminal liability are in irreconcilable conflict with each other.

If Springer earned the money, Stilley had a civil, criminal, and ethical duty to pay over the money. In fact, California bar disciplinary authorities say that failure to promptly so pay such monies is presumptively worthy of a 3 month suspension from the practice of law.³ California rules are cited because they are exceptionally well developed, not because other lawyer ethics rules would allow a different result.

---

³     The referenced provision is at page 187 of Rules of Procedure of the State Bar of California: Title IV. Standards For Attorney Sanctions For Professional Misconduct Part A.; *Standard 2.2: Commingling And Other Trust Account Violations*. The page number may change with revisions of this resource.

This Court accepted the government's original premise, thus establishing the second element. For example, on the first day of a 3 day sentencing proceeding, at page 85 of the sentencing transcript, this Court said:

> 4 But the overarching question of whether the funds that you
> 5 received over the years that were involved in this case were
> 6 *received by you for services rendered* has been **conclusively**
> 7 **resolved against you by the jury verdict**.
> (Emphases added)

As to the third element, the government admitted, in writing, that unless the jury relied on the theory of theft, they would have acquitted, at least as to Count 4. Dkt. 701, pg. 23. In other words, Stilley is necessarily innocent of the crime, unless the jury relied on a theory that violates the 5th Amendment right to indictment, judicial estoppel, and a whole host of other legal doctrines.

The US Supreme Court explained the purpose of judicial estoppel at pages 749-50 of *New Hampshire v. Maine*, as follows:

> Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is "to protect the integrity of the judicial process," *Edwards* v. *Aetna Life Ins. Co.*, 690 F.2d 595, 598 (CA6 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," *United States* v. *McCaskey*, 9 F.3d 368, 378 (CA5 1993). See *In re Cassidy*, 892 F.2d 637, 641 (CA7 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); *Allen* v. *Zurich Ins. Co.*, 667 F.2d 1162, 1166 (CA4 1982) (judicial estoppel "protect[s] the essential integrity of the judicial process"); *Scarano* v. *Central R. Co.*, 203 F.2d 510, 513 (CA3 1953) (judicial estoppel prevents parties from "playing `fast and loose with the courts'" (quoting *Stretch* v. *Watson*, 6 N.J. Super. 456, 469, 69 A.2d 596, 603 (1949))). Because the rule is intended to prevent "improper use of judicial machinery," *Konstantinidis* v. *Chen*, 626 F.2d 933, 938 (CADC 1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," *Russell* v. *Rolfs*, 893 F.2d 1033, 1037 (CA9 1990) (internal quotation marks and citation omitted).

13

All the equitable considerations in this case weigh in favor of application of judicial estoppel. This Court at the hearing at which the offending conditions were imposed conceded that Stilley objected to the special conditions. Revocation TR 91-92. The Court was mistaken about the substantive counts of conviction against Stilley, saying that he was convicted of tax fraud. Revocation TR 19. See also Revocation TR 94, line 8. Tax fraud is criminalized at 26 USC 7206, and carries a maximum penalty of 3 years per count. Id. In fact Stilley was convicted of two counts of tax evasion under 26 USC 7201,[4] which carries a maximum penalty of 5 years in prison. Dkt. 338, pg. 1.

The government abandoned the original theory of criminal liability, apparently because they belatedly realized that their pretrial theory exonerates Stilley. If the Court plugged in the facts of the government's pretrial theory, it would have to explain why Stilley must now be prevented from paying the *just debts of trustors*, whose money is held in trust by Stilley – an absurdity.

This Court can't use the first theory for another reason. There are only two substantive counts. Count 3 involves Eddy Patterson and tax year 2003. Count 4 involves Patrick Turner and tax year 2005. Eddy Patterson conceded that Stilley merely followed Patterson's instructions, in conveying his money from the trust account. Trial TR 798. Patrick Turner testified that Stilley just followed Turner's orders. Trial TR 1515. He also said that he had no evidence that Stilley committed any crime, which wouldn't be true if Stilley stole or helped steal his money. *Id*. The

---

[4]   18 USC 2, the aider and abettor statute, is also listed.

government's pretrial theory is utterly precluded, with respect to Stilley, by *the evidence that the government presented*.

When Stilley filed his motion under 28 USC 2255, (Dkt. 701) to set aside his conviction, the government raised statute of limitations. This Court dismissed that petition, solely on grounds of limitations, without requiring the government to respond to the factual allegations. Statute of limitations is no defense here.

The government chose to incarcerate Stilley again, knowing full well that their original conviction was legally and factually unsound. Tellingly, the government didn't ask for the re-imposition of the special conditions.

**CONCLUSION**

Any theory the government might choose, in defense of the special conditions, has fatal flaws. Dodging the occupational restrictions might at first seem to be a valid choice, but it isn't. ***All*** the special conditions require at least some consideration of the nature of the offense **of conviction**. Honest consideration of that question will inevitably prove that there is no lawful and ethical theory upon which ***any*** special conditions might rest. Government lawyers are ethically barred from taking any position that would save the special conditions. Failure to correct known falsehoods in the record is a violation of the oath of office of any Oklahoma licensed attorney involved in this case. Dkt. 699, pg. 7.

Respectfully submitted,

By: /s/ Oscar Stilley             March 16, 2023
Oscar Stilley                     Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. Stilley also served this pleading by US Mail, postage prepaid, addressed to:

Lindsey Kent Springer
2626 E 72ND ST
TULSA, OK 74136