IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case No. 09-cr-0043-2-SPF |
| ) | |
| OSCAR AMOS STILLEY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the court is defendant Stilley's Motion to Strike the Special Conditions of Supervised Release, doc. no. 774, filed on March 16, 2023. The government has responded to the motion by way of a response filed on April 3, 2023, doc. no. 776. Also before the court is a related motion, doc. no. 777, filed on April 10, 2023. As will be seen, it is not necessary for the government to respond to the new motion.

A.   <u>Procedural History</u>.

Following a 14-day jury trial in October and November, 2009, defendant Stilley was found guilty on one count of conspiracy to defraud the United States and two counts of tax evasion. Doc. no. 338. The court imposed a prison term of 180 months, to be followed by three years of supervised release. Mr. Stilley's three-year term of supervised release began on August 10, 2022.

Soon after Mr. Stilley was released, the United States Probation Office filed a Petition, and an Amended Petition, for Warrant or Summons, asserting several violations by Mr. Stilley of his conditions of supervised release. In general, the violations placed in issue by the Amended Petition related to Mr. Stilley's refusal to allow the installation of remote monitoring software, his refusal to provide information as to his personal finances, his refusal to provide password and login

information relating to devices to which Mr. Stilley had access, and his failure to provide complete and accurate monthly supervision reports.

    B.    <u>Proceedings at the Hearing on the Petition</u>.

The Amended Petition came on for hearing on November 21, 2022. On Sunday, November 20, 2022, the day before the hearing on the Amended Petition, Mr. Stilley filed a flurry of motions, only one of which is relevant here. The motion relevant here was a motion by which Mr. Stilley sought clarification and modification of his conditions of supervised release. Doc. no. 750.

At the November 21 hearing, the court found against Mr. Stilley on two of the asserted violations and withheld adjudication as to the other two.

As relevant here, the court announced its rulings as follows:

> I do determine that violations 1 and 3 have been established beyond a reasonable doubt, let alone by a preponderance of the evidence, but I'm going to leave violations 2 and 4 pending and unadjudicated. I may dismiss those violations when I rule on the motion for modification of conditions. That is to be determined. But in my view, the violations asserted in violations 1 and 3 are serious and they do compel revocation.

Tr. 101.[1] Mr. Stilley's eleventh-hour motion to clarify and modify his conditions of supervised release was denied. Doc. no. 760 (order denying motion). However, with the benefit of representations made by Mr. Stilley at the hearing as to the impact of some of his conditions of supervised release on his ability to maintain employment, the court invited Mr. Stilley to inform the court and the government (as well as the probation office) as to the exact modifications he would propose:

> We have pending a motion to modify conditions, and after that motion to modify conditions has been responded to I may attempt to conform those reporting requirements, which are implicated in violations 2 and 4, I may attempt to conform those more closely to the circumstances in which Mr. Stilley finds himself.

---

[1] References to "Tr." are to the transcript of the November 21, 2022 hearing, doc. no. 768.

Tr. 102.

At the hearing, the court left no room for doubt as to its desire for specification, from Mr. Stilley, as to what, exactly, he proposed by way of modified conditions of supervision:

> Mr. Stilley, I would recommend that you avail yourself of the opportunity to file a supplement to your motion so that I can see in black and white exactly what it is that you propose the court does by way of modification of the reporting conditions, because violations 2 and 4 are premised on your reporting requirements, on your reporting conditions, violations 1 and 3 are not.

Tr. 103.

One more time, at the conclusion of the hearing, the court reiterated that it wanted to see Mr. Stilley's "exact proposed modified conditions so that I can have something to look at and consider when I determine, with the benefit of the government's response, whether the conditions with respect to reporting should be modified." Tr. 120.

  C. <u>Findings at the Hearing Relevant to the Conditions at Issue</u>.

The standard and special conditions of supervision which now apply to Mr. Stilley were incorporated into the original judgment, doc. no. 338, filed on April 28, 2010. Some of the special conditions are, by any standard, intrusive. They invade Mr. Stilley's privacy. For that reason, two months before sentencing (thirteen years ago), the court entered an order reciting the general nature of the contemplated special conditions so that Mr. Stilley would clearly be on notice of the prospect of imposition of unusual special conditions. Doc. no. 313, filed on February 23, 2010. For that reason, it is noteworthy that, in the addendum to the presentence report, Mr. Stilley objected to numerous paragraphs of the presentence report but did not object to any of the proposed conditions of supervision. Those special conditions, as

embodied in the judgment entered thirteen years ago, were not challenged on appeal and have accordingly long since become final.

Nevertheless, in the proceedings in the latter part of 2022, leading to the November 21, 2022 hearing, it became obvious that Mr. Stilley was chafing under the special conditions. At the November 21 hearing, it was tempting to just treat the special conditions as being final for all purposes, and the court would certainly have been justified in doing so. However, because of Mr. Stilley's discomfiture with the special conditions and because, well after sentencing in this case, the Court of Appeals provided additional guidance as to intrusive special conditions, United States v. Mike, 632 F.3d 686 (10th Cir. 2011), the court addressed the justification for the special conditions during the November 21 hearing.

The court first articulated its understanding of the guidance to be derived from United States v. Mike. Tr. 92-93. The court concluded that, under United States v. Mike, the Court of Appeals "has made it clear that when we have a situation involving intrusive conditions such as a computer monitoring condition, the court should make particularized findings to support the appropriateness of imposing those conditions." Tr. 93. Consequently, the court proceeded to make particularized findings. Some of those findings were made by way of quotation from, and adoption of, findings made in April, 2010 at sentencing. Some of those findings were made by way of elaboration on the matters addressed in the April, 2010 findings. As relevant here, those findings were stated as follows at the November 21 hearing:

> My particularized findings -- and I'm going to go ahead and make them because it's conceivable that on review the Court of Appeals could note that even though United States vs. Mike had not been decided at the time of sentencing in this case, the Court of Appeals might nevertheless feel that particularized findings should have been made or that the matter of findings to support the imposition of these very intrusive conditions ought to be made or not made at this point.

4

> And so the conditions, if you will, or the factual background that in my view justifies the imposition of these conditions begins with the fact, as I mentioned at sentencing, and this is page 415 of the sentencing transcript, "Mr. Stilley's IOLTA account was an instrument of fraud pure and simple, and it was an instrument of fraud pure and simple for the use and benefit both of Mr. Stilley and of Mr. Springer. It was very effectively used and it was used in a way that makes a mockery of the purposes for which lawyers are authorized to maintain trust accounts."
>
> And so, what we know for openers is that Mr. Stilley had very much the inclination to use an account that he maintained in a fiduciary capacity as an instrument of fraud.
>
> As I said later in the sentencing, "Mr. Stilley's status as a lawyer and his ability to hold himself out as a criminal tax defense attorney furthered the defendants' joint objective of committing tax fraud directly and in counseling and advising their clients and significantly facilitated the commission and concealment of these defendants' offenses." In other words, Mr. Stilley was keenly interested in committing his frauds underlying the judgment in this case as entered in this court in 2010 in concealing his fraudulent activity, and that last passage is quoted from page 425 of the sentencing transcript.
>
> In terms of the need for protection of the public from further criminal conduct on Mr. Stilley's part, I refer to my comments at page 447 of the sentencing transcript, and I quote, "I don't think that there is any real possibility that either one of these defendants will change their ways as a result of incarceration. Incarceration and possibly supervised release will essentially be an interruption, albeit a lengthy interruption, in your criminal way of life."

Tr. 93-94.

\* \* \*

> [Continuing to quote, at the November 21, 2022 hearing, from findings at sentencing in April, 2010.] "Your scams have cheated the United States. And that is a serious matter in and of itself. But the United States can print money. If anyone ever had any lingering doubt as to whether you are frauds and predators, that doubt would be removed by the fact that the two of you have also mercilessly fleeced some very

5

>vulnerable people. You are predators, pure and simple." That is from page 448 of the sentencing transcript.
>
>On page 449 I address Mr. Stilley specifically. That last comment being directed both to Mr. Stilley and to Mr. Springer. On page 449 I told Mr. Stilley, and I adopt this as a particularized finding in support of these conditions, and I quote, "I must say, Mr. Stilley, that my evaluation of your history and characteristics is also influenced by the fact that you have, to a truly astonishing extent, used your license to practice law as an instrument of fraud and a license to steal. Your victims have included both the United States and the individuals who have been persuaded to their everlasting sorrow that you had the competence and the integrity to make legitimate arguments on their behalf."

Tr. 95-96.

\* \* \*

>Mr. Stilley is a fraudster, he is a predator. Mr. Stilley, you've done nothing since last August [2022, when Mr. Stilley's term of supervised release began] to suggest otherwise. I hate to rely just reflexively, and as a matter of fact I don't rely reflexively on the findings that I made more than a decade ago, but you have given me no reason to think you have changed your ways. You were a merciless predator on vulnerable people. You fleeced them of their money. So you were not just a tax cheat; as you well know, you mercilessly preyed on vulnerable people who had their own tax problems. I want you to be within the short reach of the law.

Tr. 117-118.

These findings should, of course, be borne in mind in light of the standards, established by statute and elaborated in United States v. Mike, delimiting the trial court's discretion in imposing special conditions of release. Special conditions "must be reasonably related to at least one of following: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of

the defendant, and the defendant's educational, vocational, medical, or other correctional needs." Mike, 632 F.3d at 692. Special conditions must also "involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation." *Id.* They must also "be consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* As will be discussed, the court remains satisfied, for the reasons stated at the November 21 hearing (as quoted above in part), that there are compelling reasons for imposition of highly intrusive conditions of supervision on Mr. Stilley.

      D.    <u>Post-Hearing Proceedings</u>.

At the November 21 hearing, the court gave Mr. Stilley 21 days within which to supplement his motion relating to conditions of supervision to include "exact proposed modified conditions." Doc. no. 751 (minute sheet), at 2. Mr. Stilley did not supplement his motion. For that reason, the court denied the motion. Doc. no. 760. However, in the same order, the court stated that the denial of the motion "is without prejudice to consideration of a properly-supported motion (including a statement of the exact proposed modified conditions) if defendant chooses to do so." *Id.* at 2.

On March 16, 2023, Mr. Stilley filed the instant motion, styling it: "Defendant Stilley's Motion to Strike the Special Conditions of Supervised Release, With Included Supporting Brief." Doc. no. 774. By that motion, Mr. Stilley "seeks an order terminating all the special conditions." *Id.* at 2. That request is repeated on pages 3 and 5 of the motion. Aside from some palpable misrepresentations of fact in Mr. Stilley's motion, the most notable thing about it is that nowhere does Mr. Stilley provide "exact proposed modified conditions." The same is true of Mr. Stilley's newly-filed motion, doc. no. 777.

The government responded to Mr. Stilley's March 16 motion on April 3, 2023. Doc. no. 776. The government quite understandably pointed out that Mr. Stilley had failed altogether to provide any language for any proposed modified conditions. Under all the circumstances, as described at length above, the government could justifiably have argued that the motion should simply be denied, with no further consideration of issues relating to Mr. Stilley's conditions of supervision. However, in a conspicuous display of objectivity and professionalism, the government has proposed modified conditions, designed to accommodate Mr. Stilley's current situation to the extent reasonably possible. The proposed modified conditions are set forth in Exhibit 2 to the government's response, doc. no. 776-2. The court has carefully reviewed the revisions suggested by the government. They appear to be entirely reasonable. In some notable ways, they are less restrictive and less intrusive than the conditions originally imposed.

Applying the United States v. Mike criteria, the court concludes that the special conditions, revised as proposed by the government, are reasonably related to the nature of Mr. Stilley's offense. They are responsive to Mr. Stilley's history and characteristics, as that history and those characteristics are discussed at length above. The special conditions are necessary for the protection of the public from further criminal and predatory activity by Mr. Stilley. Mr. Stilley used sophisticated means to cheat the government and to prey on vulnerable individuals. He lulled his victims into a sense of confidence, and reassurance, as to his honesty and competence. Although Mr. Stilley was nowhere near as charismatic as his codefendant, he used his purported knowledge of the law to bolster his victims' confidence in him. He is still in a position to do exactly that.[2] The fact that Mr. Stilley had no compunction

---

[2] In fairness to Mr. Stilley, the court will acknowledge the possibility that the Oscar Stilley who is now on supervision may not, in some important respects, be the same Oscar Stilley who was proven 13 years ago to be bent on enriching himself with predatory and fraudulent conduct. The court is obliged not to dismiss that possibility. But the court must take Mr. Stilley as it finds him, and he has assuredly not gotten off to a good start on supervision. Mr. Stilley should

about preying on vulnerable individuals is especially noteworthy in light of the fact that, as is demonstrated by the sworn statement at doc. no. 777-1, he is once again in a position to prey on vulnerable individuals. Once the investigation leading to the original prosecution in this case was under way, Mr. Stilley obstructed justice by providing materially false information to the grand jury.

To be sure, even the revised special conditions are intrusive. That said, looking at the matter in light of the <u>Mike</u> criteria, it is noteworthy that the computer monitoring condition, per the government's proposed revision, expressly excepts computers used in connection with defendant's current employment if that usage is approved by the probation office.[3] Especially with that modification, the special conditions are no more intrusive, and involve no greater deprivation of liberty, than is necessary when the matter is considered in light of Mr. Stilley's history and characteristics and the means now available by which he could return to (or continue) his fraudulent and predatory ways.

E.  <u>Conclusion</u>.

The district court has the authority to modify conditions of supervised release at any time prior to the termination of the term of supervised release. 18 U.S.C. § 3583(e)(2). Mr. Stilley has wholly failed to provide justification for termination or modification of any of his conditions of supervised release. Accordingly, Mr. Stilley's motions, doc. nos. 774 and 777, are in all respects **DENIED**. However, the court, in its discretion, **MODIFIES** Mr. Stilley's special conditions (not to be confused with the standard conditions) of supervised release to incorporate the

---

be mindful of the fact that he does have the opportunity, going forward, to demonstrate, by his compliance with standard and special conditions of supervision, that there is a sound basis for further easing of some of those special conditions.

[3] The modifications proposed by the government and adopted by the court are favorable to Mr. Stilley within the meaning of Rule 32.1(c)(2)(B), Fed.R.Crim.P.

revisions set forth in doc. no. 776-2.  A separate order imposing the revised special conditions will be entered.

At the November 21, 2022 hearing, the court left violations 2 and 4 pending and unadjudicated.  In light of what the court hopes will be Mr. Stilley's desire to make a fresh start on supervision, the court sees no good reason for those matters to remain pending.  Accordingly, the Amended Petition for Warrant or Summons is **DISMISSED** as to violations 2 and 4.  This concludes all matters relating to that petition.

Mr. Stilley has another motion pending, doc. no. 772, in which he, in essence, asks the court to render an advisory determination as to his Fifth Amendment rights. To the extent that that motion may be regarded as having raised a live issue as to the previously-pending petition, it is now moot.  And in any event, the more reasonable reading of the motion is that it seeks an advisory determination, a request which the court is obliged to disregard under the case and controversy provisions of Article III, Section 2 of the Constitution.[4]   The motion at doc. no. 772 is, accordingly, **STRICKEN**.

DATED this 13th day of April, 2023.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p183 (Stilley) .docx

---

[4] The court notes that if the government should seek revocation of supervised release in the face of a valid invocation of the Fifth Amendment privilege, Mr. Stilley may raise a Fifth Amendment challenge at that time.  United States v. Richards, 958 F.3d 961, 968 (10th Cir. 2020), *cert. denied*, 141 S.Ct. 861 (2020).