IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                       Case No. 4:09-CR-043

OSCAR AMOS STILLEY                                                          DEFENDANT

**RESPONSE TO PETITION WITH DEFENSES**

Comes now Defendant Oscar Stilley (Stilley) and for his response to petition with defenses, and states:

1. This Court and two probation officers on 10-10-2024 filed a sealed petition to revoke Stilley's supervised release.

2. The petition to revoke is sealed, such that the public cannot review the bogus charges against Stilley.

3. Stilley in this response sets forth the text of each of 9 separate claims of violation of Stilley's supervised release conditions, verbatim.

4. Thus the public will have access to the precise language of the accusations, and Stilley's responses.

5. Stilley furthermore sets forth his side of the story and his non-exhaustive list of defenses (whether or not affirmative) to each of the 9 separate claims.

6. This pleading should contribute to judicial economy, since it will therefore be unnecessary to prove facts that Stilley admits.

7. This response is in addition to every other pleading and all other defenses to this petition to revoke supervised release. Stilley waives no valid defense to these accusations.

8. "OKND" means the US District Court for the Northern District of of Oklahoma. "OKWD" refers to the Western District of Oklahoma, US District Court. The petition in this case is the charging instrument. Charging instruments include those called an "information," a "criminal information," or a "criminal complaint," as well as indictments by grand juries. Stilley in this response may refer to the "petition" as a "criminal information" or as a "criminal complaint."

**Nature of Noncompliance**

**Violation Number** 1

> **Violation of Standard Condition No. 7**: **You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.** If **you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so.** If **you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change.** If **notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.**

On May 2, 2024, United States Probation Officer Ryan Forsyth received communication from Jeremy Bennett, Executive Director of Remember Every Victim and Missing Person (REVAMP). Mr. Bennett reported that Mr. Stilley was verbally terminated from his employment at REVAMP on May 1, 2024. Mr. Stilley did not disclose this change in employment until May 5, 2024, which is outside of the 72-hour time frame.

Since his termination from REVAMP on May 1, 2024, Mr. Stilley has been unemployed and has also failed to demonstrate adequate effort in obtaining appropriate full-time employment.

9. On information and belief, Stilley's enemies in federal employment agitated to get Stilley fired. It cannot be denied that US Probation wanted to stop Stilley from contacting persons with a criminal record. Contact with persons with a criminal record was expressly authorized, as part of Stilley's employment at REVAMP.

10. In this response, the term "prosecution team" is sometimes used when Stilley does not know who did what, who has the facts, and who should be called as a witness. "Prosecution" or "prosecution team" should be construed to include any person employed by the federal government, or working at the instance of any federal employee or officer, for the purpose of controlling or getting evidence against Stilley, or punishing him as part of the captioned case.

11. On information and belief, the prosecution team used certain personnel of REVAMP to get information and evidence that REVAMP would turn over to the prosecution team.

12. For example, REVAMP Executive Director Jeremy Bennett demanded a full list of every person with a criminal record, with whom Stilley had communicated on behalf of REVAMP, since starting in the employ of REVAMP.

13. The prosecution now claims that failure to profane the Sabbath by giving notice within the 72-hour deadline is a felony and an infamous crime worthy of up to 2 years in federal prison.

14. This further proves that the prosecution team demands that Stilley from his own mouth confess to facts which would alone or in conjunction with other facts be assigned as a felony and an infamous crime worthy of up to 2 years in federal prison.

15. Stilley promptly procured an offer for another job that would have had exactly the same terms, conditions, pay, and hours as the job at REVAMP.

16. Ryan Forsyth vetoed the job by email to the potential new employer.

17. Stilley is entitled to the relevant facts via *Brady/Giglio* disclosures, so that he can call relevant witnesses to tell his side of the story.

18. This count of this felony information is legally frivolous.

**Violation Number 2**

> **Violation of Special Condition No. 2(e):** The defendant shall abide by the "Special Financial Conditions" previously adopted by the Court, as follows:

**e) The defendant shall, upon request of the probation officer, complete a personal financial affidavit and authorize release of any and all financial (sic)**

On June 5, 2024, Mr. Stilley submitted various financial investigation documents at the request of the probation office; however, they were incomplete. Specifically, Mr. Stilley answered "see attached" on multiple sections of the Prob 48 (Net Worth Statement) form, referencing a 2-page attachment where he answered "5th Amendment" to several sections of the form. Mr. Stilley also failed to answer numerous questions contained within the Monthly Cash Inflow section of the Prob 48B (Monthly Cash Flow Statement) form. In an attached 4- page document, Mr. Stilley wrote "I plead the 5th Amendment as to each and every question on the form" and detailed various reasons for not completing the form as instructed. Based upon the above, the probation office has been unable to conduct a complete financial investigation regarding Mr. Stilley's financial circumstances.

19. Stilley has a constitutional right to plead the 5th Amendment.

20. Stilley always asked that US Probation object and set forth reasons for claiming that Stilley's 5th Amendment invocations were improper, and opportunity to rectify any such invocations, such that Stilley's reliance on the 5th Amendment would be legally sound.

21. US Probation neither objected nor set forth reasons to call Stilley's 5th Amendment claims into legal question.

22. This count of this criminal complaint is legally sanctionable nonsense. This count is more proof that this is a malicious and lawless prosecution – as if any further evidence is needed.

**Violation Number 3**

> **Violation of Special Condition No. 2(a):** The defendant shall abide by the "Special

4

**Financial Conditions" previously adopted by the Court, as follows:**
**a) The defendant shall maintain a checking account in the defendant's name and deposit into this account all income, monetary gains, or other pecuniary proceeds, and make use of this account for payment of all personal expenses. All other bank accounts and other financial accounts must be disclosed to the probation officer.**

On June 7, 2024, Mr. Stilley was confronted by United States Probation Officer Ryan Forsyth about a deposit made to his Arvest checking account on January 4, 2024, in the amount of $2,540, which was discovered during a review of his submitted Arvest bank statements. Mr. Stilley advised that the money was procured legally but refused to discuss this deposit further. Mr. Stilley was also confronted about approximately $4,000 in payments he may have received from Misty Webb in February and May of 2024, which were discovered via the monitoring software installed on his smart phone and laptop devices. Mr. Stilley referenced his 5th amendment rights on several occasions and failed to answer any questions regarding these payments. In addition, Mr. Stilley failed to report any of the aforementioned payments on his submitted financial investigation documents, as required.

23. This count is totally frivolous and wholly without merit.

24. Stilley in good faith agreed to turn over bank statements *as a means of disclosure*.

25. Now the prosecution assigns these disclosures as grounds for felony charges.

26. Stilley has an aversion to affirmative statements since they can be twisted and converted into grounds for a destructive and monumentally costly federal criminal charge.

27. Nothing in count three of this criminal complaint suggests that Stilley maintained an undisclosed financial account.

28. "May have received" hardly rises to the level of proof beyond reasonable doubt, even if proven. Speculation does not qualify as a count of a criminal complaint.

29. This count of the criminal complaint should be stricken from the record.

**Violation Number 4**

**Violation of Special Condition No. 7(b):** The defendant shall agree to the installation of software designed to monitor activities on any computer, smart phone, tablet, and/or other electronic device the defendant is authorized to use,

> **except any device that he uses as part of his employment at REVAMP if such usage has been approved by the U.S. Probation Office. This may include, but is not limited to, software that may record any and all activity on the computer, smart phone, tablet, and/or other devices the defendant may use, including the capture of keystrokes, application information, Internet use history, e-mail correspondence, and chat conversations. The defendant shall consent to unannounced examinations of any authorized computer, smart phone, tablet, and/or other device, and/or to the removal of any authorized computer, smart phone, tablet, and/or other device conducted by the U.S. Probation Office, so long as such examinations and/or removal are conducted at a reasonable time and in a reasonable manner based on a reasonable suspicion of any violation of conditions of supervised release for the purpose of conducting a more thorough inspection. The defendant shall pay any costs related to the monitoring service. Additionally, the defendant shall warn other people who use these devices that the devices may be subject to searches pursuant to this condition.**

On July 23, 2024, the probation office was notified by IPPC Technologies, Inc. (IPPC), that Mr. Stilley had revoked authorization for the company to automatically charge his bank account in order to pay for his monitoring software fees. As a result, IPPC removed Mr. Stilley's bank account information from their payment system and agreed to place him on invoice billing moving forward. On August 30, 2024, Mr. Stilley advised that he had no intentions on paying any bills sent to him from IPPC.

Since June 23, 2024, Mr. Stilley has failed to submit any payments to IPPC for the monitoring software installed on his devices despite being directed to do so by the probation office. As of September 30, 2024, Mr. Stilley's balance is $259.56, which is scheduled to accrue an additional charge of $86.52 on October 23, 2024, and the 23rd of each month thereafter.
On September 8, 2024, notification was received from IPPC Technologies, Inc., which indicated there had been no communications received from Mr. Stilley's smart phone device. On September 9, 2024, telephone contact was made with Mr. Stilley, and he was asked if he had intentionally interrupted or uninstalled the monitoring software from his smart phone or laptop device; however, Mr. Stilley would not answer the probation office's questions.

As of the date of this writing, the IPPC Technologies, Inc., database reflects there have been no communications received from Mr. Stilley's smart phone and laptop devices since September 4, 2024, and September 5, 2024, respectively.

On October 3, 2024, Mr. Stilley's Corrlinks account was accessed to determine if he had utilized the program via an unmonitored and/or unauthorized internet-connected device since September 8, 2024. Numerous communications between Mr. Stilley and incarcerated individuals at the Bureau of Prisons were discovered to have occurred since September 8, 2024, confirming that Mr. Stilley is utilizing an unmonitored internet-connected device without permission from the probation office.

30.    The findings of fact relied upon by Judge Friot to impose these special

conditions are all false.

31.    The findings of fact relied upon by Judge Friot to impose these special

conditions are all affirmatively disproven by the official record.

32.     The OKND entered an order in contravention of the applicable US Sentencing Guidelines (USSG). This order calls for routine imposition of computer monitoring, whether or not the conditions of the USSG are met.

33.     The purpose of this order was to allow federal judges, prosecutors, and US Probation officers to monitor the computer traffic of criminal defendants paying restitution. Thus these parties would be aware whenever a defendant learns about the theft ring run by the US Attorney's Office for the OKND, as described by Stilley's 5-16-2024 letter to Clinton J. Johnson, US Attorney for the OKND. Exhibit "1."

34.     Stilley's computer monitoring was and is in furtherance of a freelance theft ring run by federal prosecutors, with help from certain personnel at the Administrative Office of the Courts.

35.     Numerous other US Attorneys participate in the same theft ring.

36.     The best indicator that a US Attorney's Office is operating this freelance theft ring is that the federal district refuses to accept criminal restitution payments electronically by pay.gov.

37.     The parties prosecuting this criminal complaint have unclean hands and thus should be barred from participating in this prosecution.

**Violation Number 5**

> **Violation of Standard Condition No. 8:** **You must not communicate or interact with someone you know is engaged in criminal activity.** If **you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.**

Data obtained through the IPPC monitoring software installed on Mr. Stilley's devices, and through Mr. Stilley's Corrlink:s account, reflect multiple communications between Mr. Stilley and various individuals confirmed to have prior felony convictions and/or individuals recently involved in criminal activity. Said

communications were not approved in advance by the probation office.

38. Stilley got permission from the US Probation office, to communicate with such persons in connection with his REVAMP employment.

39. This condition is in furtherance of the freelance theft ring previously mentioned and described.

40. Nothing in this count alleges that Stilley actually did anything illegal, or engaged in criminal activity, or helped anyone engage in criminal activity, or encouraged any criminal activity.

41. By prosecuting Stilley under this fraudulent case, the prosecution team impugns the credibility of all federal criminal convictions.

42. The prosecution team refuses to correct falsehoods previously presented to the court.

43. Charles O'Reilly on 11-1-2024 refused to pick a theory of criminal liability, and furthermore refused to engage in any further discussions of any kind.

44. Charles O'Reilly has done his best to get any Oklahoma lawyer off this case, because they have by oath bound themselves to correct falsehoods in any case, civil or criminal.

45. Charles O'Reilly knows that all the theories of criminal liability previously espoused by him have fatal legal defects.

**Violation Number 6**

> **Violation of Special Condition No. 5:** **The defendant shall not engage in any activity that would constitute the unauthorized or unlicensed practice of law, nor provide representation or services of any kind, advice, suggestions, or recommendations, whether paid or not, to any person or entity public or private other than immediate family members, with respect to any matter relating to federal or state taxation. The defendant will maintain no website that refers to any matter relating to federal or state taxation. The defendant will post no**

8

>  **material of any kind on any website that refers to any matter relating to federal or state taxation without prior expressed approval of the probation officer. The defendant will not file, without the expressed written permission of the probation officer, any civil action related to federal income tax.**

It is believed that the content of the communications detailed in violation numbers 4 and 5 in regard to Mr. Stilley's Corrlinks account, reflect that Mr. Stilley may be engaging in the unauthorized or unlicensed practice of law.

46.    The "allegations" in violation #6 are rank speculation.

47.    Nothing herein informs Stilley as to the courts in which certain persons "believed" Stilley "may" be practicing law.

48.    Stilley demands an expert witness, with all the initial disclosures, to prove that what "may" be the practice of law, actually is the practice of law.

49.    This count of this criminal information is evidence of the desperation of the prosecution team.

50.    Nothing herein gives Stilley the constitutionally required notice of what specific acts the prosecution team thinks "may" be practice of law.

**Violation Number 7**

> **Violation of Mandatory Condition No. 1: You must not commit another federal, state, or local crime.**

According to law enforcement and Arkansas Supreme Court records, on July 12, 2024, Mr. Stilley submitted an Arkansas Voter Registration Application in Crawford County, Arkansas. On the application, Mr. Stilley responded to the question, "Have you ever been convicted of a felony without your sentence having been discharged or pardoned?" by checking the "No" box, and hand printed the statement, "I have not been lawfully convicted of a felony by a lawful court."
On September 24, 2024, Mr. Stilley was arrested by the Arkansas Attorney General's Office and the Crawford County, Arkansas, Sheriffs Office, and charged with Perjury, a Class C Felony.

51.    This is further evidence that ***not one*** member of the prosecution team thinks Stilley lied when he said ""I have not been lawfully convicted of a felony by a lawful court."

9

52. Stilley requests that this Court take judicial notice of Count 1 (the sole count) of Stilley's felony charge in the Circuit Court of Crawford County, Arkansas.

53. This count consists of 1) gibberish in sentence fragments, and 2) verbatim reproduction of sections of the Arkansas Code.

54. Not one member of the elite 5 lawyer team designated by the Arkansas Attorney General to defend *Stilley v. Thurston, et al*, Ark. Sup. Ct. 24-CV-453 was able to respond to Stilley's motions to suppress both judgments in this case (Dkt. #338 & 752).

55. That's fair notice to the world that these judgments are *void*.

56. The Arkansas Attorney General prepared what was claimed to be an affidavit, in support of criminal charges against Stilley in *State of Arkansas v. Oscar Stilley*, Crawford County Circuit #17CR-24-508.

57. The "affidavit" supplied in the exhibits to this criminal information doesn't have a signature page and thus isn't an affidavit at all.

58. The "affidavit" DOES NOT say that Stilley lied when he said he hadn't been *lawfully* convicted by a lawful court.

59. If the "affidavit" which had no signature page on 9-10-2024 somehow magically acquires a signature page, Stilley respectfully requests and demands the name of a witness who can explain how an "affidavit" lacks a signature page literally weeks after it was purportedly filed.

**Violation Number 8**

> **Violation of Standard Condition No. 9:** If **you are arrested or questioned by a law enforcement officer, you must notify the probation office within 72 hours.**

As noted in violation number 7, Mr. Stilley was charged with Perjury and arrested on September 24, 2024. Law enforcement records reflect that Mr. Stilley was released from custody on September 27, 2024. As of October 4, 2024, Mr. Stilley has failed to notify the probation office of his arrest.

60.     Stilley at his bond hearing from the Crawford County Jail listened to the prosecutor saying he was in contact with US Probation and that they were considering a revocation proceeding.

61.     This is further evidence that US Probation is not trying to get information, but rather trying to exercise the cruel expedient of forcing confessions and admissions from the mouths of their victims.

62.     Stilley was in custody for more than 72 hours and had no money on his commissary account with which to make phone calls.

63.     Therefore informing US Probation of this false arrest would have been tantamount to confessing to *an infamous crime and a felony* that carries up to 2 years in prison.

64.     The 5th Amendment protects against any such forced confessions.

65.     This count is further evidence of the desperation of this prosecution team.

**Violation Number 9**

> **Violation of Mandatory Condition No. 4:** **You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution.**
>
> > Mr. Stilley has failed to submit any payments towards his restitution obligation since July 8, 2024.

66.     Stilley has already made inquiry of the Arkansas Department of Revenue. They have no tax liabilities or claims against Stilley, other than those arising from each tax return filed by Stilley since his transfer to home confinement.

67. Stilley therefore has the legal right to claim all "restitution" payments from the OKND as a credit against his tax liability, on each annual income tax return.

68. The State of Arkansas pays its refunds to Stilley each year. Those refunds aren't seized for the bogus "restitution" in this case.

69. Federal law requires that the state be paid before federal "restitution" is paid. Based on the numbers in this case, Stilley will never finish the nearly $100,000 claimed as "restitution" to the State of Arkansas.

70. Therefore if Stilley pays this "restitution" it would only go to the Arkansas Department of Revenue and be immediately paid back over to him when he files his annual state tax return.

71. If the prosecution team thinks Stilley isn't entitled to claim this year's "restitution" payment as a credit toward his 2024 tax liability, on or before the Arkansas tax filing deadline, they should be prepared to present a qualified expert witness to prove that proposition at the trial of this case.

**72.** Stilley respectfully requests and demands that the prosecution team comply with every requirement for the presentation of an expert witness, and furthermore cooperate to enable Stilley to effectively present his own countervailing expert witness.

**73.** Therefore the complained of behavior has changed the form but not the substance of the economic transactions related to "restitution."

**74.** The exhibits to the government's petition are set forth below, verbatim. The actual exhibits contain much personal information, and are not attached.

**Exhibits**		**Exhibit A:**  Copy of the relevant pages of the Judgment reflecting the conditions of supervision ordered by the Court.

**Exhibit B:**  Copy of the email correspondence regarding Mr. Stilley's employment termination.

**Exhibit C:** Copy of email correspondence along with financial forms submitted by Mr. Stilley.

**Exhibit D:** Copy of bank statements and Corrlinks account correspondence between Mr. Stilley and other individuals.

**Exhibit E:** Copies of email correspondence between Officer Forsyth and IPPC Technologies regarding his computer monitoring status.

**Exhibit F:** Copy of Corrlinks sent messages log.

**Exhibit G:** Copies of various correspondence between Mr. Stilley and numerous individuals previously convicted of felonies.

**Exhibit H:** Copies of Arkansas Supreme Court documents, Crawford County Circuit Court warrant, and prosecutor affidavit regarding Mr. Stilley's perjury charge.

**Exhibit I:** Copy of a detailed individual payment history reflecting restitution payments made by Mr. Stilley.

## STILLEY'S DEFENSES AND CONSTITUTIONAL CLAIMS

75. Stilley includes these defenses, regardless of how they may be characterized, partly to place the prosecution team on notice of their prosecutorial obligations. Stilley most respectfully requests and demands certain information, rights, etc. The term "demands" should be read to mean that Stilley "most respectfully requests and demands" such information or rights and should not be construed as harsh or abrasive rhetoric.

76. The 5th Amendment reads as follows:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases

    arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

77. Stilley is a "person" within the meaning of the 5th Amendment.

78. This is a criminal prosecution for an "infamous crime" within the meaning of the law, because Stilley faces up to 2 years in prison if convicted.

79. If either of these propositions is challenged, Stilley demands proof of all facts and binding authority for the position of the prosecution team.

80. The 6th Amendment reads as follows:

    In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

81. If this proceeding is not a "criminal prosecution" within the meaning of the 6th Amendment, Stilley demands evidence and binding authority in support of that proposition.

82. If Stilley is not the "accused" herein within the meaning of the 6th Amendment, Stilley demands evidence and binding authority in support of that novel proposition.

83. Stilley demands that he be charged by grand jury indictment, or not at all, since he has already been informed in the previous revocation that he faces up to 2 years in prison on a revocation of supervised release.

84. Stilley demands a speedy and public trial.

85. Stilley demands proof beyond reasonable doubt.

86. Stilley demands a trial by an impartial jury.

87. Stilley pleads double jeopardy, having already been subjected to extreme punishment based on the original indictment, trial, and utterly fraudulent criminal judgment.

88. Stilley pleads double jeopardy, having already been subjected to 3 months incarceration based on a charge of violation of supervised release, as well as the original 180-month sentence.

89. Stilley demands that his trial, if at all, be held in the state and district wherein the alleged crime shall have been committed, which district shall have been previously ascertained by law.

90. It is preposterous to claim that Stilley committed any of the alleged offenses in the Northern District of Oklahoma. Stilley's offenses, if they happened at all, happened in the Western District of Arkansas.

91. Stilley isn't even allowed to leave the Western District of Arkansas without permission.

92. No such permission has been given, for Stilley to go to the OKND.

93. The criminal complaint is fatally defective because it does not allege, even in the most conclusory fashion, the constitutionally required element of venue.

94. This criminal complaint is fatally defective because constitutionally required venue ***does not exist***, whether or not false claims of venue might be made.

95. Supervised release statutes are not *lawfully* all-purpose escape hatches allowing every violation of the constitution that might be imagined by devious minds.

96. Stilley demands to be informed of the nature and cause of the accusation, which necessarily must include constitutionally required venue. No, the current criminal complaint *does not qualify*.

97. Stilley demands information about the facts and law supporting venue *as to each count* a reasonable time in advance of trial, so that Stilley may effectively prepare for trial.

98. Stilley demands to be confronted with the witnesses against him.

99. Stilley demands compulsory process for obtaining witnesses in his favor. This would include but not be limited to Jennie Cleveland, Jeffrey Gallant, Lindsey Kent Springer, and (unless he is legal counsel) Charles Robert Burton IV, all of whom know full well that Stephen P. Friot uttered "findings" at the original sentencing and at the previous revocation that were *pure works of fiction*. These "findings" are completely contradicted by the record.

100. Stilley demands the *Assistance* of Counsel for his defense.

101. Stilley respectfully requests the assistance of Charles Robert Burton, IV, despite his disbarment. If this is disallowed, Stilley respectfully requests an explanation 1) why he's disbarred for what Stilley went to prison for *not doing* (converting client funds) and 2) why Burton got disbarred for converting client funds when Clinton J. Johnson and his minions convert client funds on a regular

basis, and refuse to give proof of same under the federal Freedom of Information Act.

102. If Stilley is denied the assistance of Burton, he respectfully requests the assistance of an Oklahoma Bar Licensed attorney who has studied the criminal record sufficiently to know that Judge Friot's findings at the previous revocation were works of fiction contradicted by the record.

103. Inclusion of all defenses and affirmative defenses would unduly lengthen this pleading. Stilley relies upon all defenses and affirmative defenses pled in any pleading in this case, for this proceeding or for any other proceeding.

104. Rights and privileges not specifically addressed are reserved. Stilley does not waive any legal rights except by express words, after being properly informed.

Respectfully submitted,

By: /s/ Oscar Stilley  November 5, 2024
Oscar Stilley  Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, thereby serving all persons having ECF privileges and entitled to service in this case.